UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE POLYURETHANE FOAM ANTITRUST LITIGATION<br><br>This document relates to:<br><br>Sealy Corporation, et al v. Carpenter Co., et al, Case No: 1:11-pf-10007 (JZ) (N.D. Ohio) | MDL Docket No. 2196<br><br>Index No. 10-MD-2196 (JZ)<br><br>Judge Jack Zouhary |

**DIRECT ACTION (NON-CLASS) PLAINTIFFS SEALY CORPORATION, SELECT COMFORT CORPORATION, SIMMONS BEDDING COMPANY, TEMPUR-PEDIC INTERNATIONAL, INC. AND LA-Z-BOY INCORPORATED'S MEMORANDUM IN SUPPORT OF MOTION TO MODIFY THE INITIAL CASE MANAGEMENT ORDER**

Direct Action (non-class) Plaintiffs Sealy Corporation, Select Comfort Corporation, Simmons Bedding Company, Tempur-Pedic International, Inc. and La-Z-Boy Incorporated (the "Sealy Plaintiffs"), pursuant to Local Rule 16.3(c)(6)(B), submit this Memorandum in support of their Motion to modify the Initial Case Management Order ("CMO") dated January 20, 2011 (Dk. 17) to provide for their active and coordinated participation in MDL 2196. We are authorized to inform the Court that the Direct Purchaser Class Plaintiffs do not object to the relief sought in the Sealy Plaintiffs' Motion. A proposed, revised "red-lined" and "clean" version of the Amended Initial CMO accompanies the Motion as Exhibits 1 and 2, respectively.

I. **Summary of Argument**

The Sealy Plaintiffs, for principled reasons, have filed a Direct Action (non-class) Complaint in this Court in MDL 2196. There are some differences between the Sealy Plaintiffs' Complaint and the Class's Consolidated Amended Complaint ("CAC"), including *inter alia* the named Defendants. The Sealy Plaintiffs have tried to participate actively in MDL 2196 in

Case No: 10-MD-2196 (JZ)

coordination with Class and Defendants' counsel. But Defendants' counsel has objected to the Sealy Plaintiffs' direct participation based on Defendants' reading of the Court's Initial CMO to provide that interim class counsel and the CAC represent the Sealy Plaintiffs' interests in this case. Such a construction would violate the Sealy Plaintiffs' due process rights and run afoul of ethical rules and the law. Defendants' interpretation of the Initial CMO places interim direct purchaser class counsel in an impossible position. Interim direct purchaser class counsel cannot legally and ethically represent the Sealy Plaintiffs because they have engaged separate counsel for their direct (non-class) action. Where, as here, a direct action (non-class) case is filed in an antitrust MDL – including early in the case and before certification – courts commonly establish a case management structure that provides for the active and coordinated involvement in the case of counsel for class plaintiffs, direct action (non-class) plaintiffs and defendants. The Court should make modest revisions in its Initial CMO to provide for the active and coordinated involvement of the Sealy Plaintiffs in this case.

Section II provides context for the Sealy Plaintiffs' Motion by identifying them, describing the principled reasons why they filed a direct action rather than remain passive members of the proposed class, and explaining the differences between a class action and a direct action as it bears on changes needed in the Initial CMO. Section III explains how the Sealy Plaintiffs have tried without success to participate actively in the case thus setting the stage for the changes needed in the Initial CMO. Section IV identifies and explains the bases for the modest revisions that we propose to the Initial SMO. Section V demonstrates that the revisions we propose in the Initial CMO are routine in antitrust MDL proceedings like this one.

Case No: 10-MD-2196 (JZ)

## II. Introduction

    A.    <u>The Sealy Plaintiffs and the Principled Bases for Their Direct Action</u>

The Sealy Plaintiffs are among the largest domestic purchasers of flexible polyurethane foam ("polyurethane foam") in the bedding (*e.g.*, mattresses) and furniture industries (*e.g.*, upholstered furniture). They include Sealy, Select Comfort, Simmons, Tempur-Pedic and La-Z-Boy.

The news that manufacturers and sellers of polyurethane foam had reportedly cartelized the manufacture and sale of the product was of great concern to the Sealy Plaintiffs because of the key role that the product plays in their respective supply chains and the substantial volume of their direct purchases. (Collectively, the Sealy Plaintiffs directly purchased more than $2 billion of polyurethane foam in the United States from Defendants and co-conspirators during the alleged conspiracy period.)

The class actions filed in the aftermath of those disclosures were neither refuge nor solution for the Sealy Plaintiffs because of the importance of polyurethane foam and this case to their businesses; the significant stake that each of them has in the outcome of the case; their intention and need to have real influence in the direction of this case; and the broader mandate and legal requirement of interim class counsel to represent the interests of all polyurethane foam purchasers rather than the particular interests of the Sealy Plaintiffs.

As result, the "Sealy" Plaintiffs hired separate counsel and on March 22, 2011 filed a direct action – as opposed to a class action – in this Court to prosecute their respective claims in MDL 2198 separate from, but in coordination with, the class. *See* Case No. 1:11-pf-10007 (N.D. Oh.). The filing of a direct action complaint before class certification is clear evidence of the Sealy Plaintiffs' intention to pursue their own litigation outside of the class. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213 , 214 (N.D. Ill.

Case: 1:10-md-02196-JZ Doc #: 68 Filed: 04/11/11 4 of 13. PageID #: 431

Case No: 10-MD-2196 (JZ)

1997) ("The clearest evidence of a desire to pursue its own litigation [outside the class] against the defendants is the filing of its [direct action] case …. These filings are certainly evidence of an intent to pursue its remedies independently, rather than as part of the class."); *see also McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 68-69 (N.D. Cal. 1976) (filing of direct action complaint "constituted an effective expression" of intention to be excluded from class).

While there are similarities between the Sealy Plaintiffs' Complaint and the Class's Consolidated Amended Complaint ("CAC"), there also are differences including *inter alia* the Sealy Plaintiffs' Complaint names two companies as Defendants whom the Class did not sue (Defendant British Vita Unlimited; Defendant Carpenter Canada Co.), it does not name four companies whom the Class did sue (Inoac, Crest Foam, Otto Bock, and Plastomer and their respective affiliates); it alleges ten facts explaining why certain Defendants are liable in this case based on an alter ego theory, *see* Sealy Plaintiffs' Complaint paragraphs ¶¶ 18(b), 23(b), 29(b), 46(b), 53(b); it alleges specific domestic connections with conspiratorial communications with conspirators in Canada, *see id.* ¶ 79(a)-(e); and it expressly explains (as does the Class) why the Sealy Plaintiffs' antitrust claims are plausible. *See id.* ¶ 80.

B.  <u>Direct Actions are Different from Class Actions</u>

Direct actions are legally different from class actions. In an antitrust class action, usually a small number of direct (or indirect) purchasers sue seeing to represent the interest of all direct purchasers who populate a proposed class. Lawyers who file class actions organize and, subject to the Court's appointment early in the case, a few of them are charged with representing all members of a proposed class as "interim class counsel" and the others step aside from direct and active leadership of the case. Interim class counsel have a lawyer-client relationship with the class representatives but not with the broader proposed class and, even if

KENNY NACHWALTER, P.A.

Case No: 10-MD-2196 (JZ)

they must act in the best interests of the proposed class as a whole, unnamed proposed class members are not represented parties prior to class certification and the opt-out date. *See* Formal Op. 07-445 of the ABA Standing Committee on Ethics and Professional Responsibility (Apr. 11, 2007).

In a direct action like the "Sealy" Complaint, plaintiff(s)[1] sues in its individual corporate capacity and does not purport to sue on behalf of a proposed class. The suit can be brought early in a case and before certification, or later in a case after certification. In our experience, when a direct action is filed in a MDL antitrust proceeding – whether that occurs early in the case or later – courts typically and promptly establish a case management structure to accommodate the class and direct actions proceeding in a coordinated and efficient manner.[2]

### III. The Sealy Plaintiffs Have Been Unable To Participate Actively In MDL 2196 Because of the Initial CMO

The Sealy Plaintiffs want to participate actively in this case in coordination with the Class Plaintiffs and Defendants. To that end, we have served nearly all of the Defendants with the

---

[1] Sealy, Select Comfort, Simmons, Tempur-Pedic and La-Z-Boy each sue in their individual corporate capacity and, for efficiency of claim prosecution, their separate claims are set forth in a common pleading.

[2] Ironically, many of the defense lawyers in this case are familiar with the need to include direct action plaintiffs in an overall case management structure not only because their firms were involved in several of the MDL antitrust cases cited in Section V, but also because their clients in *this* case – Carpenter, Crest Foam, Flexible Foam, Hickory Springs, Leggett & Platt, Vitafoam, and Woodbridge – are themselves direct action (non-class) plaintiffs along with class plaintiffs in an MDL antitrust case involving allegations that chemical companies conspired to fix prices of chemicals used to manufacture polyurethane foam. *See Urethane Antitrust Litig.*, MDL 1616 (D. Kan.), Joint Motion of Class and Direct Action Plaintiffs, and Defendants, for Entry of Scheduling Order No. 4, App. Ex. 5, and Scheduling Order No. 5, App. Ex. 6. The Sealy Plaintiffs (and the Class Plaintiffs) allege in MDL 2196 that Defendants, including those named in this footnote, used price increases by those chemical suppliers as a pretense to collusively and artificially increase the price of polyurethane foam directly sold to plaintiffs and others.

Case No: 10-MD-2196 (JZ)

Complaint (and expect that service will be completed on the rest soon); we provided interim class counsel for direct purchasers and liaison counsel for Defendants with a copy of the Sealy Plaintiffs' Complaint, *see* App. Ex. 1; we served Class and Defendants' counsel with the Sealy Plaintiffs' Initial Disclosures on April 5, 2011 as provided in the Initial CMO, *see* App. Ex. 2; we informed counsel for the Class Plaintiffs and Defendants that the Sealy Plaintiffs want to coordinate and actively participate in the case and we have tried to do so, *see, e.g.*, App. Ex. 3; and we have circulated proposed revisions to the Initial CMO to actively include the Sealy Plaintiffs in MDL 2196 in coordination with the Class and Defendants. *See* App. Ex. 4.

While Defendants have thus far allowed the Sealy Plaintiffs to participate superficially in the case by attending calls to discuss scheduling, briefing and discovery, Defendants have refused to provide for the Sealy Plaintiffs' actual involvement in case events, including briefing of motions to dismiss, the pretrial schedule, and discovery. (The Class does not object to this.) For example, the Sealy Plaintiffs requested that the Class Plaintiffs and Defendants submit a briefing schedule on motions to dismiss that included the Sealy Plaintiffs' Complaint. Defendants refused. *See* App. Ex. 7. The Sealy Plaintiffs requested that the Class Plaintiffs' and Defendants' recent motion for enlargement of time to propose an initial pretrial schedule include the Sealy Plaintiffs. Defendants refused. *See* App. Ex. 8. The Sealy Plaintiffs requested that the Class Plaintiffs and Defendants agree that the proposed pretrial schedule applies to the Sealy Plaintiffs and that the proposed schedule include expert merits discovery because the expert discovery on class certification is not relevant to the Sealy Plaintiffs' Direct Action (non-class) case. Defendants refused. The Sealy Plaintiffs requested that Defendants respond to the Sealy Plaintiffs' Complaint. Defendants refused. *See* App. Ex. 9. And Defendants refuse to agree to revisions we have proposed in the Initial CMO to provide for the

KENNY NACHWALTER, P.A.

Case No: 10-MD-2196 (JZ)

Sealy Plaintiffs active involvement in this case in coordination with class and defense counsel. *See* App. Ex. 10. (As noted earlier, the Class Plaintiffs do not object to the relief we seek.)

We understand Defendants' position to be that the Sealy Plaintiffs' Direct Action (non-class) case cannot proceed until after class certification when, according to drafts of the pretrial scheduling order which we have seen, a substantial portion – if not all – of the fact discovery in this case will be over. The Defendants thus propose for this Court to treat the Sealy Plaintiffs' Complaint as the equivalent of the CAC – which it legally is not; they would have interim class counsel represent the Sealy Plaintiffs' interests even though the class lawyers cannot legally or ethically represent the Sealy Plaintiffs at this point; they endorse roadblocks for the Sealy Plaintiffs to exercise their due process rights to commence and prosecute their individual claims; and, ironically, they introduce real inefficiency in the management of this case as discovery specific to the Sealy Plaintiffs' direct action, which we could seek now in coordination with the Class Plaintiffs, would be deferred until after class certification which might then require that some discovery be re-done. Defendants' position is, in our experience, unprecedented and extreme, and subjects the Sealy Plaintiffs to continuing prejudice in this case.

Defendants tell us that they read the Initial CMO as not allowing for the active participation of the Sealy Plaintiffs in MDL 2196. This may be understandable in the sense that at the time the Court issued the Initial CMO, there were no direct action (non-class) cases pending.[3] But now there is in the Sealy Plaintiffs' Direct Action (non-class) Complaint. The Court appears to have anticipated this possible development because it provided in paragraph 20 of the Initial CMO that "[n]othing in this Order is intended to limit any party's opportunity to

---

[3] We submit, however, that it does not justify the Defendants refusal to entertain modest revisions to the Initial CMO to provide for the active participation of the Sealy Plaintiffs in this case in coordination with class and defense counsel.

7

KENNY NACHWALTER, P.A.

seek amendment of this Order or other relief from the Court." Pursuant to paragraph 20, and as a result of the Sealy Plaintiffs' Direct Action (non-class) Complaint in MDL 2196, the Court should now make modest revisions to the Initial CMO to provide for the active and efficient participation of the Sealy Plaintiffs in MDL 2196 in coordination with the Class Plaintiffs and Defendants.

### IV. The CMO Needs Only Modest Revisions To Enable The Sealy Plaintiffs To Participate Actively In MDL 2196

We fully understand the importance and responsibility that all lawyers in an MDL proceeding have to coordinate with each other to ensure the efficient management of the case. There are many lawyers in this case on both sides with experience in MDL antitrust cases and who know how to coordinate and cooperate with one another to avoid duplication and maximize efficiency in case management. Indeed, Local Rule 16.3(c)(6)(A) requires no less.

As noted above, however, the Initial CMO does not provide a structure for the active involvement of direct action (non-class) plaintiffs like the Sealy Plaintiffs in MDL 2196 in coordination with other counsel. To remedy this problem, and end the ongoing prejudice to the Sealy Plaintiffs that we described earlier in these papers, we propose below the following specific, modest revisions to the Initial CMO and the reason for each revision.

- Paragraph 25, first sentence, of the CMO provides that the CAC "shall be deemed adopted automatically by any Plaintiff" in the MDL. But the Sealy Plaintiffs have already demonstrated their intention not to participate in the proposed class and not to be bound by the CAC by filing their own Direct Action (non-class) Complaint. *See supra* at 3. Paragraph 25, as written, would either convert the Sealy Plaintiffs' Complaint into a class complaint or force the non-class Sealy Plaintiffs to adopt the Class's CAC, either of which would be error. *See Newsome v Norris,* 888 F.2d 371, 381-82 (6th Cir. 1989) (vacating order converting individual action into class action); *see also Katz v. The Carte Blanche Corp.*, 496 F.2d 747, 760 (3rd Cir. 1974) (plaintiff controls whether to request for class treatment); *Wilson v. Zarhadnik,* 534 F.2d 55, 57 (5th Cir. 1976) ("obvious error" for court *sua sponte* to treat case as class action when not so pled). The solution is to clarify that this Section of the CAC deals with the Consolidated Amended *Class* Complaint, and to modify the phrase "Plaintiff" in the first

8

sentence of paragraph 25 so it means that any other *class* plaintiff is deemed to have automatically adopted the CAC.

- Paragraph 25, second sentence, of the CMO reads that "Defendants shall not be required to answer or otherwise respond to any other individual or Class Complaint." Defendants read this sentence to mean that they do not have to answer or otherwise respond to the Sealy Plaintiffs' Direct Action (non-class) Complaint. This causes problems because it either forces non-class direct action plaintiffs like the Sealy Plaintiffs to rely on interim class counsel and adopt the Class's CAC when, in fact, those lawyers cannot legally or ethically represent the Sealy Plaintiffs because of their duties to the proposed class and the Sealy Plaintiffs' retention of their own counsel; or it effectively "parks" the Sealy Plaintiffs Complaint, prevents their case from being litigated, and denies them their due process right to prosecute their case as the discovery record is created. The solution is to remove the phrase "individual or" from the second sentence of paragraph 25 so Defendants need not answer or otherwise response to any other *class* complaint. (We address below when Defendants should respond to the Sealy Plaintiffs' Complaint.)

- Paragraph 26, second sentence, of the CMO explains in substance how the CAC will be used administratively to frame issues in the case. This makes sense for the *class* action which includes a proposed class definition and class allegations about numerosity, commonality of legal and factual questions, typicality of claims, and adequacy of the proposed class representatives. But this provision does not, and cannot, apply to the Sealy Plaintiffs' Direct Action Complaint which is *not* a class action and alleges only individual corporate claims. The solution is to add the word "class" to modify a few words in the sentence to clarify its application to the class action.

- Paragraph 26, third sentence, of the CMO states that the "allegations of the CAC … shall be determinative for purposes of assessing the proper scope of discovery and the preclusive effect of any rulings made or judgments entered by this Court." We anticipate based on experience in other MDL cases and the obvious efficiencies to be realized that after coordinating with the Class Plaintiffs, the various plaintiffs would serve joint written discovery to Defendants. We expect some of that discovery to be specific to the Sealy Plaintiffs' claims.[4] But the Sealy Plaintiffs' Complaint names Defendants not named in the CAC, and contains some other allegations not in the CAC. *See supra* at 4. The CAC is plainly not the proper benchmark for the Court to evaluate the scope of discovery regarding allegations in the Sealy Plaintiffs' Complaint that are not

---

[4] Given the nature and magnitude of the Sealy Plaintiffs' polyurethane foam purchases, we anticipate that at least some Defendants will have sales and marketing personnel dedicated to responding to mattress and furniture customer needs as well as files and records relevant to the Sealy Plaintiffs' and their business segment that will be discoverable separate and apart from class-related discovery.

9

KENNY NACHWALTER, P.A.

contained in the CAC. Because of these differences, we do not believe that the Court could properly use a ruling or judgment against the Class Plaintiffs based on the CAC as binding on the Sealy Plaintiffs, although such rulings will certainly be instructive for the Sealy Plaintiffs and Defendants with regard to the Sealy Plaintiffs' Complaint. The solution to these problems is to add language in the third sentence in paragraph 25 to make clear that the text refers to the Class Plaintiffs.

- Paragraph 26, fourth sentence, of the CMO states that "[n]o class definition in any individual Complaint not included within the CAC shall survive this Court's class certification decision." The word "individual" modifying "Complaint" in this sentence may create confusion if a direct action (*i.e.*, non-class) is characterized as an individual action. The solution is to substitute the word "Class" for the word "individual" in this sentence.

- A new Section should be added to the Initial CMO to expressly recognize the Sealy Plaintiffs active participation in discovery and other proceedings in MDL 2196. We suggest that this new Section should contain the following provisions:

    - *Response to the Sealy Plaintiffs' Complaint by Defendants who are named in the CAC* – We recognize that the Court's ruling on Defendants' motions directed to the CAC will be instructive for Defendants and the Sealy Plaintiffs with regard to any motion directed at or amendment of the Sealy Plaintiffs' Complaint. Thus, new paragraph 28 provides that within 20 days of the Court's ruling on a motion to dismiss the CAC, the Defendants will answer, move or otherwise respond to the Sealy Plaintiffs' Complaint unless, before that date, the Sealy Plaintiffs' amend their pleading in which event the Defendants' answer or other response will be due 20 days after service of the amended pleading.

    - *Response to the Sealy Plaintiffs' Complaint by Defendants not named in the CAC* – New paragraph 29 provides that the Defendants named in the Sealy Plaintiffs' Complaint who are *not* named in the CAC must answer, move or otherwise respond to the Sealy Plaintiffs' Complaint on the same briefing schedule as the Court already has set for the indirect purchaser class plaintiffs. Per the Court's Order of February 24, 2011 (Dk. 45), Defendants' answer or motion is due May 6, 2011, responses are due on May 23, 2011, and replies are due on June 1, 2011. (To be clear, we think it more efficient that such briefing occur in conjunction with briefing on the CAC, but the Class and Defendants have already settled on a briefing schedule which does not include the Sealy Plaintiffs.)

    - *Sealy Plaintiffs' active participation in discovery and other proceedings in the case* – New paragraph 30 provides that the Sealy Plaintiffs may actively participate in all discovery and other proceedings in MDL 2196 in coordination with other plaintiffs' counsel.

KENNY NACHWALTER, P.A.

- *Coordination among Plaintiffs and with Defendants in discovery and other proceedings in the case* – New paragraph 31 provides that the Sealy Plaintiffs, the Class Plaintiffs and Defendants will coordinate to minimize burden to the litigants and the Court, and the Sealy Plaintiffs and the Class Plaintiffs will coordinate to avoid duplication in seeking discovery and in proceedings before the Court.

The foregoing changes in the CMO will establish a structure in MDL 2196 which will enable the Sealy Plaintiffs to participate actively and meaningfully in discovery and other proceedings in an efficient and coordinated manner with the Class Plaintiffs and Defendants without prejudice to the Sealy Plaintiffs.[5]

We understand that Defendants object to our proposed amendment to the Initial CMO because they think it will be inefficient and lead to piecemeal litigation. On the contrary, the amendment we propose is designed to maximize efficiency by providing a framework for the *coordinated* prosecution of the case among plaintiffs' counsel representing different clients. Moreover, as we note earlier, this case involves experienced lawyers on both sides who know how to coordinate and cooperate to manage an antitrust case efficiently with the presence of class and direct action plaintiffs. The Initial CMO simply needs to be amended to provide a structure for the lawyers in this case to do just that. As we explain in the next Section, the changes that we propose in the Initial CMO are routine.

---

[5] We leave it to the Court to decide whether the Initial CMO, as amended, should provide more generally for the involvement of any direct action plaintiff in the case and not just the Sealy Plaintiffs. If the CMO provides for such a more general structure, then the Court may also want to designate a liaison counsel for direct action (non-class) plaintiffs by amending its Amended Order of January 28, 2011 (Dk. 151). We are not seeking the position but would serve if the Court wants us to. We have served as liaison counsel for direct action plaintiffs in other antitrust MDL cases. *See Rubber Chemicals Antitrust Litig.*,, MDL 1648 (N.D. Cal.), App. Ex. 11; *Payment Card Interchange and Merchant Discount Antitrust Litig.*, MDL 1720, App. Ex. 12; *Linerboard Antitrust Litig.*, MDL 1261 (E.D. Pa.), App. Ex. 13; *Egg Antitrust Litig.*, MDL 2002, App. Ex. 14.

## V. The Modest Revisions to the Initial CMO Proposed By The Sealy Plaintiffs Are Commonly Contained In Case Management Orders In MDL Antitrust Cases

The revisions which the Sealy Plaintiffs request that this Court make to the Initial CMO are routine in MDL antitrust proceedings.

Courts commonly provide a management structure in an antitrust MDL proceeding involving class actions when a direct action is filed early in the case and before class certification. For example, in *Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL 1720 (E.D.N.Y.), Pretrial Order 5 at the start of the proceedings established a case structure for the active involvement of counsel for class plaintiffs, direct action (non-class) plaintiffs, and defendants. *See* App. Ex. 12. There are a number of other antitrust MDL cases which have likewise established a structure for the active involvement of a direct purchaser plaintiff in the case early and before class certification in coordination with the class and defendants. *See Rubber Chemicals Antitrust Litig.*, MDL 1648 (N.D. Cal.), Scheduling Order, Ap. Ex. 11; *Chocolate Antitrust Litig.,* MDL 1935 (M.D. Pa.), CMO No. 5, App. Ex. 15; *Eggs Antitrust Litig.,* MDL 2002 (E.D. Pa.), CMO 15, App. Ex. 14; *Androgel Antitrust Litig.*, MDL 2084 (N.D. Ga.), Initial Case Management Order (accord), App. Ex. 16.[6]

Courts also modify case management orders to provide for the active and coordinated participation of direct action plaintiffs later in a case after a court certifies a class. *See, e.g., Vitamins Antitrust Litig.*, MDL 1285 (D.D.C.) (early in case, after settlement class proposed but not certified, establishing coordinated structure for direct action plaintiffs, class plaintiffs and defendants; *Hydrogen Peroxide Antitrust Litig.*, MDL 1682, Joint Case Management Schedule of

---

[6] Several of the defense firms in *this* case represented defendants in some of those cases and are familiar with an early case management structure in an MDL proceeding that expressly accommodates the presence and active involvement of a direct action plaintiff in the case.

Oct. 16, 2006, App. Ex. 17; *Linerboard Antitrust Litig.,* MDL 1261 (E.D. Pa.), CMO 20 dated Nov. 22, 2005, App. Ex. 13.

### VI. Conclusion

Based on the foregoing analysis, the Sealy Plaintiffs request that the Court grant their Motion and modify the Initial CMO as provided in this Memorandum. For the Court's convenience, a proposed, revised "red-lined" and "clean" Amended Initial CMO is attached to the Sealy Plaintiffs' Motion as Exhibits 1 and 2, respectively.

Dated: April 11, 2011

Respectfully submitted,

KENNY NACHWALTER, P.A.
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Douglas H. Patton, Esquire*
James T. Almon, Esquire
201 South Biscayne Blvd., Suite 1100
Miami, Florida 33131-4327
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: wblechman@kennynachwalter.com

By:_____
William J. Blechman
***Counsel for Direct Action (non-class) Plaintiffs***

### CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2011 the foregoing document was filed electronically using the Court's ECF system which will send notification of such filing to the ECF participants.

_____
William J. Blechman

*LICENSED TO PRACTICE LAW IN MA, UT, DC AND NY; NOT LICENSED IN FLORIDA.

404272.1

KENNY NACHWALTER, P.A.