# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

|   |   |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL DIRECT PURCHASER CASES | MDL Docket No. 2196<br><br>Index No. 10 MD 2196 (JZ) |

## DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO THE SEALY PLAINTIFFS' MOTION TO MODIFY THE INITIAL CASE MANAGEMENT ORDER

Defendants[1], by counsel, pursuant to the Local Civil Rules and the Initial Case Management Conference Order ("CMO"), oppose the Motion to Modify the CMO filed by Direct Purchaser Plaintiffs Sealy Corporation, Select Comfort Corporation, Simmons Bedding Company, Tempur-Pedic International, Inc. and La-Z-Boy Incorporated (collectively, the "Sealy Plaintiffs"), and state as follows:

---

[1] Defendants Plastomer Corporation, Crest Foam Industries, Inc., Inoac USA Inc., and Otto Bock Polyurethane Technologies, Inc. are not named in the Sealy Plaintiffs' Complaint. However, they join in this opposition brief because the Sealy Plaintiffs' proposed amendments to the CMO would affect all Defendants.

## INTRODUCTION

Defendants do not oppose the right of the Sealy Plaintiffs to retain separate counsel or for that counsel to participate in this action. Defendants file this opposition out of concern that the efficient administration of this case is threatened by the Sealy Plaintiffs' request for special status solely because they were the first non-class Direct Purchaser Plaintiffs to file in this Court. The proposal advanced by the Sealy Plaintiffs does not adequately address the likelihood that other non-class Direct Purchaser Plaintiffs will also seek to pursue their actions independently. Thus, it is important that clear guidelines be established for the participation of such non-class Direct Purchaser Plaintiffs. Likewise, the Sealy Plaintiffs' brief is in sharp contrast to its suggestion of coordinated and non-duplicative discovery. The Sealy Plaintiffs' proposal presents a serious risk of multi-track discovery that will increase the likelihood of substantial duplicative discovery and unnecessary motion practice.

Defendants request that the Court delay action on the Sealy Plaintiffs' Motion until after a ruling on the pending Motions to Dismiss. Doing so will afford all parties and the Court a more realistic view of the contours of this case and will provide guidance on the scope of discovery. Additionally, it appears likely that other parties similarly situated to the Sealy Plaintiffs will be in the case at that time and coordination between such new parties and all plaintiffs is likely to be beneficial.

## BACKGROUND FACTS

On January 20, 2011, the Court entered the CMO, which established an efficient and clear Case Management Plan to govern this complex litigation. It applies "to all actions transferred to this Court and consolidated for pretrial purposes by the Judicial Panel on Multidistrict Litigation . . ., as well as all related actions originally filed in this Court . . . ."

(CMO 1.) The CMO directed the Plaintiffs to file a Consolidated Amended Complaint ("CAC") (*id.* ¶ 24), which "shall be deemed adopted automatically by any Plaintiff who . . . files a lawsuit in any federal court which is subsequently transferred to this Court, or is directly filed in this Court." (*Id.* ¶ 25.) As the CMO provides:

> The CAC shall be used as a device to facilitate administration of the dockets, streamline competing proposed class definitions, conspiracy allegations and legal theories, reduce the expense incurred in responding to multiple complaints and assist in identifying issues common to all cases centralized before this Court. The allegations of the CAC, however, shall be determinative for purposes of assessing the proper scope of discovery and the preclusive effect of any rulings made or judgments entered by this Court.

(*Id.* ¶ 26.) The CMO unequivocally directs that "Defendants shall not be required to answer or otherwise respond to any other individual or Class Complaint" besides the CAC. (*Id.* ¶ 25.)

In accordance with the CMO, the Direct Purchaser Plaintiffs filed their CAC on February 28, 2011. In it, they allege that "[t]his lawsuit is brought as a class action on behalf of all entities and persons . . . that purchased flexible polyurethane foam directly from one or more of the Defendants from January 1, 1999 to the present." (CAC ¶ 2.) The CAC defines the putative Direct Purchaser Class as follows:

> All persons or entities that purchased flexible polyurethane foam directly from Defendants and/or their co-conspirators from January 1, 1999 to the present. Excluded from the Class are governmental entities, Defendants, their co-conspirators and their officers, employees, agents, representatives, parents, subsidiaries and affiliates.

(CAC ¶ 142.) The Direct Purchaser Plaintiffs aver that they "will fairly and adequately protect the interests of the members of the Class," and that their "interests are aligned with, and not antagonistic to, those of the other members." (*Id.* ¶ 149.)[2]

On March 22, 2011, the Sealy Plaintiffs filed a Complaint and Demand for Jury Trial ("Complaint") in this Court.[3] Like the Direct Purchaser Plaintiffs, they allege that "[e]ach of them directly purchased polyurethane foam from Defendants and/or their co-conspirators during the conspiracy," which allegedly existed "between at least approximately January 1999 and July 2010." (Compl. ¶ 1.) The Sealy Plaintiffs' Complaint and the CAC contain completely overlapping factual allegations, identical claims of alleged violations of federal antitrust laws, and parallel prayers for relief. Unlike the CAC, however, the Sealy Plaintiffs did not style their Complaint as a class action. Nevertheless, plainly at this juncture of the litigation the Sealy Plaintiffs are members of the putative class and, if a direct purchaser class were to be certified by the Court, the Sealy Plaintiffs would be members of that Class, subject to their option to "opt-out." At the moment, there is no "class" from which they can opt-out.

Since filing their Complaint, the Sealy Plaintiffs, through their own counsel, have participated in conferences and correspondence among the parties related to scheduling, briefing and other matters governed by the CMO. However, the Sealy Plaintiffs repeatedly have expressed their desire to be treated as a separate group of "direct action (non-class)" direct purchaser plaintiffs, and they have asked the other parties to treat them as such, even though the Court has not approved any such deviation from the current Case Management Plan. In essence,

---

[2] They also allege that "the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants" (CAC ¶ 150), and that a class action will eliminate "the duplication of effort and expense that numerous individual actions would engender." (*Id.* ¶ 152.) Defendants find it difficult to square these allegations with the Direct Purchaser Plaintiffs' consent to allow the Sealy Plaintiffs to prosecute an individual action separately from other class members.

[3] In the Civil Cover Sheet filed with the Complaint, the Sealy Plaintiffs notified the Court that their action was related to another pending civil case (*see* Sealy Pls.' Civ. Cover Sheet 2), which they identified -- by docket number ("10-md-02196") and Judge ("Jack Zouhary") -- as this consolidated MDL proceeding. (*Id.* 1.)

the Sealy Plaintiffs are asking for the right to proceed independently in this MDL, to have their Complaint responded to separately and to be allowed to pursue their own discovery.

Defendants are not against reasonable adjustments to the CMO in order to accommodate any special interests of non-class plaintiffs like the Sealy Plaintiffs. However, because of the very real possibility that the Sealy Plaintiffs' proposed changes to the CMO would fragment the MDL unnecessarily, Defendants oppose their current request for "separate treatment."

**ARGUMENT**

**I.　The CMO Should Be Structured to Clarify and Narrow the Issues in this Litigation and Move the Case to an Efficient Resolution.**

This Court obviously has discretion to manage this complex case in the manner it "deems appropriate for the just, expeditious and inexpensive resolution of the litigation." Local Rule 16.3(c)(6)(A). Despite the Sealy Plaintiffs' claims to the contrary, Defendants do not contend -- and never have suggested -- otherwise. Defendants also are mystified by the Sealy Plaintiffs' contention that Defendants somehow have "refused" to allow their "active participation" in this case and have taken an "unprecedented and extreme" position. (*See* Sealy Pls.' Memo. In Supp. of Mot. to Modify CMO ("Sealy Brief") 6-7.)[4] Just the opposite is true.

Counsel for the Sealy Plaintiffs attended the Initial Case Management Conference in this case on January 19, 2011, and was fully aware of the management structure that this Court established for the MDL. No suggestion was made at the Conference that the case be structured any differently. The Sealy Plaintiffs' counsel likewise has been kept fully advised of all events and activities of the MDL and, to our knowledge, has participated in every communication between Lead Counsel for the Direct and Indirect Purchaser Plaintiffs and Defendants' Liaison

---

[4] Many of the emails the Sealy Plaintiffs included in their Appendix have been redacted to exclude prior and subsequent emails between their counsel, counsel for Defendants and counsel for Plaintiffs. For purposes of clarity, Defendants have attached more complete copies of six of those emails, in chronological order, as Exhibit A. The redacted versions of these emails are included in Exhibits 3, 4, 8 and 9 of the Sealy Plaintiffs' Appendix.

5

Counsel regarding case schedules and other important case activities. Regardless, if the Court determines that amendments to the CMO would "clarify, narrow and resolve the issues and . . . move the case as efficiently and expeditiously as possible to a fair resolution," Local Rule 16.3(c)(6)(B), the Court should amend the CMO in the manner deemed most likely to achieve that result. The Sealy Plaintiffs' Motion, however, concerned as it is with staking out discovery tracks and case schedules distinct from those established for the Direct and Indirect Purchaser Class Plaintiffs, almost inevitably will create the redundancy and lack of coordination that the MDL process was designed to eliminate.

## II. Revisions to the CMO Suggested by the Sealy Plaintiffs Would Seriously Compromise the Efficiency and Functioning of the MDL.

The Sealy Plaintiffs propose a number of specific revisions to the CMO, which effectively limit its application to the Class Plaintiffs and the Sealy Plaintiffs, to the exclusion of all other Plaintiffs that file actions transferred to this MDL proceeding. What they are suggesting, moreover, is nothing less than a total segmentation of the MDL. They request, for example, to have Defendants file separate motions and pleadings in response to their Complaint. They also demand the right to serve individual discovery "separate and apart from class-related discovery." (Sealy Brief 9 n.4.) While they pay lip service to "coordination" by suggesting that they "anticipate based on . . . the obvious efficiencies to be realized that after coordinating with the Class Plaintiffs, the various plaintiffs would serve joint written discovery to Defendants," with some items "specific to the Sealy Plaintiffs' claim" (*id.* 9), this "camel's nose under the tent" approach promises to create a logistical nightmare and almost surely will escalate sharply the number of discovery disputes. If the Sealy Plaintiffs truly are serious about coordination, they can achieve the same result under the current CMO by simply coordinating with the Direct

and Indirect Purchaser Plaintiffs to include their "specific" discovery requests in any discovery that is served.

How far afield the Sealy Plaintiffs' proposal would drag this MDL is made clear by their contention that, as self-described "non-members" of the putative class, class certification discovery will delay or prevent their ability to participate in fact discovery and prosecute their claims. They are asking, in other words, not only for separate discovery rights, but also for a completely different case schedule. Unlike many MDL proceedings, however, the CMO and the parties' Proposed Case Schedule in this MDL ***do not*** separate merits discovery from class discovery or distinguish the periods when each may occur. All discovery occurs as an integrated whole, concurrently and on the same aggressive schedule.[5] Consequently, while class certification issues may influence the *scope* of discovery issues in some instances, it will not slow down the schedule or alter the sequence of any party's discovery.

Defendants do not contend that it is never appropriate to allow certain "non-class" plaintiffs to proceed separately in an MDL proceeding, but there should be good reason for doing so. For example, a settlement class might be established from which non-settling plaintiffs would have to be excluded. There might be some issues unique enough to particular plaintiffs that separate treatment would enhance case management efficiency. The timing of a plaintiff's entry into the proceedings could influence "tracking" decisions. Presumably, the orders from other MDL proceedings that the Sealy Plaintiffs rely on were entered because of these or other reasons which the courts involved found to be legitimate and appropriate to the circumstances in *those* cases. The Sealy Plaintiffs, however, have neither identified any "special circumstances" justifying different treatment here nor articulated how their proposed amendments to the CMO

---

[5] Under the current Case Schedule, fact discovery would end in October 2012, with Plaintiffs' Class Certification Motions due much earlier, in April 2012.

7

would enhance efficiencies rather than simply adding another layer of complexity to an already complicated proceeding.

**III. The Sealy Plaintiffs Have Not Articulated Any Basis Justifying Separate Treatment.**

Pursuant to the CMO and the CAC, and despite their claims to the contrary, the Sealy Plaintiffs currently are members of the putative Direct Purchaser Class. They allege that they directly purchased polyurethane foam from Defendants -- allegedly a larger volume than some other customers -- which puts them squarely within the CAC's Direct Purchaser Class definition. Consequently, unmodified, the CMO unquestionably governs their participation in this action. If a class is certified, they will have the ability to opt out if they still believe that is in their best interest.

The filing of a "direct action (non-class)" Complaint plainly is not a meaningful basis for distinguishing the Sealy Plaintiffs for pre-trial purposes. Another non-class, direct purchaser case -- *H.M. Richards, Inc., et al. v. Hickory Springs Manufacturing Co., et. al*, Case No. 1:11-cv-00067 (N.D. Miss.) -- has already has been transferred to this MDL (*see* April 12, 2011 Conditional Transfer Order (CTO-3)), and a second -- *Factory Direct Inc. v. The Carpenter Company, et al.*, Case No. 5:11-cv-00045-M (W.D. Okla.) -- likely is on its way. [6] (*See* March 3, 2011 Conditional Transfer Order (CTO-2), a copy of which is attached hereto as Exhibit B.) Exceptions made for the Sealy Plaintiffs presumably also will have to be made for other non-class plaintiffs, direct or indirect, potentially setting up a series of individual cases within the MDL, all on different schedules and with different discovery demands and obligations.

The Sealy Plaintiffs' stated rationale for restructuring the MDL -- *e.g*., because of "the importance of polyurethane foam and this case to their businesses" and the "substantial volume

---

[6] A third "direct action (non-class)" Complaint was filed on Thursday, April 21, 2011 in the Northern District of Mississippi. *See Henson Sleep Relief, Inc. v. Hickory Springs Manufacturing Co., et al.*, Case No. 11-cv-95 (N.D. Miss). Defendants plan to tag this action pursuant to the J.P.M.L. Rules for transfer to the MDL.

of their direct purchases" (Sealy Brief 3) -- also is a distinction without a difference. The plaintiff in the *Factory Direct* case, for example, is contesting transfer to the MDL on essentially the same basis.[7] (*See* Factory Direct's Mot. to Vacate Conditional Transfer Order 1-3, a copy of which is attached hereto as Exhibit C.) The Sealy Plaintiffs simply ignore the fact, moreover, that at this stage of the proceedings, none of the purchase volumes for any plaintiff, including individual members of the putative class, are known. In any event, the volume of a plaintiff's purchases does not in any way diminish the case management problems created by allowing some MDL participants to separately litigate claims that are identical, or nearly so, to the claims brought by all others.

The Sealy Plaintiffs' argument that they should be treated differently because their Complaint names two foreign defendants that are not named in the CAC gets them no further. The CMO anticipates that additional complaints will be transferred to or otherwise become part of the MDL, both class and individual. It provides, expressly, that all subsequently filed class or individual complaints will be deemed to have adopted the CAC. That means, of course, that "new parties" named in those suits, domestic or foreign, assuming the Court has jurisdiction, also necessarily would be deemed to be included in the CAC.[8]

The same holds true for depositions of "sales and marketing personnel dedicated to . . . mattress and customer needs" and requests for documents "relevant to the Sealy Plaintiffs' [sic] and their business segment." (Sealy Brief 9.) Why the Sealy Plaintiffs' discovery relating to mattresses would need to be "discoverable separate and apart" from class-related discovery related to exactly the same product lines (*id.*) is not explained.

---

[7] While the Panel has not yet ruled on that motion, similar requests have been routinely denied by the Panel in many different MDLs.
[8] Both foreign companies are affiliates of Defendants already named in the CAC in any event.

The Sealy Plaintiffs claim that only by allowing them to litigate their claims more or less independently can their interests be "adequately" represented is illusory, at best. The management structure established by the Court for this MDL requires Court-appointed Lead Counsel to coordinate activities for all Plaintiffs, class or non-class, direct and indirect. Prior to the filing of the CAC, 50 different plaintiffs had filed direct purchaser claims in 42 individual complaints. Only 7 of those original 50 plaintiffs are named as plaintiffs in the CAC. Some of the lawyers representing the original plaintiffs not included as named plaintiffs in the CAC are neither "Lead Counsel" for the direct purchasers, nor members of the direct purchasers' "Executive Committee." This obviously does not prevent the plaintiffs represented by lawyers not named to leadership positions in the MDL from fairly prosecuting their claims—if it did, no MDL ever would be possible. Carried to its logical conclusion, in fact, the Sealy Plaintiffs' argument would mean that *every* non-class litigant transferred to the MDL either would have to become an island unto itself with individual discovery rights and a separate case schedule or that no non-class complaint ever could be transferred to an MDL. The conventional MDL "fixes" for these types of concerns are far less dramatic, simply requiring coordination by all plaintiffs, as the Court already has directed, and/or modifying the MDL's management structure to ensure that all interests are represented.

The CMO provides an efficient case management structure for governing this MDL proceeding. The Sealy Plaintiffs are direct purchasers of polyurethane foam. Their claims are virtually identical to those made by all other Plaintiffs. They have not articulated any compelling reason why the Court and other parties should treat them differently, and their motion to amend the CMO -- certainly in the manner they suggest it should be amended -- should be denied.

**IV.   Less Severe Options than the Sealy Plaintiffs' Proposed Revisions to the Case Management Order Exist, which Are More Efficient and Easier to Implement.**

If the Court were to find that there are reasons to allow for separate treatment of the Sealy Plaintiffs in this MDL, there are a number of less severe options that should adequately address any possible concerns the Sealy Plaintiffs may have while preserving most of the efficiencies built into the current MDL structure and Case Management Plan. *See, e.g.*, *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 2011 U.S. App. LEXIS 7887, at *37 (9th Cir. Apr. 18, 2011) ("There is much, of course, that an MDL court can do in its sound discretion in order to manage multidistrict litigation effectively. It can designate a lead counsel. It can hold some cases in abeyance while proceeding with others. In discretionary matters going to the phasing, timing and coordination of the cases the power of the MDL court is at its peak.").

For example, it is easy enough to add the two additional Defendants named in the Sealy Plaintiffs' Complaint to the CAC. That approach is easier and more efficient to implement than allowing the Sealy Plaintiffs to create a series of mini-MDLs within the MDL. The CAC also could be amended to add the "alter ego" and "Canadian-U.S. conspiracy" allegations from their Complaint, where those allegations could be tested against *Twombly's* standards; Defendants' Motion to Dismiss already addresses at least the alter ego argument. By contrast, under the Sealy Plaintiffs' approach, every party attempting to avoid consolidated MDL treatment simply could add a party or a claim or theory not included in the CAC, meritorious or not, and ask for separate treatment.

Allowing the Sealy Plaintiffs to proceed on a different track as "direct action (non-class)" plaintiffs, will be invitation to other direct (or indirect) purchasers to ask for similar treatment. Consequently, regardless of any changes that may be made to the CMO, all discovery should continue to be coordinated according to the schedule and processes currently set out in the CMO

11

and Case Schedule.[9] Absent compelling circumstances to justify a departure from either the CMO or the Case Schedule -- and the Sealy Plaintiffs have provided none -- the same pre-trial processes, discovery and schedule should apply to all parties.

## CONCLUSION

Designating the Sealy Plaintiffs as a separate group of "direct action (non-class) direct purchaser" plaintiffs prior to class certification almost surely will fragment the MDL and generate the repetitive, burdensome discovery process that MDLs are intended to eliminate. Redundant discovery is the anathema of pretrial proceedings consolidated "for the convenience of the parties and witnesses and [to] promote the just and efficient conduct of" related civil actions. 28 U.S.C. § 1407. It is difficult to see how allowing the Sealy Plaintiffs to proceed separately can have any other result.

The case management structure established by the CMO more than adequately provides the coordination among parties expected in an MDL, and the Sealy Plaintiffs have provided no compelling reasons for changing it. It is framed around the CAC, which is designed to cover all Defendants and all Direct Purchaser Plaintiffs -- including later joining plaintiffs, like the Sealy Plaintiffs. The fact that the Sealy Plaintiffs eventually may opt out if a class is certified does not mean that pre-certification discovery and the Case Schedule should not be coordinated, particularly in a case like this where the discovery schedule is aggressive and class and merits discovery have not been bifurcated.

Defendants respectfully request that the Court delay its ruling on the Sealy Plaintiffs' Motion until after the Court's ruling on motions to dismiss. At that time, other parties similarly

---

[9] If counsel for the Sealy Plaintiffs were designated to serve as liaison counsel for all "direct action (non-class) plaintiffs" (*see* Sealy Brief 11 n.5), the other non-class plaintiffs presumably would have many of the same objections the Sealy Plaintiffs raise in their motion. Whether or not liaison counsel is appointed for the non-class, direct purchasers, however, coordination of discovery and case activities among all plaintiffs should be required.

situated to the Sealy Plaintiffs will be part of the MDL, and the contours of the case, identity of Defendants and scope of the allegations will be more firmly established. The Court and all the parties can then discuss the best procedures for efficiently coordinating discovery and case management.

In the alternative, Defendants respectfully request that the Court deny the Sealy Plaintiffs' Motion to Modify the Initial Case Management Order.

April 25, 2011                                    Respectfully submitted,


/s/ James H. Walsh                              /s/ Kendall Millard
James H. Walsh                                  Kendall Millard
Howard Feller                                   BARNES & THORNBURG, LLP
Bethany Lukitsch                                11 South Meridian Street
MCGUIREWOODS LLP                                Indianapolis, IN 46204-3535
One James Center                                Phone: (317) 231-7461
901 East Cary Street                            Fax:   (317) 231-7433
Richmond, VA 23219-4030                         kmillard@btlaw.com
Phone: (804) 775-4356
Fax:   (804) 698-2200                           /s/  Michael D. Mustard
jwalsh@mcguirewoods.com                         Michael D. Mustard
hfeller@mcguirewoods.com                        BARNES & THORNBURG LLP
blukitsch@mcguirewoods.com                      600 One Summit Square
                                                Fort Wayne, IN 46802-3119
                                                Phone: (260) 423-9440
*Counsel for Carpenter Co., E.R.*               Fax:   (260) 424-8316
*Carpenter, L.P., Carpenter Holdings, Inc.*     mmustard@btlaw.com
*and Carpenter Canada Co.*

                                                *Counsel for Flexible Foam Products, Inc.,*
                                                *Ohio Decorative Products, Inc.*

/s/   Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC  27703
Phone:  (919) 862-2200
Fax:      (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Defendant Hickory Springs Manufacturing Company*

/s/   Edward G. Warin
Edward G. Warin
John P. Passarelli
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE  68102
Phone:  (402) 346-6000
Fax:      (402) 346-1148
edward.warin@kutakrock.com
john.passarelli@kutakrock.com

*Counsel for Defendant Future Foam, Inc.*


/s/   Howard B. Iwrey
Howard B. Iwrey
DYKEMA GOSSETT, PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304-2820
Phone:  (248) 203-0526
Fax:      (248) 203-0763

*Counsel for Defendants Inoac USA Inc. and Crest Foam Industries, Inc.*

/s/   Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone:  (513) 381-2838
Fax:  (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 559-2227
jrebein@shb.com

*Counsel for Defendant Leggett & Platt, Inc.*

/s/ Francis P. Newell  
Francis P. Newell  
Peter M. Ryan  
COZEN O'CONNOR  
1900 Market Street  
Philadelphia, PA 19103  
Phone: (215) 665-2118  
Fax: (215) 665-2013  
fnewell@cozen.com  
pryan@cozen.com  

*Counsel for Defendant FXI - Foamex Innovations, Inc.*

/s/ Richard A. Duncan  
Richard A. Duncan  
FAEGRE & BENSON LLP  
2200 Wells Fargo Center  
90 South Seventh St.  
Minneapolis, MN 55402-3901  
Phone: (612) 766-7000  
Fax: (612) 766-1600  
rduncan@faegre.com  

*Counsel for Defendant Otto Bock Polyurethane Technologies, Inc.*


/s/ Robert J. Gilmer, Jr.  
Robert J. Gilmer, Jr.  
EASTMAN & SMITH LTD.  
One SeaGate, 24th Floor  
P.O. Box 10032  
Toledo, Ohio 43699-0032  
Phone: (419) 247-1766  
Fax: (419) 247-1777  
rjgilmer@eastmansmith.com  

/s/ Timothy J. Coleman  
Timothy J. Coleman  
Bruce McCulloch  
Terry Calvani  
John K. Warren  
FRESHFIELDS BRUCKHAUS DERINGER US LLP  
701 Pennsylvania Avenue, NW  
Suite 600  
Washington DC 20004-2692  
Phone: (202) 777-4555  
Fax: (202) 777-4555  
tim.coleman@freshields.com  

*Counsel for Vitafoam, Inc. and Vitafoam Products Canada Ltd.*

/s/ Daniel G. Swanson  
Daniel G. Swanson  
GIBSON, DUNN & CRUTCHER LLP  
333 South Grand Avenue  
Los Angeles, CA 90071  
Phone: (213) 229-6690  
Fax: (213) 229-6919  
dsawnson@gibsondunn.com  

Cynthia Richman  
John W.F. Chesley  
GIBSON, DUNN & CRUTCHER LLP  
1050 Connecticut Avenue, N.W.  
Washington, DC 20036-5306  
Phone: (202) 530-8500  
Fax: (202) 530-9651  
crichman@gibsondunn.com  
jchesley@gibsondunn.com  

*Counsel for Woodbridge Foam Corporation, Woodbridge Sales and Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

/s/   Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Erica F. Ghali
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone:  (404) 881-7000
Fax:     (404) 881-7777
randall.allen@alston.com
teresea.bonder@alston.com
erica.ghali@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/  Shepard Goldfein
Shepard Goldfein
Elliot A. Silver
Skadden, Arps, Slate,
Meagher & Flom LLP
Four Times Square
New York, NY 10036
Phone: (212) 735-3000
Fax:     (212) 735-2000
shepard.goldfein@skadden.com
elliot.silver@skadden.com

*Counsel for Domfoam International, Inc.
and Valle Foam Industries (1995) Inc.*

/s/   Sheldon Klein
Sheldon Klein
BUTZEL LONG
Stoneridge West
4100 Woodward Ave.
Bloomfield Hills, MI 48304
Phone:  (248) 258-1414
Fax:     (248) 258-1439
klein@butzel.com

*Counsel for Defendant Plastomer
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2011, a copy of the forgoing Defendants' Joint Memorandum In Opposition To The Sealy Plaintiffs' Motion To Modify The Initial Case Management Order was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

      /s/ Bethany G. Lukitsch
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4711
Fax: (804) 698-2261
blukitsch@mcguirewoods.com