UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL CASES | )<br>)<br>)<br>)  MDL Docket No. 2196<br>)  Index No. 10-MD-2196 (JZ)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO VACATE AND SET ASIDE RULE 41(A)(1) NOTICES OF
VOLUNTARY DISMISSAL AND FOR OTHER RELIEF**

## INTRODUCTION

Defendants Carpenter Co. (sued as The Carpenter Company), Carpenter Canada Co., Carpenter Holdings, Inc., Domfoam International, Inc., E.R. Carpenter, L.P., Flexible Foam Products, Inc., Future Foam, Inc., FXI - Foamex Innovations, Inc., Hickory Springs Manufacturing Company, Mohawk Industries, Inc., Ohio Decorative Products, Inc., Valle Foam Industries (1995) Inc., Woodbridge Foam Corporation, Woodbridge Foam Fabricating, Inc., and Woodbridge Sales and Engineering, Inc. (collectively, "Defendants"),[1] by counsel, move for an order that (1) vacates and sets aside the notices of voluntary dismissal without prejudice, which were filed in a number of the consolidated cases in this MDL;[2] (2) re-instates those cases to the Court's docket as part of MDL 2196; and (3) modifies the current Case Management Order (A) to preclude any further voluntary dismissals without prejudice pursuant to Fed. R. Civ. P. 41(a)(1), absent prior leave of Court or consent of Defendants, and (B) to condition any voluntary dismissal, whether with or without prejudice, on proper terms under Fed. R. Civ. P. 41(a)(2), including that dismissed Plaintiffs will be treated as parties for purposes of discovery.

---

[1] Defendants Inoac USA Inc., Crest Foam Industries, Inc., Plastomer Corporation, and Otto Bock Polyurethane Technologies, Inc. were not named as Defendants in any of the actions that have been voluntarily dismissed to date. However, they do not oppose the present Motion.

[2] The cases in which such notices have been filed are: *Johs, et al. v. Hickory Springs Mfg. Co., et al.*, 1:11-pf-10003 (Dkt. # 118, 132) (notice filed May 4, 2011; ordered May 9, 2011); *Custom Carpets, Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10034 (Dkt. # 148); *W. Carpet Ctr., Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10035 (Dkt. # 149); *Pandolfi House of Carpets, Inc. v. Vitafoam, Inc., et al.*, 1:10-pf-10020 (Dkt. # 152) (notice filed on behalf of Pandolfi House of Carpets but designated as applicable to all actions); *Lackey, et al. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10021 (Dkt. # 153); *DeSitter Flooring, Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10032 (Dkt. # 154); *HVA Bros., Inc., et al. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10028 (Dkt. # 155); *Columbia River Floor Covering v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10033 (Dkt. # 156); *Foam Empire, Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10024 (Dkt. # 157); *Atl. Feather & Foam, Inc. v. Scottdel, Inc., et al.*, 3:10-pf-10001 (Dkt. # 159); *Abdinoor's Carpet Craft v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10015 (Dkt. # 162); *Alyanna Enters., Inc. v. Hickory Springs Mfg. Co., et al.*, 3:10-pf-10002 (Dkt. # 163); *R & W Carpets, Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10037 (Dkt. # 164); *Jamestown Mattress Co., Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10009 (Dkt. # 166); *Piazza's Carpet & Tile Shop, Inc. v. Hickory Springs Mfg. Co., et al.*, 1:10-pf-10008 (Dkt. # 167).

Alternatively, should the Court be inclined to honor the voluntary dismissals, Defendants respectfully request that the Court deem each dismissal to be *with prejudice*. In support of this Motion, Defendants state as follows:

## PROCEDURAL BACKGROUND

Forty direct purchaser class cases have been consolidated in MDL 2196 to date, along with three indirect purchaser class cases and four direct purchaser non-class cases. Additional cases have been identified to the MDL Panel as potential "tag alongs" that should be consolidated in this MDL for pre-trial purposes, and the Panel has issued Transfer Orders conditionally transferring several such cases to this Court.

Six months ago, on January 20, 2011, the Court entered the Initial Case Management Conference Order ("CMO") in this consolidated litigation. (Dkt. # 17.) That Order assigned the MDL to the "Complex Track" pursuant to Local Rule 16.2, established a Master Docket and electronic case file, established protocols for dealing with discovery disputes and required the filing of a Consolidated Amended Complaint ("CAC") by February 28, 2011, among other provisions. The CMO expressly provided that the CAC "shall serve as the operative class action complaint in the MDL proceeding, and Defendants shall not be required to answer or otherwise respond to any other putative class action complaint filed in or transferred to this proceeding." (CMO ¶ 24.) The CMO further provided that the CAC would be deemed adopted automatically by any Plaintiff filing a federal lawsuit that was subsequently transferred to the MDL, any Plaintiff filing a related action directly in the Northern District of Ohio, or any Plaintiff with a case already consolidated before this Court. (*Id.* ¶ 25.)

On February 28, 2011, the Direct Purchaser Plaintiffs filed their Consolidated Amended Class Action Complaint ("DCAC"). (Dkt. # 46.) The Indirect Purchaser Plaintiffs filed their

Consolidated Amended Complaint ("ICAC") on March 21, 2011. (Dkt. # 52.) Defendants filed Motions to Dismiss the DCAC and ICAC on April 15 and May 6, 2011, respectively. (Dkt. # 89-92, 95-97, 99-103, 109, 119-122, 125-130.) Those Motions have now been fully briefed and are scheduled for oral argument on July 1, 2011.

On May 12, 2011, the Court entered an Amended Case Management Order ("ACMO"). The ACMO established the DCAC and ICAC as the operative complaints for those putative classes of Plaintiffs, including Plaintiffs later consolidated into the MDL, imposed requirements for coordinated discovery, and set forth methods for service of process and other administrative details. (Dkt. # 139.) The ACMO re-confirmed that Defendants are not required to answer or otherwise respond to any class action complaint other than the DCAC and ICAC. (*See* ACMO § I, ¶ 25.) The ACMO also provided that the Orders and protocols governing the procedures, quantity and type of discovery permitted in this MDL shall apply to all Plaintiffs collectively and to all Defendants collectively. (*Id.* § II, ¶ 1; § III, ¶ 4.)

On June 23, 2011, Defendants Louis Carson and David Carson filed Answers, which they designated as relating to "All Direct Purchaser Cases." (Dkt. # 150 & 151.)

Beginning on June 22 and continuing at an escalating pace thereafter, a number of Plaintiffs with suits pending in this MDL, but who were not named as Plaintiffs in the DCAC or ICAC, filed Notices of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1) in an obvious effort to shield themselves from discovery. (*See* Dkt. # 148-149, 152-159, 162-164, 166-167.) Because these attempts to dismiss cases pending in the MDL are inconsistent with the CMO and ACMO entered in these proceedings and threaten the effective management of this litigation, Defendants seek an Order that vacates and sets aside these purported "voluntary" dismissals, restores all such cases to the MDL docket, and restrains and enjoins any

4

additional Plaintiffs from dismissing any action consolidated in this MDL without prior leave of Court or consent of Defendants.

## ARGUMENT

It is apparent that this proceeding is facing a rush for the exits. If the objectives of MDL proceedings are to be realized, however, the procedures for effectuating them also must be protected.

In *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, Case No. 2:10-md-02179, 2011 U.S. Dist. LEXIS 44773 (E.D. La. Apr. 15, 2011) ("*Deepwater Horizon*"), a district court recently addressed the authority of an MDL court to review and override plaintiffs' attempted voluntary dismissals under Rule 41(a)(1) in order to protect the integrity of an MDL proceeding. Noting that "management of an MDL often requires procedures and limitations on the parties that do not exist in ordinary cases," *id.* at *15, the court concluded:

> The Court obviously has jurisdiction to review the validity of St. Joe's attempted Rule 41 dismissals. District courts have ancillary jurisdiction "to secure or preserve the fruits and advantages of a judgment or decree rendered" by their courts. This is particularly true in the context of acting as the transferee court in MDL 2179.

*Id.* at *13-14 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)). The court explained that Rule 41(a)(1) by its terms is subject to "any applicable federal statute," Fed. R. Civ. P. 41(a)(1)(A), which includes 28 U.S.C. § 1407. *Id.* at *14. Finding that the attempted voluntary dismissal violated several provisions of the CMO, the court vacated and set aside the Rule 41(a) motion.

A number of other federal courts have recognized that it often will be necessary to restrict the exercise of a plaintiff's Rule 41 rights in order to effectively and fairly manage an MDL

5

proceeding. *See, e.g.*, *In re Genetically Modified Rice Litig.*, Case No. 4:06-MD-1811, 2010 U.S. Dist. LEXIS 19168, at *140-41 (E.D. Mo. Feb. 24, 2010) ("Because my case management orders have prevented the defendants from filing answers in most of the individual cases, the provisions of Rule 41(a)(1)(A)(i) . . . do not apply to the cases in this MDL."); *In re Zicam Cold Remedy Mktg. Sales Practices & Prods. Liab. Litig.*, Case No. 09-md-2096, 2010 WL 3402490, at *2 (D. Ariz. Aug. 26, 2010); *see also Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010); *In re Allstate Ins. Co. Fair Labor Standards Act Litig.*, Case No. 2:03-md-1541, 2008 U.S. Dist. LEXIS 111338, at *5 (D. Ariz. July 15, 2008). In essence, these courts have found that a district court's supervisory powers, and the fact that Rule 41 is subject to the federal statute authorizing multidistrict litigation, 28 U.S.C § 1407, provide more than a sufficient basis for prohibiting voluntary dismissals because, "[w]ere it otherwise, the entire MDL process could be jeopardized by the unilateral action of the parties." *In re Zicam*, 2010 WL 3402490, at *2.

As the court in *Deepwater Horizon* found, Rule 41 prevents a plaintiff from freely dismissing a case after the defendant becomes "actively engaged" in the suit's defense, at which point, the defendant is entitled to have the case adjudicated. The case cannot be terminated without the defendants' consent, approval of the court, or a dismissal with prejudice that protects the defendant against the suit being renewed. *Deepwater Horizon*, 2011 U.S. Dist. LEXIS 44773, at *15 (citing *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979)). As *Deepwater Horizon* also makes clear, once a case is transferred to the MDL and becomes subject to the terms of a CMO, a party is actively engaged in the litigation, is subject to the transferee court's supervisory powers and cannot dismiss the suit without leave of court or defendants' consent, unless the dismissal is with prejudice. Consequently, while a plaintiff may ordinarily dismiss a lawsuit voluntarily where no answer or motion for summary judgment has been filed,

6

special procedures and limitations govern in an MDL setting. *See id.* at *15-16; *Exxon*, 599 F.2d at 662 (the answer or motion for summary judgment provision of Rule 41(a)(1)(A)(i) is merely one, bright-line way to determine when the early stage of a case—when unilateral dismissal is permitted—has ended). In *In re Allstate*, 2008 U.S. Dist. LEXIS 111338, for example, the court held that Rule 41(a)(2), requiring leave of court to dismiss, applied where the court had issued a summary judgment ruling in the MDL, even though it was not in the specific cases where dismissal was sought. *Id.* at *3-4. The court also expressly conditioned dismissal on the preclusion of future claims that the dismissed plaintiffs could have litigated in the MDL. *Id.* at *6.

In this MDL, certain Defendants have filed answers (*see* Dkt. # 150 & 151), which—like the summary judgment ruling in *In re Allstate*—alone would be enough to preclude voluntary dismissals under Rule 41(a)(1)(A)(i). However, a great deal more has occurred in this MDL. The CMO, for example, effectively stays the actions filed by the Plaintiffs who now seek to voluntarily dismiss their actions by excusing Defendants from filing answers or other responses to the complaints in those individual cases. (*See* CMO ¶¶ 24-25; ACMO § I, ¶ 25.) While the Court made very clear that the DCAC and ICAC do not supplant these original complaints, but are instead to be used as administrative devices designed to "facilitate administration of the dockets, streamline competing proposed class definitions, conspiracy allegations and legal theories, reduce the expense incurred in responding to multiple complaints, and assist in identifying issues common to all cases centralized before this Court" (CMO ¶ 26; ACMO § I, ¶ 26), the CMO folded the individual suits into the DCAC and ICAC and made the original complaints inoperative pending remand at the conclusion of pretrial proceedings. With their

individual cases governed by the CMO in this manner, voluntary dismissal simply is no longer an option.[3]

As in *Deepwater Horizon*, when the Plaintiffs now seeking dismissal became part of this MDL, they necessarily became subject to the Court's authority to efficiently and effectively manage this complex litigation. The manageability problems that would result from allowing voluntary dismissals at this stage of the proceeding are self-evident. For example, even though the Plaintiffs now attempting to dismiss their underlying complaints *without prejudice* may not have been named as parties in the CACs, if a class is not certified in this litigation they presumably will retain claims that they could attempt to litigate outside the boundaries of MDL 2196, thus significantly diminishing the purpose of this MDL. They also unquestionably will resist any discovery against them on grounds that in their new status as unnamed putative class members, they should not be subjected to discovery—even though as persons or entities interested enough to have joined the litigation originally, they very well may be the most fruitful source of knowledge on a variety of important issues (e.g., fraudulent concealment, the pass through of increases in the price of foam and the like).

In *Qureshi v. United States*, 600 F.3d at 525, the Fifth Circuit held that the district court retained supervisory powers even after the plaintiff issued a notice of voluntary dismissal under Rule 41. *See also Deepwater Horizon*, 2011 U.S. Dist. LEXIS 44773, at *13-14. This Court plainly retains the authority to review the legitimacy of the Rule 41 dismissals that have been noticed. If grounds for dismissal exist, other than avoiding discovery, then dismissal should be

---

[3] Extensive discovery also has been propounded on behalf of Plaintiffs, and Plaintiffs and Defendants have engaged in a series of meet and confers in an effort not only to reach agreement on the Discovery and ESI protocols addressed in the CMO, but also to resolve Defendants' objections to discovery requests that Plaintiffs have served. Agreements have been reached with DOJ concerning the scope and timing of discovery. (Dkt. # 44.) And, agreement has been reached on a joint case schedule (Dkt. # 65), to name just some of the activities that already have occurred in this MDL.

with prejudice. Alternatively, any dismissal without prejudice should be conditioned on Plaintiffs' submission to discovery as if they remained parties, and their cases, if pursued individually in the future, should be deemed governed by the proceedings and decisions in this MDL.[4] *See, e.g.*, *In re Allstate*, 2008 U.S. Dist. LEXIS 111338, at *6; *Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, Case No. 1:09-md-02023-BMC, Order (E.D.N.Y. Nov. 24, 2010).

## CONCLUSION

As an MDL proceeding, this case does not fit the ordinary application of Rule 41(a)(1). Otherwise, the entire MDL process is at the mercy of the unilateral actions of the Plaintiffs. The Rule itself, made subject to applicable federal statutes, and the case law provide an ample basis for the Court to overrule the attempts of individual Plaintiffs to exempt themselves from this MDL. The Court should vacate the purported voluntary dismissals submitted to date and amend the Case Management Order to make all further voluntary dismissals subject to Court approval on appropriate conditions under Rule 41(a)(2).

---

[4] Defendants would consent to the dismissals if the Plaintiffs stipulate or the Court orders (1) that the dismissals are with prejudice, or (2) that the Plaintiffs named in such complaints will be treated as parties and not as absent class members for purposes of discovery and their cases, if pursued in the future, will be governed by the decision and proceedings in the MDL.

| | |
|---|---|
| June 28, 2011 | Respectfully submitted, |

/s/  James H. Walsh
James H. Walsh
Howard Feller
Bethany Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4356
Fax:    (804) 698-2200
jwalsh@mcguirewoods.com
hfeller@mcguirewoods.com
blukitsch@mcguirewoods.com

*Counsel for Carpenter Co., E.R. Carpenter, L.P., Carpenter Holdings, Inc. and Carpenter Canada Co.*

/s/  Shepard Goldfein
Shepard Goldfein
Elliot A. Silver
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Phone: (212) 735-3000
Fax:    (212) 735-2000
shepard.goldfein@skadden.com
elliot.silver@skadden.com

*Counsel for Domfoam International, Inc. and Valle Foam Industries (1995) Inc.*

/s/  Kendall Millard
Kendall Millard
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
Phone: (317) 231-7461
Fax:    (317) 231-7433
kmillard@btlaw.com

/s/  Michael D. Mustard
Michael D. Mustard
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone:  (260) 423-9440
Fax:    (260) 424-8316
mmustard@btlaw.com

*Counsel for Flexible Foam Products, Inc., Ohio Decorative Products, Inc.*

/s/  Edward G. Warin
Edward G. Warin
John P. Passarelli
Angela K. Wilson
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE  68102
Phone:  (402) 346-6000
Fax:    (402) 346-1148
edward.warin@kutakrock.com
john.passarelli@kutakrock.com
angela.wilson@kutakrock.com

*Counsel for Future Foam, Inc.*

/s/ Francis P. Newell
Francis P. Newell
Peter M. Ryan
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2118
Fax: (215) 665-2013
fnewell@cozen.com
pryan@cozen.com

*Counsel for FXI - Foamex Innovations, Inc.*

/s/ Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Erica F. Ghali
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
randall.allen@alston.com
teresea.bonder@alston.com
erica.ghali@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/ Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
Phone: (919) 862-2200
Fax: (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Hickory Springs Manufacturing Company*

/s/ Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax: (213) 229-6919
dsawnson@gibsondunn.com

Cynthia Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: (202) 530-8500
Fax: (202) 530-9651
crichman@gibsondunn.com

*Counsel for Woodbridge Foam Corporation, Woodbridge Sales and Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

11

CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2011, a copy of the foregoing Memorandum in Support of Defendants' Motion to Vacate and Set Aside Rule 41(a)(1) Notices of Voluntary Dismissal and for Other Relief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

       /s/ Bethany G. Lukitsch
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4711
Fax: (804) 698-2261
blukitsch@mcguirewoods.com

\32012432.13