UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) | No. 10 MD 2196-JZ |
| THIS DOCUMENT RELATES TO: INDIRECT PURCHASER ACTIONS | ) ) ) | Hon. Jack Zouhary |

**INDIRECT PURCHASER PLAINTIFFS'**
**RESPONSES TO THE COURT'S QUESTIONS FOR HEARING**

1.      *Associated General Contractors* ("*AGC*"), 459 U.S. 519, does not apply to Plaintiffs' Clayton Act claims.  Plaintiffs only seek injunctive relief under §16 of the Clayton Act, and do not seek damages under §4.  As the Supreme Court stated in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986), "the difference in the remedy each section provides means that certain considerations relevant to a determination of standing under § 4 are not relevant under § 16."  *Id.* at 111 n. 6.  Citing *AGC* and *Illinois Brick*, the Court in *Cargill* explained that courts should examine directness of injury when determining standing for §4 relief, but that these considerations do not apply to §16 relief.  479 U.S. at 111 n. 6.  *See Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc.*, 753 F.2d 1354, 1357-58 (6th Cir. 1985) (finding a lower threshold standing requirement for injunction claims).

*AGC* also does not bar relief under the state antitrust statutes pled here.[1]  All of these states have rejected *Illinois Brick.  See* Answer 3, *infra.  AGC*'s directness of injury requirements are explicitly based on *Illinois Brick, see AGC*, 459 U.S at 535, 544-45, and thus are of limited utility in an *Illinois Brick* repealer jurisdiction.  Oppos. Brf, at 10.  Moreover, as explained in the Opposition Brief, only two state supreme courts (Iowa and Nebraska) have adopted the *AGC* approach for their state antitrust statutes, and even those two decisions are distinguishable from the more direct type of alleged action asserted in this case. *See* Oppos. Brf. at 8 fn. 4.  Other courts have expressly rejected applying *AGC* to state antitrust statutes.  Oppos. Brf. at 8-9.

Finally, even if the *AGC* decision did apply to some of the state antitrust claims, the allegations in the Indirect Plaintiffs' CAC satisfy the *AGC* factors.  Oppos. Brf. at 9-10.

2.      The analysis under *Twombly* and *Iqbal* deals with the plausibility of the conspiracy alleged, not whether the party seeking relief is a Direct Purchaser or an Indirect

---

[1]  Defendants only argue that *AGC* applies to 14 of the 23 state antitrust claims.  *See* Indirect Purchaser Plaintiffs' Opposition To Defendants' Joint "Common Issues" Memorandum Of Law In Support Of Defendants' Motion To Dismiss (hereafter "Oppos. Brf.") at 7.

Purchaser.  Both the Direct and Indirect Purchasers seek relief for the same acts by Defendants. As a result, if allegations of the Direct Purchasers' CAC survive *Twombly* and *Iqbal*, the allegations of the Indirect Purchasers' CAC which mirror them must also survive.

      **3.**    Eighteen of the twenty-three antitrust statutes invoked by Indirect Purchaser Plaintiffs expressly include *Illinois Brick* repealers explicitly permitting damage actions by or on behalf of indirect purchasers:

      California, CAL. BUS. & PROF. CODE § 16750 (2009) (providing that a cause of action may be brought by any person injured by an antitrust violation, "regardless of whether such injured person dealt directly or indirectly with the defendant").

      District of Columbia, D.C. CODE ANN. § 28-4509 (West 2009) ("Any indirect purchaser in the chain of manufacture, production, or distribution of goods or services, upon proof of payment of all or any part of any overcharge for such goods or services, shall be deemed to be injured…").

      Hawaii, HAW. REV. STAT. § 480-13(a)(1) (2009) ("indirect purchasers injured by an illegal overcharge shall recover only compensatory damages and reasonable attorney's fees").

      Illinois, 740 ILL. COMP. STAT. 10/7 (2009) ("No provision of the [Illinois Antitrust] Act shall deny any person who is an indirect purchaser the right to sue for damages.")

      Kansas, KAN. STAT. ANN. § 50-161(B) (2009) (providing that a cause of action "may be brought by any person who is injured in such person's business or property by reason of" an antitrust violation, "regardless of whether such injured person dealt directly or indirectly with the defendant").

      Maine, ME. REV. STAT. ANN. TIT. 10, § 1104(1) (2009) (providing a right of action for any person "injured directly or indirectly in its business or property by any other person or corporation by reason of" an antitrust violation).

      Michigan, MICH. COMP. LAWS § 445.778 (2009) (providing that the state, any political subdivision, or any other person "threatened with injury or injured directly or indirectly" by an antitrust violation may bring an action for damages and injunctive relief).

      Minnesota, MINN. STAT. § 325D.57 (2009) (providing a cause of action an treble damages remedy for any person or governmental body that is "injured directly or indirectly" by an antitrust violation).

      Mississippi, MISS. CODE ANN. § 75-21-9 (2009) (providing a right of action for any person injured by a trust or combine, "or by its effects direct or indirect").

Nebraska, NEB. REV. STAT. § 59-821 (2009) (providing a right of action for any person injured due to an antitrust violation, "whether such injured person dealt directly or indirectly with the defendant").

Nevada, NEV. REV. STAT. 598A.210 (West 2009) (providing a right of action and treble damages for "any person injured or damaged directly or indirectly" by an antitrust violation).

New Mexico, N.M. STAT. ANN. § 57-1-3 (West 2009) (providing a right of action and treble damages for "any person threatened with injury or injured in his business or property, directly or indirectly," by an antitrust violation).

New York, N.Y. GEN. BUS. § 340 (2009) (providing that a person who sustains damages as a result of an antitrust violation shall not have their recovery limited due to the fact that that person "has not dealt directly with the defendant").

North Dakota, N.D. CENT. CODE § 51-08.1-08 (2009) (providing that recovery for damages caused by an antitrust violation shall not be barred because of the fact that the person threatened with injury or injured "has not dealt directly with the defendant").

Oregon, OR. REV. STAT. § 646.780(1)(a) (2009 update) (providing a right of action and treble damages for antitrust violations, "regardless of whether the plaintiff dealt directly or indirectly with the adverse party").

South Dakota, S.D. CODIFIED LAWS § 37-1-33 (2009) (providing that "[n]o provision of this chapter may deny any person who is injured directly or indirectly in his business or property" by an antitrust violation.

Vermont, VT. STAT. ANN. TIT. 9, § 2465(b) (2009) (providing that the fact that a person "has not dealt directly with defendant shall not bar or otherwise limit recovery" for an antitrust violation.

Wisconsin, WIS. STAT. 133.18(1)(a) (2009) (providing a right of action and treble damages for "any person injured, directly or indirectly, by reason of" an antitrust violation.

**3(a).**   Of the remaining five states invoked by Plaintiffs here, those state courts have either expressly rejected *Illinois Brick* and allowed for Indirect Purchaser actions or have allowed Indirect Purchaser actions by legislative rule.

Arizona - *Bunker's Glass Co. v. Pilkington PLC*, 206 Ariz. 9, 75 P.3d 99 (Ariz. 2003) (finding no compelling reason to limit the range of plaintiffs who may sue to remedy state antitrust violations).

Iowa - *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002)(The Iowa Competition Law creates a cause of action for *all* consumers, regardless of one's technical status

as a direct or indirect purchaser).

North Carolina - In *Hyde v. Abbott Labs.*, 123 N.C. App. 572, 473 S.E. 2d 680 (Ct. App. N.C. 1996), review denied, 344 N.C. 734, 478 S.E.2d 5 (N.C. 1996) (holding that statutory term "any person" encompassed indirect purchasers).

Tennessee – The Tennessee Trade Practices Act has been interpreted as affording a cause of action to indirect purchases. *Freeman Indust. LLC v. Eastman Chemical Co.*, 172 S.W. 3d 512, 519-20 (Tenn. 2005).

West Virginia - Private damages granted by the West Virginia Antitrust Act, W.Va. Code § 47-18-9, has been extended to indirect purchasers by Legislative Rule. W.Va. Code St. R. § 142-9-1.

4.      This case differs from *In re Travel Agent Commission Antitrust Litigation*, 583 F.3d 896 (6th Cir. 2009), because the antitrust complaint there contained only circumstantial allegations of parallel pricing activity combined with opportunities to conspire, and conclusory allegations that there must have been a conspiracy as a result. *Id.* at 907.  Here, by contrast, the CAC is based, in part, on the admission by one of the conspiracy participants, which prompted a DOJ and international investigation into the price-fixing of flexible polyurethane foam. The CAC, in 160 paragraphs, provides the "smoking gun" in that it presents the "who, what, where and when" of Plaintiffs' claims. The CAC identifies most of the conspiracy participants, details numerous conversations among the co-conspirators, and describes, how the conspiracy operated.

5.      This case is like *In re Text Messaging Antitrust Litig.,* 630 F.3d 622 (7th Cir. 2010), *cert. denied*, 2011 WL 1100247 (U.S. Apr. 25, 2011), in that there are detailed allegations in both regarding parallel pricing behaviors, market structure, and industry practices which tend to demonstrate the existence of a conspiracy.  In *Text Messaging*, the Seventh Circuit found the allegations of circumstantial evidence strong enough to survive *Twombly* despite the absence of direct evidence of a conspiracy, such as an admission that the defendants had conspired.  *Id.* at 628.  Here, in contrast, the CAC includes the circumstantial allegations found to be sufficient in *Text Messaging*, plus the allegations of direct evidence in the form of an admitted conspiracy.

4

Thus, the conspiracy alleged in the CAC is far more plausible and compelling than the alleged conspiracy that the Seventh Circuit allowed to proceed in *Text Messaging*.

      **6.**      *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010), supports Plaintiffs' position that the CAC sufficiently pleads the essential facts to withstand a motion to dismiss a price fixing and customer allocation complaint.  Similar to our factual scenario, one of the defendants had pleaded guilty to participating in a "conspiracy to suppress and eliminate competition by agreeing with one or more packaged ice manufacturers to allocate customers."  *Id.* at 999.  The defendants moved to dismiss for lack of specificity.  *Id.* at 1003. The court found compelling that there was, like here, "government and internal investigations of the very corporate entities and individual executives involved on the same claims of conspiracy." *Id.* at 1006.  The court observed that the government investigation "bolster[s] the plausibility analysis and heighten[s] the Court's expectation that 'discovery will reveal evidence of illegal agreement.'"  *Id.* at 1009 (quoting *Twombly*, 550 U.S. at 556).  Our CAC provides detailed facts, so the same reasoning is applicable here -- Vitafoam has admitted the price-fixing conspiracy and has identified participants. Accordingly, it is more than plausible that the Defendants conspired to fix prices for flexible polyurethane foam.[2]

      **7.**      The *Gibbons* decision supports an indirect purchaser action because it states that the Missouri Merchandising Practices Act ("MMPA") allows "any person who has suffered an ascertainable loss" to pursue a claim.  *Gibbons v. Nuckolls, Inc.,* 216 S.W.3d 667 (Mo. 2007) (rejecting the notion that private plaintiffs can only sue a direct seller under the MMPA ).

      The *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F.Supp.2d 160 (D. Me. 2004) ("*NMV*") decision is inconsistent with *Gibbons* because *NMV* was decided three years

---

[2]  The court in *Packaged Ice*, however, did not follow *Ortiz* and *Amchem* and should not have decided standing before class certification.  *See* Oppos. Brf. at 11-14.

before *Gibbons* and therefore, in deciding whether an indirect purchaser has standing to bring a claim under the MMPA, the *NMV* court followed *Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s, Neurology, P.C.,* 998 S.W.2d 821, 825 (Mo. App. 1999), an earlier Missouri Appellate Court opinion that had rejected indirect purchaser standing.  The *NMV* court noted that "[W]ith no indication that the Supreme Court of Missouri would decide otherwise[,] I follow the Missouri Court of Appeals' decision in *Duvall*."

Likewise, *Fed. Trade Comm'n v. Mylan Labs, Inc.*, 62 F.Supp.2d 25, 49 (D.D.C. 1999) was decided years before, and without the benefit of, the Missouri Supreme Court's ruling in *Gibbons*.  Finally, the subsequently decided, *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline,* 737 F.Supp. 2d 380 (E.D.Pa. 2010), followed *Gibbons* and sustained indirect purchaser claims.

**8.**    Federal courts have generally permitted price-fixing claims under the New Mexico Unfair Practices Act and the District of Columbia Consumer Protection Act if the plaintiff alleges a gross disparity between the price paid for the product and the value received.  *See In re Chocolate Confectionary Antitrust Litig.*, 602 F.Supp.2d 538, 585-86 (M.D.Pa. 2009); *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D.Ill. Nov. 5, 2009). *See also* Oppos. Brf. at 25-26. Here, the Indirect Purchaser Plaintiffs have plead that they paid "supra-competitive" prices for the products they purchased containing polyurethane foam. This allegation is sufficient to allege gross disparity. *Id.*

The following are examples of Plaintiffs' allegations supporting unconscionable trade practices:

CAC ¶¶ 79-81 (Defendants discussed the conspiracy in various ways: telephone conversations, price increase letters, and face-to-face meetings, often on the pretext of increased raw material costs and also at the bi-annual meetings held by the Polyurethane Foam

Association.)

CAC ¶ 82 ("[T]here was an understanding and agreement among the Defendants and their co-conspirators to collectively support supracompetitive prices.")

CAC ¶ 86 ("As part of the conduct to coordinate and/or support price increases during the Class Period, the former President of Vitafoam instructed his sales people to send copies of their draft price increase letters to other Defendants and obtain other Defendants' versions of the same. Defendants utilized these drafts to confirm their anticompetitive agreements and further implement the conspiracy. The Defendants with whom he spoke also discussed how much each competitor wanted to raise prices, when the price increases should go into effect, and when the price increase letters should be issued. As described below, these measures were used not only to set supracompetitive prices, but also to police the conspiracy and ensure compliance.")

CAC ¶ 152 ("Prices charged by Defendants and their co-conspirators to suppliers to Plaintiffs and the Class for polyurethane foam products were maintained at artificially high and supra-competitive levels.")

**9.**     The elements of claims under the Illinois, Colorado and West Virginia consumer protection acts are similar and have been adequately pleaded in the CAC.  To state a claim under the ICFA, a plaintiff must allege: "(1) an unfair or deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.,* 776 N.E.2d 151, 160 (Ill. 2002).  Colorado and West Virginia have similar requirements.  *See* Oppos. Brf. at 27-28; *White v. Wyeth*, 705 S.E.2d 828 (2010).[3]  The paragraphs of the Indirect Plaintiffs' CAC that contain

_____

[3]  Defendants did not make an argument as to the adequacy of the pleading of the claims under the Illinois, Colorado, and West Virginia consumer protection acts.  Rather, the portion of the Defendants'

the key allegations supporting each of the elements are as follows:

(1) <u>an unfair or deceptive act or practice by the defendant;</u>

CAC ¶¶ 76-128 (alleging extensive and detailed allegations of a price-fixing conspiracy that is based on admissions by one of the conspiracy participants which prompted a DOJ and international investigation into the price-fixing for flexible polyurethane foam, and alleging a conspiracy that harms plaintiffs, actual buyers, at the point of sale by maintaining inflated prices for products containing polyurethane foam can constitute an unfair practice in violation of these statutes.)

(2) <u>the defendant's intent that the plaintiff rely on the deception;</u>

CAC ¶¶ 128-134, 147-151 (alleging that the Defendants kept the conspiracy secret)

(3) <u>the occurrence of the deception in the course of conduct involving trade or commerce;</u>

CAC ¶¶ 144-145 (alleging that the Defendants often conspired at trade association meetings)

(4) and <u>actual damage to the plaintiff,</u> (5) that <u>proximately caused by the deception</u>.

S*ee* supra-competitive price discussion at Answer 8, *supra*.

**10.** As discussed on pages 34-36 of the Opposition brief, the three *prima facie* elements for an unjust enrichment claim are materially the same across all jurisdictions in which the Indirect Purchaser Plaintiffs have asserted claims. The paragraphs of the Indirect Purchaser Plaintiffs' CAC that contain the key allegations supporting each of those three elements are as follows:

(i) <u>A benefit conferred upon a defendant</u>:

a. CAC ¶ 213 ("By paying more for products containing flexible polyurethane foam than they would have in the absence of Defendants' wrongful conduct, Plaintiffs and the Class

---

motion regarding these acts focused solely on the argument that the statutes do not apply to price fixing claims. *See* Defs' Mem. at 21-22. Plaintiffs fully address that argument. *See* Oppos. Brf. at 27-29.

have conferred a benefit on Defendants.")

b.     CAC ¶214 ("As a result of Defendants' wrongful conduct, Defendants were able to charge more for flexible polyurethane foam which overpayments were made by Plaintiffs and the Class.")

c.     CAC ¶¶ 217, 220, 223, 226, 229, 232, 235, 238, 241, 244, 247, 250, 251, 256, 259, 262, 265, 268, 271, 274, 277, 280, 283, 286, 289, 292, 295, 298 (alleging that, in each state, by engaging in the unlawful conduct described in paragraphs 1-160 of the CAC, Defendants received higher prices for their flexible polyurethane foam that was sold to indirect purchasers in that state than would have been possible absent the illegal conduct)

d.     CAC ¶¶ 218, 221, 224, 227, 230, 233, 236, 239, 242, 245, 248, 251, 254, 257, 260, 263, 266, 269, 272, 275, 278, 281, 284, 287, 290, 293, 296, 299 (alleging that, in each state, Defendants were able to achieve their increased revenues and profits from their sale of flexible polyurethane foam to indirect purchasers because the demand for flexible polyurethane foam is relatively price inelastic)

(ii)     Knowledge or appreciation by the defendant of the benefit:

a.     CAC ¶¶ 218, 221, 224, 227, 230, 233, 236, 239, 242, 245, 248, 251, 254, 257, 260, 263, 266, 269, 272, 275, 278, 281, 284, 287, 290, 293, 296, 299 (alleging that, in each state, the Defendants were able to achieve their increased revenues and profits from their sale of flexible polyurethane foam to indirect purchasers because the demand for flexible polyurethane foam is relatively price inelastic, "as Defendants understood")

b.     CAC ¶¶ 217, 220, 223, 226, 229, 232, 235, 238, 241, 244, 247, 250, 251, 256, 259, 262, 265, 268, 271, 274, 277, 280, 283, 286, 289, 292, 295, 298 (alleging that, in each state, by engaging in the unlawful conduct described in paragraphs 1-160 of the CAC, Defendants received higher prices for their flexible polyurethane foam)

c.      CAC ¶¶106-123 (alleging how the Defendants made substantial efforts to implement and police their conspiracy)

d.      CAC ¶¶124-130 (alleging how the Defendants took steps to keep their conspiracy a secret)

(iii)     <u>Retention of the benefit under circumstances where it would be unjust to do so without payment</u>:

a.      CAC ¶¶ 219, 222, 225, 228, 231, 234, 237, 240, 243, 246, 249, 252, 255, 258, 261, 264, 267, 270, 273, 276, 279, 282, 285, 288, 291, 294, 297, 300 (alleging that the Defendants should be ordered to make restitution for the benefit of indirect purchasers because it would be unjust to allow Defendants "to retain the benefits of their sales of flexible polyurethane foam at illegally inflated prices")

b.      CAC ¶215 ("Defendants have been unjustly enriched by Plaintiffs' and the Class' overpayments. Equity demands that Defendants be required to make restitution and return the overpayment to Plaintiffs and the Class.")

c.      CAC ¶216 ("Plaintiffs and members of the Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.")

June 30, 2011                         Respectfully Submitted,

/s/ Marvin A. Miller
Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**Miller Law LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tele: (312) 332-3400
Fax:  (312) 676-2676
Email: MMiller@MillerLawLLC.com
         LFanning@MillerLawLLC.com

10

MVanTine@MillerLawLLC.com

*Interim Lead Counsel for Indirect Purchasers*

Richard M. Kerger (0015864)
Kimberly Conklin (0074726)
**KERGER & HARTMAN, LLC**
33 S. Michigan Street, Suite 100
Toledo, OH 43604
Telephone: (419) 255-5990
Fax: (419) 255-5997
Email: Rkerger@kergerlaw.com
        Kconklin@kergerlaw.com

*Executive Committee for Indirect Purchasers*

Jay B. Shapiro
Samuel O. Patmore
Abigail E. Corbett
Matthew Dates
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street
Miami, Florida 33130
Tele: (305) 789-3200
Email: JShapiro@stearnsweaver.com
        SPalmore@stearnsweaver.com
        ACorbett@stearnsweaver.com
        MDates@stearnsweaver.com

Shpetim Ademi
Guri Ademi
David Syrios
**Ademi & O'Reilly, LLP**
3620 East Layton Avenue
Cudahy, Wisconsin 53110
(414) 482-8000
Email: SAdemi@ademilaw.com
        GAdemi@ademilaw.com
        DSyrios@ademilaw.com

Martin D. Holmes
M. Reid Estes
**Dickinson Wright PLLC**
424 Church Street
Suite 1401
Nashville, TN 37219

11

(615) 244-6538
Email: MDHolmes@dickinsonwright.com
        MREstes@dickinsonwright.com

Daniel Lynch
Avidan J. Stern
**Lynch & Stern LLP**
150 South Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 346-1600
Email: Dan@lynchandstern.com
        Avi@lynchandstern.com

Eric D. Barton
**Wagstaff Cartmell**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
Email: EBarton@wagstaffcartmell.com

David Schiller
**Schiller & Schiller, PLLC**
Professional Park at Pleasant Valley
5540 Munford Road • Suite 101
Raleigh, North Carolina 27612
Telephone: (919) 789-4677
Email: DGSchiller@yahoo.com

Susan Bernstein
Attorney at Law
200 Highland Avenue, Suite 306
Needham, MA 02494
Telephone: (781) 290-5858
Email: Susan@sabernlaw.com

*Counsel for Indirect Purchaser Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Marvin A. Miller, certify that on June 30, 2011, I served the foregoing document in accordance with Paragraph 9 of the Initial Case Management Order entered January 20, 2011.

.

s/<em>Marvin A. Miller</em>