UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| _____ ) | |
| In re POLYURETHANE FOAM ANTITRUST ) | |
| LITIGATION ) | |
| _____ ) | MDL Docket No. 2196 |
| ) | Index No. 10-MD-2196 (JZ) |
| This document relates to: ) | |
| ) | |
| ALL CASES ) | |
| _____ ) | |

**<u>DEFENDANTS' WRITTEN RESPONSES TO QUESTIONS FOR HEARING</u>**

## Direct Purchaser Plaintiffs – Common Issues

1.  As both *Twombly* and *Iqbal* make clear, allegations consistent with both anticompetitive and procompetitive behavior cannot support a plausible antitrust claim.  *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1951-52 (2009) (court may infer from the factual allegations in the complaint "obvious alternative explanation[s]" which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007) (factual allegations that are "consistent with conspiracy, but just as much in line with . . . rational and competitive business strategy" are insufficient).  *Twombly* specifically held that the pleading standard articulated in the decision was entirely consistent with Rule 8:  "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show[] that the pleader is entitled to relief.'"  550 U.S. at 554-57.  *Twombly* also noted that allegations equally consistent with procompetitive and anticompetitive behavior are the equivalent of a conclusory assertion of conspiracy.  *Id.*  Accordingly, under both *Twombly* and Rule 8, a plaintiff must allege facts which are not merely *consistent with* conspiracy, but which *plausibly suggest* a conspiracy.  *Id.* at 566 ("there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway . . . .").  Numerous courts have applied this principle.

- *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009) (affirming dismissal of complaint on the grounds that parallel travel agent base commission cuts, attendance at industry trade shows, meetings between certain competitors, and the exchange of pricing information through an information clearinghouse, were equally consistent with unilateral conduct, and therefore did not plausibly suggest a conspiracy).

- *In re LTL Shipping Servs. Antitrust Litig.*, No.1:08-MD-01895-WSD, 2009 U.S. Dist. LEXIS 14276, at *64-70 (N.D. Ga. Jan. 28, 2009) (dismissing complaint where the implementation of parallel fuel surcharges, attendance at trade shows, and publication of pricing information on the internet, were equally consistent with unilateral conduct).

- *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1256-61 (W.D. Wash. 2009) (dismissing complaint where the parallel implementation of fuel surcharges, coupled with information exchanges and attendance at industry meetings and trade shows, was equally consistent with unilateral conduct).

- *In re Graphics Processing Units ("GPU") Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022-23 (N.D. Cal. 2007) (granting motion to dismiss on grounds that parallel pricing and attendance at industry trade shows did not plausibly suggest existence of a conspiracy).

- *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 963-65 (N.D. Cal. 2007) (dismissing complaint where parallel price increases, opportunities to conspire, and history of follow-the-leader pricing were consistent with independent behavior).

- *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1316-20 (S.D. Fla. 2010) (granting motion to dismiss, in part, because the parallel price increases and various "market factors" (*i.e.*, "standardized" products, "inelastic demand," high barriers to entry, small number of competitors) did not make a "conspiracy a more plausible explanation than mere interdependence for the parallel conduct alleged by Plaintiffs.").

2.  
- *Twombly*, 550 U.S. at 568 (competitive reticence by incumbent "ILECs" could be explained by market factors because the ILECs had previously been government-sanctioned monopolists, and because resistance to upstart competition was the reaction of an ILEC intent on keeping its regional dominance).

- *In re Travel Agent*, 583 F.3d at 909 (affirming dismissal of complaint where changes in the marketplace explained why defendants would independently seek to reduce base travel agent commissions).

- *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1341-43 (11th Cir. 2010) (affirming dismissal of complaint where parallel pricing behavior was consistent with two possible inferences, one legal and one not).

- *LaFlamme v. Societe Air Fr.*, 702 F. Supp. 2d 136, 152 (E.D.N.Y. 2010) (dismissing claims regarding passenger fuel surcharges where jet fuel prices were obvious potential, non-collusive "stimuli" and "discernible reason" for the surcharges).

- *In re LTL Shipping Servs.*, 2009 U.S. Dist. LEXIS 14276, at *63-65 (dismissing claims regarding fuel surcharges because it was "quite plausible . . . that the Defendants imposed fuel surcharges as a direct, and immediate, reaction to relatively high fuel costs and relatively high fluctuations in fuel cost.").

- *In re GPU*, 527 F. Supp. 2d at 1022-23 (dismissing claim where market factors explained why producers of GPUs released new products at similar times and at similar prices).

- *In re Late Fee*, 528 F. Supp. 2d at 962-63 (granting motion to dismiss where the plaintiffs' own complaint provided alternative explanations for increases in late fees).

- *In re Fla. Cement*, 746 F. Supp. 2d at 1308 (The court "'may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'") (quoting *Iqbal*, 129 S. Ct. at 1951-52 (alterations in original)).

3.  No.  The CAC nowhere alleges that any Defendant joined a price-fixing and customer allocation conspiracy with knowledge of the other alleged conspirators' prior conduct.  The CAC alleges no facts describing any knowledge of an antecedent agreement to do anything.  *See Lubic v. Fid. Nat'l Fin., Inc.*, No. C08-0401 MJP, 2009 U.S. Dist. LEXIS 62092 (W.D. Wash. July 20, 2009); *Twombly*, 550 U.S. at 564 n.10; *see also* Defs.' Joint "Common Issues" Mem. 16-20 (Dkt. # 90); Defs.' Joint Reply 6-8, 16-19, 23 (Dkt. # 138).)  The CAC is devoid of any facts describing the origination, nature, extent, scope or participation in an industry-wide agreement to fix prices or allocate customers.  Instead, the CAC attempts to infer a conspiracy to fix prices from limited exchanges of price information, which is not illegal.  *Williamson Oil Co. v. Phillip Morris USA*, 346 F.3d 1287, 1299 (11th Cir. 2003).

4.  No.[1]  Plaintiffs' allegations are entirely conclusory:

> [Defendant A] and/or affiliates it controlled directly sold flexible polyurethane foam throughout the United States.
>
> [Defendant A] was a member of the conspiracy by virtue of its status during the Class Period as the alter ego or agent of [Defendant B].  [Defendant A] dominated or controlled [Defendant B] regarding conspiracy activities and used that domination or control to charge artificially high prices for flexible polyurethane foam.
>
> Each Defendant acted as the principal, agent, or joint venture of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiffs.

(*See* CAC ¶¶ 18-19, 21-22, 28-31 & 50.)

The CAC does not address how each purported alter ego Defendant attained its "status

---

[1] (*See* Defs.' Joint "Common Issues" Mem. 19-20 & n.2 (Dkt. # 90); Defs.' Joint Reply 12-14 (Dkt. # 138); Defs.' Crest Foam Indus. & Inoac USA's Mem. Supp. Mot. to Dismiss 6-7 (Dkt. # 89).)

during the Class Period as the alter ego," the way in which it "dominated or controlled" the other

Defendant, nor what "conspiracy activities" the Defendant allegedly controlled.

- *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 674 (6th Cir. 2006) (affirming dismissal of action and noting that the "alter ego theory requires that the corporate structure cause fraud or similar injustice" and thus, "'[m]ere dominion and control of the parent over the subsidiary [alone] will not support alter ego liability.'").

- *Oliver v. St. Luke's Dialysis, LLC*, No. 1:10-cv-2667, 2011 U.S. Dist. LEXIS 40147, at *17-19 (N.D. Ohio Apr. 5, 2011) (dismissing complaint where no allegations "would justify holding Defendants . . . liable for the alleged wrongdoing of their subsidiary.").

- *Pureworks, Inc. v. Brady Corp.*, No. 3:09-cv-00983, 2010 U.S. Dist. LEXIS 97688, at *27-28 (M.D. Tenn. Sept. 15, 2010) (allegations that a parent company "was exercising complete dominion over its subsidiaries and was using such control to commit the wrongful acts alleged above, and [plaintiff] has been injured as a result," *id.* at *9, were legal conclusions, inadequate to plead a veil piercing claim).

- *Clark v. Bucyrus Int'l*, No. 5:08-cv-434-JHM, 2009 U.S. Dist. LEXIS 61690, at *5-6 (E.D. Ky. July 17, 2009) (dismissing claims for alleged wrongs of a parent's subsidiary where the "Complaint provides nothing more than a formulaic recitation of the elements necessary for a claim that seeks to pierce the corporate veil." (citations omitted)).

- *Gering v. Fraunhofer USA, Inc.*, No. 05-73458, 2009 U.S. Dist. LEXIS 79196, at *9-13 (E.D. Mich. Sept. 3, 2009) (to hold a subsidiary liable for a parent's actions was a "novel" legal theory with no support).

5.  No.  *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).  In

*Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 521-22 (S.D.N.Y. 2009), the court

followed a minority view that the self-concealing nature of a conspiracy is enough to satisfy the

first element of the fraudulent concealment test—whether defendants concealed the alleged

conspiracy—but found that due diligence was not adequately pled because plaintiffs "make no

allegation of any specific inquiries of [defendants], [or] detail when such inquiries were made, to

whom, regarding what, and with what response."  *Id.* at 521 (citations omitted).  Better reasoned

decisions, and the Sixth Circuit, hold that the concealment element of a claim of fraudulent

concealment is not satisfied by acts normally attendant to the conspiracy, but requires separate,

intentional acts of concealment.  *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-

md-02042, 2011 U.S. Dist. LEXIS 63297, at *51-63 (E.D. Mich. June 13, 2011).  That conduct

also must be pled with particularity. *Id.*; *see also Bridgeport Music v. Diamond Time*, 371 F.3d 883, 891 (6th Cir. 2004).  Plaintiffs' allegations of due diligence in this case – which are identical to the allegations held to be insufficient in *Hinds* – make no effort to say what any Defendant affirmatively did to conceal the alleged conspiracy or when they did so.

- *Hamilton Cnty. Bd. of Comm'rs v. NFL*, 491 F.3d 310, 319 (6th Cir. 2007) (plaintiff failed to show required exercise of due diligence and "affirmative acts of concealment" by defendant for purposes of establishing fraudulent concealment);

- *Gumbus v. United Food & Comm. Worker's Int'l Union*, 47 F.3d 1168 (6th Cir. 1995) ("[T]o overcome a 12(b)(6) motion, the plaintiffs must still plead facts showing that they exercised due diligence.  Plaintiffs' bare allegation to this effect is not enough.");

- *Pinney Dock & Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (alleging "mere silence" or "one's unwillingness to divulge one's allegedly wrongful activities" is insufficient); and

- *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126-28 (6th Cir. 1982) (citing the need to allege due diligence even when there was "active" fraudulent concealment).

### <u>Direct Purchaser Plaintiffs – Supplemental Brief Questions</u>

1. - The allegation that one company "acted for" a second company is simply a legal conclusion.  *Iqbal,* 129 S.Ct. at 1951.  Such a conclusory allegation does not allege facts showing the elements of agency.  *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 567 (6th Cir. 2006) ("[1] the manifestation of consent by one person to another that the other shall [2] act on his behalf and [3] subject to his control, and [4] consent by the other so to act.") (quotations omitted); *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010) (same).  *See also New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, No. 10-5100, 2011 U.S. App. LEXIS 12457 (6th Cir. June 21, 2011) (complaint should be dismissed where control over prices is not clearly alleged).

   - "Acting for" is also insufficient to allege piercing of the corporate veil to hold a subsidiary liable for the actions of a parent.  (*See* Crest/Inoac USA Mem. Supp. Mot. to Dismiss 6-7 (Dkt. # 89); Answer to Q. 4, pg. 3-4, *supra*.)

   - Even if either theory applied, the Complaints prove the first company <u>did not</u> discuss or agree upon the second company's prices or price increases in the alleged conspiratorial discussions.  The only plausible conclusion from the allegations is that the prices were those of the first company.  (*See* Crest/Inoac USA Mem. Supp. Mot. to Dismiss; CAC ¶¶ 82-84; ICAC ¶¶ 99-100, 107; Canadian Aff. ¶¶ 5.1, 5.2, 5.119; U.S. Aff. ¶¶ 35-38.)

2. - The CAC (¶ 83, n.1 and ICAC ¶ 99 n.2) defined a "conduit" of information as a an individual "who reported market conditions and price increases by alleged cartel

members to him.  These discussions were <u>not</u> about price fixing or market allocation but rather represented simply a transmission of information."  (emphasis added).  This is insufficient.  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124-26 (3d Cir. 1999) (court declined to infer a conspiracy based on salesman's exchange of information because he had no pricing authority and there was no indication the discussions involved setting of prices).  Additionally, the employer of the alleged conduit did not make or sell the allegedly impacted products.  (*See* Crest/Inoac USA Supp. Mot. to Dismiss 2.)

## **Indirect Purchaser Plaintiffs**

1.  *Associated General Contractors* ("*AGC*") bars Plaintiffs' request for relief under the Clayton Act at this motion to dismiss stage.  Standing is a threshold, Article III, constitutional issue.  The Supreme Court's decisions in *Amchem Prods., Inc. v. Windsor* and *Ortiz v. Fibreboard Corp.*, which concerned a settlement class and focused on unnamed class members, not named plaintiffs seeking to represent a class, do not prohibit a standing analysis at the motion to dismiss stage.

- *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 154 (E.D. Pa. 2009) (refusing to delay a standing ruling under *Ortiz* and *Amchem* because those cases "dealt with the standing of absent class members, not the named plaintiffs");

- *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 922 (N.D. Ill. 2009) (*Ortiz* and *Amchem* "do[] not require district courts to postpone the threshold inquiry into Article III standing until after class certification.");

- The *Ortiz* and *Amchem* decisions represent "rare circumstances" based on unique facts involving "global-mass settlements" where class certification was analyzed before standing.  *Marshall v. Milberg*, No. 07-civ-6950 (LAP), 2009 U.S. Dist. LEXIS 121208, at *26 (S.D.N.Y. Dec. 23, 2009); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 531 (S.D.N.Y. 2008) (citing cases);

- *Ortiz* and *Amchem* do not apply where, as here, "the standing issue would exist for the named Plaintiff if they filed their claims alone and not as a class action."  *Grund v. Del. Charter Guar. & Trust Co.*, No. 09-cv-8025, 2011 U.S. Dist. LEXIS 56918, at *14 (S.D.N.Y. May 26, 2011) (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002));

- *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) ("antitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law--lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be."); and

- *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 26048, at *54 (E.D. Mich. Mar. 11, 2011) (noting that while a minority of jurisdictions review standing at the class certification stage, "better-reasoned opinions . . . recognize and refuse to abandon the fundamental prudential standing requirements of Article III.").

The same is true for state antitrust statutes, which uniformly follow federal precedent.[2]

2. Under an *Iqbal / Twombly* analysis only claims survive, not individual allegations. If there are allegations in the CAC found sufficient to allege a plausible conspiracy of some size and scope, then the same allegations in the ICAC would be equally relevant on antitrust conspiracy issues, but not "injury" or anything else. Even if the CAC is not dismissed under *Iqbal / Twombly*, the ICAC plaintiffs lack injury and standing by virtue of their position in the distribution chain. (Defs.' Joint "Common Issues" Mem. 10-14.) The ICAC also purports to include causes of action in addition to antitrust claims with different *Iqbal / Twombly* consideration, and there are a host of issues independently warranting dismissal:

- a lack of standing to pursue claims under the laws of states where Plaintiffs do not reside (Defs.' Joint "Common Issues" Mem. 7-8);

- the failure to plead the necessary elements of a cause of action under the *Illinois Brick* "repealers" and consumer protection laws of all states (*id.* 19-30);

- the inapplicability of many state laws to Plaintiffs' claims (*id.* 20-22, 24, 35);

- the failure to satisfy state statutory prerequisites to filing a claim (*id.* 15-16); and

- the failure to plead the necessary elements of a cause of action for unjust enrichment and attempt to bring claims for unjust enrichment under state laws that do not recognize such claims, in addition to the prohibition against seeking class certification for such claims (*Id.* 30-32, 35-36).

3. Sixteen states have enacted *Illinois Brick* repealers.[3]

3a. Yes, Plaintiffs' state antitrust claims in jurisdictions that do not have *Illinois Brick* repealers

---

[2] Many states (Iowa, Maine, Nebraska, Illinois, Vermont, Nevada, California, D.C., Michigan, and Wisconsin) have expressly adopted *AGC*.

[3] Cal. Bus. & Prof. Code § 16750; D.C. Code § 28-4509; Haw. Rev. Stat. § 480-3; 740 Ill. Comp. Stat. 10/7; Kan Stat. Ann. § 50-161(b); 10 Maine Rev. St. Ann. § 1104; MCL § 445.778(2); Minn. Stat. § 325D.57; Miss. Code Ann. § 75-21-9; Neb. Rev. Stat. § 59-821; Nev. Rev. Stat. Ann. § 598A.210; N.M.S.A. § 57-1-3(A); N.C. Gen. Stat. § 75-16; Ore. Rev. Stat. § 646.780; S.D. Codified Laws Ann. § 37-1-33; Wis. Stat. § 133.18.

should be dismissed because state antitrust statutes adopt federal case law as precedential.

4.   There are no material differences between this case and *In re Travel Agent*, 583 F.3d 896.[4]

Plaintiffs' attempt to distinguish *In re Travel* because the plaintiffs in that case "alleged only that

[defendants] had the opportunity to conspire" is simply wrong.  The complaint in *In re Travel*

*Agent* included allegations tending to support a conspiracy, including allegations of uniform rate

changes that were contrary to defendants' economic self-interests, statements of officers of

defendants "that 'industry consensus' was necessary for industry-wide commission cuts to hold,"

and several other factual allegations.  *Id.* at 899-900.  Indeed, in its opinion the court stated that

"[a]s ***additional*** support for the alleged conspiracy, plaintiffs point to several meetings where

defendants had an opportunity to conspire."  *Id.* at 900 (emphasis added).

5.   *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010), in which plaintiffs

were *direct* purchasers, involved many allegations not present here, including:

- Allegations of "complex and historically unprecedented changes in pricing structure at the very same time by multiple competitors."

- Allegations that defendants raised prices "in the face of steeply falling costs."  Here, Plaintiffs recognize that price increase announcements occurred in the context of increasing raw material costs, as would be expected.  (ICAC ¶ 76.)

- Allegations of an "industry structure that facilitate[d] collusion" to fix prices, with four defendants comprising 90% of the market for essentially a single product.

- *Specific* allegations of defendants' meetings to plan and execute a price-fixing scheme.

6.   The decision in *In re Packaged Ice*, 2011 U.S. Dist. LEXIS 26048, provides legal analysis

pertinent to issues present in this case, but is factually inapposite for purposes of *Twombly*.

Specifically the court held that:

- "neither *Ortiz* nor *Amchem* requires that Article III standing issues be deferred until a class has been certified."  *Id.* at *49.

---

[4] Defs.' Joint "Common Issues" Mem. 11-12, 15, 18, 20, 27, 39-41.

- "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside." *Id.* at *58.

- the Supreme Court's *Shady Grove* decision prohibits application of state class action limitations only when such limitations are "procedural in nature and . . . not 'so intertwined' with the right or remedy that it defines the scope of the right." *Id.* at *65-71.

- to state a claim under Florida's Deceptive and Unfair Trade Practices Act, plaintiffs must plead "facts which would meet the more stringent requirements of Rule 9(b)." *Id.* at *83.

- "[s]tate law requirements under unjust enrichment law vary widely." *Id.* at *88-90.

The indirect purchaser plaintiffs in *In re Packaged Ice* were deemed to have satisfied *Twombly* because they alleged several facts not present here, including, conduct by the defendants contrary to their economic interests and price increases that did not correlate to the costs of raw materials. In addition, there were guilty pleas by several defendants to criminal antitrust violations consistent with the complaint, several key executives of defendants had been suspended for violating corporate antitrust policies, and corporate insiders admitted to antitrust violations.

7.  *In re New Motor Vehicles* and *FTC v. Mylan Labs, Inc.* are not inconsistent with *Gibbons v. Nuckolls, Inc.* While the court in *Gibbons* found that privity is not required in a true consumer fraud case with respect to Missouri's consumer fraud statute, it did not state or imply that its holding is equal to an *Illinois Brick* repealer and applicable to claims based on alleged anticompetitive conduct. The Missouri legislature has not enacted an *Illinois Brick* repealer. Plaintiffs, whose underlying claims are premised on antitrust violations, are asking this Court to apply *Gibbons* to circumvent the prohibition in Missouri's antitrust statue against indirect purchaser antitrust claims by implication; *i.e.*, without Missouri's legislature affirmatively allowing such claims. The supreme court in *Gibbons* did not intend to create a remedy that is denied under Missouri's antitrust laws.

8.  There are none. The D.C. and New Mexico consumer protection acts require plaintiffs to

plead conduct that is "unconscionable" or that prices were "unconscionably high."  (Defs.' Joint

"Common Issues" Mem. 21-22 (citing cases).)  The ICAC alleges only that "Defendants have

engaged in unfair competition or unfair or deceptive acts or practices in violation of District of

Columbia Code § 28-3901 et seq. [and] New Mexico Stat. § 57-12-1 et seq."  (ICAC ¶¶ 195,

205.)  These allegations fall well short and are factually unsupported.

9.   There are none.  The West Virginia, Colorado and Illinois consumer protection acts do not

apply to price-fixing claims.  (Defs.' Joint "Common Issues" Mem. 21-22.)  Because Plaintiffs'

complaint is based on price-fixing allegations it does not satisfy these states pleading

requirements.  The cases Plaintiffs rely on are not to the contrary.

- West Virginia: In *In re New Motor Vehicles*, the court addressed claims under West
  Virginia's antitrust act, not its consumer protection act, and *FTC v. Mylan Labs* did not
  explain the basis for its decision and was rejected by *In re TFT* and *In re GPU*.

- Colorado:  In *Campfield v. State Farm* the court addressed whether plaintiffs provided
  evidence of a deceptive trade practice, not whether price-fixing claims could be brought
  under Colorado's consumer protection act.

- Illinois:  In *In re Wellbutrin* the court cited *Siegel v. Shell Oil* when dismissing indirect
  purchaser's claims where the complaint was "a 'classic example' of an antitrust claim"
  because the Illinois antitrust act precludes relief in such instances.

10.   There are none.  The elements of an unjust enrichment claim and the interpretation of those

elements vary widely by state.  *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices

Litig.*, No. 05-c-4742, 2006 U.S. Dist. LEXIS 92169, at *4 (N.D. Ill. Dec. 18, 2006).  Plaintiffs

recite the same conclusory paragraphs in each of their unjust enrichment claims and allege none

of the differentiated elements required to state a claim for unjust enrichment under the laws of

the various states.  Plaintiffs' reliance on *In re Terazosin* is misplaced because, while the opinion

is otherwise thorough, its unjust enrichment discussion has been criticized as "not provid[ing] a

meaningful analysis."  *Siegel v. Shell Oil*, 256 F.R.D. 580, 584 (N.D. Ill. 2008).

Dated:  June 30, 2011                           Respectfully submitted,

/s/  James H. Walsh                             /s/  Kendall Millard
James H. Walsh                                  Kendall Millard
Howard Feller                                   BARNES & THORNBURG, LLP
Bethany Lukitsch                                11 South Meridian Street
MCGUIREWOODS LLP                                Indianapolis, IN 46204-3535
One James Center                                Phone: (317) 231-7461
901 East Cary Street                            Fax:    (317) 231-7433
Richmond, VA 23219-4030                         kmillard@btlaw.com
Phone: (804) 775-4356
Fax:    (804) 698-2200                          /s/   Michael D. Mustard
jwalsh@mcguirewoods.com                         Michael D. Mustard
hfeller@mcguirewoods.com                        BARNES & THORNBURG LLP
blukitsch@mcguirewoods.com                      600 One Summit Square
                                                Fort Wayne, IN 46802-3119
*Counsel for Carpenter Co., E.R.*               Phone:  (260) 423-9440
*Carpenter, L.P., Carpenter Holdings, Inc.*     Fax:     (260) 424-8316
*and Carpenter Canada Co.*                      mmustard@btlaw.com

                                                *Counsel for Flexible Foam Products, Inc.,*
                                                *Ohio Decorative Products, Inc.*

/s/   Frank A. Hirsch, Jr.                      /s/   Edward G. Warin
Frank A. Hirsch, Jr.                            Edward G. Warin
Matthew P. McGuire                              John P. Passarelli
ALSTON & BIRD LLP                               KUTAK ROCK LLP
4721 Emperor Blvd.                              1650 Farnam Street
Suite 400                                       Omaha, NE  68102
Durham, NC  27703                               Phone:  (402) 346-6000
Phone:  (919) 862-2200                          Fax:     (402) 346-1148
Fax:    (919) 852-2260                          edward.warin@kutakrock.com
frank.hirsch@alston.com                         john.passarelli@kutakrock.com
matt.mcguire@alston.com

*Counsel for Hickory Springs*                   *Counsel for Future Foam, Inc.*
*Manufacturing Company*

/s/  Howard B. Iwrey
Howard B. Iwrey
DYKEMA GOSSETT, PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304-2820
Phone:  (248) 203-0526
Fax:      (248) 203-0763

*Counsel for Inoac USA Inc. and Crest
Foam Industries, Inc.*

/s/  Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone:  (513) 381-2838
Fax:  (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone:  (816) 559-2227
jrebein@shb.com

*Counsel for Leggett & Platt, Inc.*

/s/  Francis P. Newell
Francis P. Newell
Peter M. Ryan
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone:  (215) 665-2118
Fax:      (215) 665-2013
fnewell@cozen.com
pryan@cozen.com

*Counsel for FXI - Foamex Innovations,
Inc.*

/s/  Richard A. Duncan
Richard A. Duncan
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh St.
Minneapolis, MN 55402-3901
Phone:  (612) 766-7000
Fax:      (612) 766-1600
rduncan@faegre.com

Robert A. Bunda
Theresa R. DeWitt
BUNDA STUTZ & DEWITT PLL
3295 Levis Commons Boulevard
Perrysburg, OH  43551
Phone: (419) 241-2777
Fax:      (419) 241-4697
rabunda@bsd-law.com
trdewitt@bsd-law.com

*Counsel for Otto Bock Polyurethane
Technologies, Inc.*

/s/   Robert J. Gilmer, Jr.
Robert J. Gilmer, Jr.
EASTMAN & SMITH LTD.
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio 43699-0032
Phone: (419) 247-1766
Fax:    (419) 247-1777
rjgilmer@eastmansmith.com

/s/   Timothy J. Coleman
Timothy J. Coleman
Bruce McCulloch
Terry Calvani
John K. Warren
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
701 Pennsylvania Avenue, NW
Suite 600
Washington DC 20004-2692
Phone: (202) 777-4555
Fax:    (202) 777-4555
tim.coleman@freshields.com

*Counsel for Vitafoam, Inc. and Vitafoam
Products Canada Ltd.*

/s/   Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax:    (213) 229-6919
dsawnson@gibsondunn.com

Cynthia Richman
John W.F. Chesley
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone:  (202) 530-8500
Fax:    (202) 530-9651
crichman@gibsondunn.com
jchesley@gibsondunn.com

*Counsel for Woodbridge Foam
Corporation, Woodbridge Sales &
Engineering, Inc., and Woodbridge Foam
Fabricating, Inc.*

/s/   Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Erica F. Ghali
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone:  (404) 881-7000
Fax:    (404) 881-7777
randall.allen@alston.com
teresea.bonder@alston.com
erica.ghali@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/   Sheldon Klein
Sheldon Klein
BUTZEL LONG
Stoneridge West
4100 Woodward Ave.
Bloomfield Hills, MI 48304
Phone:  (248) 258-1414
Fax:    (248) 258-1439
klein@butzel.com

*Counsel for Plastomer Corporation*

<u>/s/  Shepard Goldfein</u>
Shepard Goldfein
Elliot A. Silver
Skadden, Arps, Slate,
Meagher & Flom LLP
Four Times Square
New York, NY 10036
Phone: (212) 735-3000
Fax:     (212) 735-2000
shepard.goldfein@skadden.com
elliot.silver@skadden.com

*Counsel for Domfoam International, Inc.*
*and Valle Foam Industries (1995) Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2011, a copy of the foregoing Written Responses to Questions for Hearing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

      /s/ Bethany G. Lukitsch
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA  23219-4030
Phone: (804) 775-4711
Fax:    (804) 698-2261
blukitsch@mcguirewoods.com
