# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) |
| | ) |
| This document relates to: | ) ) |
| ALL CASES | ) ) |

MDL Docket No. 2196
Index No. 10-MD-2196 (JZ)

Judge Jack Zouhary

**DIRECT PURCHASER (CLASS ACTION) PLAINTIFFS' WRITTEN RESPONSES TO THE COURT'S QUESTIONS FOR JULY 1, 2011 HEARING**

**Direct Purchaser Plaintiffs – Common Issues**

1.　　　No legal support exists for Defendants' suggestion that allegations potentially

consistent with both anticompetitive and procompetitive behavior must be construed on a motion

to dismiss as lawful, procompetitive behavior.  The test is not whether allegations might be

consistent with procompetitive conduct, but whether the complaint includes allegations

"plausibly suggesting (not merely consistent with) agreement."  *Twombly*, 550 U.S. 544, 557

(2007).　　Nothing in *Twombly* abrogated the application of Fed. R. Civ. P. 8 in antitrust

conspiracy cases.  *See* Direct Purchaser Plaintiffs' Opposition to Defendants' Joint Common

Issues Mem. (Dkt. # 115) ("DPP Common Issues Br.") at 12-13.　　The complaint in *Twombly*

was deemed inadequate because the plaintiffs "rest[ed] their § 1 claim on description of parallel

conduct and not on any independent allegation of actual agreement."  *Id.* at 564.  *See* DPP

Common Issues Br. at 15-17.

　　　　　Where, as here, a complaint includes non-conclusory allegations plausibly suggesting

a conspiracy, courts since *Twombly* have rejected efforts to dismiss complaints on grounds that

the alleged conduct could potentially be consistent with procompetitive, non-collusive behavior:

*Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*, Nos. 09-6140/6173, 2011 U.S. App. LEXIS 12606 (6th Cir. June 22, 2011) (reversing dismissal of complaint;  "Watson Carpet specifically alleged both an agreement to restrain trade and later acts that furthered the conspiracy. In response, Mohawk proffered alternative explanations for its refusals to sell to Watson Carpet. However, to survive a motion to dismiss, Watson Carpet needs to allege only that the defendants' agreement plausibly explains the refusals to sell, not that the agreement is the probable or exclusive explanation.")

*In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627-29 (7th Cir. 2010) (Posner, J.), *cert. denied*, 2011 U.S. LEXIS 3339 (2011) (courts assessing a motion to dismiss need not determine whether allegations "*compel* an inference of conspiracy; the case is just at the complaint stage and the test for whether to dismiss a case at that stage turns on the complaint's 'plausibility'")

*Covad Comm'ns Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 676 (D.C. Cir. 2005) ("Bell Atlantic's second defense—that its refusal to deal was economically justified—depends upon a question of fact and therefore is not cognizable in support of a motion to dismiss.")

*In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 944 (E.D. Tenn. 2008) ("Whether the acts committed by the defendants are simple, benign business decisions...or whether they represent concerted effort in violation of the Sherman Act are issues of fact which this Court cannot decide on the pleadings and which require discovery prior to resolution")

*Nilavar v. Mercy Health Sys. Western Ohio*, 142 F. Supp. 2d 859, 876 (S.D. Ohio 2000) (denying defendants' motion to dismiss because arguments that exclusive contract for radiological services was "pro-competitive" required a factual inquiry)

*Carefusion Corp. v. Medtronic, Inc.*, 2010 WL 4509821, at *9 (N.D. Cal. Nov. 1, 2010) ("whether 'valid business decisions' motivated Defendants' [removal of certain product lines from the market] is a question of fact inappropriate for review at the pleading stage)

*Avaya, Inc. v. Telecom Labs, Inc.*, 2008 WL 4117957, at *14 (D.N.J. Aug. 29, 2008) ("Finally, Avaya's argument that '[t]here obviously are good business reasons for [Avaya] to limit access to its maintenance software to its own dealers and to PBX owners who self-maintain and pay the manufacturer for software access' is contrary to the allegations in the [complaint] and is not properly resolved at this stage of the litigation.")

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010) (*Twombly* did not purport to place on a plaintiff alleging an antitrust conspiracy claim a summary judgment standard at the pleading stage")[1]

2.      Responsive citations and parentheticals include:

*City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 4 (D.D.C. 2008) (rejecting defendants' argument that price increases were the result of "independent business decision[s]" and holding that plaintiffs sufficiently alleged circumstantial facts supporting an inference of a collusive agreement because "a complaint need not be dismissed where it does not 'exclude the possibility of independent business action. Such a requirement at this stage in the litigation would be counter to Rule 8's requirement of a short, plain statement with "enough heft to sho[w] that the pleader is entitled to relief." (citing *Twombly*))

*In re OSB Antitrust Litig.*, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) (alleged parallel pricing "may or may not be Defendants' 'natural' reactions to the failing OSB market," because "taken in combination with Plaintiffs' explicit allegations of Defendants' agreement to fix prices through [published price lists in an industry periodical], and their price-fixing discussions during industry events is certainly 'enough to raise a right to relief above the speculative level'" (citing *Twombly*); motion to dismiss denied)

---

[1]  Multiple instances of alleged improper conduct "make it far less likely that a business justification exists for all of the acts taken in total."  *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d at 943-44. *See generally Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 699 (1962) ("The character and effect of a [Sherman Act] conspiracy are not to be judged by dismembering it and viewing its separate parts").

*In re Blood Reagents Antitrust Litig.*, 2010 U.S. Dist. LEXIS 86930, at *6-7, *reconsideration denied*, 2010 U.S. Dist. LEXIS 134261 (E.D. Pa. 2010) ("factual enhancements" – including price increases, closely aligned contract cancellation, and substantially improved profit margins – were sufficient, when combined with parallel pricing, to render alleged conspiracy plausible)

*In re Plasma-Derivative Protein Therapies Antitrust Litig.,* 2011 U.S. Dist. LEXIS 13279 (N.D. Ill. 2011) (allegations that defendants engaged in a wide-spread conspiracy to restrict supply, and increased prices, "on their own" were not "particularly suggestive" of a conspiracy, but based on "plus" factors alone, the court found the allegations of conspiracy plausible)

*In re SRAM Antitrust Litig.,* 580 F. Supp. 2d 896, 901-02 (N.D. Cal. 2008) (dismissal denied where plaintiffs alleged defendant communications as well as market conditions establishing product was homogeneous commodity, with highly concentrated market and high entry barriers)

*Anderson News, LLC v. Am. Media, Inc.,* 732 F. Supp. 2d 389, 405 (S.D.N.Y. 2010) (complaint dismissed where allegations of publishers' parallel conduct included "no allegations of direct evidence of a conspiracy")

*LaFlamme v. Societe Planning Agency, Inc. v. Air France,* 702 F. Supp. 2d 136, 154-155 (E.D.N.Y 2010) ("allegations in the complaint, 'however true,' do not allow the court to infer any 'more than the mere possibility of misconduct'")

*In re Cal. Title Ins. Antitrust Litig.,* 2009 U.S. Dist. LEXIS 43323 *18 (N.D. Cal 2009) ("opportunity, without more, is not a plausible basis to suggest a conspiracy")

*In re Parcel Tanker Shipping Servs. Antitrust Litig.,* 541 F. Supp. 2d 487, 492 (D.Conn. 2008) ("Nowhere does the complaint cite to specific wrongful acts of specific defendants")

3.        Each member of an anticompetitive conspiracy is jointly and severally liable for the acts of its co-conspirators.  *See, e.g., Paper Systems, Inc. v. Nippon Paper Indust. Co. Ltd.*, 281 F.3d 629, 633 (7th Cir. 2002) (joint and several liability a "vital instrument for maximizing deterrence.").   Once a party knowingly joins a conspiracy, it is jointly and severally liable for *all* acts of the conspiracy, including those that occurred before the party joined, *regardless of whether the party joining the conspiracy had knowledge of the cartel's prior conduct.  See Myzel v. Fields*, 386 F.2d 718, 750 n.12 (8th Cir. 1967) ("it is well settled even under civil or criminal conspiracy that one who knowingly joins a conspiracy even at a later date takes the conspiracy as he finds it, with or without knowledge of what has gone on before"); *In re K-Dur Antitrust Litig.,*

3

338 F. Supp. 2d 517, 538 (D.N.J. 2004) ("a co-conspirator is liable for all acts committed in furtherance of a conspiracy, regardless of when it entered the conspiracy"); *In re Nissan Motor Corp. Antitrust Litig.*, 430 F. Supp. 231, 232 (S.D. Fla. 1977) ("proof of unlawful affiliation is sufficient to render a co-conspirator liable for all damages that the conspiracy caused, regardless of the exact time defendant became a member or the extent of its participation").[2]

Given that a party joining the conspiracy is jointly and severally liable for all acts of the conspiracy before and after the party joined, and regardless of whether the party knew of the cartel's conduct before joining, the precise date on which a party joined the conspiracy is not pertinent for establishing liability.  As detailed in Plaintiffs' Omnibus Response to Defendants' Separately Filed Memoranda (Dkt. # 114), the CAC here sets forth in detail for each defendant the acts during the conspiracy period demonstrating that it joined the conspiracy.

4.       Plaintiffs have properly alleged that every corporate entity named as a defendant in the CAC either participated directly in the conspiracy through the actions of its officers, employees, and representatives; dominated or controlled its affiliate who sold polyurethane foam in the United States during the Class Period with respect to the conspiratorial conduct; or was a member of the conspiracy as the alter ego or agent of its corporate affiliate.  *See, e.g.*, CAC ¶¶ 19, 22, 31, 44, 45, and 46. The CAC also alleges that the members of Defendant corporate

---

[2] The cases cited in Plaintiffs' Omnibus Response to Defendants Separately Filed Memorandum in Support of Their Motions to Dismiss (Dkt. #114) that relate to joining a conspiracy midstream did not address the question of liability where the party joining the conspiracy may have lacked knowledge of what had occurred previously.  Rather, these cases involved circumstances where the defendants had such knowledge and the courts referenced that fact.  *See, e.g., Havoco of Am., Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir. 1980) ("co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objectives may, in the anti-trust context, be charged with the preceding acts of its co-conspirators"); *Indus. Bldg. Mat, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970) ("One who enters a conspiracy late, with knowledge of what has gone before, and with the intent to pursue the same objective, may be charged with preceding acts in furtherance of the conspiracy.").

"groups" worked hand-in-hand in furtherance of the conspiracy.  *See, e.g.*, CAC  ¶¶ 13-22, 28-32, 44-48, 50.

A corporate parent can participate in a conspiracy through its subsidiary if that subsidiary acts as an agent for, or co-conspirator with, the parent:

*Corrigan v. United States Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007), *citing United States  v. Bestfoods*, 524 U.S. 51 (1998) (corporation liable for actions of subsidiary where corporate form used for wrongful purposes)

*Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, LLC, 317 F.Supp.2d 301, 325 (S.D.N.Y. 2003) (denying motion to dismiss where defendant allegedly coordinated subsidiaries' actions in violation of antitrust law).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179, 1184-85 (N.D. Cal. 2009) (plaintiffs adequately alleged different members of corporate groups participated in a conspiracy where allegations showed that conspirators did not pay attention to co-conspirators' corporate form and where corporate representatives acted on behalf of parents, subsidiaries, and affiliates within the same corporate group).

*Nobody In Particular Presents, Inc. v. Clear Channel Communications, Inc.*, 311 F.Supp.2d 1048, 1070-72 (D. Colo. 2004) (denying motion for summary judgment where defendant parent corporation directed the activities of a subsidiary that committed antitrust violations)

Issues regarding a corporation's control of related entities, or its alter ego or agency relationships with those entities, are not susceptible to resolution on a motion to dismiss:

*Square D Co. v. Schneider SA*, 760 F. Supp. 362, 367-68 (S.D.N.Y. 1991) (whether parent corporation exercised control over subsidiary "is a question of fact that precludes granting of the motion to dismiss")

*Reading Int'l*, 317 F.Supp.2d at 325 ("the threshold question of whether such [parent company] control exists is a fact-specific inquiry hinging on the particular structure and dynamics of the two entities.  Such a determination 'must await hearing on the merits'")

*Wilson v. International Bhd. Of Teamsters*, 83 F.3d 747, 759 (6th Cir. 1996) (on appeal from summary judgment, "determination of alter ego status is a question of fact")

5.        Defendants do not dispute that the CAC alleges numerous acts of fraudulent concealment, *see, e.g.,* CAC ¶¶ 64, 113-118, 135, and that the conspiracy was only discovered after government raids became public, *id*. ¶ 130.  The CAC also properly alleges plaintiffs' lack

5

of knowledge of the conspiracy and their diligence, including that (1) plaintiff did not discover,

and could not have discovered, the conspiracy through reasonable diligence until 2010; and (2)

defendants' secrecy, conspiracy and fraud thwarted any detection or diligence. CAC ¶¶ 130, 133.

Defendants' Joint Reply Brief instead focuses solely on the due diligence prong of the

fraudulent concealment analysis.  Defendants argue, relying on *Hinds County v. Wachovia Bank*

*N.A.*, 620 F. Supp. 499, 521-22 (S.D.N.Y. 1999), that the CAC must allege plaintiffs "made

reasonable investigations to discover the alleged conspiracy" and detail "when they made them

and what they did."  *See* Reply (Dkt. # 118) at 15. Defendants' proposed application of *Hinds*

*County*, which involved anticompetitive conduct in public bidding processes of states and

municipalities, makes little sense here.[3]  While the conspiracy here appears to have been

unknown even to law enforcement authorities prior to 2010, Defendants nonetheless ask that

Plaintiffs be required to have investigated whether their suppliers were criminals, and to have

done so prior to any government investigation or other indication of wrongdoing.  This is not the

correct legal test.  Instead, "the concealment requirement is satisfied only if the plaintiff shows

that he neither knew, nor in the exercise of due diligence, *could reasonably have known* of the

offense." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195 (1997) (emphasis added).  "We have

found many antitrust cases that same the same, and non says the contrary."  *Id.*

Consistent with this standard, the Sixth Circuit cases uniformly accept fraudulent

concealment as sufficient to toll the limitations period. *In re Packaged Ice Antitrust Litig.*, 723 F.

Supp.2d 987, 1019 (E.D. Mich. 2010)); *In re Scrap Metal Antitrust Litig.,*2006 U.S. Dist. LEXIS

---

[3]        The *Hinds County* court found an amended complaint adequately pleaded diligence
where it alleged that Defendants certified during public bidding processes that bids were
submitted independent of other bidders. *Hinds County v. Wachovia Bank N.A.*, 700 F.  Supp. 2d
378, 400 (S.D.N.Y. 2010).  Such certification requirements would make no sense in the type of
conventional private sector supplier relationship here.

75873 (N.D. Ohio 2006).  *See also In re Urethane Antitrust Litig.*, 683 F. Supp.2d 1214, 1234-35

(D. Kan. 2010).  Moreover, *Precision Associates, Inc. v. Panalpina World Transport (Holding)*

*Ltd.*, 2011 U.S. Dist. LEXIS 51330, at *179-83 (E.D.N.Y. 2011), *rejected* an effort by

defendants invoking *Hinds County* to impose a due diligence investigation requirement even

when the conspiracy was fraudulently concealed:

> The defendants argue that the plaintiffs' general assertions of diligence and ignorance, which rely on conclusory allegations of a self-concealing conspiracy, do not satisfy the pleading requirements. The defendants are correct that the plaintiffs do not allege "any specific inquiries of [Defendants], [or] detail when such inquiries were made, to whom, regarding what and with what response." Joint MTD, at 28 (citing *Hinds County*, 620 F. Supp. 2d at 521). The plaintiffs respond that they were unaware of the defendants' conduct or any facts that might have led to their discovery until October 2007 and in any event, the question of diligence is a fact question that cannot be resolved on a motion to dismiss.

> Again, this Court looks to the *Benchmark* decision for guidance since the price-fixing conduct at issue there has certain parallels to this case. There, the court held:

> It is at least questionable whether diligent inquiry by the plaintiffs would have actually uncovered any anti-competitive conduct. . . . It is worth recalling that it was the government investigations that opened the door for the plaintiffs to walk through. If the announcement of lockstep price increases were curious, even somewhat suspicious, they still did not provide notice to the plaintiffs. Due diligence does not demand such unmitigated cynicism on the part of consumers. *See Graphite Products*, 2007 F. Supp. 2d 1011, 2007 WL 1062979, at *4 (knowledge of parallel price increases and limited knowledge of government investigation does not establish lack of diligence). This is particularly so in the context of inflated surcharges. Surcharges, by nature, reflect various external costs that the airlines are forced to expend in order to provide commercial freight services. And because shipping is a highly fungible service, it is natural to expect that the airlines would be faced with highly similar external costs and variables relating to fuel, security, and customs charges. Thus, that many of the defendants and coconspirators inaugurated similar surcharges at the same time could be reflective not of any collusive agreement, but of the fact that the competitors were confronted with the same sets of external variables and already had similar pricing structures in place. It is natural to assume that business competitors forced to confront the same external stimuli will react in a similar way, and that such a reaction would not result from any conspiracy. . . .

> To the extent the plaintiffs were made aware of the parallel price increases by the defendants, there is nothing to indicate at this point that they would have been put on notice of price-fixing activity. *Twombly* stands for the proposition that parallel conduct by itself does not give rise to a plausible claim and it would be overly burdensome to put the plaintiffs on notice of their cause of action at that point. [other citations omitted]. * * *

In this case, where the plaintiffs have adequately pleaded a self-concealing conspiracy, the

question of diligence for purposes of fraudulent concealment is better left for the summary judgment stage or the finder of fact at trial. *Accord In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 373-74 (D.N.J. 2001); *Flat Panel*, 586 F. Supp. 2d at 1120 (finding it "generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment" on a motion to dismiss); *In re Vitamins*, 2000 U.S. Dist. LEXIS 7397, 2000 WL 1475705, at *8 (recognizing inherent tension with raising fraudulent concealment defense at motion to dismiss stage where evidence is mostly in the hands of defendants).[4]

## **Direct Purchaser Plaintiffs – Supplemental Brief Questions**

1.        Antitrust liability extends to principals whose agents "acted for" the principal in

restraint of trade.   *See, e.g.*:

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 567-70 (1982) (principals are liable under federal antitrust law, including for treble damages, for their agents' conduct)

*Cont'l Baking Co. v. United States*, 281 F.2d 137, 150 (6th Cir. 1960) (in criminal antitrust prosecution, a corporation is legally bound by even the *unauthorized* conduct of its agents, so long as the conduct is within the agents' express or apparent authority)

*Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 342-43 (D. Vt. 2010) (antitrust claims against company "direct[ing] and control[ling]" another appropriate under "agency theory")

Restatement (Third) of Agency § 7.03 cmt. e (2006) (explaining *Hydrolevel*'s application of treble damages against principal for agent's antitrust violations)

---

[4] *See also Conmar v. Mitsui & Co.*, 858 F.2d 499, 504 (9th Cir. 1988) ("requirement of diligence is only meaningful…when facts exist that would excite the inquiry of a reasonable person"); *In re Vitamins Antitrust Litig*, 2000 WL 1476705 at *4 (D.D.C. 2000) (plaintiff "need not show the actual exercise of diligence in order to toll the limitations period . . . actual proof of an investigation is not required.");  *In re Petrol. Prods. Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991) ("[p]laintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have"); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2nd 777, 788 (N.D. Cal. 2007); *Richards v. Maleski*, 662 F.2d 65, 71 (D.C. Cir. 1981) (quoting *Hudak v. Economic Research Analysts,* 499 F.2d 996, 1002 (5th Cir. 1974) (the due diligence requirement does not require "that an aggrieved party proceed from the outset as if he were dealing with thieves. . .").  Even within the Southern District of New York, where *Hinds* was decided, the courts have divided about the extent of any requirement to plead due diligence. *See SEC v. Power*, 525 F. Supp. 2d, 415, 426 (S.D.N.Y. 1997) (allegation of affirmative acts to conceal the violation satisfies diligence requirement); *In re Magnetic Audiotape Antitrust Litig.*, 2002 WL 975678, at *2-3 (S.D.N.Y. May 9, 2002) ("without a tip-off that a price fixing conspiracy existed, plaintiffs had no reason to exercise due diligence"); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) ("Plaintiffs…could not have discovered the conspiracy at an earlier date by the exercise of due diligence because of the affirmative, deceptive practices and techniques of secrecy employed by Defendants").

The allegation that Vitafoam was an agent of Crest is thus sufficient, because it is based on particularized pleadings both of Vitafoam's majority control, and specific actions on behalf, of Crest.  CAC ¶¶ 32, 85:

*Ready & Motivated Minds, LLC v. Ceridian Corp.*, 2011 WL 831776, at *2-3 (D.N.J. Mar. 2, 2011) (alleging specific settings where agent represented principal "sufficient 'to raise a reasonable expectation that discovery will reveal evidence of' the existence of an agency relationship")

*HCRI TRS Acquirer, LCC v. Iwer*, 708 F. Supp. 2d 687, 689, 692 (N.D. Ohio 2010) (Zouhary, J.) (affirmative defense that "the Plaintiff is equitably estopped . . . by reason of the fact that *it directly controlled the actions of* [its agent] *which created the circumstances which resulted in the default*" was "properly pleaded under Civil Rule 8" because, "although the allegations do not specify all of the conduct that gave rise to the defense[], they do give Plaintiff the necessary notice of a plausible defense")

*Warden v. PHH Mortg. Corp.*, 2010 WL 3720128, at *4-5 (N.D. W.Va. Sept. 16, 2010) ("plaintiffs have sufficiently pled that a principal/agent relationship existed" where plaintiffs alleged only that one defendant "acted as the servicer of a loan held by" the other defendant)

*Allen*, 748 F. Supp. 2d at 342-43 (Sherman Act complaint sufficiently pleaded a principal-agent relationship by alleging, *inter alia*, that principal owned 50% share in agent  and controlled operations, even though the complaint did not refer explicitly to a "principal" or "agent")

*F.W. Webb Co. v. State Street Bank & Trust Co.*, 2010 WL 3219284, at *13 n.6 (S.D.N.Y. Aug. 12, 2010) (an allegation of a principal-agent relationship "would require that [the principal] controlled [the agent]")

*Robison v. JPMorgan Chase & Co.*, 2010 WL 2555757, at *2 (E.D. Mo. June 23, 2010) (finding allegation of principal-agent relationship sufficient where alleged that agent was "a business conduit for its principal")

*In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278, 290-91 (S.D.N.Y. 2005) (general allegations that defendant auditor worked as client's agent sufficient to plead agency)

2.      A competitor's serving as a conduit in information exchanges among other competitors indicates participation in an antitrust conspiracy.  Alleging such collusive conduct places the conduit at the heart of the conspiracy and therefore states an antitrust claim.

*Am. Column & Lumber Co. v. United States*, 257 U.S. 377, 411 (1921) (exchanges of price information for the purpose of "procur[ing] 'harmonious' individual action among a large number of naturally competing dealers" violated Section 1 of the Sherman Act)

*United States v. Am. Linseed Oil Co.*, 262 U.S. 371, 389 (1923) (plan for exchange of price data unlawful because "its necessary tendency is to suppress competition in trade")

*United States v. Container Corp.*, 393 U.S. 333, 337 (1969) (exchange of pricing information "has an anticompetitive effect in the industry, chilling the vigor of price competition," especially in an industry where "[t]he product is fungible and the competition for sales is price")

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1157-58 (5th Cir. 1992) (reversing dismissal of antitrust claim because, contrary to district court's finding, complaint "allege[d] facts that [defendant] was a conduit" "for price fixing information")

*Penne v. Greater Minneapolis Area Bd. of Realtors*, 604 F.2d 1143, 1148 (8th Cir. 1979) (reversing grant of summary judgment to defendants because "it remains an open question whether the price information exchange 'has had an anti-competitive effect in the industry'")

*In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (denying motions to dismiss individual defendants against whom it was only alleged "that they were involved in information exchanges," because "the information exchanges are, in this case, sufficient to raise a plausible inference of an antitrust conspiracy)

*Hyland v. Homeservs. of Am., Inc.*, 2007 WL 2407233, at *3 (W.D. Ky. Aug. 17, 2007) ("exchange of price-information" supports price-fixing allegations in complaint)


DATED:   June 30, 2011

Respectfully Submitted,


/s/   William A. Isaacson_____
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC  20015
Phone:  202-237-5607
Fax:     202-237-6131

/s/  Stephen R. Neuwirth_____
Stephen R. Neuwirth
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Phone:  212-849-7165
Fax:     212-849-7100


***Direct Purchaser Plaintiffs' Interim Co-Lead Counsel***