UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

|  |  |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL CASES[1] | ) <br>) MDL Docket No. 2196<br>) Index No. 10-MD-2196 (JZ)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT LEGGETT & PLATT, INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF DENIAL OF MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO CERTIFY THE ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. §1292(B)**

Defendant Leggett & Platt respectfully moves for reconsideration of the Court's decision to reject Leggett & Platt's motions to dismiss under Rule 12(b)(6) and the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). (Doc. No. 191.) In the alternative, Leggett & Platt requests that this Court certify its Order for immediate appeal to the Sixth Circuit under 28 U.S.C. §1292(b). With all due respect, the Court's denial of Leggett & Platt's motions to dismiss the Complaints is inconsistent with Court's own conclusions elsewhere in its Order regarding the allegations in the

---

[1] Leggett & Platt has been named and served in only two direct purchaser class actions (*J&S Packaging, Inc. v. Flexible Foam Products, Inc., et al.*, Case No. 1:10-pf-10014, and *Martin Furniture and Bedding, Inc. v. FXI – Foamex Innovations, Inc., et al.*, Case No. 1:11-pf-10005), one indirect purchaser class action (*Greg Beastrom, et al. v. The Carpenter Company, et al.*, Case No. 1:11-pf-10010), and one direct (non-class) action (*Sealy Corporation, et al. v. Carpenter Co.*, Case No. 1:11-10007) as of the date of this motion. Pursuant to the Initial Case Management Order and Amended Case Management Order in this action, Plaintiffs in these two direct purchaser class actions and one indirect purchaser class action have been deemed to automatically adopt the allegations in the Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") or the Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("ICAC"), respectively. The arguments raised in this motion apply to all cases within the scope of the CAC and/or the ICAC in which Leggett & Platt may be named and served.

Complaints and governing law. Indeed, the Court recognizes that Leggett & Platt (and the other "slender reed" Defendants) is in a different position than the main Defendants here. But the appropriate remedy at this stage of the case is not to limit discovery, it is to dismiss the Complaints as to Leggett & Platt.

In the alternative, Leggett & Platt requests certification of the Court's Order for immediate appeal. This case plainly meets the criteria set forth in 28 U.S.C. 1292(b), as applied previously by this Court, for the reasons set forth below.

## ARGUMENT

**A. Nowhere In Any Complaint In This Action Is There Even One Factual Assertion that Any Employee of Leggett & Platt Ever Did Anything Wrong**

The Court's decision to reject Leggett & Platt's motions to dismiss is interlocutory and as such, this Court retains the power to change its mind: "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders." *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 951 (N.D. Ohio 2009) (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted)); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *accord* Fed. R. Civ. P. 54(b). To be sure, Leggett & Platt realizes that wholesale reargument of its case is inappropriate and will not serve the interests of judicial economy. Therefore, Leggett & Platt will focus very specifically on the Court's actual decision and the reasons why reconsideration is appropriate here.[2]

---

[2] Leggett & Platt recognizes that some courts have suggested that the standard on reconsideration ought to be the standard that applies under Fed. R. Civ. P. 59(e) for alteration or amendment of a judgment. *See, e.g., Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995). Because there is no judgment here and because the order is interlocutory, that rule is not applicable. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (when a court issues "an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the

The Court acknowledges that much of what is alleged in the Complaints, at least in "isolation," "rings conclusory" and is the type of "formulaic recitation" rejected by *Twombly*. (Doc. No. 191 at 3.) Therefore the Court focused on the only allegations that could possibly be considered 'factual' as opposed to conclusory: the existence of the Canadian and U.S. criminal investigations and the statements that the Vitafoam employees have made in conjunction with that investigation. According to the Court, there are "specific admissions" that "support the existence of a conspiratorial agreement." (Doc. No. 191 at 4.) Importantly, the Court concludes: "These statements, by former and current Vitafoam leadership, name competitor employees with whom they engaged in conspiratorial discussions and conduct. Each such allegation is the kind of 'smoking gun' that make Plaintiffs' Complaints plausible in alleging antitrust violations." *Id.*

But it is undisputed that Leggett & Platt is not directly implicated in any of the Vitafoam statements or by any of the Vitafoam witnesses. There is no 'smoking gun' allegation as to Leggett & Platt. Indeed, the first footnote in the Court's opinion confirms this understanding. (Doc. No. 191 at 6 n.1.) There is no allegation that any Leggett & Platt employee had any contact with anyone from Vitafoam. So under the Court's general logic and analysis, Leggett & Platt should be dismissed because all that remains are the "formulaic recitations."

The Court addressed the allegations against Leggett & Platt in a separate part of its opinion. But Leggett & Platt submits that the Court's statements in its opinion actually support dismissal of Leggett & Platt. The fact that the Canadian affidavit mentions Leggett & Platt is simply irrelevant because the existence of a governmental investigation does "not constitute factual averments of a §1 claim that would allow such a claim to survive a motion to dismiss." *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F Supp. 2d 499, 514 (S.D.N.Y. 2009). The

---

limitations of Rule 59"). But even if it were, the relief in this motion would be warranted "to correct clear error or to prevent manifest injustice." *Plaskon*, 904 F. Supp. at 669.

Court acknowledges this point in another part of its opinion.  (Doc. No. 191 at 4.)  The Court concluded that the existence of the government investigation had to be coupled with "smoking gun" allegations and specificities in order to be relevant.  *Id.*  But even putting aside the concept that a government investigation ought to carry no "weight" in this context,[3] with regard to Leggett & Platt, the Court mentions only that the Complaints allege that competitors displayed "knowledge" of Leggett & Platt pricing decisions and that Vitafoam apparently possessed two Leggett & Platt pricing letters.  (Doc. No. 191 at 8.)  Neither approaches the kind of "smoking gun" allegation that the Court cites with respect to other Defendants.

The two Vitafoam employee conversations that mention knowledge of a Leggett & Platt pricing change both occurred days *after* Leggett & Platt's pricing letter was mailed out to thousands of customers.  Exhibit 5, paragraph 11 of the Canadian affidavit references a phone conversation on June 3, 2010 in which the speaker indicates he has Leggett & Platt's price increase letter.[4]  That statement refers to a publicly distributed Leggett & Platt letter *dated 13*

---

[3] *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Calif. 2007).  Moreover, the alleged government investigations of the foam industry are over a year old.  Despite being aided by the alleged inside knowledge of a cooperating conspirator company and at least four cooperating witnesses, and thousands of documents seized in raids last summer on numerous other foam companies; there have been *no charges* against Leggett & Platt, *no search warrant raids* on Leggett & Platt, *no subpoenas* directed to Leggett & Platt, and to the best of Leggett & Platt's knowledge *not even informal questioning* or inquiries of it or any Leggett & Platt employee.  In short, were the existence of an investigation given any weight in this case, it would have to be in favor of Leggett & Platt, not against.

[4] Plaintiffs referenced the Canadian affidavit in their Complaints.  In turn, the affidavit references four price increase letters which Leggett & Platt submits with the attached Declaration of Cindy Morrison ("Morrison Decl.") and which the Court can consider in connection with this Motion.  *See, e*.g., *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733 (N.D. Ohio 2010) ("In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.").  If the Court determines that any information submitted with the Morrison Declaration is not properly considered by the Court in the context of a motion to dismiss, Leggett & Platt requests that the information be excluded pursuant to Fed. R. Civ. P. 12(d).

- 4 -

*days earlier* - May 21, 2010 with a price change date effective June 28.[5] Exhibit 5, paragraph 17 of the affidavit references a phone conversation on June 15, 2010 in which the speaker indicates that Leggett & Platt is the first one going up in the U.S. That statement refers to a Leggett & Platt letter publicly distributed to thousands of customers dated 4 days earlier – Leggett & Platt's June 11, 2010 letter with a price change date effective July 19.[6] If the fact that a competitor learned of a price increase long after it was publicly announced was sufficient evidence to bring an antitrust lawsuit, then virtually every company in the United States can now be dragged into massive class action antitrust litigation.

The Canadian affidavit also alleges that two Leggett & Platt price increase letters were found in Vitafoam files. Significantly, this conspiracy has allegedly been ongoing for as much as decades, yet the Canadian affidavit alleges nothing about any Leggett & Platt price changes or letters from the dawn of time through 2008. Only two Leggett & Platt letters from 2009 and 2010 are mentioned – a period when Leggett & Platt sent at least four such letters out to thousands and thousands of customers.[7] If finding in a competitor's file nothing more than one or two of many documents publicly distributed to thousands for many years was sufficient evidence to bring an antitrust lawsuit, then virtually every company in the United States can now be dragged into massive class action and antitrust litigation.

Moreover, despite the fact that at least four cooperating witnesses and a cooperating, confessed conspirator company were helping out the Canadian authorities, there is not one

---

[5] Morrison Decl., ¶4.

[6] Morrison Decl., ¶5. Both the May 21, 2010 and June 11, 2010 letters were mailed to 2,430 customers. *See* Exhibit G to Morrison Decl. (Exhibits F and G are to be filed under seal subject to the Court's ruling on Leggett & Platt's Motion to File Under Seal filed contemporaneously with this Motion.)

[7] *See* note 6 *supra* and Exhibit G to Morrison Decl. (listing the 2,600 customers to whom the referenced 2009 letters were mailed.)

- 5 -

allegation in the Canadian affidavit that Leggett & Platt made information available to its competitors, either before or after that information became public. In fact, the Court states that the "larger conspiracy," "contemplates competitor flexible polyurethane foam manufacturers sharing Leggett & Platt . . . pricing information to coordinate and enforce similar price increases among all Defendants." (Doc. No. 191 at 8.) On its face, that conclusion by the Court only covers "competitor . . . manufacturers sharing Leggett & Platt . . . pricing information," not any instances of Leggett & Platt sharing its own pricing information, a 'fact' that is conspicuously missing from the Complaints. Indeed, the Canadian Affidavit itself concedes that some number of the pricing letters "were . . . received from customers," not from the competitors. (Canadian Aff. ¶5.146.) The bottom line here: there is no factual allegation in the Canadian affidavit or in the Complaints that any employee of Leggett & Platt did anything wrong.

The Sixth Circuit's recent decision in *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, ___ F.3d ___, 2011 WL 2462833 (6th Cir. June 22, 2011) is easily distinguishable. In that case, the allegations of agreement, on their face, covered the defendants at issue. That is simply not true in this case with regard to Leggett & Platt. Vitafoam's cooperation and disclosure resulted in allegations of express agreement among certain of the other Defendants but not Leggett & Platt. Indeed, the Court's decision to sweep Leggett & Platt up with these other Defendants establishes a *de facto* rule that once a conspiracy is adequately alleged with regard to some subset of competitors in an industry, all competitors can be sued. This is not the law and is flatly inconsistent with the holdings in *Twombly* and *Iqbal, supra.*

In *Watson Carpet,* there was a factually supported allegation of agreement among the relevant parties. As noted above, this is just the allegation that is missing with regard to Leggett & Platt. The real dispute in *Watson Carpet* was whether the alleged agreement "plausibly

explain[ed]" what could be regarded as anticompetitive conduct, a refusal to sell. *Id.* at *1. But this factual allegation is also missing in the case of Leggett & Platt. There is no factual allegation that Leggett & Platt exchanged any pricing information or raised or lowered prices in conjunction with competitors. Thus, there is no specific factual allegation that Leggett & Platt even participated in any actions that could be regarded as consistent with an agreement. There is no Leggett conduct here for an agreement to "plausibly" explain.

By singling Leggett & Platt out for separate analysis (along with the other "slender reed" defendants) and by putting Leggett & Platt into a limited discovery group, the Court has conceded that Leggett & Platt really does not belong with the core group of Defendants in this case—the ones mentioned, for example, by Vitafoam employees specifically. Leggett & Platt simply asks this Court to take the natural next step and dismiss it from this case.

**B.     In the Alternative, the Court Should Certify Its Order For Immediate Appeal under 28 U.S.C. §1292(b)**

If this Court chooses not to reconsider its order and dismiss Plaintiffs' claims, Leggett & Platt requests alternatively that this Court certify its denial of dismissal order under 28 U.S.C. §1292(b) for immediate appeal to the Sixth Circuit. As this Court is aware, there are three things that a court must conclude when granting 1292(b) certification of an order: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *Deutsche Bank National Trust Co. v. Weickert*, 638 F. Supp. 2d 826, 830 (N.D. Ohio 2009); *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Here, as discussed above, the Order raises a significant question regarding the circumstances under which a price-fixing complaint can meet the requirements of *Twombly* and *Iqbal*, including

the question of what the significance ought to be of a governmental criminal investigation involving the relevant industry.

With respect to the factors, first, the order must involve a "controlling question of law." "A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351. Here, the Court's Order raises several issues that implicate dismissals under *Twombly* and *Iqbal*. One specific question concerns whether the allegation that a Defendant has been named in an affidavit as the possible subject of a broad criminal investigation can be a substitute for a specific allegation of agreement or conspiracy. As the Court seems to recognize, there are no specific allegations of conspiratorial conduct by Leggett & Platt, but the Court regarded the existence of the governmental investigations as significant. (Doc. No. 191 at 8.) The Order also raises the question of whether an allegation that competitors have knowledge of pricing information and pricing letters from a Defendant is sufficient to link a particular Defendant to a price-fixing conspiracy where there is no particularized allegation of price-fixing conduct by the Defendant and no particularized allegation that the competitors came by that information because of any conduct (much less misconduct) of the Defendant.

There is no question that a reversal of the Court's decision would result in the end of the litigation for Leggett & Platt—that would plainly "affect the outcome of the case." In the *Text Messaging* decision, which Plaintiffs have cited at length, Judge Posner held specifically that even the general denial of a motion to dismiss raising questions under *Twombly* and *Iqbal* involves a controlling legal issue under 1292(b). *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2011).

Next, "substantial grounds for a difference of opinion exist when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the

circuits are split on the issue." *Weickert*, 638 F. Supp. 2d at 831 (quoting *West Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1019 (W.D. Tenn. 2000)). More recently, the Ninth Circuit, in accepting a 1292(b) pleading case, noted that it was not necessary that a prior court "hav[e] reached a conclusion adverse to that from which appellants seek relief." *Reese v. BP Exploration (Alaska) Inc.*, ___ F.3d ___, 2011 WL 2557238, *5 (9th Cir. June 29, 2011). Instead, the criterion is met "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.*

In the *Text Messaging* decision, the court noted that an interlocutory appeal was appropriate in a similar situation: "Pleading standards in federal litigation are in ferment after *Twombly* and *Iqbal*, and therefore an appeal seeking a clarifying decision that might head off protracted litigation is within the scope of section 1292(b)." 630 F.3d at 627. There have been three decisions in the Sixth Circuit that have discussed pleading standards in antitrust cases following *Twombly* and two following *Iqbal* and *Twombly*. *Id.* This case presents another opportunity to clarify the application of these cases in an antitrust context and presents the not uncommon scenario of a government investigation. Indeed, as this Court's opinion implies, if the allegations against Leggett & Platt are sufficient, they must be at the very bottom end of what is required in a post *Iqbal* and *Twombly* pleading. Therefore certification in this case would result in significant clarification of the minimum standards of pleading in such cases, which are cases of great expense and great public significance.

Moreover, there is actual disagreement here on the question of whether a government investigation is relevant in the context of this case. In the *Graphics Processing* case, for example, the court concluded that the investigation "carries no weight in pleading an antitrust conspiracy claim." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024

- 9 -

(N.D. Calif. 2007); *accord Hinds County, Miss.*, *supra*, 620 F. Supp. 2d at 514. To be sure, this Court distinguished the *Graphics Processing* decision specifically on page 4 of the Order. (Doc. No. 191 at 4.) But the Court plainly regarded the existence of the governmental investigation as carrying some "weight," especially with respect to Leggett & Platt, which has never been subpoenaed in any government investigation or even contacted by Canadian or U.S. authorities. Indeed, were they quoted in full, the allegations in the Canadian affidavit would be insufficient to state a claim against Leggett & Platt that survives *Iqbal and Twombly* – thus it must be inevitably be inappropriate boot-strapping to rely on the fact of an insufficient investigation to satisfy the pleading standards of *Iqbal* and *Twombly*.

Finally, the appeal will "materially advance the termination of the litigation" with respect to Leggett & Platt. A successful appeal will, in fact, terminate the litigation for Leggett & Platt and would thereby "save judicial resources and litigant expense." *Deutsche Bank*, 638 F. Supp. 2d at 831 (quoting *W. Tenn. Chapter*, 138 F. Supp. 2d at 1026). Even limited discovery in this case and further motion practice will entail expense and burden for Leggett & Platt and certainly further proceedings, including perhaps trial, will be expensive as well.

For these reasons, if the Court denies Leggett & Platt's request for reconsideration, it should certify its Order for immediate appeal to the Sixth Circuit.

Dated: July 22, 2011

Respectfully submitted,

  /s/  Daniel R. Warncke
Daniel R. Warncke
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel.: 513.381.2838
Fax: 513.381.0205
warncke@taftlaw.com

Joe Rebein
Laurie A. Novion
Shook, Hardy & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: 816.474.6550
Fax: 816.421.5547
jrebein@shb.com
lnovion@shb.com

*Attorneys for Defendant Leggett & Platt, Incorporated*

**CERTIFICATION OF COUNSEL PURSUANT TO L.R. 7.1(F)**

Pursuant to L.R. 7.1(f), I hereby certify that this case has been assigned to the complex track. I hereby certify that the foregoing Memorandum adheres to the page limitations set forth in L.R. 7.1(f).

/s/ Daniel R. Warncke

- 13 -

## CERTIFICATE OF SERVICE

    I hereby certify that on July 22, 2011, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all parties' attorneys of record.

                                      /s/ Daniel R. Warncke