UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION ) ) ) ) This document relates to: ) ) ALL DIRECT PURCHASER CASES ) ) | MDL Docket No. 2196 Index No. 10-MD-2196 (JZ) |

**CERTAIN DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION
TO CERTIFY THE ORDER FOR IMMEDIATE APPEAL
UNDER 28 U.S.C.§ 1292(B) OR FOR A STAY OF THESE CIVIL ACTIONS**

Defendants Carpenter Co., E.R. Carpenter Company, L.P., Carpenter Holdings, Inc., Carpenter Canada Co., Flexible Foam Products, Inc., Ohio Decorative Products, Inc., Hickory Springs Manufacturing Company and Future Foam, Inc. (collectively "Defendants") respectfully move this Court for reconsideration of its decision rejecting their Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("CAC") and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("ICAC" or collectively the "Complaints"), Doc. No. 191 (July 19, 2011) (hereinafter, "Order"). Alternatively, these Defendants request the Court to certify its Order for immediate appeal to the Sixth Circuit Court of Appeals pursuant to 28 U.S. C. §1292(b), or to stay these civil actions pending resolution of the government investigations of the polyurethane foam industry.

Defendants are aware that the Court previously has considered and denied a motion for reconsideration and/or interlocutory appeal filed by Leggett & Platt. However, this Motion addresses several matters, such as Plaintiffs' fraudulent concealment claims, not raised by Leggett & Platt and, consequently, not addressed by the Court's July 27, 2011 Order. If we

restate arguments the Court has addressed in order to obtain clarification of the Court's prior rulings and/or to place this motion in proper legal perspective, we apologize.

Defendants respectfully submit that the Court has misinterpreted and misapplied the Sixth Circuit's decision in *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.,* Nos. 09-6140/6173, 2011 U.S. App. LEXIS 12606 (6th Cir. June 22, 2011), thereby doing what *Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), prevent district courts from doing—inferring conspiracy from conduct that is consistent with lawful pricing behavior.[1] The Court recognized that Plaintiffs' allegations that Defendants "contracted, combined, or conspired to fix, raise, maintain, and/or stabilize prices and allocate customers" is exactly the type of allegation that "rings conclusory," (Order 3) but then engaged in an analysis, largely premised on *Watson Carpet*, that resulted in substituting the allegations of government investigations for the factual support required by *Twombly* and *Iqbal,* as well as a number of Sixth Circuit decisions, including *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009).

Compounding the error, the Court invited a discovery "fishing expedition" by failing to stage or limit discovery except with respect to certain defendants, again contrary to prevailing law in the Sixth Circuit. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, No. 10-5100, 2011 U.S. App. LEXIS 12457, at *10 (6th Cir. June 21, 2011).

We do not believe any court in the Sixth Circuit previously has strayed from the teachings of *Twombly* and *Iqbal* to this extent, and we do not believe the Court's decision can be reconciled either with the principles established by the *Twombly*/*Iqbal* line of authority or with the law in the Sixth Circuit. At the very least, the Sixth Circuit Court of Appeals should be

---

[1] *Watson Carpet* was decided on June 22, 2011, well after briefing closed on the Defendants' Motions to Dismiss, and only nine days prior to oral argument.

2

allowed to consider the Court's analysis before the parties to this litigation are subjected to the enormous costs of defending the still largely undefined "conspiracy" Plaintiffs purport to plead in the Complaints.

Among a number of important questions raised by this Court's opinion is the proper role of a government investigation in the *Twombly/Iqbal* equation. Grand jury investigations are impressed with the secrecy requirements of Rule 6, Fed. R. Crim. P. 6 (e)(2), to protect the reputation of subjects of the investigation precisely because many such investigations are closed without findings of wrongdoing. The presumption of innocence at the core of our system of justice also counsels against prematurely imposing civil costs and penalties against companies simply because an investigation is undertaken. *See, e.g., In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (subpoenas served on the defendants and a grand jury investigation carry no weight in pleading an antitrust conspiracy where it is unknown whether the investigation will result in indictments or nothing at all). Consequently, to the extent the government investigations constitute the *sine quo non* of the factual support for the otherwise conclusory allegations in the Complaints, in fairness, these proceedings should be stayed pending resolution of the government investigations.

**ARGUMENT**

**I.      THE COURT SHOULD RECONSIDER ITS RULING BECAUSE IT INCORRECTLY APPLIED *WATSON CARPET*.**

The Sixth Circuit recognizes that "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders." *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 951 (N.D. Ohio 2009) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also* Fed. R. Civ. P. 54(b) (stating that interlocutory orders are subject "to

3

revision at any time before the entry of judgment"). Where a district court has not yet entered final judgment, the district court is "free to reconsider or reverse its decision for any reason," and is not subject to the heightened standard set forth in Rule 59(e). *ACLU of Ky. v. McCreary County*, 607 F.3d 439, 450 (6th Cir. 2010).

In this case, the Court should reconsider and reverse its Order. *Watson Carpet*, upon which the Court heavily relied, changed none of the law in the Sixth Circuit. The allegations in that case were simple enough: a carpet manufacturer and two retailers allegedly conspired to boycott a third carpet retailer. *Watson Carpet*, 2011 U.S. App. LEXIS 12606, at *3-4. The fact of agreement, including the who, what, where, when, why, and how, was explicitly pled in that case, and therefore was not the focus of the Sixth Circuit's opinion. *Id.* at *2 (noting that Watson Carpet's complaint contained "detailed allegations of an agreement to restrain trade").[2] Defendants' Motions to Dismiss, in fact, never challenged the allegations that the defendants had entered into an express agreement to boycott plaintiff. Rather, the question before the Sixth Circuit was whether events remote in time to the alleged agreement could be attributed to the agreement. *Id.* at *11. The Court found that because the express agreement had been appropriately pled, for purposes of a motion to dismiss activities consistent with the independently established "agreement" were "plausible" and could survive a motion to dismiss absent affirmative evidence of "withdrawal" from the conspiracy. *Id.* at 11-12. Nowhere in the opinion did the Sixth Circuit suggest that this commonsense application of established

---

[2] Specifically, Watson Carpet alleged: "In the spring or early summer of 1998, Defendant Rick McCormick met with Defendant Mohawk's Vice President and Senior Manager, Brad Matthaidess, and Mohawk sales representative Fred Woods, and devised a plan to run Plaintiff out of business and eliminate Plaintiff from the market. As part of the plan to run Plaintiff out of business, Mohawk would refuse to sell carpet to Plaintiff. By shutting off Plaintiff's carpet supply, Plaintiff would be unable to service its homebuilder customers who used Mohawk carpet. Defendant McCormick, Matthaidess, and Woods specifically discussed their intention to run Plaintiff out of business by shutting off his supply of Mohawk carpet. Other management employees at Mohawk, such as Larry Brookshire and Dale Byers, also approved, participated in, and made efforts to cover up the plan to run Plaintiff out of business in

conspiracy law was intended to fundamentally alter its interpretation of the requirements of *Twombly* and *Iqbal* or, as we believe the Court has done here, allow the reverse—inferring an express agreement from allegations of conduct consistent with lawful behavior. *See Twombly*, 550 U.S. at 557 (holding that allegations of conduct equally consistent with both anticompetitive behavior and lawful behavior are like naked assertions of conspiracy because "without some further factual enhancement it stops short" of stating a plausible claim).

As numerous decisions have found, the exchange of pricing information, in and of itself, is not unlawful. *In re Travel Agent Comm'n Antitrust Litig.*, MDL Docket No. 1561, 2007 U.S. Dist. LEXIS 79918, at *35 (N.D. Ohio Oct. 29, 2007) ("[T]he exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive''). Gathering competitive intelligence is not unlawful. *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan, Inc.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (noting that "[T]he evidence of interfirm communications does not tend to exclude the possibility of independent action"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (refusing to infer conspiracy from evidence of competitor communications); *In re Baby Food Antitrust Litig.*, 166 F.3d at 125-26 ("[e]vidence of sporadic exchanges of shop talk" did not support the inference of an agreement); *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1505 (11th Cir. 1985) ("recognizing that there is nothing unlawful about competitors meeting and exchanging price information"); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1357-58 (9th Cir. 1982) (finding that twelve communications over the course of seven years was "idle shop talk" and did not establish an unlawful conspiracy).

---

this manner." Watson Carpet Compl. ¶ 15. The Complaint further alleged that the scope of the conspiracy was limited to five counties near Nashville, Tennessee. *Id.* at ¶ 7.

*Twombly* just as clearly holds that behavior which could be either lawful or unlawful cannot be used to provide the required factual basis necessary to plead an actionable antitrust conspiracy, *see* 550 U.S. at 557, and the *Watson Carpet* court plainly did not use such conduct to infer or support an express agreement. Just the opposite. In *Watson Carpet,* the Sixth Circuit found that once an express agreement had been sufficiently pled, allegations of subsequent conduct that was plausibly related to the agreement alleged would survive a motion to dismiss. This Court misapplied *Watson Carpet* by first finding that the allegations of express agreement in the Complaints "ring conclusory," but then concluding that the amorphous information in the search warrant affidavits could be used as factual support for the existence of an express agreement.[3] Defendants respectfully suggest that the Court's reasoning reaches back to the *Conley v. Gibson*, 355 U.S. 41 (1957) era where some evidence, even evidence of activities as consistent with lawful behavior as unlawful behavior, was sufficient to defeat a motion to dismiss.

Unlike *Watson Carpet*, in this case the question is not whether subsequent actions plausibly can be attributed to an agreement independently pled and established, but whether Plaintiffs have provided adequate factual support for the existence of an antitrust conspiracy, express or implied. The Court apparently concluded that the allegations in the Complaints would not survive a motion to dismiss based on allegations sufficient to show "the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective," (Order 2), which requires allegations of parallel behavior that does more "than

---

[3] None of the transcribed communications in those affidavits identifies any such express agreement; to the contrary, its clear from many of the transcribed exchanges that the participants in these communications had no idea what their competitors intended to do with respect to pricing and were "fishing" for information. The "signaling," in other words, if it can be called that, was no different from the "hope" an airline, automobile manufacturer or gas station attendant have when they publicly announce or post a price increase.

6

describe behavior consistent with independent responses to natural market forces," *id.*, but then engaged in the following misapplication of *Watson Carpet*:

> However, when a complaint sufficiently alleges an express conspiratorial agreement, a plaintiff need not worry about the varying inferences that may be drawn from the complaint's allegations so long as one such inference suggests a plausible conspiracy. As the Sixth Circuit recently explained in *Watson Carpet & Floor Covering, Inc. v. Mohawk, Ink.,* 2011 WL 2462833 (6th Cir. 2011), if a complaint specifically alleges both an express agreement to restrain trade and later conduct by defendants consistent with the agreement, a defendant cannot prevail at the pleading stage by offering alternative explanations for the allegedly unlawful behavior.

*Id.* at 3. Building from this premise, the Court used the allegations of conduct in the Complaints deemed insufficient to demonstrate an implicit agreement to support the existence of an express agreement to restrain trade. If, however, under *Twombly* and *Iqbal* conduct is insufficient to support allegations of an implicit antitrust conspiracy, perforce it cannot be sufficient to support allegations of an express agreement.

There simply is no way to apply *Watson Carpet* to the very different facts of this case, where the existence of an express agreement is denied, and the question is whether Plaintiffs have alleged sufficient facts to describe and support their claim of express agreement. If every antitrust complaint that alleges "express agreement" in conclusory fashion can survive a *Twombly* motion so long as "one such inference" from the complaint's allegation "suggests a plausible conspiracy," then, of course, *Twombly, Iqbal* and the hundreds of cases that have applied their principles essentially become meaningless. *Twombly* and *Iqbal* very clearly stand for the proposition that to support an inference of conspiracy, the conduct alleged must *only* be consistent with unlawful behavior. *See Twombly*, 550 U.S. at 557.

An easy "litmus" test for determining the sufficiency of the Amended and Consolidated Complaints is simply to ask the straightforward *Twombly/Iqbal* questions: based on the

7

allegations in those Complaints, is it possible to tell when the conspiracy began; who joined it and when; how individual defendants joined the conspiracy; why they joined—after all, Plaintiffs claim that the foam market is an oligopoly where competitors should react in similar fashion to similar market factors—and what are the terms of the agreement?  It obviously is not possible to answer any of those questions from the allegations in these Complaints, as evidenced by the fact that the Court made no attempt to define the scope of the alleged conspiracy in its Order.  This turns discovery into a fishing expedition, precisely what *Twombly, Iqbal* and the Sixth Circuit have said is not appropriate.  *See New Albany Tractor, Inc.*, 2011 U.S. App. LEXIS 12457, at *10.

In its Order, the Court acknowledged the Complaints' heavy reliance on criminal investigations of the polyurethane foam industry by the Department of Justice and the Canadian Bureau of Competition, and placed similar reliance on alleged "admissions" from former Vitafoam employees to support its plausibility analysis. (Order 4-6.)  In truth, information from the government investigations, its hearsay nature notwithstanding, constitutes the *only* remotely "factual" material supporting the Complaints—there is nothing else.  Well-established law, however, limits the use of this material in a *Twombly* analysis, *see In re Graphics Processing Units ("GPU") Antitrust Litig.*, 527 F. Supp. 2d 1011, 1116-17 (N.D. Cal. 2007), and it is not just the *fact* of an on-going investigation that courts have found irrelevant to the evaluation of the sufficiency of an antitrust complaint, as the Court apparently believed. (Order 4.)  Indictments of co-defendants, even guilty pleas by co-defendants, are not enough to save an otherwise insufficient complaint *vis-à-vis* other parties.  *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 U.S. Dist. LEXIS 23311, at *17-18 (N.D. Iowa Mar. 8, 2011) (dismissing complaint even though there had been guilty pleas); *In re Municipal Derivatives*

8

*Antitrust Litig.*, No. 08-cv-2516, MDL No. 1950, 2011 U.S. Dist. LEXIS 47680, at *41-42 (S.D.N.Y. Apr. 28, 2011) (holding that existence of indictments and guilty "cannot replace entirely a plaintiff's independent proffer of facts which would tend to support the illegal conduct alleged"). The generalized nature of the "admissions" of the Vitafoam personnel, moreover, simply do not provide any answer to the basic *Twombly* questions of "who, what, when, where, why and how." *See In re Municipal Derivatives Antitrust Litig.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009) (holding that one defendant's participation in the leniency program does not establish co-defendants' participation in alleged conspiracy absent specific factual allegations establishing such involvement). Coupled with the presumption of innocence attendant to any criminal investigation, this should give pause to any expansive use of this information in evaluating the sufficiency of the Complaints, particularly since a year and a half into the investigation, neither DOJ nor the Canadian Authorities have brought a single charge.

The Court also apparently misunderstood Defendants' position with respect to the "alignment" of the scope of government investigations and the allegations of the Complaints. (Order 4.) *Twombly* and *Iqbal* teach that in order to provide proper "notice" to an antitrust plaintiff, *individualized* allegations regarding the "who, what, when, where, why and how" of a claimed conspiracy are needed. *Twombly*, 550 U.S. at 565 n.10 (complaint that does not plead "specific time, place, or person involved in the alleged conspiracies" is not sufficient to put defendant on notice of claims against it); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (affirming dismissal of complaint where it failed to plead when defendants joined the conspiracy, where or how this was accomplished, and by whom or for what purpose). When the scope of a government investigation is unknown, as here, those necessary details cannot be provided. Said differently, from the materials

9

"extracted" from the search warrant affidavits, it is impossible to tell what products, territories, time periods or companies allegedly were involved in conspiratorial activities. The many blanks can only hope to be filled by exploratory discovery, precisely what *Twombly*, *Iqbal*, *New Albany Tractor* and a myriad of other cases say is improper.

The Court obviously is concerned with the fact that the government investigation is ongoing. The feeling that where there is smoke, there might be fire understandably is a difficult one to ignore. However, using unproven claims extracted from government investigations that are supposed to be conducted in secrecy in order to keep alive an otherwise inadequate complaint is not the appropriate solution under *Twombly* and *Iqbal*. As *New Albany Tractor* makes very clear, *Twombly* and *Iqbal* weighed the competing interests and imposed stringent requirements that must be met before the massive costs of discovery are imposed on defendants. *See New Albany Tractor, Inc.*, 2011 U.S. App. LEXIS 12457, at *10. Those requirements have not been met in this case.

To the extent the government investigation forms the basis for the Court's denial of the Motions to Dismiss, at the very least, in fairness, the civil actions should be stayed pending resolution of the government investigations. As noted, no indictments have resulted from either DOJ or the Canadian Competition Bureau despite both agencies working with cooperating witnesses since February of *2010,* and subjecting Defendants to the costs of discovery on the premise that "something might turn up," is simply unjustified.

Short of a complete stay, there are other measures that could and should be instituted that would alleviate some of the costs and burdens of discovery. For example, discovery limited to that permitted in the *Urethanes* litigation or discovery limited to time periods in 2009 and 2010, when there is at least some evidence of informational exchanges among some of the Defendants

in this litigation. Limiting discovery, taking it one step at a time, is an approach that has been endorsed by various courts when the evidence of "agreement" and its scope is less than clear. *See Dahl v. Bain Capital Ptnrs, LLC*, 589 F. Supp. 2d 112, 119 (D. Mass. 2008) (holding that where the complaint had pleaded sufficient factual allegations plausibly suggesting an antitrust conspiracy for only nine transactions, the first stage of discovery would be directed solely and exclusively to those nine transactions).

The Court's Order also never addresses the reasons for the denial of Defendants' Motion to Dismiss Plaintiffs' fraudulent concealment claims, another issue that has potentially grave consequences in terms of discovery. The conclusory nature of the fraudulent concealment claims are self-evident, and they are not even remotely cured by anything in the government search warrant affidavits. At the very least, Defendants are entitled to know on what basis Plaintiffs' allegations of fraudulent concealment were deemed sufficient, especially given that allegations of fraudulent concealment must be pled with the heightened specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. *See In re Municipal Derivatives Antitrust Litig.*, 620 F. Supp. 2d at 519-20; *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 29 F. Supp. 2d 801, 809 (N.D. Ohio 1998) (applying Rule 9(b) to plaintiffs' allegations of fraudulent concealment).

Finally, there is no explanation in the Court's Order for the decision not to dismiss claims against Carpenter companies not in any way implicated by anything in the government search warrant affidavits.

These are all important jurisprudential considerations that should not be allowed to founder until the end of this litigation—too much cost, expense and mischief can result. The Court's rulings, in fact, potentially will impact not just the foam litigants, but also other

defendants sued in the Sixth Circuit. If the Court has misinterpreted *Watson Carpet, Twombly* and *Iqbal,* as we believe it has, correcting that error now by reconsidering its Order or certifying it for immediate appeal to the Sixth Circuit will save many litigants many millions of dollars.[4]

## II. THE INDIRECT PURCHASER CLASS PLAINTIFFS LACK STANDING TO BRING STATE ANTITRUST CLAIMS ON BEHALF OF CONSUMERS IN STATES IN WHICH THEY DO NOT RESIDE.

The Court's Order allows the Indirect Class Purchasers to proceed under state *Illinois Brick* repealer statutes in states where the putative class representatives are not residents. It is black letter law, however, that the would-be class representatives lack standing to pursue claims on behalf of individuals living in states where there class representative is not a resident. *See In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001) (holding that a class representative cannot assert claims under the laws of any state in which that representative is not itself injured); *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." (citation omitted)); *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56617, at \*39-42 (E.D. Pa. Aug. 3, 2007) (striking certain states from the class definition because plaintiffs lacked named class representatives from these states and had not alleged any injury in these states); *In re GPU*, 527 F. Supp. 2d at 1028 (dismissing plaintiffs' state law antitrust claims under the laws of seven

---

[4] In order for the Court to certify its Order under 28 U.S.C. § 1292(b) for immediate appeal to the Sixth Circuit, it must find that "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *Deutsche Bank National Trust Co. v. Weickert*, 638 F. Supp. 2d 826, 830 (N.D. Ohio 2009). As discussed in this brief, the Court's Order raises important questions regarding pleading standards in antitrust cases and takes a novel approach Defendants believe is inconsistent with current Sixth Circuit and other Federal Court *Twombly* opinions. *See In re Text Messaging*, 630 F.3d 622, 627 (7th Cir. 2011) ("Pleading standards in federal litigation are in ferment after *Twombly* and *Iqbal*, and therefore an appeal seeking a clarifying decision that might head off protracted litigation is within the scope of section 1292(b).").

states because no named plaintiff resided in those states); *see also In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007) (granting motion to dismiss state antitrust claims for twenty-four states where none of the named indirect purchaser plaintiffs resided); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1163-64 (N.D. Cal. 2009) (dismissing plaintiffs' claims under the laws of certain states because plaintiffs lacked representatives for those states); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 168 (E.D. Pa. 2009) (stating that plaintiffs had standing to assert claims only under the laws of those states where plaintiffs resided or members resided).

This is not an *Associated General Contractor* issue, but a straightforward, and threshold, matter of constitutional standing. The Court provides no stated reason for this decision in its order, but it again is an issue with serious consequences from a discovery and cost perspective, and the Defendants are entitled to know on what basis the Court is allowing Plaintiffs to proceed with claims they very obviously lack standing to pursue.[5]

## CONCLUSION

*Watson Carpet* cannot be read or applied as this Court has attempted to do, and it is neither efficient nor fair to allow Plaintiffs to engage in broad discovery simply because government investigations have raised questions about the nature of competitive activity in the polyurethane foam industry. We believe it self-evident, moreover, that if the Sixth Circuit meant to announce a drawback from *Twombly* and *Iqbal* in *Watson Carpet,* it would have said so. It simply makes no sense to say, as both *Twombly* and *Iqbal* do, that conduct consistent with lawful and unlawful conduct cannot possibly provide the factual basis supporting a conspiracy claim, but then use precisely that type of competitively ambivalent conduct to lend substance to the

---

[5] The fact that the state antitrust claims were allowed to proceed even though Plaintiffs only cited the state statutes and said they were violated is also completely contrary to the most basic levels of *Twombly* and *Iqbal*.

otherwise admittedly conclusory allegations of "express" agreement.  Conduct inadequate to prove an implicit agreement cannot possibly be adequate to prove an express agreement.  If, at the end of the day, the "who, what, when, where, how and why" of the conspiracy are still shrouded in mystery such that a cogent discovery plan cannot be delineated precisely enough to be fair to Defendants, then the *Twombly/Iqbal* test has not been met.  That is the case here.

Apart from the misapplication of *Watson Carpet,* the Court's Order leaves Defendants adrift on other fronts.  The failure to provide a rationale for denying the motion to dismiss fraudulent concealment claims, allowing putative representatives of indirect purchaser classes to bring claims they lack standing to pursue, and failing to dismiss claims against parties not mentioned in the search warrant affidavits, for example, needlessly expand the potential scope of discovery.

Therefore, Defendants respectfully request the Court to reconsider its Order denying their Motions to Dismiss.  Alternatively, Defendants request that the Court certify its Order for immediate appeal to the Sixth Circuit pursuant to 28 U.S.C. § 1292(b).  If the Court is unwilling to consider either alternative, then Defendants request that these civil matters be stayed pending resolution of the government investigations, which is the sole premise for the filing of these Complaints.  Absent a stay, Defendants ask that a staged and limited discovery plan be instituted that would limit and constrain the costs associated with the defense of these actions.

Dated: July 28, 2011            Respectfully submitted,

/s/  James H. Walsh
James H. Walsh
Howard Feller
Bethany Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4356
Fax:    (804) 698-2200
jwalsh@mcguirewoods.com
hfeller@mcguirewoods.com
blukitsch@mcguirewoods.com

*Counsel for Carpenter Co., E.R. Carpenter, L.P., Carpenter Holdings, Inc. and Carpenter Canada Co.*

/s/  Kendall Millard
Kendall Millard
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
Phone: (317) 231-7461
Fax:    (317) 231-7433
kmillard@btlaw.com

/s/   Michael D. Mustard
Michael D. Mustard
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone:  (260) 423-9440
Fax:     (260) 424-8316
mmustard@btlaw.com

*Counsel for Flexible Foam Products, Inc., Ohio Decorative Products, Inc.*

/s/   Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC  27703
Phone:  (919) 862-2200
Fax:     (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Hickory Springs Manufacturing Company*

/s/   Edward G. Warin
Edward G. Warin
John P. Passarelli
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE  68102
Phone:  (402) 346-6000
Fax:     (402) 346-1148
edward.warin@kutakrock.com
john.passarelli@kutakrock.com

*Counsel for Future Foam, Inc.*

15