**UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |
|---|---|
|  | MDL Docket No. 2196 |
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | Index No. 10 MD 2196 (JZ) |
|  | JUDGE JACK ZOUHARY |

This document relates to:

Martin Furniture and Bedding, Inc.,
  Plaintiff

v.                                        Case No. 1:11-pf-10005-JZ

Foamex Innovations, Inc., *et al*
  Defendants

and

Beastrom, et al.
  Plaintiffs,

v.                                        Case No. 1:11-pf-10010

Carpenter Co., et al.
  Defendants

**DEFENDANTS CREST FOAM INDUSTRIES, INC.'S AND INOAC USA, INC.'S
MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF DENIAL
OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO CERTIFY
<u>THE ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(B)</u>**

**INTRODUCTION**

Crest Foam Industries, Inc. ("Crest") and Inoac USA, Inc. ("Inoac USA") join in the generally applicable arguments set forth in the Motions for Reconsideration of the Court's July 19, 2011 Order Denying Defendants' Motions to Dismiss or, In the Alternative, Certification filed by multiple Defendants. (Doc. Nos. 202-1 and 203). The unique circumstances of Crest and Inoac USA, however, warrant the Court's separate consideration. Therefore, Crest and Inoac USA file the foregoing motion.

The briefing and ruling relating to the Motion to Dismiss confirms that Crest and Inoac USA did not participate in the alleged conspiracy. They were not implicated as conspirators by the alleged admissions of Vitafoam employees or in the Canadian Bureau of Competition Information, or even mentioned in the FBI affidavit. Indeed, the Vitafoam employee "Witness A," specifically *excluded* them in the list of companies that discussed, exchanged or agreed upon prices. (Doc. No. 46 at ¶83; Doc No. 52 at ¶95). Their presence as defendants instead is premised on the conduct of others, with Crest and Inoac USA purportedly liable under derivative *alter ego,* agency and "conduit" theories. *See* July 19, 2011 Order, pp. 8-9.[1]

Crest and Inoac USA's unique status as derivative, indirect actors means that, in order to state a claim against such defendants, Plaintiffs must plead more facts, and go beyond that which is required, to state a claim against a direct participant. Just as Plaintiffs must plead facts plausibly showing the existence of an unlawful agreement and linking each direct participant to the conspiracy, they must, but have not here, also set forth predicate facts supporting the *alter*

---

[1] The Court also listed two Japanese entities, Inoac Corp. and Inoac International in its 7/19/11 Order as Defendants whose arguments in support of dismissal were rejected by the Court, lumping them in with Crest and Inoac USA. *See id.*, p. 8. This was an error because these two entities had not been served with any Complaint and therefore were not parties to the case or the prior motions to dismiss. They intend to file motions to dismiss at the appropriate time.

*ego* and agency theories as to the alleged indirect actors. The legal conclusions in the complaints are "not entitled to a presumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009).

The Court's Order denying the various Defendants' Motions to Dismiss focused on the first piece of the analysis – the sufficiency of plaintiffs' allegations concerning the existence of the conspiracy and various direct actors' connection to it. The Court erred in failing to apply the *Twombly* pleading standard to Plaintiffs' conclusory allegations of derivative liability. The net result is that Plaintiffs have obtained through the back door of derivative pleading that which would not have been allowed through the front. Additionally, the Court seemingly accepted a "conduit of information" liability theory as to Inoac USA that Plaintiffs never themselves advanced and which is not supported by law relied upon by the Court. The Court's ruling constitutes legal error.

The Court should reconsider its decision to deny Inoac USA's and Crests' Motion to Dismiss. Alternatively, Inoac USA and Crest respectfully request that the Court certify its denial of the motion to dismiss as to Inoac USA and Crest under 28 U.S.C. § 1292(b) for immediate appeal to the Sixth Circuit.

<u>**ARGUMENT**</u>

**I.     THE COURT SHOULD RECONSIDER ITS JULY 19, 2011, ORDER DENYING INOAC USA'S AND CREST'S MOTION TO DISMISS.[2]**

---

[2] The standard for reconsideration has been set forth in other Defendants' Motions for Reconsideration. *See e.g.*, Defendant Leggett & Platt, Inc.'s Motion, Doc. No. 195, at 2 and Multiple Defendants' Motion, Doc. 202-1, at 3-4. Simply stated, the Sixth Circuit recognizes that "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders." *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 951 (N.D. Ohio 2009) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also* Fed. R. Civ. P. 54(b) (stating that interlocutory orders are subject "to revision at any time before the entry of judgment"). Where a district court has not yet entered a final judgment, the district court is "free

2

A. **The Court's Order Improperly Adopted A Weaker Pleading Standard For Defendants Whose Liability Is Derivative, Or Dependant On The Alleged Conduct, Of Others.**

Having accepted that the Complaints contain factual allegations plausibly suggesting an "express agreement to fix prices and divide the market" by virtue of the "many references to discussions among competitors," (7/19/11 Order, p. 5), and then stating that Plaintiffs must allege facts as to each Defendant's participation in the conspiracy, (*id*), the Court improperly alleviated Plaintiffs' burden to plead predicate facts as to the handful of Defendants whose liability is derivative of another defendant and/or based on the acts of an employee of Vitafoam. Stated differently, the Court recognized that Plaintiffs must plead facts tying each Defendant to the conspiracy, yet did not hold Plaintiffs to this pleading standard as to those Defendants whose liability is assumed "through theories of agency, alter ego, and control of . . . subsidiaries." (*Id.*, at pp. 8-9). Specifically, the Court held that "[w]hether Inoac did function as its subsidiaries' [Crest's] *alter ego* or whether Vitafoam 'acted for' Crest Foam Products during the alleged pricing discussions referenced in the Complaints are questions of fact that will not be resolved" at this stage. 7/19/11 Order, p. 9.

This is plain error because the ruling improperly credits merely legal conclusions as having a "presumption of truth" to which they are not entitled and lumps together Defendants Inoac USA and Crest, with other Defendants' employees ("Witness A" and Mr. Lucas) who allegedly conspired.[3] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109,

---

to reconsider or reverse its decision for any reason," and is not subject to the heightened standard set forth in Rule 59(e). *ACLU of Ky. v. McCreary County*, 607 F.3d 439, 450 (6th Cir. 2010).

[3] The lack of any material connection between Inoac USA and Crest and the alleged conspiracy is highlighted by the Court's inconsistent consideration of the criminal investigations of the polyurethane foam industry by the Department of Justice and the Canadian Bureau of

3

1115, 1117 (N.D. Cal. 2008) (dismissing claims against defendants that had been improperly lumped together by corporate family). Where a plaintiff attempts to comply with this pleading requirement and isolate a given defendant's role, it may not do so with conclusory allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) ("the conclusory nature of [the] allegations disentitles them to the presumption of truth"); *see also*, *In re Travel Agent Commission Antitrust Litig.,* 583 F.3d. 896, 905 (6th Cir. 2009) (rejected averment of an "agreement" as "nothing more than a legal conclusion 'masquerading' as a factual allegation.").

Based on this premise, arguments specific to each Defendant are discussed below.

### 1. The are no legally cognizable "alter ego" allegations as to Inoac USA.

Plaintiffs do not allege any direct unlawful conduct by Inoac USA. Its liability is premised on its ownership of Crest.. Yet Plaintiffs fail to allege any fact supporting this alter ego theory. Additionally, the Court's use of such a theory to implicate Inoac USA is in error, because the allegations of Crest's liability cited by the Court (which, in turn rely on Vitafoam's Bill Lucas "acting for" Crest) occurred several years before Crest became a subsidiary of Inoac USA.

---

Competition, including the alleged "admissions" from former Vitafoam employees, which formed the basis of the Complaints. 7/19/11 Order, p. 4. Going so far as to comment that evidence from these investigations provided the sort of "smoking gun" that "make Plaintiffs' Complaints plausible in alleging antitrust allegations," (*id*.), the Court did not attach the same significance to the *absence* of "smoking gun" allegations in these materials as to Inoac USA and Crest. Witness A purportedly provided information to the Canadian Commissioner of Canada in connection with an investigation of certain alleged conspirators, but this list of alleged participants did *not* include Crest or Inoac USA. (Doc. No. 46 at ¶¶ 83-84; Doc No. 52 at ¶¶ 95-96). Because "Witness A" specifically *excluded* Crest and Inoac USA from his listing of several entities whom he claims did agree on prices. *Id.,* ¶ 83; ¶ 95 table 1, so did Plaintiffs in their complaints. ¶ 83 and ¶ 95 of the complaints. Therefore if used at all, the Court's consideration of the criminal investigations should be consistent. This treatment further illustrates the Court's error in rejecting the argument that the Complaints do not plausibly allege that Inoac USA and Crest had a role in this alleged conspiracy.

4

Even if Crest were a subsidiary of Inoac USA at the time of the alleged conspiratorial acts of Vitafoam's Bill Lucas, the Court's reliance on the alter ego theory was plain error. An allegation that a company is a legitimate defendant pursuant to an "alter ego" theory without setting forth the predicate facts to justify that label is merely a legal conclusion. A complaint must instead contain facts that, if true, would allow a court to pierce the corporate veil and disregard the corporate form – allegations that are above and beyond facts that support a theory of liability against the direct actor whose conduct is attributed to the indirect actor.[4] Demanding this detail is important because the standard for piercing a corporate veil is so high; a parent corporation generally is not liable for the acts of its subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 F.App'x 273, 280 (6th Cir. 2009).

Plaintiffs allege *none* of the traditional factors courts review when considering piercing the corporate veil to impute a subsidiary's liability to a parent. The totality of the factual allegations of Inoac USA's connection *via* Crest is that: (a) since 2010, Inoac USA owned Crest;

---

[4] Federal common law principles govern the issue of corporate veil piercing for purposes of direct purchasers' federal claims. *See e.g., United States v. Carell*, 681 F.Supp. 2d 874, 890 (M.D. Tenn. 2009) (*citing NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331, 335 (6th Cir. 1990)). To pierce the corporate veil, plaintiffs must establish that: (1) the corporate form was disregarded (*i.e*., that the parent and subsidiary are merely alter egos of one another); (2) injustice will result if the court recognizes that the subsidiary is a separate corporate entity; and (3) the subsidiary was incorporated with fraudulent intent or as the result of some other illegality or injustice. *Laborers' Pension Trust Fund v. Sidney Weinberger Homes*, 872 F.2d 702, 704 (6th Cir. 1988). State law is in accord, including in Delaware, where Crest and Inoac USA are incorporated. (Doc. No. 46 at ¶ 32; Doc No. 52 at ¶ 38 and records of the Delaware Secretary of State, available at https://delecorp.delaware.gov/tin/controller). *See Geyer v. Ingersoll Publ'ns Co*., 621 A.2d 784, 793 (Del. Ch. 1992 ("a court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner").

5

and (b) Inoac USA engaged in foam products *fabrication* sales (*e.g.,* cutting and finishing).[5] Inoac USA is not even alleged to have been a controlling owner of Crest until January 2010.

Overall, aside from an introductory paragraph listing Inoac USA's principal place of business and sales of a product outside of the alleged conspiracy (Doc. No. 46 at ¶29; Doc No. 52 at ¶ 35), the only mention of Inoac USA appears in a table where plaintiffs identify certain defendants and individuals with whom a "Witness A" had alleged "discussions, exchanges of information and agreements" regarding foam prices. (Doc. No. 46 at ¶ 83; Doc No. 52 at ¶ 95). Inoac USA is *not* in this group but rather in the group that plaintiffs expressly allege was not directly involved in the conspiracy. *Id*.

Plaintiffs allege no facts supporting the conclusions that Inoac USA and Crest were alter egos. They do not allege that corporate formalities were ignored; that Inoac USA managed Crest on a daily basis; that Inoac USA and Crest did not maintain separate books and records; that Crest was insufficiently capitalized; that Inoac USA and Crest commingled finances; that Inoac USA used Crest to engage in fraud; or that Crest's mere existence was a sham. They merely allege that Inoac USA owned a controlling stake in Crest and this is insufficient as a matter of law to impose liability on Inoac USA. *Schwartz v. Elec. Data Sys., Inc*., 913 F.2d 279, 283 (6th Cir. 1990).

Given the lack of any allegations, it was plain error for the Court to obviate Plaintiffs' pleading burden as to any supporting "alter ego" facts tying in Inoac USA. The very recent decision in *In re Digital Music Antitrust Litigation*, 2011 WL 2848195 (July 18, 2011, S.D.N.Y.) illustrates the point. There, the court considered the adequacy of antitrust allegations in a

---

[5] These actions are limited to polyurethane foam and foam products, (Doc. No. 1 at ¶83; Doc No. 52 at ¶1), and do not involve foam products fabrication.

6

consolidated class action complaint concerning the licensing and distribution of music by several major record labels.  The plaintiffs alleged that the defendants conspired to fix prices and terms of sale through various joint ventures.  *Id*. at *1.  Three of the defendants were parent companies of other defendants.  *Id*. at *19.  The complaint alleged no conduct by the parents that violated the law.  *Id*. at *20.  Rather, the "thrust of the complaint is to impute the actions of the Parent Companies' subsidiaries or joints ventures . . . to the Parent Companies." *Id*. at *20.  Relying on the same principles set forth above, the court granted the Parent Companies' Motion to Dismiss because the consolidated complaint did not "***allege*** a basis to disregard the separate corporate forms of these entities and impose liability on the Parent Companies." *Id*. at *20 (emphasis added).  The complaint did not contain any allegations that the parents "misused the corporate form, disregarded corporate formalities, comingled funds, or otherwise misused the separate identities of the entities." *Id*. at *21.  Nor were there any allegations that the parents used the separate corporate form of the subsidiaries in order to perpetuate a fraud.  *Id*.  And because alleging mere ownership and control is not enough to pierce the veil, the court dismissed the parents from the case. Id. at *22; *see also*, *Oliver v. St. Luke's Dialysis, LLC*, No. 1:10-cv-2667, 2011 U.S. Dist. LEXIS 40147, at *17-19 (N.D. Ohio Apr. 5, 2011) (dismissing complaint where no allegations "would justify holding Defendants . . . liable for the alleged wrongdoing of their subsidiary."); *Pureworks, Inc. v. Brady Corp.*, No. 3:09-cv-00983, 2010 U.S. Dist. LEXIS 97688, at *27-28 (M.D. Tenn. Sept. 15, 2010) (allegations that a parent company "was exercising complete dominion over its subsidiaries and was using such control to commit the wrongful acts alleged above, and [plaintiff] has been injured as a result," *id*. at *9, were legal conclusions, inadequate to plead a veil piercing claim); *Clark v. Bucyrus Int'l*, No. 5:08-cv-434-JHM, 2009 U.S. Dist. LEXIS 61690, at *5-6 (E.D. Ky. July 19, 2009) (dismissing claims for

alleged wrongs of a parent's subsidiary where the "Complaint provides nothing more than a formulaic recitation of the elements necessary for a claim that seeks to pierce the corporate veil." (citations omitted)).

Finally, even if Plaintiffs had sufficiently alleged "alter ego" facts tying in Inoac USA with Crest, dismissal of the claims against Inoac USA would still be required as the timing is all wrong. The Court relied upon allegations that "Vitafoam 'acted for' Crest Foam Industries in discussions with competitors regarding price increases . . . " *See* 7/19/11 Order, p. 9. But these alleged discussions occurred in 2004 and 2005 – when Crest "was controlled by Vitafoam" and several years before 2010, when Inoac USA acquired a majority interest in Crest. (Doc. No. 46 at ¶¶ 32, 88, 112(b)-(h); Doc No. 52 at ¶¶38, 100, 123(b)-(h)).

The Court erred by not requiring plaintiffs to plead facts supporting the predicate basis for *alter ego* liability as to Inoac USA and by ignoring the timing of Vitafoam's alleged actions on behalf of Crest.

### 2. There are no "agency" allegations as to Crest.

Crest's liability likewise is derivative -- premised on the alleged actions of someone who did not work for the company.[6] The Court summarized the allegations in its Order: "The Complaints allege that before 2010, Vitafoam exercised majority control of [Crest] in partnership with Inoac USA and that during this period, Vitafoam 'acted for' Crest Foam Industries in

---

[6] It appeared in the Complaints that Plaintiffs initially sought derivative liability for Crest based on a novel inverse *alter ego* theory – that Crest was liable as an *alter ego* of its previous majority owner, Vitafoam. Crest explained in its Motion to Dismiss that this theory was unsupportable. See Doc. No. 89. At the hearing on the Motion, Plaintiffs acknowledged that they were not pursuing liability against Crest on this theory. *See* Rough Transcript of 7/19/11 Hearing at 55 ("We don't allege that Crest Foam is liable for the conspiratorial conduct of its parent corporation.") Therefore, this Motion for Reconsideration addresses what Crest now understands the theory to be – one premised on agency principles and Vitafoam "acting for" Crest.

8

discussions with competitors regarding price increases." 7/19/11 Order, p. 9. Crest's liability, therefore, is premised on the notion that Bill Lucas of Vitafoam (Crest's *parent*) was acting as an agent of Crest and entered into illegal agreements on its behalf.

Plaintiffs' assertion of an agency relationship – that one company "acted for" another – is a mere legal conclusion that is not entitled to a presumption of truth. *Iqbal,* 129 S.Ct. at 1951. Such a conclusory allegation does not allege any facts showing the elements of agency. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 567(6th Cir. 2006) ("[1] the manifestation of consent by one person to another that the other shall [2] act on his behalf and [3] subject to his control, and [4] consent by the other so to act.") (quotations omitted); *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010) (same). *See also New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, No. 10-5100, 2011 U.S. App. LEXIS 12457 (6th Cir. June 21, 2011) (complaint should be dismissed where control over prices is not clearly alleged).

In our case, there are no other allegations concerning the claimed agency relationship, including its scope or even whether Crest knew of and approved Mr. Lucas "acting" on its behalf. The only allegations addressing his conduct and his discussions with "Witness A" of Woodbridge about *pricing* (not specifically alleged to be Crest's pricing), one of which allegedly resulted in an *agreement* (but not specifically alleged to be on Crest's prices). (Doc. No. 46 at ¶¶ 88, 112; Doc No. 52 at ¶¶ 100, 123). Putting aside the *sufficiency* of their conduct-based allegations, Plaintiffs say nothing at all on the issue of whether, when and how Mr. Lucas was deemed an "agent" of Crest in the first place. Allowing Plaintiffs to proceed against Crest without any allegations supporting the existence and nature of the "agency" relationship is error.

**B. The Court Adopted A Liability Theory As To Inoac USA That Would Dramatically Expand The Scope Of Liability In Antitrust Case And Is One That Plaintiffs Never Advanced In The First Place.**

9

The Court erred in creating "conduit" liability for Inoac USA. The Court noted on page 9 of the Order that "an allegation that a Defendant helped share pricing information among competitors in an elastic market can support an inference of anticompetitive conduct, *U.S. v. Container Corp. of Am.*, 393 U.S. 333, 337 (1967), particularly when the conduit's point of contact has admitted to participation in an express agreement to fix prices and allocate customers." 7/19/11 Order, p. 9. This is a reference to Plaintiffs' allegation in footnote 1 to paragraphs 83 and 95 of the complaints that Inoac USA was a "conduit of information."

The Court's reliance on this allegation to deny Inoac USA's Motion to Dismiss was plain error for three reasons. First, plaintiffs have never asserted that Inoac USA is liable by virtue of acting as a "conduit of information." They actually say just the opposite by defining a "conduit of information" as "individuals who reported market conditions and price increases by alleged cartel members to [Witness A]. ***These discussions were not about price fixing or market allocation*** but rather represented simply a transmission of information." (Doc. No. 46 at ¶ 83 n.1, Doc No. 52 at ¶ 95 n.1). (emphasis added). Thus, the problem here is that the Court mistakenly credited an allegation as meaning something that Plaintiffs themselves do not contend. This was plain error.

Second, the Court mistakenly relied on *U.S. v. Container Corp. of Am.* for the premise that passing along information can support an inference of anticompetitive behavior. *Container Corp.* is completely inapposite. *Container Corp.* did not even tangentially address the issue of participation in or formation of a conspiracy. In that case, the existence of a reciprocal agreement to exchange price information was assumed and the Court addressed whether such an agreement could adversely impact competition in the market. 393 U.S. at 335-37. Furthermore, unlike this case, *Container Corp.* was a rule of reason case involving an agreement among

10

market participants to share their *own* price data. *Container Corp.*, 393 U.S. at 334-35. Unlike in *Container Corp.*, Inoac USA is not alleged to be a competitor in the market or to have shared its own prices with anyone, let alone a competitor. Inoac USA merely is alleged to have passed along information about others and in connection with discussions that Plaintiffs say *did not* involve price fixing. Inoac USA does not have to distinguish *Container Corp* – Plaintiffs have done it themselves.

Third, if accepted, the Court's ruling means that a non-market participant can be roped into an antitrust case merely by passing along information about someone else's prices. This would create new law and expand antitrust liability to a virtually limitless number of entities. Anyone involved in the *mere transmission* of others' price data would be deemed part of the same conspiracy. Phone, internet and postal companies, as well as third party market survey companies, would share the same culpability as actual conspirators under this novel "conduit" theory. Respectfully, the Court's ruling was illogical, inconsistent with what Plaintiffs actually pled, creates a dangerous precedent and amounts to plain error.

## II.  ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER AS TO INOAC USA AND CREST FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(B).

If this Court chooses not to reconsider its order, Inoac USA and Crest request that the Court certify its denial of their motion to dismiss under 28 U.S.C. § 1292(b) for immediate appeal to the Sixth Circuit. A court may grant certification of an order under 1292(b) where: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *Deutsche Bank National Trust Co. v. Weickert*, 638 F. Supp. 2d 826, 830 (N.D. Ohio 2009); *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Here, as discussed above, the Order raises two significant questions: (1)

11

whether a plaintiff must, under *Twombly,* allege facts to support the predicate "alter ego" or "agency" basis upon which a defendant is included in a case; and (2) whether a claim is plausible on a "conduit of information" theory where the information exchanged does not concern the "conduit's" own pricing and the alleged conduit did not fix any prices..

With respect to the factors, first, the order must involve a "controlling question of law." "A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351. The questions noted above are not just controlling, but dispositive as to Inoac USA and Crest. Indeed, in the *Text Messaging* decision, the Seventh Circuit held specifically that even the general denial of a motion to dismiss raising questions under *Twombly* and *Iqbal* involves a controlling legal issue under 1292(b). *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2011).

Next, "substantial grounds for a difference of opinion exist when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Weickert*, 638 F. Supp. 2d at 831 (quoting *West Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 1015, 1019 (W.D. Tenn. 2000)). More recently, the Ninth Circuit, in accepting a 1292(b) pleading case, noted that it was not necessary that a prior court "have[e] reached a conclusion adverse to that from which appellants seek relief." *Reese v. BP Exploration (Alaska) Inc.,* ___ F.3d ___, 2011 WL 2557238, *5 (9th Cir. June 29, 2011). Instead, the criterion is met "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.* The Court's decision to accept, at least for now, Plaintiffs' theories as to Inoac USA and Crest, where Plaintiffs did not actually plead any facts supporting the *alter ego,* agency or "conduit" theories, presents an issue over which reasonable jurists could disagree under *Twombly*.

Finally, an interlocutory appeal will "materially advance the termination of the litigation" with respect to Inoac USA and Crest. A successful appeal will, in fact, terminate the litigation for them and would thereby "save judicial resources and litigate expense." *Deutsche Bank*, 638 F. Supp. 2d at 831 (quoting *W. Tenn. Chapter*, 138 F. Supp. 2d at 1026). Even the limited discovery contemplated by the Order and further motion practice will entail expense and burden for Inoac USA and Crest and certainly further proceedings, including perhaps trial, will be expensive as well. For all of these reasons, this Court should certify the July 19, 2011 Order, to the extent it denies the motion to dismiss as to Inoac USA and Crest, for interlocutory appeal. J

## CONCLUSION

For all the foregoing reasons, the Court should reconsider its prior ruling and grant Inoac USA and Crest's Motion to Dismiss. Alternatively, Inoac USA and Crest respectfully request that the Court certify its denial of dismissal order under 28 U.S.C. § 1292(b) for immediate appeal to the Sixth Circuit.

DYKEMA GOSSETT PLLC

By: /s Howard B. Iwrey
Howard B. Iwrey (P39635)
Attorneys for Defendants Crest Foam
Industries, Inc., and Inoac USA Inc.
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 203-0526
(248) 203-0763 - facsimile

July 29, 2011     *email*: hiwrey@dykema.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the ECF participants.

Dated:  July 29, 2011                        DYKEMA GOSSETT PLLC

                                                   By:  /s  Howard B. Iwrey_____
                                                        Howard B. Iwrey (P39635)
                                                        Attorneys for Defendants Crest Foam
                                                        Industries, Inc., and Inoac USA Inc.
                                                        39577 Woodward Avenue
                                                        Bloomfield Hills, Michigan 48304
                                                        (248) 203-0526
                                                        (248) 203-0763 - facsimile
                                                        *email*: hiwrey@dykema.com

2

**CERTIFICATION OF COUNSEL PURSUANT TO L.R. 7.1(F)**

Pursuant to L.R. 7.1(f), I hereby certify that this case has been assigned to the complex track.

BH01\1374015.2
ID\HBI - 105595/0018