# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

|   |   |   |
|---|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) ) | MDL Docket No. 2196 |
| This document relates to: | ) ) ) | Index No. 10-MD-2196 (JZ) |
| ALL CASES | ) ) ) |   |

## PLAINTIFFS' POSITION ON TRANSACTIONAL DATA PROTOCOL

Direct Purchaser (Class) Plaintiffs and Direct Action (Non-Class) Plaintiffs (collectively, "Plaintiffs") submit that it is appropriate for Defendants to seek Plaintiffs' *purchase* data for polyurethane foam but inappropriate for Defendants to seek so-called "downstream" transactional data regarding the *sales* of products by named Plaintiffs.

If the Court is to consider ordering such discovery, Plaintiffs respectfully request the opportunity to fully brief the issue and provide the Court with a more complete submission on these important issues. Plaintiffs respectfully submit that Defendants are using the Transactional Data Protocol to seek discovery that is not legally supportable.[1]

The United States Supreme Court established in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that defendants in an antitrust case may not assert a so-called "pass-on" or "pass-through" defense (*i.e.*, that plaintiffs passed on any overcharges to their own customers) under the federal antitrust laws. The Supreme Court expressly noted its "unwillingness to complicate treble-damages actions with attempts to trace the effects of the overcharge on the purchaser's

---

[1] Although Plaintiffs have been prepared to negotiate protocols for production of transactional data by Plaintiffs, Plaintiffs note that Defendants have not yet served a single request for documents or data, and have only said that they will do so soon.

prices, sales, costs and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois Brick*, 431 U.S. at 725; *see also Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492-493 (1968).

Based on *Illinois Brick* and *Hanover Shoe*, the vast majority of courts that have entertained discovery disputes concerning "downstream" information have declined to compel direct purchaser plaintiffs to produce such discovery for either merits or class certification. *See, e.g.*, *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 4916723, at *2-*3 (E.D.N.Y. Nov. 24, 2010); *Meijer Inc. et al. v. Abbott Labs.*, 251 F.R.D. 431, 433-36 (N.D. Cal. 2008); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *4 (E.D. Pa. April 8, 2008); *In re K-Dur Antitrust Litig.*, 2007 WL 5302308, at *10-*15 (D.N.J. Jan. 2, 2007); *In re Automotive Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *7-*8 (E.D. Pa. May 26, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-98 (M.D. Pa. 2005); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *16 (E.D. Pa. Nov. 29, 2004); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 298-301 (D.D.C. 2000).

In discussions with Plaintiffs, Defendants have cited to *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003), which permitted downstream data discovery under a narrow reading of *Illinois Brick* and *Hanover Shoe* as proscribing downstream discovery of plaintiffs only as it relates to damages. Id. at 1192-94.  Under this narrow construction, *Valley Drug* concluded that downstream data discovery was permitted to the extent it might show that some class representative plaintiffs benefited from the alleged antitrust violations, thus creating a conflict of interest vis-à-vis other class members. *Id.* at 1193-94.  As several courts have noted, however, *Valley Drug*'s holding ignores the principal basis for the holdings in *Illinois Brick* and *Hanover Shoe.  See, e.g.*, *Meijer*, 251 F.R.D. at 433-36 (denying motion to compel downstream

data for class certification purposes based on *Valley Drug*-based arguments because *Valley Drug* conflicts with the holdings in *Hanover Shoe* and *Illinois Brick* and requires discovery that the Supreme Court has specifically noted is not permitted); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848, at *6 (E.D. Pa. May 2, 2008) ("[B]ecause all class members have the right to pursue overcharge damages, they have the same incentive to do so, and there is no conflict among class members allegedly harmed by the same antitrust violation. Accordingly, the Court declines to follow *Valley Drug* and will adhere instead to the principles announced in *Hanover Shoe* and *Illinois Brick*."); *In re K-Dur Antitrust Litig.*, 2007 WL 5302308, at *12 (denying request for downstream data on *Valley Drug*-based argument because "[w]hether different members of the putative class suffered a greater or lesser injury than the overcharge based upon differences in their economic status is immaterial because, for purposes of class certification, each member of the class is limited to the recovery of the full amount of the overcharge."); *Meijer, Inc. v. Warner Chilcott Holdings Co. Ill., Ltd.*, 246 F.R.D. 293, 303-305 (D.D.C. 2007) (disagreeing with *Valley Drug* because it conflicts with the Supreme Court's decisions in *Hanover Shoe* and *Illinois Brick*).

Other courts have also distinguished *Valley Drug* because it was not a price-fixing case, and it involved a unique market (where some class members obtained enhanced profits as a consequence of the unique features of the pharmaceutical market). *See, e.g., In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 4916723, at *3 (noting *Valley Drug* was "not a price-fixing case," was based on "characteristics unique to the pharmaceutical market," and involved prima facie evidence that there were "potential conflicts within the class").

In discussions with Plaintiffs, Defendants also rely heavily on two opinions from the Urethane antitrust litigation pending in the District of Kansas: *In Re Urethane Antitrust Litig.*,

No. 04-MD-1616-JWL (D. Kan. Jan. 20, 2010) ("2010 Opinion"), and *In re Urethane Antitrust Litig.*, 237 F.R.D. 454 (D. Kan. 2006) ("2006 Opinion"). However, the rationale of the 2006 opinion – specifically, that downstream data discovery from plaintiffs could demonstrate facts relevant to typicality and predominance for class certification, because the class representative plaintiffs' purchasing power may have diverted from other class members' power, *see* 237 F.R.D. 454, 461 – has been expressly rejected in this Circuit. In *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 215-16 (S.D. Ohio 2003), the Court explained: "Wyeth next argues that there is a conflict between the class representatives and some class members because some class members purchased large quantities of Premarin and were able to resell it at a greater profit after price increases. This argument is also without merit. Antitrust injury is considered complete when the direct purchaser pays an illegal overcharge and whether he was able to pass through the overcharge to indirect purchasers is irrelevant to the inquiry."[2] *See also K-Dur*, 2007 WL 5302308, at *12.

And the 2010 opinion from *Urethane* relies on the fact that the downstream discovery sought includes information on a polyurethane conspiracy, as well as *Valley* Drug. In any event, absent the context of plaintiffs who were themselves engaged in a price fixing conspiracy, the 2010 *Urethane* opinion has been rejected by other courts. *Air Cargo*, 2010 WL 4916723, at *3 (finding the Urethane 2010 opinion unpersuasive because the Court failed to note that the alleged price-fixing occurred in the upstream market and that there was no explanation how discovery of

---

[2] In discussion with Plaintiffs, Defendants cite a later opinion from *J.B.D.L.* in which the Court granted downstream data discovery. But the Court there only did so once there had been a *prima facie* showing that prices may have been set by plaintiffs' speculative purchasing contracts, an allegation not made here and plaintiffs submit, incapable of being made here. *See J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, No. C-1-01-704, slip. op. at 5-6 (S.D. Ohio June 7, 2004).

plaintiffs' downstream data "would affect the proof on whether the plaintiffs had to pay higher prices because of price-fixing").

Finally, in discussions with Plaintiffs, Defendants cite *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 265 (N.D. Ill. 1979), but that case actually supports Plaintiffs, because the Court compelled discovery of plaintiffs' *purchasing* (not downstream) data.  Plaintiffs do not dispute that Defendants are entitled to discovery of Plaintiffs' purchasing data.

*     *     *

Direct Action (Non-Class) Plaintiffs oppose Defendants' request for "downstream" discovery on the additional ground that the unreasonable burden of complying with such discovery outweighs any claimed relevance to direct action (non-class) cases.  The direct action cases do not present class certification issues as they are not class actions.  And Direct Action Plaintiffs' damages theory is based on overcharge damages, not lost profits.  Defendants' claimed justification for Direct Action Plaintiffs' mattress and furniture sales to their customers (i.e., "downstream" discovery) is to show that such plaintiffs "passed on" some or all of their overcharge damages.  But, as noted above, the Supreme Court held long ago in *Hanover Shoe* and *Illinois Brick* that Defendants are precluded from asserting a "pass-on" defense.  The discovery Defendants seek from Direct Action Plaintiffs is, therefore, not reasonably calculated to lead to the discovery of admissible evidence.  There also is the matter of the unreasonable burden to Direct Action Plaintiffs of having to produce such tangential information, and there is a long line of cases – indeed the recognized majority view at this point – that hold that such "downstream" discovery is not discoverable.  *See, e.g., In re Vitamin Antitrust Litig.*, 198 F.R.D. 296, 301-302 (D.D.C. 2000) (denying discovery of downstream data regarding Direct Purchaser Plaintiffs' use, manufacture, sale, marketing, distribution and supply of vitamin); *see supra* the many cases cited in the preceding section.

Defendants' cases are inapposite because they deal purely with discovery in relation to class certification issues, and in any event, do not provide legal support for the particular legal and factual circumstances (noted above) presented by direct action (non-class) direct purchaser claims.  As noted earlier, Direct Action Plaintiffs seek overcharge – not lost profits – damages, and *Valley Drug* reaffirms the long standing view that downstream discovery is impermissible in order to challenge a plaintiff's "net economic loss from defendants' wrongful conduct." 350 F.3d at 1192.  Defendants' reliance on the *Urethane* decision is equally misplaced in the context of the Direct Action (Non-Class) Plaintiffs' cases because the district court held that the downstream data requested by defendants there bore solely on class certification issues. *In re Urethane Antitrust Litig.*, 237 F.R.D. at 462-64.  The Direct Action (Non-Class) Plaintiffs have filed their own case demonstrating their stated intention not to participate in the class, making any defense demand for "downstream" discovery from them beyond the limits allowed by law.

This issue is sufficiently important to Direct Action (Non-Class) Plaintiffs, and the burdens associated with Defendants' "downstream" discovery demands are sufficiently great, that Direct Action (Non-Class) Plaintiffs suggest that the Court have the parties submit legal briefs on the issue if the Court is not otherwise persuaded by the long line of case law that supports our position or has questions about this issue.

*   *   *

Indirect Purchaser Plaintiffs reserve their right to seek appropriate discovery and data in support of their claims, including in support of any expert analysis for the indirect purchaser claims, and all parties reserve their rights to oppose such discovery.

DATED: July 29, 2011

                                  Respectfully Submitted,

| /s/ William A. Isaacson | /s/ Stephen R. Neuwirth |
|---|---|
| William A. Isaacson | Stephen R. Neuwirth |
| BOIES, SCHILLER & FLEXNER LLP | QUINN EMANUEL URQUHART |
| 5301 Wisconsin Avenue, NW |    & SULLIVAN, LLP |
| Washington, DC 20015 | 51 Madison Avenue, 22nd Floor |
| Phone: 202-237-5607 | New York, NY 10010 |
| Fax:    202-237-6131 | Phone: 212-849-7165 |
| | Fax:    212-849-7100 |

*Direct Purchaser (Class Action) Plaintiffs' Interim Lead Counsel*

/s/ William J. Blechman
William J. Blechman
Douglas H. Patton
**KENNY NACHWALTER, P.A.**
201 South Biscayne Boulevard
Suite 1100
Miami, Florida 33131-4327
Phone: 305-373-1000
Fax: 305-372-1861
Email: wblechman@kennynachwalter.com

*Counsel for Direct Purchaser (Non-Class) Plaintiffs*

/s/ Marvin A. Miller
Marvin A. Miller
MILLER LAW LLC
115 South LaSalle St., Suite 2910
Chicago, Illinois 60603
Phone: 312-332-3400
Fax:    312-676-2676

*Indirect Purchaser Plaintiffs' Interim Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2011, I served via email, Plaintiffs' Position on Transactional Data Protocol, on Defendants' counsel as listed below.

/s/ Ryan Stanton

| | |
|---|---|
| Francis P. Newell<br>Peter M. Ryan<br>COZEN O'CONNOR<br>1900 Market Street<br>Philadelphia, PA 19103<br>fnewell@cozen.com<br>pryan@cozen.com<br><br>*Counsel for Defendant FXI – Foamex Innovations, Inc.* | Shepard Goldfein<br>Elliott A. Silver<br>SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP<br>Four Times Square<br>New York City, NY 10036<br>shepard.goldfein@skadden.com<br>elliott.silver@skadden.com<br><br>*Counsel for Defendants Domfoam International, Inc. and Valle Foam Industries (1995), Inc.* |
| Michael D. Mustard<br>HUNT SUEDHOFF KALAMAROS LLP<br>803 S. Calhoun, 9th Floor<br>P. O. Box 11489<br>Fort Wayne, IN 46858-1489<br>mmustard@hsk-law.com<br><br>Kendall Millard<br>BARNES & THORNBURG LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204<br>kendall.millard@btlaw.com<br><br>*Counsel for Defendants Flexible Foam Products, Inc. and Ohio Decorative Products, Inc.* | James H. Walsh<br>Anne M. Whittemore<br>Howard Feller<br>Bethany G. Lukitsch<br>MCGUIREWOODS LLP<br>One James Center<br>901 E. Cary St.<br>Richmond, VA 23219<br>jwalsh@mcguirewoods.com<br>awhittemore@mcguirewoods.com<br>hfeller@mcguirewoods.com<br>blukitsch@mcguirewoods.com<br><br>*Counsel for Defendants Carpenter Company, E.R. Carpenter, L.P. and Carpenter Holdings, Inc.* |

Daniel R. Warncke
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel.: 513.381.2838
Fax: 513.381.0205
warncke@taftlaw.com

Joe Rebein
Laurie A. Novion
Shook, Hardy & Bacon
255 Grand Blvd.
Kansas City, MO 64108
Tel.: 816.474.6550
Fax: 816.421.5547
jrebein@shb.com
lnovion@shb.com

*Attorneys for Defendant Leggett & Platt, Incorporated.*

Randall L. Allen
Teresa T. Bonder
Erica Fenby Ghali
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
randall.allen@alston.com
teresa.bonder@alston.com
erica.ghali@alston.com

*Counsel for Defendant Mohawk Industries, Inc.*

Richard A. Duncan
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
rduncan@faegre.com

*Counsel for Defendant Otto Bock Polyurethane Technologies, Inc.*

Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON + BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
frank.hirsch@alston.com
matt.mcguire@alston.com

Mark T. Calloway
Jennie C. Boswell
ALSTON & BIRD LLP
Bank of American Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
mark.calloway@alston.com
jennie.boswell@alston.com

*Counsel for Defendant Hickory Springs Manufacturing Company*

Sheldon H. Klein
BUTZEL LONG
Stoneridge West
41000 Woodward Ave.
Bloomfield Hills, MI 48304
klein@butzel.com

*Counsel for Defendant Plastomer Corporation*

| | |
|---|---|
| Henry J. Geha, III<br>ROETZEL & ANDRESS<br>One SeaGate<br>Suite 1700<br>Toledo, OH 43604<br>hgeha@ralaw.com<br><br>*Counsel for Defendant Scottdel Inc.* | Edward G. Warin<br>John P. Passarelli<br>KUTAK ROCK LLP<br>The Omaha Building<br>1650 Farnam Street<br>Omaha, NE 68102-2186<br>edward.warin@kutakrock.com<br>john.passarelli@kutakrock.com<br><br>*Counsel for Defendant Future Foam, Inc.* |
| Louis Carson<br>Scottdel Inc.<br>400 Church Street<br>Swanton, OH 43558<br><br>*Defendant* | David Carson<br>Scottdel Inc.<br>400 Church Street<br>Swanton, OH 43558<br><br>*Defendant* |