# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

_____
                                              )
In re POLYURETHANE FOAM ANTITRUST    )
LITIGATION                                    )
_____)   MDL Docket No. 2196
                                              )   Index No. 10-MD-2196 (JZ)
This document relates to:                     )
                                              )
ALL CASES                                     )
_____)

# PLAINTIFFS' RESPONSE TO DEFENDANTS' POSITION STATEMENT ON THE TRANSACTIONAL DATA PROTOCOL

Direct Purchaser (Class) Plaintiffs and Direct Action (Non-Class) Plaintiffs (collectively, "Direct Purchaser Plaintiffs") submit this response to Defendants' Position Statement on the Transaction Data Protocol (Dkt. No. 205) ("Def. St."). Direct Purchaser Plaintiffs incorporate by reference their own previously-filed Position Statement (Dkt. No. 207), which Direct Purchaser Plaintiffs respectfully submit responds to the core arguments in Defendants' Statement.[1]

At bottom, there can be no legitimate dispute that *Defendants* will need to produce all of the transactional data described in the proposed Transactional Data Protocol. The only dispute with respect to the Protocol concerns whether *Direct Purchaser Plaintiffs* should be required to produce so-called "downstream" transactional data concerning these Plaintiffs' own sales of products they manufacture.[2] And Defendants are seeking to force resolution of that dispute, at a time when Defendants have not even served a single Rule 34 request for production of data or otherwise. Nor have Defendants made any sufficient showing of need – and certainly not a showing that would justify the substantial burden production of such data would impose.

Defendants' Statement now also confirms the extent to which Defendants' arguments for production of Plaintiffs' "downstream" data are predicated on misstatements of Plaintiffs' allegations concerning the alleged conspiracy. Plaintiffs provide this responsive statement to address those misstatements and Defendants' arguments flowing from them. Among other things, Defendants' Statement reveals Defendants' apparent intention for the proposed Protocol to preordain the discoverability of "downstream" information notwithstanding the majority view of courts that such information is not discoverable from direct purchaser plaintiffs; without

---

[1] Indirect Purchaser Plaintiffs participate in this responsive filing solely to reiterate that they reserve their right to seek appropriate discovery and data in support of their claims, including in support of any expert analysis for the Indirect Purchaser claims. All parties reserve their rights to oppose such discovery.

[2] The Parties have also agreed that the Direct Purchaser Plaintiffs, if so requested by Defendants, would produce data about their purchases of flexible polyurethane foam.

Defendants meeting their burden of showing factually why such information would be discoverable here; and without giving Direct Purchaser Plaintiffs the opportunity more fully to brief the relevance and burdens[3] of such proposed discovery. [4] Plaintiffs respectfully submit that to the extent the Court would consider requiring Direct Purchaser Plaintiffs to produce "downstream" data, it would be appropriate for the Court to require Defendants to serve Rule 34 requests for production, and permit briefing as to the need for, and burden of, that discovery.

I.     **Defendants' Arguments Are Premised On a Misstatement of Plaintiffs' Allegations.**

According to Defendants, "Plaintiffs have defined 'flexible polyurethane foam' in their complaints to include 'flexible polyurethane foam *and flexible polyurethane foam products*' and allege that Defendants' conspiracy had the 'purpose and effect of fixing prices of flexible polyurethane foam *and polyurethane foam products.*'" (Def. St., at 3 (emphasis in original).) Having so characterized plaintiffs' allegations, Defendants argue that "[d]efined in that manner, many, if not all, Direct Purchaser Plaintiffs . . . compete directly with Defendants." (*Id.*) Defendants then argue that if the Direct Purchaser Plaintiffs' are competitors of Defendants, then these plaintiffs' "downstream" transactional data "is self-evidently relevant to the question of whether a Defendant's sales and other transactional activities are consistent or inconsistent with the alleged conspiracy." (*Id.*) And Defendants assert that Plaintiffs' "downstream"

---

[3] The Sealy Plaintiffs, for example, are national bedding and furniture manufacturers, and the "downstream" discovery Defendants seek would arguably involve most of the company's records. For this Court to decide the discoverability of downstream information on so truncated a record would be prejudicial to the Sealy Plaintiffs and other Direct Purchaser Plaintiffs.

[4] Defendants argue that Plaintiffs "have made no attempt to demonstrate that producing the requested data would be unduly burdensome or expensive. . . ." (Def. St. at 2 & n.2.) The truncated process hardly contemplated that. Moreover, on June 21, 2011, the Sealy Plaintiffs' counsel informed defense counsel in writing that the Sealy Plaintiffs expressly objected to providing downstream data protocol information and that the protocol information the Sealy Plaintiffs would provide would pertain to their *purchases* of polyurethane foam.

transactional data purportedly is needed to "determine how and to what extent Plaintiffs compete directly with Defendants." (Def. St. at 5.)

But the Direct Purchaser Class Plaintiffs' Consolidated Amended Complaint ("CAC") makes clear that any reference therein to "flexible polyurethane foam products" relates only to ways in which Defendants sell flexible polyurethane foam – namely, slabstock, carpet underlay, and molded foam. Defendants do not – and could not legitimately – suggest that any members of the alleged class produce and sell slabstock, carpet underlay or molded foam. And nowhere does the Direct Purchaser Class Plaintiffs' CAC suggest that the term "products" refers to products, such as mattresses or car seats, that *include* flexible polyurethane foam. Specifically, the CAC states:

> This case arises out of a conspiracy among Defendants and their co-conspirators that had the purpose and effect of fixing prices of flexible polyurethane foam and flexible polyurethane foam products (collectively, "flexible polyurethane foam"). As used herein, flexible polyurethane foam refers to both slabstock and molded polyurethane foam, both of which were the focus of the conspiracy alleged herein.

(Direct Purchaser Class Plaintiffs' CAC ¶ 1.) The Direct Purchaser Class CAC reiterates that flexible polyurethane foam – that is, the defined term collectively for flexible polyurethane foam and flexible polyurethane foam products – includes block foam (also known as slabstock), carpet underlay, and engineered (also known as molded) foam. (Direct Purchaser Class CAC ¶ 56.) The Direct Action (Non-Class) Direct Purchaser Plaintiffs define polyurethane foam in substantially the same manner:

> The reference in this Amended Complaint to "polyurethane foam" refers to flexible polyurethane foam of any grade or blend. Polyurethane foam is primarily used as a cushioning material in bedding (e.g., mattresses), furniture (e.g., upholstered furniture), flooring underlay and transportation applications.

(Sealy Plaintiffs' Amended Complaint ¶ 55 (Dkt. 198).) Counsel for all Direct Action Plaintiffs have agreed to use the definition of polyurethane foam in the Sealy Amended Complaint.

3

Equally important, the Direct Purchaser Plaintiffs all allege a conspiracy among *manufacturers* of flexible polyurethane foam. None of the named Plaintiffs is a manufacturer of flexible polyurethane foam, and the alleged direct purchaser class includes entities that *purchase* flexible polyurethane foam, not companies that manufacture it. The allegation that Defendants' conspiracy had the "purpose and effect of fixing prices of flexible polyurethane foam and polyurethane foam products" comes not from the Direct Purchaser complaints, but from the Indirect Purchasers' complaint. In any event, the Indirect Purchaser's complaint expressly focuses solely on slabstock and its manufacture. (*See* Indirect Purchasers' CAC ¶¶ 65, 71.)

Defendants argue that information about downstream sales by any direct purchaser plaintiffs that are so-called "fabricators" – who purchase flexible polyurethane foam directly from the defendants and then fabricate the foam for particular uses – would be relevant at class certification, particularly to determining if class members have conflicts of interest with other class members. (*See* Def. St. at 4.) But such arguments lack merit and have been rejected.[5] Defendants' arguments suggesting that certain direct purchaser class members, such as fabricators or wholesalers, might lack standing to assert an antitrust injury, (*see* Def. St. 3-4), is equally misplaced.[6] More generally, downstream competition between any class plaintiffs and defendants has no bearing on class certification, as courts have held time and again.[7]

---

[5] *See*, *e.g.*, *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 482 (W.D. Pa. 1999) (defendants' conflict of interest argument held unpersuasive where defendants alleged that "non-defendant fabricators [of flat glass products] who may also be class members" could force plaintiffs to implicate "some of [those] fabricators as coconspirators" because this was a "hypothetical conflict[] or antagonism[] among class members"). The Sealy Plaintiffs, and other Direct Action Plaintiffs, note that they are neither fabricators nor wholesalers.

[6] *See, e.g., Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) (plaintiff that purchased equipment from defendant, yet rented the equipment in competition with the defendant, was still a "customer" for antitrust standing purposes); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999) (finding that plaintiff purchaser of price-fixed ski lift tickets

4

Defendants have not met their "initial burden of showing that the discovery sought is relevant."[8]

### B. The Presence of Indirect Purchaser Litigation Is Not a Proper Basis for Compelling Production of Plaintiffs' Downstream Data.

To the extent Defendants attempt to invoke the Indirect Purchasers' burden of proof (Def. St., at 8-9), this is an issue left to the discretion of the Indirect Purchasers themselves. And this is all the more so here, where Defendants have not even yet served a single document request defining the scope of the production Defendants seek.

Moreover, Courts consistently refuse to require direct purchasers to produce downstream transactional data simply because a companion indirect case exists.[9] This refusal recognizes,

---

from defendants adequately pleaded antitrust injury, even though plaintiff directly competed with defendants downstream in reselling the tickets to skiers). *Morning Star Packing Co. v. SK Foods, L.P.*, 754 F. Supp. 2d 1230, 1235 (E.D. Cal. 2010), cited by Defendants, is inapposite. That was not an action by direct purchasers; that was an action by one manufacturer of a product (diced tomatoes and tomato paste) against other manufacturers of the same product, alleging the other manufacturers conspired to fix prices and allocate customers to the detriment of the plaintiff. The analogy here would be if, for example, Defendant Woodbridge were to sue Defendants Carpenter and Hickory Farms, alleging that Carpenter and Hickory Farms allocated flexible polyurethane foam customers to the detriment of Woodbridge. In any event, *Morning Star* cites with approval to *Big Bear Lodging*, *see* 754 F. Supp. 2d at 1235, which as set forth above, held that a plaintiff that competes with a defendant downstream can still allege antitrust injury as a direct purchaser from the defendant.

[7] *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 303-05, 312-13 (N.D. Cal. 2010) (certifying comprehensive class of purchasers who purchase TFT-LCD panels and purchasers of TFT-LCD products that incorporate such panels); *Thomas & Thomas Roadmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164-67 (C.D. Cal. 2002) (rejecting argument that class could not be certified because it included purchasers at the carbon fiber (upstream) level, who competed with defendants to sell prepeg (downstream) to customers that were also members of the class).

[8] *Schweinfurth v. Motorola, Inc.*, 2007 WL 6025288, at *1 (N.D. Ohio Dec. 3, 2007).

[9] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, M:07-cv-01827 (N.D. Cal. Nov. 5, 2010) ("Even where, as here, there are companion indirect purchaser claims, courts have refused to require production of downstream sales data."); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) ("[T]he proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing that this information ought to be produced by the direct purchasers."); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *6 (E.D. Pa. Apr. 8, 2008).

5

among other things, that the downstream transactional data from a few direct purchaser plaintiffs is unlikely to provide any meaningful discovery in a corresponding indirect purchaser case.[10]  It is one thing for the parties in an MDL to receive copies of discovery produced to other parties that would be discoverable by the requesting party in the first instance.  It is something altogether different for a party to demand the production of discovery to which it is not entitled from the responding party, simply because other actions are also part of the MDL.

DATED: August 4, 2011

Respectfully Submitted,

/s/ William A. Isaacson
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC  20015
Phone:  202-237-5607
Fax:     202-237-6131

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Phone:  212-849-7165
Fax:     212-849-7100

*Direct Purchaser (Class Action) Plaintiffs' Interim Lead Counsel*

/s/ William J. Blechman
William J. Blechman
Douglas H. Patton
**KENNY NACHWALTER, P.A.**
201 South Biscayne Boulevard
Suite 1100
Miami, Florida 33131-4327
Phone: 305-373-1000
Fax: 305-372-1861
Email: wblechman@kennynachwalter.com

*Counsel for Direct Purchaser (Non-Class) Plaintiffs*

---

[10] *See*, *e.g.*, *Aspartame*, 2008 WL 2275528, at *4 ("in light of the considerable size of the aspartame market the Court does not find [Direct Purchaser] Plaintiffs' potential resales sufficiently significant to justify the burden on the Plaintiffs for providing individualized downstream discovery").

/s/ Marvin A. Miller
Marvin A. Miller
MILLER LAW LLC
115 South LaSalle St., Suite 2910
Chicago, Illinois 60603
Phone:  312-332-3400
Fax:      312-676-2676

*Indirect Purchaser Plaintiffs' Interim Lead Counsel*

(for the limited purpose stated in Footnote 1)

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2011, I served via email, Plaintiffs' Response to Defendants' Position Statement on the Transactional Data Protocol, on Defendants' counsel as listed below.

/s/ Adam B. Wolfson

Francis P. Newell
Peter M. Ryan
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
fnewell@cozen.com
pryan@cozen.com

*Counsel for Defendant FXI – Foamex Innovations, Inc.*

Shepard Goldfein
Elliott A. Silver
SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP
Four Times Square
New York City, NY 10036
shepard.goldfein@skadden.com
elliott.silver@skadden.com

*Counsel for Defendants Domfoam International, Inc. and Valle Foam Industries (1995), Inc.*

Michael D. Mustard
HUNT SUEDHOFF KALAMAROS LLP
803 S. Calhoun, 9th Floor
P. O. Box 11489
Fort Wayne, IN 46858-1489
mmustard@hsk-law.com

Kendall Millard
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
kendall.millard@btlaw.com

*Counsel for Defendants Flexible Foam Products, Inc. and Ohio Decorative Products, Inc.*

James H. Walsh
Anne M. Whittemore
Howard Feller
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
jwalsh@mcguirewoods.com
awhittemore@mcguirewoods.com
hfeller@mcguirewoods.com
blukitsch@mcguirewoods.com

*Counsel for Defendants Carpenter Company, E.R. Carpenter, L.P. and Carpenter Holdings, Inc.*

8

Daniel R. Warncke
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel.: 513.381.2838
Fax: 513.381.0205
warncke@taftlaw.com

Joe Rebein
Laurie A. Novion
Shook, Hardy & Bacon
255 Grand Blvd.
Kansas City, MO 64108
Tel.: 816.474.6550
Fax: 816.421.5547
jrebein@shb.com
lnovion@shb.com

*Attorneys for Defendant Leggett & Platt, Incorporated.*

Randall L. Allen
Teresa T. Bonder
Erica Fenby Ghali
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
randall.allen@alston.com
teresa.bonder@alston.com
erica.ghali@alston.com

*Counsel for Defendant Mohawk Industries, Inc.*

Richard A. Duncan
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
rduncan@faegre.com

*Counsel for Defendant Otto Bock Polyurethane Technologies, Inc.*

Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON + BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
frank.hirsch@alston.com
matt.mcguire@alston.com

Mark T. Calloway
Jennie C. Boswell
ALSTON & BIRD LLP
Bank of American Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
mark.calloway@alston.com
jennie.boswell@alston.com

*Counsel for Defendant Hickory Springs Manufacturing Company*

Sheldon H. Klein
BUTZEL LONG
Stoneridge West
41000 Woodward Ave.
Bloomfield Hills, MI 48304
klein@butzel.com

*Counsel for Defendant Plastomer Corporation*

9

| | |
|---|---|
| Henry J. Geha, III<br>ROETZEL & ANDRESS<br>One SeaGate<br>Suite 1700<br>Toledo, OH 43604<br>hgeha@ralaw.com<br><br>*Counsel for Defendant Scottdel Inc.* | Edward G. Warin<br>John P. Passarelli<br>KUTAK ROCK LLP<br>The Omaha Building<br>1650 Farnam Street<br>Omaha, NE 68102-2186<br>edward.warin@kutakrock.com<br>john.passarelli@kutakrock.com<br><br>*Counsel for Defendant Future Foam, Inc.* |
| Louis Carson<br>Scottdel Inc.<br>400 Church Street<br>Swanton, OH 43558<br><br>*Defendant* | David Carson<br>Scottdel Inc.<br>400 Church Street<br>Swanton, OH 43558<br><br>*Defendant* |