IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION ) ) ) ) This document relates to: ) ) ALL CASES ) ) | MDL Docket No. 2196 Index No. 10 MD 2196 (JZ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' POSITION
ON TRANSACTIONAL DATA PROTOCOL**

Defendants submit this response to Plaintiffs' Position Statement on the Transaction Data Protocol [Dkt. No. 207] ("Pls. St.") and Plaintiffs' Response to Defendants' Position Statement on the Transaction Data Protocol [Dkt. No. 215] ("Pls. Resp.").[1]

Apparently attempting to distance themselves from their own pleadings, Direct Plaintiffs first claim the allegation that Defendants' supposed conspiracy had the "purpose and effect of fixing prices of flexible polyurethane foam and flexible polyurethane foam products," comes from the ICAC, not from their Amended and Consolidated Direct Purchaser Complaint (Pls. Resp. at 4), and then argue that the Direct Purchaser CAC alleges only a conspiracy involving slabstock, carpet underlay, and molded foam. (*Id.*)  In fact, the allegation of a conspiracy with the purpose and effect of fixing prices of flexible polyurethane foam and flexible polyurethane foam products comes *directly from* the first paragraph of the CAC, which then goes on to describe and incorporate a multitude of foam products.  Plaintiffs simply cannot escape the problems created through their ill-defined product definition.  Either they have sued Defendants

---

[1] Defendants incorporate by reference Defendants' Position Statement on the Transactional Data Protocol [Dkt. No. 205].

who do not sell polyurethane foam, as defined, or their putative class is replete with members that sell polyurethane foam in direct competition with Defendants.

The impetus for this about-face is apparently an effort to try to eliminate Plaintiffs, including class members as competitors of Defendants. Never addressed, however, is the fact that polyurethane foam is defined differently in each of the *seven* operative Complaints in this MDL, as well as in Plaintiffs' own discovery requests. *See* Ex. A. Plaintiffs also overlook the fact that their status as competitors of Defendants is only one of several grounds on which courts, including the *Urethanes* court, have found "the downstream data" requested by Defendants to be relevant. In *Urethanes*, in fact, the foam companies *were not* competitors of the chemical suppliers they were suing.

Plaintiffs' suggestion that they should not be required to produce downstream transactional data because Defendants have not yet served discovery requests on them illustrates the tenuous nature of their position. *See* Pls. Resp. at 1, 5. The Transactional Data Protocol (the "Protocol") being negotiated by the parties establishes not only the method, but also – at Plaintiffs' insistence – the nature and substance of the transactional data that each of the parties will produce. The transactional data Plaintiffs are required to produce, in other words, is set out in and defined by the Protocol itself, not in independent discovery requests.

## I. ARGUMENT

### A. Plaintiffs' Definitions of "Foam" – the Alleged Price-fixed Product Are Inconsistent and Confusing, at Best.

The fact that Plaintiffs themselves seem unsure about how to interpret the allegations of their Complaint underscores one of the many continuing *Twombly* problems with the Consolidated Amended Complaint. That "confusion" is evident from Plaintiffs' claim that the phrase "Flexible Polyurethane Foam products" includes *only* products *Defendants* make,

"namely[2] slabstock foam, carpet underlay and molded foam," which, if true, immediately eliminates those Defendants who sell none of these categories of foam. Presumably, it also eliminates any fabricated slabstock foam product.

It is impossible to ignore the conflicting definitions of the phrase "Polyurethane Foam" within the CAC, the six other operative direct and indirect action Complaints and Plaintiffs' Instructions in their discovery requests to Defendants. The chart attached as Exhibit A illustrates that point plainly. For example, both the Indirect Purchaser CAC and Spring Air exclude molded foam from their definitions. Rigid foam is included in Plaintiffs' discovery definitions and the Factory Direct Plaintiffs' Complaint, but not others. Three Complaints – H.M. Richards, Factory Direct, and Henson Sleep Relief – and all Plaintiffs' discovery requests to Defendants include *every* type of polyurethane foam and polyurethane foam products. All Complaints, including the Direct Purchaser CAC, include dozens of references to foam products – foam used for filters, dispensers, gaskets and seals for various products, such as blood oxygenators and hard drives – *i.e.* technical foam – that are not slabstock, carpet underlay or molded foam.[3] If Plaintiffs are attempting to amend these complaints, they should do so by leave of Court, not artful construction that leaves conflicting language in the Complaints intact.

The purpose of Plaintiffs' change of direction remains unknown. It may be a concern with proving "antitrust injury." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 239 F. Supp. 2d 550 (E.D. Pa. 2002) (antitrust laws are designed to protect competition, not competitors). Even assuming all claims by all Plaintiffs are limited to slabstock, carpet underlay and undefined

---

[2] Plaintiffs' choice of the word "namely" suggests that Plaintiffs are not limiting the relevant products Defendants sell to only those products, but rather use those only as examples. Defendants sell many other products, for example fabricated foam used in mattresses and furniture, toppers for on mattresses, pillows, and technical foam, to name a few, that do not fall within these three items. Plaintiffs have never suggested that any of these items are not part of Plaintiffs' allegations or, for that matter, part of the sales data Defendants are required to produce.
[3] Technical foam, however, was excluded from the CAC in ¶ 56. At the July 1, 2011 hearing, Plaintiffs also excluded technical foam from the three categories of foam Plaintiffs asserted were "clearly define[d] as "the products that are the subject of the conspiracy." *See* Rough Transcript of July 2, 2011 Hearing at 14-15.

3

molded foam products, however, the relevance of the downstream transactional data Defendants seek is not lessened, nor does it mean that Plaintiffs are not competitors of Defendants. The examples of competition between Defendants and class members, many of whom sell fabricated foam products or foam scrap in competition with Defendants, provided in our opening position statement are equally valid whether or not the product segments in which the parties compete are included within the scope of the alleged conspiracy.

Plaintiffs' singular focus on "competition" is misguided in any event. Courts finding downstream transactional data relevant for discovery purposes have not limited production of such data to situations where Plaintiffs and Defendants "compete." Rather, the courts have found the data relevant to a host of issues, including class certification and a variety of non-class issues, such as the effect of supply and demand conditions in downstream markets on the ability to fix prices in upstream markets.[4] It also is beyond question that the requested data is directly relevant to the damage claims of the Indirect Purchaser class.

### B. Plaintiffs Ignore the *Urethane* Decisions Which Found "Downstream Data" to be Relevant for Numerous Reasons.

Not surprisingly, Plaintiffs completely ignore the two discovery rulings from *In re Urethane Antitrust Litigation*, No. 04-md-1616-JWL ("*Urethane*"),[5] a case they otherwise have consistently called to the attention of this Court. *See* Defs. St. at 4-7. The *Urethanes* decisions were not decided in the context of the current government investigation into the foam industry but in 2006, and January 2010, six long months before any news of the government's "dawn raids" on some foam producers. In those decisions, the District Court found "downstream data"

---

[4] *See, e.g., In re OSB Antitrust Litig.*, 2:06-cv-00826-TR, Doc. 206 (E.D. Pa. Nov. 3, 2006), at p. 1-2 (granting Defendants' motion to compel Direct Purchaser Plaintiffs' downstream sales data and finding such data necessary "to assess whether, when, and to whom the Indirect Purchaser Plaintiffs paid inflated prices for OSB" and thus relevant to "class certification and damages.")

[5] The two *Urethane* decisions are *In re Urethane Antitrust Litigation*, 237 F.R.D. 454 (D. Kan. 2006) ("*Urethane I*") and *In re Urethane Antitrust Litigation*, Case No. 04-MD-01616-JWL (D. Kan. Jan. 20, 2010) ("*Urethane II*").

relevant for discovery purposes on multiple grounds, including (1) the issue of antitrust liability, including whether price increases were anticompetitive or if defendants' price increases were, instead, "the result of competitive market forces and natural forces rather than conspiratorial conduct," (*Urethane II* at 9-14); (2) issues related to fraudulent concealment and whether defendants gave pretextual reasons for price increases (*Urethane II* at 14-15); and (3) issues related to class certification, such as whether plaintiffs' claims are typical, the predominance of common questions, and whether named plaintiffs would be adequate class representatives. (*Urethane I* at 463-64; Defs. St. at 6.) The *Urethane* decisions also noted that courts have repeatedly recognized the relevance – and, therefore, the discoverability – of "downstream data" to issues of damages, including where plaintiffs seek to recover lost profits and damages from injuries to business, rather than just the alleged overcharges. *See Urethane II* at 7-9.

Plaintiffs have made multiple allegations regarding Defendants' conduct and pricing in the markets for flexible polyurethane foam. Defendants are entitled to test those allegations. By way of example, Plaintiffs allege that the markets for flexible polyurethane foam are oligopolistic, that "[d]emand for flexible polyurethane foam is relatively inelastic," and that flexible polyurethane foam is a commodity and purchased by Defendants' customers based principally on price. As in *Urethanes*, Plaintiffs also claim that Defendants raw material input costs were used as pretext for price increases to Plaintiffs. The downstream data Defendants seek, moreover, is obviously relevant to class certification issues of "commonality," "typicality" and "adequacy of representation," as well as "common impact." Just as plainly Defendants are entitled to discover downstream data to determine how and to what extent Plaintiffs compete directly with Defendants and whether under *Brunswick* they can be said to have suffered "antitrust injury."

August 5, 2011                                       Respectfully submitted,

| | |
|---|---|
| /s/  James H. Walsh | /s/  Kendall Millard |
| James H. Walsh | Kendall Millard |
| Howard Feller | BARNES & THORNBURG, LLP |
| Bethany Lukitsch | 11 South Meridian Street |
| MCGUIREWOODS LLP | Indianapolis, IN 46204-3535 |
| One James Center | Phone: (317) 231-7461 |
| 901 East Cary Street | Fax:    (317) 231-7433 |
| Richmond, VA 23219-4030 | kmillard@btlaw.com |
| Phone: (804) 775-4356 | |
| Fax:    (804) 698-2200 | /s/   Michael D. Mustard |
| jwalsh@mcguirewoods.com | Michael D. Mustard |
| hfeller@mcguirewoods.com | BARNES & THORNBURG LLP |
| blukitsch@mcguirewoods.com | 600 One Summit Square |
| | Fort Wayne, IN 46802-3119 |
| *Counsel for Carpenter Co.* | Phone:  (260) 423-9440 |
| | Fax:    (260) 424-8316 |
| | mmustard@btlaw.com |
| | |
| | *Counsel for Flexible Foam Products, Inc.,* |
| | *Ohio Decorative Products, Inc.* |
| | |
| /s/   Frank A. Hirsch, Jr. | /s/   Edward G. Warin |
| Frank A. Hirsch, Jr. | Edward G. Warin |
| Matthew P. McGuire | John P. Passarelli |
| ALSTON & BIRD LLP | KUTAK ROCK LLP |
| 4721 Emperor Blvd. | 1650 Farnam Street |
| Suite 400 | Omaha, NE  68102 |
| Durham, NC  27703 | Phone:  (402) 346-6000 |
| Phone:  (919) 862-2200 | Fax:    (402) 346-1148 |
| Fax:    (919) 852-2260 | edward.warin@kutakrock.com |
| frank.hirsch@alston.com | john.passarelli@kutakrock.com |
| matt.mcguire@alston.com | |
| | *Counsel for Defendant Future Foam, Inc.* |
| *Counsel for Defendant Hickory Springs Manufacturing Company* | |

/s/   Howard B. Iwrey
Howard B. Iwrey
DYKEMA GOSSETT, PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304-2820
Phone:  (248) 203-0526
Fax:     (248) 203-0763

*Counsel for Defendants Inoac USA Inc. and Crest Foam Industries, Inc.*

/s/   Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone:  (513) 381-2838
Fax: (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone:  (816) 559-2227
jrebein@shb.com

*Counsel for Defendant Leggett & Platt, Inc.*

/s/   Francis P. Newell
Francis P. Newell
Peter M. Ryan
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2118
Fax:     (215) 665-2013
fnewell@cozen.com
pryan@cozen.com

*Counsel for Defendant FXI - Foamex Innovations, Inc.*

/s/   Richard A. Duncan
Richard A. Duncan
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh St.
Minneapolis, MN 55402-3901
Phone:  (612) 766-7000
Fax:     (612) 766-1600
rduncan@faegre.com

Robert A. Bunda
Theresa R. DeWitt
BUNDA STUTZ & DEWITT PLL
3295 Levis Commons Boulevard
Perrysburg, OH  43551
Phone: (419) 241-2777
Fax:     (419) 241-4697
rabunda@bsd-law.com
trdewitt@bsd-law.com

*Counsel for Defendant Otto Bock Polyurethane Technologies, Inc.*

/s/   Robert J. Gilmer, Jr.
Robert J. Gilmer, Jr.
EASTMAN & SMITH LTD.
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio 43699-0032
Phone: (419) 247-1766
Fax:    (419) 247-1777
rjgilmer@eastmansmith.com

/s/   Timothy J. Coleman
Timothy J. Coleman
Bruce McCulloch
Terry Calvani
John K. Warren
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
701 Pennsylvania Avenue, NW
Suite 600
Washington DC 20004-2692
Phone: (202) 777-4555
Fax:    (202) 777-4555
tim.coleman@freshields.com

*Counsel for Vitafoam, Inc. and Vitafoam Products Canada Ltd.*

/s/   Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Erica F. Ghali
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone:  (404) 881-7000
Fax:    (404) 881-7777
randall.allen@alston.com
teresea.bonder@alston.com
erica.ghali@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/   Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax:    (213) 229-6919
dsawnson@gibsondunn.com

Cynthia Richman
John W.F. Chesley
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone:  (202) 530-8500
Fax:    (202) 530-9651
crichman@gibsondunn.com
jchesley@gibsondunn.com

*Counsel for Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

/s/   Sheldon Klein
Sheldon Klein
BUTZEL LONG
Stoneridge West
4100 Woodward Ave.
Bloomfield Hills, MI 48304
Phone:  (248) 258-1414
Fax:    (248) 258-1439
klein@butzel.com

*Counsel for Defendant Plastomer Corporation*

8

9

/s/ Shepard Goldfein
Shepard Goldfein
Elliot A. Silver
Skadden, Arps, Slate,
Meagher & Flom LLP
Four Times Square
New York, NY 10036
Phone: (212) 735-3000
Fax:    (212) 735-2000
shepard.goldfein@skadden.com
elliot.silver@skadden.com

*Counsel for Domfoam International, Inc.
and Valle Foam Industries (1995) Inc.*

CERTIFICATE OF SERVICE

      I hereby certify that on August 5, 2011, a copy of the foregoing *Defendants' Response to Plaintiffs' Position Statement on the Transactional Data Protocol* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

          /s/ Bethany G. Lukitsch
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4711
Fax: (804) 698-2261
blukitsch@mcguirewoods.com