UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) | No. 10 MD 2196-JZ |
| THIS DOCUMENT RELATES TO: INDIRECT PURCHASER ACTIONS | ) ) ) ) | Hon. Jack Zouhary |

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL
SUBMISSION ON STATE CLAIM STANDING**

**TABLE OF CONTENTS**

I. Supreme Court Precedent Compels Deferring the Standing Issue Until Class Certification ................................................. 1

II. If The Court Finds That Plaintiffs Lack Standing To Assert Claims Under The Laws Of States Where They Do Not Reside, The Court Should Grant Leave To Add Additional Plaintiffs ................. 8

III. The Standing Issue Has No Bearing on Defendants' Discovery Obligations or Burdens ............................................. 8

    A. Defendants Will Produce The Same Data In Response to the Direct Purchaser Plaintiffs' Requests Regardless of whether the Indirect Purchasers' States Are Limited .................. 8

    B. Attempting to Limit the Data Produced to Indirect Purchasers Is More Likely to Increase Defendants' Discovery Burden than Decrease It .......................... 9

CONCLUSION ........................................................................................ 10

**TABLE OF AUTHORITIES**

**CASES**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)......................................................2, 4

*Brown v. Sibley*, 650 F.2d 760 (5th Cir.1981)............................................................................2

*Clark v. McDonald's Corp.,* 213 F.R.D. 198 (D.N.J. 2003).......................................................6

*Cooper v. University of Texas at Dallas*, 482 F.Supp. 187 (N.D.Tex.1979) ..............................2

*Doyel v. McDonald's Corp.,* 2009 WL 350627 (E.D. Mo. Feb. 10, 2009) ..................................6

*Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) ………..........................1, 2

*Griffin v. Dugger,* 823 F.2d 1476 (11th Cir.1987)......................................................................6

*Hoving v. Transnation Title Ins. Co.,* 545 F.Supp.2d 662 (E.D. Mich. 2008)………................4

*In re Aftermarket Filters Antitrust Litig.,*
    2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)..............................................................3, 4

*In re Buspirone Patent and Antitrust Litig.*,
    185 F. Supp. 2d 363 (S.D.N.Y. 2002)............................................................................5

*In re Chocolate Confectionary Antitrust Litig.,* 602 F.Supp.2d 538 (M.D. Pa. 2009)...............6

*In re Crazy Eddie Sec. Litig.,* 135 F.R.D. 39 (E.D.N.Y.1991)....................................................7

*In re Grand Theft Auto Video Game Consumer Litig.*,
    2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006)................................................................5

*In re Hypodermic Prods. Antitrust Litig.,* 2007 WL 1959225 (D.N.J. June 29, 2007)...............6

*In re K-Dur Antitrust Litig.,* 338 F.Supp.2d 517 (D.N.J. 2004)..................................................6

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 891169 (E.D. Mich. Mar. 11, 2011)..............................................................4

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    263 F. Supp. 2d 172 (D.Mass.2003)..............................................................................6

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*
    148 F.3d 283 (3d Cir.1998)............................................................................................6

*In re Relafen Antitrust Litig.,* 221 F.R.D. 260 (D. Mass.2004)...............................................4, 5

*In re School Asbestos Litig.,* 789 F.2d 996 (3d Cir.1986)..........................................................7

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F.Supp.2d 1365 (S.D. Fla. 2001)…..............................................................................6

*Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51 (S.D.N.Y.1993)...............................7

*Mowbray v. Waste Management Holdings, Inc.,*
    189 F.R.D. 194 (D.Mass.1999)............................................................................................6

*O'Shea v. Littleton*, 414 U.S. 488 (1974)......................................................................................2

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).............................................................................2

*Ramirez v. STI Prepaid LLC,* 644 F.Supp.2d 496 (D.N.J. 2009)....................................................6

*Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976).......................................................2

*Sierra Club v. Morton*, 405 U.S. 727 (1972)..................................................................................2

*Vernon v. Qwest Communications Intern., Inc.*,
    643 F.Supp.2d 1256 (W.D.Wash. 2009)............................................................................6

*Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67 (E.D.N.Y.2004).........................................7

*Woodard v. Fidelity Nat'l Title Ins. Co.*, 2007 WL 5173415 (D.N.M. Dec. 4, 2007).................5, 6

*Young v. Wells Fargo & Co.*, 671 F.Supp.2d 1006 (S.D. Iowa 2009)............................................6

**RULES**

Federal Rules of Civil Procedure, Rule 23..................................................................................2, 7

**TREATISES**

*Herbert B. Newberg & Alba Conte, Newberg On Class Actions*............................................2, 3, 8

*Manual for Complex Litigation 4th* § 21.26…………………………………………………….8

The Defendants' arguments that the Court should decide now whether the named Plaintiffs may represent Indirect Purchasers in other states fail of their own weight. They ignore Supreme Court and Sixth Circuit precedent which hold that decisions regarding which claims a named plaintiff may represent in class actions should be deferred until class certification. Moreover, Defendants' discovery burden has nothing to do with which state claims the Indirect Purchaser Plaintiffs plead because the Direct Purchaser Plaintiffs seek the same joint discovery. Indeed, if anything will unnecessarily expand the burden and scope of discovery in this action, it would be adopting Defendants' argument that 28 named class representatives are necessary to prosecute this action. As explained below, under applicable precedent there is no such requirement, and the Court should defer this issue until class certification.

**I.     Supreme Court Precedent Compels Deferring the Standing Issue Until Class Certification**

Class actions involve a named plaintiff seeking to represent other class members' claims. Those claims do not belong to the named plaintiff, and he would not have standing to bring a lawsuit on behalf of another person's claims other than through the class action mechanism.

Courts have recognized that a named plaintiff in a class action may represent class members with similar claims that are not identical. Thus, in *Fallick v. Nationwide Mutual Insurance Co.*, the Sixth Circuit held that a named plaintiff in an ERISA suit could represent class members who were participants in plans other than his. *Fallick*, 162 F.3d 410, 422 (6th Cir. 1998). The district court had held that Fallick lacked standing to sue on behalf of participants in those other plans because he lacked individual standing on those claims. *Id.* at 421-422.

The Sixth Circuit reversed, finding that the district court had "confuse[d] the issue of a plaintiff's standing under Article III vis-a-vis a defendant with the relationship between a

potential class representative and absent class members, which is governed by Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 422. As the court explained:

> Threshold individual standing is a prerequisite for all actions, including class actions. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A potential class representative must demonstrate individual standing vis-as-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action. *See Brown v. Sibley*, 650 F.2d 760, 770 (5th Cir.1981). As this Court has made clear, however, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." *Senter v. General Motors Corp.*, 532 F.2d 511, 517 (6th Cir.1976). Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *See Cooper v. University of Texas at Dallas*, 482 F.Supp. 187 (N.D.Tex.1979); HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 2.05 (3d ed.1992). Thus, in the instant matter, once the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits - a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class - the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members.

*Fallick*, 162 F.3d at 423.

A pair of Supreme Court opinions, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997), endorsed this analysis, and carved out an exception to threshold inquiries of standing where class certification issues are "logically antecedent" to the standing issue. *See Ortiz,* 527 U.S. at 831; *Amchem,* 521 U.S. at 612. The Supreme Court in *Amchem* explained that "logically antecedent" issues are those that "would not exist but for the [class action] certification." *Amchem,* 521 U.S. at 612. In such circumstances, class certification is properly addressed *before* the standing analysis, provided, of course, that the named plaintiffs have alleged some actual injury to themselves.

Here, the named Indirect Plaintiffs in the CAC have clearly alleged that they themselves were harmed by the Defendants' conduct. *See* CAC ¶¶7-24. Accordingly, a determination of whether those named Indirect Plaintiffs have the ability to represent class members from states in which they do not reside is a question that would not arise "but for" the prosecution of this case as a multi-state class action. Stated differently, these named Indirect Plaintiffs do not need to establish individual standing for each of the state law claims because they do not allege personal injury in those states on their *own* behalf; rather, they have asserted that their claims and their injuries are *typical* of those arising in those other states where the Defendants have injured countless absent class members. *See* 1 *Newberg on Class Actions* § 2:5 (4th ed.2007) (stating that "a proper party to raise a particular issue is before the court" as soon as the class representative meets threshold individual standing, "and there [is] no ... separate class standing requirement in the constitutional sense. The presence of individual standing is sufficient to confer the right to assert [common] issues ...") (internal quotations omitted).

The same principles apply to cases brought under substantially similar state laws. Class members in different states may have been harmed in the same way by the same conduct, and all can sue under essentially identical state laws. However, in order to include all of them, the complaint may allege that the defendant's wrong is actionable under the law of a state where class members may live or have made purchases, but where the named plaintiff himself did not live or make a purchase.

As the court explained in *In re Aftermarket Filters Antitrust Litigation,* 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009):

> *Ortiz* created an exception, limited to class actions, to the general rule that courts address standing as a threshold matter…. In the instant case, all of the plaintiffs, named and unnamed, have Article III standing to sue defendants. All plaintiffs have allegedly suffered identical injuries caused by several parties related by a

3

> conspiracy to fix prices. Therefore, the name plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states. Thus, any "standing" issues arise from plaintiffs' attempts to represent the proposed classes. These are class certification issues "logically antecedent" to the standing concerns.

2009 WL 3754041 at *5 (N.D. Ill. Nov. 5, 2009) (internal citations omitted). The *Filters* court therefore deferred deciding the standing issue until the class certification stage.

The Eastern District of Michigan reached the same conclusion in *Hoving v. Transnation Title Insurance Co.,* 545 F.Supp.2d 662 (E.D. Mich. 2008):[1]

> The Court finds no reason not to apply the [*Fallick*] rationale to the present case. Even if the plaintiff has standing to assert claims in this jurisdiction (which is not challenged here), to proceed as a representative of a class he must still establish that his claim is typical of those individuals whose claims arise under the laws of other states and he can represent those individuals adequately. See Fed.R.Civ.P. 23(a). That determination must be made before the Court can decide whether the plaintiff has standing to maintain a class action as the named plaintiff; and therefore the decision on class certification is logically antecedent to the determination of standing. For example, with the facts presented in the complaint, the plaintiff certainly could not file an individual suit only seeking relief under Arizona law; however, a member of his proposed class from that state likely would have suffered an injury that could be redressed under Arizona law. The defendant has not seriously challenged the plaintiff's standing to assert his claims arising from the alleged overcharge on his own refinancing transaction. The question whether he has standing to proceed as a class representative will be subsumed in the class certification decision, but it the argument does not support the defendant's requested dismissal presently.

545 F.Supp.2d at 667-68.

This same conclusion was reached in *In re Relafen Antitrust Litigation*: 221 F.R.D. 260, 269-70 (D. Mass.2004):

> Certification is in this case "logically antecedent" because SmithKline's challenge would not arise but for the proposed certification. *Amchem,* 521 U.S. at 612, 117 S.Ct. 2231. Specifically, SmithKline did not challenge the representatives' standing to assert personal claims under the laws of states in

---

[1] *But see In re Packaged Ice Antitrust Litigation*, 2011 WL 891169, *8-9 (E.D. Mich. Mar. 11, 2011).

4

> which they resided or purchased medication. See Defs.' Opp'n at 34. Rather, SmithKline challenged only their standing to "represent a class of indirect purchasers of Relafen in the other 16 Indirect Purchaser jurisdictions." Id. Accordingly, the Court applies the *Ortiz* exception to defer consideration of SmithKline's standing challenge and to address the remaining issues of certification first.

221 F.R.D. at 269-70.  The *Relafen* court then continued to explain the internal logic behind this

*Ortiz* exception:

> [I]n the "nontraditional" context of class actions, the purpose of the standing requirement - "limiting judicial power to disputes capable of judicial resolution" (that is, disputes involving "sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions") - may be served even absent a personal stake held by the named plaintiff.  The assurance of vigorous advocacy may be provided instead by the collective interest of the class, advanced by the named representative serving as a sort of "private attorney general." The focus of the standing inquiry is therefore appropriately directed toward the class rather than its representative…. This flexible, functional standing inquiry also proves consistent with the policies served by class action procedure.

*Id.* at 69 (citations omitted).

Numerous other courts have applied these principles to defer consideration of standing under other state's laws until the class certification stage.  *E.g., In re Buspirone Patent and Antitrust Litigation*, 185 F. Supp. 2d 363, 377.(S.D.N.Y. 2002) ("There is no question that this Court has jurisdiction over each of the lawsuits and that each of the named plaintiffs has standing to bring at least some claims.. . .  In these circumstances, it is appropriate to decide class certification before resolving alleged Article III challenges of the present kind." (internal citations omitted)); *In re Grand Theft Auto Video Game Consumer Litigation*, 2006 WL 3039993 at *3 (S.D.N.Y. Oct. 25, 2006) ("The relevant question, therefore, is not whether the Named Plaintiffs have standing to sue Defendants - they most certainly do - but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is, at least in the first instance, appropriately answered through the class

certification process." (internal citations omitted)); *Woodard v. Fidelity National Title Ins. Co.*, 2007 WL 5173415, at *3-4 (D.N.M. Dec. 4, 2007).[2] *Accord*, *Vernon v. Qwest Communications Intern., Inc.*, 643 F.Supp.2d 1256, 1263-1264 (W.D.Wash. 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F.Supp.2d 538, 579-80 (M.D. Pa. 2009); *Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 194, 202 (D.Mass.1999), *aff'd*, 208 F. 3d 288 (1st Cir. 2000); *In re Hypodermic Prods. Antitrust Litig.*, 2007 WL 1959225, at *15 (D.N.J. June 29, 2007); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 (D.N.J. 2003); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 193-94 (D.Mass.2003); *In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 544 (D.N.J. 2004); *Doyel v. McDonald's Corp.*, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009); *Ramirez v. STI Prepaid LLC,* 644 F.Supp.2d 496, 505 (D.N.J. 2009); *Young v. Wells Fargo & Co.*, 671 F.Supp.2d 1006, 1023-24 (S.D. Iowa 2009).

At the class certification stage, we expect to demonstrate that the Defendants' course of conduct is common to all of the state antitrust and consumer protection claims alleged in this case. In other words, the facts which establish liability and damages under the state laws for which there are currently named class representatives will similarly establish liability and damages under the laws of the absent class member states, and no additional individualized proof will be needed for any state law claim for which there is not currently a named representative. Indeed, federal courts routinely certify class actions that assert numerous state law claims,

---

[2] The *Woodard* court questioned the viability of the *In re Terazosin* decision on which the Defendants rely in their Joint Brief (and which the other cases that the Defendants cite to also relied on), noting that "the *Terazosin* court was bound to follow Eleventh Circuit precedent, a circuit that has not addressed the Supreme Court's "logically antecedent" exception. This Court cannot lightly disregard controlling Supreme Court precedent and chooses not to do so today." *Id.* at *4. Indeed, the Eleventh Circuit opinion followed in *Terazosin* was decided 12 years prior to the U.S. Supreme Court's 1999 *Ortiz* decision which clarified the law. *See In re Terazosin Hydrochloride Antitrust Litig.,* 160 F.Supp.2d 1365, 1371 (following *Griffin v. Dugger,* 823 F.2d 1476 (11th Cir.1987)).

6

without the need for a named plaintiff in each and every state. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 315 (3d Cir.1998), *cert. denied*, 525 U.S. 1114 (1999); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 58 (S.D.N.Y.1993); *In re Crazy Eddie Sec. Litig.,* 135 F.R.D. 39, 41 (E.D.N.Y.1991); *In re School Asbestos Litig.,* 789 F.2d 996 (3d Cir.1986), *cert. denied*, 479 U.S. 852 (1986), and 479 U.S. 915 (1986); *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 80 (E.D.N.Y.2004).

Under these circumstances, requiring that there be 28 named plaintiffs in this action not only is legally unnecessary, but would also defeat the purpose and utility of Rule 23 and the class action device. Rule 23 contemplates that one or a few class representatives will bring the claims on behalf of numerous similarly situated absent class members, and that the claims of the absent class members will be proven by the class representatives and class counsel through common proof. Defendants' argument that 28 individual class representatives are needed to prosecute this action would, if anything, impose a new and antithetical "numerosity" requirement that is nowhere required or contemplated by Rule 23. And, finally, while Defendants feign concern for the scope and burden of discovery in advancing this argument (a concern that is unfounded, as explained in the following section), requiring the addition of numerous additional named plaintiffs would unnecessarily expand and make burdensome the discovery in this action, as experience tells us that Defendants will seek document and other written discovery from, and then seek to depose, every named class representative in this action. The Court should thus decline Defendants' invitation to rule that this -- and, by extension, every -- indirect purchaser antitrust class action necessarily requires at least 28 individual named plaintiffs.

## II. If The Court Finds That Plaintiffs Lack Standing To Assert Claims Under The Laws Of States Where They Do Not Reside, The Court Should Grant Leave To Add Additional Plaintiffs

If the Court were to conclude at this stage that the named Indirect Plaintiffs lack standing to assert certain state law claims (which, as discussed above, would be an incorrect and premature ruling), then the Indirect Plaintiffs should be granted leave to identify and name additional class representatives prior to the class certification stage. *See* 3 *Newberg on Class Actions* § 7.47 (4th ed. 2002) (observing that if a class representative is found to lack standing to represent a proposed class – even after certification of that class – courts should, and often do, permit additional class representatives to be added to cure the defect); *Manual for Complex Litigation 4th* § 21.26 ("[C]ourts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements.").

Under the Court's schedule, Plaintiffs have until March 1, 2012 to add parties to this case. Joint Scheduling Order at ¶ 4 (Docket No. 112). Plaintiffs already have additional parties who are willing to represent states if necessary, and Plaintiffs believe, based on experience, that additional such parties will step forward in the future.

## III. The Standing Issue Has No Bearing on Defendants' Discovery Obligations or Burdens

### A. Defendants Will Have to Produce the same Data In Response to the Direct Purchaser Plaintiffs' Requests Regardless of whether the Indirect Purchasers' States Are Limited

Limiting the states involved in the Indirect Purchaser Plaintiffs' suit will not reduce the Defendants' document and data production obligations because they are required to produce the same documents and data for the whole nation to the Direct Purchaser Plaintiffs. The Defendants insisted that all of the Plaintiff groups cooperate to produce common discovery requests that apply to all of the actions. The Plaintiffs complied and the Indirect Purchaser

8

Plaintiffs have neither served separate discovery requests nor are any of the common requests to Defendants limited to the Indirect Purchaser Plaintiffs. As a result, Defendants will have to make the same document and data productions regardless of which states are involved in the Indirect Purchaser Plaintiffs' action.

      **B.    Attempting to Limit the Data Produced to Indirect Purchasers Is More Likely to Increase Defendants' Discovery Burden than Decrease It**

Even apart from the overriding fact that the Defendants will need to make the same productions regardless of the Indirect Purchasers' involvement in these actions, any attempt to limit the data is more likely to create work than reduce it. Defendants would need to undertake additional reviews and culling of documents and data. Unless a Defendant already organizes its documents by state, which seems very unlikely, this additional review process would add expense and delay.

Moreover, it is likely to be ineffective. The state where an Indirect Purchaser bought a product often will not correspond with the state where the Defendant sold the foam contained in that product. For example, if an Indirect Purchaser in Toledo bought a mattress made in Monroe, the relevant sale of foam by a Defendant was likely made to a direct purchaser entity in Michigan. Limiting discovery to where the Indirect Purchasers made their purchases will not capture the relevant sales by Defendants to third-party direct purchasers who are situated in other states. It would be more difficult for the Defendants to attempt to identify the relevant sales than for them to produce the entire dataset.

## **CONCLUSION**

For the foregoing reasons, the Court should defer consideration of the standing issue to class certification.

August 12, 2011                          Respectfully Submitted,

                                                                    */s/* Marvin A. Miller
                                                                    Marvin A. Miller
                                                                    Matthew E. Van Tine
                                                                    Lori A. Fanning
                                                                    **Miller Law LLC**
                                                                    115 S. LaSalle Street, Suite 2910
                                                                    Chicago, IL 60603
                                                                    Tele: (312) 332-3400
                                                                    Email: MMiller@MillerLawLLC.com
                                                                                MVanTine@MillerLawLLC.com
                                                                                LFanning@MillerLawLLC.com

                                                 *Interim Lead Counsel for Indirect Purchasers*

                                                 Richard M. Kerger (0015864)
                                                 Kimberly Conklin (0074726)
                                                 **KERGER & HARTMAN, LLC**
                                                 33 S. Michigan Street, Suite 100
                                                 Toledo, OH 43604
                                                 Telephone: (419) 255-5990
                                                 Fax: (419) 255-5997
                                                 Email: Rkerger@kergerlaw.com
                                                                  Kconklin@kergerlaw.com

                                               *Executive Committee for Indirect Purchasers*

## CERTIFICATE OF SERVICE

I, Marvin A. Miller, certify that on August 12, 2011, I served the foregoing document in accordance with Paragraph 9 of the Initial Case Management Order entered January 20, 2011.

/s/*Marvin A. Miller*