**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

_____
                                                                    )
In re POLYURETHANE FOAM ANTITRUST  )
LITIGATION                                                     )     MDL Docket No. 2196
_____)     Index No. 10-MD-2196 (JZ)
                                                                    )
This document relates to:                                 )
                                                                    )
ALL CASES                                                    )
_____)

**TRANSACTIONAL DATA PROTOCOL ORDER**

A. This protocol concerns the format for the production of transactional data maintained in the ordinary course of business. By agreeing to these protocols, the parties do not represent that requested data exists, or that they maintain any such data in the form sought. This protocol embodies the transactional data the parties shall produce, as well as the general schedule for such production, in these consolidated actions. The parties preserve all objections to outstanding or future discovery requests seeking transactional data (such as objections to time frame, relevance, and burden), and shall meet and confer concerning any objections.

B. Nothing stated herein shall obligate the Defendants identified in the "Discovery Considerations" section of the Court's July 19, 2011 Order (the "Excluded Defendants") to produce any data or provide any other information. The obligations, if any, of the Excluded Defendants to provide data or information, and the timing of such obligations, if any, will be as set forth in the "focused and phased discovery plan to determine whether these [Excluded] Defendants should remain in the case," as contemplated in the July 19, 2011 Order. The Parties reserve their right to seek the data set forth in this protocol in the context of the focused and phased discovery plan.

C. Transactional data

   1. To the extent responsive transactional data is maintained in the ordinary course of business as reasonably accessible electronic data and is to be produced, such data will, to the extent feasible, be produced on CD, DVD, hard drive or other reasonable

       means, in CSV (Comma Separated Values) format, or similar delimited text file with a fixed width (such as tabbed delimited format).[1]

2. To the extent responsive financial data is maintained in the ordinary course of business as readily accessible electronic data and is to be produced, such data will, to the extent feasible, be produced on CD, DVD, hard drive or other reasonable means, in CSV (Comma Separated Values) format, a similar delimited text file with a fixed width (such as tabbed delimited format) or on an Excel spreadsheet or other similar standard database format.

3. The producing parties will provide, to the extent they exist, applicable data dictionaries and/or field directories indicating which types of data, if any, are being produced and the format of such data.

D. Defendants[2] shall provide, to the extent reasonably accessible in the ordinary course of business and to the extent it exists on their respective systems, the following categories of transactional data for flexible polyurethane foam as defined in the consolidated complaints and the direct action complaints.

   1. <u>Customer information</u>

       a.    Bill-to customer name and IDs;

       b.    Ship-to customer name and IDs; and

       c.    Account numbers for the bill-to and ship-to customers.

   2. <u>Product information</u>

       a.    SKU or other ID(s) used to identify products;

       b.    Product family ID(s) for each product;

---

[1] Throughout this protocol "reasonably accessible" shall be interpreted consistent with the Federal Rules of Civil Procedure and this Court's Local Rules.

[2] It is Defendants' position that the transactional data related to sales of a party's products covered by sections D and E of this protocol should be produced both by Defendants and all Plaintiffs (including Direct Purchaser class and non-class Plaintiffs), for the reasons set forth in Defendants' submissions "Defendants' Position Statement on Transactional Data Protocol" and "Defendants' Response to Plaintiffs' Position on Transactional Data Protocol," filed respectively as docket entries 205 and 218. It is Direct Plaintiffs' position that while Plaintiffs should produce transactional data related to their purchases from Defendants, it would be inappropriate to require Plaintiffs to produce data related to so-called "downstream" sales of their own products, for the reasons set forth in the separate submissions titled "Plaintiffs' Position on Transactional Data Protocol" and "Response to Defendants' Position Statement on the Transactional Data Protocol," filed respectively as docket entries 207 and 215. The Court has determined that Plaintiffs need only produce their purchase data at this time (as set forth in section F of this protocol), and the Court will revisit at a later date whether they must produce any "downstream" transactional data. The Parties reserve all of their respective rights regarding the ability to seek, object to, or brief issues, if any, regarding the production of "downstream discovery."

      c.    Any other level of aggregation regularly used in the ordinary course of business on the party's respective systems, if any;

      d.    Units sold; and

      e.    Unit of measure for each product.

3. <u>Price and discount / rebate information</u>

      a.    List price per product unit;

      b.    Discounts, rebates, trade spending, or other means used to incentivize purchasers through lowered prices;

      c.    For each discount, rebate, trade spending, or other incentive identified in 3(b), the customer, date, description, amount and if appropriate, transaction number; and

      d.    Data maintained in the ordinary course of business, if any, that describes whether the discount, rebate, trade spending, or other incentive identified in 3(b) and 3(c) are on-invoice or off-invoice incentives.

4. <u>Invoice information</u>

      a.    Invoice number;

      b.    Invoice date; and

      c.    Non-item specific discounts, rebates, or other means used to incentivize purchasers through on-invoice lowered prices.

E. Defendants[3] shall provide, to the extent reasonably accessible in the ordinary course of business, the following categories of financial information. Defendants shall provide such data by product and/or by plant to the extent such data exists and is maintained in that manner in the ordinary course of business.

1. Information regarding costs of inputs for each flexible polyurethane foam product manufactured or sold ;

2. Cost of goods sold ("COGS");

3. Monthly and quarterly standard cost per product;

4. Labor costs;

5. Materials costs;

---

[3] *See* FN 2.

3

    6. Selling, general & administrative expenses;

    7. Transportation costs; and

    8. Other regularly tracked costs not identified above.

F. In addition, all Plaintiffs shall provide, to the extent reasonably accessible in the ordinary course of business, the following categories of purchasing information:

    1. Seller name, ID and account number;

    2. Any product name, SKU or ID;

    3. Units purchased;

    4. Unit of measure;

    5. Price paid;

    6. Any discounts, rebates, or other incentives received;

    7. For each discount, rebate or other incentive received, the seller, date, description, amount and if appropriate the transaction number;

    8. Freight/transportation charges;

    9. Purchase Order number; and

    10. Purchase Order date.

G. To the extent a party's transactional data is or was not maintained solely in electronic form during the Relevant Period, that party shall inform opposing counsel of this fact and identify those non-ESI repositories that contain potentially relevant transactional data that is not maintained in electronic format. In making this identification, the party will identify the categories of transactional data stored in these repositories.

H. PRODUCTION SCHEDULE

    1. 30 days from entry of this Order, each party shall identify the actual fields of data it will produce to comply with this protocol. The parties shall also identify any data that falls within the protocol that is not reasonably accessible.

    2. 45 days from entry of this Order - Date by which rolling production of data will begin

    3. 90 days from entry of this Order - Date by which rolling production of data will be completed

I. To the extent circumstances post-dating this protocol potentially necessitate an extension or modification to the schedule set forth in Section H, *supra*, the party(s) requesting

    extension or modification of the schedule shall meet and confer in good faith with the opposing parties to determine what extension or modification, if any, is appropriate. Based on this meet and confer, the parties requesting extension or modification may extend or modify the schedule as to them upon mutual agreement by the opposing party or, barring mutual agreement, by Court order.

J.   All data produced pursuant to this protocol shall be treated as Highly Confidential under the Protective Order.

    IT IS SO ORDERED.

                                          s/ Jack Zouhary
                                          _____
                                          JACK ZOUHARY
                                          U.S. DISTRICT JUDGE

                                          September 15, 2011