# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION This document relates to: ALL CASES | MDL Docket No. 2196Index No. 10-MD-2196 (JZ) |

## ORDER REGARDING ELECTRONICALLY STORED INFORMATION

The parties[1] have agreed to the terms of this Order Regarding Electronically Stored Information:

1. **Introduction.**  Pursuant to Local Rule ("LR") 16.3(b); Fed. R. Civ. P. 16; Fed. R. Civ. P. 26(f) and the Court's Initial Case Management Conference Order (Docket No. 17), the parties have conferred regarding matters affecting the discovery of electronically stored information ("ESI" or "E-discovery") and agreed on the following procedures and guidelines regarding the production of ESI in this case.  This Order is intended to and hereby supersedes the Default Standard for Disclosure of Electronically Stored Information set forth in LR – Appendix K.

---

[1] Nothing stated herein shall obligate the Defendants identified in the "Discovery Considerations" section of the Court's July 19, 2011 Order (the "Excluded Defendants") to produce any documents, data or provide any other information.  The obligations, if any, of the Excluded Defendants to provide documents, data or information, and the timing of such obligations, if any, will be as set forth in the "focused and phased discovery plan to determine whether these [Excluded] Defendants should remain in the case," as contemplated in the July 19, 2011 Order.  The Parties reserve their right to seek the information set forth in this protocol in the context of the focused and phased discovery plan.

2. **E-Discovery Coordinator.** In order to promote communication and cooperation between the parties, each party shall designate a single individual through which all e-discovery requests and responses are coordinated ("the e-discovery coordinator"). Regardless of whether the e-discovery coordinator is an attorney, a third-party consultant or an employee of the party, he or she must be:

   a. Familiar with the party's electronic systems and capabilities and able to explain these systems and answer relevant questions.

   b. Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues.

   c. Prepared to participate in e-discovery dispute resolutions.

   d. Knowledgeable about the party's electronic document retention policies.

At all times, the attorneys of record shall be responsible for responding to e-discovery requests. However, the e-discovery coordinators shall be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process. The ultimate responsibility for complying with e-discovery requests rests on the parties.

3. **Identification of Relevant Systems and Custodians.** Twenty calendar days after entry of this Order, the parties shall exchange in writing:

   a. A list of the most likely custodians of relevant electronically stored information, including a brief description of each person's title, responsibilities, and approximate years of employment with the producing party;

   b. A description of the most likely relevant electronic systems that have been in use during the relevant time period, and a general description of each such system, including

the software used, and the general nature, scope, character, organization, and formats employed by each system; and

    c. A description of likely relevant electronically stored information that is not reasonably accessible, in whole or in part. That description shall set forth:

      i. a general description of the nature of the ESI (e.g., e-mail communications, correspondence, meeting minutes, accounts payable, etc.);

      ii. the type of media in which the inaccessible data is contained, to the extent it is known or ascertained; and

      iii. the reason(s) why the information is considered inaccessible.

Where disputes arise concerning production of inaccessible ESI, the parties shall promptly meet and confer. If the parties' disagreement persists after meeting and conferring in good faith, the parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

  4. **Format for Production.**  Unless the parties agree otherwise, the provisions set forth in this paragraph shall govern the format for production of ESI: the parties will produce paper[2] and electronic documents in Tagged Image File Format (TIFF or .TIF) files, subject to

---

[2] The parties recognize and understand that in some instances, a producing party may only have in its files hard copy versions of certain documents responsive to discovery requests. In such instances, it is agreed that:

(a) if the producing party on its own initiative chooses to put the hard copy documents in an electronic format, the producing party shall produce to the other parties a copy of the documents in the same electronic format the producing party has created for itself;

(b) if the producing party maintains the documents solely in hard copy form, then the producing party shall elect either to (i) copy the documents and produce a set to each of (ww) lead counsel for the direct purchaser (class action) plaintiffs, (xx) lead counsel for the indirect purchaser (class action) plaintiffs, (yy) counsel for each of the direct action (non-class) plaintiffs, and (zz) counsel (footnote continued)

3

Paragraphs 5, 6 and 7 below.  Each image should have a unique file name, which is the Bates number of the page.  TIFF files shall be produced in single-page Group IV format, with a minimum resolution of 300 dpi (except that any native file that is in the form of a TIFF image need not be scanned or re-processed simply to achieve such minimum resolution when produced).  After initial production in TIFF format is complete, a party may request in writing that the producing party produce specific documents in their native format.  Should the parties not reach agreement after meeting and conferring in good faith, the requesting party may move the Court for such production.   When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records.  Each document production will be accompanied by two load files: an image load file and a metadata load file.  Those load files shall be produced in Concordance format (.DAT file using Concordance standard delimiters for the metadata load files, and .OPT file using Concordance standard fields for the image load files).  The image load file shall provide image and document break information for the TIFF files produced that correspond to the beginning Bates numbers

---

for each defendant, or (ii) make the documents available to other parties' counsel for inspection at a reasonably accessible location to be determined by the producing party and copying at the cost of the requesting party or parties;

(c) in the event a producing party chooses to make documents available for inspection and copying, then the parties at that time shall negotiate in good faith to determine appropriate procedures applicable to that process; and

(d) notwithstanding the foregoing subparagraph (a), if a producing party chooses to make documents available for inspection and copying, the producing party shall not thereafter have any obligation, after the copies of those documents are delivered to the requesting party, to produce to other parties any electronic format the producing party may subsequently create to store documents that were selected by other parties in the inspection process.

contained in the metadata load file.  Every TIFF file in each production must be referenced in the production's corresponding image load file.  The total number of TIFF files referenced in a production's image load file should match the number of TIFF files in the production.  In addition to any metadata collected and produced pursuant to Paragraphs 5 and 6 below, the metadata load file for each production shall provide the Bates numbers and the Bates number attachment range for email or other documents containing attachments.  For documents that do not contain redactions, the producing party will produce an extracted text file for each electronic document and an Optical Character Recognition ("OCR") text file for each imaged paper document.  For documents that contain redactions, the producing party will provide an OCR text file for the unredacted portions of such documents.  All non-redacted documents are to be provided with multi-page searchable text (.TXT) files.  The OCR text files and image load files should indicate page breaks, to the extent possible.

     5.     **Metadata.**  During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in a load file ("metadata load file").  To the extent they are available in collected data, the metadata values that are to be extracted and produced in the metadata load files are:

Metadata from Email:

Email Subject

Email Author

Email Recipient

Email CC

Email BCC

Email Received Date

Email Sent Date

Email Received Time

Email Sent Time

<u>Metadata from Electronic Files:</u>

File Name

File Author

File Created Date

File Created Time

File Modified Date

File Modified Time

File Extension

<u>Metadata for both Email and Electronic Files:</u>

Custodian/Source

Starting and ending production number

Original Path (of original item, not including structure of capture device)

MD5 Hash (if generated when processed)

    To the extent reasonably available, with respect to ESI gathered from an individual's hard drive or network share, metadata sufficient to identify the individual custodian from whose hard drive or network share such ESI has been gathered will be provided in the Custodian/Source field. Data that is not collected from an individual's hard drive or network share and is not reasonably identifiable as to source will be designated as "company documents" in a coding field, as they cannot be related to an individual Custodian or Source.

6. **Production of E-Discovery with Attachments.**  For all E-Discovery (for example, email) that contains an attachment, to the extent available, the following fields should be produced and populated as part of the metadata load file to provide the parent/child or parent/sibling relationship:

   Production Number Begin (ProdBegDoc)

   Production Number End (ProdEndDoc)

   Production Attachment Range Number Begin (ProdBegAttach)

   Production Attachment Range Number End (ProdEndAttach)

7. **De-duplication.**  A party is only required to produce a single copy of any responsive document.  A party may de-duplicate ESI across each party's custodians or sources, but if that option is exercised, the producing party must identify each custodian or source where the document was located in a coding field.  De-duplication will be based on MD5 or SHA-1 hash values, and each party will disclose the methodology it used to de-duplicate.  Hard copy documents may not be eliminated as duplicates of responsive ESI.  A party may only de-duplicate "exact duplicate" documents and not de-duplicate "near duplicate" documents, both of the quoted terms in this sentence being given their ordinary meaning in the electronic discovery field.

8. **System and Program Files.**  System and program files defined on the NIST list need not be processed, reviewed, or produced.  Additional files may be added to the list of excluded files by mutual agreement of the parties.

9. **Searches: Key Words and Other Search Methodologies.**  To the extent that key words or other methodologies are to be used in limiting the universe of potentially

7

responsive documents to be reviewed in advance of production, the parties shall meet and confer to develop a mutually agreeable list of search terms and protocols.

10. **Production of Excel and Database E-Discovery.** Unless such materials contain privileged information, MS-Excel spreadsheets shall be produced in native format. If such spreadsheets include redacted information, they need not be produced in native format, but shall be produced with the extracted text and applicable metadata fields set forth in Paragraphs 5 and 6 of this Order, except to the extent the extracted text or metadata fields are themselves redacted. When producing spreadsheets in other than their native formats, the producing party shall include all hidden rows, columns, cells, worksheets, data, comments, or formulas, as well as any associated headers or footers.

Parties will meet and confer regarding production, in a mutually agreeable format, of responsive data contained in databases.

11. **Production of Media Files.** Unless otherwise mutually agreed to by the parties, media files are to be produced in the native media file format in which they were maintained in the ordinary course of business unless redactions are needed. If redactions are needed, the redacted media file may be produced either in the original native format or in a standard media format.

12. **Bates Numbering.** Each page of a produced E-discovery document will contain a legible Bates number that: is unique across the document production; has a constant length (0-padded) across the production; and is sequential within a given document. Each page of a produced E-discovery document will also contain a confidentiality notice, if applicable. If a Bates number or set of Bates numbers is skipped in a production, the producing party will notify the receiving party in its cover letter to the production that the production contains skipped Bates

numbers.  Both the Bates number and confidentiality notice shall be placed on the page image in a manner that does not conceal or interfere with any information contained on the page.  No other stamp or information will be placed on a document other than Bates number, confidentiality notice, and any redactions.  This paragraph does not apply to Excel spreadsheets or other files produced in native electronic format.

13. **Native File Production.**  Any file produced in its native format is to be named with its corresponding Bates number and extension.  If any produced native file is Confidential or Highly Confidential under the terms of the Stipulated Protective Order, the file name must include the corresponding confidentiality designation following the Bates number.  For example, native files that are designated "Confidential" must be named following the pattern, "BATESNumber_Confidential.extension";  Native files that are designated "Highly Confidential" must be named following the pattern "BATESNumber_Highly Confidential.extension."  Any file produced in native format should be produced with its corresponding load file, including a coding field containing its original file name.  The load file shall contain a link to any native file produced.

14. **Retention of Backup Tapes.**  Notwithstanding the foregoing, there is no obligation to retain backup tapes created after August 1, 2010, to the extent they exist, for purposes of this litigation.

15. **Redacted E-Discovery.**  To the extent a producing party redacts any document, such redaction shall be clearly marked on the TIFF image of the document.  The party shall also either provide a list identifying by Bates number those pages that have been redacted and the reason(s) for such redactions or a database field populated with an indicator of redaction and the reason(s) for redaction for each redacted document.  Any failure to redact information does not

9

automatically waive any right to claims of privilege or privacy, or any objection, including relevancy, as to the specific document or any other document that is or will be produced.

16. **Inadvertently Produced Documents.** Inadvertently produced documents, testimony, information, and/or things that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure shall be handled utilizing the procedures set forth in the Stipulated Protective Order (Docket No. 42).

17. **Privilege Logs.** Any privilege log provisions contained in the Discovery Protocol shall apply to responsive ESI.

18. **Confidential Documents.** ESI that contains confidential or highly confidential information shall be handled utilizing the procedures set forth in Paragraphs 12 and 13 above and the Stipulated Protective Order (Docket No. 42). If a party converts native files or other ESI designated Confidential or Highly Confidential under the Stipulated Protective Order to hard copy form, it shall mark the hard copy with the appropriate designation.

19. **Costs.** Each party shall bear its own E-Discovery costs unless otherwise ordered by the Court.

20. **Modifications.** In the event of individual issues that arise with regard to the identification and production of ESI and ESI-related information, as set forth in this Order, any practice or procedure provided for herein as to such identification and/or production may be varied by written agreement of the parties where such variance is deemed appropriate to facilitate the timely and economical exchange of documents, ESI, or ESI-related information. The parties shall meet and confer in the event of any dispute over the need for or nature of such variance in

practice or procedure, in an effort to reach agreement prior to informing the Court of any unresolved issues.

IT IS SO ORDERED.

s/ Jack Zouhary
_____
JACK ZOUHARY
U.S. DISTRICT JUDGE

September 16, 2011