**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196 |
| This document relates to: ALL DIRECT PURCHASER CLASS CASES | Index No. 10 MD 2196 (JZ) |

**SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANTS VITAFOAM, INC. AND VITAFOAM PRODUCTS CANADA LIMITED**

THIS SETTLEMENT AGREEMENT is made and entered into as of the 19th day of October 2011, by and between (1) Plaintiffs Ace Foam, Inc., Adams Foam Rubber Co., a/k/a Adams Foam Rubber Company, Inc., Cambridge of California, Inc., GCW Carpet Wholesalers, Inc. t/a Floors USA, Foam Factory, Inc., J&S Packaging, Inc., VFP Acquisitions d/b/a Vanguard Foam and Packaging Company, individually and on behalf of a putative class of all those similarly situated (collectively, "Direct Purchaser Plaintiffs") and (2) Defendants Vitafoam, Inc. and Vitafoam Products Canada Limited (collectively, the "Vitafoam Defendants"), parties in the above-captioned case. The Direct Purchaser Plaintiffs and the Vitafoam Defendants are referred to collectively as the "Parties."

WHEREAS, Direct Purchaser Plaintiffs, on behalf of themselves and as representatives of the putative class of similarly situated persons allege in the Class Action as defined below, among other things, that the Vitafoam Defendants participated in a conspiracy with other defendants in this litigation and unnamed co-conspirators, the purpose and effect of which was to fix prices for flexible polyurethane foam and flexible polyurethane foam products which terms

are defined in the Consolidated Amended Complaint (collectively, "flexible polyurethane foam");

WHEREAS, the Vitafoam Defendants enter into this Agreement without admission of any liability, and have denied all allegations of wrongdoing made in the Class Action and have asserted and would assert defenses to Direct Purchaser Plaintiffs' Complaint;

WHEREAS, Direct Purchaser Plaintiffs' Interim Co-Lead Counsel have been appointed to represent the Direct Purchaser Plaintiffs and the putative Settlement Class;

WHEREAS, the Vitafoam Defendants acknowledge that it is appropriate, solely as part of this Settlement, and subject to final approval, to stipulate to the certification of the Settlement Class, as defined below, and that the prerequisites of Fed. R. Civ. P. 23 have been satisfied here;

WHEREAS, Direct Purchaser Plaintiffs and the Vitafoam Defendants wish to resolve all claims asserted and all claims that could have been asserted on behalf of the Direct Purchaser Plaintiffs and the Settlement Class in the Class Action as set forth herein;

WHEREAS, the Direct Purchaser Plaintiffs and the Vitafoam Defendants have engaged in arm's-length negotiations of the terms of this Agreement, as defined below;

WHEREAS, the Direct Purchaser Plaintiffs and the Vitafoam Defendants have entered into a Cooperation Agreement;

WHEREAS, Direct Purchaser Plaintiffs have concluded, after preliminary discovery and investigation of the facts and after considering the circumstances of the Class Action and the applicable law, as well as the value of the Vitafoam Defendants' cooperation to the Direct Purchaser Plaintiffs in seeking relief in the Class Action, that it is in the best interests of the Settlement Class to enter into this Agreement with the Vitafoam Defendants to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the

Settlement Class, and, further, that this Settlement is fair, reasonable, adequate, and in the best interests of Direct Purchaser Plaintiffs and the Settlement Class;

WHEREAS, the Vitafoam Defendants wish to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the Class Action be settled and compromised, and dismissed on the merits with prejudice as to the Vitafoam Defendants, subject to Court approval:

1. Definitions. The following terms shall have the following meanings for purposes of this Agreement.

   a. "Adjusted Net Proceeds" means an amount that is 75 percent of the Net Proceeds, provided that the Adjusted Net Proceeds shall be no less than a minimum of $4 million (even if the Net Proceeds are $0) and no more than a maximum of $10 million, regardless of the size of the recovery in the Urethane Litigation.

   b. "Agreement" means this Settlement Agreement.

   c. "Class Action" means the consolidated proceedings entitled, *In re: Polyurethane Foam Antitrust Litigation*, No. 1:10-md-02196-JZ, pending in the United States District Court for the Northern District of Ohio.

   d. "Class Member" means any person or entity that is a member of the Settlement Class.

   e. "Class Period" means January 1, 1999 to August 2010.

   f. "Complaint" means the Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint filed in the Class Action on February 28, 2011, as may be amended from time to time.

g. "Cooperation Agreement" means the "ACPERA Cooperation Agreement, *In re Polyurethane Foam Antitrust Litigation*, No. 10-md-2196 (N.D. Ohio)" executed by counsel for the Vitafoam Defendants on July 8, 2011 and Direct Purchaser Plaintiffs' Interim Co-Lead Counsel on July 6, 2011 and July 7, 2011, respectively. The Cooperation Agreement has been attached hereto as Exhibit A.

h. "Court" means the United States District Court for the Northern District of Ohio.

i. "Defendants" mean the defendants in the Class Action.

j. "Direct Purchaser Plaintiffs" means all persons or entities that purchased flexible polyurethane foam in the United States directly from a Defendant or Co-Conspirator from January 1, 1999 to August 2010.

k. "Escrow Account" means the escrow account established to receive and maintain funds contributed on behalf of the Vitafoam Defendants for the benefit of the Settlement Class.

l. "Escrow Agreement" means that certain agreement by and among the Vitafoam Defendants, a bank designated to hold the Escrow Account, and Direct Purchaser Plaintiffs, pursuant to which the Escrow Account is established and funded.

m. "Final Approval" means the first date upon which both of the following conditions shall have been satisfied:

   i. Entry has been made of the final judgment of dismissal with prejudice as to the Vitafoam Defendants substantially in a form to be agreed to by the Parties; and

   ii. Either (1) thirty days have passed from the date of the Court's entry of final judgment as described in subparagraph (i) hereof with no notice of appeal having been filed with the Court; or (2) such final judgment has been affirmed



ARN
WO2
W

by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of the Court's judgment has expired.

n. "Net Proceeds" means an amount equal to any future recovery by the Vitafoam Released Parties in the Urethane Litigation, net of any outside attorneys' fees and outside attorneys' costs or expenses if provided for in Vitafoam's retainer agreement with counsel for the Urethane Litigation and deducted from the amount actually received by the Vitafoam Released Parties.

o. "Non-Settling Defendant" means any defendant in the Class Action other than the Vitafoam Defendants or British Vita Unlimited.

p. "Preliminary Approval" means a finding by the Court pursuant to Federal Rule of Civil Procedure 23(e) that the Agreement appears to fall within the range of possible approval such that notice to the Settlement Class of the proposed settlement is appropriate.

q. "Released Claims" shall have the meaning set forth in paragraph 11 of this Agreement.

r. "Releasing Parties" shall refer individually and collectively to Direct Purchaser Plaintiffs and all Class Members, on behalf of themselves and any person or entity claiming by or through them as an heir, administrator, devisee, predecessor, successor, parent, subsidiary, representative of any kind, shareholder, partner, director, owner of any kind, affiliate, assignee, agent, employee, contractor, attorney, or insurer.



s. "Settlement" means the settlement of the Class Action with respect to the Vitafoam Released Parties, as set forth in this Agreement.

t. " Settlement Class" means all Direct Purchaser Plaintiffs that purchased flexible polyurethane foam in the United States directly from a Defendant or Co-conspirator from January 1, 1999 to August 2010. Excluded from the Settlement Class are 1) defendants and co-conspirators and their respective parents, subsidiaries, and affiliates and 2) any Direct Purchaser who timely elects to be excluded from this settlement.

u. "Settlement Funds" means the payments made by the Vitafoam Defendants pursuant to this Agreement, including any interest accrued on such payments.

v. "Urethane Litigation" means the consolidated proceedings entitled, *In re: Urethane Antitrust Litigation*, No. 2:04-md-01616-JWL-JPO, pending in the United States District Court for the District of Kansas.

w. "Vitafoam Defendants" means defendants Vitafoam, Inc. and Vitafoam Products Canada Limited.

x. "Vitafoam Released Parties" means the Vitafoam Defendants and their direct and indirect parents, subsidiaries, and affiliates, and their respective present and former officers, directors, employees, managers, agents, and legal representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with the Vitafoam Defendants, and includes, but is not limited to, British Vita Unlimited.

2. Reasonable Best Efforts to Effectuate this Settlement. The Parties shall recommend approval of this Agreement by the Court. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts contemplated by this Agreement and such other steps and efforts which are consistent with this Agreement that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

3. Motion for Preliminary Approval. As soon as practicable, and in no event later than 14 days after the execution of this Agreement, unless otherwise extended by written agreement of the Parties, Direct Purchaser Plaintiffs shall submit to the Court a motion for preliminary approval of this Agreement and certification of the Settlement Class. The Parties shall take all reasonable actions as may be necessary to obtain preliminary approval of the Settlement and certification of the Settlement Class.

4. Motion for Final Approval and Entry of Final Judgment. If the Court preliminarily approves this Agreement and certifies the Settlement Class, Direct Purchaser Plaintiffs shall submit a motion for final approval of this Agreement by the Court, after notice to the Settlement Class, which notice period shall be no less than 90 days, and shall seek entry of an order and final judgment:

   a. finally approving the Settlement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing the execution of the Settlement pursuant to the terms and conditions set forth in this Agreement;

   b. dismissing the Class Action with prejudice as to the Vitafoam Defendants;





c. discharging and releasing the Vitafoam Released Parties from all Released Claims; and

d. reserving continuing and exclusive jurisdiction over the Settlement for all purposes – including its administration and execution and disputes that may arise concerning the Vitafoam Defendants' cooperation.

The Parties shall take all reasonable steps to obtain final approval of the Settlement.

5. Escrow Account. The Escrow Account will be established and shall be administered by Direct Purchaser Plaintiffs under the Court's continuing supervision and control pursuant to the Escrow Agreement. No disbursements of funds from the Escrow Account will occur without order of the Court.

6. Settlement Consideration. Subject to the provisions hereof, and in consideration of the full, complete, and final settlement of the Class Action as to the Vitafoam Released Parties (including Direct Purchaser Plaintiffs' fees, disbursements, expenses and costs of any kind as may be awarded by the Court on behalf of the Settlement Class) as provided herein, the Vitafoam Defendants will cause the following payments to be made into the Escrow Account for the benefit of the Settlement Class, and the Vitafoam Defendants will continue to provide cooperation pursuant to the Cooperation Agreement.

a. **Initial Payments.** A payment shall be paid into the Escrow Account on behalf of the Vitafoam Defendants in an amount equal to $1 million within 10 business days of the execution of this Agreement by the Parties. Another payment shall be paid into the Escrow Account on behalf of the Vitafoam Defendants in an amount equal to $4 million within 10 business days of entry of the final judgment of dismissal with





prejudice as to the Vitafoam Defendants substantially in a form to be agreed to by the Parties.

b. **Adjusted Net Proceeds.** The Vitafoam Defendants shall make one or more additional payment(s) into the Escrow Account in an aggregate amount equal to the Adjusted Net Proceeds. With respect to the timing of such payment(s), within 10 business days from the Vitafoam Defendants' actual receipt of all or a portion of the Net Proceeds, a payment of 75 percent of such amount received by the Vitafoam Defendants shall be paid into the Escrow Account, provided, however, that the Vitafoam Defendants will have no obligation to pay to pay into the Escrow Account more than a total of $10,000,000 to satisfy the requirements of this paragraph 6(b). If upon the final conclusion of the Urethane Litigation as to all defendants against whom the Vitafoam Defendants, or any of them, have made claims as of the date of this agreement, including the disposition by Final Approval of such claims in the Urethane Litigation (the "Final Conclusion of the Urethane Litigation"), the total of the Vitafoam Defendants' payments, pursuant to terms of this paragraph 6(b) of the Adjusted Net Proceeds to the Escrow Account totals less than $4,000,000, then, within 10 days of the Final Conclusion of the Urethane Litigation, the Vitafoam Defendants shall make a further payment into the Escrow Account in an amount equal to the difference between $4,000,000 and the prior payments of the Adjusted Net Proceeds.

c. **Entire Payment.** The Initial Payments and the Adjusted Net Proceeds constitute the entire payment due from the Vitafoam Defendants under this Agreement.





d. **Cooperation.** The Vitafoam Defendants' cooperation with the Direct Purchaser Plaintiffs shall continue to be governed by the Cooperation Agreement. For the avoidance of doubt, nothing in this Agreement shall affect the application of the Antitrust Criminal Penalty Enhancement Reform Act of 2004 ("ACPERA") to the Vitafoam Defendants.

7. Material Breach. The Vitafoam Defendants agree that a material breach of this Agreement will have occurred if the Vitafoam Defendants intentionally fail to comply with the terms of this Agreement, including the Vitafoam Defendants' obligations pursuant to the Cooperation Agreement.

8. Qualified Settlement Fund. The Escrow Account is intended by the Parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of the Vitafoam Defendants, a "relation back election" as described in Treas. Reg. §1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Parties shall take all appropriate actions as may be necessary to this end. The Vitafoam Defendants shall not be responsible for the filing or payment of any taxes or expenses connected to the qualified settlement fund.

9. Class Action Notice and Administrative Costs. Notice of this Settlement to the Settlement Class may be combined with notice of certification of the Settlement Class. It is understood that the content of such notices will be as agreed by the Parties and approved by the Court. The Vitafoam Defendants shall use their best efforts to provide the names and





addresses of all known Class Members who were purchasers of flexible polyurethane foam during the Class Period (in electronic format when available). After Final Approval has been obtained, and the Vitafoam Defendants' right of rescission under paragraph 13 cannot be exercised or has been waived, and with Court approval, all reasonable costs and expenses associated with printing, mailing, and publication of such notice and with administering the Settlement, including without limitation, costs and expenses associated with the Escrow Account, the filing of tax returns and payment of taxes may be paid out of the Settlement Funds as specified in the Escrow Agreement.

10. Distribution of Settlement Funds. Members of the Settlement Class who have not timely excluded themselves from the Class Action shall be entitled solely to the Settlement Funds for settlement and satisfaction against the Vitafoam Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the Vitafoam Defendants. Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Funds or any portion thereof. Direct Purchaser Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Funds for all expenses including, but not limited to, the costs of notice of the Settlement to Class Members. The Vitafoam Defendants shall not be liable for any costs, fees, or expenses of any of Direct Purchaser Plaintiffs' respective attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Funds. If the Court grants Final Approval of this Settlement Agreement pursuant to the provisions of paragraph 4, and the Vitafoam Defendants' right of rescission under paragraph 13 cannot be exercised or has been waived, Direct Purchaser Plaintiffs,

with Court approval, may use the Settlement Funds to pay such costs and expenses for the litigation of this Class Action as set forth in this paragraph.

11. Release. Upon Final Approval, each Class Member or Releasing Party who has not validly excluded itself from the Settlement Class shall release and forever discharge the Vitafoam Released Parties and the Vitafoam Defendants shall release and forever discharge Direct Purchaser Plaintiffs, from any and all causes of action, equitable or legal claims, damages, losses, penalties, liabilities, and remedies of any kind whatsoever, including costs and attorney's fees, in law or equity, known or unknown, asserted or unasserted, arising out of or related to the Class Action, including, without limitation, the allegations in the Complaint, from the beginning of time to Final Approval ("Released Claims"). The Releasing Parties further agree that they will not file any other suit against the Vitafoam Released Parties arising out of or relating to the Released Claims. The Vitafoam Defendants further agree that they will not file any suit against Direct Purchaser Plaintiffs arising out of or relating to the Released Claims.

12. Reservation of Claims. The Parties intend by this Agreement to release only the Vitafoam Released Parties and Direct Purchaser Plaintiffs with respect to the Released Claims. The Parties specifically do not intend this Agreement, or any part hereof or any other aspect of the proposed Settlement, to compromise or otherwise affect in any way any rights the Direct Purchaser Plaintiffs and any Class Member have or may have against any other person, firm, association, or corporation whatsoever, including, but not limited to the defendants in the Class Action, other than the Vitafoam Released Parties. The release set forth in paragraph 11 above is not intended to and shall not release any claims other than the Released Claims.

13. Opt Out Protection. This Agreement is subject to rescission at the sole option of the Vitafoam Defendants if Class Members representing a certain percentage of flexible polyurethane foam purchases from the Vitafoam Defendants during the Class Period (the "Opt Out Percentage") opt out of the Settlement and bring suit on the Released Claims against any of the Vitafoam Released Parties on or before 60 days after Final Approval. The Opt Out Percentage is being submitted concurrently herewith in a filing to be made under seal with the Court.

14. Effect of Disapproval and Rescission Under Paragraph 13. If the Court does not certify the Settlement Class as defined in this Agreement, or if the Court does not approve this Agreement in all material respects, or if the Court does not enter a final judgment as provided for in paragraph 4, or if any judgment approving this Agreement is set aside on appeal or if the Vitafoam Defendants rescind the Agreement pursuant to paragraph 13, then this Agreement may be cancelled and terminated:

    a. solely by the Vitafoam Defendants with respect paragraph 13, or

    b. otherwise by the Vitafoam Defendants or Direct Purchaser Plaintiffs on behalf of the Settlement Class.

If cancelled and terminated, this Agreement shall become null and void, and the Settlement Funds, net of escrow fees and taxes, shall be returned to the Vitafoam Defendants within 10 days of such termination. The Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Agreement.

15. Consent to Jurisdiction. The Vitafoam Defendants and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of

this Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of paragraph 11, including but not limited to, any suit, action, or proceeding in which the provisions of paragraph 11 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Agreement. In the event that the provisions of paragraph 11 are asserted by any Vitafoam Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Vitafoam Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Class Members and the Vitafoam Defendants irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

16. Resolution of Disputes and Retention of Jurisdiction. Any disputes between the Vitafoam Defendants and any Class Member concerning this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation, enforcement, and administration of this Agreement.

17. Costs Relating to Administration. The Vitafoam Defendants shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.



18. Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Class Members, the Releasing Parties, and the Vitafoam Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval of the Settlement, each and every covenant and agreement herein by the Direct Purchaser Plaintiffs shall be binding upon all Class Members and Releasing Parties who have not validly excluded themselves from the Settlement Class.

19. Sole Remedy. This Agreement shall provide the sole and exclusive remedy for any and all Claims released against any Vitafoam Released Party, and upon entry of the final judgment order by the Court, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Claims released against any Vitafoam Released Party.

20. No Third-Party Beneficiaries. Except as expressly provided in this Agreement, this Agreement does not create, and shall not be construed as creating, any rights enforceable by any person, partnership, corporation, or other entity that is not a party to this Agreement.

21. Authorization to Enter this Agreement. The undersigned representative of the Vitafoam Defendants covenants and represents that such representative is fully authorized to enter into and to execute this Agreement on behalf of the Vitafoam Defendants. Direct Purchaser Plaintiffs' Interim Co-Lead Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the putative Settlement Class and upon Final Approval will be fully authorized to enter into and execute the Agreement on behalf of the Settlement Class. The Parties further acknowledge that this





Agreement represents the entire agreement by and between them and that each makes no other representation or warranty upon which the other can rely other than as stated herein.

22. Notices. All notices under this Agreement shall be in writing. Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier and, in the case of either (a), (b) or (c) shall be addressed, if directed to Direct Purchaser Plaintiffs or any Class Member, to:

William A. Isaacson, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Phone: 202-237-5607
Fax: 202-237-6131

Stephen R. Neuwirth
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Phone: 202-849-7165
Fax: 212-849-7100

if directed to the Vitafoam Defendants:

Timothy J. Coleman
Freshfields Bruckhaus Deringer US LLP
701 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20004
Phone: (202) 777-4500
Fax: (202) 777-4555

or such other address as Direct Purchaser Plaintiffs' Interim Co-Lead Counsel or the Vitafoam Defendants may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

23. No Admission. Whether or not this Agreement becomes final or is terminated pursuant to paragraphs 13 or 14 hereof, the Parties expressly agree that this Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Vitafoam Released



ARN
wap
M

Parties. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408.

24. Intended Beneficiaries. No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Class Member, a Vitafoam Released Party, or Direct Purchaser Plaintiffs' Interim Co-Lead Counsel (on behalf of the Settlement Class and with respect to fees and disbursements to be paid from the Settlement Fund pursuant to Court order).

25. No Party is the Drafter. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

26. Choice of Law. All terms of this Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of Ohio, without regard to its choice of law or conflict of laws principles.

27. Amendment and Waiver. This Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree

that the Parties may immediately seek enforcement of this Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

28. Execution in Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.

29. Integrated Agreement. This Agreement, together with the Cooperation Agreement incorporated by reference herein, comprise the entire agreement between the Parties and the terms of this Agreement and the Cooperation Agreement are contractual and are not a mere recital. The Parties agree that this Agreement and the Cooperation Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Agreement and/or the Cooperation Agreement not in writing and signed by the Parties.



IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Agreement on the date first above written.

Dated: October 19, 2011

William A. Isaacson, Esq.
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Phone: 202-237-5607
Fax: 202-237-6131

Stephen R. Neuwirth
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Phone: 202-849-7165
Fax: 212-849-7100

*Direct Purchaser Plaintiffs' Interim Co-Lead Counsel*

10/25/11

Timothy J. Coleman
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004-2692
Phone: (202) 777-4500
Fax: (202) 777-4555
E-mail: tim.coleman@freshfields.com

*Attorney for Defendants Vitafoam, Inc. and Vitafoam Products Canada Limited*