UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) ) |
| This document relates to: | ) ) |
| All Direct Purchaser Class Cases | ) ) ) |

MDL Docket No. 2196

Index No. 10MD2196(JZ)

**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS'
RESPONSE AND REQUEST FOR STAY OF DIRECT PURCHASERS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**<u>INTRODUCTION</u>**

Direct Purchaser Class Plaintiffs have moved for preliminary approval of a settlement with Vitafoam, Inc. and Vitafoam Products Canada, Limited (collectively "Vitafoam"). In light of the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), as well as a number of prior cases, including *Amchem Products v. Windsor*, 521 U.S. 591 (1997), and *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008), Defendants[1] respectfully suggest that no *settlement* class should be considered or approved in advance of the Court's formal consideration of a *litigation* class. Defendants submit this response to Plaintiffs' motion for approval of a settlement class, not to argue the merits of the proposed class—there is too little factual development at this time to argue the merits—but

---

[1] Defendants Carpenter Co., E.R. Carpenter, L.P., Carpenter Holdings, Inc., Hickory Springs Manufacturing Company, Future Foam, Inc., Leggett & Platt, Inc., Otto Bock Polyurethane Technologies, Inc., Flexible Foam Products, Inc., FXI - Foamex Innovations, Inc., Plastomer Corporation, Mohawk Industries, Inc., Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc. join this Response and Request for Stay.

simply to point out some of the problems inherent in approval of a settlement class at this early stage of the litigation and to urge the Court to defer consideration of the proposed settlement class until such time as it addresses the adversarial litigation class issues pursuant to the timetable established in the Scheduling Order in this case.

## ARGUMENT

1. **Classes Certified for Settlement Must Meet the Same Standards as Any Other Class, and Face Heightened Scrutiny in These Circumstances**

At least since the Supreme Court's decision in *Amchem*, a court considering certification of a settlement class is required not only to go through the same analysis required for certification of a litigation class, but to do so with "heightened attention," in order to protect absentee class members by blocking unwarranted or overbroad class definitions. 521 U.S. at 620.[2] Simply put, the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy of representation, as well as the crucial Rule 23(b) elements of predominance and superiority, must be met. *Id*. at 621.[3] And, as the Supreme Court recently confirmed, the evidentiary basis for each of these elements must be proven by Plaintiffs *as a matter of fact. Wal-Mart*, 131 S. Ct. at 2551.[4]

---

[2] When a proposed settlement concludes the litigation, a court need not consider the issues of Rule 23(b)(3)(D) "manageability" for trial. *Amchem*, 521 U.S. at 620. Arguably, at least, a "partial" settlement class would require the Court to address manageability issues as well, and certainly to address issues of the manageability of the proposed settlement.

[3] Even before *Amchem*, courts were uniform in concluding not only that there is no diminished standard for approval of a settlement class, *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778, 798 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) (hereinafter *In re GMC*), but that a heightened level of scrutiny must be applied to class issues when an adversarial litigation class has not been certified. *See id.* at 799 n.21 ("Indeed, if any difference in standards is warranted, pre-certification settlement may raise the adequacy of representation standard.") & 805 ("We affirm the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified.").

[4] Courts in this District have followed *In re GMC* in evaluating the propriety of class settlements, including application of the nine-factor test from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). *See, e.g.*, *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379–80 (N.D. Ohio 2001).

As the Manual for Complex Litigation also notes, there is no such thing as preliminary "approval" of a settlement. *See* MCL 4th § 13.14 (judge reviews proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55 (D. Me. 2006) (Rule 23 does not provide for "preliminary approval" or a "preliminary fairness determination"); *Hydrogen Peroxide*, 552 F.3d at 316–17. Rather, Plaintiffs bear the burden of proof to demonstrate factually, by a preponderance of the evidence, that Rule 23's requirements have been satisfied, *Hydrogen Peroxide*, 552 F.3d at 316–17, and the Court's inquiry into the factual underpinnings of Plaintiffs' claim that Rule 23's requirements have been met likely will overlap with its considerations of the merits of the case. *See Wal-Mart*, 131 S. Ct. at 2551–52 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *Hydrogen Peroxide*, 522 F.3d at 316–17; *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001).

In this case essentially no discovery has taken place, and no factual record has been developed. While discovery requests have been served and the parties have engaged in extended negotiations over the scope of discovery, few documents have been produced and no depositions have been noticed, much less taken. The Court also has deferred any decision on Defendants' requests for downstream discovery, discovery which has been found crucial to class certification issues. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1192, 1195 (11th Cir. 2003). Consequently, information fundamental to such basic questions as the proper scope and definition of the class and the ability of any named putative class representative to represent the class adequately have not been tested in any respect. The final amount of the proposed settlement, moreover, cannot even be determined until the conclusion of the *Urethanes* litigation, which could be months or years distant.

The proposed settlement the Court is being asked to consider does not itself include *any* factual information. There is no description of the relevant product market(s), the types of foam products allegedly purchased by proposed class representatives, or the purposes for which such products are used. Plaintiffs' motion does not even include basic facts such as the products Vitafoam manufactures and sells and the geographic locations in which it sells them. There simply is no basis on which the Court could make the necessary conclusions that an appropriate class has been or could be adequately identified or notified, whether issues common to the class would predominate over individualized issues, whether individual impact to class members can be demonstrated by common proof, or even how putative settlement class members could determine what they would receive under the proposed settlement in order to make an informed decision whether to opt out. These and a host of other questions would have to be answered in order to avoid approving a settlement class that would violate the due process rights of absentee putative class members, and which ultimately could not be certified as a litigation class.

It is plainly not enough for Plaintiffs to offer assurances that it intends or plans to meet the requirements or that "solutions" will be found. *See Hydrogen Peroxide*, 552 F.3d at 318. Plaintiffs have an obligation *at this juncture* to demonstrate that each of Rule 23's elements can be satisfied and that the class they propose can and should be legitimately certified.

**2.   "Conditional" Certification of the Settlement Class Is Not Available Under the Federal Rules**

The "conditional certification" of a settlement class that Plaintiffs request is, in fact, not even currently available under the Federal Rules of Civil Procedure, let alone "appropriate" in this case, as Plaintiffs urge. Pls.' Br. at 14–15. Plaintiffs claim that "[r]equests for conditional certification 'typically result[] in conditional certification of a representative class.'" *Id.* (quoting *Steele v. SWS, LLC*, No. 3:11-CV-60, 2011 U.S. Dist. LEXIS 83191, at *7 (E.D. Tenn. June 24,

4

2011) & citing *Miller v. Jackson*, No. 3:10-1078, 2011 U.S. Dist. LEXIS 29011 (M.D. Tenn. Mar. 21, 2011)). However, *Steele* and *Miller* were not class actions, at all, but instead *collective* actions brought pursuant to the statutory mechanism provided by § 216(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19 ("FLSA"), which are "different from a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure." *Steele*, 2011 U.S. Dist. LEXIS 83191, at *6; *accord Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (distinguishing statutory FLSA collective actions from Rule 23 class actions).

The December 2003 amendments to the Federal Rules of Civil Procedure, moreover, "eliminated the language that had appeared in Rule 23(c)(1) providing that a class certification 'may be conditional.'" *Hydrogen Peroxide*, 552 F.3d at 319. As the Third Circuit noted:

> The Standing Committee on Rules of Practice and Procedure advised [in connection with the 2003 amendments that] "[t]he provision for conditional class certification is deleted to avoid the unintended suggestion, which some courts have adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied."

*Id.* at 319–20 (quoting *Report of the Judicial Conference Committee on Rules of Practice and Procedure to the Chief Justice of the United States and Members of the Judicial Conference of the United States* 12 (2002)). Consequently, "[w]hile these amendments do not alter the substantive standards for class certification, they guide the trial court in its proper task—to consider carefully all relevant evidence and make a *definitive* determination that the requirements of Rule 23 have been met before certifying a class." *Id.* at 320 (emphasis added); *accord In re IPO Sec. Litig.*, 471 F.3d 24, 39 (2d Cir. 2006).

The additional cases Plaintiffs cite in support of their request for conditional certification of a settlement class are equally inapposite, for at least two independent reasons. First, they all antedate the elimination of such conditional certification from Rule 23, and, in any case, do not appear to address in detail the issue of conditional certification. *See In re Vitamins Antitrust*

*Class Actions*, 327 F.3d 1207 (D.C. Cir. 2003); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002); *Marcus v. Dep't of Revenue*, 206 F.R.D. 509 (D. Kan. 2002); *see also DeJulius v. New England Health Care Emps.' Pension Fund*, 429 F.3d 935, 939 (10th Cir. 2005) (indicating that the district court conditionally certified a settlement class on October 29, 2003—i.e., prior to the effective date of the amendment eliminating conditional certifications); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814–15 (6th Cir. 2004) (settlement class conditionally certified on January 3, 2003); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 526 (3d Cir. 2004) (settlement class conditionally certified on August 1, 2001).

Second, these cases appear to have involved *global* settlements on behalf of all defendants and therefore are of limited relevance to the procedural posture confronting the Court in this case: namely, a request to certify a settlement class with respect to *one* Defendant while *other* Defendants are proceeding to class certification for purposes of merits discovery, summary judgment, and, if necessary, trial.

### 3. Rule 23 of the Federal Rules of Civil Procedure

*Amchem*, 521 U.S. at 621–22, reaffirmed that the courts are bound to enforce Rule 23's criteria, and that the courts lack authority to substitute other criteria for certification of class actions. The analysis under Rule 23 is rigorous, *Falcon*, 457 U.S. at 161, and the party seeking class certification has the burden of proving the *facts* necessary to show certification is appropriate—this is not a "threshold" showing, but a full factual airing and a determination by the Court that each of Rule 23's elements has been met. *Wal-Mart*, 131 S. Ct. at 2548–49, 2551–52; *Hydrogen Peroxide*, 552 F.3d at 309–10. "Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *Wal-Mart*, 131 S. Ct. at 2551; *Hydrogen Peroxide*, 552 F.3d at 309.

6

Because Rule 23 is a substantive requirement, not a pleading rule, a court must "probe behind the pleadings" to determine whether plaintiffs have sustained their burden of proving by a preponderance of the evidence that each of Rule 23's requirements has been satisfied. *Wal-Mart*, 131 S. Ct. at 2251. More specifically, a "district court must resolve all factual or legal disputes, touching on the elements of the cause of action," including resolving disputes between opposing experts. *Hydrogen Peroxide*, 552 F.3d at 307.[5] While the trial court has discretion whether to certify a class, that discretion can only be exercised within the framework of Rule 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Hydrogen Peroxide*, 552 F.3d at 310.

Defendants do not believe that Plaintiffs have met, or can meet, their burden under Rule 23.

**4.    There Already Is a Schedule for Developing the Factual Record and Deciding Class Certification**

Defendants do not believe it meets the due process rights of absent class members or Defendants for the Court to determine the issue of class certification on the sparse factual record before it.[6] The Court already has established a schedule to address class certification. That timetable—which begins in little more than five months[7]—was established to allow sufficient discovery in advance of the certification decision and was requested specifically by *Plaintiffs*. Plaintiffs are now asking the Court to make essentially the same determinations with respect to a settlement class without even a partially developed record. Not surprisingly, the only "evidence"

---

[5] The Supreme Court in *Wal-Mart* did not reach the issue of whether expert testimony at the class certification stage must satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), but it did comment on the district court's holding that *Daubert* did not apply by saying: "We doubt this is so." *Wal-Mart*, 131 S. Ct. at 2554.

[6] Although Defendants do not believe it is proper for the Court, on the factual record before it, to consider certification of the settlement class requested by Plaintiffs, even without a fully developed factual record, Defendants could, if the Court desires, point to specific failures by Plaintiffs to meet their burden.

[7] Joint Scheduling Order (ECF No. 112) ¶ 6.

provided in support of their motion are conclusory recitations of the Rule 23 requirements: nothing else could be provided, as there has been little document discovery, no analysis of transactional data, and no depositions.

If there were any uncertainty about what showing is required to certify a class before the decision in *Wal-Mart*, it now is clear that nothing less than a full factual airing is required.  *See Wal-Mart*, 131 S. Ct. at 2541; *Amchem*, 521 U.S. at 591.  There simply is no way to satisfy *Wal-Mart*'s "proof in fact" standard, however, from a non-existent factual record.

Plaintiffs have offered no justification for seeking approval of a settlement class in advance of the schedule established for determining whether a litigation class can be certified other than the claim that what they characterize as an "ice-breaker" settlement might produce greater cooperation from Vita.  However, Vita already has an obligation to cooperate with Plaintiffs in this litigation.  In order to obtain the protections against treble damages and joint and several liability offered by the Antitrust Criminal Penalties Enhancement and Reform Act of 2004, 111 Pub. L. 190, 124 Stat. 1275 ("ACPERA"), Vita must cooperate with Plaintiffs.  If it does not, it will not qualify for the ACPERA protections.  Moreover, nothing in ACPERA overrules Rule 23 or allows a court to deviate from the rigorous factual analysis required by *Amchem* and *Wal-Mart*.  Without facts, that factual analysis simply is not possible.

As many courts have recognized, class certification motions have pivotal status in large-scale litigation and should not be decided lightly:

> denying or granting class certification is often the defining moment in class actions (for it may sound the "death knell" of the litigation on the part of plaintiffs, or create unwarranted pressure to settle non-meritorious claims on the part of defendants). . . . In some cases, class certification "may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability."  Accordingly, the potential for unwarranted settlement pressure "is a factor we weigh in our certification calculus."  The Supreme Court recently cautioned that certain antitrust class actions may present

8

prime opportunities for plaintiffs to exert pressure upon defendants to settle weak claims.

*Hydrogen Peroxide*, 552 F.3d at 310 (internal citations omitted). Concern with ill-considered class certifications by state courts, in fact, was the primary motivation for enactment of the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 & 1711–15 ("CAFA").

Courts have long recognized that class settlements before certification are fraught with problems. *See In re GMC*, 55 F.3d at 786–800. There simply is less information on the membership of the class, on the size of potential claims, on the strengths and weaknesses of the case, and on how class members will benefit from the settlement. *Id*. at 788–89 (citing, *inter alia*, MCL 2d § 30.45, at 243–44). Putative class members cannot fairly evaluate whether or not a settlement represents a superior alternative to litigation when they have so little information, and neither can the Court. *Id*.

Consequently, Defendants urge the Court to stay consideration of the settlement class until class certification issues can be evaluated on a full record. There is no reason to rush into the class certification process, particularly since much of the settlement recovery Plaintiffs are asking the Court to consider will not even be determined until the conclusion of the *Urethanes* litigation. Pls.' Br. at 12. Considering this matter in parallel with already scheduled class certification proceedings would allow for proper development of the record and full consideration of the issues. As the *Hydrogen Peroxide* court cautioned:

> The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later—by a motion for summary judgment under Rule 56, and if necessary by trial. By contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional).

352 F.3d at 317 (quoting *Szabo*, 249 F.3d at 675–76).

## **CONCLUSION**

Defendants recognize that Plaintiffs' proposed order purports to protect Defendants from the detrimental effects of this Court certifying a settlement class on the record before it:

> The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of the rights of any defendants to contest certification of any other class proposed in these consolidated actions. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in these actions or on the Court's rulings concerning any defendant's motion; and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any defendant's motion.

ECF No. 293-5 at 4. However, as the analysis the Court must undertake is the same for a potential future litigation class as it is for the settlement class Plaintiffs now propose, Defendants cannot help but be concerned that any decision the Court makes now on class certification will impact any decision this Court may make in the future regarding a litigation class. Accordingly, Defendants respectfully request that the Court stay any consideration of preliminary approval of the settlement until the class certification issues can be considered in parallel with the timetable already established for class certification under the Court's Scheduling Order in this matter.

Dated: November 14, 2011               Respectfully submitted,


/s/ James H. Walsh                              /s/ Kendall Millard
James H. Walsh                                  Kendall Millard
Howard Feller                                   BARNES & THORNBURG, LLP
Bethany Lukitsch                                11 South Meridian Street
MCGUIREWOODS LLP                                Indianapolis, IN 46204-3535
One James Center                                Phone: (317) 231-7461
901 East Cary Street                            Fax:   (317) 231-7433
Richmond, VA 23219-4030                         kmillard@btlaw.com
Phone: (804) 775-4356
Fax:   (804) 698-2200                           /s/ Michael D. Mustard
jwalsh@mcguirewoods.com                         Michael D. Mustard
hfeller@mcguirewoods.com                        BARNES & THORNBURG LLP
blukitsch@mcguirewoods.com                      600 One Summit Square
                                                Fort Wayne, IN 46802-3119
*Counsel for Carpenter Co., E.R.*               Phone: (260) 423-9440
*Carpenter, L.P., and Carpenter Holdings,*      Fax:   (260) 424-8316
*Inc.*                                          mmustard@btlaw.com

                                                *Counsel for Flexible Foam Products, Inc.*


/s/ Frank A. Hirsch, Jr.                        /s/ Edward G. Warin
Frank A. Hirsch, Jr.                            Edward G. Warin
Matthew P. McGuire                              John P. Passarelli
ALSTON & BIRD LLP                               KUTAK ROCK LLP
4721 Emperor Blvd.                              1650 Farnam Street
Suite 400                                       Omaha, NE 68102
Durham, NC 27703                                Phone: (402) 346-6000
Phone: (919) 862-2200                           Fax:   (402) 346-1148
Fax:   (919) 852-2260                           edward.warin@kutakrock.com
frank.hirsch@alston.com                         john.passarelli@kutakrock.com
matt.mcguire@alston.com

*Counsel for Hickory Springs*                   *Counsel for Future Foam, Inc.*
*Manufacturing Company*

/s/   Francis P. Newell
Francis P. Newell
Peter M. Ryan
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone:  (215) 665-2118
Fax:     (215) 665-2013
fnewell@cozen.com
pryan@cozen.com

*Counsel for FXI - Foamex Innovations, Inc.*

/s/   Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Erica F. Ghali
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone:  (404) 881-7000
Fax:     (404) 881-7777
randall.allen@alston.com
teresea.bonder@alston.com
erica.ghali@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/   Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone:  (513) 381-2838
Fax:  (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone:  (816) 559-2227
jrebein@shb.com

*Counsel for Leggett & Platt, Inc.*

/s/   Richard A. Duncan
Richard A. Duncan
Emily E. Chow
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh St.
Minneapolis, MN 55402-3901
Phone:  (612) 766-7000
Fax:     (612) 766-1600
rduncan@faegre.com

Robert A. Bunda
Theresa R. DeWitt
BUNDA STUTZ & DEWITT PLL
3295 Levis Commons Boulevard
Perrysburg, OH  43551
Phone: (419) 241-2777
Fax:     (419) 241-4697
rabunda@bsd-law.com
trdewitt@bsd-law.com

*Counsel for Otto Bock Polyurethane Technologies, Inc.*

12

/s/   Sheldon Klein
Sheldon Klein
BUTZEL LONG
Stoneridge West
4100 Woodward Ave.
Bloomfield Hills, MI 48304
Phone:  (248) 258-1414
Fax:      (248) 258-1439
klein@butzel.com


*Counsel for Plastomer Corporation*

/s/   Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax:    (213) 229-6919
dsawnson@gibsondunn.com

Cynthia Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone:  (202) 530-8500
Fax:      (202) 530-9651
crichman@gibsondunn.com
jchesley@gibsondunn.com


*Counsel for Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Bethany G. Lukitsch
Bethany G. Lukitsch
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4711
Fax: (804) 698-2261
blukitsch@mcguirewoods.com

\34990865.1