**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196 |
| The Document Relates to: All Direct Purchaser Class Cases | Index No. 10-md-2196 (JZ) |

**REPLY MEMORANDUM IN SUPPORT OF DIRECT PURCHASERS' MOTION**
<u>**FOR PRELIMINARY APPROVAL**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

I.      NON-SETTLING DEFENDANTS HAVE NO STANDING TO REQUEST A
STAY ...............................................................................................................................2

II.     THERE IS NO PRECEDENT FOR THE REQUESTED STAY ........................................5

III.    FEDERAL POLICY STRONGLY FAVORS EARLY SETTLEMENT ...........................6

IV.    DEFENDANTS' ARGUMENTS FOR DELAY LACK MERIT .......................................9

      A.       Discovery Is Not A Prerequisite For Settlement........................................................9

      B.       The Cases Defendants Cite Do Not Support Their Assertion That
Certification Of A Settlement Class Must Await Certification Of A
Litigation Class. ...................................................................................................10

      C.       "Conditional" Certification Is A Commonplace Mechanism Used As Part
Of The Preliminary Approval And Notice Process. ...............................................13

      D.       Defendants' Arguments Regarding Final Approval Are Wholly
Speculative...........................................................................................................14

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Air Cargo Shipping Antitrust Litig.*,
2009 WL 3077396 (E.D.N.Y. 2009) .................................................................................6, 8

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................10, 11

*In re Asbestos Sch. Litig.*,
1986 U.S. Dist. LEXIS 20415 (E.D. Pa. 1986) ...................................................................3

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................................................14

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979) ........................................................................................3, 5, 14

*Berry v. School Dist. of City of Benton Harbor*,
184 F.R.D. 93 (W.D. Mich. 1998) ...................................................................................11

*Cason-Merenda v. Detroit Med. Ctr.*,
2010 U.S. Dist. LEXIS 6949 (E.D. Mich. Jan. 28, 2010) ............................................4

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...............................................................................................9

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545 (N.D. Ga. 2007) ....................................................................................3, 4

*In re Corrugated Container Antitrust Litig.*,
643 F.3d 195 (5th Cir. 1981) .........................................................................................6, 9

*Curiale v. Lenox Group, Inc.*,
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ..........................................................5

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ...............................................................................14

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ..................................................................................5

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...............................................................................................6

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995) ..................................................................................................2

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................................9

*In re First Commodity Corp. of Boston Customer Accounts Litig.*,
   119 F.R.D. 301 (D. Mass. 1987) ................................................................................5

*Franklin v. Midland Funding, LLC*,
   2011 WL 3557033 (N.D. Ohio Aug. 12, 2011) ......................................................13

*Gardner v. GC Servs., LP*,
   2011 WL 5244378 (S.D. Cal. Nov. 1, 2011) ..........................................................14

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ..................................................................................11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ................................................................................6, 10

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................9, 14

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ............................................................................10, 11

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ..............................................................................14

*Int'l Union v. Ford Motor Co.*,
   2006 WL 1984363 (E.D. Mich. July 13, 2006) ......................................................11

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................................................7, 8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................................6

*In re Marine Hose Antitrust Litig.*,
   2009 U.S. Dist. LEXIS 71020 (S.D. Fla. July 31, 2009) ..........................................3

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   236 F.R.D. 53 (D. Me. 2006) ..................................................................................12

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ..............................................................................9, 14

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ..................................................................................3

*In re Packaged Ice Antitrust Litig.*,
   2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ............................................... passim

*Pennwalt Corp. v. Plough*,
   676 F.2d 77 (3d Cir. 1982) ........................................................................................6

*In re PNC Fin. Servs. Group, Inc.*,
   440 F. Supp. 2d 421 (W.D. Pa. 2006) ...............................................................10, 14

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ....................................................................................7, 8

*Robinson v. Shelby Cty. Bd. of Educ.*,
566 F.3d 642 (6th Cir. 2009) .................................................................................................6

*Rotuna v. West Customer Mgmt. Group*,
2010 WL 2490989 (N.D. Ohio June 15, 2010)......................................................................14

*Smith v. Arthur Anderson LLP*,
421 F.3d 989 (9th Cir. 2005) .................................................................................................2

*In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*,
2001 WL 1842315 (N.D. Ohio Oct. 20, 2001) ......................................................................13

*UAW v. General Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) .............................................................................................6, 12

*In re Vitamins Antitrust Litig.*,
2001 WL 856292 (D.D.C. Jul. 25, 2001)...............................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).....................................................................................................10, 11

## Statutes

Antitrust Criminal Penalty Enforcement and Reform Act of 2004,
Pub. L. 108-237, 118 Stat. 665 (June 22, 2004) ....................................................................8

Fed. R. Civ. P. 23...........................................................................................................1, 5, 13, 14

Fed. R. Civ. P. 23(a) ..................................................................................................................15

Fed. R. Civ. P. 23(b) ...........................................................................................................10, 15

## Other Authorities

4 *Newberg on Class Actions* .......................................................................................................12

5 *Moore's Federal Practice-Civil* (3d ed. 2005) .........................................................................11

*The Manual for Complex Litigation*
(4th ed. 2004)...................................................................................................................11, 12
(3rd ed. 1999)...........................................................................................................................12

7B Wright, Miller & Cooper, *Federal Practice & Procedure* (3d ed.)............................................2

iv

Direct Purchaser Class Plaintiffs, by and through undersigned interim co-lead counsel, respectfully submit this Reply Memorandum in support of their Motion seeking preliminary approval of a settlement with Vitafoam Inc. and Vitafoam Products Canada Limited (collectively "Vitafoam"), and conditional certification of the Settlement Class.

## PRELIMINARY STATEMENT

In response to Plaintiffs' Motion for Preliminary Approval ("Motion"), (Dkt. 293), non-settling Defendants have requested a stay of both approval of the settlement and certification of a settlement class, until after the Court has determined, at some point later in the litigation, whether to certify a litigation class. (Dkt. 301.) There is no precedent for such a stay. And this is not surprising, given the decades-old federal policy favoring early class action settlements, and the obvious way such stays would discourage early settlements. Stays linking settlement approval, and certification of a settlement class, to certification of a litigation class would hold parties wishing to settle hostage to non-settling defendants who lack legal standing to challenge the settlement, but will often have a strong motive to obstruct any cooperation between plaintiffs and a settling defendant.

Early settlements of class actions are routinely approved. This is true even where substantial discovery has not yet occurred, and especially where the settling defendant has offered to provide substantial factual assistance to the plaintiffs. Settlement (and related certification of settlement classes) is permitted and, in fact, encouraged before motion practice on whether to certify a litigation class as to non-settling defendants.

Defendants have offered no legitimate reason to delay preliminary approval of the proposed settlement. Defendants' arguments do not even address the preliminary approval standards under Rule 23. And with respect to the merits of final approval (and again putting

1

aside any question of Defendants' standing), any of Defendants' arguments are as premature as they are meritless, given that any motion for final approval would only be made following notice to the class – notice that Defendants obviously seek to obstruct and delay.  *See In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) ("The Court must be skeptical of Defendants' motives [in objecting to preliminary approval] as it seems unlikely that any concerns they raise arise from any legitimate concern to protect the class.") (internal quotations omitted).

## <u>ARGUMENT</u>

## I.    NON-SETTLING DEFENDANTS HAVE NO STANDING TO REQUEST A STAY

The non-settling defendants do not have standing to seek a stay of, obstruct, or otherwise object to, the proposed settlement.  This is well-settled as a matter of law.  *See* 7B Wright, Miller & Cooper, *Federal Practice & Procedure* § 1797.4 (3d ed.) (courts typically will not consider objections by non-settling defendants, as they have no standing to object to a settlement).

For example, another court in this Circuit recently dealt with this very issue.  In the *Packaged Ice* antitrust litigation, Judge Borman of the United States District Court for the Eastern District of Michigan noted that "non-settling defendants have no standing to object to a class settlement with the settling defendants, absent a claim of legal prejudice."  *Packaged Ice*, 2010 WL 3070161, at *4, *8 (finding no basis for placing the proposed settlement on indefinite hold and concluding that the preliminary approval process should move forward).  The reason for Defendants' lack of standing is straightforward: non-settling defendants normally cannot legitimately claim to be prejudiced by a settlement.  *See, e.g., Smith v. Arthur Anderson LLP*, 421 F.3d 989, 998 (9th Cir. 2005) (general rule is that non-settling defendant lacks standing to object to settlement; the exception requires legal prejudice); *Eichenholtz v. Brennan*, 52 F.3d

478, 482 (3d Cir. 1995) (general rule is that non-settling defendants lack standing to challenge partial settlement because they are ordinarily not affected by such settlement); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 172-73 (5th Cir. 1979) (non-settling defendant not prejudiced by settlement has no standing to object); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103 n.17 (5th Cir. 1977) (same); *Packaged Ice*, 2010 WL 3070161, at *8; *In re Marine Hose Antitrust Litig.*, 2009 U.S. Dist. LEXIS 71020, at *40 (S.D. Fla. July 31, 2009) ("Significantly, however, a non-settling defendant has no standing to complain about a settlement"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 552 (N.D. Ga. 2007) (absent showing of "plain legal prejudice," non-settling defendant does not have standing to object to class settlement); *In re Asbestos Sch. Litig.*, 1986 U.S. Dist. LEXIS 20415, at *13 (E.D. Pa. 1986) (non-settling defendants' procedural allegations objecting to a proposed settlement "do not by themselves" satisfy the requirements necessary for standing to object).

Non-settling Defendants here do not identify any prejudice they would suffer as a result of the proposed settlement, let alone by preliminary approval and conditional certification of a settlement class. Just as in *Packaged Ice*, Plaintiffs' proposed order on preliminary approval protects against any prejudice:

> [T]he Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any defendant…to contest certification of any other class proposed by Plaintiffs. The Court's findings in this Final Judgment Order shall have no effect on the Court's ruling on any motion to certify any class in this litigation and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify such class.

*Packaged Ice*, 2010 WL 3070161, at *5 (internal quotations omitted).

Despite this, defendants intimate that the Court will not be able to separate its consideration of the settlement class from subsequent consideration of a litigation class. But federal courts regularly draw such distinctions and are obviously capable of doing so. *Packaged*

*Ice*, 2010 WL 3070161, at *5 (rejecting argument that approval of settlement class should await certification of litigation class to avoid danger of presumption of correctness of initial decision). In *Cason-Merenda v. Detroit Med. Ctr.*, 2010 U.S. Dist. LEXIS 6949 (E.D. Mich. Jan. 28, 2010), the Court considered a motion by non-settling defendants to stay preliminary approval pending consideration of a litigation class.  The Court denied the motion, concluding that "the Court is mindful of the distinct sets of standards that govern the pending class certification and summary judgment motions in this case, and that nothing in the preliminary approval process will prejudge or conclusively resolve the issues raised in those motions."  *Id.* at *5.[1]

In *Columbus Drywall*, 258 F.R.D. 545, with the issue of a litigation class full briefed and the motion for class certification pending, a settlement and preliminary approval motion was filed, and non-settling defendants[2] moved to stay preliminary approval of the settlement and settlement class.  The non-settling defendants there, as here, argued that the court's decision regarding a settlement class would impact a later decision regarding a litigation class.  *Id.* at 552. The non-settling defendants also argued that, although they lacked standing to object to the settlement, they still had standing to request a stay.  The Court rejected these arguments and artificial distinctions, finding that there was no "plain legal prejudice" that is a prerequisite for standing to challenge a proposed settlement.  *Id.* at 552-53.  The Court then considered and approved the settlement class based "solely on the uncontested evidence presented by plaintiffs and the settling defendants."  *See id.* at 553, 561.

---

[1] The Court concluded that it was "unnecessary to decide this issue of standing" of non-settling defendants "in light of its conclusion that the requested stay is unwarranted."  2010 U.S. Dist. LEXIS 6949, at *5-6 n.1.

[2] One of the movant non-settling defendants in *Columbus Drywall* was represented by counsel for Flexible Foam Products in this litigation, who is himself Defendant Liaison Counsel.

4

In fact, as demonstrated below, *see* Section III, *infra*, the only prejudice here would be suffered by the direct purchaser plaintiffs and Vitafoam in the event the preliminary approval of the settlement, and conditional certification of a settlement class, were delayed.

## II.      THERE IS NO PRECEDENT FOR THE REQUESTED STAY

The defendants do not point to a single case demonstrating that a stay is proper here. And there is no such case.  On the contrary, as defendants should know well, early settlements and settlement classes are regularly approved in class actions, and a host of courts have approved class settlements before determination of a litigation class.  *See, e.g.*, *Packaged Ice*, 2010 WL 3070161, at *5-6 (preliminarily approving pre-certification settlement); *Beef Indus.*, 607 F.2d 167, 170-71, 183 (5th Cir. 1979) (affirming pre-certification settlement approval); *Curiale v. Lenox Group, Inc.*, 2008 WL 4899474, at *5, *11 (E.D. Pa. Nov. 14, 2008) ("These economic gains [of early settlement] multiply when settlement also avoids the costs of litigating class status-often a complex litigation within itself."); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 488-89, 507 (E.D. Mich. 2008) (approving class action settlement reached while Rule 12(b) motions to dismiss were still outstanding); *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 306-07, 314 (D. Mass. 1987) ("Classic among those benefits [of settlement], and existing here, is the fact that money that might otherwise be spent contesting Rule 23 certification may be made available to provide additional benefits to the class.").

Defendants are asking this Court to break new ground and issue an order contrary to well-established principles for approval of class settlements.  The result would delay a settlement that has been reached between two parties, slow resolution of this case, subject a settling defendant to continued litigation, and delay compensation to the aggrieved parties.

## III.    FEDERAL POLICY STRONGLY FAVORS EARLY SETTLEMENT

Federal courts have established a strong presumption in favor of class action settlements. *E.g.*, *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (citing cases regarding the "strong public policy" in favor of class action settlements); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (reiterating "the federal policy favoring settlement of class actions"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. … Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (reviewing settlement approval "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982) ("There is a strong judicial policy in favor of parties voluntarily settling lawsuits."); *In re Corrugated Container Antitrust Litig.*, 643 F.3d 195, 207 (5th Cir. 1981) (reviewing district court's decision to approve settlement "in light of the strong judicial policy favoring settlement of disputes").

The reasons for this policy are many, but they include that settlements—especially early settlements—(a) provide relief to class members without unnecessary delay or expense, *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC*") ("The parties may also gain significantly from [settlement by] avoiding the costs and risks of a lengthy and complex trial."); (b) remove risks associated with litigating against the settling defendant(s), *see In re Air Cargo Shipping Antitrust Litig.*, 2009 WL 3077396, at *8 (E.D.N.Y. 2009) (noting settlement was beneficial because it allowed plaintiffs to avoid fighting

6

over damages and class certification with settling defendant); (c) provide for immediate

cooperation from settling parties, which will afford access to documents and witnesses without

protracted and expensive discovery, and which will aid against the remaining defendant(s), *see*

*id.* (the settling defendant's "obligation under the settlement to cooperate may assist plaintiffs to

resolve the action as against the outstanding defendants"); *Packaged Ice*, 2010 WL 3070161, at

*2, *6; and (d) often act as a catalyst toward further settlements.  (*See* Mot. at 3, 9-11 (collecting

numerous cases regarding early settlements as "icebreaker" agreements and their value in

litigation with non-settling defendants and in promoting further settlements).

   In contrast, delaying a settlement in which the settling defendant promises substantial

cooperation—as in the settlement here—prejudices *both* of the settling parties.  The plaintiff is

denied significant cooperation from the defendant and is forced to incur unnecessary costs of

discovery, and the defendant is forced to litigate a case it is seeking to exit.  *See Packaged Ice*,

2010 WL 3070161, at *7-8 (discussing these harms to the settling parties in connection with

approval of settlement class); *In re Pressure Sensitive Labelstock Antitrust Litig.,* 584 F. Supp.

2d 697, 702 (M.D. Pa. 2008) (settling Defendants' proffer of facts and information was of

"immediate and valuable benefit to the Class that will aid in ongoing litigation against the non-

settling Defendants"); *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 643 (E.D. Pa.

2003) (settling defendant's promised cooperation was a "substantial benefit to the classes and

strongly militates toward approval of the Settlement Agreement").

   All of these benefits are present here.  Vitafoam, of course, is the party that first

approached the Department of Justice with evidence of the conspiracy and applied for amnesty.

As part of the proposed settlement, Vitafoam has agreed to provide what Plaintiffs' counsel

deems fair and adequate monetary remuneration (negotiated at arm's length by experienced

counsel over months of discussion), immediate and comprehensive cooperation, and an immediate cessation to further defensive litigation against Plaintiffs.

Defendants argue that an early settlement with Vitafoam purportedly does not confer any non-monetary benefit to the class because Vitafoam is already required as an ACPERA applicant to cooperate with Plaintiffs. (*See* Opp. at 8.) Cooperation, however, is not required under ACPERA; it is optional if a defendant wishes to secure reduced liability. *See* Antitrust Criminal Penalty Enforcement and Reform Act of 2004, Pub. L. 108-237, 118 Stat. 665, at § 213(b) (June 22, 2004) (codified at 15 U.S.C. § 1 note) ("ACPERA"). Furthermore, Defendants ignore that the *ease* and *speed* of cooperation can be a critical factor for plaintiffs pursuing antitrust claims, even when the settling party is an ACPERA applicant. *See, e.g., Air Cargo*, 2009 WL 3077396, at *8 (approving proposed settlement with ACPERA applicant because, *inter alia*, "[its] obligation under the settlement to cooperate may assist plaintiffs to resolve the action as against the outstanding defendants"). By settling with Vitafoam now, Plaintiffs are securing early-stage and prompt cooperation that is clearly a class-wide benefit. (Mot. at 10 (collecting cases)); *see also Pressure Sensitive Labelstock,* 584 F. Supp. 2d at 702 (recognizing the immediate value to the class of a settling defendants' proffer of facts in ongoing litigation against the non-settling defendants); *Linerboard,* 292 F. Supp. 2d at 643 (substantial benefit to the class of significant cooperation by settling defendants strongly supported approval of proposed settlement).

Furthermore, the settlement would relieve Vitafoam of continuing obligations as a defendant – obligations that, as a practical matter, would at the very least impede the ease and speed of cooperation.

## IV.  DEFENDANTS' ARGUMENTS FOR DELAY LACK MERIT

### A.  <u>Discovery Is Not A Prerequisite For Settlement.</u>

Defendants argue that the class settlement with Vitafoam cannot be considered or approved without further fact discovery.  (Opp. at 1-4, 7-9.)  That is not the law.  In the context of class action settlements, federal courts have held that "formal discovery [is not] a necessary ticket to the bargaining table."  *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) (quoting *Corrugated Container*, 643 F.2d at 211); *see also Packaged Ice*, 2010 WL 3070161, at *6; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458-59 (S.D.N.Y. 2004) ("Plaintiffs' counsel appear to have scrutinized the facts of the Actions from the earliest stages of the litigation and developed an informed basis from which to negotiate a reasonable compromise.").  As those courts have explained: "Generally speaking, a settlement should stand or fall on the adequacy of its terms.  The overriding theme of our case law is that formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement."  *Newby*, 394 F.3d at 306.  Accordingly, federal courts routinely approve early settlements of class actions with little or no discovery.  *E.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 235-36 (3d Cir. 2001) (affirming approval of class settlement at "an early stage" of discovery, where no depositions had been taken and lead counsel had mainly conducted informal discovery); *Packaged Ice*, 2010 WL 3070161, at *6 (approving class settlement where no discovery had been conducted); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007) (approving settlement "at a relatively early stage in this litigation, when formal discovery had just commenced" because, *inter alia*, lead counsel "had extensively analyzed and investigated the events and transactions alleged in the Complaints"); *In*

*re PNC Fin. Servs. Group, Inc.*, 440 F. Supp. 2d 421, 433 (W.D. Pa. 2006) (approving partial settlement despite lack of formal discovery because lead counsel adequately understood the merits of their case).

In addition, contrary to Defendants' assertions, Plaintiffs already have received substantial factual information about the conspiracy at issue in this case, as reflected in the details of the Consolidated Amended Complaint.  Plaintiffs have obtained that information from documents emanating from the DOJ and the Canadian Competition Bureau.  Plaintiffs have also obtained information through the ongoing factual investigation by their counsel, including (among other things) through meetings with Vitafoam.  (Mot. at 4.)

### B.    The Cases Defendants Cite Do Not Support Their Assertion That Certification Of A Settlement Class Must Await Certification Of A Litigation Class.

Defendants invoke *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008), and *GMC*, 55 F.3d 768.  (Opp. at 1, 7-9.)  But each of these cases is inapposite, and none even addresses preliminary approval or the issue of the timing of settlement approval relative to certification of a litigation class.  *Wal-Mart* and *Hydrogen Peroxide* both discuss standards for certification of a litigation class, not the standard or time for certification of a settlement class.  *See, e.g., Hydrogen Peroxide*, 552 F.3d at 305. [3]  *Amchem* and *GMC* discuss the

_____

[3] Defendants' citation to *Wal-Mart* is particularly misplaced.  *Wal-Mart* involved proposed certification of a nationwide class of more than 1,000,000 Wal-Mart employees, in a context where it was acknowledged that the relevant employment decisions were made by local managers and not on a national basis.  *Id.* at 2554-55.  *Wal-Mart* did not remotely consider class certification in an antitrust class action based on a horizontal price-fixing conspiracy.  As demonstrated in Plaintiffs' moving papers, such antitrust actions are generally regarded as well suited for class treatment.  (Mot. at 16-23.)  Further, *Wal-Mart* only discusses certification of litigation classes, 131 S. Ct. 2541, and only in the context of Fed. R. Civ. 23(b)(2) – wholly

standard for approving a settlement class, but neither addresses the timing for approval of a settlement class relative to approval of a litigation class.   *Amchem*, 521 U.S. 591; *GMC*, 55 F.3d 768.

As Plaintiffs explain in their opening brief—and Defendants ignore entirely—there are three stages to the review and approval of a class action settlement: (1) the preliminary approval of the proposed settlement; (2) notice to the proposed class members; and (3) final approval of the settlement after a hearing to determine the fairness of the settlement.  (Mot. at 6-7); *see also Packaged Ice*, 2010 WL 3070161, at *4 (citing *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982); 5 *Moore's Federal Practice-Civil* § 23.165 (3d ed. 2005)).

At the first stage, a proposed settlement should be preliminarily approved if "[t]he Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies."  *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006).  "This preliminary determination can be made 'on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.'"  *Packaged Ice*, 2010 WL 3070161, at *4 (citing *Manual for Complex Litigation* § 21.632 (4th ed. 2004)).  The preliminary approval inquiry is limited in nature and meant to determine "whether the proposed settlement has the 'potential' for final approval" and "whether there is reason enough to notify class members and to proceed with a fairness hearing."  *Id.* (citing *Berry v. School Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998)).

None of the authorities Defendants cite, including *Wal-Mart*, *Amchem*, and *Hydrogen Peroxide*, provide any support for the idea that *preliminary* approval requires a formalized

inapplicable here – which applies to claims for injunctive relief rather than damages, *id.* at 2548-49, 2558-60.

11

factual showing.  *Wal-Mart*, *Amchem*, and *Hydrogen Peroxide* do not address preliminary

approval at all, and Defendants cite no case for the proposition that the preliminary approval

standard discussed above has been heightened, or that "there is no such thing as preliminary

'approval' of a settlement."  (Opp. at 3.)  Indeed, two authorities Defendants cite for the latter

proposition—the Manual for Complex Litigation and *In re New Motor Vehicles Canadian*

*Export Antitrust Litigation*—explicitly recognize the need for a preliminary approval process.[4]

As explained in Plaintiffs' motion, the proposed settlement more than satisfies the

standard for preliminary approval.  Plaintiffs' motion provides the "information already known"

to all parties in this litigation as well as an "informal presentation" of the facts to the Court.  *See*

*Packaged Ice*, 2010 WL 3070161, at *4.  Defendants offer no concrete, substantive reasons to

question the facts presented in Plaintiffs' opening brief.  Defendants' bald assertions that class

certification is not appropriate here are insufficient to overcome the presumption of the

Vitafoam's settlement's fairness.  *See* 4 *Newberg on Class Actions* § 11.41 (collecting cases); *see*

*also In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. Jul. 25, 2001) (explaining

that preliminary approval is appropriate absent "obvious deficiencies" raising doubts about the

fairness of the settlement) (quoting *The Manual for Complex Litigation (Third)* § 30.41 (1999)).

---

[4]  Defendants argue that "preliminary approval" may be a misnomer because the Court's
inquiry at this stage is merely to determine whether it is appropriate to send notice of the
proposed settlement for the fairness hearing.  (*See* Opp. at 3 (citing, *inter alia*, *In re New Motor
Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55 (D. Me. 2006) (disagreeing with
the label "preliminary approval" but agreeing with the need for such process).)  However,
"preliminary approval" is the phrase the Sixth Circuit uses for this phase of the settlement
process.  *See*, *e.g.*, *UAW v. General Motors Corp.*, 497 F.3d 615, 622 (6th Cir. 2007) ("The court
appointed Payne as class counsel and preliminarily approved the settlement.").

C.      **"Conditional" Certification Is A Commonplace Mechanism Used As Part Of The Preliminary Approval And Notice Process.**

Defendants also assert that the Court is not permitted to "conditionally" or "provisionally" certify a settlement class for purposes of preliminary approval; *i.e.*, providing notice to the class in advance of a fairness hearing.  (Opp. at 4-6.)  Defendants argue that the December 2003 amendments to the Federal Rules of Civil Procedure eliminated the language from Rule 23 stating that class certification "may be conditional," and that Plaintiffs' conditional certification citations are not relevant because they "appear" to involve global settlements rather than partial settlements.  (Opp. at 4-6.)

Regarding the former argument, conditional or provisional certification is not a determination that a class should be certified at this stage, but, rather, a mechanism used as part of the preliminary approval process to outline the contours of the proposed settlement class for purposes of notice to the proposed class members.  *See, e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*, 2001 WL 1842315, at *3-4 (N.D. Ohio Oct. 20, 2001) (conditional certification is "the first step in an extensive and searching judicial process," which "triggers a mechanism for more formal notice to all potential class members" and sets in motion "substantial judicial processes…to test the assumptions and representations upon which the parties' [settlement] motions are premised.").  Without this mechanism, class action plaintiffs would have no device to adequately provide notice of a fairness hearing at which the Court will assess the adequacy of the settlement and the proposed settlement class.  *See, e.g.*, *id.*

Provisional certification has been and continues to be a commonly-used notice mechanism, even following the December 2003 amendment to Rule 23.  *See, e.g.*, *Franklin v. Midland Funding, LLC*, 2011 WL 3557033, at *1 (N.D. Ohio Aug. 12, 2011) (Katz, J.) (on March 11, 2011, the Court "provisionally certified a nationwide class of persons" as part of its

13

order preliminarily approving the proposed class action settlement); *Rotuna v. West Customer Mgmt. Group*, 2010 WL 2490989, at \*2 (N.D. Ohio June 15, 2010) (Lioi, J.) (same, for February 12, 2010 preliminary approval order); *Gardner v. GC Servs., LP*, 2011 WL 5244378, at \*6 (S.D. Cal. Nov. 1, 2011) (conditionally certifying class as part of preliminary approval order); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 609-10 (W.D.N.Y. 2011) (same).

Defendants' second argument—that different standards apply to preliminary approval of global and partial settlements—is similarly baseless.  There is only a single set of standards for preliminary approval, and these standards apply regardless of whether some or all defendants are settling the claims.  *E.g.*, *Packaged Ice*, 2010 WL 3070161 (approving partial settlement on same basis as full settlement); *see also Newby,* 394 F.3d 296 (affirming approval of partial settlement where class certified for settlement purposes only); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 340-41, 346 (E.D. Pa. 2007) (analyzing and approving partial settlement on the same factors as full settlements); *PNC*, 440 F. Supp. 2d 421, 429-30, 433 (same); *Global Crossing*, 225 F.R.D. 436, 455-56 (same); *cf. Beef Indus.,* 607 F.2d at 172 (finding nothing in the cases or the commentaries to suggest that approval of a pre-certification settlement is dependent upon the settlement being complete as to all parties).

### D.    Defendants' Arguments Regarding Final Approval Are Wholly Speculative.

At the appropriate time, Plaintiffs will make the showing required under Rule 23 for final approval of the Vitafoam settlement.  The motion for final approval will be made in connection with a fairness hearing, on a date to be set by the Court following a period for notice to the class. The fairness hearing is designed to allow the Court to decide fully and finally whether there are facts sufficient to certify the settlement class.  *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 120 (S.D.N.Y. 2009) ("The purpose of the Fairness Hearing is to finally

determine (a) whether the actions satisfy the applicable prerequisites for class action treatment under Federal Rules of Civil Procedure 23(a) and (b) for the purposes of settlement…").

To the extent Defendants are presently suggesting that Plaintiffs will be unable to satisfy the criteria for final approval, Defendants are engaging in rank speculation—not only because Plaintiffs have not yet even moved for final approval, but because Defendants themselves disclaim that they are even addressing the merits of the proposed settlement.  (*See* Opp. at 1 ("Defendants submit this response to Plaintiffs' motion for approval of a settlement class, *not to argue the merits of the proposed class*") (emphasis added).)

DATED: December 5, 2011

Respectfully Submitted,

/s/ William A. Isaacson
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC  20015
Phone:  202-237-5607
Fax:     202-237-6131

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
QUINN EMANUEL URQUHART
     & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Phone:  212-849-7165
Fax:     212-849-7100

***Direct Purchaser Plaintiff Interim Lead Counsel***

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2011, in accordance with Paragraphs 5 and 9 of the Initial Case Management Order entered January 20, 2011, the foregoing Reply Memorandum in Support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval was filed electronically using the Court's ECF system, which will send notification of such filing to counsel of record.


<u>/s/ Stephen R. Neuwirth</u>
Stephen R. Neuwirth
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Phone:  212-849-7165
Fax:    212-849-7100