UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**In re POLYURETHANE FOAM
ANTITRUST LITIGATION**

This document relates to:
All Cases

MDL Docket No. 2196
Index No. 10-MD-2196 (JZ)

ORDER

Magistrate Judge James R. Knepp, II

### INTRODUCTION

In this multidistrict antitrust case, Direct Purchaser Class Plaintiffs seek preliminary approval of a settlement with Defendants Vitafoam, Inc. and Vitafoam Products Canada Limited (collectively "Vitafoam"), as well as conditional certification of a settlement class that includes similarly situated plaintiffs. (Doc. 293). The other, non-settling Defendants[1] oppose class certification and preliminary approval of the settlement (Doc. 301), arguing it should be stayed until the Court makes a final determination on the certification of the litigation class in accordance with the existing scheduling order. The Court heard argument at a hearing on January 11, 2012. (Non-Document Entry dated January 13, 2012).

### BACKGROUND

**The Parties and the Lawsuit**

In this case, Plaintiffs allege Defendants took part in a conspiracy to restrain trade in the

---

[1] Those Defendants include Carpenter Co., E.R. Carpenter, L.P., Carpenter Holdings, Inc., Hickory Springs Manufacturing Company, Future Foam, Inc., Leggett & Platt, Inc., Otto Bock Polyurethane Technologies, Inc., Flexible Foam Products, Inc., FXI - Foamex Innovations, Inc., Plastomer Corporation, Mohawk Industries, Inc., Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.

market for flexible polyurethane foam and all types of flexible polyurethane foam products, violating the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 15, and 26. Polyurethane foam is used to provide insulation, support, and durability in many consumer products, including furniture, electronics, filters, medical and healthcare products, building and construction products, and personal care items, to name a few. Plaintiffs allege they all directly purchased polyurethane foam from Defendants from 1999 until August 2010, and believe they over-paid for this foam as a result of Defendants' alleged conspiracy. (Doc. 46, at ¶ 4).

In December 2010 the Judicial Panel on Multidistrict Litigation consolidated the many separate cases filed against Defendants and transferred those cases to the Northern District of Ohio for pre-trial proceedings. (Doc. 1).

**The Settlement Agreement**

The Direct Purchaser Plaintiffs have reached a settlement with Vitafoam, providing for a cash recovery of a minimum of $9 million and a potential of $15 million total. (Doc. 293-1, at 9; Doc. 293-2, at 8–9).[2] As described in Plaintiffs' Motion for Preliminary Approval, the Settlement Agreement (Doc. 293-2) calls specifically for the following: (1) an initial payment of $5 million; and (2) an additional guaranteed payment of at least $4 million, plus a potential recovery of up to $6 million more at the time of a future Vitafoam recovery in the *In re Urethane Antitrust Litigation* (in which Vitafoam is a plaintiff). (Doc. 293-1, at 9–10). Plaintiffs contend the cash payment portion of the settlement would represent approximately 1.4% to 2.4% of Vitafoam's sales of polyurethane foam products to customers in the United States during the class period. (Doc. 293-1,

---

[2] Citations to the record a document's pdf page number found at the top of each page, not the page number found at the bottom of each page.

at 10). Furthermore, Vitafoam's sales will remain in the case for purposes of computing the treble damages claim against the non-settling Defendants, meaning Plaintiffs retain their ability to recover from the non-settling Defendants the entire damages caused by the alleged conspiracy, even those attributable to Vitafoam, less the amount paid by Vitafoam in settlement. (Doc. 293-1, at 11).

In addition, the Settlement Agreement calls for Vitafoam's cooperation with Plaintiffs in their on-going case with the remaining Defendants. Vitafoam is already under some obligation to cooperate with Plaintiffs pursuant to a Cooperation Agreement entered into to conform with the liability reduction provisions of the Antitrust Criminal Penalty Enhancement Reform Act of 2004 (ACPERA). However, Plaintiffs' counsel believes Vitafoam's cooperation under the Cooperation Agreement "will be only reluctant . . . because its cooperation will potentially establish an undefined liability." (Doc. 293-1, at 13).

Under the Settlement Agreement, Vitafoam has agreed to provide Plaintiffs with the following cooperation:

- Production of documents, including transactional documents, price announcements and documents relating to communications between Defendants about the prices at which the products would be or had been sold in the United States;

- making available current and former directors, officers, and employees with knowledge of relevant facts for interviews, depositions, affidavits, and testimony;

- assistance in authenticating documents; and

- agreeing that its counsel will meet with counsel for Plaintiffs to identify relevant evidence and to assist in establishing the liability of the non-settling Defendants. Vitafoam's cooperation with the Direct Purchaser Plaintiffs shall continue to be governed by the Cooperation Agreement.

(Doc. 293-1, at 13; Doc. 293-2, at 10). Vitafoam will also provide the names and addresses of its customers during the class period who may be affected by the settlement. (Doc. 293-2, at 10–11).

The settlement allows any of these class members to opt-out of the settlement if they so choose. (Doc. 293-2, at 11) ("Members of the Settlement Class *who have not timely excluded themselves* from the Class Action shall be entitled solely to the Settlement Funds for settlement") (emphasis added).

## DISCUSSION

In their Motion, Direct Purchaser Plaintiffs ask this Court to do two things: (1) preliminarily approve the settlement agreement they have reached with Vitafoam; and (2) conditionally certify a settlement class defined as follows:

> All Direct Purchaser Plaintiffs that purchased flexible polyurethane foam in the United States directly from a Defendant or Co-conspirator from January 1, 1999 to August 2010. Excluded from the Settlement Class are (1) all Defendants and Co-conspirators and their respective parents, subsidiaries, and affiliates, and (2) any Direct Purchaser Plaintiff who timely elects to be excluded from this settlement.

(Doc. 293-1, at 24).

**Class Certification**

Although Plaintiffs ask this Court to *conditionally* certify the class, Rule 23 and the case law interpreting the Rule suggest this Court must make a definitive determination on certification, even in the settlement-only context. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 (3d Cir. 2008)(noting the 2003 amendments to Rule 23 eliminated language providing class certification "may be conditional"). In fact, in the settlement context, courts "must pay 'undiluted, even heightened, attention' to class certification requirements . . . ." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting *Amchem*, 521 U.S. at 620). These threshold requirements are:

    (1) numerosity (a "class [so large] that joinder of all members is impracticable");

4

>
> (2) commonality ("questions of law or fact common to the class");
>
> (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and
>
> (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id.* (quoting Fed. Civ. R. 23(a)(1–4)).

Not only must the "four prerequisites [of Rule 23(a)] . . . *all* be met before a class can be certified . . ., the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b)." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (emphasis in original). Plaintiffs here assert they fall within the subcategory outlined in Rule 23(b)(3), which requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The Supreme Court recently reconfirmed that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Even in the settlement context, the burden is on the plaintiffs to establish their right to class certification, *Amchem*, 521 U.S. at 613, and that can only be done if, "after a rigorous analysis," a court is satisfied the Rule 23 prerequisites have been met, *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2008) (citing *Alkire v. Irving,* 330 F.3d 802, 820 (6th Cir. 2003)).

However, at the hearing on their Motion, Plaintiffs' counsel clarified Plaintiffs' position:

> THE COURT: Right. So can't we send out the notice to all the prospective

>class members without telling them that a class has preliminarily or conditionally been approved? Just say the Court is considering approval of a settlement that involves this class which you may be a member of. If you don't like that, come in and --
>
>MR. ISAACSON: Yes. That's the definition of preliminary approval; conditional. That's wordsmithing. That's absolutely fine, Your Honor.

(Tr. 60).

In other words, rather than seeking conditional certification at this point (as their Motion suggested), Plaintiffs seek to send notice to a group of potential class members to allow those possibly affected by the proposed settlement an opportunity to object. Under this scenario, Plaintiffs would be required to still put on all necessary proof they meet the Rule 23 requirements, but could do so at a later time with the benefit of input from putative class members.

Under the circumstances of this case, the Court believes this procedure is appropriate. At this juncture there is no record evidence before the Court, making it impossible for it to engage in a "rigorous analysis" to determine whether the Rule 23 requirements are met. The Court believes that sending notice to putative class members, prior to certifying the class, would afford those potential class members the added protection of allowing them the opportunity to object to the formation of the class itself. This way, putative class members can assist the Court in determining whether certain plaintiffs would be under-represented or their interests diluted by defining the class in a particular way. It will also facilitate settlement, something federal law favors. *See UAW v. GMC.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

Accordingly, Plaintiffs may submit a proposed notice and distribution plan, and all related documents, for the Court's review and approval. If the Court approves Plaintiffs' proposed notice, it will then schedule a hearing where Plaintiffs will be required to make all necessary showings for

class certification under Rule 23. Rest assured, the Court will not certify a class unless Plaintiffs meet all the Rule 23(a) and (b)(3) requirements. The Court reserves judgment at this time as to Defendants' standing to contest Plaintiffs' class certification.

**Preliminary Approval of Settlement**

Class actions may be settled or compromised only with the approval of the court and after giving notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e). There is a three-step process that district courts follow when approving a class action settlement:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tenn. Assoc. of Health Maintenance Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001).

In determining whether preliminary approval is appropriate, the Court should evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The Court has reviewed the proposed settlement and finds it should be preliminarily approved. Plaintiffs' counsel represented the settlement was reached after extensive arm's-length negotiations with Vitafoam's counsel (Doc. 293-1, at 22), and it does not appear to the Court there was anything fraudulent or collusive about those negotiations. Indeed, "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, LLC*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010) (internal quotations

omitted).

The Court notes, however, preliminary approval says nothing about final approval of the settlement. Ultimately the Court must determine whether the settlement is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2), and that determination will come only after a hearing where all interested parties have had the opportunity to be heard.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion (Doc. 293) is granted in part and denied in part. At this time, there is simply no evidence allowing the Court to undertake a rigorous analysis to determine if class certification is appropriate. However, Plaintiffs may submit their proposed notice and distribution plan to the Court for review and approval. Furthermore, the Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, includes no obvious deficiencies, and is therefore preliminarily approved. Final determination of class certification and the ultimate fairness of the settlement will occur at a later date if and when the Court approves Plaintiffs' notice and distribution plan, and after potentially affected parties have been given the chance to object and be heard.

IT IS SO ORDERED.

                                                  s/James R. Knepp II
                                                  United States Magistrate Judge