UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) | MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ) |
| ALL INDIRECT PURCHASER CASES | ) ) | |

**INDIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT WITH DOMFOAM INTERNATIONAL, INC., VALLE FOAM INDUSTRIES (1995) INC. AND A-Z SPONGE & FOAM PRODUCTS LTD. AND CERTAIN INDIVIDUALS**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT..................................................................................................1

II. THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT……..............................4

III. ARGUMENT ..............................................................................................................................5

    A. Standards Governing Preliminary Approval of a Settlement...............................................6

    B. The Settlement Should Be Preliminarily Approved………...................................................9

    C. Notice to the Class ...…......................................................................................................11

IV. CONCLUSION .........................................................................................................................11

**Cases**

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305(7th Cir.1980).....7, 8, 11

*Brent v. Midland Funding*, *LLC*, 2011 U.S. Dist. LEXIS 98763 (N.D. Ohio Sept. 1, 2011) ...............9, 10

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001)................................................................6

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) ........................................................................8

*Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829 (S.D. Ohio Jan 25, 2011)…..…..9

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)...............................................................................7

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005)...……………………………………….10

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985).......................................7, 8

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)................................................................11

*In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652 (D.D.C. 1979) ...................................................10

*In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3rd Cir. 2004)...........................10

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ......................................9

*In re Corrugated Container Antitrust Litig.*,1981 WL 2093 (S.D. Tex. June 4, 1981) ..................... 10, 11

*In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001) ................................6, 8

*In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) .................................................10

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011).....……...7, 9

*In re Southern Ohio Correctional Facility*, 173 F.R.D. 205 (S.D. Ohio 1997)...........................................8

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980).................................................................11

*In re Vitamins Antitrust Litig.*, 2001 WL 856292 (D.D.C. Jul. 25, 2001) ................................................7

*Int'l Union v. Ford Motor Co.*, 2006 WL 1984363 (E.D. Mich. July 13, 2006)........................................7

*Int'l Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)................................................................................................................10

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)................................................................................................8

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) .............................................7, 9

*Karkoukli's, Inc. v. Dohany*, 409 F.3d 279 (6th Cir. 2005) ....................................................... 11

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................. 9, 10

*Nat'l Rural Telecomms. Coop. v. INDIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................ 9

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) .................................................................. 9

*Sheick v. Auto. Component Carrier LLC*,
   2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ................................................ 8, 9

*Stolicker v. Muller*, 2007 U.S. Dist. LEXIS 26338 (W.D.Mich. Apr. 10, 2007) ......................... 6

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) .......................................... 10

*Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) ........................... 11

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)…................................................. 7

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1987) ..................................................................... 8

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .................................................................... 6

**Rules**

Fed. R. Civ. P. 23(e)(1)……………………………………………………………………………11

Fed. R. Civ. P. 23(c)(2)(B)…………………………………………………………………………..11

**Other**

*The Manual for Complex Litigation (Third)* § 30.41 (1999)……………………………………..7

*The Manual For Complex Litigation (Fourth)* (2004)…………………………………………...6

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2005)………………7, 8, 9, 11

Indirect Purchaser Class Plaintiffs ("Plaintiffs"), on behalf of themselves and all others similarly situated, submit this Memorandum in support of their Motion seeking preliminary approval of a settlement with Domfoam International, Inc. ("Domfoam"), Valle Foam Industries (1995) Inc. ("Valle Foam") and A-Z Sponge & Foam Products Ltd. (collectively "Domfoam" or "Voluntary Dismissal Defendants"). A copy of the Voluntary Dismissal and Settlement Agreement executed on January 3, 2012 by and among these parties (the "Settlement Agreement") is attached to the Motion for Preliminary Approval of Settlement as Exhibit A.

## I. PRELIMINARY STATEMENT

This multidistrict litigation arises from a conspiracy to fix the prices of polyurethane foam products. The first Indirect Purchaser case was filed in this District on January 21, 2011. That first-filed Indirect Purchaser Class Action case and subsequently filed direct and indirect purchaser class action and direct action cases were consolidated in this District by order of the Judicial Panel on Multidistrict Litigation.[1] On January 28, 2011, this Court appointed undersigned counsel to serve as Interim Lead Counsel for the Indirect Purchaser Class Plaintiffs [Docket No. 28]. Since that time, counsel has represented the interests of the class of Indirect Purchasers (the "Class") and has agreed to settle for the following Class with the Voluntary Dismissal Defendants and certain individuals who signed the Settlement Agreement:

> All persons who indirectly purchased products containing polyurethane foam manufactured, produced or supplied by the Voluntary Dismissal Defendants and/or an Alleged Co-Conspirator at any time from January 1, 1999 through the present (defined as the "Class Period"). Excluded from the Class are the Voluntary Dismissal Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees, and the Non-Settling Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees. Also excluded from the Class are persons or entities who or which indirectly purchased

---

[1] Indirect Purchaser Plaintiffs then filed a Consolidated Amended Complaint on March 21, 2011. Docket No. 52. On May 23, 2011, Indirect Purchaser Plaintiffs filed another Complaint [Docket No. 1 in Case: 1:11-pf-10010-JZ] which was consolidated with case Docket No. 52.

products which contain polyurethane foam as described herein but who or which are resellers of such products.[2]

This proposed Settlement is a result of the substantial efforts of Interim Lead Counsel. The agreement reached with Domfoam, the first in this case, is early, but provides substantial benefits to the Class. Because of the substantial fine which Domfoam has been required to pay to the Canadian Competition Bureau, coupled with Domfoam's already precarious financial position, there is no cash component to this settlement. However, the Settlement Agreement requires Domfoam -- the second marker amnesty applicant to the Canadian Competition Bureau -- to provide extensive cooperation to Plaintiffs, which will greatly assist in Plaintiffs' on-going case against the remaining Defendants.

Plaintiffs have reason to believe that Domfoam possesses relevant information. Indeed, on January 5, 2012, Domfoam and Valle Foam pled guilty and admitted before the Ontario Superior Court in Ottawa that they had agreed with competitors, specifically Carpenter, Vitafoam and Foamex, to fix the prices of polyurethane foam products manufactured at their plants in Brampton, Ontario, Delta, British Columbia, and Montreal, Quebec, over a period of 11 years. See Exhibits to Motion for Preliminary Approval of Settlement, Exhibit C (Indictment), Exhibit D (Statement of Admissions), Exhibit E (Sentencing Submission), Exhibit F (Application Record and Initial Order in *In The Matter Of The Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, As Amended and *In The Matter Of A Plan Of Compromise Or Arrangement Of Valle Foam Industries (1995) Inc., Domfoam International Inc. and A-Z Sponge & Foam Products Ltd.*, CV-12-9545-00CL in the Superior Court of Justice, Toronto, Ontario, Canada), Exhibit G, Order Granting Provisional Relief in the U.S. Bankruptcy Court for the Northern District of Ohio and Exhibit H, Notice of Extension of Stay and Order Granting Recognition Of Foreign Main Proceedings And Other Chapter 15 Relief.

---

[2] "Voluntary Dismissal Defendants" refers to Domfoam, Valle Foam and A-Z. "Alleged Co-

2

This Settlement Agreement is particularly timely given Domfoam's precarious financial position. In fact, on January 12, 2012, Domfoam filed for bankruptcy and restructuring proceedings in Canada (Exhibit F) and subsequently filed a complementary proceeding in the United States.  *See* Exhibit G. The stay was subsequently extended. *See* Exhibit H, Notice of Extension of Stay and Order Granting Recognition Of Foreign Main Proceedings And Other Chapter 15 Relief.

Plaintiffs believe that the cooperation to be provided by Domfoam and the individual signatories to the Settlement Agreement would not have been available to them but for this Settlement Agreement.

Furthermore, Domfoam's sales will remain in the case for purposes of computing the treble damages claim against the non-settling defendants.  In other words, Plaintiffs and the Class retain their ability (i) to recover from the remaining defendants the entire damages caused by the alleged conspiracy, even those attributable to Domfoam, and (ii) to file a claim in Domfoam's bankruptcy proceeding.

Pursuant to this Court's Order preliminarily approving the settlement agreement between Vitafoam and Direct Purchaser Class Plaintiffs (Doc. No. 323), Plaintiffs are not moving for conditional class certification at this time.  Following the provision of notice "to a group of potential class members to allow those possibly affected by the proposed settlement an opportunity to object,"[3] and as part of the final approval motion, Plaintiffs will seek final approval of the Settlement Agreement together with certification of a Settlement Class.  Vitafoam Preliminary Approval Order at p. 6. [Dkt. # 323]

It is submitted that for all the reasons set forth herein, the settlement with Domfoam is in the best

---

Conspirators" and "Non-Settling Defendants" refers to all other Defendants.

[3] As discussed below, Plaintiffs propose deferring the provision of notice to potential class members until they are able to reach a settlement with another Defendant that provides for monetary consideration.

interests of the Class and merits the Court's preliminary approval. Plaintiffs therefore request the entry of an Order preliminarily approving the Settlement Agreement. *See* Motion for Preliminary Approval of Settlement, Exhibit B (Proposed Order).

## II. THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement with Domfoam arises from extensive arm's-length and good faith negotiations, including telephone conversations and the lawyers' proffer as described in ¶ 11 of the Settlement Agreement.

**The Parties and the Settlement**: The Settlement Agreement is binding on the proposed settlement class of Indirect Purchaser Plaintiffs, other than those class members who elect timely to exclude themselves from the settlement class (hereafter the "Settlement Class"). The Settlement Class includes "all persons who indirectly purchased products containing polyurethane foam manufactured, produced or supplied by Domfoam, Valle, A-Z and/or an Alleged Co-Conspirator at any time from January 1, 1999 through the present (defined as the "Class Period")." Excluded from the Class are Domfoam, Valle, A-Z and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees, and the Non-Settling Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees. Also excluded from the Class are persons or entities who or which indirectly purchased products which contain polyurethane foam as described herein but who or which are resellers of such products.

**Agreement to Cooperate**: Pursuant to the Agreement, Domfoam's current and former officers and directors (many of whom signed the Settlement Agreement in their individual capacity, but are not defendants in the case) are required to cooperate with Plaintiffs. But for the Settlement Agreement, in the judgment of Interim Lead Counsel, Plaintiffs would not be able to obtain similar discovery and cooperation from Domfoam or these individuals, particularly in light of the filings made by Domfoam

under the Companies' Creditors Arrangement Act and Chapter 15 of the U.S. Bankruptcy Code and the resulting stays of this case and all other civil litigations.  Indeed, pursuant to the Settlement Agreement, Domfoam has already begun to cooperate and provide assistance to Plaintiffs, including: (a) the production of documents, including transactional documents, price announcements and documents relating to communications between defendants about the prices at which the products would be or had been sold in the United States; and (b) agreeing to make available current and former directors, officers, and employees with knowledge of relevant facts for interviews, depositions, affidavits, and other testimony.  *See* Motion for Preliminary Approval of Settlement, Exhibit A (Settlement Agreement) at ¶11).

**Voluntary Dismissal and Release of Claims:**  In exchange for the cooperation to be provided by Domfoam and the signatories to the Settlement Agreement, and upon entry of an order of this Court granting final approval, Plaintiffs and the Class have agreed to (i) dismiss without prejudice and without costs their claims as against Domfoam, Valle and A-Z and (ii) discharge and release all present and former officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives of Domfoam, Valle and A-Z from any and all claims that relate in any way to any conduct prior to the Effective Date of the Settlement Agreement arising out of or related to the allegations in the Complaint.[4]  *See* Motion for Preliminary Approval of Settlement, Exhibit A (Settlement Agreement) at ¶¶ 1(r), 1(s), 1(t), 6.  As to each current and former officer, director and employee of Domfoam, Valle and A-Z that signed the Settlement Agreement in his individual capacity, the releases described above are valid and binding upon Plaintiffs and the Class only to the extent that such individual provides the cooperation required of him pursuant to ¶ 11 of the Settlement Agreement.

5

### III. ARGUMENT

#### A. Standards Governing Preliminary Approval of a Settlement

"There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *Stolicker v. Muller*, 2007 U.S. Dist. LEXIS 26338 (W.D.Mich. Apr. 10, 2007), *citing Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). *See also Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). As to the first step, the MANUAL FOR COMPLEX LITIGATION, FOURTH (2004) ("Manual") provides that "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, §21.632 at 320-21 (2004). As Magistrate Judge Knepp observed when he granted preliminary approval of the Direct Purchaser Class Plaintiffs' settlement with Vitafoam, the Court should review and determine if the settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 359, 367 (N.D. Ohio 2001); *Manual* § 30.41 at 237 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies…and [the settlement] appears to fall within the range of possible approval, the court should direct that notice" issue and should schedule a final approval hearing).

---

[4]  The May 23, 2011 Amended Complaint.

The law favors the settlement of class action lawsuits, as such settlements minimize the litigation expenses of both parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 313 (7th Cir. 1980), *citing Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011), *citing UAW v. General Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (referencing "the federal policy favoring settlement of class actions"); *see also IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), *see* [*Id.*] ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C.,* 768 F.2d at 888-89 (7th Cir. 1985), *cert. denied,* 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong*, 616 F.2d at 312 (7th Cir. 1980)("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.").

To effectuate this policy, courts have generally held that a proposed settlement agreement should be preliminarily approved if "[t]he Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363 at * 4 (E.D. Mich. July 13, 2006), 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 (4th ed. 2005) (Court need only find that the settlement falls within "the range of reasonableness."). Further, because preliminary approval is provisional, and is followed by more formal and comprehensive review and objection procedures, any doubts should be resolved in favor of preliminary approval. *See e.g., In re Vitamins Antitrust Litig.*, 2001 WL 856292 at *4 (D.D.C. Jul. 25, 2001) (explaining that preliminary approval is appropriate absent "obvious deficiencies" raising doubts about the fairness of the settlement) (*quoting The Manual for Complex Litigation (Third) § 30.41 (1999)*). Judicial examination at the preliminary approval stage consists of an "initial evaluation" made on the basis of written submissions and informal presentation

7

from the settling parties. *Manual* § 21.632, *In re Inter-Op Hip Prosthesis*, 204 F.R.D. at 367 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain"); *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997) (preliminary approval is based upon court's "familiarity with the issues and evidence of the case as well as the arm's-length nature of the negotiations"). A court has wide discretion in making such a determination. *Armstrong,* 616 F.2d at 313 (7th Cir. 1980).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied,* 478 U.S. 1004 (1986); *Isby v. Bayh,* 75 F.3d 1191, 1196-97 (7th Cir. 1996). These inquiries are reserved for the final approval stage of the class settlement approval process. Further, because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1987) ("the district court need not undertake the type of detailed investigation that trying the case would involve"). Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate," *Isby*, 75 F.3d at 1196, with courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* § 11.41 (collecting cases). Additionally, "the absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)(noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the

8

relative positions"); *In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb 22, 2011), *quoting Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table").

### B. The Settlement Should Be Preliminarily Approved

Preliminary approval of the Settlement is strongly merited. From the start, this Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel. 4 *Newberg on Class Actions* § 11.41. Further, in the judgment of Class Counsel who has significant antitrust and class action experience, this settlement is in the best interest of the Class. Such a determination "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010), *citing IUE-CWA v. General Motors Corp.*, 238 F.R.D. at 593; s*ee also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ("in approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement."), *Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763 (N.D. Ohio Sept. 1, 2011), *citing Nat'l Rural Telecomms. Coop. v. INDIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004), *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829 (S.D. Ohio Jan. 25, 2011).

This Settlement is significant because this is the first agreement plaintiffs have reached with any of the defendants and it provides a number of important benefits. As an initial matter, courts have long recognized that early settlements of this type create value beyond any indirect pecuniary benefit to the class. Early settlements can strengthen plaintiffs' hand in the litigation and encouraging future settlements. *See, e.g. In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643. "[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." 4 *Newberg on Class Actions* § 11.41; s*ee Brent*, 2011 U.S.

Dist. LEXIS 98763, *citing Int'l Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

Of particular importance is the fact that the Settlement Agreement requires Domfoam and certain current and former employees, officers and directors to provide extensive assistance and cooperation to the Class Plaintiffs. Settlement Agreement ¶ 11. Given Domfoam's recent bankruptcy filings and the related stays put into effect in the United States and Canada, much if not all of this cooperation would have been substantially unavailable to Plaintiffs if not for the Settlement Agreement. Further, as it relates to particular individuals, Plaintiffs believe that such cooperation would have been similarly unavailable. This effective early-stage cooperation made possible by the Settlement will afford the Class access to documents and witnesses it would not have had otherwise (at least without protracted and expensive discovery). *See, e.g., Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 339 (S.D.N.Y. 2005); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3rd Cir. 2004); *Linerboard*, 292 F. Supp. 2d at 643; *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 *16 (S.D. Tex. June 4, 1981); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979).

Although the Settlement Agreement does not provide for any monetary consideration (which Domfoam would be unable to pay in any event), it specifically permits Plaintiffs and the Class to file a claim in the Canadian bankruptcy proceedings and does not purport to change the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracy, including all sales made by these defendants. Settlement Agreement ¶ 16. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981). In this regard, the Settlement Agreement is similar to the settlement approved in *Corrugated Container*, where the court noted the "valuable provision" under

10

which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement. *Corrugated,* 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980). As a result, the Class will be able to pursue full damages with no diminution.

As a substantive matter, no class member's rights will be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the Settlement Agreement and to set the stage for review of its final approval. *Id.*; *see also, Armstrong*, 616 F.2d at 314 (7th Cir. 1980); 4 *Newberg on Class Actions* § 11.25 at 11-36–11-37.

### C. Notice to the Class

Federal Rule of Civil Procedure 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. at 272. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)*, citing Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005).

Plaintiffs propose deferring provision of notice to the Settlement Class following the Court's preliminary approval of the Settlement until after Plaintiffs are able to reach (and have the Court approve) a settlement with another Defendant in this matter which includes monetary consideration. Such monies will permit the Plaintiffs to cover its costs relating to the giving of notice to the Class. Plaintiffs also believe that the customer lists to be produced by the non-settling defendants will be of

11

great assistance in determining the parameters of any notification to the Class. Following that, counsel for Plaintiffs will submit a proposed notice plan and all related documents for the Court's consideration and approval.

## IV. CONCLUSION

For the foregoing reasons, Indirect Purchaser Class Plaintiffs respectfully request that the motion for preliminary approval of the settlement be granted.

DATED: March 7, 2012							Respectfully Submitted,

/s/ Marvin A. Miller
Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tele: (312) 332-3400
Fax: (312) 676-2676
Email: MMiller@MillerLawLLC.com
	LFanning@MillerLawLLC.com
	MVantine@MillerLawLLC.com

*Interim Lead Counsel for Indirect Purchasers*

Richard M. Kerger (0015864)
Kimberly Conklin (0074726)
**KERGER & HARTMAN, LLC**
33 S. Michigan Street, Suite 100
Toledo, OH 43604
Telephone: (419) 255-5990
Fax: (419) 255-5997
Email: Rkerger@kergerlaw.com
	Kconklin@kergerlaw.com

*Executive Committee for Indirect Purchasers*

Shpetim Ademi
Guri Ademi
David Syrios
**ADEMI & O'REILLY, LLP**
3620 East Layton Avenue
Cudahy, Wisconsin 53110
(414) 482-8000
Email: SAdemi@ademilaw.com
GAdemi@ademilaw.com
DSyrios@ademilaw.com

Jay B. Shapiro
Samuel O. Patmore
Abigail E. Corbett
Matthew Dates
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street
Miami, Florida 33130
(305) 789-3200
Email: JShapiro@stearnsweaver.com
SPalmore@stearnsweaver.com
ACorbett@stearnsweaver.com
MDates@stearnsweaver.com

Martin D. Holmes
M. Reid Estes
**DICKINSON WRIGHT PLLC**
424 Church Street
Suite 1401
Nashville, TN 37219
(615) 244-6538
Email: MDHolmes@dickinsonwright.com
MREstes@dickinsonwright.com

Daniel Lynch
Avidan J. Stern
**LYNCH & STERN LLP**
150 South Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 346-1600
Email: Dan@lynchandstern.com
Avi@lynchandstern.com

13

>Eric D. Barton
>**WAGSTAFF CARTMELL**
>4740 Grand Avenue, Suite 300
>Kansas City, MO 64112
>(816) 701-1100
>Email: EBarton@wagstaffcartmell.com
>
>David Schiller
>**SCHILLER & SCHILLER, PLLC**
>Professional Park at Pleasant Valley
>5540 Munford Road • Suite 101
>Raleigh, North Carolina 27612
>Telephone: (919) 789-4677
>Email: DSchiller@yahoo.com
>
>Susan Bernstein
>Attorney at Law
>200 Highland Avenue, Suite 306
>Needham, MA 02494
>Telephone: (781) 290-5858
>Email: Susan@sabernlaw.com
>
>*Counsel for Indirect Purchaser Plaintiffs*

14

**CERTIFICATE OF SERVICE**

      I, Marvin A. Miller, certify that on March 7, 2012, I served the foregoing document in accordance with Paragraph 9 of the Initial Case Management Order entered January 20, 2011.
.

                                                 s/*Marvin A. Miller*