UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

_____

|  |  |  |
|---|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) | |
| _____ | ) | MDL Docket No. 2196 |
| | ) | Index No. 10-MD-2196 (JZ) |
| This document relates to: | ) ) | |
| INDIRECT PURCHASER CLASS ACTION | ) ) | |
| _____ | ) | |

**VOLUNTARY DISMISSAL AND SETTLEMENT AGREEMENT**

This Settlement and Voluntary Dismissal Agreement (hereinafter, "Agreement") is made and entered into this 3rd day of January 2012, by and between Bruce Bradley, Dean Brayiannis, Michael Cappuccino, Peter Foti, Duke Greenstein, John Howard, Dale McNeill, James William Sproule, Robert Rochietti-Valle, Tony Vallecoccia, and Fred Zickmantel (collectively, the "Individual Settling Parties"), together with Domfoam International Inc. ("Domfoam"), Valle Foam Industries (1995) Inc. ("Valle Foam") and A-Z Sponge & Foam Products Ltd. ("A-Z", together with Domfoam and Valle Foam, the "Voluntary Dismissal Defendants") and Class Plaintiffs, individually and on behalf of a putative class of indirect purchasers of any product containing flexible polyurethane foam ("polyurethane foam") manufactured, produced or supplied by Defendants named in the above-captioned action (the "Class Action" or the "Action").

## R E C I T A L S

WHEREAS, there is pending in the United States District Court for the Northern District of Ohio, the Class Action, *In re Polyurethane Foam Antitrust Litigation*, MDL Docket No. 2196, Index No. 10-MD-02196 (JZ), brought on behalf of purchasers of any product containing polyurethane foam manufactured, produced or supplied by Defendants, in which Class Plaintiffs have alleged violations of law, including the existence of an unlawful conspiracy to fix, raise, maintain, or stabilize the prices of polyurethane foam and allocate customers for polyurethane foam in the United States in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and various antitrust and/or consumer protection statutes of certain jurisdictions[1] and under common law principles of unjust enrichment recognized in those jurisdictions;

---

[1]     The relevant jurisdictions are:  Alabama, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada,

WHEREAS, the Voluntary Dismissal Defendants named as defendants in that action deny:  (1) each and all of the claims and allegations of wrongdoing made by the Class Plaintiffs and the Class in the Action and maintain furthermore that they have meritorious defenses; (2) all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged in the Action; and (3) the allegations that the Class Plaintiffs or any Person in the Class were harmed by any conduct alleged in the Action or otherwise;

WHEREAS, the Voluntary Dismissal Defendants have demonstrated to Class Plaintiffs' Interim Lead Counsel their extremely precarious and unprofitable financial positions;

WHEREAS, the Voluntary Dismissal Defendants intend to file a form of bankruptcy, restructuring or creditor protection under Canadian law, including but not limited to the Bankruptcy and Insolvency Act or the Companies' Creditors Arrangement Act and Chapter 15 of the United States Bankruptcy Code and this Agreement is conditioned on such filing not later than January 31, 2012 as provided in ¶ 14 below;

WHEREAS, Class Plaintiffs' Interim Lead Counsel, in light of the planned bankruptcy, restructuring or creditor protection filing, desires to efficiently litigate this action and therefore to dismiss the Voluntary Dismissal Defendants without prejudice while preserving access to discovery available from the Voluntary Dismissal Defendants and the rights of any Plaintiffs or class members to make any appropriate future claims in bankruptcy as permitted by law;

WHEREAS, Class Plaintiffs' Interim Lead Counsel also has concluded that there would be benefits from cooperation by the Individual Settling Parties who are officers and employees or former officers and employees of the Voluntary Dismissal Defendants and that it is in the best

---

New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin.

interests of Plaintiffs and the Class to settle and resolve potential claims with the Individual Settling Parties;

WHEREAS, the parties to this Agreement agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, the Voluntary Dismissal Defendants and Individual Settling Parties agree, as more fully described herein, to cooperate with Class Plaintiffs' Interim Lead Counsel (as defined below) and Class Members by providing truthful information (to the extent such information is in the possession, custody, or control of the parties to this Agreement and/or is accessible by them) related to the polyurethane foam industry and/or claims asserted by Class Plaintiffs in the Action against the defendants named in such Action and parties not currently named as defendants;

WHEREAS, arm's-length negotiations have taken place between the parties to this Agreement, which embodies all of the terms and conditions of the agreements among the parties, including Class Plaintiffs, both individually and on behalf of the Class Members, has been reached subject to the approval of the Court as provided herein and is intended to supersede any prior agreements between the parties;

WHEREAS, Class Plaintiffs' Interim Lead Counsel has concluded, after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action and claims asserted in any Class Action complaint brought on behalf of a putative class of indirect purchasers of products containing polyurethane foam manufactured, produced or supplied by the Voluntary Dismissal Defendants, including those subsequently dismissed

voluntarily and consolidated for pre-trial proceedings by order of the United States Judicial Panel on Multidistrict Litigation as MDL Docket No. 2196, the legal and factual defenses thereto and the applicable law, that it would be in the best interests of Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for Indirect Purchaser Class Plaintiffs and the Class, further, that Class Plaintiffs' Interim Lead Counsel consider the Agreement set forth herein to be fair, reasonable and adequate and in the best interests of Class Plaintiffs and the Class; and

WHEREAS, the Voluntary Dismissal Defendants, despite the belief that they are not liable for the claims asserted against them in the Action and that they have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to Plaintiffs and avoid the risks inherent in complex litigation.

## A G R E E M E N T

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Class Plaintiffs (on behalf of themselves and each Person in the Class), the Individual Settling Parties  and the Voluntary Dismissal Defendants, by and through their counsel and attorneys of record, that, subject to the approval of the Court, and provided that Class Plaintiffs' Interim Lead Counsel does not terminate this Agreement in accordance with the termination rights provided in ¶¶ 11(b), 11(k) or elsewhere herein, the Action shall, upon entry of the Final Approval Order and Judgment, be dismissed without prejudice as against the Voluntary Dismissal Defendants and the Released Claims as against any other Releasees shall be finally and fully settled, compromised

and dismissed on the merits and with prejudice  upon and subject to the terms and conditions of this Agreement, as follows:

A.    **Definitions**

1.    As used in this Agreement the following terms have the meanings specified below. In the event of any inconsistency between any definition set forth below and any definition set forth in any other document related to this Agreement, the definition set forth below shall control.

(a)    "Action" means *In re Polyurethane Foam Antitrust Litigation* and each of the cases brought on behalf of a putative class of indirect purchasers of products containing polyurethane foam manufactured, produced or supplied by Defendants, previously or later consolidated and/or included as part of MDL Docket No. 2196, Index No. 10-MD-02196 (JZ), including any such cases voluntarily dismissed.

(b)    "Alleged Co-Conspirators" means The Carpenter Company, E.R. Carpenter, L.P., Carpenter Holdings, Inc., Carpenter Canada, Co., Flexible Foam Products, Inc., Ohio Decorative Products, Inc., Future Foam, Inc., FXI – Foamex Innovations, Inc., Hickory Springs Manufacturing Company, Inoac International Co., Ltd., Inoac USA Inc., Inoac Corporation, Crest Foam Industries Inc., Leggett & Platt Inc., Mohawk Industries, Inc., Otto Bock Polyurethane Technologies, Inc., Plastomer Corporation, Scottdel, Inc., Louis Carson, David Carson, Vitafoam Products Canada Limited, Vitafoam, Inc., Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., Woodbridge Foam Fabricating, Inc. and all employees, direct and indirect parents, subsidiaries, affiliates,

6

predecessors and successors of each of the foregoing as well as any other subsequently-named defendant(s) in the Action, and its employees, direct and indirect parents, subsidiaries, affiliates, predecessors and successors.

(c)    "Claim(s)" means any and all actions, suits, claims, demands, assertions, or causes of action, which are directly related to the subject matter of the Action.  A Claim expressly includes a demand to compromise or settle an alleged cause of action related to the subject matter of the Action that is made outside the context of litigation or this Action.

(d)    "Class" (or "Settlement Class") is defined, subject to the Court's approval and for purposes of this Agreement only, to include all persons who indirectly purchased products containing polyurethane foam manufactured, produced or supplied by the Voluntary Dismissal Defendants and/or an Alleged Co-Conspirator (as defined above) at any time from January 1, 1999 through the present (defined as the "Class Period").  As will be reflected in the class notice approved by the Court, excluded from the Class are the Voluntary Dismissal Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees, and the Non-Settling Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees.  Also excluded from the Class are persons or entities who or which indirectly purchased products which contain polyurethane foam as described herein but who or which are resellers of such products.

7

(e)     "Class Member" means a Person who falls within the definition of the Class and has not timely and validly excluded himself, herself or itself from the Class in accordance with the procedure to be established by the Court.

(f)     "Class Plaintiffs" means Greg Beastrom, Marjean Coddon, Susan Gomez, Joseph Jasinski, Henry Johs, Joseph Lord, Kirsten Luenz, Gerald Nolan, Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Catherine Wilkinson, Jeffery S. Williams, and The Parker Company as authorized agent for Met 2 Hotel, LLC.

(g)     "Class Plaintiffs' Interim Lead Counsel" means Marvin A. Miller of Miller Law LLC.

(h)     "Court" means the United States District Court for the Northern District of Ohio.

(i)     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

(j)     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 13 of this Agreement have occurred and have been met.

(k)     "Execution Date" means the date this Agreement is executed by all parties.

(l)     "Final" means, with respect to any order of court, including without limitation, the Final Approval Order and Judgment, that such order

8

represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when:  (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.

(m)     "Final Approval Order and Judgment" means the order and judgment approving the Agreement and dismissing the Action without prejudice as to the Voluntary Dismissal Defendants in a form to be agreed upon by the parties to this Agreement.

(n)     "Non-Settling Defendant" means any Alleged Co-Conspirator or defendant in this Action other than Domfoam, Valle Foam, and A-Z.

(o)     "Notice Administrator" means the Notice Administrator(s) to be approved by the Court.

(p)     "Opt Out" means a person or entity who would have been a member of the Settlement Class except for his, her, or its timely and valid request for exclusion.

(q)     "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.

(r)     "Released Claims" (as granted, the "Releases") means any and all claims, demands, actions, suits, rights, assertions, allegations, causes of action, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, debts, liabilities, judgments, and remedies, whether class, individual, or otherwise in nature on account of or arising out of the facts, occurrences, transactions or other matters alleged in the Action or in complaints containing similar allegations of conspiracy with respect to any product containing flexible polyurethane foam purchased within, to, or from the United States or Canada before and during the period from January 1, 1999 through and including the Effective Date, including without limitation any such claims which arise under any United States federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, unjust enrichment, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, or the law of any state jurisdiction, that Releasors, or anyone of them, whether directly, representatively, derivatively ever had,

10

now has, or hereafter can, shall, or may have against the Releasees, whether known or unknown (including, but not limited to "Unknown Claims"), suspected or unsuspected, asserted or unasserted, in law or in equity.

(s)     "Releasees" means Individual Settling Defendants together with the present and former officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives of the Voluntary Dismissal Defendants, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing.  Other than these individuals, the term "Releasees" as defined for purposes of this Agreement includes Global Upholstery Co. Limited and Valdomco Inc., both of which are shareholders of Domfoam.

(t)     "Releasors" means the Class Plaintiffs and each and every Class Member who or which is not an Opt Out, on their own behalf and on behalf of their respective direct and indirect parents, subsidiaries and affiliates, their present and former officers, directors, employees, agents, and legal representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing.  As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

(u)     "Voluntary Dismissal Defendants" means Domfoam, Valle Foam and A-Z Sponge & Foam Products Ltd.

11

(v)     "Unknown Claims" means any Released Claim that any Class Plaintiff and/or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Releasees that if known by him, her or it, might have affected his, her or its settlement with and release of the Releasees, or might have affected his, her or its decision not to object to this Agreement.  With respect to any and all Released Claims, the parties stipulate and agree that, upon the Effective Date, and provided that Class Plaintiffs' Interim Lead Counsel does not terminate this Agreement in accordance with the termination rights provided in ¶¶ 11(b), 11(k) or elsewhere herein, each Class Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Final Approval Order and Judgment shall have waived the provisions, rights and benefits equivalent to California Civil Code §1542 (to the extent it applies to the Action), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Provided that Class Plaintiffs' Interim Lead Counsel does not terminate this Agreement in accordance with the termination rights provided in paragraphs 11(b), 11(k) or elsewhere herein, each Class Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Final Approval Order and Judgment shall have waived any and all provisions, rights and benefits conferred by any

law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code § 1542.  The Class Plaintiffs and Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but subject to the terms and conditions herein, and provided that Class Plaintiffs' Interim Lead Counsel does not terminate this Agreement in accordance with the termination rights provided in ¶¶ 11(b), 11(k) or elsewhere herein, each Class Plaintiff (other than an Opt Out) shall expressly have, and upon the Effective Date, each Class Member, who or which is not an Opt Out, shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have fully, finally and forever settled and released (as to the Releasees and not the Voluntary Dismissal Defendants) any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Plaintiffs acknowledge, and the Class Members, who or which is not an Opt Out, shall be deemed to have acknowledged, and by operation of the Final Approval Order and

Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of this Agreement of which this release is a part.

**B.    Preliminary Approval Order, Notice Order, and Hearing**

2.    **Reasonable Best Efforts to Effectuate this Agreement.**    The parties to this Agreement:  (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement, including but not limited to:  (i) cooperating in promptly seeking both preliminary and final approval of this Agreement (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e), securing certification of the Settlement Class and the prompt dismissal without prejudice of the Action as to the Voluntary Dismissal Defendants only); and (ii) fulfilling in a timely and good faith manner the cooperation and other obligations set forth in ¶ 11 herein.  As soon as is practicable but no later than two (2) days after the deadline for Class Plaintiffs' Interim Lead Counsel to elect whether to terminate this Agreement pursuant to ¶ 11(b), and provided that Class Plaintiffs' Interim Lead Counsel does not elect to terminate this Agreement pursuant to ¶ 11(b), Class Plaintiffs' Interim Lead Counsel and the Parties to this Agreement shall jointly file with the Court a stipulation for the immediate suspension of the Action against the Voluntary Dismissal Defendants.  In the interim, however, Class Plaintiffs' Interim Counsel agrees to suspend the Action against Voluntary Dismissal Defendants until the time provided in ¶ 11(b).  The obligations of Voluntary Dismissal Defendants pursuant to this Agreement are subject to any orders entered under the bankruptcy, restructuring or other creditor protection laws of the United States or Canada.  For purposes of clarity, in the event that this

14

Action is stayed by the filing by the Voluntary Dismissal Defendants for protection under the bankruptcy, restructuring or other creditor protection laws of the United States or Canada, then the obligation to seek preliminary approval of this Agreement will be the responsibility of Class Plaintiffs' Interim Lead Counsel.  The aforementioned application for a stay of all proceedings as against Voluntary Dismissal Defendants shall be subject to any other stay of such proceedings (automatic or otherwise) entered by another court, including but not limited to a United States Bankruptcy Court, as a direct or indirect result of filings made by one or more Voluntary Dismissal Defendants under the Bankruptcy and Insolvency Act or the Companies' Creditors Arrangement Act.  Additionally, to the extent permissible by law or reasonably practicable in light of the anticipated bankruptcy, restructuring or creditor protection proceedings, if any proceeding under the bankruptcy, restructuring, or other creditor protection laws of Canada or the United States in any way impacts or impairs the Voluntary Dismissal Defendants' ability to fully comply with any of the obligations set forth in this Agreement, the Voluntary Dismissal Defendants shall use commercially reasonable efforts (to the extent of their ability to do so) to assist Class Plaintiffs' Interim Lead Counsel in seeking relief in that bankruptcy proceeding in order to allow the Voluntary Dismissal Defendants to fully comply with the obligations set forth in this Agreement.   Such commercially reasonable efforts shall include, but are not limited to, the Voluntary Dismissal Defendants joining (to the extent of their ability to do so) Class Plaintiffs' Interim Lead Counsel in any motions or petitions seeking such relief from the bankruptcy, insolvency, or other restructuring court(s).

   3.     **Motion for Preliminary Approval**.  Within thirty (30) business days after the Execution Date of this Agreement, Class Plaintiffs' Interim Lead Counsel shall submit to the Court a motion, to be joined in by the Voluntary Dismissal Defendants, for preliminary approval

of this Agreement, authorization to disseminate notice to the proposed Settlement Class no sooner than the first notice to the Settlement Class which may be directed by the Court in connection with any other settlement or proceedings by which settlement there is created a settlement fund to pay for the costs of notice, subject to the approval of the Court, notice shall be by publication, and for a stay of all proceedings in the Action against the Voluntary Dismissal Defendants (the "Preliminary Approval Motion," and if entered, the "Preliminary Approval Order").  The Preliminary Approval Motion shall include:  (a) the definition of the Settlement Class to be certified by the Court pursuant to this Agreement; (b) the proposed form of, method for, and date of dissemination of notice to the Settlement Class, as agreed upon by Class Plaintiffs' Interim Lead Counsel and the Voluntary Dismissal Defendants prior to submission of the Preliminary Approval Motion; and (c) a proposed form of the Final Approval Order and Judgment (as defined below).

4. **Notice to Class.**  In the event that the Court preliminarily approves the Agreement (*i.e.*, enters the Preliminary Approval Order), Class Plaintiffs' Interim Lead Counsel shall, by and through the Notice Administrator, as soon as practicable, but no sooner than such notice may be required to be given with respect to any other settlement whereby a settlement fund has been created for the benefit of a settlement class, provide those members of the Settlement Class in a form to be approved by the Court, of the Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed Agreement (the "Settlement Hearing,") which Settlement Hearing shall take place no more than ten (10) days following the filing of all objections to the Agreement and responses to such objections).  This notice shall also include the general terms of the Agreement and a description of the rights of those Persons in the Class to object to the Settlement, opt out of the

16

Class, and/or appear at the Settlement Hearing.  Class Plaintiffs' Interim Lead Counsel shall take all necessary and appropriate steps to ensure that notice of the Settlement Hearing is provided in accordance with the order of the Court.

5. **Publication**.  Class Plaintiffs' Interim Lead Counsel shall cause to be published a summary of the notice ("Summary Notice").  Publication will be carried out as soon as is reasonably practicable, but only in connection with and included in any notice provided to the Class as a result of any other settlement with a defendant(s) in the Action pursuant to which a settlement fund is created that may be used to pay for the costs of notice.  The Voluntary Dismissal Defendants shall not have any responsibility for providing notice of this Agreement to the Class.  The Parties shall mutually agree on any content relating solely to the Voluntary Dismissal Defendants that will be used by the Class Plaintiffs' Interim Lead Counsel in any Agreement related press release or other media, including on websites, of Class Plaintiffs' Interim Lead Counsel, and/or the Notice Administrator.

6. **Motion for Final Approval and Entry of Final Judgment.**  Provided that the Voluntary Dismissal Defendants and the Individual Settling Parties  have fulfilled all of their then-due obligations under this Agreement, and further provided that Class Plaintiffs' Interim Lead Counsel does not terminate this Agreement in accordance with the termination rights provided in ¶¶ 11(b), 11(k) or elsewhere herein, at the first opportunity as the motion for Final Approval Order and Judgment is given with respect to any other defendant settling this matter, but not less than ninety (90) calendar days following the entry of the Preliminary Approval Order and at least thirty-five (35) calendar days before the Approval Hearing, Class Plaintiffs' Interim Lead Counsel shall submit a motion for final approval of this Agreement by the Court (the "Final Approval Order and Judgment") after notice to the Class of the Approval Hearing pursuant to ¶¶

4-5 above, and the parties hereto shall jointly seek entry of the Final Approval Order and Judgment:

(a)     fully and finally approving the Agreement and its terms as being fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

(b)     finding that the notice given to the Class as contemplated in ¶¶ 4-5 above constitutes the best notice practicable under the circumstances and complies in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

(c)     directing that the Action be dismissed without prejudice as to the Voluntary Dismissal Defendants and without costs;

(d)     discharging and releasing the Releasees (other than the  Voluntary Dismissal Defendants) from all Released Claims;

(e)     permanently barring and enjoining the institution and prosecution, by Class Plaintiffs and the Class Members, of any other action against the Releasees in any court asserting any Released Claims;

(f)     reserving continuing and exclusive jurisdiction over the Agreement, including all future proceedings concerning the administration, consummation and enforcement of this Agreement;

(g)     determining, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and directing entry of a final judgment of voluntary dismissal without prejudice as to the Voluntary Dismissal Defendants;

(h)    containing such other and further provisions consistent with the terms of this Agreement to which the parties expressly consent in writing; and

(i)    requiring Class Plaintiffs' Interim Lead Counsel to file with the Clerk of the Court a record of potential Class Members who timely and validly excluded themselves from the Settlement Class, and to provide a copy of the record to counsel for the parties to this Agreement.

7.    **Effect of Bankruptcy, Restructuring or other Creditor Protection Filing.**  In the event that the Voluntary Dismissal Defendants file for any form of bankruptcy, restructuring or other credit protection under Canadian law, including but not limited to the Bankruptcy and Insolvency Act and the Companies' Creditors Arrangement Act, and an order under Chapter 15 of the United States Bankruptcy Code is entered in a United States Bankruptcy Court, this Agreement shall remain in effect.  Notwithstanding any automatic stay of proceedings entered or otherwise triggered by the filing of any form of bankruptcy, restructuring or other creditor protection under Canadian law, the parties to this Agreement shall fully and completely perform the terms of this Agreement except as noted in ¶¶ 11(j) and 11(k) herein, and all discovery proceedings, motion practice and other proceedings in this Action will be indefinitely stayed as to the Voluntary Dismissal Defendants. Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall preclude the Class Plaintiffs, or any member of the Class, individually or collectively, from filing a claim in any Canadian or U.S. bankruptcy, restructuring or other creditor protection proceeding which claim is based upon, arising out of or relating to facts, occurrences, transactions or other matters alleged in the Action. To the extent permitted by law, the Voluntary Dismissal Defendants will not object to the filing by Class Plaintiffs, or any member of the Class, of such a claim against the Voluntary Dismissal

19

Defendants in any such Canadian or U.S. bankruptcy, restructuring or creditor protection proceeding, and further agree that nothing in this Agreement shall in any way impair or limit such claim against the Voluntary Dismissal Defendants or the ability of such claimant(s) to seek recovery in any such bankruptcy, restructuring or creditor protection proceeding for any such claim(s) against the Voluntary Dismissal Defendants.  Under no circumstances, however, shall Class Plaintiffs or any member of the Class, individually or collectively, be permitted to file a claim or otherwise challenge the validity, legality, or continuing effect of the Releases granted pursuant to this Agreement or the dismissal without prejudice of the Action as against Voluntary Dismissal Defendants; provided, however, that such Releases and/or voluntary dismissals are not asserted as a defense to or limitation on any claim filed on behalf of Class Plaintiffs or any member of the Class in a Canadian or U.S. bankruptcy, restructuring or other creditor protection proceeding as against the Voluntary Dismissal Defendants, and the parties to this Agreement covenant and agree that no such defense or limitation will be asserted against such a claim against the Voluntary Dismissal Defendants.  For purposes of clarity, the Releases granted shall remain in effect as against the Releasees in connection with a Canadian or U.S. bankruptcy, restructuring or other creditor protection proceeding, and those Releasees are free to assert them as a defense to or limitation on any claim in any proceeding.

8. **No Payments by Defendant.**  Under no circumstances will the Voluntary Dismissal Defendants or Individual Settling Parties be required to pay any amount of money pursuant to this Agreement.

9. **No Liability for Provision of Notice.**  Neither the Voluntary Dismissal Defendants, Individual Settling Parties, the Releasees nor their counsel shall have any responsibility for or liability whatsoever with respect to the provision of notice to the Class by

the Notice Administrator pursuant to ¶¶ 4-5. No Person shall have any claim against Class Plaintiffs' Interim Lead Counsel or the Notice Administrator based on notice given substantially in accordance with the Agreement, or further orders of the Court.

      **10.**    **Releases.**  Upon the Effective Date, and provided that Class Plaintiffs' Interim Lead Counsel does not terminate this Agreement in accordance with the termination rights provided in ¶¶ 11(b) and 11(k), the Releasors, and any other Person claiming (now or in the future) through or on behalf of them, and regardless of whether any such Releasor ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim and Release, any payment from Releasees, shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees (and not the Voluntary Dismissal Defendants) and shall have covenanted not to sue the Releasees (but not the Voluntary Dismissal Defendants) with respect to all such Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting any such Released Claim against the Releasees (other than the Voluntary Dismissal Defendants).

      (a)    With respect to, and only with respect to, the Voluntary Dismissal Defendants pursuant to this Agreement and within three (3) business days of the entry of the Preliminary Approval Order, the Class Plaintiffs (on behalf of the Class) shall direct that the Action be dismissed without prejudice as to the Voluntary Dismissal Defendants.  In no event will such dismissal without prejudice as to the Voluntary Dismissal Defendants apply, alter, negate, or have any effect whatsoever on the full and final release of Claims contemplated by this Agreement as to any Releasees.

(b)     Following the dismissal without prejudice as to Voluntary Dismissal Defendants provided for in ¶ 10(a), all applicable limitations for the filing of the Claims, defenses, counterclaims, and/or third party claims shall be tolled as to the Voluntary Dismissal Defendants.

(c)     In the event that this Agreement receives Preliminary Approval by the Court and Voluntary Dismissal Defendants and Individual Settling Parties provide all of the cooperation as described in ¶ 11 (to the extent such cooperation has been requested of them and consistent with ¶ 11(d)) prior to the Final Approval Hearing, but that, for any reason whatsoever, the Court fails to enter the Final Approval Order and Judgment, Class Plaintiffs (individually in their capacity as named Plaintiffs) shall still be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees, shall covenant not to sue the Releasees with respect to all such Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting any such Released Claim against the Releasees. With respect to an Individual Settling Party, the Releases as granted by Class Plaintiffs (individually in their capacity as named Plaintiffs) shall remain in full force and effect only to the extent that (and only for so long as) such Party continues to provide cooperation as described in ¶ 11. However, in the event that any Individual Settling Party does not provide such cooperation, the Releases as granted to all other Releasees shall remain in full force and effect.

C.      **Cooperation**

11.      **The Voluntary Dismissal Defendants and Individual Settling Parties shall provide cooperation pursuant to this Agreement.**  All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  Cooperation obligations shall apply to the parties hereto who shall act with, by or through Class Plaintiffs' Interim Lead Counsel pursuant to this Agreement in the Action.  Class Plaintiffs' Interim Lead Counsel agrees that, unless compelled to do so by an Order of the Court or as otherwise required by law or the Federal Rules of Civil Procedure, he will not disclose any information obtained or learned from the cooperation of Voluntary Dismissal Defendants and Individual Settling Parties (as defined in this Section) to any party with whom the Voluntary Dismissal Defendants and Releasees (including Individual Settling Parties) have not entered into an agreement of settlement or dismissal.  (The immediately preceding sentence does not apply to Class Plaintiffs' experts and consultants in the Action – who will likewise agree to the limitations in this paragraph – and is not intended to prevent Class Plaintiffs from using cooperation from Voluntary Dismissal Defendants or Individual Settling Parties to prosecute Class Plaintiffs' Action subject to the Stipulated Protective Order entered by the Court.)  Notwithstanding any other provision in this Agreement, the parties to this Agreement may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest, the joint defense privilege and/or any other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Agreement.  Any documents, declarations, affidavits, deposition testimony and information provided to Class Plaintiffs' Interim Lead Counsel pursuant to this provision shall be covered by the Stipulated Protective Order in place in this case.  None of the cooperation provisions are intended to, nor do they waive any such privilege or protection.  Voluntary Dismissal Defendants

23

and Individual Settling Parties agree that their counsels will meet with Class Plaintiffs' Interim

Lead Counsel as is reasonably necessary to discuss any applicable privilege or protection.

       **(a)**     **Preliminary Approval**:  The parties agree to cooperate to the extent reasonably necessary in connection with Class Plaintiffs' Interim Lead Counsel's preparation of the Preliminary Approval Motion and any related documents necessary to effectuate and implement the terms and conditions of this Agreement.

       **(b)**     **Proffers**:  Beginning within five (5) business days of the Execution Date of this Agreement, and, to the extent practicable, at the same time as such a Lawyers' Proffer is made to Direct Purchaser Class Plaintiffs' Interim Co-Lead Counsel and counsel for one or more "Direct Action" Plaintiffs, or at a time mutually agreed upon by the parties, Voluntary Dismissal Defendants and Individual Settling Parties agree that their counsel will meet with Class Plaintiffs' Interim Lead Counsel to provide a general description of the polyurethane foam industry, including ' participation in transactions that are the subject matter of the Action ("Lawyers' Proffer").[2]  Within five (5) calendar days of such Proffer, Class Plaintiffs' Interim Lead Counsel may, at his option, elect to terminate this Agreement with no further obligation to proceed under any terms of this Agreement whatsoever, except as described in this ¶ 11(b) regarding the treatment of any information or documents provided to Class Plaintiffs' Interim Lead Counsel in connection with the Lawyers' Proffer.  Class Plaintiffs' Interim Lead Counsel will, in any event, provide written notice to counsel for Voluntary Dismissal Defendants and Individual Settling Parties of their decision.  In the period from the making of the Lawyers' Proffer through the election (in either case) by Class Plaintiffs' Interim Lead Counsel described above, any information or document provided to Class Plaintiffs' Interim Lead Counsel during the Lawyers' Proffer shall be covered and protected from disclosure pursuant to Rule 408 of the Federal Rules of Evidence.  In the event that Class Plaintiffs' Interim Lead Counsel elects to terminate this Agreement following the Lawyers' Proffer, upon notice of termination of this Agreement, any and all information provided to Class Plaintiffs' Interim Lead Counsel prior to or during the Lawyers' Proffer, and any notes taken by Class Plaintiffs' Interim Lead Counsel during the Lawyers' Proffer, shall be promptly returned to Voluntary Dismissal Defendants or otherwise destroyed and Class Plaintiffs' Interim Lead Counsel shall provide a letter to Voluntary Dismissal Defendants so stating; provided, however, that in the event of such termination nothing in this paragraph or in this Agreement shall preclude Class Plaintiffs' Interim Lead Counsel or other counsel for the Class

---

[2]    During the course of the Lawyers' Proffer, counsel for the Voluntary Dismissal Defendants and Individual Settling Parties may use or refer to certain documents.  Class Plaintiffs' Interim Co-Lead Counsel shall be entitled to view these documents during the Lawyers' Proffer, but are not permitted to make or retain a copy of such documents at that time.  In the event that Class Plaintiffs' Interim Co-Lead Counsel elects not to terminate this Agreement under ¶ 11(b), any documents used or referred to during the Lawyers' Proffer will be provided to Class Plaintiffs' Interim Co-Lead Counsel pursuant to ¶ 11(c).

from seeking and obtaining in discovery any document, materials, data or other information that is independently discoverable under the Federal Rules of Civil Procedure.

(c) **Production of Documents**:  Beginning within fifteen (15) days of the Lawyers' Proffer, provided that Class Plaintiffs' Interim Lead Counsel does not elect to terminate this Agreement pursuant to ¶ 11(b), and subject to the receipt of any necessary consent of certain governmental authorities, the Voluntary Dismissal Defendants and Individual Settling Parties shall promptly produce to Class Plaintiffs' Interim Lead Counsel all documents produced to all governmental authorities in connection with that authority's investigation of potential price-fixing relating to the sale of polyurethane foam (the "Initial Production").   Voluntary Dismissal Defendants also agree to provide to Class Plaintiffs' Interim Lead Counsel, within a reasonable time frame and to the extent practicable, any documents requested by Class Plaintiffs' Interim Lead Counsel pursuant to the Transactional Data Protocol Order (Doc No. 242) or that refer or relate to specific price increases, specific customers or particular events so long as such document(s) are reasonably accessible to the Voluntary Dismissal Defendants and the burden and expense of production of such documents is similarly reasonable.   Any documents produced by Voluntary Dismissal Defendants pursuant to this Agreement shall be subject to the terms set forth in the Stipulated Protective Order in the Action.   In the event of a disagreement between the parties to this Agreement regarding the scope, burden, relevance or permissibility of any such requests, the parties will seek resolution of such disputes from the Court.  For purposes of, and only for purposes of, resolving disputes under this Agreement, Class Plaintiffs, Voluntary Dismissal Defendants and the Individual Settling Parties agree that the Court would have personal jurisdiction over them to rule on the dispute.  Consent to the exercise of personal jurisdiction by the Court with regard to the disputes described herein is not intended to, and in no way does, represent or concede that the Class Plaintiffs, Voluntary Dismissal Defendants and the Individual Settling Parties are properly subject to the exercise of personal jurisdiction by this Court on any other matter whatsoever.

(d) **Availability of Current or Former Officers and Employees of Voluntary Dismissal Defendants or Individual Settling Parties:** In light of the pendency of related governmental matters, no current or former officer or employee or Individual Settling Party may be, as of the Execution Date of this Agreement, available for any interview, declaration, affidavit, deposition or testimony referenced in ¶ 11(e)-(i) below.  The ability and obligation to make such current or former officers or employees available for the interviews, declarations, affidavits, depositions and testimony specified in each of the aforementioned paragraphs is conditioned on the counsel for the Voluntary Dismissal Defendants and/or Individual Settling Party requesting and subsequently receiving the consent of certain governmental authorities to appear and/or provide information or testimony during the pendency of these related matters or an Order of the Court overruling any objection by a governmental

authority and stating that (i) a stay of the provision of such information or testimony is not warranted and (ii) the making available of any individual for one or more of the obligations outlined in ¶ 11 does not interfere with or otherwise adversely affect any rights or benefits received by that party or the Voluntary Dismissal Defendants as granted by that governmental authority to them.  At such time as any of the above individuals becomes available for any interview, declaration, affidavit, deposition and testimony described in each of the aforementioned paragraphs, the Voluntary Dismissal Defendants shall, within ten (10) days of such individual(s) becoming so available, notify Class Plaintiffs' Interim Lead Counsel that such individual(s) is so available.  The parties to this Agreement shall use commercially reasonable efforts, consistent with any applicable legal or ethical obligations, promptly to secure the availability of such individuals.

(e)      **Interviews**: Promptly after entry of the Preliminary Approval Order, upon reasonable notice and upon satisfaction of the provisions of ¶ 11(d) as to the availability of certain individuals, and in coordination with, and if possible and practicable at the same time as made to, Direct Purchaser Class Plaintiffs Interim Lead Counsel and counsel for one or more "Direct Action" Plaintiffs, the Individual Settling Parties shall make themselves available for truthful interview(s). In addition, after the entry of the Preliminary Approval Order, upon reasonable notice and upon satisfaction of the provisions of ¶ 11(d) as to the availability of certain individuals, and in coordination with, and if possible and practicable at the same time as made to, Direct Purchaser Class Plaintiffs' Interim Co-Lead Counsel and counsel for one or more "Direct Action" Plaintiffs, the Voluntary Dismissal Defendants shall make available for truthful interview(s) with Class Plaintiffs' Interim Lead Counsel and/or their experts up to three (3) additional current officers, directors or employees of the Voluntary Dismissal Defendants (other than Individual Settling Parties) as may be requested by Class Plaintiffs' Interim Lead Counsel.  Each Interview shall take place on a single day and shall not exceed eight hours each except for good cause. (An interview of an Individual Settling Party or any other individual made available by a Voluntary Dismissal Defendant hereinafter is an "Interview").  The Interviews will not be videotaped, recorded or professionally transcribed.  The Voluntary Dismissal Defendants will also respond to reasonable follow-up inquiries (both in scope and in number) as may be made by Class Plaintiffs' Interim Lead Counsel.  At Class Plaintiffs' Interim Lead Counsel's request, the Voluntary Dismissal Defendants will meet and confer regarding any Interviews in addition to those set forth above sought by Class Plaintiffs' Interim Lead Counsel, but failing agreement between the parties, the parties will seek resolution of such disputes from the Court.  Notwithstanding any other provision of this Agreement, in the event that Defendant believes that Class Plaintiffs' Interim Lead Counsel has unreasonably designated any current officer or employee for interview, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary.  The Voluntary Dismissal Defendants shall use commercially reasonable efforts to assist Class Plaintiffs' Interim Lead Counsel in arranging Interviews with former officers and employees of Domfoam or Valle

Foam. Other than its own legal fees, Voluntary Dismissal Defendants and Individual Settling Parties shall not be responsible for any expenses associated with the interviews of current or former directors, officers or employees granted to Class Plaintiffs under this Agreement. Class Plaintiffs' Interim Lead Counsel and the parties to this Agreement will confer regarding the use of telephone interviews where appropriate. In any event, in designating those current officers and employees of Voluntary Dismissal Defendants for Interviews, Class Plaintiffs' Interim Lead Counsel shall communicate with counsel for any other Plaintiff or Plaintiff Class with whom the Voluntary Dismissal Defendants have reached an agreement of dismissal or settlement. In the event that Class Plaintiffs' Interim Lead Counsel and counsel for any other Plaintiff or Plaintiff Class designate the same individual for interviews, that individual so designated shall only be made available for a single interview.

(f) **Disclosure of Information Provided**: In no event shall any of the information or documents provided to Class Plaintiffs' Interim Lead Counsel pursuant to the Lawyers' Proffer, Production of Documents (pursuant to ¶ 11(c)), or Interviews (pursuant to ¶ 11(e)) be in any way shared, disseminated, exchanged or otherwise revealed, prior to such time as that information or document is produced or otherwise made available in the ordinary course of the Action, to any individual or entity (other than those represented by Class Plaintiffs' Interim Lead Counsel) other than an individual or entity that is a signatory to an agreement with the Voluntary Dismissal Defendants which provides for the release or dismissal of any and all claims, demands, actions, suits, rights, assertions, allegations, causes of action, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, debts, liabilities, judgments, and remedies, whether class, individual, or otherwise in nature, that such individual or entity, whether directly, representatively, derivatively ever had, now has, or hereafter can, shall, or may have against the direct and indirect parents, subsidiaries, and affiliates of the Voluntary Dismissal Defendants, and the present and former officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives of the Voluntary Dismissal Defendants, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, on account of or arising out of the facts, occurrences, transactions or other matters alleged in the Action or in complaints containing similar allegations of conspiracy with respect to any polyurethane foam or polyurethane foam product, purchased within, to, or from the United States or Canada.

(g) **Declarations and Affidavits**: Promptly after entry of the Preliminary Approval Order, upon reasonable notice and upon satisfaction of the provisions of ¶ 11(d) as to the availability of certain individuals, and in coordination with, and if possible and practicable at the same time as made to, Direct Purchaser Class Plaintiffs Interim Lead Counsel and counsel for one or more "Direct Action" Plaintiffs, the Individual Settling Parties shall make themselves available to Class Plaintiffs' Interim Lead Counsel and the Voluntary

Dismissal Defendants shall make available up to three (3) additional current officers, directors or employees of the Voluntary Dismissal Defendants (other than Individual Settling Parties) as may be requested by Class Plaintiffs' Interim Lead Counsel for the preparation of truthful declarations and/or affidavits in connection with motions to dismiss, class certification, and summary judgment motions, subject to the availability of such officers or employees. At Class Plaintiffs' Interim Lead Counsel's request, Voluntary Dismissal Defendants will meet and confer regarding any individuals in addition to those set forth above, but failing agreement the parties shall seek resolution by the Court. Voluntary Dismissal Defendants will also make current officers and employees available to provide declarations or affidavits regarding the authentication of documents (such declarations and/or affidavits shall not count towards the three (3) permitted pursuant to this paragraph). Notwithstanding any other provision of this Agreement, in the event that Voluntary Dismissal Defendants believe that Class Plaintiffs' Interim Lead Counsel has unreasonably designated any current officer or employee for the preparation of truthful declarations and/or affidavits, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary. The Voluntary Dismissal Defendants shall use commercially reasonable efforts to assist Class Plaintiffs' Interim Lead Counsel in arranging for such declarations and/or affidavits from former officers and employees of Voluntary Dismissal Defendants for such purposes. Other than its own legal fees, Voluntary Dismissal Defendants and Individual Settling Parties shall not be responsible for any expenses associated with the preparation of declarations and/or affidavits of current or former directors, officers or employees. In any event, in designating those current officers and employees of Voluntary Dismissal Defendants for the preparation of truthful declarations and/or affidavits, Class Plaintiffs' Interim Lead Counsel shall communicate with counsel for any other Plaintiff or Plaintiff Class with whom the Voluntary Dismissal Defendants have reached an agreement of dismissal or settlement. In the event that Class Plaintiffs' Interim Lead Counsel and counsel for any other Plaintiff or Plaintiff Class designate the same individual for the preparation of truthful declarations and/or affidavits, that individual so designated shall prepare only a single declaration and/or affidavit.

(h) **Depositions**: Promptly after entry of the Preliminary Approval Order, upon reasonable notice and upon satisfaction of the provisions of ¶ 11(d) as to the availability of certain individuals, and in coordination with, and if possible and practicable at the same time as made to, Direct Purchaser Class Plaintiffs' Interim Lead Counsel and counsel for one or more "Direct Action" Plaintiffs, the Individual Settling Parties shall make themselves available and Voluntary Dismissal Defendants shall make available for truthful deposition(s) in the Action up to three (3) additional current officers, directors or employees of each of the Voluntary Dismissal Defendants (other than Individual Settling Parties) as may be requested by Class Plaintiffs' Interim Lead Counsel. At Class Plaintiffs' Interim Lead Counsel's request, Voluntary Dismissal Defendants will meet and confer regarding any individuals in addition to those set forth above, but failing agreement the parties will seek resolution by the Court. Written notice by

Class Plaintiffs' Interim Lead Counsel upon Voluntary Dismissal Defendants' counsel shall constitute sufficient service for such depositions. Voluntary Dismissal Defendants shall use commercially reasonable efforts to assist Class Plaintiffs' Interim Lead Counsel in arranging the deposition of former officers and employees of Voluntary Dismissal Defendants. Notwithstanding any other provision of this Agreement, in the event that Voluntary Dismissal Defendants believe that Class Plaintiffs' Interim Lead Counsel has unreasonably designated any current officer or employee for deposition, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary. Other than its own legal fees, Voluntary Dismissal Defendants and Individual Settling Parties shall not be responsible for any expenses associated with depositions of current or former directors, officers or employees. In any event, in designating those current officers and employees of Voluntary Dismissal Defendants for depositions, Class Plaintiffs' Interim Lead Counsel shall communicate with counsel for any other Plaintiff or Plaintiff Class with whom the Voluntary Dismissal Defendants have reached an agreement of dismissal or settlement. In the event that Class Plaintiffs' Interim Lead Counsel and counsel for any other Plaintiff or Plaintiff Class in the Action designate the same individual for deposition, that individual so designated shall only be made available for a single deposition.

   **(i)    Testimony at Trial**:  Upon reasonable notice and upon satisfaction of the provisions of ¶ 11(d) as to the availability of certain individuals, the Individual Settling Parties shall make themselves available and Voluntary Dismissal  Defendants shall make available for truthful testimony at trial, up to three (3) additional current officers and employees of Voluntary Dismissal Defendants designated by Class Plaintiffs' Interim Lead Counsel, who possess information, based on Class Plaintiffs' Interim Lead Counsel's good faith belief, that would assist Plaintiffs in trial of the Plaintiffs' claims as alleged in the Action, subject to the availability of such officers or employees. Voluntary Dismissal Defendants shall use commercially reasonable efforts to assist Class Plaintiffs' Interim Lead Counsel in arranging for the appearance of former officers and employees at trial, but neither Voluntary Dismissal Defendants nor Individual Settling Parties shall be obligated to bear the expenses, including but not limited to legal fees, of testimony of such current or former directors, officers and employees. Notwithstanding any other provision of this Agreement, in the event that the Voluntary Dismissal Defendants believe that Class Plaintiffs' Interim Lead Counsel has unreasonably designated any current officer or employee for testimony at trial, the parties agree to meet and confer regarding such designation and seek resolution from the Court, if necessary.

   **(j)    Obligations in light of Bankruptcy, Restructuring or other Creditor Protection Proceedings**:  The obligations of or requests made to Voluntary Dismissal Defendants (in their corporate capacities) under ¶ 11 (other than the Lawyers' Proffer and the Initial Production), including, but not limited to, any subsequent requests for the production of or access to documents by Class Plaintiffs' Interim Lead Counsel, shall be contingent upon the Voluntary

Dismissal Defendants' abilities (in their corporate capacities) to meet such obligations or requests subsequent to the filing of a form of bankruptcy, restructuring or other creditor protection under Canadian law. For example, after the filing of any such form of bankruptcy, Voluntary Dismissal Defendants may no longer have access to certain facilities or records. In this regard, none of the obligations described in ¶ 11 shall obligate the Voluntary Dismissal Defendants or their counsel to provide access to, produce or otherwise make available information or documents the Voluntary Dismissal Defendants (in their corporate capacities) are no longer able or permitted to access. For purposes of clarity, to the extent the Voluntary Dismissal Defendants continue to have access to such information or documents following a bankruptcy, restructuring or other creditor protection filing, the obligations outlined above shall, subject to any of the conditions otherwise specified, continue in full force and effect. Nothing in this paragraph, except a material breach of this Agreement by Class Plaintiffs, shall affect or limit the Voluntary Dismissal Defendants' obligations under the last two sentences of ¶ 2 of this Agreement, and the obligations imposed under those two sentences are incorporated by reference as if fully stated herein.

(k) **Termination**: Individual Settling Parties and Voluntary Dismissal Defendants' obligations to cooperate under the Agreement terminate when final judgment has been rendered, with no remaining rights of appeal, in the Action against all defendants. In the event of an alleged material breach by either Party, the non-breaching Party shall have the right to apply to the Court for specific performance. Class Plaintiffs, Voluntary Dismissal Defendants and the Individual Settling Parties specifically agree that the Court would have personal jurisdiction over them for purposes of determining whether an alleged breach of this Agreement has occurred.[3] If the Court finds a Party, including an Individual Settling Party, to have materially breached this Agreement and orders specific performance as to that Party, and that Party nonetheless fails to comply with such an order, the Agreement shall be terminated as to that, and only that, Party. For purposes of clarity, if the Court finds that an Individual Settling Party has materially breached this Agreement but does not order specific performance as to that Individual Settling Party, and such Individual Settling Party is capable of performing, but nonetheless does not specifically cure his, her or its material breach, the Agreement shall be terminated as to that, and only that, Individual Settling Party. In the event that the Court finds an Individual Settling Party not to have materially breached this Agreement, then this Agreement shall remain in effect as to that Individual Settling Party. In no event (except as explicitly provided for in ¶ 11(b)) shall any Party be permitted to unilaterally terminate this Agreement. Further, in no event shall any Individual Settling Party's actual or alleged breach of any of the obligations described in ¶ 11 in any way apply, alter, negate, or have any effect whatsoever on (i) the dismissal without prejudice of the

---

[3]    Consent to the exercise of personal jurisdiction by the Court with regard to the disputes described herein is not intended to, and in no way does, represent or concede that the Plaintiffs, Voluntary Dismissal Defendants or any Individual Settling Party are properly subject to the exercise of personal jurisdiction by this Court on any other matter whatsoever.

Action as to the Voluntary Dismissal Defendants or (ii) the full and final release of Claims contemplated by this Agreement as to any other Releasees, including the present and former officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives of the Voluntary Dismissal Defendants, and the predecessors, successors, heirs, executors, administrators and assigns of each of the Voluntary Dismissal Defendants.

**D.      Attorneys' Fees and Reimbursement of Expenses**

**12.      No Liability for Fees and Expenses of Class Plaintiffs' Interim Lead Counsel or Any Other Counsel for Plaintiffs in this Action.** The Releasees shall have no responsibility for, and no liability whatsoever with respect to, any award to Class Plaintiffs' Interim Lead Counsel or any other counsel for Plaintiffs in this Action for attorneys' fees or reimbursement of expenses from any future settlement, and/or to any other Person who may assert some claim thereto, or any award of such attorneys' fees, reimbursement of expenses or other claim that the Court may make in the Action.

**E.      Conditions of Agreement, Effect of Disapproval, Cancellation or Termination**

**13.      Effective Date**. This Agreement shall become final on the date (the "Effective Date") that: (a) the Court has entered a final order and judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against Voluntary Dismissal Defendants without prejudice as to all Settlement Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final order and judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §

1651, shall be taken into account in determining the above-stated times. On the Execution Date of this Agreement, the parties hereto shall be bound by its terms, and this Agreement shall not be rescinded unless in accordance with terms provided herein.

14. **Failure of Effective Date to Occur**. If all of the conditions specified in ¶ 13 are not met, then this Agreement shall be cancelled and terminated, subject to and in accordance with ¶ 15 below and except as otherwise provided in ¶ 10(c), unless the parties mutually agree in writing to proceed with this Agreement. To the extent that Voluntary Dismissal Defendants do not file a form of bankruptcy, restructuring or creditor protection under Canadian law, including but not limited to the Bankruptcy and Insolvency Act or the Companies' Creditors Arrangement Act and Chapter 15 of the United States Bankruptcy Code, on or before January 31, 2012, or if after such a filing is made, Voluntary Dismissal Defendants fail to qualify for bankruptcy, restructuring or creditor protection (as appropriate), this Agreement shall be null and void and the respective parties' rights and positions shall be as set forth in ¶ 16 below.

15. **Failure to Enter Preliminary Approval Order or Final Approval Order and Judgment**. If the Court does not enter the Preliminary Approval Order or the Final Approval Order and Judgment, or if this Court enters the Final Approval Order and Judgment and appellate review is sought and, on such review, the Final Approval Order and Judgment is finally vacated, modified, or reversed, then this Agreement shall be cancelled and terminated (except as otherwise provided in ¶ 10(c)) , unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of the notice by the Court of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Agreement under the terms of the Preliminary Approval Order and the Final Approval Order and Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of

Class Plaintiffs and the Class by Class Plaintiffs' Interim Lead Counsel.  No party to the Agreement shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any the award of attorneys' fees (or denial of such award) or proper distribution of a future settlement amount, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any party.  Without limiting the foregoing, a Voluntary Dismissal Defendant, Individual Settling Party and/or Releasee shall have, in its, his or her sole and absolute discretion, the option to terminate the Agreement in its entirety in the event that the Final Approval Order and Judgment, upon becoming Final, does not provide for the dismissal without prejudice of the Action against Voluntary Dismissal Defendant and the full discharge of the Released Claims.

16.    **Termination**.  Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that Plaintiffs elect to exercise their rights pursuant to ¶ 11(b) of this Agreement, the Agreement as described herein is not finally approved by the Court or the Final Approval Order and Judgment is reversed or vacated following any appeal taken therefrom, then:

(a)    the parties shall be restored to their respective positions in the Action as of the Execution Date (except as otherwise provided in ¶ 10(c)), with all of their respective claims and defenses, preserved as they existed on that date;

(b)    the terms and provisions of this Agreement shall be null and void and shall have no further force or effect with respect to the parties (except as otherwise provided in ¶ 10(c)), and neither the existence nor the terms of

33

this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(c)     any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

## F.     Opt Outs and Opt-Out Protection

**17.**     Notice of Opt-Outs.  Class Plaintiffs' Interim Lead Counsel or their designee shall direct the Notice Administrator to send copies of any requests for exclusion from the Settlement Class to the parties to this Agreement as they are received.

**18.**     Communication with Opt Outs.  The Voluntary Dismissal Defendants or their counsel shall be entitled to communicate with any potential Settlement Class Member regarding its decision to opt out of the Settlement Class only if, prior to communicating with a potential Settlement Class Member, the Voluntary Dismissal Defendants first receive permission from Class Plaintiffs' Interim Lead Counsel authorizing the communication, which permission shall not be unreasonably withheld.

**19.**     Benefits of Agreement.  The parties to this Agreement agree that persons or entities that exercise their opportunity to opt out of the Settlement Class and do not elect to be bound by the terms of this Agreement are not entitled to the benefits and relief of this Agreement.

## G.     No Admission of Liability

**20.     Final and Complete Resolution**.  Plaintiffs and the Releasees intend the Agreement as described herein to be a final and complete resolution of all disputes or possible disputes between them with respect to the Action and to compromise claims that would be

contested, and it shall not be deemed an admission by any party to this Agreement as to the merits of any claim or defense or any allegation made in the Action.

21.    **Use of Agreement as Evidence**.  Neither this Agreement nor any of its provisions, nor any act performed or document executed pursuant to or in furtherance of this Agreement (including, but not limited to, the Lawyers' Proffer whether or not Plaintiffs subsequently exercise their right to terminate this Agreement):  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, of any allegation made in the Action, or of any wrongdoing or liability of any party to this Agreement; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of the Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Agreement, and except that the Releasees may file this Agreement and/or the Final Approval Order and Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.  The limitations described in this paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order and Judgment.

## H.    Miscellaneous Provisions

22.    **Right to Communicate**.  Class Plaintiffs' Interim Lead Counsel acknowledges and agrees that Voluntary Dismissal Defendants shall have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members, only as provided in

¶ 18 above, except that Voluntary Dismissal Defendants, as well as Individual Settling Parties, may communicate with Class Members about matters that: (i) are unrelated to this Agreement, the Action or the facts, allegations, circumstances, occurrences or claims that form the basis for the Action, provided that such communications constitute:  (1) Communications between Settlement Class Members and those whose responsibilities include customer relations to the extent such communications are initiated by Settlement Class Members; (2) Communications between Settlement Class Members who are ongoing customers of,  or who seek to become customers of, the Parties to this Agreement; and (3) Communications that might be necessary to conduct  the businesses of the parties to this Agreement in the ordinary course.  To the extent that Voluntary Dismissal Defendants or anyone acting on their behalf have any communications with members of the Settlement Class regarding matters other than those in the ordinary course of business, Voluntary Dismissal Defendants shall promptly notify Interim Class Counsel, in writing, of the identity of the Class Member, the participants in the communication, the date of the communication, whether the communication was oral or in writing and the subject matter of the communication.

      23.    **Voluntary Agreement**.  The parties agree that the terms of the Agreement as described herein were negotiated in good faith by the parties, and reflect an agreement that was reached voluntarily after consultation with competent legal counsel.

      24.    **Consent to Jurisdiction**.  The parties to this Agreement hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

25.     **Resolution of Disputes; Retention of Exclusive Jurisdiction**.  Any disputes between or among and/or between the parties to this Agreement and any Class Member or Members (or their counsel) concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Agreement.

26.     **Binding Effect**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by Class Plaintiffs and Class Plaintiffs' Interim Lead Counsel shall be binding upon all Class Members.

27.     **Authorization to Enter Agreement**.  The undersigned representatives of Voluntary Dismissal Defendants represent that they are fully authorized to enter into and to execute this Agreement on behalf of Voluntary Dismissal Defendants.  Class Plaintiffs' Interim Lead Counsel, on behalf of the Class Plaintiffs, pursuant to the Initial Case Management Order and subject to Court approval, is expressly authorized to take all action required or permitted to be taken by or on behalf of this Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Class that they deem appropriate.

28.     **Notices**.  All notices under this Agreement shall be in writing.  Each such notice shall be given either by (a) e-mail, (b) hand delivery, (c) registered or certified mail, return receipt requested, postage pre-paid, (d) Federal Express or similar overnight courier, or (e) facsimile and first class mail, postage pre-paid, and, if directed to any Class Member, shall be addressed to Class Plaintiffs' Interim Lead Counsel at their addresses set forth on the signature page hereof, and if directed to Voluntary Dismissal Defendants, shall be addressed to their

37

attorneys at the address set forth on the signature pages hereof or such other addresses as Class Plaintiffs' Interim Lead Counsel or Voluntary Dismissal Defendants may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

29.    **No Conflict Intended**.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30.    **No Party Deemed to Be the Drafter**.  None of the parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

31.    **Choice of Law**.  This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio without giving effect to that State's choice of law principles.

32.    **Amendment; Waiver**.  This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

33.    **Execution in Counterparts**.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the parties to this Agreement shall exchange among themselves

original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

34.     **Integrated Agreement**.  This Agreement constitutes the entire agreement between the parties and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

35.     **Non-Disclosure.**  Until such time as (i) the five-day period specified in ¶ 11(b) has expired and (ii) Class Plaintiffs' Interim Lead Counsel have elected, on behalf of Class Plaintiffs and all Class Members, either to continue in or terminate this Agreement, Class Plaintiffs' Interim Lead Counsel may not disclose to any individual or entity other than Class Plaintiffs, Class Members or any attorney representing one or more individuals or entities within those groups the terms and conditions of this Agreement or the fact of its negotiation.  Disclosure to parties other than those specified in this paragraph is permitted only after (i) the expiration of the five-day period specified in ¶ 11(b) and (ii) Class Plaintiffs' Interim Lead Counsel's election to continue in or terminate this Agreement.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date first herein above written.

PLAINTIFFS' INTERIM LEAD COUNSEL,
on behalf of Class Plaintiffs individually and on behalf of the Class

By:  _s/Marvin A. Miller_ _____

Marvin A. Miller
MILLER LAW LLC
115 LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
Fax: (312) 676-2676
mmiller@millerlawllc.com

By: _____

*Bruce Bradley*

Bruce Bradley
Valle Foam Industries (1995) Inc.

By: _____

Dean Brayiannis
Valle Foam Industries (1995) Inc.

By: _____

Michael Cappuccino
Domfoam International, Inc.

By: _____

Pietro (Peter) Foti
Domfoam International, Inc.

By: _____

Duke Greenstein
A-Z Sponge & Foam Products Ltd.

By: _____

John Howard
Domfoam International, Inc.

By: _____

Dale McNeill
Valle Foam Industries (1995) Inc.

By: _____

James William Sproule
A-Z Sponge & Foam Products Ltd.

By: _____

Robert Rochietti-Valle
Valle Foam Industries (1995) Inc.

40

By: _____
     Bruce Bradley
     Valle Foam Industries (1995) Inc.

By: _____
     Dean Brayiannis
     Valle Foam Industries (1995) Inc.


By: _____
     Michael Cappuccino
     Domfoam International, Inc.


By: _____
     Pietro (Peter) Foti
     Domfoam International, Inc.


By: _____
     Duke Greenstein
     A-Z Sponge & Foam Products Ltd.


By: _____
     John Howard
     Domfoam International, Inc.


By: _____
     Dale McNeill
     Valle Foam Industries (1995) Inc.


By: _____
     James William Sproule
     A-Z Sponge & Foam Products Ltd.


By: _____
     Robert Rochietti-Valle
     Valle Foam Industries (1995) Inc.

40

By: _____
          Bruce Bradley
          Valle Foam Industries (1995) Inc.

By: _____
          Dean Brayiannis
          Valle Foam Industries (1995) Inc.

By: _____
DOMENICO (Mike Michael Cappuccino
          Domfoam International, Inc.

By: _____
          Pietro (Peter) Foti
          Domfoam International, Inc.

By: _____
          Duke Greenstein
          A-Z Sponge & Foam Products Ltd.

By: _____
          John Howard
          Domfoam International, Inc.

By: _____
          Dale McNeill
          Valle Foam Industries (1995) Inc.

By: _____
          James William Sproule
          A-Z Sponge & Foam Products Ltd.

By: _____
          Robert Rochietti-Valle
          Valle Foam Industries (1995) Inc.

40

By: _____

       Bruce Bradley
       Valle Foam Industries (1995) Inc.

By: _____

       Dean Brayiannis
       Valle Foam Industries (1995) Inc.

By: _____

       Michael Cappuccino
       Domfoam International, Inc.

By: _Pietro (Peter) Foti_____

       Pietro (Peter) Foti
       Domfoam International, Inc.

By: _____

       Duke Greenstein
       A-Z Sponge & Foam Products Ltd.

By: _____

       John Howard
       Domfoam International, Inc.

By: _____

       Dale McNeill
       Valle Foam Industries (1995) Inc.

By: _____

       James William Sproule
       A-Z Sponge & Foam Products Ltd.

By: _____

       Robert Rochietti-Valle
       Valle Foam Industries (1995) Inc.

By: _____
       Bruce Bradley
       Valle Foam Industries (1995) Inc.

By: _____
       Dean Brayiannis
       Valle Foam Industries (1995) Inc.

By: _____
       Michael Cappuccino
       Domfoam International, Inc.

By: _____
       Pietro (Peter) Foti
       Domfoam International, Inc.

By: _____
       Duke Greenstein
       A-Z Sponge & Foam Products Ltd.

By: _____
       John Howard
       Domfoam International, Inc.

By: _____
       Dale McNeill
       Valle Foam Industries (1995) Inc.

By: _____
       James William Sproule
       A-Z Sponge & Foam Products Ltd.

By: _____
       Robert Rochietti-Valle
       Valle Foam Industries (1995) Inc.

By: _____
       Bruce Bradley
       Valle Foam Industries (1995) Inc.

By: _____
       Dean Brayiannis
       Valle Foam Industries (1995) Inc.

By: _____
       Michael Cappuccino
       Domfoam International, Inc.

By: _____
       Pietro (Peter) Foti
       Domfoam International, Inc.

By: _____
       Duke Greenstein
       A-Z Sponge & Foam Products Ltd.

By: _____
       John Howard
       Domfoam International, Inc.

By: _____
       Dale McNeill
       Valle Foam Industries (1995) Inc.

By: _____
       James William Sproule
       A-Z Sponge & Foam Products Ltd.

By: _____
       Robert Rochietti-Valle
       Valle Foam Industries (1995) Inc.

By: _____

       Bruce Bradley
       Valle Foam Industries (1995) Inc.

By: _____

       Dean Brayiannis
       Valle Foam Industries (1995) Inc.

By: _____

       Michael Cappuccino
       Domfoam International, Inc.

By: _____

       Pietro (Peter) Foti
       Domfoam International, Inc.

By: _____

       Duke Greenstein
       A-Z Sponge & Foam Products Ltd.

By: _____

       John Howard
       Domfoam International, Inc.

By: _____

       Dale McNeill
       Valle Foam Industries (1995) Inc.

By: _____

       James William Sproule
       A-Z Sponge & Foam Products Ltd.

By: _____

       Robert Rochietti-Valle
       Valle Foam Industries (1995) Inc.

By: _____
      Bruce Bradley
      Valle Foam Industries (1995) Inc.

By: _____
      Dean Brayiannis
      Valle Foam Industries (1995) Inc.

By: _____
      Michael Cappuccino
      Domfoam International, Inc.

By: _____
      Pietro (Peter) Foti
      Domfoam International, Inc.

By: _____
      Duke Greenstein
      A-Z Sponge & Foam Products Ltd.

By: _____
      John Howard
      Domfoam International, Inc.

By: _____
      Dale McNeill
      Valle Foam Industries (1995) Inc.

By: _____
      James William Sproule
      A-Z Sponge & Foam Products Ltd.

By: _____
      Robert Rochietti-Valle
      Valle Foam Industries (1995) Inc.

By: _____
        Bruce Bradley
        Valle Foam Industries (1995) Inc.

By: _____
        Dean Brayiannis
        Valle Foam Industries (1995) Inc.

By: _____
        Michael Cappuccino
        Domfoam International, Inc.

By: _____
        Pietro (Peter) Foti
        Domfoam International, Inc.

By: _____
        Duke Greenstein
        A-Z Sponge & Foam Products Ltd.

By: _____
        John Howard
        Domfoam International, Inc.

By: _____
        Dale McNeill
        Valle Foam Industries (1995) Inc.

By: _____
        James William Sproule
        A-Z Sponge & Foam Products Ltd.

By: _____
        Robert Rochietti-Valle
        Valle Foam Industries (1995) Inc.

40

By: _____
     Tony Vallecoccia
     Valle Foam Industries (1995) Inc.

By: _____
     Fred Zickmantel
     Valle Foam Industries (1995) Inc.

DEFENDANTS DOMFOAM INTERNATIONAL INC. AND VALLE FOAM INDUSTRIES (1995) INC. AND A-Z SPONGE & FOAM PRODUCTS LTD.

By: _____
     Tony Vallecoccia
     President, Valle Foam Industries (1995) Inc.

APPROVED AS TO FORM BY OUTSIDE COUNSEL TO DEFENDANTS DOMFOAM INTERNATIONAL INC., VALLE FOAM INDUSTRIES (1995) INC. AND A-Z SPONGE & FOAM PRODUCTS LTD.

By: _____
     Shepard Goldfein
     Shepard.Goldfein@skadden.com
     SKADDEN ARPS SLATE MEAGHER & FLOM LLP
     Four Times Square
     New York, NY 10036
     Tel: (212) 735-3000
     Fax: (212) 735-2000

#1334414 v1

41

By: _____
       Tony Vallecoccia
       Valle Foam Industries (1995) Inc.

By: _____
       Fred Zickmantel
       ~~Valle Foam Industries (1995) Inc.~~ Jan 2, 2012.
       DOMFOAM Inj.

DEFENDANTS DOMFOAM INTERNATIONAL INC.
AND VALLE FOAM INDUSTRIES (1995) INC. AND A-
Z SPONGE & FOAM PRODUCTS LTD.

By: _____
       Tony Vallecoccia
       President, Valle Foam Industries (1995) Inc.


APPROVED AS TO FORM BY OUTSIDE COUNSEL TO
DEFENDANTS DOMFOAM INTERNATIONAL INC.,
VALLE FOAM INDUSTRIES (1995) INC. AND A-Z
SPONGE & FOAM PRODUCTS LTD.


By: _____
       Shepard Goldfein
       Shepard.Goldfein@skadden.com
       SKADDEN ARPS SLATE MEAGHER &
          FLOM LLP
       Four Times Square
       New York, NY 10036
       Tel: (212) 735-3000
       Fax: (212) 735-2000

APPROVED AS TO FORM BY OUTSIDE COUNSEL TO
DEFENDANTS DOMFOAM INTERNATIONAL INC.,
VALLE FOAM INDUSTRIES (1995) INC. AND A-Z
SPONGE & FOAM PRODUCTS LTD.

By: _____
      Shepard Goldfein
      Shepard.Goldfein@skadden.com
      SKADDEN ARPS SLATE MEAGHER &
          FLOM LLP
      Four Times Square
      New York, NY 10036
      Tel:  (212) 735-3000
      Fax:  (212) 735-2000

#1334414 v1

42