**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) ) MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ) |
| This document relates to:<br><br>ALL DIRECT PURCHASER (CLASS) CASES | ) ) ) ) ) |

**DIRECT PURCHASER (CLASS) PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR APPROVAL OF PROPOSED PROGRAM FOR
TRANSMITTING NOTICE OF THE VITAFOAM SETTLEMENT AND
DOMFOAM SETTLEMENT TO MEMBERS OF THE PROPOSED
SETTLEMENT CLASSES**

**TABLE OF CONTENTS**

                                                                               **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..................................................................................................................................3

I.      NOTICE SHOULD BE SENT TO ALL MEMBERS OF THE PROPOSED SETTLEMENT CLASSES. .................................................................3

II.     DIRECT MAIL NOTICE IS RECOGNIZED AS THE MOST EFFECTIVE MEANS OF DELIVERING NOTICE TO CLASS MEMBERS. ........................................................................................................................6

III.    THIS COURT SHOULD ORDER ALL DEFENDANTS TO PROVIDE THEIR CUSTOMER LISTS, TO PERMIT AND FACILITATE TRANSMISSION OF THE NOTICE BY DIRECT MAIL. .................................8

IV.    SUPPLEMENTATION OF DIRECT MAIL NOTICE WITH PUBLICATION NOTICE, PRESS RELEASES AND A WEB SITE. ..................11

V.     SETTLEMENT ADMINISTRATION BY THE GARDEN CITY GROUP ........13

CONCLUSION ................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aftermarket Automotive Lighting Products Antitrust Litig.*,
  No. 2:09-ml-02007-GW (PJWx) (C.D. Cal.)..................................................................8

*In re Air Cargo Shipping Services Antitrust Litig.*,
  No. 06-md-1775, 2009 WL 3077396 (E.D. N.Y. Sept. 25, 2009)................................5

*In re Art Materials Antitrust Litig.*,
  MDL Dkt. No. 436, 1983 WL 1815 (N.D. Ohio May 2, 1983)..............................6, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  MDL Dkt. No. 1361, 216 F.R.D. 197 (D. Me. June 13, 2003)....................................6

*Coon v. Froehlich*,
  573 F. Supp. 918 (S.D. Ohio 1983) ..............................................................................5

*In re Global Crossing Securities and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................7

*Havoco of Am., Ltd. v. Shell Oil Co.*,
  626 F.2d 549 (7th Cir. 1980) ........................................................................................4

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004) ...............................................................................4

*In re Municipal Derivatives Antitrust Litig.*,
  Modified Order Approving Class Plaintiffs' and Defendant
  Morgan Stanley's Addendum to Settlement Agreement,
  No. 08-md-09150-VM (S.D.N.Y. May 4, 2011) ........................................................10

*In re Nissan Motor Corp. Antitrust Litig.*,
  430 F. Supp. 231 (S.D. Fla. 1977) ................................................................................4

*Nota Music Publishing, Inc., et al. v. Sirius Satellite Radio, Inc.*,
  No. 07-cv-6307 (AKH) (S.D.N.Y.) ..............................................................................8

*Pinkerton v. United States*,
  328 U.S. 640 (1946)......................................................................................................4

*Pinney Dock & Transport Co. v. Penn Cent. Corp.*,
  991 F. Supp. 908 (N.D. Ohio 1998)..............................................................................4

*In re Processed Egg Prods. Antitrust Litig.*,
  Order Approving Dissemination of Notice of Settlements Between
  Direct Purchaser Plaintiffs and (i) Defendant Sparboe Farms, Inc. and
  (ii) Defendants Moark, LLC, Norco Ranch, LLC, and Land O'Lakes, Inc.,
  No. 08-md-02002 (E.D. Pa. July 15, 2010) ...........................................................5, 6

*Rafton, et al. v. Rydex Series Funds, et al.*,
  No. 10-cv-1171 (LHK) (N.D. Cal.) ..............................................................................8

*U.S. v. Wade*,
  318 F.3d 698 (6th Cir. 2003) ......................................................................................4

*In re Urethane Antitrust Litig.*,
  Order Preliminarily Approving Settlement with Bayer,
  Certifying a Settlement Class, and Authorizing Dissemination of Notice,
  No. 04-md-1616-JWL (D. Kan. April 6, 2006) .....................................................5, 6. 10

*In re Visa Check/Master Money Antitrust Litig.*,
  No. 96-cv-5238, 2002 WL 31528478 (E.D.N.Y. June 21, 2002) ............................6, 10

*Wills Trucking, Inc. v. Baltimore and Ohio R. Co.*,
  181 F.3d 106 (Table) (6th Cir. 1999) ...........................................................................4

## **Statutes**

Fed. R. Civ. P. 23(c)(2) ........................................................................................................6

**PRELIMINARY STATEMENT**

Pursuant to the Court's orders (Dkt. Nos. 323 and 355) preliminarily approving (1) the settlement between a proposed settlement class of direct purchaser plaintiffs ("Plaintiffs") and Defendants Vitafoam, Inc. and Vitafoam Products Canada, Limited (together, "Vitafoam"), and (2) the settlement between Plaintiffs and Defendants Domfoam International Inc. and Valle Foam Industries (1995) Inc. (the "Corporate Domfoam Defendants"), along with potential defendants A-Z Sponge & Foam Products Ltd., Bruce Bradley, Dean Brayiannis, Michael Cappuccino, Peter Foti, Duke Greenstein, John Howard, Dale McNeill, James William Sproule, Robert Rochietti-Valle, Tony Vallecoccia, and Fred Zickmantel (together with Corporate Domfoam Defendants, the "Domfoam Parties"), Plaintiffs respectfully submit this proposed plan for providing Notice to members of the proposed settlement classes.

In the Vitafoam Settlement, the settlement class is defined to include:

> "[A]ll Direct Purchaser Plaintiffs that purchased flexible polyurethane foam in the United States directly from a Defendant or Co-conspirator from January 1, 1999 to August 2010. Excluded from the Settlement Class are 1) defendants and co-conspirators and their respective parents, subsidiaries, and affiliates and 2) any Direct Purchaser who timely elects to be excluded from this settlement."

In the Domfoam Settlement, the settlement class is defined to include:

> "[A]ll persons who purchased polyurethane foam in the United States directly from the Defendants in the Action and/or an Alleged Co-Conspirator (as defined above) at any time from January 1, 1999 through the present (defined as the "Class Period"). As will be reflected in the class notices approved by the Court, excluded from the Class are the Voluntary Dismissal Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees, and the Non-Settling Defendants and their representatives, parents, subsidiaries and affiliates, and any of their officers, directors, or employees. Also excluded from the Class are all federal, state, and local governmental entities, any judge, justice or judicial officer presiding over

this matter and the members of their immediate families and judicial staffs."

The proposed settlement classes, defined in the settlement agreements, reflect that all defendants would have joint and several liability for the alleged conspiracy. Thus, even customers of the non-settling defendants that directly purchased flexible polyurethane foam from non-settling defendants are entitled to make claims against Vitafoam and the Domfoam Parties for damages resulting from the alleged conspiracy, up to and including all of the damages. Vitafoam and the Domfoam Parties have entered settlements intended to reach all of the persons and entities that could sue Vitafoam or the Domfoam Parties for the alleged conspiracy.

The "Notice" (proposed to be in the form attached hereto as Exhibit A) is designed to provide members of the proposed settlement classes with (among other things) a clear and detailed description of the terms of the settlements; the date of this Court's hearing on final approval of the settlements; the deadlines for opting out of the proposed settlement classes or notifying the Court of an objection to the settlements; phone and internet contact information for the settlement administrator, to permit members of the proposed classes to obtain answers to questions or other information; and notice that, in the event the Court finally approves the settlements, the Plaintiffs' counsel will seek from the Court an award of attorneys fees and costs for their work prosecuting the litigation and negotiating and obtaining the settlements. The Notice is to be accompanied by a Claim Form (proposed to be in the form attached hereto as Exhibit B).

Plaintiffs propose to distribute the Notice to members of the proposed settlement classes by means of direct mail. Plaintiffs also propose to supplement this direct mail distribution with publication of a "Publication Notice" (in the form attached hereto as

Exhibit C) in select trade journals relevant to the proposed settlement classes. Courts have regularly recognized direct mail as the most effective means of distributing Notice where, as here, customer lists are available from the Defendants, and Courts also regularly approve plans to supplement direct mail with selective publication.

The proposed direct mail plan, as well as the proposal to publish the Notice in select trade journals, reflects the expert input of Jeanne C. Finegan, whose declaration is included herewith at Exhibit D.

Also discussed herein is Plaintiffs' related request that the Court order those Defendants that have not yet done so to promptly provide Plaintiffs' counsel with lists of the names and addresses of their customers during the Class Period. In the settlements, Vitafoam and the Corporate Domfoam Defendants have agreed to make their customer lists available to Plaintiffs' counsel to facilitate direct mailing of the Notice. Several of the non-settling defendants have also agreed to provide their customer lists. But several defendants are refusing to do so, notwithstanding that, as discussed below, this Court and other federal courts frequently order non-settling defendants to produce their customer lists where, as here, such lists are accessible and can be retrieved without undue burden.

## ARGUMENT

### I. NOTICE SHOULD BE SENT TO ALL MEMBERS OF THE PROPOSED SETTLEMENT CLASSES.

At this stage, notice serves to advise members of the proposed settlement classes of the Vitafoam and Domfoam settlements, the Court's plan to have a fairness hearing to determine whether to certify the proposed settlement classes and approve the settlements, and the rights of members of the proposed settlement classes to object to, or opt out of, the proposed settlements. In approving a notice plan, the Court will not be deciding

whether to approve the proposed settlement classes (that decision will be made in connection with the fairness hearing), but rather deciding which persons and entities will be *notified* that the settlement, and settlement classes, have been proposed.

Here, moreover, the proposed settlement classes are certainly reasonable. It is well established that all members of a conspiracy are jointly and severally liable for all damages caused by the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946); *U.S. v. Wade*, 318 F.3d 698, 701 (6th Cir. 2003). This principle applies fully in civil cases. *Wills Trucking, Inc. v. Baltimore and Ohio R. Co.*, 181 F.3d 106 (Table), at *4 (6th Cir. 1999) ("Regardless of whether B & LE was involved in the non-rate activity of the conspiracy, B & LE was a member of the entire conspiracy, and is primarily liable for all acts performed by its co-conspirators in furtherance of the conspiracy.") (citing *Pinkerton*, 328 U.S. at 646-47); *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 991 F. Supp. 908, 911 (N.D. Ohio 1998) ("[O]nce a party takes the affirmative step of entering into an illegal conspiracy, that party is responsible for all the acts and consequent injury caused in furtherance of the conspiracy"). This means that a defendant alleged to have participated in only part of a conspiracy is liable for all acts of all of the conspirators over the life of the entire conspiracy. *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir. 1980) ("a co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objectives may, in the anti-trust context, be charged with the preceding acts of its co-conspirators"); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 538 (D.N.J. 2004) ("a co-conspirator is liable for all acts committed in furtherance of a conspiracy, regardless of when it entered the conspiracy"); *In re Nissan Motor Corp. Antitrust Litig.*, 430 F. Supp. 231, 232 (S.D.

Fla. 1977) ("proof of the unlawful affiliation is sufficient to render a co-conspirator liable for all damages that the conspiracy caused, regardless of the exact time defendant became a member or the extent of its participation").

This Court similarly noted here, in denying Defendants' motions to reconsider, the "fundamental tenant of conspiracy law that holds one participating conspirator jointly liable for all his co-conspirators' prior acts." Memorandum Opinion and Order (Dkt. No. 243) at 20 (citing *Coon v. Froehlich*, 573 F. Supp. 918, 922 (S.D. Ohio 1983)).

Thus, if plaintiffs were to succeed on their claims that Vitafoam, the Domfoam Parties, and the non-settling defendants conspired to fix the price of Polyurethane Foam, then all members of the proposed settlement class – the persons and entities that directly purchased Polyurethane Foam from Vitafoam, the Corporate Domfoam Defendants, and the non-settling Defendants – would be entitled to collect damages from Vitafoam and at least the Corporate Domfoam Defendants (and potentially the remaining Domfoam Parties), up to an including for the full amount of the damages caused by the conspiracy.

Courts thus regularly approve notice, as proposed here, to customers of both settling and non-settling defendants. *See, e.g., In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-1775, 2009 WL 3077396 (E.D. N.Y. Sept. 25, 2009) (where one of many defendants settled, the Court ordered that notice be provided to class members who were customers of both the settling defendant and all non-settling defendants); *In re Urethane Antitrust Litig.*, Order Preliminarily Approving Settlement with Bayer, Certifying a Settlement Class, and Authorizing Dissemination of Notice, No. 04-md-1616-JWL (D. Kan. Apr. 6, 2006) at 3 (ordering notice to customers of settling and non-settling defendants); *In re Processed Egg Prods. Antitrust Litig.*, Order

5

Approving Dissemination of Notice of Settlements Between Direct Purchaser Plaintiffs and (i) Defendant Sparboe Farms, Inc. and (ii) Defendants Moark, LLC, Norco Ranch, LLC, and Land O'Lakes, Inc., No. 08-md-02002 (E.D. Pa. July 15, 2010) ((approving notice to settlement class comprising "[a]ll persons and entities in the United States that purchased eggs...from any producer during the Class Period," regardless of whether such persons or entities purchased from the settling defendants).  (These three orders, in relevant part, are attached hereto as Exhibit E.)

## II.    DIRECT MAIL NOTICE IS RECOGNIZED AS THE MOST EFFECTIVE MEANS OF DELIVERING NOTICE TO CLASS MEMBERS.

Fed. R. Civ. P. 23(c)(2) requires that members of a settlement class be given the best notice practicable under the circumstances, including individual notice to all members that can be identified through reasonable effort.  This requirement is satisfied where individual notices are mailed to all reasonably locatable class members at their last-known addresses.  *See, e.g., In re Art Materials Antitrust Litig.*, MDL Dkt. No. 436, 1983 WL 1815 (N.D. Ohio May 2, 1983) (individual notice to all class members who can be identified through reasonable effort to be the "best notice practicable under the circumstances"); *In re Visa Check/Master Money Antitrust Litig.*, No. 96-cv-5238, 2002 WL 31528478, at *3 (E.D.N.Y. June 21, 2002) (individual notice consistent with requirements of Rule 23 and due process); *Urethane*, Order Preliminarily Approving Settlement with Bayer, Certifying a Settlement Class, and Authorizing Dissemination of Notice at 3, No. 04-md-1616-JWL (D. Kan. Apr. 6, 2006) (individual notice fully satisfies requirements of Rule 23 and due process); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL Dkt. No. 1361, 216 F.R.D. 197 (D. Me. June 13, 2003) (stating individualized notice by first class mail ordinarily satisfies the requirement

6

that class members receive the best notice practicable under the circumstances); *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ("[D]ue Process and the Federal Rules require individual notice only to all class members who names and addresses may be ascertained through reasonable effort" (quotation marks omitted)).

Vitafoam, the Corporate Domfoam Defendants, and the other Defendants that have made customer list information available to Plaintiffs here to date have confirmed that the producers of flexible foam typically maintained customers name and address information in the ordinary course of business, and no defendant in this case has taken the position that it does not have customer name and address information in its files.

As set forth in the accompanying declaration of Jeanne Finegan of Garden City Group[1], a direct mail program using the Defendants' customer lists is the best notice practicable:

> Unlike certain class action settlements, in this proposed settlement, it is reasonable to assume that the identities of a majority of the Settlement Class members have been captured and maintained during the normal course of business by the Defendant companies. Therefore, the most practicable and targeted notice program in this case would be to obtain all customer lists from all defendants . . . .
>
> Our preferred Notice Program requires access to customer records of Vitafoam and Domfoam, as well as <u>all</u> Defendants and known Co-Conspirators. Defendants' and Co-Conspirators disclosing said information would permit GCG to develop a database of Settlement Class Members' last known addresses, and to utilize this database to send notice directly to those addresses by U.S. First-Class Mail. Using the proposed

---

[1] As detailed in Ms. Finegan's declaration, Ms. Finegan has served as a notice expert directly responsible for the design and implementation of hundreds of class action notice programs, including some of the largest and most complex programs approved by Courts in the United States. Ms. Finegan, who has testified about notice before the United States Congress, is the only notice expert accredited in Public Relations by the Universal Accreditation Board of the Public Relations Society of America.

7

Notice Program, it is reasonable to assume that the overwhelming majority of Class Members will receive this direct mail notice.

Ex. D, Finegan Dec. at ¶¶ 9-10.[2]

## III. THIS COURT SHOULD ORDER ALL DEFENDANTS TO PROVIDE THEIR CUSTOMER LISTS, TO PERMIT AND FACILITATE TRANSMISSION OF THE NOTICE BY DIRECT MAIL.

Following this Court's orders granting Plaintiffs' motion for preliminary approval of the respective Settlement Agreements between Plaintiffs and Vitafoam (Dkt. No. 323), and Plaintiffs and the Domfoam Parties (Dkt. No. 355), Plaintiffs sought to obtain customer lists from the non-settling defendants, for purposes of creating a mailing list for Notice. As noted above, Vitafoam and the Corporate Domfoam Defendants have agreed to supply Plaintiffs' counsel with the names and current addresses of Vitafoam and the Corporate Domfoam Defendants' customers that purchased flexible polyurethane foam, as defined in ¶¶ 1, and 57-59 of Plaintiffs' Consolidated Amended Complaint, directly from Vitafoam or the Corporate Domfoam Defendants during the Class Period. To make

---

[2] The proposed Claim Form is designed to provide each recipient of direct mail notice with a calculation of that recipient's claim amount, based on the transactional data the defendants have produced in this litigation. The recipient, when submitting the claim form, can elect to rely on that calculation, or alternatively can submit a calculation based on its own records. This type of claim procedure, which facilitates claims, has been approved by other courts. *See, e.g., Aftermarket Automotive Lighting Products Antitrust Litigation*, No. 2:09-ml-02007-GW (PJWx) (C.D. Cal.) (claim form include purchase amount derived from defendant data; claimant could elect to use this data, or submit alternative calculation of claimant disagreed with the amount); *Nota Music Publishing, Inc., et al. v. Sirius Satellite Radio, Inc.*, No. 07-cv-6307 (AKH) (S.D.N.Y.) (claim form based on defendant data, including items already presumed to be within the claim); *Rafton, et al. v. Rydex Series Funds, et al.*, No. 10-cv-1171 (LHK) (N.D. Cal.) (claim form listed recipient's estimated loss, and claimant could elect to utilize this amount). (Copies of these claim forms are included as Exhibit F hereto.)

possible a comprehensive distribution of notice to the class members by direct mail, Plaintiffs have requested Customer Lists from all of the non-settling Defendants as well.

To date, in addition to Vitafoam and the Corporate Domfoam Defendants, Plaintiffs have only received Customer Lists from Defendants Scottdel, Inc and Woodbridge Foam Corporation. Defendants Carpenter Co. ("Carpenter") and Future Foam, Inc. ("Future Foam") have both indicated that they included customer names and addresses within their respective productions of transactional data on December 15, 2011.[3] Plaintiffs have preliminarily analyzed this transactional data and have determined that Carpenter and Future Foam's customer lists may be constructed from their respective transactional data productions. Plaintiffs will undertake the task of extracting this data and constructing these lists, but Plaintiffs reserve the right to request relief from the Court in the event issues present themselves during this process.

Prior to the Court's Preliminary Approval Order, Defendants FXI-Foamex Innovations, Inc. ("FXI") and Flexible Foam Products, Inc. ("Flexible Foam") had simply and steadfastly refused to provide Plaintiffs with their customer lists on the ground that Plaintiffs' motion for preliminary approval of the Vitafoam settlement, and non-settling defendants' objections thereto, were pending. Notwithstanding the Court's entry of the preliminary approval order, Flexible Foam and FXI have continued to refuse to provide Plaintiffs their customer lists. Flexible Foam now contends that it will not provide this information until such time as the Court approves Plaintiffs' proposed notice plan.

---

[3] Document Request No. 1 of Direct Purchaser Class, Indirect Purchaser Class, and Certain Direct Action (Non-Class) Plaintiffs' Joint First Set of Requests for Production to Defendants specifically requests, on a transaction-by-transaction basis, customer information from Defendants, including the name and location of each of Defendants' customers.

9

Likewise, Defendant Hickory Springs Manufacturing Company ("Hickory Springs") maintains that it would be premature to produce its customer list until the Court approves a notice plan.  In direct contravention of the Preliminary Approval Order, Hickory Springs further argues that the Court must certify the class before notice can be disseminated to its customers.

Neither FXI, Flexible Foam, nor Hickory Springs has offered substantive grounds for their continued refusal to produce customer lists.

This Court and other federal courts frequently order non-settling defendants to produce their customer lists where such customer lists are accessible and can be retrieved without undue burden.  *See Art Materials*, 1983 WL 1815, at *2 (ordering each defendant to identify and provide plaintiffs with a list of all of its customers during the class period in order to enable Plaintiff to disseminate notice); *Visa Check/MasterMoney*, 2002 WL 31528478, at *3 (finding notice plan that consisted of individual notice by first class mail to absent class members whose contact information was ascertained from information maintained by all defendants constituted best means practicable of providing notice); *Urethane*, Order Preliminarily Approving Settlement with Bayer, Certifying a Settlement Class, and Authorizing Dissemination of Notice at 3, No. 04-md-1616-JWL (D. Kan. Apr. 6, 2006) (ordering notice to all members of the class at their last known address as reflected in the records of both the settling and non-settling defendants); *In re Municipal Derivatives Antitrust Litig.*, Modified Order Approving Class Plaintiffs' and Defendant Morgan Stanley's Addendum to Settlement Agreement at 1-2, No. 08-md-01950-VM (S.D.N.Y. May 4, 2011) (ordering all class defendants to make reasonable efforts to provide available names and last known addresses of their customers during the class

10

period to class plaintiffs). (The foregoing four orders, in relevant part, are attached hereto as Exhibit G.)

Again, as noted in the accompanying declaration of Ms. Finegan, the notice expert, "[GCG's] preferred Notice Program requires access to customer records of Vitafoam and Domfoam, as well as all Defendants and known Co-Conspirators. Defendants' and Co-Conspirators disclosing said information would permit GCG to develop a database of Settlement Class Members' last known addresses, and to utilize this database to send notice directly to those addresses by U.S. First-Class Mail." Ex. D, Finegan Dec. ¶ 10.

It is thus respectfully submitted that all defendants that have not yet done so should be ordered promptly to produce to plaintiffs their customer lists, with name and address information, to enable and facilitate direct mailing of the Notice.

## IV.  SUPPLEMENTATION OF DIRECT MAIL NOTICE WITH PUBLICATION NOTICE, PRESS RELEASES AND A WEB SITE.

Based on the expert input of Ms. Finegan, plaintiffs also propose to supplement direct mail notice with publication of notice in relevant trade journals. As explained in Ms. Finegan's accompanying declaration, Ms. Finegan and her staff at the Garden City Group have identified the leading trade industry publications – such as *Furniture Today*, *Automotive Industries*, *Floor Covering News*, *Pharmaceutical & Medical Packaging News* and *Floor Covering News*, among others – that will target the broad range of industries directly purchasing flexible polyurethane foam.

Ms. Finegan and her staff will also evaluate the sufficiency and deliverability of the customer lists based on returned mail figures, and if those figures so warrant, the publication notice will be further supplemented to include general media (such as the

11

*Wall Street Journal*); internet banner advertising on targeted web properties such as *FoxNews.com*, *CNN.com*, and the *24/7 Network* (which includes more than 4,000 websites and over 30 Business-to-Business Industrial Manufacturing websites); and/or notice through the *City Biz Network*, which includes more than 200 local business websites, including the 40 top local business journal newspaper websites throughout the United States.

Moreover, as recommended by Ms. Finegan, the notice program would include a neutral press release distributed to PR Newswire's English and Hispanic newslines, and a US1 press release to be issued broadly to over 5,000 traditional media outlets, including newspapers, magazines, national wire services, television and radio broadcast media, and over 5,000 web publications. The release would also be issued to over 1,200 Hispanic media outlets and a manufacturing micro list of approximately 490 contacts.

Finally, the program will include an official website (that also will serve as a "landing page" for any banner advertising as referenced above (*i.e.*, the web page to which interested parties who click on the banner advertising will be directed)). The website will provide further information about the class action, the rights of members of the proposed settlement class, dates and deadlines, and related information.  Important court documents will be available through the website for downloading, and the website, to be established and maintained by the Garden City Group, will be accessible 24 hours per day, 7 days per week.  The website address, as well as a toll-free number for the Garden City Group, will be prominently displayed in both the direct mail notice and the publication notice, as reflected in Exhibits A and C attached hereto.

As Ms. Finegan explains in her declaration, the combined proposed notice program utilizing direct mail and targeted publication "is estimated to be able to reach an overwhelming majority" of members of the proposed Settlement Class. Ex. D, Finegan Decl. ¶ 16.

## V. SETTLEMENT ADMINISTRATION BY THE GARDEN CITY GROUP

Plaintiffs have retained the Garden City Group to serve as settlement administrator for the Vitafoam and Domfoam Settlements. Garden City Group was established in 1984 to administer settlement of class actions and other major litigation. In the more than 25 years since its establishment, Garden City Group has served as administrator for move than 2500 cases, mailed over 287 million notices, disseminated over 700 million emails, handled over 28 million phone calls, processed over 50 million claims, and distributed over $33 billion in benefits. To date, legal notices handled by Garden City Group have appeared in more than 40 languages in approximately 170 countries. *See* Ex. D, Finegan Decl. ¶ 6.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court (a) approve the proposed forms of direct mail and publication notice attached hereto at Exhibits A and C, and the proposed Claim Form attached hereto as Exhibit B; (b) approve the proposed program for dissemination of notice to members of the proposed Settlement Classes by means of direct mail and supplemental publication as described herein, and (c) order that all Defendants that have not yet done so to promptly provide to Plaintiffs' counsel their respective lists of the names and addresses of customers that

directly purchaser flexible polyurethane foam, in order to facilitate dissemination of notice by direct mail.

Dated: May 21, 2012

                                              Respectfully Submitted,

| | |
|---|---|
| /s/ William A. Isaacson | /s/ Stephen R. Neuwirth |
| William A. Isaacson | Stephen R. Neuwirth |
| BOIES, SCHILLER & FLEXNER LLP | QUINN EMANUEL URQUHART |
| 5301 Wisconsin Avenue, NW |   & SULLIVAN, LLP |
| Washington, DC  20015 | 51 Madison Avenue, 22nd Floor |
| Phone: 202-237-5607 | New York, NY  10010 |
| Fax:    202-237-6131 | Phone: 212-849-7165 |
| | Fax:    212-849-7100 |

*Direct Purchaser Plaintiffs' Interim Co-Lead Counsel*