UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION ) ) ) ) | MDL Docket No. 2196 |
| This document relates to: ) ) All Direct Purchaser Class Cases ) ) | Index No. 10-MD-2196(JZ) |

**NON-SETTLING DEFENDANTS' MEMORANDUM IN RESPONSE TO DIRECT PURCHASERS' MOTION FOR APPROVAL OF PROPOSED NOTICE PROGRAM**

**CONTAINS PAGES (8-9) MARKED HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Direct Purchaser Class Plaintiffs ("Plaintiffs") have moved the Court to approve a program for providing notice of their proposed class settlements with Vitafoam, Inc. and Vitafoam Products Canada, Limited (collectively, "Vitafoam"), as well as Domfoam International Inc., Valle Foam Industries (1995) Inc., and several related corporate and individual defendants (collectively, "Domfoam").[1] *See* ECF No. 374. Contrary to the Court's instructions during the January 11, 2012 hearing and in its January 23, 2012 Order, however, Plaintiffs submitted a standard *post*-class certification notification "package" riddled with factual inaccuracies and legal misstatements. Fundamentally, Plaintiffs ask this Court to ignore the Supreme Court's holdings in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), that class proceedings are governed strictly by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not provide for "settlement" classes; it simply says that claims of a *certified* class may be settled and establishes the procedural requirements for doing so. Those requirements *do not* include the type of pre-certification notice Plaintiffs are asking the Court to implement, nor do they contemplate the exclusion of opposing parties from the class certification process. Moreover, with or without the numerous misrepresentations contained in Plaintiffs' proposed notices, the prejudice to Defendants if those notices are sent to customers who may not be entitled to litigate as part of a class or who may not have claims against the Defendants is manifest.

Defendants submit this response to Plaintiffs' motion, not to argue the merits of the proposed settlement classes, but instead to highlight: (1) the problems inherent in Plaintiffs'

---

[1] Plaintiffs also request that the Court order certain Defendants to produce their current and former customer lists. Had Plaintiffs followed the discovery dispute procedures for this case, they would have realized no legitimate dispute exists. Like Carpenter and Future Foam, Flexible Foam, Hickory Springs and Foamex Innovations, Inc. all have produced their customer names and addresses as part of their transactional data productions. Furthermore, neither Leggett & Platt nor Mohawk Industries, Inc. have been asked to provide this data, and doing so at this time, without any agreement on the scope of their transactional data productions, if any, would be overly burdensome and expensive.

attempt to prepare and send a form of notice not contemplated by Rule 23; and (2) the significant prejudice that Defendants will suffer if the Court approves and disseminates the proposed notices attached to Plaintiffs' motion.[2] Defendants respectfully urge the Court to decline any further invitations by Plaintiffs to rewrite Rule 23's proscribed procedures, and instead allow the issue of class notice to be taken up at the time designated by Rule 23; namely, *after* the Court has decided *factually*, and by a preponderance of the evidence, whether any litigation *or* settlement classes can be certified in this case and, if so, who qualifies as a class member.

## ARGUMENT

### A. Plaintiffs' Proposed Notice Departs Radically From What The Court Envisioned and Plaintiffs Promised.

Plaintiffs' initial motion in connection with the proposed Vitafoam settlement expressly sought both "preliminary approval of" the Vitafoam settlement "*and conditional certification of the Settlement Class*." ECF No. 293-1 at 9 (emphasis added).[3] As Plaintiffs' supporting memorandum made clear, "Plaintiffs here move for certification under Rule 23(b)(3)," and their memorandum contained extensive argument that the requirements of Rule 23 already had been met. *Id.* at 22–31. Plaintiffs' proposed order to the motion was just as unequivocal: "Pursuant to Rule 23 of the Federal Rules of Civil Procedure and in light of the proposed Settlement, the Court *hereby finds* that the prerequisites for a class action *have been met* and *certifies* the following class for settlement purposes." ECF No. 293-5 at 2 (emphasis added).

---

[2] There are at least three independent grounds for Defendants' standing in connection with these proposed settlements and proposed notice program. First, the Court clearly is within its discretion to hear from Defendants regarding the optimal manner in which to manage this case, which will continue to be litigated regardless of the ultimate approval or rejection of the proposed settlements. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Second, as discussed herein, the Supreme Court's decisions in *Wal-Mart* and *Amchem* combine to preclude Plaintiffs from seeking to deny Defendants their right to be heard in this connection. Moreover, any objection regarding Defendants' standing to file this response is mooted by Plaintiffs request for affirmative relief vis-à-vis Defendants—i.e., the production of Defendants' customer lists—and by the manifest prejudice to Defendants that would result from the dissemination of Plaintiffs' misleading and factually inaccurate proposed notice to every past and present customer of each Defendant.

[3] Page citations to electronically filed documents in this case shall be to the number(s) contained in the ECF headers.

Plaintiffs nevertheless abandoned those claims during the January 11, 2012 hearing, stating that "we have not asked you to grant class certification today" and that "if we prevail on this motion, there is no class approved yet." ECF No. 317 (Transcript of Settlement Hearing on Jan. 11, 2012) ("Hr'g Tr.") at 20:2–5. Plaintiffs' about-face likely was a reaction to the Court's observation early in the hearing that "we have a real obligation here to make sure that the prerequisites for class certification under Rule 23(a) and (b) are here before we can certify a class." Hr'g Tr. at 5:7–10. Consequently, in lieu of their request for conditional class certification, Plaintiffs presented the Court with a novel alternative not contemplated under Rule 23: sending preliminary notice to every past and present customer of each Defendant *before* the Court addresses whether a class even should be certified or what its proper scope or members might be.

The Court's skepticism of this proposal was evident: "We don't send out notice to people saying, hey, we're thinking of certifying a class; you might be in it." Hr'g Tr. at 34:6–8; *accord id.* at 38:8–11 ("I'm not sure that the entire class is entitled to notice of ['an evidentiary hearing when they're going to establish the prerequisites for Rule 23 certification'] before it's certified."), 39:11–14 ("I don't understand why we would be sending out notice to a class that's not certified yet. I don't know why we would be doing that or how we could be doing that."), 58:3–6 ("And this whole notion of sending out notice to a class that's been somehow certified on an interim basis, that seems a little odd to me based on the evidence that we have before us."), 59:5–9 ("Well, what I'm saying is[,] based on the evidence here, I don't see how we can have the certification of the class and the final approval of the settlement at the same time because we don't know here today who the class members are.").

Plaintiffs' counsel assured the Court that its concerns could be dealt with by "wordsmithing." Hr'g Tr. at 60:4–17. With these assurances, and despite its misgivings, the Court afforded Plaintiffs an opportunity to submit a form of notice for the Court's approval that might

3

expedite the settlement process without suggesting to its recipients that any preliminary or other approval of a settlement class had taken place. ECF No. 323 at 8.

Despite their assurances to the Court that "wordsmithing" could solve the problems inherent in sending notice without any evidence before the Court concerning the proper scope of the class, Plaintiffs' proposed notices and claim form largely mimic the pre-*Wal-Mart* documents Plaintiffs cite as precedent in Exhibits E and F to their motion. *See* ECF Nos. 374-6 & 374-7. They are little more than standard notices issued *after* a class has been certified with the word "Proposed" selectively—and inconsistently—added to the terms "Vitafoam Settlement Class" and "Domfoam Settlement Class." Under the guise of a request for *preliminary* notice to *potential* members of a *proposed* settlement class, Plaintiffs continue their attempts, plainly stated in their original motion, to circumvent Rule 23's plain dictates by asking the Court to: (1) disseminate full-fledged class notice, complete with a claim form, to an overbroad group of recipients; and (2) conflate class certification and the final fairness hearing contemplated by Rule 23(e) into a single event without participation or input from Defendants.

### 1. *Rule 23 Neither Contemplates Nor Authorizes Plaintiffs' Proposed Notice.*

Plaintiffs' failure to provide this Court with the type of notice that they represented would be forthcoming may be explained by the fact that Plaintiffs have no precedents upon which to rely in preparing it; a pre-certification notice to possible class members is not contemplated or authorized in Rule 23.[4] Rather, the rule provides that "the court may direct appropriate notice to the class" *after* it has issued its certification order pursuant to Rule 23(c)(1). Fed. R. Civ. P. 23(c)(2). Similarly, Rule 23(e) contemplates notice "to all class members who would be bound by" a proposed settlement of "[t]he claims, issues, or defenses *of a certified class*." Fed. R. Civ. P. 23(e)

---

[4] The Court highlighted the extraordinary nature of the notice Plaintiffs were seeking to disseminate at the January 11, 2012 hearing. *See* Hr'g Tr. at 61:17–62:4.

4

(emphasis added). The reasons are obvious: there is no need for notice to be disseminated—requiring extensive time, effort, and expense—until the Court has determined there exists a class to be notified.

The disconnect between Plaintiffs' proposal and Rule 23's requirements arises, in the main, from the fact that a "settlement class" is a creature of case law, not Rule 23. Rule 23 does not provide for the creation of a special "settlement" class. Rather, settlement classes were conceived by the courts as a mechanism for resolving mass litigation. Most class settlements were "global" in nature, and the make-up of the settling "class" was stipulated by the parties, uncontested, and certified by the court with minimum inquiry. Even on the less frequent occasions when settlement classes were certified to allow partial settlements to proceed, judicial oversight of settlement classes was minimal and based largely on the fiction that certification of a "settlement class" was different than, and not conclusive of, consideration of a litigation class which would be determined later.[5] Not surprisingly, abuses occurred, and the Supreme Court intervened in *Amchem*. Even after *Amchem*, however, a number of courts considered settlement classes subject to a lesser burden of proof and continued to certify classes with very little factual analysis. *Wal-Mart* effectively ended that practice. Taken together, *Amchem* and *Wal-Mart* re-affirm that all class certifications are governed strictly by Rule 23. There are no shortcuts for certification of a "settlement class," and unless each of Rule 23's prerequisites is established as a matter of fact and by a preponderance of the evidence, no class, whether denominated a "settlement class" or a "litigation class," can be certified.

---

[5] Before *Wal-Mart*, some courts applied a less stringent standard in deciding whether to certify proposed settlement classes than they applied in consideration of proposed litigation classes. It was therefore conceivable under that paradigm that a court could certify a proposed settlement class early on, without the benefit of a fully developed factual record, and nevertheless determine later in the same case—applying a more stringent burden of proof—that no litigation class (or, for that matter, other settlement classes) could be certified.

5

Re-anchoring class certification to the requirements of Rule 23, and requiring a full, factual inquiry to establish each of Rule 23's elements fundamentally changes the rules of the game, something Plaintiffs refuse to acknowledge. It is not without significance that all of the "precedent" they cite in support of their position is pre-*Wal-Mart*. After *Wal-Mart*, however, factually unproven "settlement classes" no longer are permissible. As the Court made clear at the January 11, 2012 hearing, "we have to do a Rule 23, a real certification, whether it's for the settlement class or the litigation class," and "to the extent [Plaintiffs' motion] was some sort of a shortcut to that, I don't think that's going to fly." ECF No. 317 at 43:14–19. Likewise, in its January 23, 2012 Order, the Court acknowledged that its determination regarding class certification *may not be* conditional or provisional, but must instead be based on factual findings drawn from an adequate factual record. ECF No. 323 at 5.

Nothing in *Amchem*, *Wal-Mart* or the text of Rule 23 suggests or permits notice to *potential* members of a *proposed* settlement class prior to the Court's decision on class certification. Certainly nothing in those decisions or Rule 23 even remotely justifies the pre-certification notice "package" Plaintiffs propose to send to Defendants' past and current customers.

### 2. *Plaintiffs' Precedents Offered in Support of Their Proposed Notice Are Inapposite.*

The orders and notices from pre-*Wal-Mart* cases upon which Plaintiffs rely provide no precedent for the form of notice they propose in this case.[6] *In re Air Cargo Shipping Services*

---

[6] Defendants note that unlike the cited pre-*Wal-Mart* cases, the claim forms attached in Exhibit F are all drawn from class settlements preliminarily approved after *Wal-Mart*. However, a review of the relevant court orders and other documents in these three cases shows that they provide no support to Plaintiffs' positions. The settlement agreement in one of these cases noted that, prior to settlement, the Parties engaged in extensive discovery, including disclosures, document and transactional data production and Lead Plaintiffs depositions, as well as class certification expert reports. *Rafton v. Rydex Series Funds*, No. 5:10-cv-01171-LHK, ECF No. 97 at 3 (C.D. Cal. July 28, 2011) (Stip. and Agreement of Settlement). Moreover, the defendants in *Rafton* did not oppose the motion for preliminary approval of the class settlement. *See id.*, ECF No. 99 at 2 (Sept. 13, 2011 Order Granting Unopposed Mot.). Another case only involved a single defendant, and therefore did not implicate the concerns about prejudice and due process to non-settling defendants at issue here. *See, e.g., Nota Music Publ'g, Inc. v. Sirius Satellite Radio Inc.*, No. 1:07-cv-06307-AKH, ECF No. 57 (S.D.N.Y. Jan. 9, 2012). In the third case, the court had already decided the issue of class
(footnote continued on next page)

*Antitrust Litigation* exemplifies the settlement class procedures followed by some courts prior to the Supreme Court's decision in *Wal-Mart*, when it was still unsettled whether certification of settlement classes was governed by the same burden of proof standards that governed certification of litigation classes. Even so, in *Air Cargo*, notice was not sent until *after* the court had *both* preliminarily approved the settlement *and certified the settlement class. See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2009 WL 3077396, at *4 (E.D.N.Y. Sept. 25, 2009).

The same is true of *In re Processed Egg Products Antitrust Litigation*, also decided before *Wal-Mart*.[7] The court there, also operating under the pre-*Wal-Mart* paradigm, granted preliminary approval of proposed settlements without the factual record that Rule 23 requires. *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, ECF Nos. 214 (slip op. filed Oct. 23, 2009) & 387 (slip op. filed July 15, 2010). The court only authorized the dissemination of notice, however, only *after* preliminarily approving the settlements *and* preliminarily certifying the settlement classes and subclasses. *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, ECF No. 388 (slip op. filed July 15, 2010).

There has been no such certification here, preliminary or otherwise, and after *Wal-Mart*, that certification can occur, if at all, only on a developed factual record and proof by a preponderance of the evidence.

---

certification on the basis of extensive briefing by the parties (including the submission of expert reports and hundreds of pages of supporting documents by both sides) prior to the parties reaching a settlement, and therefore did not have to take up the issue of certifying a separate settlement class. *See In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 2:09-ml-02007-GW-PJW, slip op., ECF No. 309, at 2 (C.D. Cal. July 25, 2011) (granting motion for class certification); *see also id.*, ECF No. 391 (Nov. 8, 2011 Order).

[7] The district court's order approving the dissemination of notice in that case was erroneously dated July 15, 2011 (i.e., after *Wal-Mart*), but was, in fact, filed on July 15, 2010 (i.e., before *Wal-Mart*). *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, ECF No. 388 (slip op. filed July 15, 2010).

B.  **Plaintiffs' Proposed Notices Are Factually Inaccurate, Legally Misleading, and Highly Prejudicial to the Non-Settling Defendants.**

Plaintiffs' proposed notices are riddled with factual inaccuracies and legal misrepresentations. Some appear to result from Plaintiffs using as their templates standard *post-certification* class notices, which carry with them binding legal significance and consequences that a pre-certification notice, even if permitted under Rule 23, would not. Others appear to be nothing more than overreaching attempts at advocacy. Regardless, using these notices would mislead many proposed recipients—Defendants' customers, past and present—to Defendants' considerable prejudice.

*1.  Factual Inaccuracies and Legal Misrepresentations Abound in Plaintiffs' Proposed Notices.*

Defendants will discuss only a few glaring examples of the numerous inaccuracies and misrepresentations in Plaintiffs' proposed notices. However, attached as Exhibit A is an annotated copy of Plaintiffs' proposed notice highlighting others errors.

First and foremost, Plaintiffs' proposed notice grossly mischaracterizes the nature of Vitafoam's admissions and Domfoam's plea agreements. Plaintiffs define their alleged conspiracy in the proposed notice as "fix[ing] the price of Flexible Polyurethane Foam *in the United States* from the year 1999 to the present," ECF No. 373-2 at 4. Plaintiffs inexplicably represent that "the Vitafoam Defendants admitted their participation in *the conspiracy*" and "Domfoam International Inc. and Valle Foam Industries (1995) Inc. both pled guilty in Canadian court to their respective roles *in the alleged conspiracy* and were fined $12.5 million Canadian *for their participation*." ECF No. 374-2 at 4 (emphasis added).

[redacted]

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



Regardless of how or why these misstatements about Vitafoam's admissions and Domfoam's Canadian plea agreement occurred, they are serious distortions of the factual record and illustrate the dangers of attempting to address class certification issues on less than a fully developed, *adversarial* record.

Other inaccuracies plague Plaintiffs' proposed notice. The first paragraph claims, for example, that "[i]f you fall within the definition of the 'Vitafoam Settlement Class' as defined herein, you will be bound by the Vitafoam Settlement unless you specifically exclude yourself in writing following the instructions below." ECF No. 374-2 at 2. This sentence and the identical

9
HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

N/A

sentence relating to the Domfoam settlement that follows are both inaccurate and misleading. Most notably, they omit the key fact that *the Court has not yet certified any class with respect to either Settlement*. It suggests that the recipient "will be bound" when, in fact, it is not yet established which recipients of this proposed notice, if any, would be part of *any* settlement class.

The misleading character of these omissions from the proposed individual notice is compounded by the table discussing "YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT." *See* ECF No. 374-2 at 2–3. Although the table, unlike other portions of the proposed notice, does note that the settlement classes are only "Proposed" classes, it does not explain to the recipient the very real possibility that a class may not be certified or, due to the manifestly overbroad manner in which Plaintiffs propose to disseminate this notice, that the recipient *may not be a part of the proposed settlement class even if certified*. In either case, the notice and the recipient's actions in response to it, are legally meaningless. The inclusion of such a table, like the inclusion of a claim form, is entirely premature.

The proposed notices further fail to provide sufficient information for recipients to determine whether they are likely members of the proposed settlement classes. For example, although Plaintiffs specify that their proposed settlement class definitions would not include purchasers of "finished consumer products" or "'rigid' (or 'technical') foam," they do not provide any workable definitions of "flexible polyurethane foam" or "flexible polyurethane foam products." *Id.* Plaintiffs' vagueness on these points, combined with the overbroad nature of their proposed roster of recipients, create a logistical nightmare for the Court, the parties, and the administrator(s) of any settlement(s) ultimately approved in this case.

Space constraints limit Defendants' ability to detail the many other inaccuracies in the proposed notices. Suffice it to say that the recipient of this package almost surely would conclude that Defendants' liability has already been established; that settlements have been obtained with

more on the way; that the Court has certified a settlement class of which they are a member; and that they need to determine whether to remain a member of the class or opt out. None of that is true, and none of it is consistent with what Plaintiffs told the Court they intended to do if allowed to provide pre-certification notice.

### 2. *The Notices' Inaccuracies and Misrepresentations Are Highly Prejudicial to Defendants.*

The true "value" to Plaintiffs of sending their notice "package" to past and current customers of the non-settling Defendants may be to foment more litigation. Having recipients believe they are members of a settlement class, have legitimate claims against Defendants, and are required to take action promptly to preserve such claims creates potential litigants. At the very least, it risks creating a high degree of animus between Defendants and their customers. Whatever the ultimate dispositions of the proposed Vitafoam and Domfoam settlements prove to be, Plaintiffs' proposed notices would create a climate in which all of Defendants' customers, regardless of what they purchased, when they purchased it, or how they purchased it, would believe that both settling *and* non-settling Defendants have engaged in wrongdoing that injured them.

There are literally thousands of types and grades of polyurethane foam and polyurethane foam products, sold in many different forms and in many different markets with very different customers, competitors, and supply-and-demand characteristics. Products can contain small amounts of foam or be made entirely from foam. Products can be heavily fabricated or not fabricated at all. Purchasers of foam can purchase on spot markets or pursuant to long-term contracts with prices "locked in" for specified periods or determined by pricing formulas indexed to specific, objective measures. Some purchasers compete with foam sellers in the sale of "fabricated" products. The very nature of foam markets, in other words, makes it unlikely that a class consisting of buyers suffering "common impact" could be identified. Sending Plaintiffs' proposed notice

11

package to every past and present customer of each Defendant would obscure these essential facts, however, and would result in unwarranted harm to the reputations of the Defendants and additional litigation. It is a prejudice inherent in sending "class notice" before a class has been identified and certified, and it is a key reason why Rule 23 does not provide for pre-certification notice.

### C. There Is No Reason to Depart from Rule 23's Standard Procedures in This Case.

Plaintiffs have provided this Court with no reason why the pre-class certification notice they seek is necessary or would serve any legitimate purpose. Rather, the problematic notices prepared by Plaintiffs underscore the fact that the Court's initial misgivings about the propriety of pre-certification notice were well founded. There is no reason why the proposed settlement class and litigation class should not be considered—and determined—together. Indeed, it is difficult either to understand or to justify Plaintiffs' counter-argument: because it might take a bit longer to allow the factual record to develop to a point where correct decisions can be made about class certification, the Court should disregard *Amchem*, *Wal-Mart*, and Rule 23, and substitute an expediency standard for determining whether to certify a settlement class.

#### 1. Wal-Mart *Does Not Eliminate the Possibility of Early Class Settlements*.

Plaintiffs likely will argue that Defendants' reading of *Wal-Mart* and Rule 23 cannot be correct because it would effectively eliminate the ability of parties to settle putative class actions early and efficiently. There are at least two reasons why this that argument is misguided.

First, the Supreme Court's decision in *Wal-Mart* is not a factor to be balanced against efficiency considerations and the convenience of the parties; it is precedent by which the parties and this Court are bound to abide. Class litigation is an extraordinary exception to the usual rule of "litigation by and against named parties," and with it come obligations and requirements that must be followed scrupulously, not the least of which is due process. Illusory efficiency considerations simply cannot attenuate *Wal-Mart*'s mandate that the elements of Rule 23 must be proven in fact.

12

Second, *Wal-Mart*'s actual effect on the ability of parties to settle class action claims in the early stages of litigation is clearly circumscribed. *Wal-Mart* will have little effect on proposed class settlements that involve *all* named defendants, where the requisite factual record can be cooperatively assembled, subject to the Court's scrutiny in its role as guardian of, and fiduciary to, the unnamed class members.

Even in cases such as this one, in which less than all defendants are attempting to settle putative class claims, *Wal-Mart*'s mandate ordinarily would have a minimal impact on the timing of settlement. *Wal-Mart* does not require *all* fact discovery to be concluded before any litigation or settlement class may be certified; it simply requires that the factual record *on the issue of class certification* be complete, so that the Court can determine whether the requisite Rule 23 elements have been proven *in fact*. Class certification more often than not is a "front-loaded" issue, both by virtue of applicable rules of procedure and as a result of common class action practice.[8] *See* Fed. R. Civ. P. 23(c)(1)(A) ("an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."); *see also* N.D. Ohio Local Civ. R. 23.1(c).

In this case, it was Plaintiffs who originally requested that the deadline for filing the motion for class certification be postponed, and their own request for more time to develop the factual record needed for the certification decision cannot provide a legitimate basis for ignoring the requirements of Rule 23. To the contrary, Plaintiffs' position is transparently inconsistent: after

---

[8] As this Court is well aware, in many putative class actions (and particularly in putative antitrust class actions), an initial class discovery phase is often bifurcated from a post-certification, merits discovery phase. Consequently, the parties and the Court will have available to them the requisite factual record for briefing and deciding class certification at an early stage, and it will be possible for the Court to rule on class certification—for litigation and settlement classes alike—at that early stage.

*Wal-Mart*, if a party needs more time to develop an appropriate factual record for certification of a litigation class, a settlement class clearly cannot be certified on a less-developed record.

### 2. Neither Class Plaintiffs Nor the Settling Defendants Will Suffer Any Prejudice by Following Rule 23's Procedures.

Pursuant to the Court's March 26, 2012 Amended Scheduling Order, agreed to by all parties, briefing on class certification is scheduled to commence in approximately five months, after the parties have completed the necessary factual discovery. *See* ECF No. 354. The only justification Plaintiffs have offered for accelerating consideration of the proposed settlements is the theoretical potential for those settlements to serve as "ice-breakers" for allegedly greater cooperation from the settling Defendants than they already are obligated to provide by law, and the potential coercive effect on other Defendants also to settle. *Amchem*, *Wal-Mart*, and Rule 23, however, admit no such exceptions.

Plaintiffs have argued that any decision that this Court may reach with respect to Plaintiffs' proposed settlement classes will not have *res judicata*, collateral estoppel, or any other preclusive effect upon the Court's subsequent decision on Plaintiffs' motion for certification of a litigation class. Whether that is true as a technical matter, it is difficult to see how it could be true as a practical matter. Put differently, if Plaintiffs are correct, then the Supreme Court must have been wrong when it concluded in *Amchem* and *Wal-Mart* that Rule 23 imposes the same requirements and same burden of proof on the proponents of both settlement and litigation classes. For example, how could a court determine, "factually" and by a preponderance of the evidence, that a settlement class was appropriate, but then subsequently find on the same evidence and applying the same burden of proof that a litigation class was not? If distributions of settlement funds already had occurred, must those funds then be returned? What happens if after a full factual hearing on a litigation class, a court determines that the settlement class certified was overbroad, and that the

recoveries by legitimate claimants were diluted unfairly? These are not theoretical concerns, and they illustrate the importance of the strict adherence to the requirements of Rule 23.

## **CONCLUSION**

Plaintiffs' proposed notice package confirms the Court's initial doubts about the propriety of permitting notice not contemplated by Rule 23. The Court offered Plaintiffs an opportunity to craft a notice that would aid the Court's consideration of Plaintiffs' motion for certification of the settlement classes without violating the principles of Rule 23 or unduly prejudicing Defendants. Instead, they have attempted to exploit that opportunity by submitting a full-fledged, post-certification notice prior to certification of any class -- the same approach they took in their original motion. Moreover, Plaintiffs' proposed notice plan is so overbroad, and their proposed notices are so riddled with factual and legal misrepresentations, that they would be misleading in the extreme to their recipients and patently prejudicial to Defendants.

After *Amchem* and *Wal-Mart*, there are no shortcuts to certification of a settlement class or "fixes" for these issues other than allowing class certification and class notice to proceed in the normal course in conformity with the procedures required by Rule 23. Plaintiffs' implicit acknowledgement that the factual record is not yet sufficiently developed to support a motion for certification of a litigation class, in fact, tells the Court all it needs to know about its ability at this stage to consider a settlement class. Defendants respectfully request that the Court deny Plaintiffs' motion and reject the proposed notice plan.

Dated: June 7, 2012

/s/ James H. Walsh
James H. Walsh
Howard Feller
Bethany Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4356
Fax:    (804) 698-2200
jwalsh@mcguirewoods.com
hfeller@mcguirewoods.com
blukitsch@mcguirewoods.com

*Counsel for Carpenter Co., E.R. Carpenter, L.P., and Carpenter Holdings, Inc.*


/s/ Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
Phone: (919) 862-2200
Fax:    (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Hickory Springs Manufacturing Company*

Respectfully submitted,

/s/ Kendall Millard
Kendall Millard
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
Phone: (317) 231-7461
Fax:    (317) 231-7433
kmillard@btlaw.com

/s/ Michael D. Mustard
Michael D. Mustard
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone: (260) 423-9440
Fax:    (260) 424-8316
mmustard@btlaw.com

*Counsel for Flexible Foam Products, Inc.*

/s/ Edward G. Warin
Edward G. Warin
John P. Passarelli
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
Phone: (402) 346-6000
Fax:    (402) 346-1148
edward.warin@kutakrock.com
john.passarelli@kutakrock.com

*Counsel for Future Foam, Inc.*

/s/ Francis P. Newell
Francis P. Newell
Peter M. Ryan
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2118
Fax: (215) 665-2013
fnewell@cozen.com
pryan@cozen.com

*Counsel for Foamex Innovations, Inc.*

/s/ Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Allison S. Thompson
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
randall.allen@alston.com
teresa.bonder@alston.com
allison.thompson@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/ Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 559-2227
jrebein@shb.com

*Counsel for Leggett & Platt, Incorporated*

/s/ Richard A. Duncan
Richard A. Duncan
Emily E. Chow
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh St.
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
rduncan@faegre.com

Robert A. Bunda
Theresa R. DeWitt
BUNDA STUTZ & DEWITT PLL
3295 Levis Commons Boulevard
Perrysburg, OH 43551
Phone: (419) 241-2777
Fax: (419) 241-4697
rabunda@bsd-law.com
trdewitt@bsd-law.com

*Counsel for Otto Bock Polyurethane Technologies, Inc.*

/s/ Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax:    (213) 229-6919
dswanson@gibsondunn.com

Cynthia Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: (202) 530-8500
Fax:    (202) 530-9651
crichman@gibsondunn.com

*Counsel for Woodbridge Foam
Corporation, Woodbridge Sales &
Engineering, Inc., and Woodbridge Foam
Fabricating, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2012, a redacted version of the foregoing and the accompanying exhibits were filed electronically. Notice of this redacted filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this redacted filing through the Court's system. I also certify that on June 7, 2012, an unredacted version of the foregoing and the accompanying exhibits were filed electronically under seal pursuant to Local Civil Rule 5.2 and the Stipulated Protective Order entered by the Court in this case on February 23, 2011. *See* ECF No. 42 at 12. Notice of this sealed filing will be sent by operation of the Court's electronic filing system. I further certify that on June 7, 2012, the unredacted version of the foregoing and the accompanying exhibits were served upon counsel of record for all parties by email pursuant to this Court's Case Management Conference Order.

/s/ Bethany G. Lukitsch
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4711
Fax: (804) 698-2261
blukitsch@mcguirewoods.com