IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GRAND RAPIDS BEDDING CO. | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10024-JZ |
| HICKORY SPRINGS MANUFACTURING | : | |
| COMPANY, VALLE FOAM INDUSTRIES, INC., | : | |
| DOMFOAM INTERNATIONAL, INC., | : | |
| CARPENTER COMPANY, WOODBRIDGE | : | |
| FOAM CORPORATION, FLEXIBLE FOAM | : | |
| PRODUCTS, INC., SCOTTDEL, INC., FOAMEX | : | |
| INNOVATIONS, INC., FUTURE FOAM, INC., | : | |
| VITAFOAM PRODUCTS CANADA LIMITED, | : | |
| VITAFOAM, INC., MOHAWK INDUSTRIES | : | |
| INC., LEGGETT & PLATT INC., ADVANCED | : | |
| URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendants* | : | |
| ENGLANDER SOUTHWEST ET AL., | : | |
| | : | CIVIL ACTION |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10022-JZ |
| HICKORY SPRINGS MANUFACTURING | : | |
| COMPANY, VALLE FOAM INDUSTRIES, INC., | : | |
| DOMFOAM INTERNATIONAL, INC., | : | |
| CARPENTER COMPANY, WOODBRIDGE | : | |
| FOAM CORPORATION, FLEXIBLE FOAM | : | |
| PRODUCTS, INC., SCOTTDEL, INC., FOAMEX | : | |
| INNOVATIONS, INC., FUTURE FOAM, INC., | : | |
| VITAFOAM PRODUCTS CANADA LIMITED, | : | |
| VITAFOAM, INC., MOHAWK INDUSTRIES | : | |
| INC., LEGGETT & PLATT INC., ADVANCED | : | |
| URETHANE TECHNOLOGIES, INC. | : | |

|  |  |
|---|---|
| : *Defendants* : | |
| JEFFCO FIBRES, INC. : : *Plaintiff*, : : v. : : : : HICKORY SPRINGS MANUFACTURING : COMPANY, VALLE FOAM INDUSTRIES, INC., : DOMFOAM INTERNATIONAL, INC., : CARPENTER COMPANY, WOODBRIDGE : FOAM CORPORATION, FLEXIBLE FOAM : PRODUCTS, INC., SCOTTDEL, INC., FOAMEX : INNOVATIONS, INC., FUTURE FOAM, INC., : VITAFOAM PRODUCTS CANADA LIMITED, : VITAFOAM, INC., MOHAWK INDUSTRIES : INC., LEGGETT & PLATT INC., ADVANCED : URETHANE TECHNOLOGIES, INC. : : *Defendants* : | CIVIL ACTION<br><br>MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ)<br><br>Case No. 3:12-pf-10023-JZ |
| SPRING AIR INTERNATIONAL LLC ET AL., : : *Plaintiffs*, : : v. : : : : HICKORY SPRINGS MANUFACTURING : COMPANY, VALLE FOAM INDUSTRIES, INC., : DOMFOAM INTERNATIONAL, INC., : CARPENTER COMPANY, WOODBRIDGE : FOAM CORPORATION, FLEXIBLE FOAM : PRODUCTS, INC., SCOTTDEL, INC., FOAMEX : INNOVATIONS, INC., FUTURE FOAM, INC., : VITAFOAM PRODUCTS CANADA LIMITED, : VITAFOAM, INC., MOHAWK INDUSTRIES : INC., LEGGETT & PLATT INC., ADVANCED : URETHANE TECHNOLOGIES, INC. : : *Defendants* : | CIVIL ACTION<br><br>MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ)<br><br>Case No. 3:11-pf-10021-JZ |

| | | |
|---|---|---|
| JONATHAN STEVENS MATTRESS CO. | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12:pf-10025-JZ |
| HICKORY SPRINGS MANUFACTURING COMPANY, VALLE FOAM INDUSTRIES, INC., DOMFOAM INTERNATIONAL, INC., CARPENTER COMPANY, WOODBRIDGE FOAM CORPORATION, FLEXIBLE FOAM PRODUCTS, INC., SCOTTDEL, INC., FOAMEX INNOVATIONS, INC., FUTURE FOAM, INC., VITAFOAM PRODUCTS CANADA LIMITED, VITAFOAM, INC., MOHAWK INDUSTRIES INC., LEGGETT & PLATT INC., ADVANCED URETHANE TECHNOLOGIES, INC. | : : : : : : : : : : : | |
| *Defendants* | : | |

**DEFENDANT ADVANCED URETHANE TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

**I. INTRODUCTION**

Advanced Urethane Technologies, Inc. ("AUT") is unlike any other company named as a defendant in this multidistrict antitrust litigation. Plaintiffs' Complaints make no allegations that AUT was the subject of government investigations, those investigations revealed any evidence of AUT's participation in the conspiracy or that AUT was even referenced by any of the alleged conspiracy participants. Instead, Plaintiffs have done nothing more than that which this Court has already squarely rejected – pleaded "a case of nothing more than [P]laintiff[s] having mined a defendant's employee directory for names of relevant officials to bolster an otherwise unsupportable Section 1 claim." *In re Polyurethane Foam Antitrust Litig.*, 2011 U.S. Dist. LEXIS 104419, *17-18 (N.D. Ohio Sept. 15, 2011) (hereinafter referred to as

"Motion for Reconsideration Opinion"). Conclusory averments and speculation aside, the allegations in the Complaints[1] are derived almost entirely from evidence uncovered by the U.S. Department of Justice, Antitrust Division ("DOJ") and the Canadian Bureau of Competition ("CBC") during their investigation into price fixing in the polyurethane foam industry. The complete absence of any significant averment regarding AUT is due to the fact they cannot make any such allegations in good faith.

   Nowhere do Plaintiffs allege a specific agreement or action ***by AUT*** in furtherance of any alleged conspiracy to fix the price of polyurethane foam. Despite months of discovery, including the information related to DOJ and CBC proceedings, Plaintiffs do not even allege any communications or discussions among AUT and the other defendants regarding its purported role in the conspiracy or any facts that AUT provided any other defendants advance knowledge of AUT's pricing decisions, let alone as part of the vast conspiracy alleged. Instead, Plaintiffs' claims against AUT are based on nothing more than a listing of former Leggett & Platt employees and allegations of "guilt by association."

   Plaintiffs do not allege facts sufficient to satisfy the pleading requirements under *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), or *Watson Carpet & Floor Covering, Inc v. Mohawk Indus., Inc.*, 648 F.3d 452 (6th Cir. 2011). With respect to AUT, Plaintiffs' Complaints amount to no more than conclusory and generic allegations, fail to plead an explicit conspiratorial agreement ***involving AUT*** as required by *Watson Carpet,* and do not plead any act by AUT in furtherance of or from which one could

---

[1] Plaintiffs in this case are Grand Rapids Bedding Co., Medi-Pedic Bedding Co., Inc. d/b/a Englander Southwest, Fraenkel Company d/b/a Englander South Central, Tualatin Sleep Products, Inc. d/b/a Englander Northwest, Advanced Sleep Concepts d/b/a Englander Southeast, Illinois Sleep Products d/b/a Englander Midwest, Sleep Inc. d/b/a Englander Northeast, White Cross Sleep Products, Inc. d/b/a Englander Mid-Atlantic, Jonathan Stevens Mattress Co., Jeffco Fibres, Inc., Spring Air International LLC, Spring Air Ohio LLC, Spring Air LLC, E&E Bedding Company, Inc., and Alfred T. Giuliano, the Chapter 7 Trustee of the Substantively Consolidated Estates of Consolidated Bedding, Inc. and related entities.

infer any alleged conspiracy with any degree of specificity, let alone with the sufficiency required by *Twombly* and *Iqbal* to withstand a motion to dismiss. Even under the most generous reading, Plaintiffs' claims as against AUT are but a fishing expedition in a pond without any fish, and should be dismissed with prejudice.[2]

## II. FACTUAL BACKGROUND

### A. The Allegations of the Complaint

Plaintiffs are various opt-out direct purchasers of polyurethane foam. *See* Complaint at 1.[3] AUT has not been named in either of the purported class cases. Plaintiffs assert that multiple defendants, including AUT, violated Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1 ("Section 1") by "engag[ing] in an ongoing conspiracy to fix the price of flexible polyurethane foam and flexible polyurethane foam products (collectively, 'flexible polyurethane foam')." *Id*. Plaintiffs also assert that Defendant Vitafoam, Inc. ("Vitafoam") agreed with Defendants Valle Foam ("Valle") and Domfoam International, Inc. ("Domfoam") "not to solicit customers for flexible polyurethane foam," and further allege that the other Defendants "also participated in this conspiracy." *Id*.

Plaintiffs claim that "substantial evidence of the conspiracy has been gathered by the [DOJ] during its investigation," and point to the fact that in February 2010, Vitafoam voluntarily approached the DOJ "to self-report evidence of illegal antitrust activities amongst

---

[2] Plaintiffs' claims against AUT are also barred, in whole or in part, based on the discharge of all claims against AUT by bankruptcy. *See In re Travel Agent Comm'n Antitrust Litig.*, 2007-2 Trade Cas. (CCH) P75, P78 (N.D. Ohio 2007) ("Because the three airlines were discharged in Bankruptcy proceedings, Plaintiffs are permanently enjoined from pursuing their antitrust claim . . . ."), *aff'd*, 583 F.3d 896 (6th Cir. 2009). AUT does not move to dismiss Plaintiffs' Complaints based on the discharge because there exist certain limited factual issues that need to be resolved before establishing that Plaintiffs' claims are barred as a matter of law. Nevertheless, once those facts are established, Plaintiffs' claims will likely be barred or transferred into the Bankruptcy Court for the District of Delaware.

[3] Plaintiffs' respective complaints are substantively identical, but contain minor differences in paragraph numbering. For simplicity's sake, all references to Plaintiffs' Complaint will cite Plaintiff Grand Rapids Bedding Co.'s Complaint.

itself and other companies and individuals in the industry . . . and to seek acceptance into the [DOJ's] Corporate Leniency Program." *Id*. at ¶¶ 8-9.  Plaintiffs do not allege that AUT was mentioned in any of the "substantial evidence" obtained as a result of these government investigations.

L&P is a Missouri corporation which manufactures, among other things, foam and other components for the bedding and furniture industry.  *Id*. at ¶ 35.  Plaintiffs allege that L&P participated with the other defendants in the conspiracy to fix prices and allocate customers.  *Id*. at ¶¶ 159-160.  On March 30, 2007, L&P sold the assets of its prime foam business to AUT.  *Id*. at ¶ 36.  Eighteen L&P employees transitioned to work for AUT following the 2007 acquisition.  *Id*. at ¶ 162.

Plaintiffs claim that a former L&P "executive," "responsible for purchases of polyurethane foam," received email communications from another L&P employee in 2004 and 2005, while employed by L&P, containing information regarding the pricing of other polyurethane foam manufacturers.  *Id*. at ¶¶ 159-160.  Plaintiffs further allege that "[u]pon information and belief, [that] executive continued to engage in the same coordinated price fixing when he took charge of polyurethane sales at AUT."  *Id*. at ¶ 162.  Plaintiffs make a similar conclusory claim that other former L&P employees, including an individual named Joseph Progar, engaged in activities that were consistent with a conspiracy during their employment with AUT.  *Id*. at ¶ 163.  Specifically, Plaintiffs allege that "[w]hile he worked for AUT, Mr. Progar authored letters to customers announcing AUT's price increases of foam products" and that unknown "[o]ther employees authored price increase letters both when they worked at L&P and when they came to work at AUT."  *Id*.  Plaintiffs baldly assert that "[t]he practice of coordinating price increase letters was longstanding" and included AUT.  *Id*. at ¶ 164.  Finally,

Plaintiffs claim that "certain of the former L&P employees who transitioned to work for AUT attended meetings of the [Polyurethane Foam Association (PFA)]" both as L&P and, later, as AUT employees.  *Id*. at ¶ 165.

### III. ARGUMENT

#### A. Plaintiffs' Complaints Fail to Allege AUT's Agreement to and Participation in an Antitrust Conspiracy

Through several motions to dismiss and a motion for reconsideration, this Court has already determined that Plaintiffs have sufficiently alleged that certain polyurethane foam manufacturers agreed to fix prices and engaged in conduct in furtherance of that conspiracy.  For the purpose of this motion, however, the issue before the Court is whether Plaintiffs adequately allege that AUT was a party to an agreement to fix prices and engaged in conduct in furtherance of the conspiracy.  Plaintiffs have not met their burden.

The Court's conclusion that Plaintiffs sufficiently alleged the existence of a conspiracy among certain competitors cannot be extended automatically to all manufacturers of polyurethane foam.  "Adequately alleging a conspiratorial agreement in general does not . . . indicate that a plaintiff has alleged each defendant's participation in that conspiracy."  *In re Polyurethane Foam Antitrust Litig.*, 2011 U.S. Dist. LEXIS 85032, *12 (N.D. Ohio July 19, 2011) (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)) (hereinafter referred to as "Motion Dismiss Opinion"); *see also* Motion for Reconsideration Opinion at *11 ("Likewise, attempting to implicate individual defendants in an alleged antitrust conspiracy by referring generally to 'defendants' will not do if the complaint provides 'no clue' as to the terms of the agreement, or what role each defendant played.").  Thus, Plaintiffs' Complaints "must contain sufficient factual matter that, taken as true, suggests an unlawful agreement was made" and that AUT was a party to that agreement.  *See* Motion to

Dismiss Opinion at 781 (citing *Twombly*, 550 U.S. at 556).  To meet their pleading burden Plaintiffs must allege either (1) direct evidence (not conclusory statements) of AUT's "explicit agreement to restrain trade"; or (2) sufficient circumstantial evidence "that reasonably tends to prove that [AUT] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective."  *See id.* (citing *Travel*, 583 F.3d at 907).  To the extent Plaintiffs rely on circumstantial pleading, the Complaints' factual allegations regarding AUT "must be enough to raise a right to relief above the speculative level," *Watson,* 648 F.3d at 457 (quoting *Travel*, 583 F.3d at 902), and must "raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Twombly*, 127 S.Ct. at 1965.

Setting aside Plaintiffs' conclusory allegations against AUT, as *Twombly* and *Watson* require, an examination of the entirety of the averments demonstrates that Plaintiffs have utterly failed to allege a single fact regarding AUT's current business from which AUT's agreement can be inferred.  *See* Motion to Dismiss Opinion at 782.  Further, unlike the other defendants remaining in this action, Plaintiffs have not pointed to any facts implicating AUT from investigations conducted by the DOJ and the CBC into certain potential antitrust violations.  *See id*.  There is a very good and simple reason why Plaintiffs make no such averments -- they cannot.  Plaintiffs do not properly plead a conspiracy as to AUT either directly or through circumstantial evidence.

        **1.**        **Plaintiffs Fail to Allege Direct Evidence that AUT Entered an Explicit Agreement to Restrain Trade**

Direct evidence, by its nature, satisfies the pleading standard of *Twombly* as it renders the existence of a conspiracy plausible.  *See Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1233 (3d Cir. 1993) ("[N]o inferences are required from direct evidence to establish a fact and thus a court need not be concerned about the reasonableness of

the inferences to be drawn from such evidence."). Plaintiffs' Complaints contain only a handful of factual averments that even mention AUT and fail to allege any cognizable direct evidence of AUT's participation in the alleged conspiracy.

Specifically, Plaintiffs' Complaints contain only three arguably direct allegations that AUT was a party to an actual agreement to restrain trade. Each of these three allegations is either conclusory or based on circumstantial evidence and thus does not qualify as direct evidence of an unlawful agreement at all. First, Plaintiffs baldly assert that after its acquisition of L&P's assets, "AUT continued to communicate with competitors regarding the price of polyurethane foam, furthering the understanding and agreement among the competitors in the foam industry to collectively support price increases." *See* Complaint at ¶ 161. Second, Plaintiffs charge that AUT and the other Defendants "each announced similar price increases in conjunction with their co-conspirators and, upon information and belief, with the prior knowledge of other Defendants' close-to-simultaneous raises." *See id.* at ¶ 164. Third, Plaintiffs allege "[u]pon information and belief," a former L&P executive, who worked for AUT following the asset acquisition, "continued to engage in the same coordinated price fixing when he took charge of polyurethane sales at AUT." *See id.* at ¶ 162. As noted by this Court, such unsupported allegations "ring[] conclusory" and "resemble the sort of 'formulaic recitation' of an antitrust claim's elements rejected by *Twombly*." *See* Motion to Dismiss Opinion at *9. Where, as here, the allegations of "direct evidence" are nothing more than "conclusory allegations or legal conclusions masquerading as factual allegations," the allegations do not suffice. *Watson* at 457 (quoting *Travel*, 583 F.3d at 902).

Equally wrong is Plaintiffs' attempt to establish AUT's agreement to conspire based virtually exclusively on allegations that L&P was involved in the conspiracy and that AUT

-9-

acquired L&P assets, including some L&P employees. *See* Complaint at ¶¶ 161-165.[4] Allegations regarding L&P, however, are not direct evidence of, and do not plausibly or reasonably reflect, an illegal agreement on the part of AUT. AUT was not a foam manufacturer before the L&P asset acquisition and any notion that AUT could have acquired the L&P assets and successfully entered the business without employing some of L&P's personnel is entirely implausible. As this Court has recognized "[a]n express conspiratorial agreement cannot be established through circumstantial evidence, or those allegations that can only be connected to a conclusion of fact by inference." *See* Motion for Reconsideration Opinion at 798. Accordingly, Plaintiffs are prohibited from attempting to establish an express conspiratorial agreement involving AUT merely through its conclusory allegations related to L&P.

The Complaints do not reference any admissions by AUT or allege actual discussions among AUT and the other defendants, let alone discussions where AUT communicated its pricing in advance of an announced price increase or where AUT acknowledged that it had received such information from other defendants. *See* Complaint at ¶¶ 161-165. Neither AUT nor any AUT employee received a subpoena, was named as a target of the investigations or mentioned as participants in the conspiracy in any of the affidavits or other documents associated with these investigations. Plaintiffs do not plead the existence of documents reflecting unlawful communications between AUT and other defendants. Nowhere do Plaintiffs allege that AUT executives met with any other defendants for an improper purpose. The Complaints contain no factual allegations describing telephone calls, email communications

---

[4] It is well established that AUT, as a purchaser of assets, cannot be held liable for the conduct of L&P. *See Mason v. Network of Wilmington, Inc.*, 2005 Del. Ch. LEXIS 99, *18 (Del. Ch. July 1, 2005). Although this Court denied the motion to dismiss of another defendant that had acquired the assets of a participant in the conspiracy, the allegations regarding AUT are significantly different. *See* Motion for Reconsideration at 800. In the case of the other defendant, the complaints against it contained specific factual averments establishing participation in discussions related to price fixing both before and after the asset sale. *See id.* As discussed above, Plaintiffs have not made similar allegations against AUT.

or any other "detailed allegations of an agreement to restrain trade" that "clearly" establish AUT's involvement in the alleged conspiracy. *See* Motion for Reconsideration Opinion at 797 (quoting *Watson Carpet & Floor Covering, Inc v. Mohawk Indus., Inc.*, 648 F.3d 452, 2011 U.S. App. LEXIS 12606, 2011 WL 2462833 (6th Cir. 2011)). Stripped of their conclusory averments that AUT "continued to communicate" and "continued to . . . coordinate[] price", the Complaints offer no allegations of an express conspiratorial agreement by AUT.

### 2. Plaintiffs' Complaint Does Not Properly Plead Circumstantial Facts of an AUT Agreement to Restrain Trade

Faced with the complete absence of direct allegations of an express agreement, Plaintiffs attempt to state a claim against AUT through circumstantial evidence and inference. The law is clear, however, that to do so the circumstantial evidence pleaded must "reasonably tend[] to prove that [AUT] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *See* Motion to Dismiss Opinion at 2 (citing *Travel*, 583 F.3d at 907). For plaintiffs that follow this approach, "allegations of parallel behavior must do more than describe behavior consistent with independent responses to natural market forces." *See* Motion to Dismiss Opinion at 8 (citing *Twombly*, 550 U.S. at 566). . *Twombly* further requires that Plaintiffs allege sufficient facts to cross "the line from conceivable to plausible." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 455 (6th Cir. 2007) (citing *Twombly,* 550 U.S. at 570) (quotations omitted). Plaintiffs' circumstantial allegations fail to push their claims against AUT across that clear line.

The circumstantial evidence relied upon by Plaintiffs is: (1) a L&P employee, more than two years before AUT's existence, received two inappropriate emails and became an employee of AUT for an unspecified period of time as a result of AUT's 2007 acquisition of certain assets from L&P; (2) AUT issued price announcements which were parallel with some

-11-

other makers of polyurethane foam; and (3) some AUT employee attended some unspecified PFA meeting(s). *See* Complaint at ¶¶ 161-165. These circumstantial allegations, however, are not sufficient to lead to the conclusion that AUT agreed to and participated in the conspiracy.

First, Plaintiffs' allegations that AUT announced price increases around the same time as other defendants is not sufficient to establish the existence of a conspiracy. "Without more, parallel conduct does not suggest conspiracy." *Twombly*, 550 U.S. at 556-57. Indeed, "a price increase by retailers, without more, does not suggest anticompetitive behavior by suppliers." *NicSand*, 507 F.3d at 458 (6th Cir. 2007).

Second, participation of AUT employees in PFA does not establish the existence of a conspiracy. Mere membership in a trade association does not satisfy the pleading requirements for an agreement or trigger antitrust liability. *See Twombly*, 550 U.S. at 567 n.12 (rejecting argument that conspiracy could be inferred from defendants' membership in various trade associations); *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 584, 45 S. Ct. 578, 69 L. Ed. 1093 (1925) ("We do not conceive the members of trade associations become conspirators merely because they gather and disseminate information."); *Travel,* 583 F.3d at 905, 910-11 (allegations of defendants' opportunity to conspire at meetings with each other insufficient to state a claim for conspiracy); *see generally Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 53 (3d Cir. 2007) ("[P]roof of opportunity alone is insufficient to sustain an inference of conspiracy . . . ."). Plaintiffs have only offered conclusory allegations that AUT's participation in PFA resulted in anticompetitive conduct.

Third, Plaintiffs cannot plead AUT into the conspiracy through the prior conduct of L&P. At most, Plaintiffs' allegations show that a former L&P employee, who eventually worked for AUT, may have had knowledge of the conspiracy. The alleged conduct of

individuals while employed at L&P cannot serve as a reasonable or plausible claim of conspiracy against AUT, a subsequent asset purchaser. For example, even taking the Complaints as true, there is nothing alleged from which one could properly infer that AUT knew of L&P alleged activities. There is no factual averment that the former L&P employees ever apprised AUT of the existence of the alleged conspiracy and their purported role in that conspiracy, nor anything from which one could properly infer that AUT instructed the former L&P employees to continue to fix prices following the acquisition. Plaintiffs' Complaints contain no allegation that the employee sought out the pricing information or somehow acted on it.

Moreover, the fact that L&P employees responsible for "purchasing" polyurethane foam possessed competitor pricing information does not create a plausible inference that the employee participated in a price fixing conspiracy. Regardless of where the information came from, someone in purchasing would have a legitimate interest in understanding the price at which s/he might be able to purchase foam. The receipt of the emails by a L&P employee does not plausibly lead to the conclusion that the former L&P employee violated the antitrust laws while employed by AUT or that AUT corporately agreed to and participated in the conspiracy alleged. Plaintiffs' AUT conspiracy claim based on L&P's employees' conduct, AUT's employment of former L&P employees, issuance of parallel price increase letters and trade association membership are purely circumstantial and not sufficient singly or together to plead an unlawful agreement. Accordingly, Plaintiffs cannot be permitted to maintain a claim based on the circumstantial allegations in their Complaints and this Court should grant AUT's motion to dismiss with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against AUT with prejudice.

-14-

December 28, 2012  Respectfully submitted,


/s/ *Barbara T. Siclides*
BARBARA T. SICALIDES
MATTHEW R. WILLIAMS
JEFFREY L. VAGLE
ALEXANDER L. HARRIS
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Phone: 215.981.4000
Fax: 215.981.4750
sicalidb@pepperlaw.com
williamsm@pepperlaw.com
vaglej@pepperlaw.com
harrisa@pepperlaw.com


*Attorneys for Defendant Advanced Urethane Technologies, Inc.*