IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GRAND RAPIDS BEDDING CO. | : | |
| | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10024-JZ |
| ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendant* | : | |
| | : | |

| | | |
|---|---|---|
| ENGLANDER SOUTHWEST ET AL., | : | |
| | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10022-JZ |
| ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendants* | : | |
| | : | |

-2-

| | | |
|---|---|---|
| JEFFCO FIBRES, INC. | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10023-JZ |
| ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendants* | : | |

| | | |
|---|---|---|
| SPRING AIR INTERNATIONAL LLC ET AL., | : | |
| | : | CIVIL ACTION |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:11-pf-10021-JZ |
| HICKORY SPRINGS MANUFACTURING COMPANY, VALLE FOAM INDUSTRIES, INC., DOMFOAM INTERNATIONAL, INC., CARPENTER COMPANY, WOODBRIDGE FOAM CORPORATION, FLEXIBLE FOAM PRODUCTS, INC., SCOTTDEL, INC., FOAMEX INNOVATIONS, INC., FUTURE FOAM, INC., VITAFOAM PRODUCTS CANADA LIMITED, VITAFOAM, INC., MOHAWK INDUSTRIES INC., LEGGETT & PLATT INC., ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| *Defendants* | : | |

**DEFENDANT ADVANCED URETHANE TECHNOLOGIES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.    INTRODUCTION**

Advanced Urethane Technologies, Inc. ("AUT") is unlike any other company named as a defendant in this multidistrict antitrust litigation. Plaintiffs'[1] Amended Complaint make no allegations that AUT was the subject of government investigations, that those investigations revealed any evidence of AUT's participation in the conspiracy or that AUT was even referenced by any of the alleged conspiracy participants. Instead, even after three complaints, access to months of discovery, and the production of countless pages of documents,[2] Plaintiffs have done nothing more than that which this Court has already squarely rejected – pleaded "a case of nothing more than [P]laintiff[s] having mined a defendant's employee directory for names of [allegedly] relevant officials to bolster an otherwise unsupportable Section 1 claim." *In re Polyurethane Foam Antitrust Litig.*, 2011 U.S. Dist. LEXIS 104419, *17-18 (N.D. Ohio Sept. 15, 2011) (hereinafter referred to as "Motion for Reconsideration Opinion").

Conclusory averments and speculation aside, the allegations in the Amended Complaint are derived almost entirely from evidence uncovered by the U.S. Department of Justice, Antitrust Division ("DOJ") and the Canadian Bureau of Competition ("CBC") during their investigation into price fixing in the polyurethane foam industry. Despite months of discovery, the complete absence of any significant averment regarding AUT is due to the fact they cannot make any such allegations in good faith.

---

[1] "Plaintiffs" refers collectively to all named plaintiffs in the actions under MDL member cases: 3:11-pf-10021; 3:11-pf-10022; 3:11-pf-10023, and 3:11-pf-10024.

[2] Plaintiffs originally filed a substantially similar version of this complaint in the Northern District of Ohio. Plaintiffs then voluntarily dismissed this complaint and filed a revised version in the District of Massachusetts which was then transferred into this multi-district litigation. Plaintiffs then amended this transferred complaint.

Nowhere do Plaintiffs allege a specific agreement or action **_by AUT_** in furtherance of any alleged conspiracy to fix the price of polyurethane foam. Realizing their original complaint failed as a matter of law, Plaintiffs filed their First Amended Complaint ("Amended Complaint") in response to AUT's prior Motion to Dismiss (MDL Dkt. No. 461). Yet, aside from the introduction and recitation of parties, AUT is not even mentioned until page 51 of the 59 page Amended Complaint and there are no allegations against it until page 53. Then, the Amended Complaint does nothing more than recite conclusory allegations and allege irrelevant facts of wrongdoing by others. Plaintiffs' case is built on "guilt by association" – an effort to claim that AUT is somehow liable for the conduct of certain employees while those employees were employed by another company years before or merely because an unidentified AUT employee allegedly had a business meeting where, according to Plaintiffs' own averments, prices were not discussed. *See* Amended Complaint at ¶ 178.

Plaintiffs do not allege facts sufficient to satisfy the pleading requirements under *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), or *Watson Carpet & Floor Covering, Inc v. Mohawk Indus., Inc.*, 648 F.3d 452 (6th Cir. 2011). With respect to AUT, Plaintiffs' Amended Complaint amounts to no more than conclusory and generic allegations, fail to plead an explicit conspiratorial agreement **_involving AUT_** as required by *Watson Carpet,* and do not plead any act by AUT in furtherance of or from which one could infer any alleged conspiracy with any degree of specificity, let alone with the sufficiency required by *Twombly* and *Iqbal* to withstand a motion to dismiss. Even under the most generous reading, Plaintiffs' claims as against AUT are but a fishing expedition in a pond without any fish, and should be dismissed with prejudice.[3]

---

[3] Plaintiffs' claims against AUT are also barred, in whole or in part, based on the discharge of all claims against AUT by bankruptcy. *See In re Travel Agent Comm'n Antitrust Litig.*, 2007-2 Trade Cas. (CCH) P75, P78

## II. FACTUAL BACKGROUND

### A. The Allegations of the Complaint

Plaintiffs are various opt-out direct purchasers of polyurethane foam. *See* Amended Complaint at 1. AUT has not been named in the direct or indirect class cases or by any other opt-out counsel. Plaintiffs assert that multiple defendants,[4] including AUT, violated Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1 ("Section 1") by "engag[ing] in an ongoing conspiracy to fix the price of flexible polyurethane foam and flexible polyurethane foam products (collectively, 'flexible polyurethane foam')." *Id*. at 1-2. Plaintiffs claim that "AUT was not viewed as a leader of the conspiracy," but that AUT held a similar status to other alleged co-conspirators such as Hickory Springs or L&P. *Id.* at ¶ 176. Plaintiffs' are wrong and the Court need look no further than the four corners of the Amended Complaint to reach that conclusion. Unlike Hickory Springs or L&P, AUT has never been the subject of government investigation or even referenced by any of the defendants identified in the government inquiries.

Plaintiffs also assert that Defendant Vitafoam, Inc. ("Vitafoam") agreed with Defendants Valle Foam ("Valle") and Domfoam International, Inc. ("Domfoam") "not to solicit customers for flexible polyurethane foam," and further allege that AUT "joined" this conspiracy years after its inception. *Id*. Plaintiffs claim that "substantial evidence of the conspiracy has been gathered by the [DOJ] during its investigation," and point to the fact that in February 2010,

---

(N.D. Ohio 2007) ("Because the three airlines were discharged in Bankruptcy proceedings, Plaintiffs are permanently enjoined from pursuing their antitrust claim . . . ."), *aff'd*, 583 F.3d 896 (6th Cir. 2009). AUT does not move to dismiss Plaintiffs' Amended Complaint based on the discharge because there exist certain limited factual issues that need to be resolved before establishing that Plaintiffs' claims are barred as a matter of law. Nevertheless, once those facts are established, Plaintiffs' claims will likely be barred or transferred into the Bankruptcy Court for the District of Delaware.

[4] Plaintiffs have divided these same claims into two separate actions and now refer to these defendants as "co-conspirators" in the Amended Complaint. For ease of reference, AUT will continue to refer to these parties as "defendants" for purposes of this motion.

Vitafoam voluntarily approached the DOJ "to self-report evidence of illegal antitrust activities amongst itself and other companies and individuals in the industry . . . and to seek acceptance into the [DOJ's] Corporate Leniency Program." *Id*. at ¶¶ 8-9. Plaintiffs do not allege that AUT was mentioned in any of the "substantial evidence" obtained as a result of these government investigations.

L&P is a Missouri corporation which manufactures, among other things, foam and other components for the bedding and furniture industry. *Id*. at ¶ 44. Plaintiffs allege that L&P participated with the other defendants in the conspiracy to fix prices and allocate customers. *Id*. at ¶¶ 169-170. Plaintiffs' only direct allegations linking L&P to the conspiracy are the alleged actions of Joseph York, an L&P executive, in 2004-2005.

On March 30, 2007, L&P sold the assets of its prime foam business to AUT. *Id*. at ¶ 22. Eighteen L&P employees transitioned to work for AUT following the 2007 acquisition. *Id*. at ¶ 171. Notably, Mr. York ***did not*** join AUT and has never been employed by AUT. Indeed, the only connection Plaintiff makes between Mr. York and AUT is that an executive who received an email from Mr. York in 2004 and one in 2005 (while the executive was employed at L&P and a co-worker of Mr. York's) was subsequently employed by AUT. *Id.* at ¶ 171.

Plaintiffs then makes the conclusory allegation that "[u]pon information and belief, [that] executive continued to engage in the same coordinated price fixing when he took charge of polyurethane sales at AUT." *Id*. at ¶ 171. Specifically, Plaintiffs allege that "[w]hile he worked for AUT, Mr. Progar, along with sales manager Brian French, who also formerly worked at L&P, authored letters to customers announcing AUT's price increases of foam products." *Id*. Plaintiffs baldly assert that "AUT generally continued to communicate with competitors" and that "[t]he practice of coordinating price increase letters was longstanding"

and included AUT. *Id*. at ¶ 172, 174. Plaintiffs further allege, with no factual basis, that L&P exercised "some managerial direction" over AUT in 2007 although they do not plead that L&P was able to set prices for AUT.[5] *Id.* at ¶ 172.

Plaintiff goes on to state that "AUT informed customers in advance of anticipated price increases" and that these customers "passed on" the information to other foam manufacturers. *Id.* ¶ at 175. As a result, Plaintiffs allege that "AUT was viewed as a member of a group of foamers that coordinated price" and that "[o]ther co-conspirators disseminated knowledge of AUT's proposed price increases." *Id.* ¶ at 176. Plaintiffs do not allege how the viewpoints and the disclosure of AUT's prices by others is evidence that AUT entered into an agreement with any competitor as to the price of foam. Moreover, Plaintiffs averments make no sense; Plaintiffs fail to allege why customers would participate in the claimed conspiracy that allegedly resulted in higher prices.

Finally, Plaintiffs claim that "[p]rice increase letters" sent by AUT occurred on the same date, or in close proximity to, the dates of other price increase letters. *Id.* ¶ at 177. One AUT executive also purportedly "met with" an alleged member of the conspiracy at an unknown date between 2007 and 2010 and, during the meeting, discussed business generally. *Id.* ¶ at 178. "[C]ertain of the former L&P employees who transitioned to work for AUT attended meetings of the [Polyurethane Foam Association (PFA)]" both as L&P and, later, as AUT employees. *Id*. at ¶ 179. Plaintiff makes no other allegations as to the participants in, and the substance of, these meetings.

---

[5] Indeed, it is difficult to determine exactly what Plaintiff is attempting to allege in ¶ 172. In addition to the typographical error of using the name L&P twice, L&P clearly had managerial direction over the company during a portion of 2007 because the company was not sold to AUT until March, 2007. Further, AUT continued to use service IT services from L&P for a limited time after the sale. Plaintiffs' attempt to conclusory remark that this constitutes "some managerial direction" does not demonstrate any participation in a conspiracy or the ability of L&P to set AUT's prices.

### B. Procedural History

The Plaintiffs in this case waited until the last day of the last extension of the deadline for adding new parties, April 30, 2012, before filing their complaints against AUT or amending their complaints to include AUT.[6]  *See, e.g.*, MDL Member Case No. 3:12-pf-10010, Dkt. No. 1.  Plaintiffs, however, chose to file the case, which could be transferred from any district in the country to this MDL litigation, in a district that did not have personal jurisdiction over AUT.  Plaintiffs, realizing this error, voluntarily dismissed their complaints on August 6, 2012.  MDL Dkt. No. 407.  Plaintiffs refiled their complaints in the District of Massachusetts, but waited four months – until December 7, 2012 – to serve AUT.  After AUT filed a second motion to dismiss, Plaintiffs amended their complaints on January 18, 2012.  Plaintiffs, far from diligently pursuing their case based upon evidence of AUT's participation in the conspiracy, have used every procedural tactic and opportunity to delay AUT's full participation in the litigation.

## III. ARGUMENT

### A. Plaintiffs' Complaint Fail to Allege AUT's Agreement to and Participation in an Antitrust Conspiracy

Through several motions to dismiss and a motion for reconsideration, this Court has already determined that Plaintiffs have sufficiently alleged that certain polyurethane foam manufacturers agreed to fix prices and engaged in conduct in furtherance of that conspiracy.  For the purpose of this motion, however, the issue before the Court is whether Plaintiffs adequately

---

[6] The original complaints in this multi-district litigation were transferred on December 2, 2010.  MDL Dkt. No. 1.  On April 27, 2011, this Court issued a scheduling order that set the deadline for adding new parties as March 1, 2012.  MDL Dkt. No. 112.  On March 2, 2012, the Court extended that deadline until March 8, 2012.  MDL Dkt. No. 341.  On March 26, 2012, the Court again extended the deadline to add new parties until April 30, 2012.  MDL Dkt. No. 354.

-8-

allege that AUT was a party to an agreement to fix prices and engaged in conduct in furtherance of the conspiracy.  Plaintiffs have not met their burden.

The Court's conclusion that Plaintiffs sufficiently alleged the existence of a conspiracy among certain competitors cannot be extended automatically to all manufacturers of polyurethane foam.  "Adequately alleging a conspiratorial agreement in general does not . . . indicate that a plaintiff has alleged each defendant's participation in that conspiracy." *In re Polyurethane Foam Antitrust Litig.*, 2011 U.S. Dist. LEXIS 85032, *12 (N.D. Ohio July 19, 2011) (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)) (hereinafter referred to as "Motion Dismiss Opinion"); *see also* Motion for Reconsideration Opinion at *11 ("Likewise, attempting to implicate individual defendants in an alleged antitrust conspiracy by referring generally to 'defendants' will not do if the complaint provides 'no clue' as to the terms of the agreement, or what role each defendant played.").  Thus, Plaintiffs' Amended Complaint "must contain sufficient factual matter that, taken as true, suggests an unlawful agreement was made" and that AUT was a party to that agreement.  *See* Motion to Dismiss Opinion at 781 (citing *Twombly*, 550 U.S. at 556).  To meet their pleading burden Plaintiffs must allege either (1) direct evidence (not conclusory statements) of AUT's "explicit agreement to restrain trade"; or (2) sufficient circumstantial evidence "that reasonably tends to prove that [AUT] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective."  *See id.* (citing *Travel*, 583 F.3d at 907).

Plaintiffs do not allege that AUT "explicitly agreed" to fix prices.  To the extent Plaintiffs rely on circumstantial pleading, the Amended Complaint's factual allegations regarding AUT "must be enough to raise a right to relief above the speculative level," *Watson,*

-9-

648 F.3d at 457 (quoting *Travel*, 583 F.3d at 902), and must "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 555 U.S. at 555.

Setting aside Plaintiffs' conclusory allegations against AUT, as *Twombly* and *Watson* require, an examination of the entirety of the averments demonstrates that Plaintiffs have utterly failed to allege a single fact regarding AUT's current business from which AUT's agreement can properly be inferred. *See* Motion to Dismiss Opinion at 782. Further, unlike every other defendant remaining in this action, Plaintiffs have not pointed to any facts implicating AUT from investigations conducted by the DOJ and the CBC into certain potential antitrust violations. *See id*. There is a very good and simple reason why Plaintiffs make no such averments – they cannot. Plaintiffs do not properly plead a conspiracy as to AUT either directly or through circumstantial evidence.

### 1. Plaintiffs Fail to Allege Direct Evidence that AUT Entered an Explicit Agreement to Restrain Trade

Direct evidence, by its nature, satisfies the pleading standard of *Twombly* as it renders the existence of a conspiracy plausible. *See Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1233 (3d Cir. 1993) ("[N]o inferences are required from direct evidence to establish a fact and thus a court need not be concerned about the reasonableness of the inferences to be drawn from such evidence."). Plaintiffs' Amended Complaint contains only a handful of factual averments that even mention AUT and fail to allege any cognizable direct evidence of AUT's participation in the alleged conspiracy.

Each of Plaintiffs such allegations is either conclusory or based on circumstantial evidence and thus does not qualify as direct evidence of an unlawful agreement at all. First, Plaintiffs baldly assert that after its acquisition of L&P's assets, "AUT generally continued to communicate with competitors regarding the price of polyurethane foam." *See* Amended

Complaint at ¶ 172. Second, Plaintiffs charge that AUT "announced similar price increases as [alleged co-conspirators] and with prior knowledge of one another's close-to-simultaneous raises." *See id.* at ¶ 174. Third, Plaintiffs allege "[u]pon information and belief," a former L&P executive, who worked for AUT following the asset acquisition, "continued to engage in the same coordinated price fixing when he took charge of polyurethane sales at AUT." *See id.* at ¶ 171. As noted by this Court, such unsupported allegations "ring[] conclusory" and "resemble the sort of 'formulaic recitation' of an antitrust claim's elements rejected by *Twombly*." *See* Motion to Dismiss Opinion at *9. Where, as here, the allegations of "direct evidence" are nothing more than "conclusory allegations or legal conclusions masquerading as factual allegations," the allegations do not suffice. *Watson* at 457 (quoting *Travel*, 583 F.3d at 902).

    Equally wrong is Plaintiffs' attempt to establish AUT's agreement to conspire based virtually exclusively on allegations that L&P was involved in the conspiracy and that AUT necessarily had some contact with L&P related to is acquisition and transfer of L&P assets, including some L&P employees. *See* Amended Complaint at ¶¶ 168-179.[7] Allegations regarding L&P, however, are not direct evidence of, and do not plausibly or reasonably reflect, an illegal agreement on the part of AUT. AUT was not a foam manufacturer before the L&P asset acquisition and any notion that AUT could have acquired the L&P assets and successfully entered the business without employing some of L&P's personnel is entirely implausible. As this Court has recognized "[a]n express conspiratorial agreement cannot be established through circumstantial evidence, or those allegations that can only be connected to a conclusion of fact

---

[7] It is well established that AUT, as a purchaser of assets, cannot be held liable for the conduct of L&P. *See Mason v. Network of Wilmington, Inc.*, 2005 Del. Ch. LEXIS 99, *18 (Del. Ch. July 1, 2005). Although this Court denied the motion to dismiss of another defendant that had acquired the assets of a participant in the conspiracy, the allegations regarding AUT are significantly different. *See* Motion for Reconsideration at 800. In the case of the other defendant, the complaints against it contained specific factual averments establishing participation in discussions related to price fixing both before and after the asset sale. *See id.* As discussed above, Plaintiffs have not made similar allegations against AUT.

by inference." *See* Motion for Reconsideration Opinion at 798. Accordingly, Plaintiffs are prohibited from attempting to establish an express conspiratorial agreement involving AUT merely through its conclusory allegations related to L&P and its employees.

The Amended Complaint does not reference any admissions by AUT or allege actual discussions among AUT and the other defendants regarding pricing, let alone discussions where AUT communicated its pricing in advance of an announced price increase or to where AUT acknowledged that it had received such information from other defendants. *See* Amended Complaint at ¶¶ 168-179. Neither AUT nor any AUT employee received a subpoena, was named as a target of the investigations or mentioned as participants in the conspiracy in any of the affidavits or other documents associated with these investigations. Plaintiffs do not plead the existence of documents reflecting unlawful communications between AUT and other defendants. Nowhere do Plaintiffs allege that AUT executives met with any other defendants for an improper purpose.

The Amended Complaint alleges some meeting in which an AUT executive met with an employee of another foam company and discussed various topics. *Id.* at ¶ 178. Yet, Plaintiffs do not allege that the participants of the meeting discussed pricing or entered into an agreement of any kind. The Amended Complaint contains no factual allegations describing telephone calls, email communications or any other "detailed allegations of an agreement to restrain trade" that "clearly" establish AUT's involvement in the alleged conspiracy. *See* Motion for Reconsideration Opinion at 797 (quoting *Watson Carpet & Floor Covering, Inc v. Mohawk Indus., Inc.*, 648 F.3d 452, 2011 U.S. App. LEXIS 12606, 2011 WL 2462833 (6th Cir. 2011)).

## 2. Plaintiffs' Amended Complaint Does Not Properly Plead Circumstantial Facts of an AUT Agreement to Restrain Trade

Faced with the complete absence of direct allegations of an express agreement, Plaintiffs attempt to state a claim against AUT through circumstantial evidence and inference. The law is clear, however, that to do so the circumstantial evidence pleaded must "reasonably tend[] to prove that [AUT] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *See* Motion to Dismiss Opinion at 2 (citing *Travel*, 583 F.3d at 907). "[A]llegations of parallel behavior must do more than describe behavior consistent with independent responses to natural market forces." *See* Motion to Dismiss Opinion at 8 (citing *Twombly*, 550 U.S. at 566). *Twombly* further requires that Plaintiffs allege sufficient facts to cross "the line from conceivable to plausible." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 455 (6th Cir. 2007) (citing *Twombly,* 550 U.S. at 570) (quotations omitted). Plaintiffs' circumstantial allegations fail to push their claims against AUT across that clear line.

Plaintiffs' theory is that AUT has a "similar status" to Hickory Springs and L&P. But, Plaintiffs fail to allege direct actions or relevant circumstantial actions by *AUT*. *See, e.g.*, Amended Complaint at ¶¶ 175-76 (averring that AUT did not do the "initial conspiratorial work" and that "[o]ther co-conspirators disseminated knowledge of AUT's proposed price increases"). AUT is not in the same position as Hickory Spring and L&P for a number of reasons, including because it has never been the subject of government investigation or even referenced by any of the defendants in the government inquiries. Plaintiffs cannot maintain a claim against AUT based solely on averments against other parties and the conclusory statement that AUT was allegedly a "co-conspirator."

The circumstantial evidence relied upon by Plaintiffs is: (1) AUT issued price announcements which were parallel with some other makers of polyurethane foam; (2) an L&P

employee, more than two years before AUT's existence, received two inappropriate emails and became an employee of AUT for an unspecified period of time as a result of AUT's 2007 acquisition of certain assets from L&P; (3) AUT negotiated prices with its customers; and (4) some unidentified AUT employee attended meetings where Plaintiffs do not allege prices were agreed to or even discussed . *See* Amended Complaint at ¶¶ 168-179. These circumstantial allegations, however, are not sufficient to lead to the conclusion that AUT agreed to and participated in the conspiracy.

First, Plaintiffs' allegations that AUT announced price increases around the same time as other defendants is not sufficient to establish the existence of a conspiracy. "Without more, parallel conduct does not suggest conspiracy." *Twombly*, 550 U.S. at 556-57; *see also Travel*, 583 F.3d at 903 ("Conscious parallelism, however, is not in itself prohibited under § 1 of the Sherman Act."). Indeed, "a price increase by retailers, without more, does not suggest anticompetitive behavior by suppliers." *NicSand*, 507 F.3d at 458 (6th Cir. 2007).

Second, Plaintiffs cannot plead AUT into the conspiracy through the prior conduct of L&P. At most, Plaintiffs' allegations show that a former L&P employee, who eventually worked for AUT, may have had knowledge of L&P's alleged participation in the conspiracy and that L&P and AUT did not sever completely every single tie until the transfer of L&P's assets to AUT was complete. The alleged conduct of individuals while employed at L&P cannot serve as a reasonable or plausible basis for a claim of conspiracy against AUT, a subsequent asset purchaser. For example, even taking the Amended Complaints as true, there is nothing alleged from which one could properly infer that AUT knew of, approved of, or agreed with L&P's alleged prior activities. There is no factual averment that the former L&P employees ever apprised AUT of the existence of the alleged conspiracy and L&P's purported role in that

-14-

conspiracy, nor anything from which one could properly infer that AUT instructed the former L&P employees to continue to fix prices following the acquisition.  Plaintiffs' Amended Complaint contains no allegation that any AUT employee sought out pricing information from the other defendants or somehow acted on it.

    Moreover, even if L&P employees' actions could somehow be imputed to AUT (which they cannot), the fact that L&P employees responsible for "purchasing" polyurethane foam possessed competitor pricing information does not create a plausible inference that the employee participated in a price fixing conspiracy.  Regardless of where the information came from, someone in purchasing would have a legitimate interest in understanding the price at which s/he might be able to purchase foam.  Importantly, the receipt of the emails by a L&P employee does not plausibly lead to the conclusion that the former L&P employee violated the antitrust laws while employed by AUT or that AUT corporately agreed to and participated in the conspiracy alleged.  "[P]laintiffs' reliance on these indeterminate assertions is misplaced because they represent precisely the type of naked conspiratorial allegation rejected by the Supreme Court in *Twombly*.  *Travel*, 583 F.3d at 905.

    Third, Plaintiffs claim that AUT informed customers in advance of anticipated price increases and that these customers passed information along to others who then disseminated the information.  Amended Complaint at ¶¶ 175-176.  Plaintiffs fail to explain why AUT should not be allowed to communicate prices to its own customers or why this does not serve an obvious business purpose – allowing it to vie for potential new customers and allowing its customers to plan their own purchases and budgets.  *See Travel*, 583 F.3d at 908 ("[P]laintiffs have failed to allege sufficient facts plausibly suggesting (not merely consistent with) an agreement in violation of § 1 of the Sherman Act because defendants conduct was not only

compatible with, but indeed was more likely explained by lawful, unchoreographed free-market behavior." (internal citations and quotation marks omitted)). There is no allegation that telling its customers of its anticipated price changes resulted in a horizontal agreement in which AUT conspired with its competitors.

Further, Plaintiffs' claim that Carpenter and Hickory Springs "expected" customers to pass on AUT's price increase information does not a conspiracy make. Even assuming that this is true, AUT has no ability to prevent its customers from communicating its pricing to its competitors in the course of their negotiations or otherwise and AUT certainly has no control over its competitors expectations (and Plaintiffs do allege that it does). Alleging communications with customers and then simply labeling it a horizontal conspiracy is not enough to survive a motion to dismiss. *See, e.g.*, *Travel*, 583 F.3d at 905 (explaining that the "Supreme Court rejected a similar argument in *Twombly*, holding that 'a few stray statements speak[ing] directly of an agreement . . . are merely legal conclusions resting on [] prior allegations" (quoting *Twombly*, 550 U.S. at 564.).

Fourth, participation of AUT employees in PFA does not establish the existence of a conspiracy. Mere membership in a trade association does not satisfy the pleading requirements for an agreement or trigger antitrust liability. *See Twombly*, 550 U.S. at 567 n.12 (rejecting argument that conspiracy could be inferred from defendants' membership in various trade associations); *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 584, 45 S. Ct. 578, 69 L. Ed. 1093 (1925) ("We do not conceive the members of trade associations become conspirators merely because they gather and disseminate information."). Similarly, the mere fact that Plaintiffs allege that an unidentified AUT employee met, at an unidentified place and time and for an unidentified purpose, with an employee of a competitor and discussed general

business topics, is not evidence of a conspiracy. *Travel,* 583 F.3d at 905, 910-11 (allegations of defendants' opportunity to conspire at meetings with each other insufficient to state a claim for conspiracy); *see generally Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 53 (3d Cir. 2007) ("[P]roof of opportunity alone is insufficient to sustain an inference of conspiracy . . . ."). Plaintiffs have only offered conclusory allegations that AUT's participation in PFA or a business meeting resulted in anticompetitive conduct.

Plaintiffs' AUT conspiracy claim based on the issuance of parallel price increase letters, L&P's employees' conduct, AUT's employment of former L&P employees, AUT's communications with customers, and alleged opportunities to conspire are purely circumstantial and not sufficient, singly or together, to plead an unlawful agreement. Accordingly, Plaintiffs cannot be permitted to maintain a claim based on the circumstantial allegations in their Amended Complaint and this Court should grant AUT's motion to dismiss with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against AUT with prejudice.

-18-

February 7, 2013                                  Respectfully submitted,

/s/ *Barbara T. Siclides*
BARBARA T. SICALIDES
MATTHEW R. WILLIAMS
JEFFREY L. VAGLE
ALEXANDER L. HARRIS
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
Phone: 215.981.4000
Fax: 215.981.4750
sicalidb@pepperlaw.com
williamsm@pepperlaw.com
vaglej@pepperlaw.com
harrisa@pepperlaw.com

*Attorneys for Defendant Advanced Urethane Technologies, Inc.*