# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: URETHANE ANTITRUST )
LITIGATION )
) Case No. 04-MD-1616-JWL
This Order Relates to the following )
Polyether Polyol Case: )
)
*Carpenter Co., et al. v. BASF SE, et al.* ) Case No. 08-2617-JWL
_____ )

## ORDER

This multidistrict litigation comes before the undersigned U.S. Magistrate Judge, James P. O'Hara, on the motion of The Dow Chemical Company, BASF Corporation, and Huntsman International LLC (collectively, "defendants") to compel plaintiff Leggett & Platt ("L&P") to produce expense reports and telephone records for the four custodians that the parties have agreed upon from L&P **(doc. 2047)**. For the reasons set forth below, the motion is granted.

L&P is one of several direct-action plaintiffs ("DAPs") that purchased polyether polyol products from defendants and used the products to manufacture foam. As discussed in detail in prior orders,[1] it became public knowledge in July 2010 that the United States Department of Justice is investigating a possible price-fixing conspiracy by foam manufacturers.[2] Upon learning of this investigation, defendants served interrogatories and

---

[1] *See* docs. 1877 and 1970.

[2] L&P is *not* a subject of the Government's investigation.

Case 2:04-md-01616-JWL Doc #: 486-1 Filed 08/11/13 Page 2 of 25
Case 2:04-md-01616-JWL Document 2064 Filed 09/27/11 Page 2 of 8

document requests on plaintiffs that sought information relating to plaintiffs' communications with competitors and the investigation, noticed the depositions of 26 individuals allegedly implicated in the foam conspiracy, and noticed five Rule 30(b)(6) depositions on topics including the investigation. Plaintiffs moved for a protective order to preclude discovery into the alleged anti-competitive conduct by foam manufactures,[3] and defendants moved to compel such discovery.[4] The undersigned denied the motion for a protective order and denied the motion to compel as it related to discovery that directly implicated the investigation, but granted the motion to compel as it related to discovery into plaintiffs' underlying conduct.[5] In the instant motion, defendants assert that L&P's expense reports and telephone records are responsive to the discovery ordered by the court.

To be sure, the court ordered plaintiffs to respond to discovery requests seeking "information related to plaintiffs' communications with competitors that may indicate anticompetitive conduct by plaintiffs in setting the price of foam and other products manufactured with [polyether polyol products]."[6] Specifically, L&P was required to respond to Request No. 7 in Defendants' Third Set of Requests for Production of Documents ("Requests"), which sought "[a]ll documents reflecting or relating to any communication

---

[3]Doc. 1596.

[4]Doc. 1743.

[5]Docs. 1703 and 1877. The presiding U.S. District Judge, John W. Lungstrum, denied review of these orders. Doc. 1970.

[6]Doc. 1877 at 11.

between you and any other manufacturer of polyurethane foam or other products made with Polyether Polyol Products regarding prices or increases in the prices to customers of polyurethane foam or other products made with Polyether Polyol Products."[7] The Requests defined "communication" as "the transmittal of information . . . between individuals or companies whether oral, written, electronic or otherwise; whether in-person or telephonic . . . ." The question thus becomes: *Do L&P's expense reports and telephone records reflect or relate to the transmittal of information (including by telephone or in-person) between L&P and a competitor regarding foam prices.*

Defendants assert that L&P's expense reports show travel by L&P executives to meet with competitors in-person and, when read in conjunction with produced emails or in light of the timing of price increase announcements, indicate that these meetings involved a discussion of foam prices. For example, on October 17, 2005, Joe York, an L&P executive vice president, sent an email to other L&P executives, stating: "When I was on the west coast last week I was told Carpenter & Foamex were implementing price increases on buns of 5–6% effective 11/1/05. I got this from the Foamex manager so it should be reliable."[8] A spreadsheet produced by L&P containing 2005 expense report information indicates that five

---

[7] In a March 9, 2011 letter from DAP counsel to defense counsel, DAP counsel confirmed "that if Judge Lungstrum affirms Magistrate Judge O'Hara's Orders, . . . we will agree to provide [foam] discovery for Leggett & Platt." Doc. 2054-3. The parties later informed the court in a joint status report that L&P was one of six "plaintiff families" that would "provide complete responses to the discovery requests that [were] the subject of the Court's Orders." Doc. 1971 at 1–2. The parties agreed that other plaintiffs would produce a more limited set of responsive documents. *Id.* at 2.

[8] Doc. 2051-2.

days prior to the email, Mr. York met with Bud Silvey of Foamex, an L&P competitor. Defendants argue that this expense report information thus provides critical evidence of the participants in the alleged conspiracy among DAPs.[9]

Likewise, defendants argue that L&P's telephone records could identify calls placed to or received from L&P's competitors which, considered alongside produced emails, would indicate or support the existence of pricing discussions. Defendants cite as reference a 2004 email from Mr. York to L&P executives, stating:

> Foamex confirmed today they saw a Carpenter increase letter announcing a 9% increase effective 6/28/04. Foamex will have a letter out this week. Supposedly, Future will also have one out this week. Carpenter intends to increase prices again 8/1/04, depending on the 7/1/04, chemical increase. We should have our letters ready to mail to selected accounts.[10]

Defendants assert that L&P telephone records from the same time period might identify Mr. York's contact at Foamex.

In opposition to defendants' motion to compel, L&P (wisely) does not dispute that its telephone records and expense reports are relevant discovery. Rather, L&P essentially argues that these documents are not responsive to defendants' discovery requests. L&P asserts that "both . . . the discovery [defendants] served on L&P, and the discovery they did not serve," as well as the parties' negotiations, "demonstrate that neither L&P nor

---

[9]Defendants further assert that "in the limited set of expense reports records produced by L&P, Defendants have identified at least two dozen meetings between L&P and its competitors." Doc. 2051 at 5 n.8.

[10]Doc. 2051-1.

Defendants believed that L&P would produce expense reports and telephone records."[11]

L&P first notes that individual employees of five other DAPs were served deposition notices specifically requesting expense reports and telephone records, but L&P employees were not served such requests. L&P argues, "The fact that Defendants knew how to ask for expense reports and telephone records explicitly in the Individual Notices, but did not do so in the Third Set of Requests, which were served at virtually the same time, demonstrates that Defendants were not seeking these types of documents in their Third Set of Requests."[12]

L&P also asserts that in the parties' early meet-and-confer discussions, defense counsel never took the position that L&P had an obligation to produce telephone records and expense reports. L&P has produced copies of correspondence between counsel in March and April, 2011, in which the production of telephone records and expense reports is discussed in reference to five other DAPs, without mentioning production by L&P.[13] L&P states that defendants never asserted that L&P's telephone records and expense reports were responsive to Request No. 7 until August 2011.[14]

---

[11]Doc. 2054 at 2.

[12]*Id.* at 4. L&P notes that defendants' Second Set of Requests similarly sought competitor communications, but no DAP has produced telephone records or expense reports in response.

[13]See doc. 2047-9. The parties referenced this correspondence in a Joint Status Report filed on May 31, 2011 (doc. 1981).

[14]Defendants counter that in representations to the court on May 31, 2011, and June 6, 2011, defendants reported that travel expenses would be produced from each of the plaintiff families that agreed to provide complete responses to discovery requests.

The court finds that L&P's telephone records and expense reports are responsive to Request No. 7 and must be produced in accordance with the court's previous orders. Fed. R. Civ. P. 34(b)(1)(A) states that requests for the production of documents "must describe with reasonable particularity each item or category of items to be inspected." When Request No. 7 is read in conjunction with the definition of "communication" set forth earlier in the Requests, it describes with reasonable particularity a category of items that includes telephone records and expense reports—i.e., documents that reflect or relate to the transmittal of information between L&P and a competitor regarding foam prices. The Requests explicitly sought documents reflecting "in-person or telephonic" communication between L&P and a competitor. The expense reports indicating in-person meetings and telephone records reflecting telephone calls with other foam manufacturers fall into this category.

L&P's arguments do not convince the court otherwise. First, the fact that defendants specifically asked for "expense reports and telephone records" in individual deposition notices—a wholly different type of discovery that may well have been drafted by different counsel or at a different time—is of little relevance to the determination of what Request No. 7 sought from L&P. Second, the court is unconvinced that the parties' meet-and-confer discussions somehow alleviated L&P's obligation to produce these responsive documents. The court has carefully read the correspondence exchanged between the parties. The parties never specifically mentioned L&P in their discussions of telephone records and expense reports to be produced. Nor was there a statement by either side indicating that L&P was

not required to produce (or would not produce) such documents. Reading the correspondence with the benefit of hindsight, it appears to the court that the parties simply may have had different understandings of which DAPs would be producing expense reports and telephone records.[15] It is unfortunate that neither side thought to clarify its position. In any event, the court does not find support for L&P's argument that defendants were not seeking these documents from L&P.

In consideration of the foregoing, defendants' motion to compel L&P's production of responsive telephone records and expense reports is granted.[16] L&P shall produce these documents by October 11, 2011.[17]

IT IS SO ORDERED.

Dated September 27, 2011, at Kansas City, Kansas.

                              s/ James P. O'Hara  
                              James P. O'Hara  
                              U.S. Magistrate Judge

---

[15] Indeed, the parties often discussed "plaintiff families" that had agreed to provide this discovery, and whether L&P was included as one such plaintiff family varied throughout the parties' correspondence, and oral and written submissions to the court.

[16] L&P has provided no support for its suggestion that it only be ordered to produce "readily accessible electronically-maintained expense reports and phone records," doc. 2054 at 6 n.16, and this request is therefore denied.

[17] This is an extension of the deadline set in Scheduling Order No. 8.