**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| SPRING AIR INTERNATIONAL LLC, ET AL. | : | |
| | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10021-JZ |
| ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendant.* | : | |

| | | |
|---|---|---|
| ENGLANDER SOUTHWEST ET AL., | : | |
| | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10022-JZ |
| ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| JEFFCO FIBRES, INC. | : | |
| | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | MDL Docket No. 2196 |
| | : | Index No. 10-MD-2196 (JZ) |
| | : | |
| | : | Case No. 3:12-pf-10023-JZ |
| ADVANCED URETHANE TECHNOLOGIES, INC. | : | |
| | : | |
| *Defendants* | : | |
| | : | |

**DEFENDANT ADVANCED URETHANE TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS**

**I.    INTRODUCTION**

Advanced Urethane Technologies, Inc. ("AUT") submits this brief reply to address Plaintiffs'[1] continued and repeated distortion of the applicable legal standards, improper and dilatory attempts to amend their complaints through their Response[2], and inaccurate and inappropriate contention that despite the obvious lack of any evidence against AUT they should be permitted to proceed with their baseless claims.  Despite years of delay, mountains of discovery and five attempts to state their claims against AUT, as Plaintiffs' Response

---

[1] One law firm filed the three complaints for the individual plaintiffs which have named AUT; AUT is not named in either of the putative class actions or in any but the three above-captioned direct actions.  "Plaintiffs" refers collectively to all named plaintiffs in the actions under MDL member cases: 3:11-pf-10021; 3:11-pf-10022; and 3:11-pf-10023.  Since the filing of the original motion, Grand Rapids Bedding Company has voluntarily dismissed all claims against AUT.  *See* MDL member case 3:12-pf-10024-JZ, Dkt. 14 (March 13, 2013).  As the amended complaints in these three remaining actions are identical, AUT refers to them collectively as the "Amended Complaints."

[2] Plaintiffs Memorandum in Opposition to Advanced Urethane Technologies, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) is referred to throughout as the "Response".

demonstrates, their Amended Complaints must be dismissed because: (a) Plaintiffs have failed to allege any direct evidence of AUT's involvement in a conspiracy; (b) direct and indirect evidence of other defendants' alleged actions cannot be imputed to AUT; and (c) any indirect evidence they allege does not permit any, let alone a plausible, inference of conspiracy. AUT is not like any other named defendants in this massive MDL case; the government has never even contacted AUT regarding any alleged anticompetitive activity and AUT has never been referenced by any of the alleged conspiracy participants.[3] Based on nothing more than "guilt by association" Plaintiffs ask this Court to force AUT to spend millions of dollars defending itself while Plaintiffs continue to "fish around" for evidence that simply does not exist.

The precedent in this Court and this Circuit require the dismissal of the Amended Complaints' mythical and threadbare averments against AUT.

## II. PLAINTIFFS' RESPONSE

### A. Plaintiffs Simply Ignore the Relevant Legal Authority and AUT's Legal Arguments

Confronted with the fact that they failed to adequately state an antitrust claim against AUT, Plaintiffs instead repeat their insufficient factual allegations, misstate the pleading standard, and make irrelevant accusations against AUT. In fact, Plaintiffs' Amended Complaints and Response simply pretend as if the alleged acts of others are somehow the acts of AUT. Plaintiffs' arguments conveniently ignore that AUT is a separate legal entity from and is not the legal successor to L&P, and AUT, not L&P, filed the pending motion to dismiss. *See, e.g.*, *Plaintiffs' Memorandum of Law in Opposition*, Dkt. 486 ("Response Br.") at 1-2 (providing no mention of AUT and instead focusing on relationship of L&P to other foam manufacturers). But

---

[3] Obviously desperate, Plaintiffs incorrectly claim that AUT is somehow like Ohio Decorative Products. As this Court is well aware, however, Ohio Decorative Products is alleged to be the alter ego of Flexible Foam Products, which in turn, was named in the United States government investigation, *See, e.g.*, Am. Compl. at ¶¶ 139, 147, 150, and 153, and in the Canadian government investigation. *See, e.g.,* Am. Compl. at ¶¶ 166-67.

as this Court has already recognized, Plaintiffs' claims fail because "[a]dequately alleging a conspiratorial agreement in general does not, however, indicate that plaintiff has alleged *each* defendant's participation in that conspiracy." *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 783 (N.D. Ohio 2011) (emphasis in original) (hereinafter, "Motion for Reconsideration Op."). As set forth in AUT's original brief, Plaintiffs fail, as a matter of law, to allege that AUT agreed to and participated in an antitrust conspiracy. *See Motion to Dismiss*, Dkt. 469, at 8-17.

1. *Plaintiffs Misstate the Applicable Law.*

To properly state an antitrust claim, Plaintiffs must allege specific facts showing either: (1) direct evidence (not conclusory statements) of **AUT's** "***explicit*** agreement to restrain trade"; or (2) sufficient circumstantial evidence "that reasonably tends to prove that [**AUT**] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." Motion for Reconsideration Op., 799 F. Supp. 2d. at 781 (emphasis added). Under either approach, it is not enough that, as is the case here, the facts alleged are "'merely consistent with,' an agreement to restrain trade in violation of the Sherman Act." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, 648 F.3d 452, 457 (6th Cir. 2011). Plaintiffs' Amended Complaints and Response allege direct evidence of an agreement to restrain trade only against other defendants and insufficient, irrelevant, and ancient circumstantial evidence against AUT. Then, without any legal support, Plaintiffs claim that their allegations of direct evidence against others can somehow be imputed or inferred to be AUT's conduct.

Plaintiffs' reliance on this Court's Motion for Reconsideration Opinion and *Watson Carpet* (which the Motion for Reconsideration Opinion cites) is misplaced. In those decisions, "plaintiff pursued the path of direct allegations to establish its entitlement to relief instead of supplying solely inferential allegations." Motion for Reconsideration Op., 799 F.

-4-

Case: 1:10-md-02196-JZ Doc #: 502 Filed: 03/21/13 5 of 14. PageID #: 9928

Supp. 2d at 798; *see also Watson Carpet*, 648 F.3d at 457 (holding that because there was direct evidence and allegations of an antitrust conspiracy, the issue before the court was "whether the complaint adequately alleges that the refusals to sell carpet were undertaken as part of that agreement, or whether they were independent actions"). Here, Plaintiffs allege no direct evidence against AUT and therefore these cases are inapplicable.[4]

Plaintiffs mischaracterize AUT's opposition by arguing that AUT "improperly dismembers the facts of the Amended Complaint" rather than taking the allegations as a whole. Response Br. at 9. On the contrary, AUT's motion to dismiss correctly demonstrates Plaintiffs' lack of direct evidence, then proceeds to discuss allegations made against AUT separately from those that are made against other defendants; AUT does not view each piece of circumstantial evidence in isolation. When ruling on a motion to dismiss, a court must consider the adequacy of the allegations against the moving party. *See, e.g., In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 U.S. Dist. LEXIS 79918, at *13-25 (N.D. Ohio Oct. 29, 2007) (detailing evidence against each defendant when ruling on motion to dismiss), *aff'd* 583 F.3d 896, 900-01 (6th Cir. 2009) (noting that district court's opinion properly stated which evidence was presented against each individual defendant when ruling on motion to dismiss).[5] Plaintiffs are not relieved from properly stating an antitrust claim against AUT simply because Plaintiffs alleged such an action against others.

---

[4] AUT has had no involvement whatsoever and has not been referenced in any government investigation and is not alleged to be the alter ego of any defendant that is.

[5] Even outside of the antitrust context, is it black letter law that a plaintiff alleging a conspiracy must specifically allege facts as to each defendant or that defendant will be dismissed. Similar to the facts here, in *In re Welding Fume Products Liability Litigation* plaintiffs alleged that one defendant "joined an ongoing conspiracy" but the court granted that defendant's motion for summary judgment because plaintiffs failed to identify any evidence that the defendant entered into the agreement. No. 1:03-CV-17000, 2010 U.S. Dist. LEXIS 57859, at *31-33; *see also In re Welding Fume Prods. Liability Litig.*, 526 F. Supp. 2d 775, 804-05 (granting summary judgment to another defendant in litigation on similar grounds and holding that "mere knowledge, acquiescence, or approval of a plan, without cooperation or agreement to cooperate, is not enough to make out a conspiracy").

-5-

      2.     *Plaintiffs Fail to Plead an AUT Conspiracy through Direct Evidence.*

Here, Plaintiffs have alleged no direct evidence against AUT, only other defendants.  *See* Motion to Dismiss at 10-12.  Plaintiffs' Amended Complaints allege only circumstantial evidence against AUT such as parallel conduct and participation in trade organizations, all of which precedent holds to be insufficient.  "Direct evidence," is "evidence that is explicit and ***requires no inferences*** to establish the proposition or conclusion . . . such as a document or conversation ***explicitly manifesting*** the existence of the agreement in question."  *Superior Offshore Int'l, Inc. v. Bristow Grp.*, No. 11-3010, 2012 U.S. App. LEXIS 15539, at *13 (3d Cir. July 27, 2012) (citations and internal quotation marks omitted) (emphasis added).  Plaintiffs present no such evidence as to AUT.

Indeed, Plaintiffs' "direct evidence" against the other defendants derives from government investigations by the Department of Justice ("DOJ") and the Canadian Bureau of Competition.  Am. Compl. at ¶ 8 (alleging "direct evidence" of conspiracy based upon information from DOJ's investigation); *id.* at ¶¶ 124-167 (allegations in complaint based solely on evidence from government investigations).  But, when forced to address the issue that AUT, unlike other defendants in this multi-district litigation, is not involved in any government investigation or allegedly acted as the alter ego of a related company that is involved, Plaintiffs, in an unabashed about-face, now argue that "whether the DOJ is investigating (or will in the future investigate) AUT is of no legal relevance to the question before this Court."  Response Br. at 4.  Yet, remarkably, in the very same filing Plaintiffs also claim, incorrectly, that this "direct evidence" (government investigations) does in fact have legal significance because it relieves them of their obligations to meet the *Twombly* standard.  Response Br. at 7.  Plaintiffs' flip-flopping aside, they cite no legal authority permitting them to (1) offer evidence of a conspiracy

-6-

by others; (2) ask this Court to infer that AUT participated in this conspiracy because it is a member of the industry; and (3) then label this as "direct evidence" against AUT.

### 3. *Plaintiffs' Indirect Evidence Fails to Adequately State an Antitrust Claim Against AUT.*

Plaintiffs' Response merely restates the same, circumstantial and deficient allegations as to AUT: that AUT employees "authored price increase letters" while at AUT "mirroring" the price increase letters of other manufacturers and that other manufacturers "expected AUT's price letters to conform" to their own. Response Br. at 8. AUT's opening brief provides a litany of precedent holding that these threadbare allegations are insufficient to state an antitrust claim. *See, e.g.*, *Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy."); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) ("Conscious parallelism, however, is not in itself prohibited under § 1 of the Sherman Act."); *In re Polyurethane Foam Antitrust Litig.*, 2011 U.S. Dist. LEXIS 85032, at *8 ("[A]llegations of parallel behavior must do more than describe behavior consistent with independent responses to natural market forces." (citing *Twombly*, 550 U.S. at 566)). Yet rather than distinguish the cases on which AUT relies or offer contrary law of its own, Plaintiffs merely throw the same boilerplate allegations against the wall hoping that the Court will permit something to stick. But as the Supreme Court, the Sixth Circuit, and this Court have previously held, allegations of parallel conduct are not sufficient to withstand a motion to dismiss. Plaintiffs' arguments fail as a matter of law because Plaintiffs have not met the standard for an antitrust conspiracy based on circumstantial evidence.

### B. Plaintiffs' Reliance on Mr. York's Two Emails and Plaintiffs' Amendment by Response Brief Still Fail to State a Claim

Unable to point to direct or sufficient circumstantial evidence in the Amended Complaints, Plaintiffs instead focus on two aged and irrelevant emails written by Joseph York of

L&P and insert new allegations in their Response, attempting to improperly further amend their Amended Complaints through their brief.  Mr. York's emails contain no evidence against AUT.  Indeed, they were sent years before AUT even began manufacturing polyurethane foam.  Response Br. at Exhibits 2 & 3.  As Plaintiffs concede, the emails allegedly demonstrate only that "Mr. York [(an L&P employee)] had obtained information from a Foamex manager regarding future price increases by Carpenter."  Response Br. at 2.  Mr. York was not at the time, nor has he ever been, an AUT employee.  Further, regardless of what the email means for L&P or Foamex, it cannot properly be used as evidence against an entity—AUT—that did not exist at the time of its writing.[6]  Making an inference as to AUT here would be particularly egregious, where the email reflects only that a former L&P employee may have had reason to suspect that his former co-worker had knowledge of an allegedly improper communication.  The email does not plausibly suggest that an entirely different company would join a conspiracy years later solely because a recipient of the email later came to work for it.  Indeed, this Circuit recognizes that the passage of time affects the plausibility of conspiracy inferences.  *Watson Carpet*, 648 F.3d at 458-59 ("The passage of time between an agreement and a defendant's later actions may affect the plausibility of an inference that the actions were connected to the agreement").  Plaintiffs do not, because they cannot, cite a single case for the proposition they advance:  that an antitrust conspiracy can be inferred because a defendant hired an employee who, several years before, received an email from a then co-worker with knowledge of an antitrust conspiracy.

---

[6] Although Mr. York was an L&P employee at the time, knowledge of a conspiracy is not direct evidence of a conspiracy as it still requires a court to infer agreement and participation.  *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 120-21 (3d Cir. 199) (holding that statements from employees that they had exchanged pricing information with their peers and superiors, documentary evidence that defendants knew of their competitors' impending price increases, and internal memorandum referring to "truce" between defendants are not direct evidence of antitrust conspiracy).

Knowing that this is not enough to state a claim (at least as to AUT), Plaintiffs attempt yet another end-run around this Court's scheduling deadlines by alleging new facts in their Response.[7] Plaintiffs now allege, for the first time, that their circumstantial evidence includes the fact that the former L&P employees who later worked for AUT "sold the same polyurethane foam, to the same customer base, in the same market . . . ." Response Br. at 3; *see also id.* at 7 ("It is important to note that the employees allegedly involved in the conspiracy while at L&P, such as Joseph Progar and Brian French, continued performing the same job duties following the transition to AUT."). This is both wrong and not what Plaintiffs alleged in their Amended Complaints (or any of their previous complaints).

First, in their Amended Complaints, Plaintiffs accurately stated that Mr. Progar was L&P's former manager of Polyurethane foam. Am. Compl. at ¶ 173. Mr. Progar was not in a sales position before joining AUT. Plaintiffs cannot now amend their allegations to state that Mr. Progar sold foam to the same customer base or was performing the same job duties while at L&P and AUT. But even if Plaintiffs could, without factual basis, amend their pleadings yet again to include this allegation, a sales person moving from one company to another in the same industry falls within the "wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market" from which inference of conspiracy is inappropriate. *Twombly*, 550 U.S. at 554. Plaintiffs are wholly silent on how this new allegation

---

[7] Englander Southwest et al. first filed suit against AUT in this multi-district litigation on April 30, 2012. Spring Air International LLC, et al. and Jeffco Fibres, Inc., amended an existing complaint on April 30, 2012, the last day to add new parties after the Court extended this deadline multiple times, to include AUT. Plaintiffs' "First Amended Complaint" is actually the fourth complaint based on these facts and claims that Plaintiffs have filed against AUT and Spring Air International LLC's and Jeffco Fibres, Inc.'s fifth complaint. Plaintiffs were only able to amend their complaints additional times without seeking leave from Court by dismissing their claims in this multi-district litigation, re-filing the same claims in a different district, then transferring the claims back into this multi-district litigation.

reflects AUT's participation in the alleged conspiracy instead of the common sense business decision.

Plaintiffs also offer as new allegations that Mr. French participated in the alleged conspiracy while at L&P. *See, e.g.*, Response Br. at 9 (". . . Mr. French's participation in the conspiracy while at both L&P and AUT . . . ."). Mr. French is only mentioned a single time in Plaintiffs' 197 paragraph Amended Complaints and the only allegation there is that Mr. French signed price increase letters for AUT. *See* Am. Compl. at ¶ 173. There is not a single allegation that Mr. French participated in or even knew of a conspiracy at L&P. In fact, there is no mention of what Mr. French's actions or professional responsibilities were while at L&P. For the same reason that *Twombly* did not permit antitrust claims to proceed based on parallel price announcements, Mr. French's signature on such announcements cannot serve as the basis for the antitrust claims against AUT. *Twombly*, 550 U.S. at 556-57. Simply alleging that Mr. French or any other person participated in a conspiracy at L&P or any other company does not somehow become evidence of AUT's alleged conspiratorial participation. Regardless, Plaintiffs cannot introduce new allegations regarding Mr. French in opposition to a motion to dismiss.

  **C.**  **Plaintiffs' Improper Use of Discovery Tactics Cannot Save Their Deficient Claims**

In Plaintiffs' Response, they accuse AUT of "intransigence" for not providing discovery and claiming that they "repeatedly sought discovery from AUT" during the pendency of these motions. Plaintiffs' accusations regarding AUT's alleged discovery "intransigence" manages to be simultaneously wrong and miss the point completely. First, Plaintiffs have already had the benefit of years of discovery including a government investigation. Yet despite vast discovery from the other purported members of the alleged conspiracy, Plaintiffs have not been able to uncover a single piece of evidence inculpating AUT. Second, a plaintiff must be

able to state a claim *before* filing their complaint, not after extensive discovery. *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process").

Plaintiffs suggest that the fact that AUT "has steadfastly refused to provide *any* discovery" should weigh against dismissal.[8] Response Br. at 3-4 n.3. This is wrong as a matter of law and demonstrates that Plaintiffs' conduct is exactly what *Twombly* and its progeny seek to prevent – allowing a plaintiff to use threadbare recitals to present a defendant with the Hobson's choice of paying millions of dollars in legal fees or millions of dollars in an unjustified settlement. *Twombly*, 550 U.S. at 559 (noting that antitrust cases are particularly prone to discovery abuses which can "push cost-conscious defendants to settle even anemic cases" before reaching further proceedings).

It is well-settled law that "Plaintiffs must state a proper claim for relief under federal law before the Court will subject Defendants to the burdens of discovery. Plaintiffs are not entitled to file suit and then go on a 'fishing expedition' looking for viable federal law claims. Basic pleading requirements in federal court dictate that all plaintiffs . . . must have a

---

[8] This is also factually inaccurate. AUT has been served with two third-party subpoenas in connection with this litigation and discovery requests from Plaintiffs. On November 11, 2011, the "Sealy Plaintiffs" served the first non-party subpoena on AUT. *See* Dkt. 300. In response AUT produced a CD of Bates labeled documents and asserted valid objections to the remaining requests. Counsel for Sealy Plaintiffs never sought to narrow their subpoena and agree to search terms with AUT or file a motion to compel. Seven months later on June 5, 2012, plaintiffs here served discovery requests on AUT. AUT responded fully to each request and volunteered to discuss its objections. Counsel for Plaintiffs never sought to narrow their discovery requests, propose search terms, or otherwise negotiate with AUT. On October 29, 2012, AUT was served with another third party subpoena—this one issued by Class Plaintiffs. Dkt. 443-444. In response, AUT asserted valid procedural and substantive objections. But in a show of good faith, AUT began collecting and processing ESI data in order to discuss search terms which would sufficiently narrow the information sought. AUT has done nothing more than lodge appropriate objections to overbroad requests. Despite AUT's reasonable objections, it anticipates beginning production once the documents have been processed, and reviewed using agreed upon search terms in response to Class Plaintiffs' outstanding subpoena. AUT's discovery objections have absolutely nothing to do with Spring Air's, Englander's and Jeffco Fibres's inexplicable delay in pursuing their putative claims against AUT.

.

legal and factual basis for each federal claim prior to filing suit." *Riser v. WSYX-TV ABC-6*, 2002 U.S. Dist. LEXIS 23654 (S.D. Ohio July 17, 20020); *cf. Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) (vacating and remanding denial of Rule 11 sanctions for further consideration and stating that "[i]t is not permissible to file suit and use discovery as the sole means of finding out whether you have a case").

Plaintiffs' conduct in this case is particularly egregious considering the amount of discovery they have had available during their multiple attempts to state a claim against AUT. Plaintiffs had the benefit of two separate government investigations, and over two years worth of time to gain discovery from other defendants in this litigation. Notably, this discovery has turned up no evidence against AUT. It is both legally and factually improper for Plaintiffs to suggest that their failure to state a claim is due to lack of discovery or that it is relevant to the Court's present analysis in the first place.

### III. CONCLUSION

For the foregoing reasons, the Court should grant AUT's Motion to Dismiss, Dkt. 469, and dismiss all claims against AUT with prejudice.

March 21, 2013                                    Respectfully submitted,


                                                 /s/ *Barbara T. Siclides*
                                                 BARBARA T. SICALIDES
                                                 MATTHEW R. WILLIAMS
                                                 NOAH S. ROBBINS
                                                 ALEXANDER L. HARRIS
                                                 Pepper Hamilton LLP
                                                 3000 Two Logan Square
                                                 Eighteenth and Arch Streets
                                                 Philadelphia, PA  19103
                                                 Phone: 215.981.4000
                                                 Fax: 215.981.4750
                                                 sicalidb@pepperlaw.com
                                                 williamsm@pepperlaw.com
                                                 robbinsn@pepperlaw.com
                                                 harrisa@pepperlaw.com


                                                 *Attorneys for Defendant Advanced Urethane Technologies, Inc.*

## CERTIFICATE OF SERVICE

I, Barbara T. Sicalides, hereby certify that on March 21, 2013, a copy of the foregoing Defendant Advanced Urethane Technologies, Inc.'s Memorandum of Law in Further Support of Its Motion to Dismiss Plaintiffs' First Amended Complaints served upon all counsel of record via CM/ECF.

/s/ *Barbara T. Sicalides*
Barbara T. Sicalides