UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION ) ) ) ) This document relates to: ) ) ALL CASES ) ) | MDL Docket No. 2196 Index No. 10-MD-2196 (JZ) |

**DEFENDANTS' AMENDED RULE 30(b)(6) DEPOSITION NOTICE
TO PLAINTIFF SPRING AIR INTERNATIONAL LLC**

**TO: ALL COUNSEL OF RECORD**

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, please take notice that Defendants, by and through their undersigned counsel, will take the oral deposition of **Spring Air International LLC** on the subject matters set forth in Exhibit A, attached hereto.

The deposition will commence **at 9:00 a.m. on August 2, 2013**,[1] at the offices of **McCarter & English, LLP, 265 Franklin Street, Boston, Massachusetts, 02110**. The deposition shall continue from day to day until completed in accordance with the Federal Rules of Civil Procedure and the orders of this Court.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Spring Air International LLC shall designate a person or persons prepared to testify about the topics set forth in Exhibit A. All parties are invited to attend. The deposition will be conducted under oath and will be recorded by stenographic means and by videotape.

---

[1] This amended deposition date is the only change from Defendants' original notice served and filed on May 20, 2013, ECF No. 557.

Dated: June 18, 2013                                            Respectfully submitted,

/s/   James H. Walsh                                            /s/   Kendall Millard
James H. Walsh                                                  Kendall Millard
Howard Feller                                                   BARNES & THORNBURG, LLP
Bethany Lukitsch                                                11 South Meridian Street
MCGUIREWOODS LLP                                                Indianapolis, IN 46204-3535
One James Center                                                Phone: (317) 231-7461
901 East Cary Street                                            Fax:    (317) 231-7433
Richmond, VA 23219-4030                                         kmillard@btlaw.com
Phone: (804) 775-4356
Fax:    (804) 698-2200                                          /s/   Michael D. Mustard
jwalsh@mcguirewoods.com                                         Michael D. Mustard
hfeller@mcguirewoods.com                                        BARNES & THORNBURG LLP
blukitsch@mcguirewoods.com                                      600 One Summit Square
                                                                Fort Wayne, IN 46802-3119
*Counsel for Carpenter Co., E.R. Carpenter,*                    Phone: (260) 423-9440
*L.P., and Carpenter Holdings, Inc.*                            Fax:    (260) 424-8316
                                                                mmustard@btlaw.com

                                                                *Counsel for Flexible Foam Products, Inc.*


/s/   Francis P. Newell                                         /s/   Edward G. Warin
Francis P. Newell                                               Edward G. Warin
Peter M. Ryan                                                   John P. Passarelli
COZEN O'CONNOR                                                  KUTAK ROCK LLP
1900 Market Street                                              1650 Farnam Street
Philadelphia, PA 19103                                          Omaha, NE  68102
Phone: (215) 665-2118                                           Phone: (402) 346-6000
Fax:    (215) 665-2013                                          Fax:    (402) 346-1148
fnewell@cozen.com                                               edward.warin@kutakrock.com
pryan@cozen.com                                                 john.passarelli@kutakrock.com

*Counsel for Foamex Innovations, Inc.*                          *Counsel for Future Foam, Inc.*

2

/s/ Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
Phone: (919) 862-2200
Fax: (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Hickory Springs Manufacturing Company*

/s/ Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 559-2227
jrebein@shb.com

*Counsel for Leggett & Platt, Incorporated*

/s/ Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Allison S. Thompson
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
randall.allen@alston.com
teresa.bonder@alston.com
allison.thompson@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/ Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax: (213) 229-6919
dswanson@gibsondunn.com

Cynthia Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: (202) 530-8500
Fax: (202) 530-9651
crichman@gibsondunn.com

*Counsel for Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

**EXHIBIT A**

A.  **DEFINITIONS**

For purposes of this deposition notice, the following words and phrases shall have the meanings set forth below whenever used in any Definition or Area of Examination:

1. The terms "and/or" shall be read in the disjunctive, conjunctive or both, as the case may be, consistent with an interpretation that results in the more extensive response.

2. The term "all" shall be construed to include the collective as well as the singular, and means "each," "any," and "every."

3. The terms "concerning" or "concern" shall mean relating to, referring to, describing, evidencing or constituting the referenced matter.

4. "Person" or "persons" means all natural persons or entities, including, without limitation, any individual, employee, firm, association, organization, partnership, business, trust, corporation, team, group or other entity of any nature whatsoever.

5. "Communication," or any variant thereof, means the transmittal or attempted transmittal of information or knowledge between Persons whether oral, written, electronic or otherwise; whether in-person or telephonic; whether direct or through an intermediary.

6. "Action" refers to the lawsuits that are currently consolidated and pending for pretrial purposes in the United States District Court for the Northern District of Ohio, Western Division as part of *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ.

7. "You," "your," "your company" and similar terms means Spring Air International LLC and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and

investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

8. "Your Complaint" refers to the document styled "Second Amended Complaint" filed on May 8, 2012 in *Spring Air International LLC et al. v. Hickory Springs Manufacturing Company et al.*, Case No. 3:11-pf-10001-JZ (N.D. Ohio).

9. "Direct Purchaser Class Complaint" refers to the document styled "Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint" filed on February 28, 2011 in *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ (N.D. Ohio).

10. "Direct Purchaser Class Plaintiff(s)" means each Plaintiff identified in the Direct Purchaser Class Complaint and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

11. "Direct Purchaser Class Member(s)" means any Person(s) that are not currently named in the Direct Purchaser Class Complaint, but are potential members of the putative class that Direct Purchaser Class Plaintiffs purport to represent, and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

12. "Direct Action Plaintiff(s)" means each Direct Purchaser Plaintiff that filed a standalone complaint in the Action and all predecessors, successors, parent organizations,

subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

13. "Document" is coextensive with the meanings of the terms "document" and "electronically stored information" in Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, any writing, notes, photograph, chart, graph, film, video tape, audio tape, computer disk or electronically stored information (including electronic e-mail) which is in your actual or constructive possession, custody or control, and includes, without limitation, all originals, copies, drafts (sent or unsent) or other non-conforming copies of every kind.

14. "Defendants" means each Defendant identified in the Direct Purchaser Class Complaint and/or any Direct Action Plaintiff's complaint in the Action and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

15. "Polyurethane Foam" means any type, grade or form of "flexible polyurethane foam" and "flexible polyurethane foam products" as those terms are defined and used in your Complaint and/or the Direct Purchaser Class Complaint, and includes, without limitation, "slabstock and molded polyurethane foam," as those terms are used and defined in your Complaint and/or the Direct Purchaser Class Complaint.

16. "Polyurethane Foam Products" means any product containing Polyurethane Foam as those terms are used and defined in your Complaint and/or the Direct Purchaser Class Complaint.

**B.     AREAS OF EXAMINATION**

You are requested to designate to Defendants, at least ten (10) days prior to the deposition, one or more officers, directors or other individuals who consent to testify on your behalf, and provide all information known or reasonably available to you, as the person most knowledgeable, with respect to the following subjects for the period of January 1, 1999 through the present (the "Relevant Time Period"):

1. The history, corporate structure, ownership, executive leadership, employees, and management structure of your company.

2. The allegations in your Complaint and the Direct Purchaser Class Complaint.

3. The statements and information contained in your initial disclosures in this Action pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

4. The statements and information contained in your disclosures concerning transactional data in this Action pursuant to the Court's Transactional Data Protocol Order, ECF No. 242.

5. The statements and information contained in your disclosures concerning electronically stored information pursuant to the Court's Order Regarding Electronically Stored Information, ECF No. 245.

6. The statements and information contained in your objections and responses to Defendants' First Request for Production of Documents and Things to All Plaintiffs in this Action.

7. The employment histories of any Person currently or formerly employed by your company whose employment related to the manufacture, purchase, fabrication, use, and/or sale of Polyurethane Foam and/or Polyurethane Foam Products, including, without limitation:

   a. the positions and titles that each such Person has held during his/her employment with your company;

   b. the duties and responsibilities of each such Person in each position or title that he/she has held;

   c. the facts and circumstances surrounding, and the reasons for each Person who has been put on leave or terminated by you, or otherwise has left your company; and

   d. the current or last known address and contact information for each Person who is no longer employed by your company.

8. The nature and geographic scope of your company's business operations, including, without limitation, your product and/or service offerings, your manufacturing and/or fabricating operations and practices, your purchasing practices, your negotiating practices with suppliers, your pricing practices, your price increase practices, raw materials purchased, and the identity of your customers for each product and/or service offering.

9. The financial performance of your company, including, without limitation, your company's profitability, revenues, operating expenses, raw material costs, investments, and any other metric used by your company to evaluate its performance.

10. Your company's purchase negotiations for, actual purchases of, and purchase prices received for each category of Polyurethane Foam and/or Polyurethane Foam Products, including, without limitation, the identity of the companies from which you purchased, the identity of the companies which made offers to you or solicited your business, and all rebates, discounts, allowances, and/or promotional programs received in connection with your purchase of Polyurethane Foam and/or Polyurethane Foam Products.

11. The Polyurethane Foam and/or Polyurethane Foam Products that have been manufactured, fabricated, used and/or sold by your company, including, without limitation, the prices you have offered, quoted or charged to each customer for Polyurethane Foam and/or Polyurethane Foam Products, the products that have been sold by you to each customer, the identity of each customer to whom the products were sold, and the amount of each product sold to each customer.

12. All communications between you and any Defendant and/or other suppliers of Polyurethane Foam and/or Polyurethane Foam Products concerning the pricing, characteristics, and/or availability of Polyurethane Foam and/or Polyurethane Foam Products, regardless of whether such Polyurethane Foam and/or Polyurethane Foam Products were actually purchased by your company.

13. The availability, benefits, costs, and pricing of all products that are not Polyurethane Foam and/or do not contain Polyurethane Foam that can be used as raw materials or other inputs by your company or that have been manufactured, purchased, fabricated, and/or sold by your company, including, without limitation, products that are considered to be competitive with or substitutes for Polyurethane Foam and/or Polyurethane Foam Products in the products your company manufactures, produces and/or sells.

14. All communications between you and any Defendant and/or other suppliers of products that are considered to be competitive with or substitutes for Polyurethane Foam and/or Polyurethane Foam Products, concerning the pricing, characteristics, and/or availability of such competitive or substitute products, regardless of whether such competitive or substitute products were actually purchased by your company.

15. All communications between you and any Defendant(s), Direct Purchaser Class Plaintiff(s), Direct Action Plaintiff(s), Direct Purchaser Class Member(s), and/or any other supplier of Polyurethane Foam and/or Polyurethane Foam Products in which any of the following subjects was referred to or discussed:

   a. a price increase announcement by any Defendant for Polyurethane Foam and/or any Polyurethane Foam Products sold by any Defendant;

   b. any correspondence or notice sent by a Defendant regarding a price increase for Polyurethane Foam and/or any Polyurethane Foam Products;

   c. any correspondence sent by a Defendant regarding the increasing cost of raw materials for Polyurethane Foam and/or any Polyurethane Foam Products;

   d. the timing of a future price increase announcement for Polyurethane Foam and/or any Polyurethane Foam Products;

   e. information relating to prices to be charged in the future for Polyurethane Foam, Polyurethane Foam Products, and/or substitutes for Polyurethane Foam or Polyurethane Foam Products;

   f. the coordination of future price increase announcements for Polyurethane Foam, Polyurethane Foam Products, and/or substitutes for Polyurethane Foam or Polyurethane Foam Products;

   g. the negotiation, acceptance, rejection or reduction of a price increase for Polyurethane Foam, Polyurethane Foam Products, and/or substitutes for Polyurethane Foam or Polyurethane Foam Products;

   h. the allocation of Polyurethane Foam, Polyurethane Foam Products, and/or substitutes for or Polyurethane Foam Polyurethane Foam Products;

   i. an increase in the price of Polyurethane Foam and/or Polyurethane Foam Products sold by any Defendant;

   j. an increase in the costs of raw materials used to produce Polyurethane Foam and/or Polyurethane Foam Products sold by any Defendant;

   k. a price increase for Polyurethane Foam and/or Polyurethane Foam Products that was yet to be announced;

   l. the effective date of a future price increase for any Polyurethane Foam and/or Polyurethane Foam Products;

    m. the actual and/or potential business ramifications of a price increase for Polyurethane Foam and/or Polyurethane Foam Products;

    n. mutual customers for Polyurethane Foam and/or Polyurethane Foam Products;

    o. market share levels or changes in market share levels for Polyurethane Foam and/or Polyurethane Foam Products; and/or

    p. the competitive conditions relating to the purchase and/or sale of Polyurethane Foam and/or Polyurethane Foam Products.

  16. All communications concerning plans or instructions to contact any Defendant(s), Direct Purchaser Class Plaintiff(s), Direct Action Plaintiff(s), Direct Purchaser Class Member(s), and/or other suppliers of Polyurethane Foam and/or Polyurethane Foam Products to obtain or provide price increase letters and/or other information about price increases for Polyurethane Foam and/or Polyurethane Foam Products.

  17. All memberships, participation, and/or other involvement in any trade or industry associations or organizations, including, but not limited to, your participation in or attendance at any trade shows or industry conventions.

  18. All communications with other Persons that compete with your company in the manufacture, purchase, fabrication, use, and/or sale of Polyurethane Foam and/or Polyurethane Foam Products.

  19. All communications with Defendants, other suppliers of Polyurethane Foam and/or Polyurethane Foam Products and/or your company's competitors or customers regarding other Defendants, suppliers of Polyurethane Foam and/or Polyurethane Foam Products, and/or your company's competitors or customers.

  20. Any facts, documents or other information that you believe support your claims in this Action.

21. All instances in which you have competed with any of the Defendants for the sale of Polyurethane Foam and/or Polyurethane Foam Products, including, without limitation, the identity of the Defendants with whom you competed, the customers involved, the dates on which the competition occurred, the volume of customer business involved, the prices that you and the Defendants offered, and the results of the competitive situations.

22. With respect to each purchase of Polyurethane Foam or Polyurethane Foam Products during the Relevant Time Period by you:

    a. the name and address of the supplier from which the product or products were purchased;

    b. the date of each purchase;

    c. the product or products purchased from each entity, including the brand name and/or trade name, product description, any SKU, and product numbers:

    d. the quantity purchased and the applicable units;

    e. the state, city, and ZIP or postal code for the "ship from" location;

    f. the state, city, and ZIP or postal code for the "purchased from" location;

    g. the state, city, and ZIP or postal code for the "ship to" location;

    h. the method of delivery that was used and any freight or transportation charges;

    i. the price paid, including list price and net unit price;

    j. any rebates, discounts, allowances, credits, chargebacks, freight allowances, or other incentives offered to or received by you in connection with the purchase, including any promotional allowances or sales programs; and

    k. the payment or credit terms.

23. The identity of all of your competitors for the purchase and/or sale of Polyurethane Foam and/or Polyurethane Foam Products and:

      a.    the dates of the existence of such competition;

      b.    the products purchased and/or sold by each such competitor;

      c.    the entity and location from which each such competitor purchased Polyurethane Foam and/or Polyurethane Foam Products;

      d.    the geographic area(s) in which each such competitor sells or attempts to sell Polyurethane Foam and/or Polyurethane Foam Products; and

      e.    the geographic area(s) in which you have competed with each such competitor.

24. The identity of all competitors of each Defendant in the manufacture and/or sale of Polyurethane Foam and/or Polyurethane Foam Products and:

      a.    the dates of the existence of such competition;

      b.    the products sold by each such competitor; and

      c.    the geographic area(s) in which each Defendant has competed with each such competitor.

25. The identities of, on an allegation-by-allegation basis, all persons with any knowledge concerning each allegation in your Complaint and all facts you contend support each allegation in your Complaint.

26. Details regarding the way in which you contend that you were injured or have suffered damages and any steps that you have taken to mitigate the damages you claim, including the costs and benefits of taking each such step.

27. The identity of each purchase of Polyurethane Foam and/or Polyurethane Foam Products during the Relevant Time Period as to which you claim there was a price overcharge because of the alleged contract, combination, or conspiracy and, for each purchase:

      a.    the name and address of the supplier from which the products were purchased;

      b.    the date of each purchase;

    c.    the products purchased from each entity, including the brand name and/or trade name, product description, any SKU and product numbers;

    d.    the quantity purchased and the applicable units;

    e.    the method of delivery that was used (*e.g.*, common carrier) and any freight or transportation charges;

    f.    the price paid, including list price and net unit price;

    g.    any rebates, discounts, allowances, credits, chargebacks, freight allowances, or other incentives offered to or received by you in connection with the purchase, including any promotional allowances or sales programs; and

    h.    the price that you allege you would have paid during the Relevant Time Period but for Defendants' alleged contract, combination, or conspiracy as described in your Complaint, and the basis for this "but for price" claim.

28. Any steps that you have taken to mitigate the damages you claim, including the costs and benefits of taking each such step.

29. Your company's manufacture and sale of Polyurethane Foam and/or Polyurethane Foam Products, including, without limitation, foam sheets, rolls, slabs and buns.

30. Your company's manufacture and sale of fabricated Polyurethane Foam products, including, without limitation, to furniture manufacturers, automobile manufactures, and/or bedding and mattress manufacturers.

31. Your company's use of fabricated foam processes, including, without limitation, convolution, bullnose cutting, compression cutting, hot wire cutting, vertical contour cutting, horizontal contour cutting, carousel cutting, saw cutting, knife cutting, die cutting, water jet slicing, adhesive lamination, flame lamination, di-electric sealing, ultrasonic sealing, gluing, hole punching, loop slitting, and slitting.

    The designated deponent(s) also shall bring copies of all documents, notes or statements in your company's custody or control related to the above-referenced topics.

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2013, a copy of the foregoing Defendants' Amended Rule 30(b)(6) Deposition Notice to Plaintiff Spring Air International LLC and the attached Exhibit A were served electronically on lead counsel for Plaintiffs pursuant to Paragraph 10 of this Court's January 20, 2011 Initial Case Management Conference Order, ECF No. 17, as well as counsel for Spring Air International LLC.

/s/ Bethany G. Lukitsch
Bethany G. Lukitsch
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-4711
Fax: (804) 698-2261
blukitsch@mcguirewoods.com