UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ) |
| This document relates to:<br><br>ALL CASES | |

**DEFENDANTS' RULE 30(b)(6) DEPOSITION
NOTICE TO PLAINTIFF GENERAL MOTORS LLC**

TO:  ALL COUNSEL OF RECORD

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, please take notice that Defendants, by and through their undersigned counsel, will take the oral deposition of **General Motors LLC ("GM")** on the subject matters set forth in Exhibit A, attached hereto.

The deposition will commence at 9:00 a.m. local time on January 31, 2014, and shall continue from day to day until completed in accordance with the Federal Rules of Civil Procedure and the orders of this Court. The deposition shall take place at the offices of Dykema Gossett PLLC, located at 400 Renaissance Center, Detroit, Michigan 48243.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, GM shall designate a person or persons prepared to testify about the topics set forth in Exhibit A. All parties are invited to attend. The deposition will be conducted under oath and will be recorded by stenographic means and by videotape.

Dated: December 5, 2013  Respectfully submitted,

/s/  James H. Walsh  /s/  Kendall Millard
James H. Walsh  Kendall Millard
Howard Feller  BARNES & THORNBURG, LLP
Bethany Lukitsch  11 South Meridian Street
MCGUIREWOODS LLP  Indianapolis, IN 46204-3535
One James Center  Phone: (317) 231-7461
901 East Cary Street  Fax:    (317) 231-7433
Richmond, VA 23219-4030  kmillard@btlaw.com
Phone: (804) 775-4356
Fax:    (804) 698-2200  /s/  Michael D. Mustard
jwalsh@mcguirewoods.com  Michael D. Mustard
hfeller@mcguirewoods.com  BARNES & THORNBURG LLP
blukitsch@mcguirewoods.com  600 One Summit Square
 Fort Wayne, IN 46802-3119
*Counsel for Carpenter Co., E.R. Carpenter,*  Phone:  (260) 423-9440
*L.P., and Carpenter Holdings, Inc.*  Fax:    (260) 424-8316
 mmustard@btlaw.com

 *Counsel for Flexible Foam Products, Inc.*

/s/  Francis P. Newell  /s/  Edward G. Warin
Francis P. Newell  Edward G. Warin
Peter M. Ryan  John P. Passarelli
COZEN O'CONNOR  KUTAK ROCK LLP
1900 Market Street  1650 Farnam Street
Philadelphia, PA 19103  Omaha, NE  68102
Phone: (215) 665-2118  Phone: (402) 346-6000
Fax:    (215) 665-2013  Fax:    (402) 346-1148
fnewell@cozen.com  edward.warin@kutakrock.com
pryan@cozen.com  john.passarelli@kutakrock.com

*Counsel for Foamex Innovations, Inc.*  *Counsel for Future Foam, Inc.*

/s/ Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
Phone: (919) 862-2200
Fax: (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Hickory Springs Manufacturing Company*

/s/ Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Allison S. Thompson
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
randall.allen@alston.com
teresa.bonder@alston.com
allison.thompson@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/ Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 559-2227
jrebein@shb.com

*Counsel for Leggett & Platt, Incorporated*

/s/ Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax: (213) 229-6919
dswanson@gibsondunn.com

Cynthia Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: (202) 530-8500
Fax: (202) 530-9651
crichman@gibsondunn.com

*Counsel for Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

## EXHIBIT A

A. **DEFINITIONS**

For purposes of this deposition notice, the following words and phrases shall have the meanings set forth below whenever used in any Definition or Area of Examination:

1. "Person" or "Persons" means any natural persons or entities, including, without limitation, any individual, employee, firm, association, organization, proprietorship, partnership, business, trust, joint venture, corporation, team, group or other entity of any nature whatsoever, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assigns, predecessors, and successors of such person.

2. "Communication," or any variant thereof, means the transmittal or transfer, or attempted transmittal or transfer, of information or knowledge of any kind between Persons whether oral, written, electronic or otherwise; whether in-person or telephonic; or whether direct or through an intermediary, at any time or place, and under any circumstances whatsoever.

3. "Action" refers to the lawsuits that are currently consolidated and pending for pretrial purposes in the United States District Court for the Northern District of Ohio, Western Division as part of *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ.

4. "You," "Your," "Your Company" and similar terms means GM and its predecessors, successors, parent organizations, subsidiaries, divisions, affiliates, and insurers, joint ventures and other legal entities that are wholly or partially owned or controlled by GM, either directly or indirectly, and all past or present officers, directors, members, principals, employees, agents, representatives, attorneys, consultants, investigators, and others acting for or on behalf of the same entities, as well as any assignor on whose behalf GM is asserting claims in this litigation.

5. "Your Complaint" refers to the document styled "Complaint For Damages And Injunctive Relief" filed on November 7, 2012 in *General Motors LLC v. Carpenter Co., et al.*, Case No. 3:12-pf-10027-JZ, MDL No. 2196 (N.D. Ohio).

6. "Direct Purchaser Class Complaint" refers to the document styled "Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint" filed on February 28, 2011 in *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ (N.D. Ohio).

7. "Direct Purchaser Class Plaintiff(s)" means each Plaintiff identified in the Direct Purchaser Class Complaint and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

8. "Direct Purchaser Class Member(s)" means any Person(s) that are not currently named in the Direct Purchaser Class Complaint, but are potential members of the putative class that Direct Purchaser Class Plaintiffs purport to represent, and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

9. "Direct Action Plaintiff(s)" means each Direct Purchaser Plaintiff that filed a standalone complaint in the Action and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

10. "Document" is coextensive with the meanings of the terms "document" and "electronically stored information" in Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, any and all drafts; Communications; correspondence; memoranda;

records; reports; books; records, reports and/or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out.

11. "Defendants" means each Defendant identified in the Direct Purchaser Class Complaint and/or any Direct Action Plaintiff's complaint in the Action and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

12. "Polyurethane Foam" means any type, grade or form of "flexible polyurethane foam" and "products containing flexible polyurethane foam" as those terms are defined and used in Your Complaint and/or the Direct Purchaser Class Complaint, and includes, without limitation, slabstock and molded polyurethane foam.

13. "Price Increase Letter" means any Communication or Document containing or reflecting an announcement or notification of a price increase for Polyurethane Foam.

14. "GM Suppliers" means any entities from whom You directly or indirectly purchased or purchase Polyurethane Foam, including but not limited to Magna, Lear, JCI, Sage, Milliken and any other "component suppliers for GM platforms" as alleged in paragraph 108 of Your Complaint, and their predecessors, affiliates, and former or current employees.

**B.     AREAS OF EXAMINATION**

You are requested to designate to Defendants, at least ten (10) days prior to the deposition, one or more officers, directors or other individuals who consent to testify on your behalf and the topics regarding which he or she is designated to testify, and provide all information known or reasonably available to You, as the person most knowledgeable, with respect to the following subjects for the period of January 1, 1999 through the present (the "Relevant Time Period"):

1. The allegations in Your Complaint, including but not limited to the following:

    a. All facts and evidence GM contends support its allegation, contained in paragraph 2 of its Complaint, that "Defendants and their co-conspirators conspired with the purpose … of … allocating customers for Polyurethane Foam in the United States and elsewhere in North America."

    b. All facts and evidence GM contends supports its allegation, contained in paragraph 6 of its Complaint, that "molded flexible polyurethane foam" was the "focus of the conspiracy alleged herein."

    c. All facts and evidence GM contends support its allegation, contained in paragraph 108 of its Complaint, that "the coordinated price increases for automotive applications—including . . . molded Polyurethane Foam— allowed Defendants to increase prices paid by customers."

    d. All facts and evidence GM contends support its allegation, contained in paragraph 118 of its Complaint, that "Defendants routinely exchanged and reviewed one another's price increase letters for . . . molded foam to confirm that their conspiratorial agreements were being implemented."

4

  e. All facts and evidence GM contends support its allegation, contained in paragraph 144 of its Complaint, that "[d]uring and after the Conspiracy Period, GM purchased Polyurethane Foam directly from Defendants."

  f. All facts and evidence GM contends support its allegations, contained in paragraphs 157 through and 164 of its Complaint, concerning Defendants' alleged "acts of concealment."

2. Any contention by You that any two or more Defendants conspired or agreed to allocate or divide markets, territories or customers, including (without limitation) the markets, territories, and customers that You contend were allocated or divided; product(s) that were the focus of such conspiracy or agreement; date or dates of such conspiracy or agreement; Persons involved; place of occurrence; precise nature of such conspiracy or agreement; and a complete description of all Documents related thereto.

3. The statements and information contained in Your initial disclosures in this Action pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, and Your disclosures pursuant to the Transactional Data Protocol Order, ECF No. 242, and the Order Regarding Electronically Stored Information, ECF No. 245, including but not limited to the facts and circumstances pertaining to GM's identification of custodians likely to possess Documents relevant to this litigation, preservation of Documents relevant to this litigation, and collection of Documents relevant to this litigation.

4. Your Document and transactional data production in this Action.

5. Your responses to Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.'s First Set of Interrogatories to Plaintiff General Motors LLC ("Interrogatories"), including but not limited to:

      a. The sources of information You used to answer the Interrogatories;

      b. The identities of all Persons interviewed, if any, and what information was provided by each Person interviewed; and

      c. The identification of all Documents reviewed to answer the Interrogatories.

6. Your Document retention practices, policies, and procedures.

7. The history, corporate structure, organization, ownership, executive leadership, and management structure of Your Company, as they relate to the manufacture, direct or indirect purchase, fabrication, use, and/or sale of Polyurethane Foam.

8. The identity and employment history of any Person currently or formerly employed by Your Company whose employment relates to the manufacture, direct or indirect purchase, fabrication, use, and/or sale of Polyurethane Foam.

9. Your Persons responsible for the purchasing of Polyurethane Foam and raw materials for Polyurethane Foam.

10. The nature and geographic scope of Your Company's business operations, and the location, size, scope, organization, function, and purpose of Your business locations or units, as they relate to the manufacture, direct or indirect purchase, fabrication, use, and/or sale of Polyurethane Foam.

11. Your annual requirements of Polyurethane Foam.

12. Any prior lawsuits, claims, or complaints claiming antitrust violations, injury to competition, or unfair competition in which You have been involved or named as a party.

13. The companies or suppliers from which You directly or indirectly purchased Polyurethane Foam, the products purchased, and the quantities, prices, terms and conditions of

6

sale, including any contracts, agreements, or communications governing quantities, prices, terms or conditions of sale.

14. Potential direct or indirect suppliers to You of Polyurethane Foam.

15. Your negotiations with, direct or indirect purchases from, and purchase prices quoted or received from any Defendant or other GM Supplier of Polyurethane Foam.

16. Your indirect purchases of Polyurethane Foam from any Defendant or other GM Supplier.

17. Your receipt of Price Increase Letters concerning Polyurethane Foam from any Defendant or other GM Supplier and the effects of such Price Increase Letters on the prices offered to or paid by You for Polyurethane Foam.

18. Your sharing of any Price Increase Letter or other pricing information received from a Defendant or other GM Supplier of Polyurethane Foam with any other Defendant, other GM Supplier of Polyurethane Foam, or any of Your customers.

19. Your receipt of price increase letters concerning raw materials for Polyurethane Foam from any direct or indirect supplier and the effects of such price increase letters prices paid for Polyurethane Foam.

20. Your transactional prices from any Defendant or other GM Supplier of Polyurethane Foam.

21. Any changes in Your direct or indirect supplier(s) of Polyurethane Foam, and the reason(s) for such changes.

22. The costs and methods of shipment, transportation, and/or delivery of Polyurethane Foam directly or indirectly purchased by You.

7

23. Any formulas, indices, or other means of determining the prices or price ranges at which You or Your Company would buy, or direct a GM Supplier to buy, Polyurethane Foam from any Defendant or other GM Supplier, or sell such products to any customer.

24. Contracts, agreements, understandings or other arrangements, written or oral, between You and any Defendant or other GM Suppliers governing or relating to the terms and conditions of sale and/or the purchase prices for Polyurethane Foam.

25. Any cost-plus, fixed mark-up, most favored nation, "market to market" price guarantee, bid support, or other price guarantee, price freeze, price support, or pricing concession, written or oral, between You and any Defendant or other GM Supplier of Polyurethane Foam.

26. Any price protection programs for Polyurethane Foam or other mechanism by which price changes might be delayed, modified or adjusted for Polyurethane Foam.

27. Cost increases for Polyurethane Foam passed through to persons or entities purchasing from You.

28. The financial impact of a change in price to You of Polyurethane Foam on the price of any product or item sold by You, as well as the impact on Your overall revenues, margins and net profits.

29. Your efforts or undertakings to determine, confirm, check, or otherwise verify the competiveness of any price quoted to You by any Defendant or other GM Supplier for Polyurethane Foam or raw materials for Polyurethane Foam.

30. Your monitoring, tracking, observation, or knowledge of prices for Polyurethane Foam.

31. Your monitoring, tracking, observation, or knowledge of prices for raw materials, including chemicals, used in the manufacture of Polyurethane Foam.

32. Your direct or indirect purchase of Polyurethane Foam pursuant to any competitive bid, auction, reverse auction, or similar process.

33. Your physical, chemical, performance, or other specifications or requirements for Polyurethane Foam directly or indirectly purchased from any Defendant or other GM Supplier.

34. Your investment in or ownership of any Defendant or other GM Supplier of Polyurethane Foam, or in any supplier of raw materials, including chemicals, used in the manufacture of Polyurethane Foam.

35. Your joint venture or cooperative activities with any Defendant or other GM Supplier of Polyurethane Foam, or with any supplier of raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam.

36. Any certification or other testing of Polyurethane Foam done by any Defendant or other GM Supplier on Your behalf.

37. Communications between You and any Defendant and/or other GM Suppliers of Polyurethane Foam concerning the pricing, specifications, and/or availability of Polyurethane Foam.

38. GM's role, including the role of GM's "procurement teams" as described in paragraphs 145 and 146 of GM's Complaint, in setting the pricing, specifications, volume, supplier, and delivery of Polyurethane Foam provided by GM Suppliers of Polyurethane Foam.

39. Communications between you and any other automotive original equipment manufacturer concerning the pricing, specifications, and/or availability of Polyurethane Foam.

40. Communications between You and any Person or entity, in which any of the following subjects was referred to or discussed:

    a. a Price Increase Letter from any Defendant or other GM Supplier for Polyurethane Foam;

    b. any correspondence or notice sent by a Defendant or other GM Supplier, regarding a price increase for Polyurethane Foam;

    c. any correspondence sent by a Defendant or other GM Suppliers regarding the increasing cost of raw materials for Polyurethane Foam;

    d. the timing or possibility of a future Price Increase Letter for Polyurethane Foam, or raw materials for Polyurethane Foam;

    e. prices to be charged in the future for Polyurethane Foam or raw materials for Polyurethane Foam;

    f. the coordination of Price Increase Letters for Polyurethane Foam or raw materials for Polyurethane Foam;

    g. the negotiation, acceptance, rejection, or reduction of a price increase for Polyurethane Foam or raw materials for Polyurethane Foam;

    h. the allocation of customers, territories, markets, or sales areas for Polyurethane Foam or the allocation of Polyurethane Foam;

    i. an increase in the price of Polyurethane Foam;

    j. an increase in the prices or costs of raw materials, including chemicals used in the manufacture of Polyurethane Foam;

    k. a price increase for Polyurethane Foam or raw materials for Polyurethane Foam that was yet to be publicly announced or published;

    l. the effective date of a future price increase for Polyurethane Foam;

    m. the business ramifications to you or your company of a price increase for Polyurethane Foam or raw materials for Polyurethane Foam;

    n. market shares or changes in market shares for Polyurethane Foam; and/or

    o. competitive conditions relating to the direct or indirect purchase and/or sale of Polyurethane Foam.

41. Communications concerning plans or instructions to contact any Person to obtain, provide, or exchange Price Increase Letters and/or other information about prices or price increases for Polyurethane Foam.

42. The date on which GM first became aware of each of the practices and conduct challenged in its Complaint.

43. The date on which GM first became aware of the impact of the practices and conduct challenged in its Complaint on GM.

44. The date on which GM first became aware of any alleged injury caused by the practices and conduct challenged in its Complaint.

45. Any contracts, agreements, understandings or other arrangements, written or oral, between You and any Defendant or other GM Suppliers concerning any restrictions and/or limitations on Your ability to institute legal action regarding Your direct or indirect purchases of Polyurethane Foam.

46. The facts, Documents, and other information You believe support Your claims and allegations in this Action.

47. The persons with knowledge concerning the allegations in Your Complaint and the facts You contend support those allegations.

48. The damages You claim to have suffered as a result of the events described in Your Complaint and how those damages were calculated.

49. Any steps or actions that You have taken to mitigate the damages You claim, including the costs and benefits of taking such steps.

50. Any steps or actions You have taken to discover and/or investigate any of the activities alleged in this Action.

51. Any cooperation or other comparable contracts, agreements, understandings or other arrangements, written or oral, between You and any individual or entity, including but not limited to GM Suppliers, relating to the events described in Your Complaint, including but not limited to assignments of any claims in GM's favor.

52. Any assignment or transfer to You by any party of the right to sue Defendants (or any of them) for damages for any alleged overcharge on the direct or indirect purchase of Polyurethane Foam.

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2013, a copy of the foregoing Defendants' Rule 30(b)(6) Deposition Notice to Plaintiff General Motors LLC and the attached Exhibit A were served electronically on lead counsel for Plaintiffs pursuant to Paragraph 10 of this Court's January 20, 2011 Initial Case Management Conference Order, ECF No. 17, as well as counsel for Plaintiff General Motors LLC.

/s/ Allison C. Kop
Allison C. Kop
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8320
akop@gibsondunn.com