UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION ) ) ) ) | MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ) |
| This document relates to: ) ) ) ALL DIRECT PURCHASER ACTIONS ) ) ) | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOHAWK INDUSTRIES, INC.'S MOTION FOR LEAVE TO AMEND ITS ANSWER TO THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Direct Purchaser (Class) Plaintiffs ("Plaintiffs") respectfully submit this memorandum in opposition to Defendant Mohawk Industries, Inc.'s ("Mohawk's") motion for leave to amend its answer to Plaintiffs' Consolidated Amended Class Action Complaint.

**PRELIMINARY STATEMENT**

After actively litigating this class action for three years, Mohawk has abruptly changed course. Through a new affirmative defense against the class representatives, Mohawk now states that it would raise arbitration not as a defense against the named plaintiffs' individual claims, but would instead raise arbitration against their class claims for direct purchasers who are absent class members. Allowing Mohawk to arbitrate these class claims against it at this late date would reward a substantial delay and would unduly prejudice Plaintiffs, their counsel, and this Court. Because Mohawk long ago waived its right to arbitrate, any attempt to raise that right as a defense is utterly futile and must be denied.

Mohawk's dilatoriness easily meets the two requirements for waiver of the right to arbitrate in the Sixth Circuit. First, Mohawk's actions are completely inconsistent with any

1

reliance on arbitration agreements. Mohawk has actively litigated this case, including the class claims, since late 2010 and, until a couple weeks ago, had shown no indication of an intent to arbitrate. In September 2011, Mohawk answered Plaintiffs' class complaint yet failed to assert an arbitration defense. To date, Mohawk has engaged in substantial class-wide discovery (including the exchange of thousands of pages of documents and participation in dozens of depositions) and extensive motion practice (including seeking to dismiss, opposing class certification, and responding to motions to approve settlements and a notice program, suspend litigation, clarify discovery issues, and reconsider a court decision, among others). Mohawk even submitted a 49-page expert report separate and apart from all other defendants except Leggett & Platt, Inc., which joined in the report.

Second, Mohawk has delayed its assertion of this defense to this class action to such an extent that Plaintiffs would incur actual prejudice if Mohawk now arbitrates those claims. The three-year delay in itself is significant as the Sixth Circuit routinely finds waiver in instances of far shorter delays. The prejudice caused is significant as well. It comes in three main forms: (1) Plaintiffs' wasted past efforts litigating claims against Mohawk, efforts not transferrable to arbitration; (2) class members' future efforts in order to prepare to arbitrate claims against Mohawk; and (3) Mohawk's gamesmanship of actively litigating and then suddenly tacking towards arbitration, thereby gaining an unfair strategic advantage.

In addition, that Mohawk seeks to arbitrate the claims of putative class members, as opposed to class representatives, prior to certification is of no moment. Mohawk's motion specifically is addressed at adding the affirmative defense of arbitration against the complaint of the named plaintiffs who have brought this class action. The gravamen of the waiver analysis with respect to this affirmative defense is Mohawk's behavior and whether it has caused

prejudice to the named plaintiffs. The fact remains that the class representatives will have been prejudiced for three years if the affirmative defense is permitted; thus, waiver is apparent.

## BACKGROUND

This case arises out of a conspiracy among Defendants that had the purpose of fixing prices of flexible polyurethane foam products. Mohawk was party to this litigation as early as December 2010. In *Cambridge of California, Inc. v. Hickory Springs Manufacturing Company*, No. 3:10-cv-1858-JZ (N.D. Ohio), Mohawk was named a defendant in the First Amended Complaint, filed December 2, 2010 (*Cambridge of California* Docket No. 60). After this and other related actions were consolidated as part of the multi-district litigation before this Court, Plaintiffs filed the Consolidated Amended Class Action Complaint on February 28, 2011 ("Class Complaint," Docket No. 46). It remains the active complaint in this matter.

Discovery has been ongoing since the summer of 2011. It has been a vast undertaking given the allegations of a nationwide conspiracy by purchasers against multiple defendants in a sizable market. Discovery has consisted of millions of pages of documents and dozens of depositions. Mohawk has actively participated by deposing class representatives and direct action plaintiffs, providing multiple witnesses for Plaintiffs' depositions, sitting in on numerous other depositions, producing and reviewing thousands of documents, briefing and moving the Court on discovery disputes (Docket Nos. 110, 218, 347, 418, 452), and submitting a detailed expert report with one other defendant (Docket No. 679-1). Fact discovery will conclude in February 2014; expert discovery in April 2014. Mohawk's share of the time and effort Plaintiffs have devoted to discovery, motions, and other matters is substantial.

Mohawk actively participated in the litigation for nine months before answering the Class Complaint. In April 2011, Mohawk and defendants moved to dismiss the Class Complaint for failure to state a claim (Docket No. 100). Prior to answering, Mohawk and defendants moved to

3

vacate notices of voluntary dismissal (Docket No. 168), filed a notice of a discovery dispute (Docket No. 218), and moved to file a reply to a motion to reconsider the Court's decision on fraudulent concealment (Docket No. 232).

On September 26, 2011, Mohawk filed its answer ("Answer," Docket No. 269) to the Class Complaint. Despite raising fifteen affirmative defenses in the Answer, Mohawk failed to raise a defense regarding arbitration.

Over the next two years, Mohawk actively litigated without ever mentioning arbitration. Mohawk's motion practice consisted of responses to: Plaintiffs' motion for entry of default (Docket No. 250), motions to suspend litigation against certain defendants (Docket No. 322), and Plaintiffs' motion for approval of a program for transmitting notice of settlements (Docket No. 377).

Certain defendants settled with Plaintiffs (*see* Docket No. 597, June 20, 2013 Order granting final approval to the settlement of the Vitafoam and Domfoam Settlement Classes). Although Mohawk and defendants objected to Plaintiffs' motions for preliminary and final approval of these settlements, Mohawk and defendants never objected on arbitration grounds (Docket Nos. 301, 352, 545).

Mohawk also continued extensive class discovery and has kept the Court apprised of discovery and legal issues through several filings (Docket Nos. 347, 418, 445, 452) and status conferences. On June 11, 2013, Plaintiffs moved for class certification (Docket No. 584). Mohawk and eleven other defendants opposed on August 29, 2013 (Docket No. 682). In their opposition, Defendants, in a footnote, made a single mention of arbitration agreements entered into with "[s]everal putative class members." (*Id.* at 10 n.2). Over three months later, by motion dated December 6, 2013 ("Motion"), Mohawk moved for leave to amend the Answer to add the

4

following affirmative defense: "Plaintiffs' claims on behalf of putative class members are barred due to the presence of mandatory, binding arbitration agreements between Mohawk [sic] certain putative class members." (Motion at 1). Plaintiffs now oppose.

Resolution of this motion and of Mohawk's right to arbitrate will affect claims of absent class members who entered into contracts with Mohawk and will prejudice the named plaintiffs if the motion is granted. Plaintiffs note, however, that the motion will not affect Mohawk's presence in this case or the scheduled hearing on class certification because Mohawk remains jointly and severally liable as a co-conspirator to class members who did not enter into agreements with Mohawk. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011) (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981)).

## ARGUMENT

Although the Federal Rules provide that leave to amend is freely given, courts may deny it "when the amendment would be futile or cause undue delay which would result in unfair prejudice to the defendant." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002). The proposed amendment is futile because Mohawk has waived its right to arbitrate. *See Langley v. Credit Suisse First Boston Corp.*, 89 F. App'x 938, 945 (6th Cir. 2004). Further, the amendment would pose prejudice to the named plaintiffs for the same reasons as are recognized in the required waiver analysis.

A party can waive an agreement to arbitrate through two courses of conduct: "(1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Assoc. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (internal citation and quotation marks omitted). Mohawk has engaged in both, thereby waiving its right to arbitrate.

5

I.   **Mohawk's Actions Are Completely Inconsistent with Any Reliance on an Arbitration Agreement.**

Mohawk's actions from the commencement of this case to the filing of this motion contradict any intention to arbitrate. Its behavior can be described as "active" or "substantial" participation in this litigation. *Mantaline Corp. v. PPG Indus., Inc.*, 225 F.3d 659, 2000 WL 799337, at *4-5 (6th Cir. 2000). Such participation generally involves the opposing party and/or the court. Active participation is frequently marked by discovery and motion practice, but can be any litigation behavior, such as participating in a status conference or filing a report. *See Conant v. Morgan's Foods, Inc.*, No. 2:10-cv-496, 2011 WL 672584, at *5 (S.D. Ohio Feb. 15, 2011) ("While continually paying lip service to a desire to arbitrate, Defendants purposefully availed themselves of the litigation process, filing counterclaims, framing a case schedule, participating in discovery, and letting Plaintiffs' deadline to amend the pleadings pass"). In *Manasher v. NECC Telecom*, 310 F. App'x 804 (6th Cir. 2009), the court found that defendant's engaging in discovery and motion practice, including moving for class certification, constituted almost one year of "active" participation in litigation. *Id.* at 805. The Sixth Circuit deemed such conduct a waiver of defendant's right to arbitrate.

The Federal Rules expressly list "arbitration and award" as one of 18 affirmative defenses that a party "must affirmatively state." Fed. R. Civ. P. 8(c)(1). The court in *Manasher* also cited defendant's failure to raise arbitration as an affirmative defense in its answer as inconsistent with reliance on an arbitration agreement. *Id.* at 806. "Federal Rule of Civil Procedure 8(c) requires a defendant to plead arbitration as an affirmative defense in its answer or it will generally be deemed waived." *Id.* at 806 n.3. Similarly, Mohawk neglected to plead the defense of arbitration in its Answer, a telling omission. The Sixth Circuit explained that because a defendant's answer is its main opportunity to provide notice of potentially dispositive issues,

6

defendants "routinely" raise arbitration as an affirmative defense. *Johnson*, 680 F.3d at 718. In denying defendant's motion to compel arbitration, the court explained that "defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate." *Id.*

Further, the Answer was submitted after Mohawk had been actively litigating this action for approximately nine months. After testing these waters, Mohawk then failed to raise an arbitration defense. Mohawk now explains that its failure was "inadvertent[ ]" (Motion at 2). Mohawk also implies that pleading arbitration was not terribly important since other defendants asserted the defense, thereby putting Plaintiffs on notice that all defendants may arbitrate (*id.*).

Plaintiffs are skeptical that Mohawk's omission was simple oversight. Mohawk is a sophisticated business that hired experienced counsel to defend it in a high-stakes multi-district class litigation. Mohawk does not argue that it was not aware of its arbitration agreements with Plaintiffs. Rather, Mohawk made the conscious decision not to arbitrate until now. Accordingly, it cannot retroactively put Plaintiffs on notice of its right to arbitrate by pointing to the answers of its co-defendants that did raise arbitration as an affirmative defense. As is the case with any affirmative defense asserted by one defendant but not another, defendants' answers that raised arbitration indicated an intent to litigate the defense, and those that did not raise arbitration indicated that they would not arbitrate.[1]

After filing the Answer, Mohawk then waited over two years more before asserting its right to arbitrate, doing so through this belated motion. As previously detailed, Mohawk actively

---

[1] This is a fairer reading of Defendants' opposition to class certification as well. Just because a memorandum submitted by twelve defendants, including Mohawk, mentions arbitration in a single footnote does not provide notice that Mohawk may choose to arbitrate claims against it. By contrast, notice was far more obvious in the case Mohawk cites and quotes, *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993) (Motion at 8). *Moore* is a straightforward case of creditors suing guarantor, where guarantor provided notice of an affirmative defense in both his response and affidavit opposing creditors' motion for summary judgment. *Id.* at 1445. However, the point is moot, as Mohawk's opposition to class certification was submitted in August 2013, long past the time by which Mohawk had waived arbitration.

participated in extensive discovery and motion practice for three years without mentioning arbitration. Clearly its actions are inconsistent with any reliance on an arbitration agreement.

## II. Mohawk Has Delayed Assertion of Its Right to Arbitrate to Such an Extent that, if This Motion Is Granted, Plaintiffs Would Incur Actual Prejudice.

Mohawk's actions also satisfy the second basis for a finding of waiver. That is, Mohawk delayed its assertion of its right to arbitrate to such an extent that, if Mohawk is now allowed to arbitrate, Plaintiffs would be prejudiced. Mohawk's three-year delay is substantial, and significantly shorter ones frequently result in waiver. In *Johnson*, the Sixth Circuit held that defendant had waived its right to arbitrate even though "the case had progressed only eight months before [defendant] raised its right to arbitration." 680 F.3d at 718. In *Hurley*, the court considered an unusually-long delay of 26 months before defendant asserted its right to arbitrate. In holding that the right was waived, the court cited three recent cases where the Sixth Circuit had also found waiver. In each case, the delay was far less than Mohawk's. 610 F.3d at 339 (citing *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (17-month delay); *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 357 (6th Cir. 2003) (15-month delay); *Manasher*, 310 F. App'x at 806 (12-month delay)).

Mohawk's three-year lapse is at the upper bounds of when courts even consider waiver. Such long delay actually reduces the amount of prejudice Plaintiffs need show for this Court to find waiver. The Sixth Circuit, in considering whether a defendant may amend his answer to add an affirmative defense, observed that "[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (internal citation and quotation marks omitted).

If this motion is granted and Mohawk is permitted to arbitrate, Plaintiffs would be prejudiced by having been forced to incur "unnecessary delay or expense." *Johnson*, 680 F.3d at

8

719. The prejudice inflicted by Mohawk contradicts the fundamental idea behind arbitration as a streamlined decision-making process. Plaintiffs have been induced to expend on class-related motion practice and discovery that is "the type of litigation expense[s] that arbitration was designed to alleviate." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011) (internal citation and quotation marks omitted). For example, Plaintiffs have incurred expert costs related to analyzing the claims of direct purchasers from Mohawk. The arbitration would not save anyone time or money. Not only Plaintiffs but this Court would have been burdened, as it has had to "waste scarce judicial time and effort" to accommodate Mohawk and to resolve issues that never should have been brought in the first place. *Johnson*, 680 F.3d at 717.

Mohawk's class-related motion practice and discovery have already been detailed. Much of what Plaintiffs and this Court expended in response would be wasted. Even drafting this memorandum prejudices Plaintiffs. Courts have routinely found that far less effort constitutes prejudice. For example, in *Johnson*, the court detailed the prejudicial delay of only eight months of active litigation as: defendant's answer failing to raise arbitration as a defense, judicial conferences, settlement discussions, discovery requests, two motions to modify a case management order, five depositions, and plaintiffs' production of 1,151 pages of documents and a 4.11 gigabyte hard drive. 680 F.3d at 715-16. In *Edwards v. First American Corp.*, 289 F.R.D. 296 (C.D. Cal. 2012), a class action brought against numerous title insurers, the court found prejudice in defendants' litigating the case for approximately three years before moving for leave to amend their answer to raise an arbitration defense. *Id.* at 306-07. The court explained that defendants' delay in asserting their right of arbitration resulted in enormous costs and thousands of hours of attorney time. *Id.* at 308. Plaintiffs in the case at bar have been similarly prejudiced.

9

If this motion is granted, Plaintiffs would not only have been prejudiced in the past. Their prejudice would extend through the duration of this litigation. A party is prejudiced if it has to expend additional resources to respond to a new defense. *Phelps*, 30 F.3d at 662-63. With fact discovery closing in February and the contours of arbitrating against Mohawk currently unknown, Plaintiffs may have to scramble to prepare by collecting new evidence and formulating new strategies. Other defendants who have also been actively litigating this case could then piggyback on Mohawk's result and arbitrate their own claims, further delaying resolution. Granting this motion could be a slippery slope.

Mohawk argues that case law supports a finding of an absence of prejudice for Plaintiffs going forward, but the case it cites is revealingly inapposite. It is true that the court in *Chesler v. City of Fairview Park*, No. 1:13-cv-40, 2013 WL 2950562 (N.D. Ohio June 12, 2013) allowed plaintiff to amend its pleading when there were nearly three months left in discovery (Motion at 9). But Mohawk neglects to mention that the case involves a single plaintiff alleging an unconstitutional arrest who brought an unopposed motion to amend his complaint "to correct certain typographical and grammatical errors contained in the first amended complaint, and to reflect that the action is now in federal court." *Chesler*, 2013 WL 2950562, at *1. Three months may well have been sufficient in *Chesler*. However, Plaintiffs in the case at bar would be prejudiced by having even less time to prepare for the arbitration claims of an as-of-yet undefined number of class members in what is undoubtedly a complex litigation.

Mohawk's about-face on arbitration is no more than gamesmanship. If permitted, it would allow Mohawk a strategic advantage — gaining something in class discovery that would be unavailable in arbitration. *Id.* at 720. Something Mohawk has gained is numerous depositions. This would prejudice the arbitration by giving Mohawk more evidence than it could

10

have otherwise obtained. *See Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.*, 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam) (describing such conduct as "precisely the type of prejudice our cases have sought to avoid"). Deferring arbitration and litigating also allowed Mohawk to attempt to dismiss Plaintiffs' claims on the merits, which could have precluded class members' claims in subsequent actions. *See Edwards*, 289 F.R.D. at 307 (describing such conduct as "highly calculated"). Lastly, arbitration would prejudice class members since they would now need to arbitrate claims rather than proceed by a class action. *Id.* at 307-08.

Mohawk could counter that what Plaintiffs describe as prejudice would transpire regardless of whether this Court grants its motion since other defendants may choose to arbitrate. However, Mohawk cannot hide behind the actions of its co-defendants, some of whom timely raised an arbitration defense in their answers. Defendants are not all the same. For instance, Mohawk sells mainly carpet underlay. Certain litigation costs incurred by Plaintiffs are unique to Mohawk, such as reviewing Mohawk's thousands of documents, providing Plaintiffs' documents to Mohawk, depositions of Mohawk personnel, and responding to Mohawk's expert report. Also, Mohawk's arbitration agreements may be different than its co-defendants', and Plaintiffs would have to prepare in kind. Any attempt by Mohawk to ride the coattails of its co-defendants is yet another instance of gamesmanship that would further prejudice Plaintiffs.

### III. Mohawk Has Waived Its Right to Arbitrate Against Non-Party Putative Class Members.

#### A. Class Members Are Non-Parties Before and After Class Certification.

Mohawk argues that even if this Court finds that it has prejudiced Plaintiffs, Mohawk cannot have waived its right of arbitration because it is only seeking to arbitrate claims of putative class members. Mohawk's rationale is that before a class has been certified, putative

class members are non-parties, and waiver is impossible against a non-party. Mohawk implies that should this Court grant class certification, then class members attain party status, and then Mohawk can move to compel arbitration against them. Under Mohawk's argument, only then would Mohawk be able to waive its right of arbitration.

This argument is both incorrect and overly simplistic. It is incorrect because both before and after class certification, absent class members are not parties to this action.[2] Instead, the status of absent class members is *sui generis*, and courts risk confusion and uncertainty when they base the rights of class members on a contrived party/non-party status. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 358 n.21 (1980) (Powell, J., dissenting), *construed in* 1 Alba Conte, Newberg on Class Actions § 1.5 (5th ed. 2011); *In re Cement Antitrust Litig.*, 688 F.2d 1297, 1309 (9th Cir. 1982) (no indication of whether Congress considered the question of whether a "class member" is a "party"); *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 ("Nothing in Rule 23 suggests that class members are deemed 'parties'"). Absent class members occupy a special status in litigation, as "[t]hey are treated like parties to the litigation for some purposes but not for others." Newberg on Class Actions § 1.5. *Compare Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207 n.28. (defendant's counsel barred from communicating with class members after, and often-times before, class certification), *with Donson Stores, Inc. v. Am. Bakeries Co.*, 58 F.R.D. 485, 488-89 (S.D.N.Y. 1973) (class members never parties for purposes of Federal Rule 13 counterclaims).

It is the class representatives that are the plaintiffs and parties both before and after class certification. The affirmative defense of arbitration is now asserted against the class representatives only. The issue before the Court is only whether the affirmative defense of

---

[2] Mohawk's case cites do no more than show that class members are not parties before a class has been certified. *See, e.g., Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379 (2011) (Motion at 5) (novel and erroneous to suggest that a class member is a party before the class is certified).

12

arbitration should be permitted against the current plaintiffs and their Class Complaint. As previously detailed, the prejudice against named plaintiffs and their counsel is extreme.

Mohawk also asserts that it will bring a motion to compel arbitration against the absent class members. But Mohawk has no power to bring a motion to compel arbitration against non-party absent class members. *See* 9 U.S.C. § 4 (petition to the court to arbitrate is made by a "party aggrieved" upon the "party in default"). Mohawk's case cites also show that the only plaintiff parties to this litigation, both before and after certification, are the class representatives. *See, e.g., In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 479 n.1 (6th Cir. 2013) (Motion at 5) (individuals that were not named parties were not parties to putative class action).

### B. Even Before a Class Has Been Certified, Mohawk Has Waived Its Right to Arbitrate Against Putative Class Members.

The cases Mohawk cites for the more specific point, that a defendant may not waive arbitration against class members prior to certification, relies on the same surficial party/non-party distinction. For example, the court in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011) (Motion at 7) disposed of the issue by no more than labelling pre-certification class members as non-parties. *Id.* at *4.[3] However, the issue cannot be disposed of in such a manner because the party/non-party divide does not answer the question of prejudice of the parties against whom the affirmative defense would be asserted and because the prejudice here is extreme.

---

[3] As in *TFT*-LCD, the courts in the other two cases do no more than base their decisions on the party/non-party distinction: *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-318-RDB, 2012 WL 5947283, at *3 (D. Md. Nov. 27, 2012); *Mora v. Harley-Davidson Credit Corp.*, No. 1:08-cv-1453-AWI-BAM, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012), *report and recommendation adopted*, 2012 WL 3245518 (E.D. Cal. Aug. 7, 2012) (Motion at 7). The other case Mohawk cites on the issue, *Midland Funding, LLC v. Brent*, No. 3:08-cv-1434, 2010 WL 4628593 (N.D. Ohio Nov. 4, 2010) (Motion at 7), is from this district but is completely off point. The *Midland* court granted class certification over the defendants' argument that some class members' claims were covered by arbitration agreements, reasoning that such claims could be handled with subclasses or by "eliminating some members of the class." 2010 WL 4628593, at *4 n.1.

13

In *Morgan v. AT&T Wireless Services, Inc.*, 2013 WL 5034436 (Cal. Ct. App. 2 Dist. Sept. 13, 2013), the court held that, prior to certification, defendant had waived its right to arbitrate against both named plaintiffs and putative class members. *Id.* at *7. The court expressly rejected as "flawed" resolving the issue by simply categorizing putative class members as nonparties. *Id.* at *6 n.3 ("Suffice it to say that we disagree with the reasoning of the court in *TFT–LCD*."). Instead, the *Morgan* court found that "the critical focus here is on the defendant's conduct." *Id.* at *7. It was apparent that defendant acted inconsistently with a desire to arbitrate:

> Engaging in class-related discovery is clearly inconsistent with an intent to arbitrate. [Defendant] ATTM perhaps did so in hopes of defeating class certification, but nonetheless it participated in the litigation, and did so on the plaintiffs' terms, i.e., a putative class action. Its waiver of the right to compel arbitration was applicable to the putative class as a whole, as well as the named plaintiffs. ATTM's conduct is the correct focus here, not whether putative class members are parties to the action, and not whether putative class members are bound by or may benefit from precertification rulings . . . Further, ATTM's delay in asserting its right to arbitrate has resulted in the expenditure of considerable costs by plaintiffs and would-be class counsel in litigating this case and conducting discovery. Forcing the named plaintiffs to litigate alone now, and forcing the class to arbitrate individually, would result in those costs being wasted. In short, there is no question that plaintiffs have relied to their detriment on ATTM's failure to assert its right to arbitration in a timely manner. *Id.* at *8.

The *Morgan* court explained that it is more useful to analyze the issue in terms of the goals of representative litigation and of class arbitration. *Id.* at *7-8. The named representatives and their attorneys had expended considerable costs that conflict with arbitration's goal of providing an efficient and less expensive form of dispute resolution. Plaintiffs had relied on defendant's conduct to their detriment. If defendant could then arbitrate, this matter could devolve into scores of costly individual arbitrations. And defendant would do so with the benefit of class-wide discovery. *Id.* at *8-9.

In *Edwards*, a California federal district court also held that defendants had waived their right to arbitrate against class members. While defendants waited until after a class was certified

to move to compel arbitration, central to the court's reasoning was that "[d]efendants could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding." 289 F.R.D. at 307. Much like Mohawk, the *Edwards* defendants first hinted that they planned to arbitrate in a motion for leave to file an amended answer brought approximately three years after the action began. *Id.* at 306-07. The *Edwards* court also expressly rejected the reasoning in *TFT-LCD* and noted that the court in *TFT-LCD* acknowledged that its decision was "'extremely close.'" *Id.* at 307 (quoting *TFT-LCD*, 2011 WL 1753784, at *4).

Accordingly, Mohawk cannot hide behind the non-party status of putative class members to explain its profound delay in disclosing its desire to arbitrate. This Court can simply examine whether Plaintiffs, the class representatives, would be prejudiced by Mohawk's actions if it is allowed to arbitrate. Because Mohawk's three-year failure to indicate any intention to arbitrate would result in substantial, undue prejudice, Mohawk has waived its right to arbitrate.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court deny Mohawk's motion for leave to amend the Answer.

Dated: December 23, 2013

/s/ William A. Isaacson
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Phone: 202-237-5607
Fax: 202-237-6131

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Phone: 212 849-7165
Fax: 212 849-7100

Interim Co-Lead Counsel for Direct Purchaser (Class) Plaintiffs

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that the foregoing DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOHAWK INDUSTRIES, INC.'S MOTION FOR LEAVE TO AMEND ITS ANSWER TO THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT complies with the page limitations of Local Rule 7.1(f) as this matter has been assigned to the complex track. (Dkt. No. 17 ¶ 1). I further certify that on this day I filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record in this case.

Dated: December 23, 2013

/s/ Ronald J. Aranoff
Ronald J. Aranoff