UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ) |
| This document relates to:<br><br>ALL CASES | ) ) ) ) ) |

### DEFENDANTS' AMENDED RULE 30(b)(6) DEPOSITION NOTICE TO PLAINTIFF SOMNUS MATTRESS CORPORATION

TO:    ALL COUNSEL OF RECORD

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, please take notice that Defendants, by and through their undersigned counsel, will take the oral deposition of **Somnus Mattress Corporation** on the subject matters set forth in Exhibit A, attached hereto.

The deposition will commence **at 9:00 a.m. local time on Monday, February 10, 2014**, at the offices of **Gratz and Gratz, 312 North Green Street., Tupelo, MS 38804**.  The deposition shall continue from day to day until completed in accordance with the Federal Rules of Civil Procedure and the orders of this Court.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Somnus Mattress Corporation shall designate a person or persons prepared to testify about the topics set forth in Exhibit A.  All parties are invited to attend.  The deposition will be conducted under oath and will be recorded by stenographic means and by videotape.

| | |
|---|---|
| Dated: January 13, 2014 | Respectfully submitted, |
| /s/   James H. Walsh | /s/   Kendall Millard |
| James H. Walsh | Kendall Millard |
| Howard Feller | BARNES & THORNBURG, LLP |
| Bethany Lukitsch | 11 South Meridian Street |
| MCGUIREWOODS LLP | Indianapolis, IN 46204-3535 |
| One James Center | Phone: (317) 231-7461 |
| 901 East Cary Street | Fax:     (317) 231-7433 |
| Richmond, VA 23219-4030 | kmillard@btlaw.com |
| Phone: (804) 775-4356 | |
| Fax:     (804) 698-2200 | /s/   Michael D. Mustard |
| jwalsh@mcguirewoods.com | Michael D. Mustard |
| hfeller@mcguirewoods.com | BARNES & THORNBURG LLP |
| blukitsch@mcguirewoods.com | 600 One Summit Square |
| | Fort Wayne, IN 46802-3119 |
| *Counsel for Carpenter Co., E.R. Carpenter,* | Phone:  (260) 423-9440 |
| *L.P., and Carpenter Holdings, Inc.* | Fax:     (260) 424-8316 |
| | mmustard@btlaw.com |
| | |
| | *Counsel for Flexible Foam Products, Inc.* |
| /s/   Francis P. Newell | /s/   Edward G. Warin |
| Francis P. Newell | Edward G. Warin |
| Peter M. Ryan | John P. Passarelli |
| COZEN O'CONNOR | KUTAK ROCK LLP |
| 1900 Market Street | 1650 Farnam Street |
| Philadelphia, PA 19103 | Omaha, NE  68102 |
| Phone:  (215) 665-2118 | Phone:  (402) 346-6000 |
| Fax:     (215) 665-2013 | Fax:     (402) 346-1148 |
| fnewell@cozen.com | edward.warin@kutakrock.com |
| pryan@cozen.com | john.passarelli@kutakrock.com |
| | |
| *Counsel for Foamex Innovations, Inc.* | *Counsel for Future Foam, Inc.* |

/s/ Frank A. Hirsch, Jr.
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
Phone: (919) 862-2200
Fax: (919) 852-2260
frank.hirsch@alston.com
matt.mcguire@alston.com

*Counsel for Hickory Springs Manufacturing Company*

/s/ Randall L. Allen
Randall L. Allen
Teresa T. Bonder
Allison S. Thompson
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
randall.allen@alston.com
teresa.bonder@alston.com
allison.thompson@alston.com

*Counsel for Mohawk Industries, Inc.*

/s/ Daniel R. Warncke
Daniel R. Warncke
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
warncke@taftlaw.com

Joe Rebein
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 559-2227
jrebein@shb.com

*Counsel for Leggett & Platt, Incorporated*

/s/ Daniel G. Swanson
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-6690
Fax: (213) 229-6919
dswanson@gibsondunn.com

Cynthia Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: (202) 530-8500
Fax: (202) 530-9651
crichman@gibsondunn.com

*Counsel for Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., and Woodbridge Foam Fabricating, Inc.*

## **EXHIBIT A**

A.   **DEFINITIONS**

For purposes of this deposition notice, the following words and phrases shall have the meanings set forth below whenever used in any Definition or Area of Examination:

1. "Person" or "persons" means all natural persons or entities, including, without limitation, any individual, employee, firm, association, organization, partnership, business, trust, corporation, team, group or other entity of any nature whatsoever.

2. "Communication," or any variant thereof, means the transmittal or attempted transmittal of information or knowledge between Persons whether oral, written, electronic or otherwise; whether in-person or telephonic; or whether direct or through an intermediary.

3. "Action" refers to the lawsuits that are currently consolidated and pending for pretrial purposes in the United States District Court for the Northern District of Ohio, Western Division as part of *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ.

4. "You," "your," "your company" and similar terms means Somnus Mattress Corporation and its predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

5. "Your Complaint" refers to the document styled "Complaint" filed on April 30, 2012, in *Somnus Mattress Corporation v. Hickory Springs Manufacturing Company, et al., Case No. 1:12-cv-00105 (N.D. Miss.)*

6. "Direct Purchaser Class Complaint" refers to the document styled "Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint" filed on February 28, 2011 in *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ (N.D. Ohio).

7. "Direct Purchaser Class Plaintiff(s)" means each Plaintiff identified in the Direct Purchaser Class Complaint and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

8. "Direct Purchaser Class Member(s)" means any Person(s) that are not currently named in the Direct Purchaser Class Complaint, but are potential members of the putative class that Direct Purchaser Class Plaintiffs purport to represent, and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

9. "Direct Action Plaintiff(s)" means each Direct Purchaser Plaintiff that filed a standalone complaint in the Action and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

10. "Document" is coextensive with the meanings of the terms "document" and "electronically stored information" in Rule 34 of the Federal Rules of Civil Procedure,

11. "Defendants" means each Defendant identified in the Direct Purchaser Class Complaint and/or any Direct Action Plaintiff's complaint in the Action and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators.

12. "Polyurethane Foam" means any type, grade or form of "flexible polyurethane foam" and "flexible polyurethane foam products" as those terms are defined and used in your

Complaint and/or the Direct Purchaser Class Complaint, and includes, without limitation, slabstock and molded polyurethane foam.

13. "Polyurethane Foam Products" means any product containing Polyurethane Foam as those terms are used and defined in your Complaint and/or the Direct Purchaser Class Complaint, including carpet cushion or carpet underlay products.

14. "Price Increase Letter" means any communication or document containing or reflecting an announcement or notification of a price increase for any Polyurethane Foam and/or Polyurethane Foam Products.

B. AREAS OF EXAMINATION

You are requested to designate to Defendants, at least ten (10) days prior to the deposition, one or more officers, directors or other individuals who consent to testify on your behalf, and provide all information known or reasonably available to you, as the person most knowledgeable, with respect to the following subjects for the period of January 1, 1999 through the present (the "Relevant Time Period"):

1. The allegations in your Complaint.

2. The statements and information contained in your initial disclosures in this Action pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, and your disclosures pursuant to the Transactional Data Protocol Order, ECF No. 242, and the Order Regarding Electronically Stored Information, ECF No. 245.

3. Your document production in this Action.

4. Your document retention practices, policies, and procedures.

5. The history, corporate structure, organization, ownership, executive leadership, and management structure of your company.

6. The identity and employment history of any management or supervisory person currently or formerly employed by your company whose employment related to the manufacture, purchase, fabrication, use, and/or sale of Polyurethane Foam and/or Polyurethane Foam Products.

7. Your persons responsible for the purchasing of Polyurethane Foam and/or Polyurethane Foam Products and raw materials for Polyurethane Foam and/or Polyurethane Foam Products.

8. The nature and geographic scope of your company's business operations, and the location, size, scope, organization, function, and purpose of your business locations or units.

9. Your annual requirements of Polyurethane Foam and/or Polyurethane Foam Products.

10. Your annual production of Polyurethane Foam and/or Polyurethane Foam Products.

11. Your inventory capacities, practices, and procedures.

12. The financial performance of your company.

13. Any prior lawsuits, claims, or complaints claiming antitrust violations, injury to competition, or unfair competition in which you have been involved or named as a party.

14. The companies or suppliers from which you purchased Polyurethane Foam and/or Polyurethane Foam Products, the products purchased, and the quantities, prices, terms and conditions of sale, including any contracts governing prices or the terms and conditions of sale.

15. Your suppliers of raw materials for Polyurethane Foam and/or Polyurethane Foam Products, including chemicals and scrap foam.

16. Potential suppliers to you of Polyurethane Foam and/or Polyurethane Foam Products.

17. Your negotiations with, purchases from, and purchase prices quoted or received from any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products.

18. Your receipt of Price Increase Letters concerning Polyurethane Foam and/or Polyurethane Foam Products from any Defendant or other supplier and the effects of such Price Increase Letters on the prices offered to or paid by you for Polyurethane Foam and/or Polyurethane Foam Products.

19. Your sharing of any Price Increase Letter or other pricing information received from a Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products with any other Defendant, other supplier of Polyurethane Foam and/or Polyurethane Foam Products, or any of your customers.

20. Your receipt of price increase letters concerning raw materials for Polyurethane Foam and/or Polyurethane Foam Products from any supplier and the effects of such price increase letters on your costs of producing Polyurethane Foam and/or Polyurethane Foam Products, or prices paid for Polyurethane Foam and/or Polyurethane Foam Products.

21. Your use of Price Increase Letters with your customers for the Polyurethane Foam and/or Polyurethane Foam Products sold by you.

22. Your transactional prices from any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products or raw materials for Polyurethane Foam and/or Polyurethane Foam Products, including chemicals and scrap foam.

23. The Polyurethane Foam and/or Polyurethane Foam Products that have been sold by you or your company, the customers to whom the products were sold, the amount of product sold to each customer, and the prices paid by such customers for the products.

24. Any changes in your supplier(s) of Polyurethane Foam and/or Polyurethane Foam Products, or raw materials for Polyurethane Foam and/or Polyurethane Foam Products, and the reason(s) for such changes.

25. Your participation in any promotional programs, cooperative advertising programs, discount pass-through programs, or similar program offered by any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products.

26. The costs and methods of shipment, transportation, and/or delivery of Polyurethane Foam and/or Polyurethane Foam Products purchased by you.

27. Any formulas, indices, or other means of determining the prices or price ranges at which you or your company would buy Polyurethane Foam and/or Polyurethane Foam Products from any Defendant or other supplier, or sell such products to any customer.

28. Contracts, agreements, understandings or other arrangements, written or oral, between you and any Defendant or other suppliers governing or relating to the terms and conditions of sale and/or the purchase prices for Polyurethane Foam and/or Polyurethane Foam Products.

29. Any cost-plus, fixed mark-up, most favored nation, "market to market" price guarantee, bid support, or other price guarantee, price freeze, price support, or pricing concession, written or oral, between you and any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products, or given or offered by you to any of your customers for Polyurethane Foam and/or Polyurethane Foam Products.

30. Your method(s) for determining the price(s) to be quoted or charged to your customers for Polyurethane Foam and/or Polyurethane Foam Products, and the range of prices quoted or charged by you to your customers for substantially similar Polyurethane Foam and/or Polyurethane Foam Products.

31. Your efforts or undertakings to determine, confirm, check, or otherwise verify the competiveness of any price quoted to you by any Defendant or other supplier for Polyurethane Foam and/or Polyurethane Foam Products or raw materials for Polyurethane Foam and/or Polyurethane Foam Products.

32. Your monitoring, tracking, observation, or knowledge of prices for Polyurethane Foam and/or Polyurethane Foam Products.

33. Your monitoring, tracking, observation, or knowledge of prices for raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products.

34. Your purchase and/or sale of Polyurethane Foam and/or Polyurethane Foam Products pursuant to any competitive bid, auction, reverse auction, or similar process.

35. Your purchase and/or sale of raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products.

36. Your physical, chemical, performance, or other specifications or requirements for Polyurethane Foam and/or Polyurethane Foam Products purchased from any Defendant or other supplier.

37. Your purchase of fabricated and/or retail-ready products from any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products.

38. Your sale and pricing of fabricated and/or retail-ready products purchased from any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products.

39. Your advertising and promotion of Polyurethane Foam and/or Polyurethane Foam Products sold by you, including fabricated and retail-ready products.

40. Any of your advertising or promotional costs paid for by any Defendant or any other supplier of Polyurethane Foam and/or Polyurethane Foam Products.

41. Your investment in or ownership of any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products or in any supplier of raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products.

42. Your joint venture or cooperative activities with any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products, or with any supplier of raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products.

43. Any certification or other testing of Polyurethane Foam and/or Polyurethane Foam Products done by any Defendant or other supplier on your behalf.

44. Communications between you and any Defendant and/or other suppliers of Polyurethane Foam and/or Polyurethane Foam Products concerning the pricing, specifications, and/or availability of Polyurethane Foam and/or Polyurethane Foam Products.

45. Communications between you and any person or entity, in which any of the following subjects was referred to or discussed:

    a. a Price Increase Letter from any Defendant or other supplier for Polyurethane Foam and/or any Polyurethane Foam Products;

b. any correspondence or notice sent by a Defendant or other supplier regarding a price increase for Polyurethane Foam and/or any Polyurethane Foam Products;

c. any correspondence sent by a Defendant or other supplier regarding the increasing cost of raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

d. the timing or possibility of a future Price Increase Letter for Polyurethane Foam and/or Polyurethane Foam Products, or raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

e. prices to be charged in the future for Polyurethane Foam, Polyurethane Foam Products, or raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

f. the coordination of Price Increase Letters for Polyurethane Foam and/or Polyurethane Foam Products, or raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

g. the negotiation, acceptance, rejection, or reduction of a price increase for Polyurethane Foam and/or Polyurethane Foam Products or raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

h. the allocation of customers, territories, or sales areas for Polyurethane Foam and/or Polyurethane Foam Products, or the allocation of Polyurethane Foam and/or Polyurethane Foam Products;

i. an increase in the price of Polyurethane Foam and/or Polyurethane Foam Products;

j. an increase in the prices or costs of raw materials, including chemicals used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products;

k. a price increase for Polyurethane Foam and/or Polyurethane Foam Products, or raw materials for Polyurethane Foam and/or Polyurethane Foam Products that was yet to be publicly announced or published;

l. the effective date of a future price increase for Polyurethane Foam and/or Polyurethane Foam Products;

m. the business ramifications to you or your company of a price increase for Polyurethane Foam and/or Polyurethane Foam Products or raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

n. mutual customers for Polyurethane Foam and/or Polyurethane Foam Products;

      o.      market shares or changes in market shares for Polyurethane Foam and/or Polyurethane Foam Products; and/or

      p.      competitive conditions relating to the purchase and/or sale of Polyurethane Foam and/or Polyurethane Foam Products.

46. Communications concerning plans or instructions to contact any Person to obtain, provide, or exchange Price Increase Letters and/or other information about prices or price increases for Polyurethane Foam and/or Polyurethane Foam Products.

47. Memberships, participation, and/or other involvement in any trade or industry associations or organizations, buying or selling cooperatives, or similar organizations relating to Polyurethane Foam and/or Polyurethane Foam Products.

48. Competition between you and any of the Defendants in the sale of Polyurethane Foam and/or Polyurethane Foam Products, and the nature, results, and/or outcomes of the competitive situations.

49. The facts, documents, and other information you believe support your claims and allegations in this Action.

50. The persons with knowledge concerning the allegations in your Complaint and the facts you contend support those allegations.

51. The damages you claim to have suffered as a result of the events described in your Complaint and how those damages were calculated.

52. Any steps or actions that you have taken to mitigate the damages you claim, including the costs and benefits of taking such steps.

53. Any steps or actions you have taken to discover any of the activities alleged in this Action.

## CERTIFICATE OF SERVICE

      I hereby certify that on January 13, 2014, a copy of the foregoing Defendants' Amended Rule 30(b)(6) Deposition Notice to Plaintiff Somnus Mattress Corporation and the attached Exhibit A were served electronically on lead counsel for Plaintiffs pursuant to Paragraph 10 of this Court's January 20, 2011 Initial Case Management Conference Order, ECF No. 17, as well as counsel for Plaintiff Somnus Mattress Corporation.

                                                              /s/ Peter M. Ryan
                                                              Peter M. Ryan
                                                              Cozen O'Connor
                                                              1900 Market Street
                                                              Philadelphia, PA 19103-3508
                                                              Phone: (215) 665-2130
                                                              Fax:   (215) 701-2157
                                                              pryan@cozen.com