## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196 |
| This document relates to:<br><br>ALL CASES | Index No. 10 MD 2196 (JZ) |

### RESPONSES AND OBJECTIONS TO DEFENDANTS'
### NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)

Pursuant to Rules 26, 29, and 30 of the Federal Rules of Civil Procedure, the Order

Regarding Discovery Protocols (ECF No. 241), the Third Amended Scheduling Order (ECF No.

814) and other scheduling and/or case management orders entered by this Court, and all other

applicable orders or rules, including the Local Rules of the United States District Court for the

Northern District of Ohio ("Local Civil Rules"), defendants Vitafoam, Inc., Vitafoam Products

Canada Limited, and British Vita Unlimited (collectively, "Vitafoam Defendants"), by and

through counsel, hereby respond and object to the "Notice of Deposition Pursuant to Rule

30(b)(6) to Vitafoam, Inc., Vitafoam Products Canada Limited and British Vita Unlimited"

("30(b)(6) Notice") propounded by Defendants Carpenter Co.; E.R. Carpenter, L.P.; Carpenter

Holdings, Inc.; Foamex Innovations, Inc.; Flexible Foam Products, Inc.; and Future Foam, Inc.

(collectively, "Noticing Defendants") dated January 8, 2014:

### GENERAL OBJECTIONS

1.      The following general objections ("General Objections") apply to the 30(b)(6)

Notice and to each of the Areas of Examination set forth in Exhibit A thereto ("Topics"), and are

incorporated by reference into each response made herein.  Assertion of the same, similar, or additional objections in response to a specific Topic does not waive any of these General Objections.

2.      Vitafoam Defendants object that the 30(b)(6) Notice is defective because it is not directed to a single entity as required by Rule 30(b)(6).

3.      Vitafoam Defendants object to the 30(b)(6) Notice on the ground that requiring the deposition of a corporate representative of Vitafoam Defendants at this stage of the litigation is contrary to the discovery plan set forth in the Court's scheduling and case management orders, including the Third Amended Scheduling Order (ECF No. 814) and prior scheduling and case management orders.

4.      Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that conducting the deposition may interfere with or would pose a risk of interference with ongoing government investigations, including investigation(s) by the United States Department of Justice, Antitrust Division ("DOJ").

5.      Vitafoam Defendants object to the 30(b)(6) Notice to the extent that it attempts to "track" a government investigation because such discovery is contrary to the interests of justice and expressly prohibited by the Order and Stipulated Discovery Plan filed February 24, 2011 (ECF No. 44) (the "DOJ Agreement.  Deposition of a representative of Vitafoam Defendants concerning the Topics should be stayed unless and until Noticing Defendants have consulted with, and obtained input and/or consent from, the DOJ.

6.      Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that that the Topics seek information that is protected by principles of grand jury secrecy (including Fed. R. Crim. P. 6(e)).  Absent a Court Order permitting disclosure of protected information, educating a corporate representative and/or providing testimony concerning certain topics may subject Vitafoam Defendants and other entities to criminal contempt or to criminal prosecution.

7.      Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that it seeks information protected by any privilege, immunity or protection against disclosure. Privileges, immunities and protections implicated by the Topics in the 30(b)(6) Notice include (without limitation):   attorney-client privilege; attorney work product doctrine; protections against disclosure of grand jury material (including pursuant to Fed. R. Crim. P. 6(e)); protections against disclosure of settlement-related materials, negotiations between adversary parties, and offers to compromise (including pursuant to Fed. R. Evid. 408); privileges and protections applicable to disclosure of required reports; privileges and protections applicable to disclosure of information related to investigations by governmental entities (including law enforcement agencies); privileges or protections applicable to confidential matter disclosed under compulsion or duress; and Constitutional privileges including the privilege against self-incrimination.   Vitafoam Defendants reserve the right to assert any applicable privilege, protection or immunity from disclosure derived from any authority (whether constitutional, statutory, judicial, common law, or otherwise) of the United States or any state or any other jurisdiction.

8.      Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that the Topics set forth therein pertain to matters not known to Vita Defendants, including to the

extent that the Topics seek non-privileged information that is known to or in the possession of counsel and not of Vita Defendants.  Vitafoam Defendants object to the 30(b)(6) notice to the extent a response would require testimony by counsel for Vita Defendants (or by a witness educated as to knowledge solely in the possession of counsel) on the ground that such discovery would impose undue hardship on Vita Defendants because it implicates rules or standards of conduct prohibiting lawyers acting as witnesses and the Noticing Defendants have neither shown exigent need for the information requested nor demonstrated that the same information cannot be obtained from any other source.

9.      Vitafoam Defendants object to the 30(b)(6) Notice to the extent that it seeks information concerning Vitafoam Defendants' cooperation with Plaintiffs and/or government authorities on the grounds that (i) the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, § 213, 118 Stat. 661, 665 (June 22, 2004) ("ACPERA"),  does not require an amnesty applicant to cooperate with co-defendants and/or alleged co-participants in alleged unlawful activity; and (ii) the provisions of ACPERA that impose obligations of cooperation with, *inter alia*, civil plaintiffs and the government (but not co-defendants and/or alleged co-participants) protect against compulsory disclosure of information provided in the context of such cooperation that is otherwise not discoverable under the Federal Rules of Civil Procedure.

10.      Vitafoam Defendants object to the 30(b)(6) Notice on the grounds that it is overly broad and unduly burdensome because it seeks testimony concerning essentially all ultimate issues in this Action, both factual and legal.  Notwithstanding the other General Objections and Specific Responses and Objections stated herein, Vitafoam Defendants object that the burden of preparing a witness to testify concerning the Topics set forth in the notice would require

enormous time and expense, and that the burden of imposing such time and expense on the Vitafoam Defendants far outweighs the potential benefit of the discovery sought.

11.     The Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that the date and location set forth in the Notice are unreasonable, inconvenient and impracticable, and further object to the 30(b)(6) notice to the extent it purports to require more than 7 hours of testimony from any designated witness or witnesses.  (However, the Vitafoam Defendants note that Noticing Defendants have offered to discuss alternative dates and locations. Vita Defendants and propose to address these issues during discussions with Noticing Defendants.)

12.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground that Noticing Defendants have had ample opportunity to obtain the information requested – and have in fact obtained some or all of the requested information – at earlier stages of this Action or through alternative means in this Action and otherwise, including:  depositions of individuals employed by or formerly employed by Vitafoam; written discovery; and by discovery and other disclosures in this Action and other actions involving the same or similar parties and related subject matter such as the *Urethane Antitrust Litigation*, MDL No. 1616 (D. Kan.) (including the deposition of a corporate representative of Vitafoam Defendants in that case).

13.     Vitafoam Defendants object to the 30(b)(6) Notice to the extent that the discovery sought is unreasonably cumulative and duplicative of:  (i) written discovery propounded upon Vitafoam Defendants by parties to this Action and the Vitafoam Defendants' responses thereto; (ii) documents and information produced or provided by Vitafoam Defendants pursuant to civil discovery requests and/or other requests for information in this or other Actions that is already in

the possession of, or available to, the Noticing Defendants; and (iii) information provided by Vitafoam to the Noticing Defendants, individually or collectively, during preparation of arguments, defenses, motions or other court papers submitted jointly on behalf of multiple defendants in this Action.

14.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground that it exceeds the limitations on extent of permissible discovery in that it seeks information that can be obtained in a more convenient, less burdensome, and/or less expensive manner.  Vitafoam Defendants intend to meet and confer with the Noticing Defendants to discuss possible alternative discovery methods such as stipulations as to undisputed facts, requests for admission, depositions on written questions, or other devices that are less burdensome and that pose a lower risk of intruding upon essential privileges.

15.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground that the burden and expense of the requested discovery outweighs any likely benefit that would be derived therefrom.

16.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that the Topics do not describe matters for examination with the particularity required by Rule 30(b)(6).

17.     Vitafoam Defendants object to the 30(b)(6) Notice to the extent that it is vague and/or ambiguous, and further object to the 30(b)(6) Notice to the extent that it unreasonably requires Vitafoam Defendants to speculate as to the nature or scope of information sought by the Notice or described in the Topics.

18.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that it seeks to impose requirements or obligations that are inconsistent with or broader than those imposed by the Federal Rules of Civil Procedure, the Order Regarding Discovery Protocols (ECF No. 241), the Third Amended Scheduling Order (ECF No. 814) and other operative orders or rules.

19.      Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that it implies the existence of facts or circumstances that do not or did not exist.  Nothing in these Responses and Objections shall be construed as an admission of the factual premise(s) of any Topic.

20.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that it states or assumes legal conclusions.  Nothing in these Responses and Objections shall be construed as an admission of the legal premise(s) of any Topic.

21.     Vitafoam Defendants object to the 30(b)(6) Notice on the ground and to the extent that it seeks information that is neither relevant to the claims or defenses of any party to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

22.     Vitafoam Defendants reserve the right to supplement and/or amend these Responses and Objections to the extent required or permitted by, the Federal Rules of Civil Procedure and any other applicable law, rule or order.

## OBJECTIONS TO DEFINITIONS

1.     Vitafoam Defendants object to Definitions Nos. 2, 3 and 6 on the grounds that they are vague, ambiguous, overly broad, and unduly burdensome to the extent that they seek to

require Vitafoam Defendants to identify, or to speculate as to the identity of, particular plaintiff or defendant entities "and their respective predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators."

2.      Vitafoam Defendants object to Definitions Nos. 7 and 8 to the extent that they are vague, ambiguous, overly broad and unduly burdensome to the extent that the purport to incorporate by reference definitions of the terms "polyurethane foam," "flexible polyurethane foam," "flexible polyurethane foam products," and "polyurethane foam products" from any and all Complaints filed by plaintiffs, including Direct Action Plaintiffs, in this Action.

3.      Vitafoam Defendants object to Definition No. 10 to the extent that it is vague, ambiguous, overly broad and unduly burdensome insofar as it purports to require Vitafoam Defendants to identify, or to speculate as to the identity of, all "predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators" of the entities to whom the 30(b)(6) Notice is directed.

## RESPONSES AND OBJECTIONS TO AREAS OF EXAMINATION

## Topic No. 1

Your manufacture of Polyurethane Foam or Polyurethane Foam Products in the United States or any of its territories since January 2006.

**Response**

Vitafoam Defendants incorporate each of the foregoing General Objections and Objections to Definitions as if set forth herein.  Vitafoam Defendants further object that Topic No. 1 is overbroad and unduly burdensome insofar as information concerning this Topic is readily determined by reference to information already in the possession of the Noticing Defendants.  Vitafoam Defendants object that that the information sought by Request No. 1 may be more efficiently obtained through other methods of discovery, and, without waiving the foregoing objections, propose to meet and confer with the Noticing Defendants to determine with greater specificity what is sought and to discuss mutually acceptable alternative form(s) of response.

**Topic No. 2**

Vitafoam Products Canada Limited['s] manufacture of Polyurethane Foam or Polyurethane Foam Products in the United States or any of its territories during the Relevant Time Period.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 1, except that references to "Topic No. 1" therein are replaced with "Topic No. 2."

**Topic No. 3**

Vitafoam Products Canada Limited's sales of Polyurethane Foam and Polyurethane Foam Products to customers located in the United States or any of its territories during the Relevant

Time Period and their percentage of Vitafoam Products Canada Limited's total sales of Polyurethane Foam and Polyurethane Foam Products during the Relevant Time Period.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 1, except that references to "Topic No. 1" therein are replaced with "Topic No. 3."

**Topic No. 4**

Your investigation of any agreement(s), contract(s), combination(s), understanding(s), conspiracy(ies), "tacit understandings," or possible tacit understandings related to the sale of Polyur[e]thane Foam and Polyurethane Foam Products during the Relevant Time Period, between or involving Vitafoam, Inc., or Vitafoam Products Canada Limited, and any of the Defendants in this action.

**Response**

Vitafoam Defendants incorporate each of the foregoing General Objections and Objections to Definitions as if set forth herein.  Vitafoam Defendants further object to Topic No. 4 on the grounds that it is overly broad, unduly burdensome, duplicative of prior discovery in this action, and not described with the particularity required under Rule 30(b)(6).  Moreover, Vitafoam Defendants object that the information sought by Topic No. 4 is protected against disclosure by attorney-client privilege, work product doctrine, and other applicable privileges and protections to the extent that it seeks information concerning investigations by Vitafoam Defendants, their counsel, representatives of government agencies, or any combination thereof.

**Topic No. 5**

The factual basis for your substantive responses to Plaintiffs' requests for admission in this Action and the additional statements and information included with same.

**Response**

Vitafoam Defendants incorporate each of the foregoing General Objections and Objections to Definitions as if set forth herein.  Vitafoam Defendants further object to Topic No. 5 on the grounds that it is overly broad, unduly burdensome, duplicative of prior discovery in this action, and not described with the particularity required under Rule 30(b)(6), in particular because Topic No. 5 refers generally to all of Vitafoam Defendants' numerous responses to Plaintiffs' discovery requests.  Vitafoam Defendants object that the information sought by Topic No. 5 is protected against disclosure by attorney-client privilege, work product doctrine, and other applicable privileges and protections.

**Topic No. 6**

Your interrogatory responses in this action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 6."

**Topic No. 7**

Your cooperation with Plaintiffs in this Action, including without limitation the details of any proffers and presentations made to Plaintiffs.

**Response**

Vitafoam Defendants incorporate each of the foregoing General Objections and Objections to Definitions as if set forth herein.  Vitafoam Defendants object that Topic No. 7 seeks information protected against disclosure by attorney-client privilege, work product doctrine, ACPERA, Fed. R. Civ. P. 408, privileges and protections applicable to confidential government investigations and/or proceedings, and other applicable privileges or protections. Vitafoam Defendants further object to Topic No. 7 on the grounds that it is overly broad, unduly burdensome, duplicative of prior discovery in this action, and not described with the particularity required under Rule 30(b)(6).  Vitafoam Defendants object that the information sought by Topic No. 7, to the extent any responsive non-privileged information exists, is solely in the possession or knowledge of counsel, and on that basis that requiring testimony concerning this topic as described would unreasonably threaten attorney-client privilege and work-product protections and threaten undue burdens that would follow from violation of the lawyer-as-witness rule.

**Topic No. 8**

The statements and information contained in any objections, responses, pleadings and/or motions you file concerning this deposition notice and the areas of examination listed in Exhibit A.

**Response**

Vitafoam Defendants object to Topic No. 8 on the grounds that it is overly broad, unduly burdensome, ignorant of privileges and other applicable protections, and not described with the

particularity required under Rule 30(b)(6) because it purports to require testimony concerning statements or events not yet in existence.

## Topic No. 9

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and any Defendant during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

## Response

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 9."

## Topic No. 10

Based on your investigation to date, your knowledge of any sales of Polyurethane Foam and/or Polyurethane Foam Products by you to customers located in the United States or any of its territories during the Relevant Time Period were made [sic] pursuant to or subject to any

agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and any Defendant to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 10." Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 11**

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between any of the Defendants during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or

Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 11."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 12**

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Carpenter Co., E.R. Carpenter, L.P., Carpenter Holdings, Inc. or any of their parents, subsidiaries, affiliates, employees or agents in or affecting the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 12."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 13**

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Flexible Foam Products, Inc. or any of its parents, subsidiaries, affiliates, employees or agents in or affecting the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 13."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

## Topic No. 14

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Foamex Innovations, Inc. or any of its parents, subsidiaries, affiliates, employees or agents in or affecting the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

## Response

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 14."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

## Topic No. 15

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Foamex International, Inc., Foamex L.P. or any of their parents, subsidiaries, affiliates, employees or agents in or affecting

the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 15."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 16**

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Future Foam, Inc. or any of its parents, subsidiaries, affiliates, employees or agents in or affecting the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States

or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 16."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 17**

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Hickory Springs Manufacturing Company or any of its parents, subsidiaries, affiliates, employees or agents in or affecting the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser

Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 17."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 18**

Based on your investigation to date, your knowledge of any agreement(s), contract(s), combination(s), understanding(s), or conspirac(ies) between you and Woodbridge Foam Corporation, Woodbridge Sales & Engineering, Inc., or Woodbridge Foam Fabricating, Inc. or any of their parents, subsidiaries, affiliates, employees or agents in or affecting the United States or any of its territories during the Relevant Time Period to fix, raise, maintain, coordinate and/or stabilize prices of Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to allocate customers, geographic markets, sales volume, market shares, contracts, and/or accounts for Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; to control or reduce the output and/or capacity to produce Polyurethane Foam and/or Polyurethane Foam Products in the United States or any of its territories; and/or to engage in any other anticompetitive and/or unlawful activities in the Unites States or any of its territories alleged in the Direct Purchaser Class Complaint, Indirect Purchaser Class Complaint, or any Direct Action Plaintiff's complaint filed in this Action.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 18."  Vitafoam Defendants further object that this Topic is duplicative of Topic No. 9.

**Topic No. 19**

Based on your investigation to date, your knowledge of any communications regarding prices or price increases for Polyurethane Foam and/or Polyurethane Foam Products between you and any Defendants.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 19."

**Topic No. 20**

Based on your investigation to date, your knowledge of any exchange of information regarding prices or price increases for Polyurethane Foam and/or Polyurethane Foam Products between you and any Defendants.

**Response**

Vitafoam Defendants incorporate by reference the Response to Topic No. 5, except that references to "Topic No. 5" therein are replaced with "Topic No. 20."

Dated:  January 25, 2014                   Respectfully submitted,

                                           /s/ Wesley M. Mullen_____
                                           Wesley M. Mullen
                                           FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                           601 Lexington Avenue
                                           New York, NY 10022
                                           Phone:  (212) 230-4680
                                           E-mail: wesley.mullen@freshfields.com

                                           Timothy J. Coleman
                                           Bruce McCulloch
                                           FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                           701 Pennsylvania Avenue, NW
                                           Suite 600
                                           Washington, DC 20004-2692
                                           Phone: (202) 777-4500

                                           *Counsel for Vitafoam Defendants*

*Of Counsel*:
Robert J. Gilmer, Jr.
Christine Laciak

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2014, a copy of the foregoing was served upon all counsel of record indicated in the filing receipt by filing with the Court's ECF system.  I further certify that on this date a copy of the foregoing was served on counsel for Noticing Defendants by email.

                                           /s/ Wesley M. Mullen_____
                                           Wesley M. Mullen