# UNITED STATES DISTRICT COURT

for the
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re POLYURETHNE FOAM ANTITRUST LITIGATION | ) ) ) ) | MDL Docket No. 2196 Index No. 10-MD-2196 (JZ) |
| | | (Currently Pending In The U.S. District Court For The Northern District Of Ohio) |
| This document relates to: ALL CASES | ) ) ) ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Aearo Technologies LLC d/b/a E-A-R Specialty Composites
c/o CT Corporation System, Registered Agent
251 E. Ohio St., Suite 1100
Indianapolis, Indiana 46204

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: **(See Schedule A)**

| Place:  Faegre Baker Daniels LLP 2200 Wells Fargo Center, 90 South 7th Street Minneapolis, MN 55402 | Date and Time:  February 6, 2014 at 9:00 a.m. |
|---|---|

The deposition will be recorded by this method:   ___Stenographically and videographer___

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: **(See Schedule A)**

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   __January 27 2014__

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

_/s/  Heather Adams_
*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing Defendants, who issues or requests this subpoena, are:  Alston & Bird LLP, 4721 Emperor Blvd., Suite 400,  Durham, NC 27703,  919-862-2200, heather.adams@alston.com

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____.

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____; or

❒ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# SCHEDULE A

## A.    DEFINITIONS

For purposes of this subpoena duces tecum and Schedule, the following words and phrases shall have the meanings set forth below whenever used in any Definition, Instruction, Area of Examination, or Request for Production:

1.    "Action" refers to the lawsuits that are currently consolidated and pending for pretrial purposes in the United States District Court for the Northern District of Ohio, Western Division as part of *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ.

2.    "All" shall be construed to include the collective as well as the singular, and means "each," "any," and "every."

3.    "And/or" shall be read in the disjunctive, conjunctive, or both, as the case may be, consistent with an interpretation that results in the more extensive response.

4.    "Between" means "among," and vice-versa.

5.    "Communication," or any variant thereof, means the transmittal or attempted transmittal of information or knowledge between persons whether oral, written, electronic or otherwise; whether in-person or telephonic; whether direct or through an intermediary.

6.    "Concerning" and "concern," in all forms, tenses, and conjugations, mean relating to, referring to, describing, evidencing, or constituting the referenced matter.

7.    "Date" means the exact day, month and year, if ascertainable, or the best available approximation, including any relationship to other known events (designate whether exact or approximate).

8.    "Defendants" means each Defendant identified in the Direct Purchaser Class Complaint and/or any Direct Action Plaintiff's complaint in the Action and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

9. "Direct Action Plaintiff(s)" means each Direct Purchaser Plaintiff that filed a standalone complaint in the Action and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

10. "Direct Purchaser Class Complaint" refers to the document styled "Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint" filed on February 28, 2011 in *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ (N.D. Ohio).

11. "Direct Purchaser Class Member(s)" means any person(s) that are not currently named in the Direct Purchaser Class Complaint, but are potential members of the putative class that Direct Purchaser Class Plaintiffs purport to represent, and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

12. "Direct Purchaser Class Plaintiff(s)" means each Plaintiff identified in the Direct Purchaser Class Complaint and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

13. "Document" is coextensive with the meanings of the terms "document" and "electronically stored information" in Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, any writing, notes, photograph, chart, graph, film, video tape, audio tape, computer disk or electronically stored information (including electronic e-mail) which is in your actual or constructive possession, custody or control, and includes, without limitation, all originals, copies, drafts (sent or unsent) or other non-conforming copies of every kind.

14.     "Identify" and "identity," when referring to a natural person, each mean documents sufficient to show the person's full name, present or last known residential address, social security number, and present or last known place of employment.

15.     "Including" is used to emphasize certain types of information requested and should not be construed as limiting any Area of Examination or Request for Production in any way.

16.     "Indirect Purchaser Class Complaint" refers to the document styled "Indirect Purchasers' Corrected Second Amended Class Action Complaint" filed on May 7, 2012 in *In re Polyurethane Foam Antitrust Litigation,* Case No. 1:10-md-02196-JZ (N.D. Ohio).

17.     "Indirect Purchaser Class Member(s)" means any person(s) that are not currently named in the Indirect Purchaser Class Complaint, but are potential members of the putative class that Indirect Purchaser Class Plaintiffs purport to represent, and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

18.     "Indirect Purchaser Class Plaintiff(s)" means each Plaintiff identified in the Indirect Purchaser Class Complaint and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

19.     "Performance Requirement" means any specification, drawing, description, testing requirement or protocol, sample or design applicable to Polyurethane Foam and/or Polyurethane Foam Products.

20.     "Person" or "persons" means all natural persons or entities, including, without limitation, any individual, employee, firm, association, organization, partnership, business, trust, corporation, team, group, or other entity of any nature whatsoever.

21. "Polyurethane Foam" means any type, grade or form of "flexible polyurethane foam" and "flexible polyurethane foam products" as those terms are defined and used in the Direct Purchaser Class Complaint, and includes, without limitation, slabstock and molded polyurethane foam, as those terms are used and defined in the Direct Purchaser Class Complaint.

22. "Polyurethane Foam Products" means any product containing Polyurethane Foam as those terms are used and defined in the Direct Purchaser Class Complaint, including carpet cushion or carpet underlay products.

23. "Price Increase Letter" means any communication or document containing or reflecting an announcement or notification of a price increase for any Polyurethane Foam and/or Polyurethane Foam Products.

24. "Purchase," both when used as a noun and when used as a verb, in all forms, tenses, and conjugations, includes offers to purchase.

25. "Relating to," "referring to," "regarding," "with regard to," and/or "with respect to," in all forms, tenses, and conjugations, mean(s), without limitation, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, embodying, identifying, constituting, concerning, containing, contradicting, mentioning, stating, evidencing, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

26. "Relevant Time Period" means the period of January 1, 1999 through the present.

27. "Sale" or "sell," in all forms, tenses, and conjugations, includes offers to sell.

28. "Trade Group" means any trade, professional, industry, business, purchasing, selling, or research association, organization, cooperative, or group relating to Polyurethane Foam and/or Polyurethane Foam Products.

29. "You," "your," "your company" and similar terms means Aearo Technologies LLC d/b/a E-A-R Specialty Composites and all predecessors, successors, parent organizations, subsidiaries, affiliates, insurers and assigns, and the respective representatives of each of them, and includes, without limitation, their respective officers, directors, members, principals, employees, agents, attorneys, consultants and investigators, and all persons acting or purporting to act on behalf of any of them for any purpose whatsoever.

**B.      INSTRUCTIONS**

In addition to the requirements of the Federal Rules of Civil Procedure, which are incorporated in this Schedule, each of the following instructions applies to each Area of Examination and Request for Production contained in this Schedule as if set forth separately in full in that Area of Examination or Request for Production.

1.      You should construe each Area of Examination and Request for Production contained in this Schedule as follows:

        a.      the singular includes the plural and the plural includes the singular;

        b.      the masculine, feminine, or neuter pronoun includes the other genders; and

        c.      the present tense of a verb includes its past tense, and vice-versa.

2.      In producing documents, you are to furnish all documents in your possession, custody, or control, regardless of the physical location of the documents.

3.      All documents that respond in whole or in part to any portion of any Request for Production are to be produced in their entirety, including all attachments and enclosures.  Documents attached to each other, and e-mail messages and their attachments, should not be separated.

4.      All documents shall be produced in the same order as they are kept or maintained by you in the ordinary course of your business.

5.      In compliance with Rule 26(b)(5) of the Federal Rules of Civil Procedure and the ESI Order, for each document or other requested information asserted to be protected from discovery by a privilege or other exclusion, please provide a detailed privilege log.

6.      If you assert privilege with respect to part of a responsive document, redact the privileged portion and identify such document on your privilege log in accordance with the ESI Order and the Federal Rules of Civil Procedure.

7.      If any responsive documents have been destroyed, identify all such documents and state when the documents were destroyed and why, and identify all persons who participated in the destruction of the documents and/or were involved in the decision to destroy the documents.

8.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests for Production shall be deemed to be continuing in nature so that if you discover or obtain possession, custody, or control of any document previously requested or required to be produced, you shall promptly make such document available.  Each supplemental response shall be served on Defendants no later than 30 days before the first day of trial (currently scheduled for October 1, 2014), absent leave of Court.

9.      If you object to any part of these Requests for Production, please (a) state each objection you assert in sufficient detail to permit the Court to determine the validity of the objection; and (b) produce all responsive documents to which your objection does not apply.

C.      **AREAS OF EXAMINATION**

You are requested to designate to Defendants, at least ten (10) days prior to the deposition, one or more officers, directors or other individuals who consent to testify on your behalf, and provide all information known or reasonably available to you, as the person most knowledgeable, with respect to the following subjects for the Relevant Time Period:

1.      The statements and information contained in any objections, responses, pleadings, and/or motions you file or serve concerning this subpoena duces tecum and Schedule, including without limitation the Definitions, Instructions, Areas of Examination, and Requests for Production contained in this Schedule.

2.      Your document production in response to this subpoena duces tecum and Schedule, including without limitation the Requests for Production contained in this Schedule.

3.      Your document retention practices, policies, and procedures.

4.      Your search for documents and other materials responsive to this subpoena duces tecum and Schedule, including without limitation the Requests for Production contained in this Schedule.

5.      The history, corporate structure, organization, ownership, executive leadership, and management structure of your company.

6.      The identity and employment history of any management or supervisory person currently or formerly employed by your company whose employment related to the manufacture, purchase, fabrication, use, and/or sale of Polyurethane Foam and/or Polyurethane Foam Products.

7.	The nature and geographic scope of your company's business operations, and the location, size, scope, organization, function, and purpose of your business locations or units.

8.	Your annual sales of Polyurethane Foam and/or Polyurethane Foam Products.

9.	Your production of Polyurethane Foam and/or Polyurethane Foam Products, including without limitation:

    a.	the Polyurethane Foam and/or Polyurethane Foam Products poured, fabricated, or otherwise manufactured or produced by you;

    b.	the number and location(s) of plants or facilities operated by you, in whole or in part, for the pouring, fabrication, manufacture, and/or production of Polyurethane Foam and/or Polyurethane Foam Products;

    c.	your capacity for the pouring, manufacture, and/or production of Polyurethane Foam, including without limitation the Polyurethane Foam pouring capacity of each plant or facility operated by you;

    d.	your capacity for the manufacture and/or production of Polyurethane Foam Products, including without limitation the Polyurethane Foam fabrication capacity of each plant or facility operated by you;

    e.	your use of Polyurethane Foam and/or Polyurethane Foam Products fabrication methods and processes;

    f.	the quantity of Polyurethane Foam poured, manufactured, and/or produced by you;

    g.	the quantity of Polyurethane Foam sold by you;

    h.	your costs of pouring, manufacture, and/or production of Polyurethane Foam;

    i.	the quantity of Polyurethane Foam Products manufactured, produced, and/or fabricated by you;

    j.	the quantity of Polyurethane Foam Products sold by you;

    k.	your costs of manufacture, production, and/or fabrication of Polyurethane Foam Products;

10.	The financial performance of your company.

11.     Any lawsuits, claims, or complaints claiming antitrust violations, injury to competition, or unfair competition in which you have been involved or named as a party.

12.     The companies or suppliers from which you purchased Polyurethane Foam and/or Polyurethane Foam Products, the products purchased, and the quantities, prices, terms and conditions of sale, including any contracts governing prices or the terms and conditions of sale.

13.     Your suppliers of raw materials for Polyurethane Foam and/or Polyurethane Foam Products, including chemicals and scrap foam.

14.     Potential suppliers to you of Polyurethane Foam and/or Polyurethane Foam Products.

15.     Your negotiations with, purchases from, and purchase prices quoted or received from any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products.

16.     Your receipt of Price Increase Letters concerning Polyurethane Foam and/or Polyurethane Foam Products from any Defendant or other supplier and the effects of such Price Increase Letters on the prices offered to or paid by you for Polyurethane Foam and/or Polyurethane Foam Products.

17.     Your sharing of any Price Increase Letter or other pricing information received from a Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products with any other Defendant, other supplier of Polyurethane Foam and/or Polyurethane Foam Products, or any of your customers.

18.     Your receipt of price increase letters concerning raw materials for Polyurethane Foam and/or Polyurethane Foam Products from any supplier and the effects of such price increase letters on your costs of producing Polyurethane Foam and/or Polyurethane Foam Products, or prices paid for Polyurethane Foam and/or Polyurethane Foam Products.

19.     Your use of Price Increase Letters with your customers for the Polyurethane Foam and/or Polyurethane Foam Products sold by you.

20.     The costs and methods of shipment, transportation, and/or delivery of Polyurethane Foam and/or Polyurethane Foam Products produced, sold, and/or purchased by you.

21.     Your method(s) for determining the price(s) to be quoted or charged to your customers for Polyurethane Foam and/or Polyurethane Foam Products, and the range of prices quoted or charged by you to your customers for substantially similar Polyurethane Foam and/or Polyurethane Foam Products.

22.     Your monitoring, tracking, observation, or knowledge of prices for Polyurethane Foam and/or Polyurethane Foam Products.

23.     Your monitoring, tracking, observation, or knowledge of prices for raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products.

24.     Your purchase and/or sale of raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products, including without limitation the raw materials purchased and/or sold, and the quantities, prices, terms and conditions of purchase and/or sale, including any contracts governing prices or the terms and conditions of purchase and/or sale.

25.     Your advertising and promotion of Polyurethane Foam and/or Polyurethane Foam Products sold by you, including fabricated and retail-ready products.

26.     Your plans, inquiries, considerations, or investigations of entry or possible entry into any geographic, industry, and/or customer market(s) for the production and sale of Polyurethane Foam and/or Polyurethane Foam Products.

27.     Any certification or other testing of Polyurethane Foam and/or Polyurethane Foam Products done by any Defendant or other supplier on your behalf.

28.     Competition between you and any of the Defendants in the sale of Polyurethane Foam and/or Polyurethane Foam Products, and the nature, results, and/or outcomes of the competitive situations.

## D. REQUESTS FOR PRODUCTION

*With respect to the following Requests for Production, please provide documents* **sufficient to show and/or identify, for and/or during the Relevant Time Period**:

1. the history, corporate structure, organization, ownership, executive leadership, and management structure of your company;

2. your joint venture or cooperative activities with any Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products, or with any supplier of raw materials, including chemicals and scrap foam, used in the manufacture of Polyurethane Foam and/or Polyurethane Foam Products;

3. your document retention and/or destruction policies, procedures, and practices, as well as documents sufficient to show and identify any departure or variance from your policies, procedures, and practices related to the retention and/or destruction of documents that would otherwise be called for by this subpoena and Schedule, including without limitation the Requests for Production contained in this Schedule;

4. your antitrust policy and any antitrust training, guidelines, presentations, seminars, programs, memoranda, or other documents relating to antitrust compliance procedures at your company;

5. the following information with regard to each and every purchase of Polyurethane Foam and/or Polyurethane Foam Products by you or on your behalf:

   a. the name, number, and address of the supplier from which you purchased;

   b. the terms of sale, including without limitation any contracts or other agreements related to the sale;

   c. the date of such purchase;

<blockquote>

    d.      the type of the Polyurethane Foam and/or Polyurethane Foam Products purchased, including any brand name(s) and/or trade name(s), any SKU and/or product numbers;

    e.      the grade of the Polyurethane Foam purchased;

    f.      the quantity of the Polyurethane Foam purchased and the applicable units (*e.g.*, tons, metric tons, pounds, kilograms, board feet, etc.);

    g.      the country, state, city, and ZIP or postal code for the "ship from" location;

    h.      the country, state, city, and ZIP or postal code for the "purchased from" location;

    i.      the country, state, city, and ZIP or postal code for the "ship to" location;

    j.      the intended and/or actual use of the Polyurethane Foam and/or Polyurethane Foam Products purchased;

    k.      freight and transportation charges;

    l.      the price paid, including list price, gross price, net price, unit price, negotiated price, and total price, and the applicable currency;

    m.      any rebates, discounts, allowances, credits, chargebacks, freight allowances, or other incentives offered to or received by you in connection with the purchase, including promotional allowances, sales programs, contests, and credit and/or payment terms; and

    n.      the purchase order and invoice number, and all other documents reflecting or recording the purchase;

6.    the following information with respect to each and every sale by you of

Polyurethane Foam and/or Polyurethane Foam Products:

    a.      Customer information

          1)      bill-to customer name and IDs, including address;

          2)      ship-to customer name and IDs, including address; and

          3)      account numbers for the bill-to and ship-to customers;

    b.      Product information

          1)      SKU or other ID(s) used to identify products;

</blockquote>

2)      product family ID(s) for each product;

3)      any other level of aggregation regularly used in the ordinary course of business on the party's respective systems, if any;

4)      units/number sold; and

5)      unit of measure for each product;

c.      Contracts or other agreements related to the sale

d.      Price and discount/rebate information

1)      list and net price per product unit;

2)      any rebates, discounts, allowances, credits, chargebacks, freight allowances, promotions or other incentives or reductions in price or payments offered by you in connection with the sale, including promotional allowances, sales programs, contests and credit and payment terms;

3)      for each discount, rebate, allowance, credit, chargeback or other program, promotion, incentive or contest identified in 3(b), the customer, date, description, amount and if appropriate, transaction number;

4)      whether the discount, rebate, allowance, credit, chargeback or other program, promotion, incentive or contest identified in 3(b) and 3(c) are on-invoice or off-invoice incentives; and

5)      the gross and net revenues, gross and gross and net margins and net profits from your sales of Polyurethane Foam and/or Polyurethane Foam Products;

e.      Invoice information

1)      invoice number;

2)      invoice date; and

3)      any non-item-specific discounts, rebates, allowances, or other promotions, programs or means used to incentivize purchasers through on-invoice lowered prices;

f.      cost of goods sold ("COGS");

g.      monthly and quarterly standard cost per product;

h.      labor costs;

          i.        materials costs;

          j.        selling, general, and/or administrative expenses;

          k.        transportation costs;

          l.        any other regularly tracked or reported costs not identified above; and

          m.        the cost of Polyurethane Foam as a percentage (or other measure) of the total cost of manufacture and total cost of goods sold of any Polyurethane Foam Products that you sold;

7.        the bill of materials (including any costed bill of materials) for any Polyurethane Foam and/or Polyurethane Foam Product sold by you, or other documents identifying the components of and/or inputs for the product, together with all standardized costs and/or other assumptions or factors that are incorporated, reflected, and/or utilized in the bill of materials;

8.        the financial impact of a change in price to you of Polyurethane Foam and/or Polyurethane Foam Products on the price of any product or item sold by you, as well as the impact on your overall revenues, margins, and net profits;

9.        your sources of scrap Polyurethane Foam; and

10.        the products and services manufactured, offered, sold or distributed by you.

*    *    *

*With respect to the following Requests for Production, please provide **all documents that concern, embody, refer to, relate to, reflect, and/or identify, for and/or during the Relevant Time Period**:*

11.        documents that you have produced or provided to any other party in this Action or any other litigation involving Polyurethane Foam and/or Polyurethane Foam Products;

12.        documents concerning any investigation and/or other activities by the United States Department of Justice Antitrust Division or other governmental and/or regulatory authorities, whether federal, state, or local, domestic or foreign, concerning Polyurethane Foam,

Polyurethane Foam Products, and/or raw materials for Polyurethane Foam and/or Polyurethane Foam Products;

13.　　documents relating to, referring to, and/or received from the litigation styled *In re Urethane Antitrust Litigation*, Civil Action Nos. 2:04-md-01615-JWL-JPO 08-2617, 09-2020, 10-2077, in the United States District Court for the District of Kansas;

14.　　any legal complaint filed by you or on your behalf relating to claims of collusion, antitrust violations, unfair trade practices or competition, consumer fraud, and/or restraint of trade in connection with the purchase or sale of any product or service, including Polyurethane Foam and/or Polyurethane Foam Products;

15.　　communications between you and any Direct Purchaser Class Plaintiff, Indirect Purchaser Class Plaintiff, Direct Action Plaintiff, Direct Purchaser Class Member, and/or Indirect Purchaser Class Member regarding the subject matter of and/or their actual or potential participation in this Action, or the manufacture, price, availability, terms of sale, purchase, and/or sale of Polyurethane Foam and/or Polyurethane Foam Products;

16.　　your 10-Qs, 10-Ks, and annual reports for each quarter and/or year, as the case may be, or for such other reporting period for which such documents were prepared or exist;

17.　　your use or disposition of Polyurethane Foam and/or Polyurethane Foam Products;

18.　　your sale of Polyurethane Foam and/or Polyurethane Foam Products to, or in competition with, any Direct Purchaser Class Plaintiff, Indirect Purchaser Class Plaintiff, Direct Action Plaintiff, Direct Purchaser Class Member, Indirect Purchaser Class Member, Defendant, or other supplier of Polyurethane Foam and/or Polyurethane Foam Products, including

fabricators, wholesalers, distributors, brokers, or other intermediaries, including without limitation any contracts or other agreements related to the sale;

19. your competitors in the sale of Polyurethane Foam and/or Polyurethane Foam Products and the products, customers, and geographic territories in which each such competitor competed with you;

20. your policies, procedures, processes, standards, performance requirements, terms, conditions, and practices with respect to selecting and purchasing Polyurethane Foam;

21. conditions, limitations, standards, and/or performance requirements, including without limitation sourcing requirements and designated or "preferred" supply channels, chains, or vendors, required or requested by your customers concerning Polyurethane Foam and/or Polyurethane Foam Products;

22. your decision to purchase Polyurethane Foam and/or Polyurethane Foam Products from a particular Defendant or other supplier of Polyurethane Foam and/or Polyurethane Foam Products, including without limitation marketing, advertising, and sales materials, solicitations, price quotes, promotional programs, contests, discounts, credits, allowances, rebates, or other concessions or incentives, any analysis of such solicitations, offers or proposals, and any other factors or circumstances you considered in choosing from whom to purchase Polyurethane Foam and/or Polyurethane Foam Products, or which influenced or affected that decision;

23. price lists, Price Increase Letters, and/or other notices, announcements, letters, or communications made or sent by you concerning the prices of any Polyurethane Foam and/or Polyurethane Foam Products;

24. communications, discussions, and/or negotiations with any supplier, potential supplier, customer, and/or potential customer concerning the prices or other terms of sale for Polyurethane Foam and/or Polyurethane Foam Products;

25. communications, discussions, and/or negotiations with any supplier, potential supplier, customer, and/or potential customer concerning a change in the price of Polyurethane Foam and/or Polyurethane Foam Products;

26. the reasons for changing (whether increasing or decreasing) prices for Polyurethane Foam and/or Polyurethane Foam Products sold by you, including without limitation documents showing how the prices were determined and how they were quoted and charged;

27. strategic plans, marketing and advertising plans, procurement plans, capital plans, forecasts, projections, and similar business reports, studies, evaluations or analyses, as well as budgets, prepared by or for you, or by or for any of your businesses or business units that manufacture, produce, purchase, sell, and/or use Polyurethane Foam and/or Polyurethane Foam Products, including minutes, reports, or other documents prepared by or on behalf of any board, committee, subcommittee, group, or sub-group of any of such businesses, business units, and/or groups;

28. the means and methods by which suppliers of Polyurethane Foam and/or Polyurethane Foam Products compete for business in any market, market segment, or distribution channel, and the level of competition among suppliers in those markets, market segments, and distribution channels;

29.     increases or decreases in the volume or quantity of Polyurethane Foam and/or Polyurethane Foam Products manufactured, produced, and/or available for sale in the United States;

30.     cost increases for Polyurethane Foam and/or Polyurethane Foam Products passed through to persons or entities purchasing from you;

31.     meetings, communications, discussions, negotiations, or dealings between you and any Direct Purchaser Class Plaintiff, Indirect Purchaser Class Plaintiff, Direct Action Plaintiff, Direct Purchaser Class Member or Indirect Purchaser Class Member, regarding any matter related to or concerning the claims in this Action;

32.     the ability or inability to use a particular type or grade of Polyurethane Foam and/or Polyurethane Foam Products for a particular application or use;

33.     alternatives to or substitutes for the Polyurethane Foam and/or Polyurethane Foam Products sold or purchased by you, including furniture, bedding, packaging, carpet underlay or carpet cushion, and automotive products;

34.     the geographic area(s) in which you purchase and/or sell, seek to purchase and/or sell, and/or can competitively purchase and/or sell Polyurethane Foam and/or Polyurethane Foam Products;

35.     the exportation from and/or importation to the United States of Polyurethane Foam and/or Polyurethane Foam Products;

36.     any factor or circumstance that impacted, or that you believed may have impacted, the price and/or availability of Polyurethane Foam and/or Polyurethane Foam Products;

*     *     *

The designated deponent(s) also shall bring copies of all documents, notes, or statements in your company's custody or control related to the Areas of Examination contained in this Schedule to the extent not already covered by the above Requests for Production.

## <u>CERTIFICATE  OF SERVICE</u>

I hereby certify that on January 27, 2014, a copy of the foregoing Notice of Service of Subpoena Duces Tecum and attachment was served electronically on lead counsel for Plaintiffs pursuant to Paragraph 10 of this Court's January 20, 2011 Initial Case Management Conference Order, ECF No. 17.

/s/ Heather Adams
Heather Adams
Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd. Suite 400
Durham, NC 27703
Phone: (919) 862-2200
Fax:     (919) 862-2260
heather.adams@alston.com
frank.hirsch@alston.com
matt.mcguire@alston.com