UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION ) ) ) ) THIS DOCUMENT APPLIES TO: ) ALL INDIRECT PURCHASER ) ACTIONS ) ) | MDL Docket No. 2196 Index No. 10-MD-2196 (JZ) Hon. Jack Zouhary |

### INDIRECT PURCHASE PLAINTIFFS' SUPPLEMENTAL AUTHORITY RELATING TO CLASSWIDE CONSPIRACY BY CARPENTER AND VITAFOAM DEFENDANTS

Indirect Purchaser Plaintiffs submit this supplemental authority in support of their motion for class certification to bring to this Court's attention the admissions to the European Commission by Defendants Carpenter and Vitafoam of their participation in the price-fixing conspiracy of flexible polyurethane foam.

**<u>Despite Carpenter's Denials In This Case, Carpenter Has Admitted To The European Commission Its Participation In A Conspiracy To Fix Prices For Flexible Polyurethane Foam</u>**

In their extant Class Action Complaint, IPPs allege that investigations into Defendants' conspiratorial conduct to fix the prices of flexible polyurethane foam were undertaken by, among others, the European Union. The targets of this investigation included Carpenter, Vitafoam and certain Unnamed Co-Conspirators, including Recticel, a Belgian-based company. As alleged in Paragraph 56 of IPP's Consolidated Amended Complaint:

**UNNAMED COCONSPIRATORS**

56. Other entities with which the Defendants may have possibly conspired or who are connected with the named Defendants and who are on notice and have knowledge of the facts and claims that can or may be alleged against them by virtue of the allegations in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint filed in this

Multidistrict Litigation, **the investigations of** the United States Department of Justice, the Competition Committee of Canada and the United Kingdom and the **European Union**, include, but are not limited to E.R. Carpenter, L.P. (f/k/a Carpenter Chemical, L.P.)("E.R. Carpenter"), a Virginia limited partnership with its principal place of business at 5016 Monument Avenue, Richmond, Virginia 23230, Carpenter Holdings, Inc. ("Carpenter Holdings," collectively with Carpenter U.S. and E.R. Carpenter, "Carpenter"), a Virginia corporation with its principal place of business at Monument Avenue, Richmond, Virginia, 23230, and **Recticel NV/SA, a Belgium-based company that specializes in the production of flexible polyurethane foam products**. Upon further investigation and discovery in this case, Plaintiffs may add those entities, and others, as named Defendants to the action.

In its Answer, filed June 18, 2012 [Dkt. # 387], Carpenter flatly denied those allegations:

> Denies each and every allegation contained in paragraph 56 of the Complaint to the extent intended to relate to Carpenter Co., E.R. Carpenter, L.P., and Carpenter Holdings, Inc. except admits that E.R. Carpenter, L.P. is a Virginia limited partnership and has an office at 5016 Monument Avenue, Richmond, Virginia 23230, admits that Carpenter Holdings, Inc. is a Virginia corporation and has its principal place of business at 5016 Monument Avenue, 12 Richmond, Virginia 23230, denies that it has sufficient information or knowledge to admit or deny the allegations as they may be intended to relate to other defendants, and those allegations therefore are denied.

Just last week, however, on January 29, 2014, the European Union announced that it fined four entities, including Recticel and Carpenter, a total of €114,077,000 (approx. $154 million) because of their participation in a conspiracy to fix the prices of flexible polyurethane foam. In order to receive a reduction in the fine imposed by the European Commission, Carpenter acknowledged its participation in the conspiracy to fix the prices of polyurethane foam. As reported in the attached Press Release from the European Commission:

> The European Commission has found that four major producers of flexible polyurethane foam – Vita, Carpenter, Recticel and Eurofoam - participated in a cartel and has imposed fines totaling

> €114, 077, 000. Flexible polyurethane foam is mainly used in household furniture such as mattresses or sofas….
>
> * * * *
>
> The Commission's investigation started with unannounced inspections in July 2010….Under a settlement, companies that have participated to a cartel acknowledge their participation in the infringement and their liability for it. The settlement procedure is based on the Antitrust Regulation 1/2003 and allows the Commission to apply a simplified procedure and thereby reduce the length of the investigation. This is good for consumers and for taxpayers as it reduces costs; good for antitrust enforcement as it frees up resources to tackle other suspected cases; and good for the companies themselves that benefit from quicker decisions and a 10% reduction in fines.

As indicated above and in the attached press release, the investigation by the European Commission had been ongoing for *two years* when Carpenter denied, in this case, any knowledge of the investigation into its flexible foam cartel with Vitafoam and Recticel. In fact, Carpenter expressly admitted to the Commission that it had participated in the cartel, which resulted in the Commission reducing its fine by 10% to €75, 009, 000 (approx. $101 million).

The European Commission also indicated that Vitafoam received a 100% reduction of any fine. "Vita was not fined as it benefited from immunity under the Commission's 2006 Leniency Notice for revealing the existence of the cartel to the Commission….Vita received full immunity for revealing the existence of the cartel and thereby avoided a fine of € 61.7 million for its participation in the infringement."[1]

---

[1] Carpenter and other Defendants have also been named in a Statement of Admissions (akin to a Plea Agreement in the United States) by Domfoam and Vitafoam in a Canadian Court as participating in a conspiracy to fix prices of polyurethane foam in Canada. *See The Commissioner of Competition and Domfoam International Inc. and Valle Foam Indus. (1995) Inc.*, ¶¶ 13-18 (Ontario Sup. Ct Justice Jan. 5, 2013).

WHEREFORE, Indirect Purchaser Plaintiffs request that the Court accept this Supplemental Authority of facts recently learned since the class certification hearing on January 15, 2014.

Respectfully submitted,
February 3, 2014

                */s/* Marvin A. Miller
                Marvin A. Miller
                Matthew E. Van Tine
                Andrew Szot
                Lori A. Fanning
                **MILLER LAW LLC**
                115 S. LaSalle Street, Suite 2910
                Chicago, IL 60603
                Tele: (312) 332-3400
                Fax:  (312) 676-2676
                Email: MMiller@MillerLawLLC.com
                        MVantine@MillerLawLLC.com
                        ASzot@MillerLawLLC.com
                        LFanning@MillerLawLLC.com

*Interim Lead Counsel for Indirect Purchasers*

Richard M. Kerger (0015864)
Kimberly Conklin (0074726)
**KERGER & HARTMAN, LLC**
33 S. Michigan Street, Suite 100
Toledo, OH 43604
Telephone: (419) 255-5990
Fax: (419) 255-5997
Email: Rkerger@kergerlaw.com
        Kconklin@kergerlaw.com

*Executive Committee for Indirect Purchasers*

Shpetim Ademi
Guri Ademi
David Syrios
**ADEMI & O'REILLY, LLP**
3620 East Layton Avenue
Cudahy, Wisconsin 53110
(414) 482-8000
Email:  SAdemi@ademilaw.com
           GAdemi@ademilaw.com
           DSyrios@ademilaw.com

Jay B. Shapiro
Samuel O. Patmore
Abigail E. Corbett
Matthew Dates
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street
Miami, Florida 33130
(305) 789-3200
Email: JShapiro@stearnsweaver.com
SPalmore@stearnsweaver.com
ACorbett@stearnsweaver.com
MDates@stearnsweaver.com

Martin D. Holmes
M. Reid Estes
**DICKINSON WRIGHT PLLC**
424 Church Street
Suite 1401
Nashville, TN 37219
(615) 244-6538
Email: MDHolmes@dickinsonwright.com
MREstes@dickinsonwright.com

Daniel Lynch
Avidan J. Stern
**LYNCH & STERN LLP**
150 South Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 346-1600
Email: Dan@lynchandstern.com
Avi@lynchandstern.com

Eric D. Barton
**WAGSTAFF CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
Email: EBarton@wagstaffcartmell.com

David Schiller
**SCHILLER & SCHILLER, PLLC**
Professional Park at Pleasant Valley
5540 Munford Road • Suite 101
Raleigh, North Carolina 27612
Telephone: (919) 789-4677
Email: DSchiller@yahoo.com

Susan Bernstein
Attorney at Law
200 Highland Avenue, Suite 306
Needham, MA 02494
Telephone: (781) 290-5858
Email: Susan@sabernlaw.com

*Counsel for Indirect Purchaser Plaintiffs*

## CERTIFICATE OF SERVICE

      I, Marvin A. Miller, certify that on February 3, 2014, I caused to be served the foregoing document in accordance with Paragraph 9 of the Initial Case Management Order entered January 20, 2011.

/*s/Marvin A. Miller*

PRESS RELEASE



**EUROPEAN COMMISSION**

**PRESS RELEASE**

Brussels, 29 January 2014

# Antitrust: Commission fines producers of foam for mattresses, sofas and car seats € 114 million in cartel settlement

The European Commission has found that the four major producers of flexible polyurethane foam - Vita, Carpenter, Recticel and Eurofoam -  participated in a cartel and has imposed fines totalling  € 114 077 000. Flexible polyurethane foam is mainly used in household furniture such as mattresses or sofas. Applications in the automotive sector – in particular for car seats - also account for around a quarter of the total flexible polyurethane foam market.

The companies colluded to coordinate the sales prices of various types of foam for nearly five years, from October 2005 until July 2010, in 10 EU Member States (Austria, Belgium, Estonia, France, Germany, Hungary, the Netherlands, Poland, Romania and the UK). Vita was not fined as it benefited from immunity under the Commission's 2006 Leniency Notice for revealing the existence of the cartel to the Commission. Eurofoam (a joint venture between Recticel and Greiner Holding AG), Recticel and Greiner received reductions of their fines for their cooperation in the investigation under the Commission's leniency programme. Since all companies agreed to settle the case with the Commission, their fines were further reduced by 10%.

Commission Vice President in charge of competition policy, Joaquín Almunia, said: *"Cartels harm our entire economy and cannot be tolerated. This case illustrates how essential it is to keep fighting and sanctioning such illegal behaviour: here the cartelised product is both a key component of the furniture bought by all citizens, such as mattresses and sofas, and a significant input for certain businesses, for example car makers".*

The aim of the cartel was to pass on raw material price increases of bulk chemicals to customers and avoid aggressive price competition between the four producers. In order to achieve this goal, the cartelists organised price coordination meetings at all levels of European management. The participants met on the margins of European and national associations and had numerous telephone and other bilateral contacts. The cartel operated for almost five years, from October 2005 until July 2010.



IP/14/88

**Fines**

The total fines imposed are as follows:

|  | Reduction under the Leniency Notice | Reduction under the Settlement Notice | Fine (€) |
|---|---|---|---|
| Vita | 100% | 10% | 0 |
| Carpenter |  | 10% | 75 009 000 |
| Recticel (for its own participation) | 50% | 10% | 7 442 000 |
| For the conduct of Eurofoam[1]:<br>- Eurofoam, Recticel and Greiner<br>- Greiner and Recticel<br>- Recticel | 50% | 10% | 14 819 000<br><br>9 364 000<br><br>7 443 000 |
| *Total* |  |  | 114 077 000 |

This means that in total Eurofoam is liable for up to € 14 819 000, Greiner for up to € 24 183 000, and Recticel (both for its own involvement and that of Eurofoam) for up to € 39 068 000.

The fines were set on the basis of the Commission's 2006 Guidelines on fines (see IP/06/857 and MEMO/06/256).

In setting the level of fines, the Commission took into account the companies' sales of the products concerned in the relevant Member States, the serious nature of the infringement, its geographic scope and its duration.

Vita received full immunity for revealing the existence of the cartel and thereby avoided a fine of € 61.7 million for its participation in the infringement.

Recticel, Eurofoam and Greiner benefited from reductions of fines of 50% under the 2006 Leniency Notice for their cooperation. The reductions reflect the timing of their cooperation and the extent to which the evidence they provided helped the Commission to prove the existence of the cartel.

---

[1] The fine imposed on Recticel, Greiner and Eurofoam for the conduct of Eurofoam (a joint venture between Recticel and Greiner) is partly shared by them because of the joint and several liability between parent companies and subsidiary. Eurofoam is liable for the sales in five Member States (Germany, Austria, Hungary, Poland and Romania), while Recticel is directly liable for the sales in the other five Member States (France, Belgium, the Netherlands, United Kingdom and Estonia) and indirectly for the conduct of its subsidiary.

Moreover, under the Commission's 2008 Settlement Notice, the Commission reduced the fines imposed on all the companies by 10% as they acknowledged their participation in the cartel and their liability in this respect.

The responsibility of Carpenter was established by the direct participation in the conduct of Carpenter's European subsidiaries while Carpenter Co was considered liable only as their parent company.

## Background

Flexible polyurethane foam can be subdivided into "comfort foam" applications, used in upholstered furniture and mattresses, and "technical foam" applications, used in the automotive and other industries. The cartel covered comfort foam and specific types of flexible foam.

The Commission's investigation started with unannounced inspections in July 2010 (see MEMO/10/359).

More information on this case will be available under the case number 39801 in the public case register on the Commission's competition website, once confidentiality issues have been dealt with. For more information on the Commission's action against cartels, see its cartels website.

## The settlement procedure

Today's decision is the tenth settlement decision since the introduction of the settlement procedure for cartels in June 2008 (see IP/08/1056 and MEMO/08/458). Under a settlement, companies that have participated to a cartel acknowledge their participation in the infringement and their liability for it. The settlement procedure is based on the Antitrust Regulation 1/2003 and allows the Commission to apply a simplified procedure and thereby reduce the length of the investigation. This is good for consumers and for taxpayers as it reduces costs; good for antitrust enforcement as it frees up resources to tackle other suspected cases; and good for the companies themselves that benefit from quicker decisions and a 10% reduction in fines.

The Commission previously reached settlements with participants in cartels for DRAMs (see IP/10/586), animal feed phosphates (see IP/10/985), washing powder (see IP/11/473), glass for cathode ray tubes (see IP/11/1214), compressors for fridges (see IP/11/1511), water management products (see IP/12/704), wire harnesses (see IP/13/673), Euro interest rate derivatives and Yen interest rate derivatives (see IP/13/1208).

## Action for damages

Any person or firm affected by anti-competitive behaviour as described in this case may bring the matter before the courts of the Member States and seek damages. The case law of the Court and Council Regulation 1/2003 both confirm that in cases before national courts, a Commission decision is binding proof that the behaviour took place and was illegal. Even though the Commission has fined the companies concerned, damages may be awarded without these being reduced on account of the Commission fine.

In June 2013, the Commission has adopted a proposal for a Directive that aims at making it easier for victims of anti-competitive practices to obtain such damages (see [IP/13/525](IP/13/525) and [MEMO/13/531](MEMO/13/531)). More information on antitrust damages actions, including a practical guide on how to quantify the harm typically caused by antitrust infringements, the public consultation and a citizens' summary, is available at:
http://ec.europa.eu/competition/antitrust/actionsdamages/documents.html

Contacts :
Antoine Colombani  (+32 2 297 45 13, Twitter: @ECspokesAntoine )
Marisa Gonzalez Iglesias  (+32 2 295 19 25)

4