# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) MDL Docket No. 2196<br>Index No. 10-MD-2196 (JZ) |
| This document relates to: | |
| ALL CASES | |

**DIRECT PURCHASER (CLASS) PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO ABSENT CLASS MEMBERS**

I.  **INTRODUCTION**

In their response to Direct Purchaser Plaintiffs' ("Plaintiffs") motion for protective order (Dkt. 1021), Defendants never deny that the entities included in the Class Member Subpoenas directly purchased flexible polyurethane foam from Defendants during the putative class period—meaning that these entities are absent members of the alleged class.[1]  This crucial admission confirms that the Class Member Subpoenas must be quashed.  The subpoenas seek discovery from absent class members. and Defendants have failed to demonstrate any particularized need—as they must—for this discovery.  *See, e.g.*, Manual for Complex Litigation § 21.14 (4th ed.) ("Discovery of unnamed members of a proposed class requires a demonstration of need.").

While Defendants belatedly assert in their opposition papers that the entities purportedly manufacture foam, and thus should be subject to discovery about their sales activities, this Court has previously rejected that argument.  *See* November 29, 2012 Order Re: Downstream Discovery (Dkt. 458) at 2 (discovery into direct purchasers' sales "is not relevant and therefore not discoverable," a conclusion which "is *buttressed by the fact that a limited number of Plaintiffs actually manufacture flexible polyurethane foam*") (emphasis added).  Defendants simply ignore this law of the case.

What is perhaps most notable about Defendants' opposition is that, despite having nearly three years to assemble some shred of support for their repeated downstream discovery requests, Defendants still offer no evidence suggesting that any of the subpoenaed absent class members (a) affected, in any way, Defendants' ability to set—and, more importantly,

---

[1]  These entities are set forth in footnote 2 of Plaintiffs' opening brief on this motion.  (*See* Dkt. 984 at 2 n.2.)  Plaintiffs also include in this definition Magna International of America, Inc., which was inadvertently omitted from the definition of "Class Member Subpoenas" in their opening brief.

1

collude—on prices for flexible polyurethane foam; and/or (b) participated in the alleged conspiracy.  Defendants know their own customers, for example, but do not offer any of their own documents or other evidence to show that the subpoenaed absent class members compete for those customers.   Defendants also provide no explanation as to why they would not already know the identity of competitors in the marketplace.  As such, Defendants have offered nothing but previously-rejected and entirely unsupported arguments in support of their proposed discovery.

Plaintiffs respectfully submit that the Class Member Subpoenas should be quashed.

## II.     ARGUMENT

### A.     Defendants Must Demonstrate a Particularized Need for Discovery From Absent Class Members.

As Plaintiffs explained in their opening brief, Defendants may only obtain discovery from absent class members if they first obtain the Court's permission to do so on a showing of particularized need.  *See* Manual for Complex Litigation § 21.14 (4th ed.) ("Discovery of unnamed members of a proposed class requires a demonstration of need"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549–50 (E.D. Tenn. 2013); *Khaliel v. Norton Healthcare Inc. Retirement Plan*, 2012 WL 6554714, at *1–*2 (W.D. Ky. Nov. 20, 2012).  This is because discovery of absent class members is disfavored.  *Id.*; *Groth v. Robert Bosch Corp.*, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008).

In response to this case law, Defendants cite a single opinion, *In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480 (E.D. Pa. Jan. 31, 2012) (Opp. at 9–10).  But this case is inapposite.

In *Mushroom*, it was the putative class *plaintiffs* that issued the subpoena.  *Id.* at *2 ("[P]laintiffs served a subpoena on non-party BFI…").  The subpoenaed third party was not a

class member. Rather, it was the exclusive distributor of one of the defendants, was owned in identical shares by identical owners as that defendant, made sales on that defendant's behalf, and sometimes paid dues to a professional organization on that defendant's behalf. *Id.* at *1. Put simply, there was every indication that the subpoenaed "third party" was not a third party at all. *See id.* at *1–*2. Moreover, and in any event, the *Mushroom* Court noted that the movant, unlike here, established a need for the discovery in question, since the discovery was unavailable from other, previously-explored sources, and the discovery was clearly relevant. *Id.* at *4–*5. Even if *Mushroom* was remotely analogous, Defendants here have not made—and could not make—any similar showing.

### B. The Class Member Subpoenas Seek Irrelevant Downstream Discovery

There is no genuine question that Defendants' unauthorized Class Member Subpoenas seek downstream discovery. Defendants admit that their subpoenas request, *inter alia*, "the prices at which the Subpoenaed Entities sold the foam, foam products, and/or carpet cushion they produced to their customers," and "whether the Subpoenaed Entities issued price increase letters to their foam, foam product, and/or carpet cushion customers and the timing of those increases." (Opp. at 7.) Notwithstanding Defendants' protestations to the contrary, this is indisputably downstream discovery. *See, e.g.*, *In re Photochromic Lens Antitrust Litig.*, 279 F.R.D. 620, 623 (M.D. Fla. 2012) ("Downstream discovery may include, among other things, information concerning the plaintiffs' use, manufacture, sale, marketing, distribution or supply of a product to entities and individuals lower in the distribution chain."). As this Court and many others have already found, such downstream discovery is inappropriate. *See* Dkt. 458; *Skelaxin*, 292 F.R.D. at 550–55 (rejecting multiple theories for downstream discovery and collecting cases in support of each rejection).

3

### 1. The Court has already rejected the notion that manufacturing a limited amount of foam justifies downstream discovery

In an attempt to sidestep this fundamental problem, Defendants claim that the "Subpoenaed Entities are Defendants' direct competitors," which allegedly justifies discovery into them because they "manufacture foam, foam products, and/or carpet cushion." (Opp. at 4.) For several of the subpoenaed parties, this bare assertion holds no weight because—as noted in Plaintiffs' opening brief—Plaintiffs understand that the foam these parties manufacture is ***not flexible polyurethane foam***. (Mot. at 6–7.) Plaintiffs similarly understand that several other of the subpoenaed entities do not manufacture polyurethane foam at all. (*Id.*) It is unclear whether still others actually sell the foam they manufacture and/or if references to "manufacture" in their marketing materials means pouring slabstock or bonding scrap foam to create carpet underlay rather than fabrication. (Opp. at 4–5.)

However, even for those few subpoenaed absent class members that do purportedly manufacture flexible polyurethane foam, Defendants still offer no reason why, in light of the Court's previous discovery rulings, they may burden the entities with discovery regarding their sales. As indicated above, the Court has already unequivocally held that the mere fact that a direct purchaser manufactures foam is insufficient by itself to permit downstream discovery:

> [T]his Court believes the downstream data requested by Defendants is not relevant and therefore not discoverable. Further, any possible relevance would be outweighed by the burden and expense to Plaintiffs. ***This conclusion is buttressed by the fact that a limited number of Plaintiffs actually manufacture flexible polyurethane foam.***

(Dkt. 458 at 2 (emphasis added and citations omitted).) Defendants never sought reconsideration of this ruling and, more importantly, have not offered any evidence or other facts to change this conclusion.

4

And even in this fourth bite at the apple of downstream discovery, Defendants still have not offered any evidence or other support indicating that absent class members representing a minuscule portion of the manufacturing market constrained Defendants' pricing or collusive activities in any way. The only rationalization Defendants offer along these lines is the unsupported speculation of their class certification expert, Dr. Ordover, that "competitive constraints, *if any*" from other manufacturers might have had a pricing effect on Defendants. (Opp. at 6 (emphasis added).) But Defendants, the parties most capable of establishing whether this might be true offer no *evidence* that any such competitive constraints actually exist. (*Id.* at 5–6.)

Dr. Ordover also has not cited any evidence that non-conspirators imposed any competitive constraints on pricing by the Defendants. Indeed, Dr. Ordover admitted at his deposition that his opinions concerning competitive constraints on defendants were not based on any actual evidence. (Dkt. 744, Ex. 109 (Ordover Dep.) 125:11–24.) Dr. Ordover listed several non-defendants as competitors, but his deposition showed that among those he mentioned, he did not know if Johnson Controls "make any product that would be included within the class," (*id.* at 116:11–16, 117:10–21); he did not know if Lear made the type of foam products at issue in this case, (*id.* 119:1-14); he was not familiar with the products of Tempur-Pedic. (*id.* at 120:7–21); and he did not investigate the volume of sales of Premier Foam, nor did he know what products Advanced Urethane Technologies made, (*id.* at 120:24–122:6).

Defendants also reiterate the argument they have voiced before that discovery into absent class members is supposedly necessary to "test" Plaintiffs' characterizations and assumptions about the foam markets. (Opp. at 7.) This argument fails, because it (yet again)

5

ignores the fundamental tenets of absent class member discovery. Defendants offer no reason why discovery from themselves, the class representatives, the Indirect Purchaser Plaintiffs, the Direct Action Plaintiffs, and true third parties are insufficient to "test" these facts. Moreover, Defendants' support for this point—Dr. Ordover's citation to a 2010 industry report—again lumps together types of foam (*e.g.*, molded foam) that are not included in the putative direct purchaser class. (*Id.*)[2]

### 2. **Plaintiffs' not having moved on behalf of non-class members is not an admission that downstream discovery of class members should be permitted.**

Defendants argue that Plaintiffs purportedly "clearly recognize the relevance of this information and the propriety of these subpoenas," because Plaintiffs have not moved for a protective order on behalf of Wm. T. Burnett & Co. and Premier Foam Inc. (Opp. at 1.) As Plaintiffs noted in their opening brief, however, neither Wm. T. Burnett & Co. nor Premier Foam Inc. directly purchased flexible polyurethane foam from Defendants. (Mot. at 1 n.1.) Therefore, neither entity is an absent class member, which means Plaintiffs have no standing to move on their behalf. *See U.S. v. Wells*, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006) ("[A]s a general rule, a party has no standing to seek to quash a subpoena directed to a non-party."). This lack of standing has nothing to do with the strength of Plaintiffs' legal position; it simply is a lack of standing. The subpoenas to these third parties are equally unjustified, unduly burdensome, and oppressive, but Plaintiffs are not permitted to seek protection for these parties.

---

[2] For example, Johnson Controls, which Dr. Ordover includes in his analysis and references as part of the 2010 industry report, does not manufacture flexible polyurethane foam. Instead, Johnson Controls only manufactures *molded* polyurethane foam. (Dkt. 984-1 ¶ 3.)

### 3. The Court has already rejected *Valley Drug*-based discovery arguments.

Defendants next argue that downstream discovery into the subpoenaed absent class members "is also relevant to the ascertainability of Plaintiffs' proposed class and conflicts among putative members of that class." (Opp. at 5.) In other words, Defendants repeat the exact same arguments, based on *Valley Drug*, and other similar arguments that they made—and the Court rejected—in the previous downstream discovery disputes. (*See, e.g.*, Dkt. 418-1 at 18–26 (Defendants arguing for downstream discovery); Dkt. 420 at 3 ("This Court also finds the *Hanover Shoe* line of cases more persuasive than the *Valley Drug* line of cases[.]"); Dkt. 458 ("Defendants' reliance on the *Valley Drug* line of cases would allow downstream discovery, but this Court previously rejected that reasoning and those cases[.]").)

### 4. Scrap purchasers are not part of the putative direct purchaser class.

Defendants also make the odd claim that Plaintiffs purportedly are being inconsistent, because Plaintiffs conducted "absent class member discovery" when they served subpoenas on third-party scrap foam brokers that acted as conduits for price information between Defendants in furtherance of the alleged conspiracy. (*See* Opp. at 10.) According to Defendants, these scrap brokers are putative class members, because they purchased "[flexible polyurethane] foam, albeit in the form of trim[.]" (*Id.*)

This argument is simply misplaced. Plaintiffs' putative class includes direct purchasers of (a) slabstock foam, (b) fabricated foam, and (c) carpet cushion. (Dkt. 584-1.) Scrap foam is not included in this definition, nor are purchases of scrap foam. Scrap foam was also not included in the analysis of Dr. Leitzinger addressing the issue of common impact.

7

As detailed in Plaintiffs' motion for class certification, scrap brokers did act as conduits for the passing of conspiratorial information between defendants concerning price increases. (Dkt. 584-1 at 15–17.) Plaintiffs therefore subpoenaed some brokers.

### C. The Class Member Subpoenas Are Unduly Burdensome

Finally, the sum total of Defendants' argument that the Class Member Subpoenas are neither oppressive nor unduly burdensome is that these subpoenas were served before the fact discovery cutoff and Defendants met and conferred with some of the absent class members regarding the requested productions. (Opp. at 8–9.) Defendants' eleventh hour subpoenas, however, simply ignore the prior findings of the Court that such discovery is inherently burdensome. (*See* Dkt. 458 at 2 ("[A]ny possible relevance [of downstream discovery] would be outweighed by the burden and expense to Plaintiffs[.]").) Furthermore, Defendants ignore that, as demonstrated above and in Plaintiffs' opening papers, absent class members cannot be burdened with discovery as a matter of law unless Defendants can establish particularized need (via a motion to the Court) for such discovery. Again, Defendants have made no such showing.

Moreover, Defendants do not contest that their subpoenas are extremely broad and require productions and depositions in weeks when equivalent discovery from the parties took months and/or years. Thus, no matter which angle one uses to view the Class Member Subpoenas, they should be quashed. *See In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 252–53 (S.D. Ohio 2013) (circumstances of the case frame the burden analysis).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant Plaintiffs' motion for a protective order and quash the Class Member Subpoenas.

8

Dated: February 24, 2014

Respectfully submitted,

| | |
|---|---|
| /s/ William A. Isaacson</br>William A. Isaacson</br>BOIES, SCHILLER & FLEXNER LLP</br>5301 Wisconsin Avenue, NW</br>Washington, DC  20015</br>Phone:  202-237-5607</br>Fax:     202-237-6131 | /s/ Stephen R. Neuwirth</br>Stephen R. Neuwirth</br>QUINN EMANUEL URQUHART</br>  & SULLIVAN, LLP</br>51 Madison Avenue, 22nd Floor</br>New York, NY  10010</br>Phone:  212-849-7165</br>Fax:     212-849-7100 |

*Interim Co-Lead Counsel for Direct Purchaser (Class) Plaintiffs*