IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re Polyurethane Foam Antitrust Litigation | Case No. 1:10 MD 2196 |
| | MEMORANDUM OPINION AND ORDER GRANTING <u>SETTLEMENT MOTIONS</u> |
| This document relates to: DIRECT PURCHASER CLASS | JUDGE JACK ZOUHARY |

## INTRODUCTION

Pending before this Court are the Direct Purchaser Class's Motion for Final Approval of the Leggett & Platt and Carpenter Settlements (Doc. 1439) and Motion for an Award of Attorneys' Fees and for Reimbursement of Expenses (Doc. 1441).

## BACKGROUND

In these consolidated proceedings, direct purchasers allege Defendants conspired to fix, raise, and maintain the price of slabstock, fabricated foam, and carpet underlay. The litigation has been lengthy, hard fought, and complex. A substantial segment of this multidistrict litigation -- representing about three-quarters of Defendants' sales to direct purchasers -- involves the claims of a nationwide class of direct purchasers ("Direct Purchasers"). Direct Purchasers and Defendants have battled through motions to dismiss; engaged in extensive document, deposition, and expert discovery, including many discovery disputes; litigated class certification (which this Court granted in April 2014), including a Federal Civil Rule 23(f) petition for review (which the Sixth Circuit denied in September 2014), and briefed a pending petition for writ of *certiorari*, seeking review of the Sixth

Circuit's order declining to accept Defendants' petition; and (most recently) briefed summary judgment, which this Court largely denied. Trial will begin in April 2015.

**The Proposed Settlement Terms**

In November 2014, Direct Purchasers moved for preliminary approval of a classwide settlement with Defendant Leggett & Platt, Inc. ("Leggett & Platt"), and for approval of notices of class certification and settlement (Doc. 1379). Later that month, Direct Purchasers moved for preliminary approval of a classwide settlement with Defendants Carpenter Co., E.R. Carpenter L.P, and Carpenter Holdings, Inc. (the "Carpenter Defendants"), and for approval of notices of class certification and settlement (Doc. 1400). This Court granted the motions, as well as related stipulations (Docs. 1391, 1397, 1406 & 1411).

Under the proposed settlements, and in exchange for a release of all Direct Purchaser claims against Leggett & Platt (as well as the "Leggett & Platt Released Parties") and the Carpenter Defendants (as well as the "Carpenter Released Parties"), Direct Purchasers receive:

- $39.8 million from Leggett & Platt, including an initial $4 million cash payment;

- $108 million from the Carpenter Defendants, including an initial $20 million cash payment (this Court refers to the two funds together as the "Settlement Fund"); and

- Trial testimony from up to two Leggett & Platt employees and up to two Carpenter Defendant employees for the purpose of admitting Leggett & Platt and Carpenter documents at trial.

Leggett & Platt and the Carpenter Defendants deny all allegations of wrongdoing.

Expert discovery in this case helps put those sums in perspective. Direct Purchasers' primary impact and damages expert, Dr. Jeffrey Leitzinger, constructed multiple regression models to

2

calculate whether and to what extent class members suffered antitrust impact. He then used those impact results to calculate a classwide damages figure. If credited by a jury, and based on best-case-scenario liability findings and late-December 2014 opt-out estimates, Leitzinger's model estimates classwide overcharges (prior to trebling) of $815 million. (At the fairness hearing, and based on the result of the opt-out period, Class Counsel put the figure closer to $750 million) (Doc. 1499 at 6). Leggett & Platt and Carpenter Defendant sales would account for nearly $310 million of those overcharges, based on their 38 percent share of the affected product markets. The Settlement Fund therefore equals roughly 48 percent of the Leggett & Platt and Carpenter Defendant overcharges Direct Purchasers might prove following a best-case outcome at trial.

This Court set a January 26, 2015 deadline for commenting on or objecting to the proposed settlements. Direct Purchasers' approved short- and long-form notice (issued to class members by direct mail and by publication notice) explained how an absent class member could comment on or object to the proposed settlements. Out of more than 48,000 direct mail recipients and the likely thousands more class members who received publication notice of the settlement (*see* Doc. 1475-1 at 3), only one individual, Michael Narkin ("Narkin"), and one business, Hall Furniture ("Hall"), objected to the settlement. Narkin objects to both settlements (*see* Doc. 1475-6), Hall, only to the Leggett & Platt settlement (*see* Doc. 1475-7). Direct Purchasers responded to the objections (*see* Doc. 1475).

Leggett & Platt and the Carpenter Defendants also complied with the Class Action Fairness Act of 2005 ("CAFA") requirement to provide certain federal and state government officials notice of the settlement (*see* Docs. 1413 & 1427). Leggett & Platt's CAFA notice period expired on

3

February 11, 2015 (*see* Doc. 1498), and the Carpenter Defendants' CAFA notice period expired on February 22, 2015 (*see* Doc. 1521).  No CAFA-noticed parties objected to either settlement.

**Class Counsel's Fee And Expense Request**

Following preliminary settlement approval and dissemination of class notice, in late December 2014 Direct Purchaser Class Counsel ("Class Counsel")[1] moved for an award of attorneys' fees and reimbursement of expenses, to be paid out of the $147.8 million Settlement Fund.  Specifically, Class Counsel seek a $52,473,855.80 cut of the Settlement Fund, including:

- Thirty percent of the Settlement Fund for attorneys' fees, or roughly $44.34 million; and

- Reimbursement of Class Counsel's incurred expenses, amounting to $8,133,855.80.

If granted, Class Counsel's fee and expense award would leave roughly $95,326,144.20 to be divided among class members, or 64.5 percent of the Settlement Fund.

The Leggett & Platt and Carpenter Defendant settlements are (respectively) the second and third cash settlements in the Direct Purchaser case.  In June 2013, this Court granted final approval of a Direct Purchaser settlement with (among others) Vitafoam, Inc. and Vitafoam Products Canada Ltd. (*see* Doc. 597).  This Court also granted Class Counsel's motion for an award of attorneys' fees and reimbursement of costs.  Class Counsel received as a fee award $3,101,267.63, a 30 percent share of the Vitafoam settlement fund (*see* Doc. 1441 at 8).  Class Counsel received an additional $908,315.35 for reimbursement of expenses (Doc. 598 at 4).  As a cross-check to the Vitafoam

---

[1] Class Counsel includes an Executive Committee comprised of six law firms, in addition to the Co-Lead Counsel firms of Boies, Schiller & Flexner LLP and Quinn Emanuel Urquhart & Sullivan, LLP.

settlement fee request, Class Counsel provided a lodestar of roughly $25 million, an estimate supported by time logs submitted upon this Court's request (*see* Doc. 556 at 50; *see also* Doc. 561-1).

Class Counsel again estimate a lodestar cross-check for their percentage-of-the-fund fee request, and this Court again requested time logs supporting that request (*see* Doc. 1492). Through late December 2014, Class Counsel's estimated lodestar totals $52,274,968.55. Accounting for the portion of the Vitafoam settlement paid over to attorneys' fees, Class Counsel's request would leave them roughly $4,833,700.92 short of their December 2014 lodestar.

This Court held a fairness hearing on February 3, 2015 to consider the proposed settlements, objections to the settlements, and Class Counsel's request for an award of attorneys' fees and reimbursement of costs (*see* Doc. 1499).

## STANDARDS OF REVIEW

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Federal Civil Rule 23(e). When a settlement proposal "would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Federal Civil Rule 23(e)(2). The fairness hearing should provide interested parties an opportunity to comment on or object to the proposed settlements; the hearing may otherwise be limited to probing only those issues necessary for finding that a proposed settlement is fair, reasonable, and adequate. *See Tenn. Ass'n of Health Maint. Orgs. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).

"Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). A settlement class, like a litigation class, must satisfy Federal Civil Rules 23(a) and 23(b). While this Court has discretion to accept or reject a proposed settlement, federal law favors settlement of complex class actions. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

In a common-fund case like this one, this Court's award of attorneys' fees need only be "reasonable under the circumstances." *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (internal quotations marks omitted).

> In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Facing a percentage-of-the-fund fee request, "[i]t is not difficult to demonstrate why courts cannot rationally apply any particular percentage -- whether 13.6 percent, 25 percent or any other number -- in the abstract, without reference to all the circumstances of the case." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994). Therefore, a district court may consider: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation;

6

and (6) the professional skill and standing of counsel involved on both sides." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (internal quotation marks and ellipsis omitted).  And of course, different approaches to awarding fees come with different strengths and weaknesses. *See Rawlings*, 9 F.3d at 516–17 (comparing percentage-of-the-fund and lodestar fee awards).

## ANALYSIS

**The Class Settlements are Fair, Reasonable, and Adequate**

*Risk of Fraud or Collusion in Negotiating the Class Settlements*.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010) (internal quotation marks omitted).  There is no hint in the record that the $147.8 million Settlement Fund is the result of fraud or collusion between Class Counsel and defense counsel.  Rather, the parties employed experienced mediators to engage in extensive discussions in four cities over the course of many weeks (*see* Doc. 1441-1 at 11–12).  This Court is confident that the settlement terms are the product of hard-fought, arms-length negotiation between experienced antitrust lawyers.

*Complexity, Expense, and Likely Duration of Litigation*.  In five weeks, Direct Purchasers will begin presenting their case to a jury.  The trial will be lengthy, costly, and time consuming.  If Direct Purchasers obtain a jury verdict, they then would have to defend that verdict through post-trial motions (inevitable in any complex litigation) and on appeal, when this Court's class certification decision (among other important interlocutory rulings) also will be fair game for appellate review. Direct Purchasers' lodestar cross-check reflects that the largest portion of attorney time and expense has been spent in discovery, which has now run its course.  But, this litigation is far from complete.

*See In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Settlement avoids further expense, as well as the risks associated with further litigation.

***Amount of Discovery to Date***. The discovery record in this case is enormous. Direct Purchasers combed through 219 Defendant and third-party document productions, totaling 2.4 million documents that (combined) span 5.4 million pages and participated in or attended over 200 depositions (Doc. 1441-1 at 7).

They and their experts engaged in complex expert discovery. Leitzinger (for example) constructed several dozen multiple regression models to assess impact (if any) suffered by Direct Purchasers. He worked with a transactional dataset with roughly 50 million entries. Direct Purchasers and their experts then responded to many defense expert reports submitted by nearly a dozen experts. And each expert -- plaintiff and defendant -- was then deposed, some multiple times. This Court examined some of the experts during an evidentiary hearing.

All of this discovery matters for settlement purposes because it provides Direct Purchasers and the settling Defendants a clear picture of the relative merits of claims and defenses. The parties entered into these settlements with full view of the evidentiary record to assess the class claims.

***Likelihood of Success on the Merits.*** "The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require [this Court] to decide the merits of the case . . . [it] cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union, UAW*, 497 F.3d at 631 (internal quotation marks omitted).

8

The recent summary judgment briefing provides this Court insight into the relative strengths and weaknesses of Direct Purchasers' claims. The merits of those claims need not be recited here in detail except to note Defendants have strong jury arguments regarding how a fact-finder should treat competitor communications, industry competition, price increase announcement history and usage, market structure, and "opportunities-to-conspire" evidence. Defendants also have retained prominent economists and a statistician to testify that the jury should not credit Direct Purchasers' expert evidence. And Direct Purchasers, who carry the burden of proof, face the threat that their experts will fail to communicate their testimony in a way that is comprehensible to laypeople. All of which is to say, "[e]xperience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). In this Court's view, a jury could return (1) a no-liability verdict with respect to some or all Defendants, or (2) a substantially smaller damages figure than is contemplated by Leitzinger's best-case scenario assumptions, or (3) a "home run" for the Class. A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes.

***Opinions of Class Counsel***. "Class Counsel's judgment that settlement is in the best interests of the class is entitled to significant weight, and supports the fairness of the class settlement." *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *11 (E.D. Mich. 2011) (internal quotation marks omitted). Class Counsel are rightly proud of the result in these settlements. At the fairness hearing, Class Counsel further explained the risks they run litigating this case on (effectively) a contingency fee basis and without the benefit of an active parallel criminal investigation, which exists in some other antitrust multidistrict litigation. Class Counsel compared the workload in this case to similar

9

cases (*see* Doc. 1499 at 8–15, 29–32, 36–37).  Settling defense counsel likewise agreed that the settlement result is impressive, given the substantial risks Direct Purchasers face in further litigation (*see id*. at 20, 23).

***Reaction of Absent Class Members to the Proposed Settlements***.  The Direct Purchaser Class reacted favorably to news of the settlement.  First, the overwhelming majority of direct purchasers opted to remain members of the settlement classes.  Substantial direct purchasers did not, but because those same direct purchasers have proceeded directly against Defendants (more or less actively) for several years, Class Counsel, Leggett & Platt, and the Carpenter Defendants no doubt anticipated these opt outs.  Second, despite tens of thousands of class members receiving notice of the class settlement, only one class member objected.

Hall "objects to final approval of the proposed settlement on grounds that the the [*sic*] Notice does not include the Plan of Allocation which will describe the manner in which the net settlement funds will be distributed" (Doc. 1475-7 at 3).  Hall "is left to decide whether the [*sic*] participate in the settlement without knowing whether, for example, the proposed plan will impose a minimum payment, cap his [*sic*] recovery, force him [*sic*] to choose between remedies or otherwise value his [*sic*] claim differently from those of other class members" (*id*. at 12).  Hall likewise lacks information on how the Leggett & Platt settlement fund will be reduced if a certain opt-out threshold is crossed, triggering a settlement agreement provision that would reduce the size of the Leggett & Platt settlement fund (*id*.).

But the Leggett & Platt opt-out threshold has not been triggered.  Hall's objection is therefore moot to that extent.  This Court overrules Hall's objection to the extent it argues the approved notice is insufficient because it fails to explain the basis for divvying up the Settlement Fund among class

members. Even assuming the notice must contain an explanation of the plan of allocation (*see* Doc. 1475 at 12) (extensively collecting case law for the proposition that a plan of allocation need not be proposed prior to final settlement approval), Hall received an adequate explanation of how funds will be allocated to class members -- on a *pro rata* basis, based on Class Period purchases.

Narkin also objects. Direct Purchasers give this objection more attention than it deserves in their response, which this Court adopts. Narkin may not even be a class member -- no evidence, offered by Narkin or accessible to the Direct Purchaser Class, substantiates his vague claim of class membership. Further, he raises meritless allegations of collusion; worries about whether the settlement protects "sub-classes," which do not in fact exist; complains about his need to review discovery in this matter to assess his "claim," despite caselaw that states a class member has no such right to discovery (or only a qualified right, which Narkin's meritless objection does not warrant); speculates that Class Counsel "may have seen no need to engage in real discovery to determine what the case was worth," speculation that is resoundingly rejected by the discovery record; implies that courts have removed "Class Counsel" from class leadership positions they held in other cases, owing to "lack of integrity," when in fact Class Counsel in this case have no connection with the cases he cites; appears to believe attorneys' fees were part of the settlement agreement and "were acceptable to the defense," when in fact defense counsel played no role in Class Counsel's separately filed fee motion; and is a serial objector, whose carbon-copy objections district courts frequently reject as baseless (*see* Doc. 1475-6; *see also* Doc. 1475 at 4–11). This Court overrules his objection.

***The Public Interest***. Finally, there is a strong public interest in voluntary resolution of complex antitrust actions, *see In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530, and no legitimate countervailing interest that weighs in favor of denying settlement approval.

11

Based on these considerations, the Leggett & Platt and Carpenter settlements are finally approved.

**Class Counsel's Fee and Expense Request**

Class Counsel seek a 30 percent share of the Settlement Fund, or roughly $44.34 million. In their briefs and during the fairness hearing, Class Counsel emphasized that they have pursued this case on their own. With the exception of certain information gained early in this litigation from government investigations, "[t]his is certainly not a case where class counsel have simply 'piggy-backed' on a government investigation or the work of others" (Doc. 1441 at 8).

For many of the reasons supporting a finding that the settlement is fair, reasonable, and adequate, this Court concludes Class Counsel's fee request is reasonable. The value of Class Counsel's work to the Direct Purchaser Class is apparent. Even deducting fees from the Settlement Fund, to date Direct Purchasers have recovered more than $100 million from settling Defendants. Counsel will still be substantially "under water," relative to their estimated lodestar, even after a second 30 percent fee award. Class Counsel represented to this Court that work in this case caused them to turn away billable hours from other clients, who would have been willing to pay Class Counsel's full hourly rates on a rolling basis (Doc. 1499 at 32). Finally, Class Counsel are respected antitrust practitioners. Class Counsel faced off against top members of the antitrust defense bar. *See Bowling*, 102 F.3d at 780. Considering these and other circumstances, this Court grants the 30 percent fee request with respect to each settlement fund.

In approving Class Counsel's prior fee request, this Court noted a 30 percent fee award "is not an indicator of future fee awards" and that this Court "may adjust fee awards downward to achieve a reasonable benchmark and prevent windfall" (Doc. 598 at 3). It reiterates that point today. As in

12

this ruling, this Court will assess any future fee requests in the context of prior settlements, prior fee awards, and updated lodestar cross-checks and supporting time logs. Today's fee award makes Class Counsel substantially whole. Depending on the nature of any future settlement, another 30 percent fee request may not be appropriate.

Finally, this Court awards Class Counsel $8,113,855.80 for reimbursement of expenses (*see* Doc. 1441-1 at 13 (listing expense categories)). "[T]he categories of expenses for which Plaintiffs' Counsel seek reimbursement are the type routinely charged to their hourly fee-paying clients and thus should be reimbursed out of the Settlement Fund." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535.

This Court grants Co-Lead Counsel authority to "distribute the fees in a manner that, in the judgment of Co-Lead Counsel, fairly compensates each firm for its contribution to the prosecution of Plaintiffs' claims" (Doc. 1441 at 13 n.3).

## CONCLUSION

For these reasons, Motion for Final Approval of the Leggett & Platt and Carpenter Settlements (Doc. 1439) and Motion for an Award of Attorneys' Fees and for Reimbursement of Expenses (Doc. 1441) are granted. Therefore:

1. Final approval of the Settlement Agreements is granted pursuant to Federal Civil Rule 23(e).

2. The Direct Purchaser Settlement Class consists of the certified Direct Purchaser Litigation Class minus the persons and entities who request exclusion from the Direct Purchaser Settlement Class. For the reasons explained in this Court's Order on Class Certification (*see* Doc. 1408), the Direct Purchaser Settlement Class meets the requirements of Rule 23 and is therefore certified for the purposes of this settlement.

3. The persons and entities identified in Exhibit A (for the Leggett & Platt settlement) and Exhibit B (for the Carpenter Settlement) have timely and validly requested exclusion from the specified Direct Purchaser Settlement Class and therefore are excluded from the Direct Purchaser Settlement Class and not bound by this Order, and may not make any claim or receive any benefit from the settlement, whether monetary or otherwise. These excluded persons and entities may not pursue any Released Claims on behalf of those who are bound by this Order. Each Direct Purchaser Settlement Class member who has not requested to be excluded from the Direct Purchaser Settlement Class, and is not listed in Exhibit A, is bound by this Order, and will remain forever bound.

4. As to the Leggett & Platt Released Parties and the Carpenter Released Parties, as defined in the respective Settlement Agreements, the Class Action and any and all currently pending direct purchaser class action lawsuits directly related to the subject matter of this litigation are dismissed with prejudice and in their entirety, on the merits, and, except as provided for in the Settlement Agreement, without costs. This dismissal shall not affect, in any way, Direct Purchasers' right to pursue claims, if any, outside the scope of the releases set forth in the Settlement Agreement.

5. The Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any claims released in the Settlement Agreement (1) against any Leggett & Platt Released Party or (2) against any Carpenter Released Party, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other authority or arbitral or other forum wherever located.

6. The Releasing Parties release, forever discharge, and covenant not to sue the Leggett & Platt Released Parties from and for claims as set forth in the Settlement Agreement. Likewise, the Releasing Parties release, forever discharge, and covenant not to sue the Carpenter Released Parties from and for claims as set forth in the Settlement Agreement

7. This Order does not settle or compromise any claims by Class Representatives or the Direct Purchaser Settlement Class against the Defendants or other persons or entities other than the Leggett & Platt Released Parties or the Carpenter Released Parties, and all rights against any other Defendant or other person or entity are specifically reserved. The sales of Polyurethane Foam to members of the Direct Purchaser Settlement Class by the Leggett & Platt Released Parties and the Carpenter Released Parties shall remain against the non-settling Defendants as a basis for damage claims, and shall be part of any joint and several liability claims against any non-settling Defendant or other person or entity other than the Leggett & Platt Released Parties or the Carpenter Released Parties.

8. Pursuant to Federal Civil Rule 54(b), this Court directs entry of final judgment of dismissal as to the Released Parties.

9. Without affecting the finality of this Order, this Court retains exclusive jurisdiction over the Class Action and the Settlement Agreements, including the administration, interpretation, consummation, and enforcement of the Settlement Agreements.

10. The Escrow Account established by certain of the parties, and into which Settlement Funds have been and will be deposited, plus accrued interest, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and related Treasury Regulations.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                            JACK ZOUHARY
                                            U. S. DISTRICT JUDGE

                                            February 26, 2015