# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

IN RE: POLYURETHANE FOAM
ANTITRUST LITIGATION

MDL Docket No. 2196

Index No. 10-MD-2196 (JZ)

The Document Relates to:

ALL INDIRECT PURCHASER CLASS CASES

## INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS WITH FFP HOLDINGS LLC, FXI HOLDINGS, INC., AND FUTURE FOAM, INC.

Indirect Purchaser Plaintiffs ("IPPs") move for preliminary approval of the settlements entered into with FFP Holdings LLC, FXI Holdings, Inc., and Future Foam, Inc., and in support, state:

1.      On June 19, 2015, IPPs filed a motion for preliminary approval of six settlement agreements (DKT # 1751).  The motion is still pending.

2.      Since that date, IPPs entered into a settlement agreement with FFP Holdings LLC, a copy of which is attached as Exhibit A.

3.      Also since that date, IPPs entered into a settlement agreement with FXI Holdings, Inc., a copy of which is attached as Exhibit B.

4.      Finally, IPPs also entered into a settlement agreement with Future Foam, Inc., a copy of which is attached as Exhibit C.

5.      In support of this motion, IPPs adopt and incorporate the Declaration of Marvin A. Miller (Dkt. # 1751-1) and the memorandum of law filed in support of the earlier motion (Dkt. 1752).

Wherefore, IPPs request that this Court enter an order certifying the Settlement Class, granting preliminary approval of the attached Settlement Agreements, appointing the Class Representatives for the Settlement Class, appointing Marvin A. Miller as Class Counsel of the Settlement Class, and directing that Notice of the Settlement Class be disseminated to members of the Settlement Class.

Dated:  July 27, 2015                              Respectfully submitted,

                                                    s/*Marvin A. Miller*
                                                    Marvin A. Miller
                                                    MILLER LAW LLC
                                                    115 S. LaSalle Street
                                                    Chicago, IL  60603
                                                    312.332.3400

                                                    Counsel for Indirect Purchaser Plaintiff
                                                    Class

**CERTIFICATE OF SERVICE**

I, Marvin A. Miller, certify that on July 27, 2015, I caused to be served the foregoing document in accordance with Paragraph 9 of the Initial Case Management Order entered January 20, 2011.


/s/*Marvin A. Miller*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196 |
| | Index No. 10-MD-2196 (JZ) |
| The Document Relates to: | |
| ALL INDIRECT PURCHASER CLASS CASES | |

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into as of the 17th day of July, 2015, by and among Greg Beastrom, Seth Brown, Susan Gomez, Henry Johs, Joseph Lord, Kirsten Luenz, Gerald & Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Michael Schwartz, Larry Scott, Catherine Wilkinson, Jeffrey S. Williams, Driftwood Hospitality Management (as authorized managing agent for the following entities that own/operate, or that formerly owned/operated, hotels in various states, including: (1) Genwood Memphis I, LLC, owner/operator of the Crowne Plaza Memphis, formerly the Wyndham Garden Hotel Memphis, in Memphis, Tennessee; (2) GFII DVI Cardel Doral, LLC, former owner/operator of the Hampton Inn & Suites Doral, in Miami, Florida; (3) Brad-Sum Colorado Springs, LLC, former owner/operator of the Summerfield Suites Colorado Springs, formerly the Bradford Homesuites Colorado Springs, in Colorado Springs, Colorado; (4) GFII DVI Cardel Sawgrass, LLC, owner/operator of the Crowne Plaza at Sawgrass, in Sunrise, Florida; (5) GFII DVI Cardel Colorado Springs, LLC, formerly Brad-Sum Centennial, LLC, owner/operator of the Staybridge Suites Denver Tech Center, formerly the Bradford Homesuites Centennial, in Centennial, Colorado; (6) DHM Chicago Hotel LP and DHM Chicago Hotel Lessee LP, owner and operator, respectively, of the Avenue Crowne Plaza Chicago Downtown, formerly The Avenue Chicago,

formerly Radisson Chicago, in Chicago, Illinois; (7) DVI Kauai Hotel, LLC, owner and operator of the Radisson Kauai Beach Resort in Lihue, Hawaii; and (8) DHM Minneapolis Hotel, LLC, owner and operator of the Crowne Plaza North in Brooklyn Center, Minnesota), and The Parker Company (as authorized agent for Met 2 Hotel LLC; Bachelor Gulch Properties, LLC; MPE Hotel I (Washington), LLC; and New York Hotel Tenant Co., LLC) (collectively, "Indirect Purchaser Class Plaintiffs"), individually and on behalf of a settlement class (the "Indirect Purchaser Settlement Class," as defined below), and Defendant, FFP Holdings LLC (f/k/a Flexible Foam Products, LLC and f/k/a Flexible Foam Products, Inc.) ("FFP"), parties in the above-captioned action. The Indirect Purchaser Class Plaintiffs and FFP are referred to individually as "Party" and collectively as the "Parties."

WHEREAS, the Indirect Purchaser Class Plaintiffs, on behalf of themselves and on behalf of the Indirect Purchaser Settlement Class, allege in the Class Action, among other things, that FFP participated in a conspiracy with other Defendants in this litigation and unnamed co-conspirators, the purpose and effect of which was to raise, fix, maintain, or stabilize prices and allocate customers for flexible polyurethane foam and flexible polyurethane foam products (including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam), which terms are defined in the Corrected Second Amended Consolidated Class Complaint, filed May 7, 2012 (collectively, "flexible polyurethane foam") in violation of the antitrust laws of the United States, certain States' antitrust, consumer protection, and unfair competition laws, and certain common law doctrines;

WHEREAS, FFP has denied and continues to deny all of the allegations of wrongdoing made in the Class Action, has asserted and would assert defenses to the allegations or claims made in the Class Action, and has denied and continues to deny any liability whatsoever;

WHEREAS, Indirect Purchaser Class Plaintiffs, individually and on behalf of the Indirect Purchaser Settlement Class, Class Members and the Releasing Parties, and FFP agree that this Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of the claims or allegations in the Class Action;

WHEREAS, counsel for Indirect Purchaser Class Plaintiffs has been appointed by the Court to serve as Class Counsel to represent the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Class; and

WHEREAS, Indirect Purchaser Class Plaintiffs and FFP wish to resolve all claims asserted and all claims that could have been asserted on behalf of the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class as set forth herein.

WHEREAS, arm's-length settlement negotiations have taken place between Indirect Purchaser Class Plaintiffs, by and through Class Counsel, and FFP, by and through its counsel, and this Agreement, including agreements incorporated by reference, embodies all of the terms and conditions of the Settlement between FFP and Indirect Purchaser Class Plaintiffs, both individually and on behalf of the Indirect Purchaser Settlement Class and the Releasing Parties, and has been reached as a result of the Parties' negotiations, subject to approval of the Court as provided herein;

WHEREAS, Class Counsel has concluded, after due investigation and after carefully considering the relevant circumstances, including the claims asserted in the complaints filed in the Class Action, the legal and factual defenses thereto and the applicable law, that it would be in the best interests of the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class, and Class Members to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Indirect Purchaser

Class Plaintiffs and the Indirect Purchaser Settlement Class, and, further, that Class Counsel considers the Settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and Class Members; and

WHEREAS, FFP has agreed to enter into this Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against FFP;

NOW, THEREFORE, in consideration of the agreements herein set forth, it is agreed by and among the Parties that the Class Action be settled, compromised, and dismissed on the merits with prejudice as to FFP and all other Released Parties, subject to the approval of the Court, on the following terms and conditions:

1.      Definitions. The following terms, as used in this Agreement, have the following meanings:

a.      Any definitions contained elsewhere in this Agreement that are not defined in this paragraph 1 are incorporated herein by reference.

b.      "Agreement" means this Settlement Agreement by and between FFP and Indirect Purchaser Class Plaintiffs, both individually and on behalf of the Indirect Purchaser Settlement Class.

c.      "Claims Administrator" shall mean A.B. Data, Ltd.

d.      "Class Action" means the indirect purchaser antitrust class actions consolidated under the caption *In re Polyurethane Foam Antitrust Litigation*,

MDL No. 10-MD-2196 (JZ), currently pending in the United States District Court for the Northern District of Ohio.

e.    "Class Counsel" means Lead Class Counsel, Marvin A. Miller of Miller Law LLC, as appointed to represent the Indirect Purchaser Class, and the following: Richard Kerger of Hartman & Kerger, Jay Shapiro of Stearns Weaver Miller Weissler Alhadeff & Sitterson P.A., Eric Barton of Wagstaff & Cartmell, Martin Holmes of Dickinson Wright, Susan Bernstein of Law Offices of Susan Bernstein, Shpetim Ademi of Ademi & O'Reilly, Robert Schubert of Law Offices of Robert Schubert, Avidan Stern of Lynch Stern Thompson LLP, and David Schiller of Schiller& Schiller.

f.    "Class Member" or "Class Members" means any person or entity that is a member or putative member of the Indirect Purchaser Class.

g.    "Class Period" means January 1, 1999, to the Execution Date of this Agreement.

h.    "Class States" shall mean Alabama, Arizona, California, Colorado, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

i.    "Complaint" means the Indirect Purchasers' Corrected Second Amended Class Action Complaint, filed on behalf of the Indirect Purchaser Class and the Indirect Purchaser Class Plaintiffs in the Class Action on May 7, 2012, as

may be amended from time to time, and any other class complaint or similar initiatory pleading filed on behalf of the Indirect Purchaser Class or any Class Member, whether or not consolidated in the Class Action.

j.    "Court" means the United States District Court for the Northern District of Ohio.

k.    "Day" or "days" mean calendar days.

l.    "Defendant" or "Defendants" means any person or entity named as a defendant in the Class Action, whether or not dismissed from the Class Action.

m.    "Effective Date" means the date of Final Approval of this Agreement.

n.    "Escrow Account" means the escrow account established to receive and maintain funds contributed on behalf of FFP for the benefit of the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs.

o.    "Escrow Agreement" means that certain agreement by and among FFP, a bank designated to hold the Escrow Account, and the Indirect Purchaser Settlement Class Plaintiffs (by and through Class Counsel), pursuant to which the Escrow Account is established and funded for the benefit of the Indirect Purchaser Settlement Class.

p.    "Execution Date" means the date of this Agreement.

q.    "Final Approval" means that date which is either: (1) thirty (30) days after the Court's entry of its Final Order and Judgment, as defined below, with no notice of appeal having been filed; or (2) the Final Order and Judgment has been affirmed by a mandate issued by any reviewing court to which any

appeal has been taken, and any further petition for review (including certiorari) has been denied and the time for any appeal or review of the Court's Final Order and Judgment has expired.

r.     "Final Order and Judgment" means an order from the Court finally approving this Agreement and the Settlement and that includes an order of judgment and dismissal of the Class Action as to FFP and the other Released Parties, on the merits, with prejudice, including dismissal of any other complaint or similar initiatory pleading filed by or on behalf of Class Members or Releasing Party alleging similar or identical claims, whether or not consolidated in the Class Action, which judgment shall be binding on the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties, and shall be in substantially the same form as the proposed final judgment to be mutually agreed upon by FFP and its counsel on the one hand, and the Indirect Purchaser Class Plaintiffs, individually and on behalf of the Indirect Purchaser Settlement Class, and Class Counsel on the other hand and submitted to the Court for approval thereof.

s.     "Indirect Purchaser Class" means that class of indirect purchasers of flexible polyurethane foam, including the Indirect Purchaser Class Plaintiffs, as defined and certified by the Court in this Class Action pursuant to Orders dated April 9, 2014 and April 16, 2014 (at Docket Entries 1102 and 1117). Excluded from the Indirect Purchaser Class are Class Members that timely and validly opted out of the Indirect Purchaser Class on or before March 13, 2015.

t.     "Indirect Purchaser Class Plaintiffs" means Greg Beastrom, Seth Brown, Susan Gomez, Henry Johs, Joseph Lord, Kirsten Luenz, Gerald & Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Michael Schwartz, Larry Scott, Catherine Wilkinson, Jeffrey S. Williams, Driftwood Hospitality Management (as authorized managing agent for the following entities that own/operate, or that formerly owned/operated, hotels in various states, including: (1) Genwood Memphis I, LLC, owner/operator of the Crowne Plaza Memphis, formerly the Wyndham Garden Hotel Memphis, in Memphis, Tennessee; (2) GFII DVI Cardel Doral, LLC, former owner/operator of the Hampton Inn & Suites Doral, in Miami, Florida; (3) Brad-Sum Colorado Springs, LLC, former owner/operator of the Summerfield Suites Colorado Springs, formerly the Bradford Homesuites Colorado Springs, in Colorado Springs, Colorado; (4) GFII DVI Cardel Sawgrass, LLC, owner/operator of the Crowne Plaza at Sawgrass, in Sunrise, Florida; (5) GFII DVI Cardel Colorado Springs, LLC, formerly Brad-Sum Centennial, LLC, owner/operator of the Staybridge Suites Denver Tech Center, formerly the Bradford Homesuites Centennial, in Centennial, Colorado; (6) DHM Chicago Hotel LP and DHM Chicago Hotel Lessee LP, owner and operator, respectively, of the Avenue Crowne Plaza Chicago Downtown, formerly The Avenue Chicago, formerly Radisson Chicago, in Chicago, Illinois; (7) DVI Kauai Hotel, LLC, owner and operator of the Radisson Kauai Beach Resort in Lihue, Hawaii; and (8) DHM Minneapolis Hotel, LLC, owner and operator of the Crowne Plaza North in Brooklyn Center, Minnesota), and The Parker Company (as authorized agent

for Met 2 Hotel LLC; Bachelor Gulch Properties, LLC; MPE Hotel I (Washington), LLC; and New York Hotel Tenant Co., LLC).

u.   "Indirect Purchaser Settlement Class" shall have the same definition as the Indirect Purchaser Class, as certified by the Court in this Class Action pursuant to Orders dated April 9, 2014 and April 16, 2014, except that the Indirect Purchaser Settlement Class shall not include Class Members that timely and validly elect to be excluded from the Indirect Purchaser Settlement Class defined herein.

v.   "Opt-Out Period" means the period of time following dissemination of class notice of this Agreement and Settlement during which Class Members are permitted to opt out or exclude themselves from the Indirect Purchaser Settlement Class.

w.   "Preliminary Approval" means a ruling by the Court to preliminarily approve this Agreement and Settlement pursuant to Federal Rule of Civil Procedure 23(e).

x.   "Released Claims" shall have the meaning set forth in paragraph 14 herein.

y.   "Released Party" or "Released Parties" shall refer individually and collectively to FFP its predecessors and successors, present and former, direct and indirect, divisions, subsidiaries and affiliates, and each of their present and former officers, directors, shareholders, agents, employees, partners, principals, members, insurers, heirs, executors, administrators, devisees, representatives, agents, attorneys, and assigns, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly

and severally. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control, in whole or in part, with any of the Released Parties or any associates of any of the foregoing, and each of their present and former officers, directors, shareholders, agents, employees, partners, principals, members, insurers, heirs, executors, administrators, devisees, representatives, agents, attorneys, and assigns, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally.

z.  "Releasing Party" or "Releasing Parties" shall refer, jointly and severally, individually and collectively, to the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, on behalf of themselves and each Class Member and their respective predecessors and successors, their past and current, direct and indirect parents, subsidiaries and affiliates, their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives, and assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control, in whole or in part, with any of the Releasing Parties.

aa.  "Settlement" means the settlement of the Released Claims with respect to the Released Parties, as set forth in this Agreement.

bb.  "Settlement Amount" means the payment of Two Million Seven Hundred Fifty Thousand United States Dollars ($2,750,000.00 USD) to be made by FFP pursuant to this Agreement.

2.  <u>Reasonable Best Efforts to Effectuate this Settlement.</u> On the Execution Date, Indirect Purchaser Class Plaintiffs and FFP shall be bound by the terms of this Agreement, and it shall not be rescinded except in accordance with the terms of this Agreement. The Parties shall recommend approval of this Agreement and Settlement by the Court. Subject to the approval of the Court, the Parties agree to undertake their reasonable best efforts, including all steps and efforts contemplated by this Agreement and such other steps and efforts which are consistent with this Agreement and Settlement that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

3.  <u>Motion for Stay of Deadlines and Preliminary Approval.</u> Promptly after the Execution Date, the Parties will jointly request that the Court enter an order staying all deadlines and proceedings by the Indirect Purchaser Class, including the Indirect Purchaser Class Plaintiffs, against FFP. The Parties will continue to work cooperatively to complete and submit promptly to the Court for approval such additional documentation as may be necessary for the Court to determine whether this Agreement and Settlement should be granted Preliminary Approval. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of the Settlement and certification of the Indirect Purchaser Settlement Class. FFP shall have reasonable opportunity to review and comment on all motion papers in support of the Settlement in advance of filing.

4.  <u>Motion for Final Approval and Entry of Final Judgment.</u> The Parties shall take all reasonable steps to obtain Final Approval of the Agreement and Settlement. If the Court

grants Preliminary Approval of the Agreement and Settlement, the Indirect Purchaser Class Plaintiffs, on their own behalf, and on behalf of the Indirect Purchaser Settlement Class and all Class Members, shall submit, in a form mutually agreed upon by counsel for FFP and Class Counsel, a motion for Final Approval of this Agreement and Settlement by the Court, after notice to Class Members, and shall seek entry of the Final Order and Judgment, in substantially the same form as to be mutually agreed to by the Parties, which will:

a.    fully and finally approve the Settlement contemplated by this Agreement and its terms as being a fair, reasonable, and adequate settlement for the Indirect Purchaser Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct its consummation pursuant to the terms and conditions set forth in this Agreement;

b.    include an order of judgment and dismissal of the Complaint as to FFP and the other Released Parties, on the merits, with prejudice, including dismissal of any other indirect purchaser class actions pending in MDL No. 2196 and dismissal of any other complaint or similar initiatory pleading filed by or on behalf of any of the Releasing Parties alleging similar or identical claims, whether or not consolidated in the Class Action, which judgment shall be binding on the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties;

c.    discharge and release FFP and the other Released Parties from all Released Claims;

d.      enjoin the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties, and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any Released Claims against FFP or the other Released Parties;

e.      reserve continuing and exclusive jurisdiction over the Agreement and Settlement for all purposes, including its interpretation, enforcement, administration, and execution; and,

f.      determine pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and direct that the judgment of dismissal of the Complaint against FFP and the other Released Parties shall be final and appealable and entered forthwith.

5.      <u>Escrow Account.</u> The Escrow Account will be established at a banking institution chartered pursuant to the National Bank Act, to be determined by Class Counsel subject to the reasonable approval of FFP, with such bank serving as escrow agent subject to escrow instructions mutually acceptable to Class Counsel and FFP. Such Escrow Account is to be administered under the Court's continuing supervision and control. If this Agreement does not receive Preliminary or Final Approval, then all amounts paid by FFP into the Escrow Account, plus accrued interest thereon, less (i) an amount of funds up to $275,000, to the extent withdrawn solely for the costs of Notice to the Indirect Purchaser Settlement Class, and (ii) costs and fees of the Escrow Agent not to exceed $5,000, shall be returned to FFP in accordance with the Escrow Agreement and paragraph 16 herein.

6.      <u>Settlement Consideration and Payment.</u> Subject to the provisions of this Agreement, and in consideration of the release of Released Claims and the full, complete, and final settlement of the Class Action against FFP and the other Released Parties, FFP agrees to pay the Settlement Amount in accordance with this paragraph 6. The Settlement Amount represents all sums owed and payable by FFP or other Released Parties pursuant to this Agreement, including payment of damages, attorneys' fees, incentive fees, notice costs, costs of administration and costs of any kind. The Parties agree and acknowledge that none of the Settlement Amount paid by FFP under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.  FFP shall pay the Settlement Amount by depositing Two Million Seven Hundred Fifty Thousand United States dollars ($2,750,000.00 USD) into the Escrow Account not later than ten (10) business days after the Execution Date.  Such payment shall be made by wire transfer in immediately available funds. In the event that any date upon which FFP is required to make a payment falls on a Saturday, Sunday, or U.S. bank holiday, the payment will be made on the next business day.  Until the Effective Date, except as otherwise expressly provided in this Agreement or the Escrow Agreement, no portion of the Settlement Amount can be used for any purpose.

7.      <u>Qualified Settlement Fund.</u> The Escrow Account is intended by the Parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of FFP, a "relation back election" as described in Treas. Reg. §1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Parties shall take all appropriate actions as may be necessary to this end.

For purposes of Treas. Reg. §1.468B-2(k)(3), the Claims Administrator will be treated as the "administrator" of the qualified settlement fund. FFP shall not be responsible for the filing or payment of any taxes or expenses connected to the qualified settlement fund (including, without limitation, taxes, interest and penalties relating to all income and/or gain earned by the fund). In addition, FFP makes no representations or warranties regarding the tax consequences or tax reporting of this Settlement or the receipt of the payments hereunder. The Indirect Purchaser Class Plaintiffs, for themselves, the Indirect Purchaser Settlement Class, Class Members, and the other Releasing Parties, agree to provide to FFP any properly executed original Internal Revenue Service form that may be required from any of the Releasing Parties under U.S. tax laws in connection with this Settlement, including, but not limited to Form W-9 withholding certificate (or applicable other or successor withholding certificates).

8.      <u>Notice to Class and Claims Administration.</u> In the event that the Court preliminarily approves the Settlement, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Order of the Court, provide each Class Member with notice of the Settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the Settlement. Notice of this Agreement and Settlement made to Class Members may be combined with notice of other settlements that the Indirect Purchaser Settlement Class may reach with other Defendants. The form and content of the foregoing notice shall be agreed to by Class Counsel and counsel for FFP.  The Parties agree that the notice shall inform Class Members that, in order to exclude oneself from the Indirect Purchaser Settlement Class, each Class Member must, among other things, identify (i) the flexible polyurethane foam and foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, purchased by such Class Member

during the Class Period, (ii) the State in which each such product was purchased, and (iii) provide the purchase price of each of those products. Consistent with the prior rulings of the Court that publication of the notice satisfies due process, notice shall be given by publication as the Court may direct, as soon as reasonably practical after Preliminary Approval by the Court. Notice may also be given by first class or bulk rate mail presorted to those Class Members who may be identified by reasonable and cost effective means as authorized by the Court. It is understood that the content of such notices will be as agreed to by the Parties and approved by the Court. Indirect Purchaser Class Plaintiffs shall take all necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court.  After Final Approval has been obtained, and with Court approval, all reasonable costs and expenses associated with printing, mailing, and publication of such notice and with administering the Settlement, including without limitation, costs and expenses associated with the Escrow Account, the filing of tax returns and payment of taxes, may be paid out of the Settlement Amount as specified in the Escrow Agreement.  The Claims Administrator shall ensure that each qualified claimant who receives a payment from the Escrowed Funds, as defined in the Escrow Agreement, is a tax resident of the United States of America, and shall be responsible to provide FFP, on its first demand, any documentation necessary to prove that the recipient of the payment from the Escrowed Funds is a tax resident of the United States of America.

         a.      It shall be the sole responsibility of Class Counsel to ensure the Claims Administrator complies with all of the obligations set forth in this Agreement and the Escrow Agreement, including but not limited to proper disbursement of funds in accordance with the Agreement, the obligation to provide FFP with any necessary documentation upon

reasonable request, and the preparation and filing of all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrowed Funds.

b.    FFP shall not have any obligation to provide any information or records in connection with the Indirect Purchaser Class Plaintiffs' provision of notice to Class Members pursuant to this paragraph 8.

c.    In no event shall FFP be responsible for giving notice of this Settlement to Class Members, or for the administration of notice of the Settlement Amount, including but not limited to the expense and cost of such notice and notice administration, except insofar as provided in this paragraph.

9.    <u>Exclusions.</u>    Any person seeking exclusion from the Indirect Purchaser Settlement Class must file a timely written request for exclusion as provided in the Notice to be approved by the Parties and the Court pursuant to paragraph 8 of this Agreement.  Any person that timely files such a valid request shall be excluded from the Indirect Purchaser Settlement Class and shall have no rights with respect to this Settlement. In order to be valid, a request for exclusion must, among other things, identify (i) the flexible polyurethane foam and foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, purchased by the Class Member seeking exclusion during the Class Period, (ii) the State in which each such product was purchased, and (iii) the purchase price of each such product. A request for exclusion that does not comply with such conditions and all of the provisions set forth in the approved notice, including but not limited to (i) not containing all of the required information, (ii) not bearing the proper signature, (iii) being sent to an address other than the one designated, or (iv) not being sent within the time specified, will be invalid, and

each person or entity serving such an invalid request shall be deemed a member of the Indirect Purchaser Settlement Class and shall be bound by this Agreement upon Final Approval.

    a.    With respect to any Class Member who timely and validly requests exclusion from the Indirect Purchaser Settlement Class, FFP reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class Member is an indirect purchaser of flexible polyurethane foam and/or has standing to bring any claim against FFP.

    b.    During the Opt-Out Period, Class Counsel agrees to provide FFP with periodic updated lists of those Class Members who have validly opted out of the Indirect Purchaser Settlement Class, which list shall include each such Class Member's identified purchases of flexible polyurethane foam and foam products, including, carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, made during the Class Period in Class States and the value of such purchases. Within five (5) days of the end of the Opt-Out Period, Class Counsel agrees to provide to FFP a final list of all Class Members who have validly and timely excluded themselves from the Indirect Purchaser Settlement Class, which list shall include each such Class Member's identified purchases of flexible polyurethane foam and foam products, including, carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, made during the Class Period in Class States and the values of such purchases. FFP, Class Counsel and

each of the Indirect Purchaser Class Plaintiffs, covenants and agrees not to take any action, directly or indirectly, designed or intended to influence any Class Member to opt out of the Indirect Purchaser Settlement Class or to assist others in doing so.

c.   FFP may, within ten (10) days from the date on which FFP receives the final list of Class Members that have elected to exclude themselves from this Agreement and Settlement as provided above, terminate this Agreement if Class Members with aggregate purchases of flexible polyurethane foam or foam products, including carpet underlay, bedding (as defined above), and upholstered furniture, during the Class Period in excess of a certain dollar amount (the "Opt-out Threshold") elect to exclude themselves from the Indirect Purchaser Settlement Class. The Opt-out Threshold that shall give rise to FFP's termination rights under this subparagraph shall be specified in a "Supplemental Agreement," being executed by Class Counsel and FFP simultaneously herewith, the provisions of which are incorporated by reference as if fully set forth herein.   The Supplemental Agreement will be submitted concurrently with filing of this Agreement in a separate filing to be made *in camera* and under seal with the Court.

10.   <u>Distribution of the Settlement Amount.</u> The Settlement Amount shall be distributed to eligible members of the Indirect Purchaser Settlement Class in accordance with a plan of allocation to be approved by the Court; provided that no part of the Settlement Amount shall be distributed until the Effective Date. FFP shall not have any responsibility for, or liability

in connection with, the distribution of the Settlement Amount. Indirect Purchaser Settlement Class members who have not timely or validly excluded themselves from the Indirect Purchaser Settlement Class shall be entitled solely to the Settlement Amount for settlement and satisfaction against FFP and the other Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from FFP or the Released Parties. Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Amount or any portion thereof. The Indirect Purchaser Settlement Class, and the other Releasing Parties, as well as their counsel, will be reimbursed and indemnified solely out of the Settlement Amount for all expenses including, but not limited to, the costs of notice of this Agreement and Settlement to Class Members. FFP shall not be liable for any costs, fees, or expenses of any attorneys, experts, advisors, or representatives for the Indirect Purchaser Settlement Class or the Releasing Parties, but all such costs and expenses to the extent approved by the Court shall be paid out of the Settlement Amount following Final Approval. If the Court grants Final Approval of this Agreement and Settlement pursuant to the provisions of paragraph 4 of this Agreement, and FFP's rescission option under paragraph 9(c) hereof and the Supplemental Agreement is not exercised, then, with Court approval, Indirect Purchaser Settlement Class may use the Settlement Amount to pay such costs and expenses for the litigation of this Class Action as set forth in this Agreement.

11.     <u>Attorneys' Fees and Costs.</u> FFP agrees that Class Counsel shall be entitled to such attorneys' fees and costs as the Court may award from the Settlement Amount. All such fees and costs shall be paid only from the Settlement Amount and FFP shall not take any position with respect to Class Counsels' request for an award of attorneys' fees and for reimbursement of costs, expenses and incentive awards for Class Representatives. Any attorneys' fees and costs

paid to Class Counsel from the Settlement Amount shall be paid only to the extent awarded by the Court and only after the Effective Date. FFP shall not be liable for any costs or attorneys' fees incurred by any attorney or law firm, including, without limitation, Class Counsel, on behalf of the Indirect Purchaser Class, the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, or any Class Member or Releasing Party in connection with the Class Action, the Complaint, or any of the Released Claims. Any order or proceeding (or portion thereof) relating solely to the fee, expense or incentive fee application, or any appeal from any fee, expense or incentive fee award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment and the Settlement as set forth herein. No order of the Court or modification or reversal on appeal of any order of the Court concerning any fee, expense, and incentive fee award shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of the Released Parties under this Agreement.

12.    Court Approval of All Disbursements and Distributions. Except as otherwise provided herein or in the Escrow Agreement, no disbursement from or distribution of the Settlement Amount shall be made prior to Final Approval and then only with prior approval of the Court. With Court approval, disbursements from the Settlement Amount may be made to pay administrative and/or past, current or future litigation costs, attorneys' fees, and such other disbursements as the Court shall authorize. FFP shall not have any liability or responsibility with respect to the disbursement, distribution and administration of the Settlement Amount.

13.    Cooperation by FFP. Upon reasonable notice, FFP agrees to make one (1) current employee or officer available to appear at trial in this class action of the Indirect Purchaser Plaintiff Class cases, without subpoena, and to provide written declarations or testimony at

deposition or trial solely for purposes of (1) authenticating and/or (2) admitting into evidence the content of documents or information produced in the litigation by FFP.

14.  <u>Releases.</u>

    a.    Upon Final Approval, and in consideration of this Settlement, each Indirect Purchaser Class Plaintiff, Class Member, and Releasing Party that has not validly and timely excluded himself, herself or itself from the Indirect Purchaser Settlement Class shall, jointly and severally, release, hold harmless, and forever discharge FFP and the Released Parties, jointly and severally, from any and all claims, actions, causes of action, suits, lawsuits, proceedings, damages, judgments, losses, penalties, liabilities, remedies, costs or fees (including attorneys' fees and the fees of expert witnesses), of any kind whatsoever, known or unknown, asserted or unasserted, accrued or un-accrued, in law or in equity, from the beginning of time to the Execution Date, arising out of or relating to the claims made, or which could have been made on the same or similar facts, in the Class Action or Complaint, or in any other complaints filed on behalf of the Releasing Parties alleging similar or identical claims, including the allegations in the Complaint, but excluding any and all class or non-class action claims relating to (i) personal injury, (ii) bankruptcy, (iii) product liability, (iv) breach of warranty, or (v) currently pending class or non-class action claims relating to anticompetitive pricing charged by any Defendant to direct purchasers of flexible polyurethane foam or foam products, including carpet underlay, bedding products or

upholstered furniture products that contain polyurethane foam (together with claims described in paragraph 14(b) of this Agreement, the "Released Claims").

b.  In connection with this Agreement, members of the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and other Releasing Parties acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Class Action and/or the Released Claims. Nevertheless, it is the intention of Class Counsel and the Releasing Parties in executing this Agreement fully, finally and forever to settle, release, discharge, and hold harmless all Released Parties in respect of all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Class Action and/or the Released Claims, except as otherwise stated in this Agreement. The Indirect Purchaser Class Plaintiffs expressly understand, acknowledge, and waive, and all members of the Indirect Purchaser Settlement Class, and other Releasing Parties will be deemed by the Final Order and Judgment to understand, acknowledge, and waive, Section 1542 of the Civil Code of the State of California, which provides that: **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN**

**HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.** Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and other Releasing Parties expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

c.      Indirect Purchaser Settlement Class and other Releasing Parties further agree that they will not file any other suit or action against FFP or other Released Parties arising out of or relating to the Released Claims, or assist others in doing so.

d.      Indirect Purchaser Class Plaintiffs and Class Counsel acknowledge that FFP considers it to be a material term of this Agreement that the provisions of Paragraphs 14(a) through 14(c) will bind all Class Members who have not excluded themselves in a valid and timely manner from the Indirect Purchaser Settlement Class.

15.     <u>Reservation of Claims.</u> The Releasing Parties intend by this Agreement to release only FFP and the other Released Parties with respect to the Released Claims. The Releasing Parties specifically do not intend this Agreement, or any part hereof or any other aspect of the proposed Settlement, to compromise or otherwise affect in any way any rights the Releasing

Parties have or may have against any other person, firm, association, or corporation whatsoever, including, but not limited to, the Defendants in the Class Action, other than FFP and the other Released Parties. The releases set forth in paragraph 14 of this Agreement are not intended to and shall not release any claims other than the Released Claims.

16.   <u>Effect of Disapproval or Rescission by FFP</u>. If the Court does not certify the Indirect Purchaser Settlement Class as defined in this Agreement, or if the Court does not approve this Agreement in all material respects, or if the Court does not enter a Final Order and Judgment as provided for in paragraph 4, or if any judgment approving this Agreement is set aside on appeal, then this Agreement (excepting this paragraph 16 and paragraphs 18, 24 and 25, which shall survive termination or cancellation of this Agreement) may be cancelled and terminated by either (i) FFP or (ii) the Indirect Purchaser Class Plaintiffs (for themselves and all Class Members).

This Agreement may alternatively be cancelled and terminated at the option of FFP under the circumstances provided in paragraph 9(c).

If cancelled and terminated, this Agreement (excepting this paragraph 16 and paragraphs 18, 24 and 25, which shall survive termination or cancellation of this Agreement) shall become null and void, and all funds paid pursuant to paragraph 6 above, including any accrued interest on such funds, less (i) the amount of up to $275,000, to the extent withdrawn solely for the costs of Notice to the Indirect Purchaser Settlement Class, and (ii) costs and fees of the Escrow Agent, not to exceed $5,000, shall be returned to FFP within ten (10) days of such termination. The Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Agreement or if it is rescinded or terminated by either FFP or the Indirect Purchaser Class Plaintiffs pursuant to this paragraph or by FFP pursuant to paragraph 9(c).

Specifically, all negotiations and proceedings connected with this Agreement shall be without prejudice to the rights of any Party hereto, shall not be deemed or construed to be an admission by any Party of any fact or matter, and shall not be used in any way in the Class Action or in any related actions or proceedings, or any other action or proceeding.

17.     <u>Confidentiality of Settlement and Agreement.</u> The Parties agree not to reveal to any person or entity the terms and conditions of this Agreement or any discussions leading up to it, except as may be reasonably necessary: (a) to inform the Court; (b) inform the Indirect Purchaser Class Plaintiffs, the Escrow Agent and Claims Administrator; (c) provide notice to the Indirect Purchaser Settlement Class; (d) seek preliminary and final approval of the Settlement; (e) for the enforcement of this Agreement; (f) to comply with applicable law or an order of a court of competent jurisdiction; (g) for FFP to resolve with any entity raising any contribution claims which relate to the pricing, purchase, sale, marketing, manufacturing, and/or distribution of Polyurethane Foam Products inside and outside the United States, which disclosure shall be on an outside counsel only basis and shall be subject to the recipient's agreement to maintain the confidentiality of the Agreement and its terms and conditions; or (h) for the purpose of financial reporting, the preparation of financial records (e.g., tax returns, financial statements, etc.) or review in the ordinary course of business by lending institutions or third parties who are party to actual or potential business transactions, provided that the disclosure to lending institutions or third-parties is made subject to a strict confidentiality agreement. Each Party shall give reasonable notice to the other Party before complying with an order compelling disclosure of this Agreement or its terms and conditions, in order to give the other Party sufficient time to protect its interests. Nothing herein shall prohibit a Party from disclosing to an Affiliate any information relating to this Agreement and its terms.

18.     Consent to Jurisdiction. FFP and each member of the Indirect Purchaser Settlement Class, and the other Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of this Agreement, including but not limited to, any suit, action, or proceeding in which the provisions of this Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Agreement. In the event that the provisions of this Agreement are asserted by FFP or any other Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, Class Members, the other Releasing Parties, and FFP irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

19.     Resolution of Disputes; Retention of Jurisdiction. Any disputes between or among FFP or any other Released Party, on the one hand, and any member of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, Class Members or any

other Releasing Party, on the other hand, concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation, enforcement and administration of this Agreement.

20.    Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Indirect Purchaser Settlement Class, the Releasing Parties, and the Released Parties. Without limiting the generality of the foregoing, upon certification of the Indirect Purchaser Settlement Class and Final Approval of the Settlement, each and every covenant and agreement herein by the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class and their counsel shall be binding upon all Class Members and the Releasing Parties who have not timely and validly excluded themselves from the Indirect Purchaser Settlement Class.

21.    Sole Remedy. This Agreement shall provide the sole and exclusive remedy for any and all claims released against FFP or any Released Party, and upon entry of the Final Order and Judgment by the Court, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against FFP or any Released Party.

22.    Authorization to Enter Agreement. The undersigned representative of FFP covenants and represents that he or she is fully authorized to enter into and to execute this Agreement on behalf of FFP. Class Counsel represent that he is fully authorized to conduct settlement negotiations with FFP's counsel on behalf of the Indirect Purchaser Class Plaintiffs and the putative Indirect Purchaser Settlement Class and is fully authorized to enter into and execute the Agreement on behalf of the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and the other Releasing Parties.

23.   <u>Notices.</u> All notices under this Agreement shall be in writing. Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier. If directed to the Indirect Purchaser Settlement Class, including any Indirect Purchaser Class Plaintiff, such notice shall be addressed to:

> Marvin A. Miller
> MILLER LAW LLC
> 115 South LaSalle Street, Suite 2910
> Chicago, IL 60603

and if directed to FFP, to:

> Michael D. Mustard
> BARNES & THORNBURG LLP
> 110 East Wayne Street, Suite 600
> Fort Wayne, IN 46802

or such other address as Class Counsel or FFP may designate, from time to time, by giving notice to all Parties hereto in the manner described in this paragraph. Copies of all notices under this Agreement may, at the notifying Party's option, be transmitted by email to the appropriate parties. Providing a copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms provided for in (a), (b), or (c) of this paragraph.

24.   <u>No Admission.</u> Whether or not this Agreement becomes final or is terminated pursuant to its terms, the Parties expressly agree that this Agreement, including any exhibits, and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability, fault, or wrongdoing by FFP or the Released Parties, or of the truth of any of the claims or allegations made in the Class Action or the Complaint, or an admission that the Class Action may be certified as a class action for any purpose other than the

settlement class contemplated by this Agreement. FFP and the Released Parties expressly deny any wrongdoing. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408.

25.     <u>Intended Beneficiaries.</u> No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a member of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, a Released Party, or Class Counsel (on behalf of the Indirect Purchaser Settlement Class and with respect to fees and disbursements to be paid from the Settlement Amount pursuant to Court order).

26.     <u>No Party is the Drafter.</u> None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

27.     <u>Choice of Law.</u> All terms of this Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of Ohio, without regard to its choice of law or conflict of laws principles.

28.     <u>Amendment and Waiver.</u> The terms of this Agreement are contractual and not a mere recital. This Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party specifically indicating the intent to waive. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. The Parties agree that no Party will assert any claim against another based on any alleged subsequent agreement affecting or relating to the terms of this Agreement not in writing and

signed by the Parties. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

29.     Execution in Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the Execution Date.

30.     No Conflict Intended. Any inconsistency between this Agreement and any exhibits attached hereto shall be resolved in favor of this Agreement. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

31.     Integrated Agreement. This Agreement, together with the Escrow Agreement, the Supplemental Agreement and the Confidentiality and Non-diclosure agreement dated April 23, 2015, each incorporated by reference herein, comprise the entire agreement between the Parties, and supersede and replace all prior or contemporaneous agreements or understandings, written or oral, related to the subject matter hereof, and each Party acknowledges that he, she or it makes no other representation or warranty upon which the other Parties can rely other than as stated herein.

32.     Voluntary Settlement. The Parties agree that this Agreement and the Settlement were negotiated in good faith by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent counsel.

IN WITNESS WHEREOF, the Parties, through their duly authorized representatives, enter into this Agreement on the date first above written.


Marvin A. Miller
Matthew E. Van Tine
Lori A. Fanning
Andrew Szot
Kathleen Boychuck
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Phone: (312) 332-3400
mmiller@millerlawllc.com

**Lead Counsel for the Indirect Purchaser Class**

Michael D. Mustard
Barnes & Thornburg LLP
110 East Wayne Street, Suite 600
Fort Wayne, IN 46802
Phone: (260) 423-9440
mike.mustard@btlaw.com

**Counsel for FFP Holdings, LLC**
(f/k/a Flexible Foam Products LLC and
f/k/a Flexible Foam Products, Inc.)

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196 |
| | Index No. 10-MD-2196 (JZ) |
| The Document Relates to: | |
| ALL INDIRECT PURCHASER CLASS CASES | |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into as of the 24th day of July, 2015, by and among Greg Beastrom, Seth Brown, Susan Gomez, Henry Johs, Joseph Lord, Kirsten Luenz, Gerald & Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Michael Schwartz, Larry Scott, Catherine Wilkinson, Jeffrey S. Williams, Driftwood Hospitality Management (as authorized managing agent for the following entities that own/operate, or that formerly owned/operated, hotels in various states, including: (1) Genwood Memphis I, LLC, owner/operator of the Crowne Plaza Memphis, formerly the Wyndham Garden Hotel Memphis, in Memphis, Tennessee; (2) GFII DVI Cardel Doral, LLC, former owner/operator of the Hampton Inn & Suites Doral, in Miami, Florida; (3) Brad-Sum Colorado Springs, LLC, former owner/operator of the Summerfield Suites Colorado Springs, formerly the Bradford Homesuites Colorado Springs, in Colorado Springs, Colorado; (4) GFII DVI Cardel Sawgrass, LLC, owner/operator of the Crowne Plaza at Sawgrass, in Sunrise, Florida; (5) GFII DVI Cardel Colorado Springs, LLC, formerly Brad-Sum Centennial, LLC, owner/operator of the Staybridge Suites Denver Tech Center, formerly the Bradford Homesuites Centennial, in Centennial, Colorado; (6) DHM Chicago Hotel LP and DHM Chicago Hotel Lessee LP, owner and operator, respectively, of the Avenue Crowne Plaza Chicago Downtown, formerly The Avenue Chicago,

formerly Radisson Chicago, in Chicago, Illinois; (7) DVI Kauai Hotel, LLC, owner and operator of the Radisson Kauai Beach Resort in Lihue, Hawaii; and (8) DHM Minneapolis Hotel, LLC, owner and operator of the Crowne Plaza North in Brooklyn Center, Minnesota), and The Parker Company (as authorized agent for Met 2 Hotel LLC; Bachelor Gulch Properties, LLC; MPE Hotel I (Washington), LLC; and New York Hotel Tenant Co., LLC) (collectively, "Indirect Purchaser Class Plaintiffs"), individually and on behalf of a settlement class (the "Indirect Purchaser Settlement Class," as defined below), and Defendant, FXI Holdings, Inc. (formerly known as Foamex Innovations, Inc. ("FXI")), parties in the above-captioned action (the "Class Action"). The Indirect Purchaser Class Plaintiffs and FXI are referred to individually as "Party" and collectively as the "Parties."

WHEREAS, the Indirect Purchaser Class Plaintiffs, on behalf of themselves and on behalf of the Indirect Purchaser Settlement Class, allege in the Class Action, among other things, that FXI participated in a conspiracy with other Defendants in this litigation and unnamed co-conspirators, the purpose and effect of which was to raise, fix, maintain, or stabilize prices and allocate territories or customers for flexible polyurethane foam and flexible polyurethane foam products (including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam), which terms are defined in the Corrected Second Amended Consolidated Class Complaint, filed May 7, 2012 (collectively, "flexible polyurethane foam") in violation of the antitrust laws of the United States, certain States' antitrust, consumer protection, and unfair competition laws, and certain common law doctrines;

WHEREAS, FXI has denied and continues to deny any and all allegations of wrongdoing made in the Class Action, has asserted and would assert defenses to the  allegations or claims made in the Class Action, and has denied and continues to deny any liability whatsoever;

WHEREAS, Indirect Purchaser Class Plaintiffs, individually and on behalf of the Indirect Purchaser Settlement Class, Class Members and the Releasing Parties, and FXI agree that this Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of the claims or allegations in the Class Action;

WHEREAS, counsel for Indirect Purchaser Class Plaintiffs has been appointed by the Court to serve as Class Counsel to represent the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Class; and

WHEREAS, Indirect Purchaser Class Plaintiffs and FXI wish to resolve all claims asserted and all claims that were or could have been asserted on behalf of the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class as set forth herein, as well as all other claims relating to or arising from allegations that prices for Flexible Polyurethane Foam were fixed, stabilized or maintained, or that customers or territories for Flexible Polyurethane Foam were allocated or divided, or that FXI or any of the other Released Parties otherwise engaged in anticompetitive acts or practices in connection with the purchase, sale or transfer of Flexible Polyurethane Foam or engaged in unfair, deceptive, or unlawful acts or practices related to the facts and allegations in the Indirect Purchaser Plaintiffs' Complaint filed in the Class Action;

WHEREAS, arm's-length settlement negotiations have taken place between Indirect Purchaser Class Plaintiffs, by and through Class Counsel, and FXI, by and through its counsel, and this Agreement, including agreements incorporated by reference, embodies all of the terms and conditions of the Settlement between FXI and Indirect Purchaser Class Plaintiffs, both individually and on behalf of the Indirect Purchaser Settlement Class and the Releasing Parties, and has been reached as a result of the Parties' negotiations, subject to approval of the Court as provided herein;

WHEREAS, Class Counsel has concluded, after due investigation and after carefully considering the relevant circumstances, including the claims asserted in the complaints filed in the Class Action, the legal and factual defenses thereto and the applicable law, that it would be in the best interests of the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class, and Class Members to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class, and, further, that Class Counsel considers the Settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and Class Members and the other Releasing Parties; and

WHEREAS, FXI has agreed to enter into this Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against FXI or the Released Parties in the Complaint or relating to or arising from allegations that prices for Flexible Polyurethane Foam were fixed, stabilized or maintained, or that customers or territories for Flexible Polyurethane Foam were allocated or divided, or that FXI or any of the other Released Parties otherwise engaged in anticompetitive acts or practices in connection with the purchase or sale of Flexible Polyurethane Foam or engaged in unfair, deceptive, or unlawful acts or practices related to the facts and allegations in the Indirect Purchaser Plaintiffs' Complaint filed in the Class Action;

NOW, THEREFORE, in consideration of the agreements herein set forth and the other good and valuable consideration provided for in this Agreement, the adequacy of which is acknowledged by the Parties, it is agreed by and among the Parties that the Class Action be settled, compromised, and dismissed on the merits with prejudice as to FXI and all other

Released Parties including all claims that were raised in the Complaint or could have been raised based on the facts alleged in the Complaint or any facts uncovered through discovery in the Class Action that relate to the allegations in the Complaint and disclosed in the public record, shall be released, both subject to the approval of the Court, on the following terms and conditions:

1.  <u>Definitions.</u> The following terms, as used in this Agreement, have the following meanings:

   a.  Any definitions contained elsewhere in this Agreement that are not defined in this paragraph 1 are incorporated herein by reference.

   b.  "Agreement" means this Settlement Agreement.

   c.  "Claims Administrator" shall mean A.B. Data, Ltd.

   d.  "Class Action" means the indirect purchaser antitrust class actions consolidated under the caption *In re Polyurethane Foam Antitrust Litigation*, MDL No. 10-MD-2196 (JZ), currently pending in the United States District Court for the Northern District of Ohio.

   e.  "Class Counsel" means Lead Class Counsel, Marvin A. Miller of Miller Law LLC, as appointed to represent the Indirect Purchaser Class, and the following: Richard Kerger of Hartman & Kerger, Jay Shapiro of Stearns Weaver Miller Weissler Alhadeff & Sitterson P.A., Eric Barton of Wagstaff & Cartmell, Martin Holmes of Dickinson Wright, Susan Bernstein of Law Offices of Susan Bernstein, Shpetim Ademi of Ademi & O'Reilly, Robert Schubert of Law Offices of Robert Schubert, Avidan Stern of Lynch Stern Thompson LLP, and David Schiller of Schiller& Schiller.

f.   "Class Member" or "Class Members" means any Person that is a member or putative member of the Indirect Purchaser Class.

g.   "Class Period" means January 1, 1999, to August 1, 2015.

h.   "Class States" shall mean Alabama, Arizona, California, Colorado, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

i.   "Complaint" means the Indirect Purchasers' Corrected Second Amended Class Action Complaint, filed on behalf of the Indirect Purchaser Class and the Indirect Purchaser Class Plaintiffs in the Class Action on May 7, 2012, as may be amended from time to time, and any other class complaint or similar initiatory pleading filed on behalf of the Indirect Purchaser Class or any Class Member, whether or not consolidated in the Class Action.

j.   "Court" means the United States District Court for the Northern District of Ohio.

k.   "Day" or "days" mean calendar days.

l.   "Defendant" or "Defendants" means any Person named as a defendant in the Class Action, whether or not dismissed from the Class Action.

m.   "Effective Date" means the date of Final Approval of this Agreement.

n.     "Escrow Account" means the escrow account established to receive and maintain funds paid on behalf of FXI for the benefit of the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs.

o.     "Escrow Agreement" means that certain agreement by and among FXI, a bank designated to hold the Escrow Account, and the Indirect Purchaser Settlement Class Plaintiffs (by and through Class Counsel), pursuant to which the Escrow Account is established and funded for the benefit of the Indirect Purchaser Settlement Class.

p.     "Execution Date" means the date of this Agreement.

q.     "Final Approval" means that date which is either: (1) thirty (30) days after the Court's entry of its Final Order and Judgment, as defined below, with no notice of appeal having been filed; or (2) the Final Order and Judgment has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, or any appeal has been dismissed, and any further petition for review (including certiorari) has been denied and the time for any appeal or review of the Court's Final Order and Judgment has expired.

r.     "Final Order and Judgment" means an order from the Court finally approving this Agreement and the Settlement and that includes an order of judgment and dismissal of the Class Action as to FXI and the other Released Parties, on the merits, with prejudice, including dismissal of any other complaint or similar initiatory pleading filed by or on behalf of Class Members or Releasing Party alleging similar or identical claims, whether or not consolidated in the Class Action, which judgment shall be binding on the Indirect Purchaser Settlement

Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties, and shall be in substantially the same form as the proposed final judgment to be mutually agreed upon by FXI and its counsel on the one hand, and the Indirect Purchaser Class Plaintiffs, individually and on behalf of the Indirect Purchaser Settlement Class, and Class Counsel on the other hand and submitted to the Court for approval thereof.

s.  "Indirect Purchaser Class" means that class of indirect purchasers of flexible polyurethane foam, including the Indirect Purchaser Class Plaintiffs, as defined and certified by the Court in this Class Action pursuant to Orders dated April 9, 2014 and April 16, 2014 (at Docket Entries 1102 and 1117). Excluded from the Indirect Purchaser Class are Class Members that timely and validly opted out of the Indirect Purchaser Class on or before March 13, 2015.

t.  "Indirect Purchaser Class Plaintiffs" means Greg Beastrom, Seth Brown, Susan Gomez, Henry Johs, Joseph Lord, Kirsten Luenz, Gerald & Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Michael Schwartz, Larry Scott, Catherine Wilkinson, Jeffrey S. Williams, Driftwood Hospitality Management (as authorized managing agent for the following entities that own/operate, or that formerly owned/operated, hotels in various states, including: (1) Genwood Memphis I, LLC, owner/operator of the Crowne Plaza Memphis, formerly the Wyndham Garden Hotel Memphis, in Memphis, Tennessee; (2) GFII DVI Cardel Doral, LLC, former owner/operator of the Hampton Inn & Suites Doral, in Miami, Florida; (3) Brad-Sum Colorado Springs, LLC, former

owner/operator of the Summerfield Suites Colorado Springs, formerly the Bradford Homesuites Colorado Springs, in Colorado Springs, Colorado; (4) GFII DVI Cardel Sawgrass, LLC, owner/operator of the Crowne Plaza at Sawgrass, in Sunrise, Florida; (5) GFII DVI Cardel Colorado Springs, LLC, formerly Brad-Sum Centennial, LLC, owner/operator of the Staybridge Suites Denver Tech Center, formerly the Bradford Homesuites Centennial, in Centennial, Colorado; (6) DHM Chicago Hotel LP and DHM Chicago Hotel Lessee LP, owner and operator, respectively, of the Avenue Crowne Plaza Chicago Downtown, formerly The Avenue Chicago, formerly Radisson Chicago, in Chicago, Illinois; (7) DVI Kauai Hotel, LLC, owner and operator of the Radisson Kauai Beach Resort in Lihue, Hawaii; and (8) DHM Minneapolis Hotel, LLC, owner and operator of the Crowne Plaza North in Brooklyn Center, Minnesota), and The Parker Company (as authorized agent for Met 2 Hotel LLC; Bachelor Gulch Properties, LLC; MPE Hotel I (Washington), LLC; and New York Hotel Tenant Co., LLC).

u.    "Indirect Purchaser Settlement Class" shall have the same definition as the Indirect Purchaser Class, as certified by the Court in this Class Action pursuant to Orders dated April 9, 2014 and April 16, 2014, except that the Indirect Purchaser Settlement Class Period shall be from January 1, 1999 to August 1, 2015 and shall not include Class Members that timely and validly elect to be excluded from the Indirect Purchaser Settlement Class defined herein.

v.  "Notice Payment" means a payment apart from the Settlement Amount in the sum of $500,000 which shall be used solely for purposes of providing Notice to the Class and Class Notice Administration.

w.  "Opt-Out Period" means the period of time following dissemination of class notice of this Agreement and Settlement during which Class Members are permitted to opt out or exclude themselves from the Indirect Purchaser Settlement Class.

x.  "Person" means any individual, corporation, limited liability corporation or company, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, or unincorporated association.

y.  "Preliminary Approval" means a ruling by the Court to preliminarily approve this Agreement and Settlement pursuant to Federal Rule of Civil Procedure 23(e).

z.  "Released Claims" shall have the meaning set forth in paragraph 14 herein.

aa.  "Released Party" or "Released Parties" shall mean, individually and collectively, FXI and Foamex International, Inc., their predecessors and successors, present and former, direct and indirect, divisions, subsidiaries and affiliates, and each of their present and former officers, directors, shareholders, agents, employees, partners, principals, members, insurers, heirs, executors, administrators, devisees, representatives, agents, attorneys, and assigns, as well as any Person acting on behalf of or through any of them in any capacity whatsoever, jointly and severally. As used in this paragraph,

"affiliates" means entities controlling, controlled by or under common ownership or control, in whole or in part, with any of the Released Parties or any associates of any of the foregoing, and each of their present and former officers, directors, shareholders, agents, employees, partners, principals, members, insurers, heirs, executors, administrators, devisees, representatives, agents, attorneys, and assigns, as well as any Person acting on behalf of or through any of them in any capacity whatsoever, jointly and severally.

bb.  "Releasing Party" or "Releasing Parties" shall refer, jointly and severally, individually and collectively, to the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, on behalf of themselves and each Class Member and their respective predecessors and successors, their past and current, direct and indirect parents, subsidiaries and affiliates, their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives, and assigns of all such Persons, as well as any Persons acting on behalf of or through any of them in any capacity whatsoever, jointly or severally. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control, in whole or in part, with any of the Releasing Parties.

cc.  "Settlement" means the settlement of the Released Claims, including all claims that were raised in the Complaint or could have been raised based on the facts alleged in the Complaint or facts uncovered through discovery in the Class Action

that relate to the allegations in the Complaint and disclosed in the public record, by the Indirect Purchaser Class and Class Members, through the Indirect Purchaser Settlement Class, with respect to the Released Parties, as set forth in this Agreement. Notwithstanding the foregoing, nothing in this release shall reduce or limit the rights granted to FXI by and through the Final Order and Judgment.

dd. "Settlement Amount" means the payment of Nine Million United States Dollars ($9,000,000.00 USD) to be made by FXI pursuant to this Agreement.

2. <u>Reasonable Best Efforts to Effectuate this Settlement.</u> On the Execution Date, Indirect Purchaser Class Plaintiffs and FXI shall be bound by the terms of this Agreement, and it shall not be rescinded or terminated except in accordance with the terms of this Agreement. The Parties shall recommend approval of this Agreement and Settlement by the Court. Subject to the approval of the Court, the Parties agree to undertake their reasonable best efforts, including all steps and efforts contemplated by this Agreement and such other steps and efforts which are consistent with this Agreement and Settlement that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement and obtain all approvals; it being expressly agreed that Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Class Plaintiffs shall be responsible for and addressing any objections as may be made to the Settlement and/or this Agreement and that no further consideration shall be required or sought from FXI.

3. <u>Motion for Stay of Deadlines and Preliminary Approval.</u> Promptly after the Execution Date, the Parties will jointly request that the Court enter an order staying all deadlines and proceedings by the Indirect Purchaser Class, including the Indirect Purchaser Class

Plaintiffs, against FXI. The Parties will continue to work cooperatively to complete and submit promptly to the Court for approval such additional documentation as may be necessary for the Court to determine whether this Agreement and Settlement should be granted Preliminary Approval. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of the Settlement and certification of the Indirect Purchaser Settlement Class. FXI shall have reasonable opportunity to review and approve all motion papers in support of the Settlement in advance of filing (such approval not to be unreasonably withheld or delayed).

4.   <u>Motion for Final Approval and Entry of Final Judgment.</u> The Parties shall take all reasonable steps to obtain Final Approval of the Agreement and Settlement. If the Court grants Preliminary Approval of the Agreement and Settlement, the Indirect Purchaser Class Plaintiffs, on their own behalf, and on behalf of the Indirect Purchaser Settlement Class and all Class Members, shall submit, in a form mutually agreed upon by counsel for FXI and Class Counsel, a motion for Final Approval of this Agreement and Settlement by the Court, after notice to Class Members, and shall seek entry of the Final Order and Judgment, in substantially the same form as to be mutually agreed to by the Parties, which will:

    a.   fully and finally approve the Settlement contemplated by this Agreement and its terms as being a fair, reasonable, and adequate settlement for the Indirect Purchaser Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct its consummation pursuant to the terms and conditions set forth in this Agreement;

    b.   include an order of judgment and dismissal of the Complaint as to FXI and the other Released Parties, on the merits, with prejudice and without costs, pursuant to Rule 58 of the Federal Rules of Civil Procedure,

including dismissal of any other indirect purchaser class actions pending in the Class Action and dismissal of any other complaint or similar initiatory pleading filed by or on behalf of any of the Releasing Parties alleging similar or identical claims, whether or not consolidated in the Class Action, which judgment shall be binding on the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties;

c.   discharge and release FXI and the other Released Parties from all Released Claims;

d.   enjoin the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties, and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any Released Claims against FXI or the other Released Parties;

e.   reserve continuing and exclusive jurisdiction over the Agreement and Settlement for all purposes, including its interpretation, enforcement, administration, and execution; and,

f.   determine pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and direct that the judgment of dismissal with prejudice of the Complaint against FXI and the other Released Parties shall be final and appealable and entered forthwith.

5.   <u>Escrow Account.</u> The Escrow Account will be established at a banking institution chartered pursuant to the National Bank Act, to be determined by Class Counsel

subject to the reasonable approval of FXI, with such bank serving as escrow agent subject to escrow instructions mutually acceptable to Class Counsel and FXI. Such Escrow Account is to be administered under the Court's continuing supervision and control. In addition to the Settlement Amount, FXI shall deposit into the Escrow Account, not later than July 31, 2015, the Notice Payment which shall be used for purposes of providing Notice to the Class and for Class Notice Administration. If this Agreement does not receive Preliminary or Final Approval, or is subsequently terminated as provided for herein, then all amounts paid by FXI into the Escrow Account, plus accrued interest thereon, less (i) the Notice Payment of $500,000 to be withdrawn solely for the costs of Notice to the Indirect Purchaser Settlement Class and Class Notice Administration, upon notice to FXI and (ii) costs and fees of the Escrow Agent not to exceed $5,000, shall be returned to FXI in accordance with the Escrow Agreement and paragraph 16 herein, upon notice to FXI.  No other disbursements of funds from the Escrow Account will occur without an order of the Court.

6. <u>Settlement Consideration and Payment.</u> Subject to the provisions of this Agreement, and in consideration of the release of Released Claims and the full, complete, and final settlement of the Class Action against FXI and the other Released Parties, FXI agrees to pay the Settlement Amount and Notice Payment in accordance with this paragraph 6. The Settlement Amount and Notice Payment represent all sums owed and payable by FXI or other Released Parties pursuant to this Agreement, including payment of damages, attorneys' fees, incentive fees, notice costs, costs of administration and costs or fees of any kind. The Parties agree and acknowledge that none of the Settlement Amount or Notice Payment paid by FXI under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.  FXI shall pay the Settlement Amount and Notice Payment by depositing Nine Million Five Hundred Thousand

United States dollars ($9,500,000.00 USD) into the Escrow Account not later than July 31, 2015. Such remittance shall be made by wire transfer in immediately available funds. Until the Effective Date, except as otherwise expressly provided in this Agreement or the Escrow Agreement, no portion of the Settlement Amount can be used for any purpose.

7. <u>Qualified Settlement Fund.</u> The Escrow Account is intended by the Parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of FXI, a "relation back election" as described in Treas. Reg. §1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Parties shall take all appropriate actions as may be necessary to this end. For purposes of Treas. Reg. §1.468B-2(k)(3), the Claims Administrator will be treated as the "administrator" of the qualified settlement fund. FXI shall not be responsible for the filing or payment of any taxes or expenses connected to the qualified settlement fund (including, without limitation, taxes, interest and penalties relating to all income and/or gain earned by the fund). In addition, FXI makes no representations or warranties regarding the tax consequences or tax reporting of this Settlement or the receipt of the payments hereunder. The Indirect Purchaser Class Plaintiffs, for themselves, the Indirect Purchaser Settlement Class, Class Members, and the other Releasing Parties, agree to provide to FXI any properly executed original Internal Revenue Service form that may be required from any of the Releasing Parties under U.S. tax laws in connection with this Settlement, including, but not limited to Form W-9 withholding certificate (or applicable other or successor withholding certificates).

8.     Notice to Class and Claims Administration. In the event that the Court preliminarily approves the Settlement, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Order of the Court, provide each Class Member with notice of the Settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the Settlement. Notice of this Agreement and Settlement made to Class Members may be combined with notice of other settlements that the Indirect Purchaser Settlement Class may reach with other Defendants. The form and content of the foregoing notice shall be agreed to by Class Counsel and counsel for FXI, and shall be approved by the Court.  The Parties agree that the notice shall inform Class Members that, in order to exclude oneself from the Indirect Purchaser Settlement Class, each Class Member must, among other things, identify (i) the flexible polyurethane foam and foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, purchased by such Class Member during the Class Period, (ii) the State in which each such product was purchased, and (iii) provide the purchase price of each of those products. Consistent with the prior rulings of the Court that publication of the notice satisfies due process, notice shall be given by publication as the Court may direct, as soon as reasonably practical after Preliminary Approval by the Court. Notice may also be given by first class or bulk rate mail presorted to those Class Members who may be identified by reasonable and cost effective means as authorized by the Court. It is understood that the content of such notices will be as agreed to by the Parties and approved by the Court. Indirect Purchaser Class Plaintiffs shall take all necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court. After Final Approval has been obtained, and with Court approval, all reasonable costs and expenses associated with printing, mailing, and publication of such notice and with administering

the Settlement, including without limitation, costs and expenses associated with the Escrow Account, the filing of tax returns and payment of taxes, may be paid out of the Settlement Amount and Notice Payment as specified in the Escrow Agreement.  The Claims Administrator shall ensure that each qualified claimant who receives a payment from the Escrowed Funds, as defined in the Escrow Agreement, is a tax resident of the United States of America, and shall be responsible to provide FXI, on its first demand, any documentation necessary to prove that the recipient of the payment from the Escrowed Funds is a tax resident of the United States of America.

a.  It shall be the sole responsibility of Class Counsel to ensure the Claims Administrator complies with all of the obligations set forth in this Agreement and the Escrow Agreement, including but not limited to proper disbursement of funds in accordance with the Agreement, the obligation to provide FXI with any necessary documentation upon reasonable request, and the preparation and filing of all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrowed Funds.

b.  FXI shall not have any obligation to provide any information or records in connection with the Indirect Purchaser Class Plaintiffs' provision of notice to Class Members pursuant to this paragraph 8.

c.  In no event shall FXI be responsible for giving notice of this Settlement to Class Members, or for the administration of notice of the Settlement Amount, including but not limited to the expense and cost of such notice and notice administration, except insofar as provided in this paragraph.

9.     Exclusions.    Any Person seeking exclusion from the Indirect Purchaser Settlement Class must file a timely written request for exclusion as provided in the Notice to be approved by the Parties and the Court pursuant to paragraph 8 of this Agreement.  Any Person who timely files such a valid request shall be excluded from the Indirect Purchaser Settlement Class and shall have no rights with respect to this Settlement. In order to be valid, a request for exclusion must, among other things, identify (i) the flexible polyurethane foam and foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, purchased by the Class Member seeking exclusion during the Class Period, (ii) the State in which each such product was purchased, and (iii) the purchase price of each such product. A request for exclusion that does not comply with such conditions and all of the provisions set forth in the approved notice, including but not limited to (i) not containing all of the required information, (ii) not bearing the proper signature, (iii) being sent to an address other than the one designated, or (iv) not being sent within the time specified, will be invalid, and each Person serving such an invalid request shall be deemed a member of the Indirect Purchaser Settlement Class and shall be bound by this Agreement upon Final Approval.

a.     With respect to any Class Member who timely and validly requests exclusion from the Indirect Purchaser Settlement Class, FXI reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class Member is an indirect purchaser of flexible polyurethane foam and/or has standing to bring any claim against FXI.

b.     During the Opt-Out Period, Class Counsel agrees to provide FXI with periodic updated lists of those Class Members who have validly opted out

of the Indirect Purchaser Settlement Class, which list shall include each such Class Member's identified purchases of flexible polyurethane foam and foam products, including, carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, made during the Class Period in Class States and the value of such purchases. Within five (5) days of the end of the Opt-Out Period, Class Counsel agrees to provide to FXI a final list of all Class Members who have validly and timely excluded themselves from the Indirect Purchaser Settlement Class, which list shall include each such Class Member's identified purchases of flexible polyurethane foam and foam products, including, carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, made during the Class Period in Class States and the values of such purchases. FXI, Class Counsel and each of the Indirect Purchaser Class Plaintiffs, covenants and agrees not to take any action, directly or indirectly, designed or intended to influence any Class Member to opt out of the Indirect Purchaser Settlement Class or to assist others in doing so.

c.    FXI may, within ten (10) days from the date on which FXI receives the final list of Class Members that have elected to exclude themselves from this Agreement and Settlement as provided above, terminate this Agreement if Class Members with aggregate purchases of flexible polyurethane foam or foam products, including carpet underlay, bedding (as defined above), and upholstered furniture, during the Class Period in

excess of a certain dollar amount (the "Opt-out Threshold") elect to exclude themselves from the Indirect Purchaser Settlement Class. The Opt-out Threshold that shall give rise to FXI's termination rights under this subparagraph shall be specified in a "Supplemental Agreement," being executed by Class Counsel and FXI simultaneously herewith, the provisions of which are incorporated by reference as if fully set forth herein. The Supplemental Agreement will be submitted concurrently with filing of this Agreement in a separate filing to be made *in camera* and under seal with the Court.

10. <u>Distribution of the Settlement Amount.</u> The Settlement Amount shall be distributed to eligible members of the Indirect Purchaser Settlement Class in accordance with a plan of allocation to be approved by the Court; provided that no part of the Settlement Amount shall be distributed until the Effective Date. FXI shall not have any responsibility for, or liability in connection with, the distribution of the Settlement Amount. Indirect Purchaser Settlement Class members who have not timely or validly excluded themselves from the Indirect Purchaser Settlement Class shall be entitled solely to the Settlement Amount for settlement and satisfaction against FXI and the other Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from FXI or the Released Parties. Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Amount or Notice Payment or any portion thereof. The Indirect Purchaser Settlement Class, and the other Releasing Parties, as well as their counsel, will be reimbursed and indemnified solely out of the Settlement Amount and Notice Payment for all expenses including, but not limited to, the costs of notice of this Agreement and Settlement to Class Members. FXI shall not be liable for any costs, fees, or

expenses of any attorneys, experts, advisors, or representatives for the Indirect Purchaser Settlement Class or the Releasing Parties, but all such costs and expenses to the extent approved by the Court shall be paid out of the Settlement Amount following Final Approval. If the Court grants Final Approval of this Agreement and Settlement pursuant to the provisions of paragraph 4 of this Agreement, and FXI's right to rescission under paragraph 9(c) hereof and the Supplemental Agreement, if any, is not be exercised, then, with Court approval, Indirect Purchaser Settlement Class may use the Settlement Amount to pay such costs and expenses for the litigation of this Class Action as set forth in this Agreement.

11.     Attorneys' Fees and Costs. FXI agrees that Class Counsel shall be entitled to such attorneys' fees and costs as the Court may award from the Settlement Amount. All such fees and costs shall be paid only from the Settlement Amount and FXI shall not take any position with respect to Class Counsels' request for an award of attorneys' fees and for reimbursement of costs, expenses and incentive awards for Class Representatives. Any attorneys' fees and costs paid to Class Counsel from the Settlement Amount shall be paid only to the extent awarded by the Court and only after the Effective Date. FXI shall not be liable for any costs or attorneys' fees incurred by any attorney or law firm, including, without limitation, Class Counsel, on behalf of the Indirect Purchaser Class, the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, or any Class Member or Releasing Party in connection with the Class Action, the Complaint, or any of the Released Claims. Any order or proceeding (or portion thereof) relating solely to the fee, expense or incentive fee application, or any appeal from any fee, expense or incentive fee award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment and the Settlement as set forth herein. No order of the Court or

modification or reversal on appeal of any order of the Court concerning any fee, expense, and incentive fee award shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of the Released Parties under this Agreement.

12.     Court Approval of All Disbursements and Distributions. Except as otherwise provided herein or in the Escrow Agreement, no disbursement from or distribution of the Settlement Amount shall be made prior to Final Approval and then only with prior approval of the Court. With Court approval, disbursements from the Settlement Amount may be made to pay administrative and/or past, current or future litigation costs, attorneys' fees, and such other disbursements as the Court shall authorize. FXI shall not have any liability or responsibility with respect to the disbursement, distribution and administration of the Settlement Amount.

13.     Cooperation by FXI. Upon reasonable notice, FXI agrees to make up to two current employees or officers available to appear at trial in this Class Action of the Indirect Purchaser Plaintiff Class cases, without subpoena, to provide written declarations or testimony at deposition or trial solely for purposes of (1) authenticating and/or (2) admitting into evidence the content of documents or information produced in the litigation by FXI.

14.     Releases.

a.      Upon Final Approval, and in consideration of this Settlement, each Indirect Purchaser Class Plaintiff, Class Member, and Releasing Party that has not validly and timely excluded himself, herself or itself from the Indirect Purchaser Settlement Class shall, jointly and severally, release, hold harmless, and forever discharge FXI and the Released Parties, jointly and severally, from any and all claims, actions, causes of action, suits, lawsuits, proceedings, damages, judgments, losses, penalties,

liabilities, remedies, costs or fees (including attorneys' fees and the fees of expert witnesses), of any kind whatsoever, known or unknown, asserted or unasserted, suspected or unsuspected, concealed or hidden, , accrued or un-accrued, in law or in equity, from the beginning of time to the Execution Date, arising out of or relating to the claims made, or which could have been made on the same or similar facts or based upon discovery provided that relates to the allegations in the Complaint and disclosed in the public record in the Class Action or Complaint, or in any other complaints filed on behalf of the Releasing Parties alleging similar or identical claims, including the allegations in the Complaint, but excluding any and all class or non-class action claims relating to (i) personal injury, (ii) bankruptcy, (iii) product liability, (iv) breach of warranty, or (v) currently pending class or non-class action claims relating to anticompetitive pricing charged by any Defendant to direct purchasers of flexible polyurethane foam or foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam (together with claims described in paragraph 14(b) of this Agreement, the "Released Claims").

b.     In connection with this Agreement, members of the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and other Releasing Parties acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning

the subject matter of the Class Action and/or the Released Claims. Nevertheless, it is the intention of Class Counsel and the Releasing Parties in executing this Agreement fully, finally and forever to settle, release, discharge, and hold harmless all Released Parties in respect of all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Class Action and/or the Released Claims, except as otherwise stated in this Agreement. The Indirect Purchaser Class Plaintiffs expressly understand, acknowledge, and waive, and all members of the Indirect Purchaser Settlement Class, and other Releasing Parties will be deemed by the Final Order and Judgment to understand, acknowledge, and waive, Section 1542 of the Civil Code of the State of California, which provides that: **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.** Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and other Releasing Parties expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or

territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

c.    Indirect Purchaser Settlement Class and other Releasing Parties further agree that they will not file any other suit or action against FXI or other Released Parties arising out of or relating to the Released Claims, or assist others in doing so.

d.    Indirect Purchaser Class Plaintiffs and Class Counsel acknowledge that FXI considers it to be a material term of this Agreement that the provisions of Paragraphs 14(a) through 14(c) will bind all Class Members who have not excluded themselves in a valid and timely manner from the Indirect Purchaser Settlement Class.

15.    <u>Reservation of Claims.</u> The Releasing Parties intend by this Agreement to release only FXI and the other Released Parties with respect to the Released Claims. The Releasing Parties specifically do not intend this Agreement, or any part hereof or any other aspect of the proposed Settlement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other Person, firm, association, or corporation whatsoever, including, but not limited to, the Defendants in the Class Action, other than FXI and the other Released Parties. The releases set forth in paragraph 14 of this Agreement are not intended to and shall not release any claims other than the Released Claims.

16.    <u>Effect of Disapproval or Termination by FXI.</u> If the Court does not certify the Indirect Purchaser Settlement Class as defined in this Agreement, or if the Court does not approve this Agreement in all material respects, or if the Court does not enter a Final Order and Judgment as provided for in paragraph 4, or if any judgment approving this Agreement is set

aside on appeal, then this Agreement (excepting this paragraph 16 and paragraphs 18, 24 and 25, which shall survive termination or cancellation of this Agreement) may be cancelled and terminated by either (i) FXI or (ii) the Indirect Purchaser Class Plaintiffs (for themselves and all Class Members).

This Agreement may alternatively be cancelled and terminated at the option of FXI under the circumstances provided in paragraph 9(c).

If cancelled and terminated, this Agreement (excepting this paragraph 16 and paragraphs 18, 24 and 25, which shall survive termination or cancellation of this Agreement) shall become null and void, and all funds paid pursuant to paragraph 6 above, including any accrued interest on such funds, less (i) the Notice Payment amount of $500,000, to the extent withdrawn solely for the costs of Notice to the Indirect Purchaser Settlement Class and Class Notice Administration, and (ii) costs and fees of the Escrow Agent, not to exceed $5,000, shall be returned to FXI within ten (10) days of such termination. The Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Agreement or if it is rescinded or terminated by either FXI or the Indirect Purchaser Class Plaintiffs pursuant to this paragraph or by FXI pursuant to paragraph 9(c). Specifically, all negotiations and proceedings connected with this Agreement shall be without prejudice to the rights of any Party hereto, shall not be deemed or construed to be an admission by any Party of any fact or matter, and shall not be used in any way in the Class Action or in any related actions or proceedings, or any other action or proceeding.

17.    <u>Confidentiality of Settlement and Agreement.</u> The Parties agree not to reveal to any Person the terms and conditions of this Agreement or any discussions leading up to it, except as may be reasonably necessary: (a) to inform the Court; (b) inform the Indirect Purchaser Class

Plaintiffs, the Escrow Agent and Claims Administrator; (c) provide notice to the Indirect Purchaser Settlement Class; (d) seek preliminary and final approval of the Settlement; (e) for the enforcement of this Agreement; (f) to comply with applicable law or an order of a court of competent jurisdiction; (g) for FXI to resolve with any entity raising any contribution claims which relate to the pricing, purchase, sale, marketing, manufacturing, and/or distribution of Polyurethane Foam Products inside and outside the United States, which disclosure shall be on an outside counsel only basis and shall be subject to the recipient's agreement to maintain the confidentiality of the Agreement and its terms and conditions; or (h) for the purpose of financial reporting, the preparation of financial records (e.g., tax returns, financial statements, etc.) or review in the ordinary course of business by lending institutions or third parties who are party to actual or potential business transactions, provided that the disclosure to lending institutions or third-parties is made subject to a strict confidentiality agreement. Each Party shall give reasonable advance notice to the other Party before complying with an order compelling disclosure of this Agreement or its terms and conditions, in order to give the other Party sufficient time to protect its interests. Nothing herein shall prohibit a Party from disclosing to an Affiliate any information relating to this Agreement and its terms.

18.     Consent to Jurisdiction. FXI and each member of the Indirect Purchaser Settlement Class, and the other Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of this Agreement, including but not limited to, any suit, action, or proceeding in which the provisions of this Agreement are asserted as a defense in whole or in part to any claim or cause of action or

otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Agreement. In the event that the provisions of this Agreement are asserted by FXI or any other Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, Class Members, the other Releasing Parties, and FXI irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

19.  <u>Resolution of Disputes; Retention of Jurisdiction.</u> Any disputes between or among FXI or any other Released Party, on the one hand, and any member of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, Class Members or any other Releasing Party, on the other hand, concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation, enforcement and administration of this Agreement.

20.  <u>Binding Effect.</u> This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Indirect Purchaser Settlement Class, the Releasing Parties, and the Released Parties. Without limiting the generality of the foregoing, upon certification of the Indirect Purchaser Settlement Class and Final Approval of the

Settlement, each and every covenant and agreement herein by the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class and their counsel shall be binding upon all Class Members and the Releasing Parties who have not timely and validly excluded themselves from the Indirect Purchaser Settlement Class.

21. <u>Sole Remedy.</u> This Agreement shall provide the sole and exclusive remedy for any and all claims released against FXI or any Released Party, and upon entry of the Final Order and Judgment by the Court, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all claims barred by the Judgment or Released Claims against FXI or any Released Party.

22. <u>Authorization to Enter Agreement.</u> The undersigned representative of FXI covenants and represents that he or she is fully authorized to enter into and to execute this Agreement on behalf of FXI. Class Counsel represent that he is fully authorized to conduct settlement negotiations with FXI's counsel on behalf of the Indirect Purchaser Class Plaintiffs and the putative Indirect Purchaser Settlement Class and is fully authorized to enter into and execute the Agreement on behalf of the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and the other Releasing Parties.

23. <u>Notices.</u> All notices under this Agreement shall be in writing. Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier. If directed to the Indirect Purchaser Settlement Class, including any Indirect Purchaser Class Plaintiff, such notice shall be addressed to:

> Marvin A. Miller
> MILLER LAW LLC
> 115 South LaSalle Street, Suite 2910
> Chicago, IL 60603

and if directed to FXI, to:

> Michael H. Steinberg
> Sullivan & Cromwell LLP
> 1888 Century Park East, Suite 2100
> Los Angeles, California 90067-1725

or such other address as Class Counsel or FXI may designate, from time to time, by giving notice to all Parties hereto in the manner described in this paragraph. Copies of all notices under this Agreement may, at the notifying Party's option, be transmitted by email to the appropriate parties. Providing a copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms provided for in (a), (b), or (c) of this paragraph.

24.  <u>No Admission.</u> Whether or not this Agreement becomes final or is terminated pursuant to its terms, the Parties expressly agree that this Agreement, including any exhibits, and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability, fault, or wrongdoing by FXI or the Released Parties, or of the truth of any of the claims or allegations made in the Class Action or the Complaint, or an admission that the Class Action may be certified as a class action for any purpose other than the settlement class contemplated by this Agreement. FXI and the Released Parties expressly deny any wrongdoing. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408.

25.  <u>Intended Beneficiaries.</u> No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not a member of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, a Released Party, or Class Counsel (on

behalf of the Indirect Purchaser Settlement Class and with respect to fees and disbursements to be paid from the Settlement Amount pursuant to Court order).

26.    <u>No Party is the Drafter.</u> None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

27.    <u>Choice of Law.</u> All terms of this Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of Ohio, without regard to its choice of law or conflict of laws principles.

28.    <u>Amendment and Waiver.</u> The terms of this Agreement are contractual and not a mere recital. This Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party specifically indicating the intent to waive. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. The Parties agree that no Party will assert any claim against another based on any alleged subsequent agreement affecting or relating to the terms of this Agreement not in writing and signed by the Parties. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

29.    <u>Execution in Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the Execution Date.

30.    <u>No Conflict Intended.</u> Any inconsistency between this Agreement and any exhibits attached hereto shall be resolved in favor of this Agreement. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

31.    <u>Integrated Agreement.</u> This Agreement, together with the Escrow Agreement, the Supplemental Agreement and the Confidentiality and Non-diclosure agreement dated April 23, 2015, each incorporated by reference herein, comprise the entire agreement between the Parties, and supersede and replace all prior or contemporaneous agreements or understandings, written or oral, related to the subject matter hereof, and each Party acknowledges that he, she or it makes no other representation or warranty upon which the other Parties can rely other than as stated herein.

32.    <u>Voluntary Settlement.</u> The Parties agree that this Agreement and the Settlement were negotiated in good faith by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent counsel.

IN WITNESS WHEREOF, the Parties, through their duly authorized representatives, enter into this Agreement on the date first above written.

Marvin A. Miller
Matthew E. Van Tine
Lori A. Fanning
Andrew Szot
Kathleen Boychuck
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400
mmiller@millerlawllc.com

**Lead Counsel for the
Indirect Purchaser Class**

Michael Steinberg
Sullivan & Cromwell LLP
1888 Century Park East
Los Angeles, California
90067
(310) 712-6670
steinberg@sullcrom.com

**Counsel for FXI**

steinbergm@sullcrom.com

INDS01 1521641v2

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | MDL Docket No. 2196 |
| | Index No. 10-MD-2196 (JZ) |
| The Document Relates to: | |
| ALL INDIRECT PURCHASER CLASS CASES | |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into as of the _24th_ day of July,

2015, by and among Greg Beastrom, Seth Brown, Susan Gomez, Henry Johs, Joseph Lord,

Kirsten Luenz, Gerald & Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Michael Schwartz,

Larry Scott, Catherine Wilkinson, Jeffrey S. Williams, Driftwood Hospitality Management (as

authorized managing agent for the following entities that own/operate, or that formerly

owned/operated, hotels in various states, including: (1) Genwood Memphis I, LLC,

owner/operator of the Crowne Plaza Memphis, formerly the Wyndham Garden Hotel Memphis,

in Memphis, Tennessee; (2) GFII DVI Cardel Doral, LLC, former owner/operator of the

Hampton Inn & Suites Doral, in Miami, Florida; (3) Brad-Sum Colorado Springs, LLC, former

owner/operator of the Summerfield Suites Colorado Springs, formerly the Bradford Homesuites

Colorado Springs, in Colorado Springs, Colorado; (4) GFII DVI Cardel Sawgrass, LLC,

owner/operator of the Crowne Plaza at Sawgrass, in Sunrise, Florida; (5) GFII DVI Cardel

Colorado Springs, LLC, formerly Brad-Sum Centennial, LLC, owner/operator of the Staybridge

Suites Denver Tech Center, formerly the Bradford Homesuites Centennial, in Centennial,

Colorado; (6) DHM Chicago Hotel LP and DHM Chicago Hotel Lessee LP, owner and operator,

respectively, of the Avenue Crowne Plaza Chicago Downtown, formerly The Avenue Chicago,

1

formerly Radisson Chicago, in Chicago, Illinois; (7) DVI Kauai Hotel, LLC, owner and operator of the Radisson Kauai Beach Resort in Lihue, Hawaii; and (8) DHM Minneapolis Hotel, LLC, owner and operator of the Crowne Plaza North in Brooklyn Center, Minnesota), and The Parker Company (as authorized agent for Met 2 Hotel LLC; Bachelor Gulch Properties, LLC; MPE Hotel I (Washington), LLC; and New York Hotel Tenant Co., LLC) (collectively, "Indirect Purchaser Class Plaintiffs"), individually and on behalf of a settlement class (the "Indirect Purchaser Settlement Class," as defined below), and Defendant, Future Foam, Inc., ("Future Foam"), parties in the above-captioned action. The Indirect Purchaser Class Plaintiffs and Future Foam are referred to individually as "Party" and collectively as the "Parties."

WHEREAS, the Indirect Purchaser Class Plaintiffs, on behalf of themselves and on behalf of the Indirect Purchaser Settlement Class, allege in the Class Action, among other things, that Future Foam participated in a conspiracy with other Defendants in this litigation and unnamed co-conspirators, the purpose and effect of which was to raise, fix, maintain, or stabilize prices and allocate customers for flexible polyurethane foam and flexible polyurethane foam products (including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam), which terms are defined in the Corrected Second Amended Consolidated Class Complaint, filed May 7, 2012 (collectively, "flexible polyurethane foam") in violation of the antitrust laws of the United States, certain States' antitrust, consumer protection, and unfair competition laws, and certain common law doctrines;

WHEREAS, Future Foam has denied and continues to deny all of the allegations of wrongdoing made in the Class Action, has asserted and would assert defenses to the allegations or claims made in the Class Action, and has denied and continues to deny any liability whatsoever;

WHEREAS, Indirect Purchaser Class Plaintiffs, individually and on behalf of the Indirect Purchaser Settlement Class, Class Members and the Releasing Parties, and Future Foam agree that this Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of the claims or allegations in the Class Action;

WHEREAS, counsel for Indirect Purchaser Class Plaintiffs has been appointed by the Court to serve as Class Counsel to represent the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Class; and

WHEREAS, Indirect Purchaser Class Plaintiffs and Future Foam wish to resolve all claims asserted and all claims that could have been asserted on behalf of the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class as set forth herein.

WHEREAS, arm's-length settlement negotiations have taken place between Indirect Purchaser Class Plaintiffs, by and through Class Counsel, and Future Foam, by and through its counsel, and this Agreement, including agreements incorporated by reference, embodies all of the terms and conditions of the Settlement between Future Foam and Indirect Purchaser Class Plaintiffs, both individually and on behalf of the Indirect Purchaser Settlement Class and the Releasing Parties, and has been reached as a result of the Parties' negotiations, subject to approval of the Court as provided herein;

WHEREAS, Class Counsel has concluded, after due investigation and after carefully considering the relevant circumstances, including the claims asserted in the complaints filed in the Class Action, the legal and factual defenses thereto and the applicable law, that it would be in the best interests of the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class, and Class Members to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Indirect Purchaser

Class Plaintiffs and the Indirect Purchaser Settlement Class, and, further, that Class Counsel considers the Settlement set forth herein to be fair, reasonable, adequate, and in the best interests of the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and Class Members; and

WHEREAS, Future Foam has agreed to enter into this Agreement in order to avoid the expenses, risk, and burden of further litigation, to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Future Foam;

NOW, THEREFORE, in consideration of the agreements herein set forth, it is agreed by and among the Parties that the Class Action be settled, compromised, and dismissed on the merits with prejudice as to Future Foam and all other Released Parties, subject to the approval of the Court, on the following terms and conditions:

1.      Definitions. The following terms, as used in this Agreement, have the following meanings:

    a.      Any definitions contained elsewhere in this Agreement that are not defined in this paragraph 1 are incorporated herein by reference.

    b.      "Agreement" means this Settlement Agreement by and between Future Foam and Indirect Purchaser Class Plaintiffs, both individually and on behalf of the Indirect Purchaser Settlement Class.

    c.      "Claims Administrator" shall mean A.B. Data, Ltd.

    d.      "Class Action" means the indirect purchaser antitrust class actions consolidated under the caption *In re Polyurethane Foam Antitrust Litigation*,

MDL No. 10-MD-2196 (JZ), currently pending in the United States District Court for the Northern District of Ohio.

e.    "Class Counsel" means Lead Class Counsel, Marvin A. Miller of Miller Law LLC, as appointed to represent the Indirect Purchaser Class, and the following: Richard Kerger of Hartman & Kerger, Jay Shapiro of Stearns Weaver Miller Weissler Alhadeff & Sitterson P.A., Eric Barton of Wagstaff & Cartmell, Martin Holmes of Dickinson Wright, Susan Bernstein of Law Offices of Susan Bernstein, Shpetim Ademi of Ademi & O'Reilly, Robert Schubert of Law Offices of Robert Schubert, Avidan Stern of Lynch Stern Thompson LLP, and David Schiller of Schiller& Schiller.

f.    "Class Member" or "Class Members" means any person or entity that is a member or putative member of the Indirect Purchaser Class.

g.    "Class Period" means January 1, 1999, to August 1, 2015.

h.    "Class States" shall mean Alabama, Arizona, California, Colorado, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

i.    "Complaint" means the Indirect Purchasers' Corrected Second Amended Class Action Complaint, filed on behalf of the Indirect Purchaser Class and the Indirect Purchaser Class Plaintiffs in the Class Action on May 7, 2012, as may be amended from time to time, and any other class complaint or similar

initiatory pleading filed on behalf of the Indirect Purchaser Class or any Class Member, whether or not consolidated in the Class Action.

j.    "Court" means the United States District Court for the Northern District of Ohio.

k.    "Day" or "days" mean calendar days.

l.    "Defendant" or "Defendants" means any person or entity named as a defendant in the Class Action, whether or not dismissed from the Class Action.

m.    "Effective Date" means the date of Final Approval of this Agreement.

n.    "Escrow Account" means the escrow account established to receive and maintain funds contributed on behalf of Future Foam for the benefit of the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs.

o.    "Escrow Agreement" means that certain agreement by and among Future Foam, a bank designated to hold the Escrow Account, and the Indirect Purchaser Settlement Class Plaintiffs (by and through Class Counsel), pursuant to which the Escrow Account is established and funded for the benefit of the Indirect Purchaser Settlement Class.

p.    "Execution Date" means the date of this Agreement.

q.    "Final Approval" means that date which is either: (1) thirty (30) days after the Court's entry of its Final Order and Judgment, as defined below, with no notice of appeal having been filed; or (2) the Final Order and Judgment has been affirmed by a mandate issued by any reviewing court to which any

appeal has been taken, and any further petition for review (including certiorari) has been denied and the time for any appeal or review of the Court's Final Order and Judgment has expired.

r.   "Final Order and Judgment" means an order from the Court finally approving this Agreement and the Settlement and that includes an order of judgment and dismissal of the Class Action as to Future Foam and the other Released Parties, on the merits, with prejudice, including dismissal of any other complaint or similar initiatory pleading filed by or on behalf of Class Members or Releasing Party alleging similar or identical claims, whether or not consolidated in the Class Action, which judgment shall be binding on the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties, and shall be in substantially the same form as the proposed final judgment to be mutually agreed upon by Future Foam and its counsel on the one hand, and the Indirect Purchaser Class Plaintiffs, individually and on behalf of the Indirect Purchaser Settlement Class, and Class Counsel on the other hand and submitted to the Court for approval thereof.

s.   "Indirect Purchaser Class" means that class of indirect purchasers of flexible polyurethane foam, including the Indirect Purchaser Class Plaintiffs, as defined and certified by the Court in this Class Action pursuant to Orders dated April 9, 2014 and April 16, 2014 (at Docket Entries 1102 and 1117). Excluded from the Indirect Purchaser Class are Class Members that timely

and validly opted out of the Indirect Purchaser Class on or before March 13, 2015.

t.    "Indirect Purchaser Class Plaintiffs" means Greg Beastrom, Seth Brown, Susan Gomez, Henry Johs, Joseph Lord, Kirsten Luenz, Gerald & Kathleen Nolan, Kory Pentland, Jonathan Rizzo, Michael Schwartz, Larry Scott, Catherine Wilkinson, Jeffrey S. Williams, Driftwood Hospitality Management (as authorized managing agent for the following entities that own/operate, or that formerly owned/operated, hotels in various states, including: (1) Genwood Memphis I, LLC, owner/operator of the Crowne Plaza Memphis, formerly the Wyndham Garden Hotel Memphis, in Memphis, Tennessee; (2) GFII DVI Cardel Doral, LLC, former owner/operator of the Hampton Inn & Suites Doral, in Miami, Florida; (3) Brad-Sum Colorado Springs, LLC, former owner/operator of the Summerfield Suites Colorado Springs, formerly the Bradford Homesuites Colorado Springs, in Colorado Springs, Colorado; (4) GFII DVI Cardel Sawgrass, LLC, owner/operator of the Crowne Plaza at Sawgrass, in Sunrise, Florida; (5) GFII DVI Cardel Colorado Springs, LLC, formerly Brad-Sum Centennial, LLC, owner/operator of the Staybridge Suites Denver Tech Center, formerly the Bradford Homesuites Centennial, in Centennial, Colorado; (6) DHM Chicago Hotel LP and DHM Chicago Hotel Lessee LP, owner and operator, respectively, of the Avenue Crowne Plaza Chicago Downtown, formerly The Avenue Chicago, formerly Radisson Chicago, in Chicago, Illinois; (7) DVI Kauai Hotel, LLC, owner and operator of the Radisson Kauai Beach Resort in Lihue, Hawaii; and (8) DHM

Minneapolis Hotel, LLC, owner and operator of the Crowne Plaza North in Brooklyn Center, Minnesota), and The Parker Company (as authorized agent for Met 2 Hotel LLC; Bachelor Gulch Properties, LLC; MPE Hotel I (Washington), LLC; and New York Hotel Tenant Co., LLC).

u.  "Indirect Purchaser Settlement Class" shall have the same definition as the Indirect Purchaser Class, as certified by the Court in this Class Action pursuant to Orders dated April 9, 2014 and April 16, 2014, except that the Indirect Purchaser Settlement Class Period shall be from January 1, 1999 to August 1, 2015, and shall not include Class Members that timely and validly elect to be excluded from the Indirect Purchaser Settlement Class defined herein.

v.  "Opt-Out Period" means the period of time following dissemination of class notice of this Agreement and Settlement during which Class Members are permitted to opt out or exclude themselves from the Indirect Purchaser Settlement Class.

w.  "Preliminary Approval" means a ruling by the Court to preliminarily approve this Agreement and Settlement pursuant to Federal Rule of Civil Procedure 23(e).

x.  "Released Claims" shall have the meaning set forth in paragraph 14 herein.

y.  "Released Party" or "Released Parties" shall refer individually and collectively to Future Foam, its predecessors and successors, present and former, direct and indirect, divisions, subsidiaries and affiliates, and each of its present and former officers, directors, shareholders, agents, employees,

9

partners, principals, members, insurers, heirs, executors, administrators, devisees, representatives, agents, attorneys, and assigns, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control, in whole or in part, with any of the Released Parties or any associates of any of the foregoing, and each of their present and former officers, directors, shareholders, agents, employees, partners, principals, members, insurers, heirs, executors, administrators, devisees, representatives, agents, attorneys, and assigns, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally.

z.   "Releasing Party" or "Releasing Parties" shall refer, jointly and severally, individually and collectively, to the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, on behalf of themselves and each Class Member and their respective predecessors and successors, their past and current, direct and indirect parents, subsidiaries and affiliates, their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives, and assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally. As used in this paragraph, "affiliates" means entities controlling, controlled by or

under common ownership or control, in whole or in part, with any of the Releasing Parties.

aa.     "Settlement" means the settlement of the Released Claims with respect to the Released Parties, as set forth in this Agreement.

bb.     "Settlement Amount" means the payment of Ten million five hundred thousand United States Dollars ($10,500,000.00 USD) to be made by Future Foam pursuant to this Agreement.

2.      <u>Reasonable Best Efforts to Effectuate this Settlement.</u> On the Execution Date, Indirect Purchaser Class Plaintiffs and Future Foam shall be bound by the terms of this Agreement, and it shall not be rescinded except in accordance with the terms of this Agreement. The Parties shall recommend approval of this Agreement and Settlement by the Court. Subject to the approval of the Court, the Parties agree to undertake their reasonable best efforts, including all steps and efforts contemplated by this Agreement and such other steps and efforts which are consistent with this Agreement and Settlement that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

3.      <u>Motion for Stay of Deadlines and Preliminary Approval.</u> Promptly after the Execution Date, the Parties will jointly request that the Court enter an order staying all deadlines and proceedings by the Indirect Purchaser Class, including the Indirect Purchaser Class Plaintiffs, against Future Foam. The Parties will continue to work cooperatively to complete and submit promptly to the Court for approval such additional documentation as may be necessary for the Court to determine whether this Agreement and Settlement should be granted Preliminary Approval. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of the Settlement and certification of the Indirect Purchaser Settlement Class. Future

Foam shall have reasonable opportunity to review and join in the motion for preliminary approval now pending in connection with the settlements entered into with the Settling Defendants.

4.  <u>Motion for Final Approval and Entry of Final Judgment.</u> The Parties shall take all reasonable steps to obtain Final Approval of the Agreement and Settlement. If the Court grants Preliminary Approval of the Agreement and Settlement, the Indirect Purchaser Class Plaintiffs, on their own behalf, and on behalf of the Indirect Purchaser Settlement Class and all Class Members, shall submit, in a form mutually agreed upon by counsel for Future Foam and Class Counsel, a motion for Final Approval of this Agreement and Settlement by the Court, after notice to Class Members, and shall seek entry of the Final Order and Judgment, in substantially the same form as to be mutually agreed to by the Parties, which will:

a.  fully and finally approve the Settlement contemplated by this Agreement and its terms as being a fair, reasonable, and adequate settlement for the Indirect Purchaser Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct its consummation pursuant to the terms and conditions set forth in this Agreement;

b.  include an order of judgment and dismissal of the Complaint as to Future Foam and the other Released Parties, on the merits, with prejudice, including dismissal of any other indirect purchaser class actions pending in MDL No. 2196 and dismissal of any other complaint or similar initiatory pleading filed by or on behalf of any of the Releasing Parties alleging similar or identical claims, whether or not consolidated in the Class Action, which judgment shall be binding on the Indirect Purchaser

12

Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties;

c.   discharge and release Future Foam and the other Released Parties from all Released Claims;

d.   enjoin the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and the other Releasing Parties, and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any Released Claims against Future Foam or the other Released Parties;

e.   reserve continuing and exclusive jurisdiction over the Agreement and Settlement for all purposes, including its interpretation, enforcement, administration, and execution; and,

f.   determine pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and direct that the judgment of dismissal of the Complaint against Future Foam and the other Released Parties shall be final and appealable and entered forthwith.

5.   <u>Escrow Account.</u> The Escrow Account will be established at a banking institution chartered pursuant to the National Bank Act, to be determined by Class Counsel subject to the reasonable approval of Future Foam, with such bank serving as escrow agent subject to escrow instructions mutually acceptable to Class Counsel and Future Foam. Such Escrow Account is to be administered under the Court's continuing supervision and control. Class Counsel shall be entitled to withdraw up to the sum of $500,000 which shall be

nonrefundable to Future Foam and which shall be used for purposes of providing Notice to the Class and for Class Notice Administration. If this Agreement does not receive Preliminary or Final Approval, then all amounts paid by Future Foam into the Escrow Account, plus accrued interest thereon, less (i) the amount of $500,000 to be withdrawn solely for the costs of Notice to the Indirect Purchaser Settlement Class and Class Notice Administration, and (ii) costs and fees of the Escrow Agent not to exceed $5,000, shall be returned to Future Foam in accordance with the Escrow Agreement and paragraph 16 herein.

6.     Settlement Consideration and Payment

Subject to the provisions of this Agreement, and in consideration of the release of Released Claims and the full, complete, and final settlement of the Class Action against Future Foam and the other Released Parties, Future Foam agrees to pay the Settlement Amount in accordance with this paragraph 6. The Settlement Amount represents all sums owed and payable by Future Foam or other Released Parties pursuant to this Agreement, including payment of damages, attorneys' fees, incentive fees, notice costs, costs of administration and costs of any kind. The Parties agree and acknowledge that none of the Settlement Amount paid by Future Foam under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.  Future Foam shall pay the Settlement Amount by depositing Ten Million Five Hundred Thousand United States dollars ($10,500,000.00 USD) into the Escrow Account as follows:

> a. $4,000,000 not later than July 31, 2015;

> b. $2,500,000 one (1) year from the Execution date of the Settlement Agreement but not later than July 31, 2016;

> c.     Upon its receipt, whether by settlement or by judgment, from its action against Dow Chemical in the case *In re Urethane Antitrust Litig.*, No. In re Urethane

Antitrust Litigation, No. 2:04-md-01616-JWL-JPO (D. Kan.)(D. Kan.) pending in the United States District Court for the District of Kansas ("*Dow Urethane Litigation*") Future Foam shall pay the Class $4,000,000 from any recovery Future Foam receives, said payment to be paid into the Escrow Account not later than 15 days after Future Foam receives the recovery. In addition to this payment of $4,000,000 from the *Dow Urethane Litigation*, if Future Foam recovers additional unpledged funds from the *Dow Urethane Litigation* before it has paid the $2,500,000 installment which is not related to the receipt of funds in the *Dow Urethane Litigation*, Future Foam shall pay such additional amounts toward the $2,500,000 installment into the Escrow Account not later than 15 days after Future Foam receives such payment from *Dow Urethane Litigation*. In the event that Future Foam does not recover a sufficient amount to make the accelerated payments provided herein, the payment schedule set forth in subparagraph B above shall remain in effect.

Such remittances shall be made by wire transfer in immediately available funds. Until the Effective Date, except as otherwise expressly provided in this Agreement or the Escrow Agreement, no portion of the Settlement Amount can be used for any purpose.

7.      Qualified Settlement Fund. The Escrow Account is intended by the Parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of Future Foam, a "relation back election" as described in Treas. Reg. §1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Parties shall take all appropriate actions as may be necessary to this

end. For purposes of Treas. Reg. §1.468B-2(k)(3), the Claims Administrator will be treated as the "administrator" of the qualified settlement fund. Future Foam shall not be responsible for the filing or payment of any taxes or expenses connected to the qualified settlement fund (including, without limitation, taxes, interest and penalties relating to all income and/or gain earned by the fund). In addition, Future Foam makes no representations or warranties regarding the tax consequences or tax reporting of this Settlement or the receipt of the payments hereunder. The Indirect Purchaser Class Plaintiffs, for themselves, the Indirect Purchaser Settlement Class, Class Members, and the other Releasing Parties, agree to provide to Future Foam any properly executed original Internal Revenue Service form that may be required from any of the Releasing Parties under U.S. tax laws in connection with this Settlement, including, but not limited to Form W-9 withholding certificate (or applicable other or successor withholding certificates).

8.    <u>Notice to Class and Claims Administration.</u> In the event that the Court preliminarily approves the Settlement, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Order of the Court, provide each Class Member with notice of the Settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the Settlement. Notice of this Agreement and Settlement made to Class Members may be combined with notice of other settlements that the Indirect Purchaser Settlement Class may reach with other Defendants. The form and content of the foregoing notice shall be agreed to by Class Counsel and counsel for Future Foam. The Parties agree that the notice shall inform Class Members that, in order to exclude oneself from the Indirect Purchaser Settlement Class, each Class Member must, among other things, identify (i) the flexible polyurethane foam and foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, purchased by such

Class Member during the Class Period, (ii) the State in which each such product was purchased, and (iii) provide the purchase price of each of those products. Consistent with the prior rulings of the Court that publication of the notice satisfies due process, notice shall be given by publication as the Court may direct, as soon as reasonably practical after Preliminary Approval by the Court. Notice may also be given by first class or bulk rate mail presorted to those Class Members who may be identified by reasonable and cost effective means as authorized by the Court. It is understood that the content of such notices will be as agreed to by the Parties and approved by the Court. Indirect Purchaser Class Plaintiffs shall take all necessary and appropriate steps to ensure that notice is provided in accordance with the order of the Court. After Final Approval has been obtained, and with Court approval, all reasonable costs and expenses associated with printing, mailing, and publication of such notice and with administering the Settlement, including without limitation, costs and expenses associated with the Escrow Account, the filing of tax returns and payment of taxes, may be paid out of the Settlement Amount as specified in the Escrow Agreement. The Claims Administrator shall ensure that each qualified claimant who receives a payment from the Escrowed Funds, as defined in the Escrow Agreement, is a tax resident of the United States of America, and shall be responsible to provide Future Foam, on its first demand, any documentation necessary to prove that the recipient of the payment from the Escrowed Funds is a tax resident of the United States of America.

      a.    It shall be the sole responsibility of Class Counsel to ensure the Claims Administrator complies with all of the obligations set forth in this Agreement and the Escrow Agreement, including but not limited to proper disbursement of funds in accordance with the Agreement, the obligation to provide Future Foam with any necessary documentation

          upon reasonable request, and the preparation and filing of all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrowed Funds.

b.     Future Foam shall not have any obligation to provide any information or records in connection with the Indirect Purchaser Class Plaintiffs' provision of notice to Class Members pursuant to this paragraph 8.

c.     In no event shall Future Foam be responsible for giving notice of this Settlement to Class Members, or for the administration of notice of the Settlement Amount, including but not limited to the expense and cost of such notice and notice administration, except insofar as provided in this paragraph.

9.    <u>Exclusions.</u>  Any person seeking exclusion from the Indirect Purchaser Settlement Class must file a timely written request for exclusion as provided in the Notice to be approved by the Parties and the Court pursuant to paragraph 8 of this Agreement.  Any person who timely files such a valid request shall be excluded from the Indirect Purchaser Settlement Class and shall have no rights with respect to this Settlement. In order to be valid, a request for exclusion must, among other things, identify (i) the flexible polyurethane foam and foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, purchased by the Class Member seeking exclusion during the Class Period, (ii) the State in which each such product was purchased, and (iii) the purchase price of each such product. A request for exclusion that does not comply with such conditions and all of the provisions set forth in the approved notice, including but not limited to (i) not containing all of the required information, (ii) not bearing the proper signature, (iii) being sent to an address

other than the one designated, or (iv) not being sent within the time specified, will be invalid, and each person or entity serving such an invalid request shall be deemed a member of the Indirect Purchaser Settlement Class and shall be bound by this Agreement upon Final Approval.

a.  With respect to any Class Member who timely and validly requests exclusion from the Indirect Purchaser Settlement Class, Future Foam reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class Member is an indirect purchaser of flexible polyurethane foam and/or has standing to bring any claim against Future Foam.

b.  During the Opt-Out Period, Class Counsel agrees to provide Future Foam with periodic updated lists of those Class Members who have validly opted out of the Indirect Purchaser Settlement Class, which list shall include each such Class Member's identified purchases of flexible polyurethane foam and foam products, including, carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, made during the Class Period in Class States and the value of such purchases. Within five (5) days of the end of the Opt-Out Period, Class Counsel agrees to provide to Future Foam a final list of all Class Members who have validly and timely excluded themselves from the Indirect Purchaser Settlement Class, which list shall include each such Class Member's identified purchases of flexible polyurethane foam and foam products, including, carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam, made

during the Class Period in Class States and the values of such purchases. Future Foam, Class Counsel and each of the Indirect Purchaser Class Plaintiffs, covenants and agrees not to take any action, directly or indirectly, designed or intended to influence any Class Member to opt out of the Indirect Purchaser Settlement Class or to assist others in doing so.

10.     <u>Distribution of the Settlement Amount.</u> The Settlement Amount shall be distributed to eligible members of the Indirect Purchaser Settlement Class in accordance with a plan of allocation to be approved by the Court; provided that no part of the Settlement Amount shall be distributed until the Effective Date. Future Foam shall not have any responsibility for, or liability in connection with, the distribution of the Settlement Amount. Indirect Purchaser Settlement Class members who have not timely or validly excluded themselves from the Indirect Purchaser Settlement Class shall be entitled solely to the Settlement Amount for settlement and satisfaction against Future Foam and the other Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from Future Foam or the Released Parties. Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Amount or any portion thereof. The Indirect Purchaser Settlement Class, and the other Releasing Parties, as well as their counsel, will be reimbursed and indemnified solely out of the Settlement Amount for all expenses including, but not limited to, the costs of notice of this Agreement and Settlement to Class Members. Future Foam shall not be liable for any costs, fees, or expenses of any attorneys, experts, advisors, or representatives for the Indirect Purchaser Settlement Class or the Releasing Parties, but all such costs and expenses to the extent approved by the Court shall be paid out of the Settlement Amount following Final Approval. If the Court grants Final Approval of this Agreement and Settlement pursuant to the provisions of paragraph

4 of this Agreement, then, with Court approval, Indirect Purchaser Settlement Class may use the Settlement Amount to pay such costs and expenses for the litigation of this Class Action as set forth in this Agreement.

11.    <u>Attorneys' Fees and Costs.</u> Future Foam agrees that Class Counsel shall be entitled to such attorneys' fees and costs as the Court may award from the Settlement Amount. All such fees and costs shall be paid only from the Settlement Amount and Future Foam shall not take any position with respect to Class Counsels' request for an award of attorneys' fees and for reimbursement of costs, expenses and incentive awards for Class Representatives. Any attorneys' fees and costs paid to Class Counsel from the Settlement Amount shall be paid only to the extent awarded by the Court and only after the Effective Date. Future Foam shall not be liable for any costs or attorneys' fees incurred by any attorney or law firm, including, without limitation, Class Counsel, on behalf of the Indirect Purchaser Class, the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, or any Class Member or Releasing Party in connection with the Class Action, the Complaint, or any of the Released Claims. Any order or proceeding (or portion thereof) relating solely to the fee, expense or incentive fee application, or any appeal from any fee, expense or incentive fee award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment and the Settlement as set forth herein. No order of the Court or modification or reversal on appeal of any order of the Court concerning any fee, expense, and incentive fee award shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of the Released Parties under this Agreement.

12.    <u>Court Approval of All Disbursements and Distributions.</u> Except as otherwise provided herein or in the Escrow Agreement, no disbursement from or distribution of the

Settlement Amount shall be made prior to Final Approval and then only with prior approval of the Court. With Court approval, disbursements from the Settlement Amount may be made to pay administrative and/or past, current or future litigation costs, attorneys' fees, and such other disbursements as the Court shall authorize. Future Foam shall not have any liability or responsibility with respect to the disbursement, distribution and administration of the Settlement Amount.

13.     <u>Cooperation by Future Foam.</u> Upon reasonable notice, Future Foam agrees to make two (2) current employees or officers available to appear at trial in this class action of the Indirect Purchaser Plaintiff Class cases, without subpoena, and to provide written declarations or testimony at deposition or trial solely for purposes of identifying and authenticating documents or information produced in the litigation by Future Foam.

14.     <u>Releases.</u>

a.      Upon Final Approval, and in consideration of this Settlement, each Indirect Purchaser Class Plaintiff, Class Member, and Releasing Party that has not validly and timely excluded himself, herself or itself from the Indirect Purchaser Settlement Class shall, jointly and severally, release, hold harmless, and forever discharge Future Foam and the Released Parties, jointly and severally, from any and all claims, actions, causes of action, suits, lawsuits, proceedings, damages, judgments, losses, penalties, liabilities, remedies, costs or fees (including attorneys' fees and the fees of expert witnesses), of any kind whatsoever, known or unknown, asserted or unasserted, accrued or un-accrued, in law or in equity, from the beginning of time to the Execution Date, arising out of or

relating to the claims made, or which could have been made on the same or similar facts, in the Class Action or Complaint, or in any other complaints filed on behalf of the Releasing Parties alleging similar or identical claims, including the allegations in the Complaint, but excluding any and all class or non-class action claims relating to (i) personal injury, (ii) bankruptcy, (iii) product liability, (iv) breach of warranty, or (v) currently pending class or non-class action claims relating to anticompetitive pricing charged by any Defendant to direct purchasers of flexible polyurethane foam or foam products, including carpet underlay, bedding products or upholstered furniture products that contain polyurethane foam (together with claims described in paragraph 14(b) of this Agreement, the "Released Claims").

b.    In connection with this Agreement, members of the Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and other Releasing Parties acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Class Action and/or the Released Claims. Nevertheless, it is the intention of Class Counsel and the Releasing Parties in executing this Agreement fully, finally and forever to settle, release, discharge, and hold harmless all Released Parties in respect of all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently

asserted in any action or proceeding) with respect to the Class Action and/or the Released Claims, except as otherwise stated in this Agreement. The Indirect Purchaser Class Plaintiffs expressly understand, acknowledge, and waive, and all members of the Indirect Purchaser Settlement Class, and other Releasing Parties will be deemed by the Final Order and Judgment to understand, acknowledge, and waive, Section 1542 of the Civil Code of the State of California, which provides that: **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.** Indirect Purchaser Settlement Class, including the Indirect Purchaser Class Plaintiffs, and other Releasing Parties expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

c.     Indirect Purchaser Settlement Class and other Releasing Parties further agree that they will not file any other suit or action against Future Foam or other Released Parties arising out of or relating to the Released Claims, or assist others in doing so.

    d.    Indirect Purchaser Class Plaintiffs and Class Counsel acknowledge that Future Foam considers it to be a material term of this Agreement that the provisions of Paragraphs 14(a) through 14(c) will bind all Class Members who have not excluded themselves in a valid and timely manner from the Indirect Purchaser Settlement Class.

15.    <u>Reservation of Claims.</u> The Releasing Parties intend by this Agreement to release only Future Foam and the other Released Parties with respect to the Released Claims. The Releasing Parties specifically do not intend this Agreement, or any part hereof or any other aspect of the proposed Settlement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other person, firm, association, or corporation whatsoever, including, but not limited to, the Defendants in the Class Action, other than Future Foam and the other Released Parties. The releases set forth in paragraph 14 of this Agreement are not intended to and shall not release any claims other than the Released Claims.

16.    <u>Effect of Disapproval.</u> If the Court does not certify the Indirect Purchaser Settlement Class as defined in this Agreement, or if the Court does not approve this Agreement in all material respects, or if the Court does not enter a Final Order and Judgment as provided for in paragraph 4, or if any judgment approving this Agreement is set aside on appeal, then this Agreement (excepting this paragraph 16 and paragraphs 18, 24 and 27, which shall survive termination or cancellation of this Agreement) may be cancelled and terminated by either (i) Future Foam or (ii) the Indirect Purchaser Class Plaintiffs (for themselves and all Class Members).

If cancelled and terminated, this Agreement (excepting this paragraph 16 and paragraphs 18, 24 and 27, which shall survive termination or cancellation of this Agreement) shall become

null and void, and all funds paid pursuant to paragraph 6 above, including any accrued interest on such funds, less (i) the Notice Payment amount of $500,000, to the extent withdrawn solely for the costs of Notice to the Indirect Purchaser Settlement Class and Class Notice Administration, and (ii) costs and fees of the Escrow Agent, not to exceed $5,000, shall be returned to Future Foam within ten (10) days of such termination. The Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Agreement. Specifically, all negotiations and proceedings connected with this Agreement shall be without prejudice to the rights of any Party hereto, shall not be deemed or construed to be an admission by any Party of any fact or matter, and shall not be used in any way in the Class Action or in any related actions or proceedings, or any other action or proceeding.

17.    <u>Confidentiality of Settlement and Agreement.</u> The Parties agree not to reveal to any person or entity the non-public terms and conditions of this Agreement or any discussions leading up to it, except as may be reasonably necessary: (a) to inform the Court; (b) inform the Indirect Purchaser Class Plaintiffs, the Escrow Agent and Claims Administrator; (c) provide notice to the Indirect Purchaser Settlement Class; (d) seek preliminary and final approval of the Settlement; (e) for the enforcement of this Agreement; (f) to comply with applicable law or an order of a court of competent jurisdiction; (g) for Future Foam to resolve with any entity raising any contribution claims which relate to the pricing, purchase, sale, marketing, manufacturing, and/or distribution of Polyurethane Foam Products inside and outside the United States, which disclosure shall be on an outside counsel only basis and shall be subject to the recipient's agreement to maintain the confidentiality of the Agreement and its terms and conditions; or (h) for the purpose of financial reporting, the preparation of financial records (e.g., tax returns, financial statements, etc.) or review in the ordinary course of business by lending institutions or

third parties who are party to actual or potential business transactions, provided that the disclosure to lending institutions or third-parties is made subject to a strict confidentiality agreement. Each Party shall, to the extent permitted by law or court order, give reasonable notice to the other Party before complying with an order compelling disclosure of this Agreement or its terms and conditions, in order to give the other Party sufficient time to protect its interests. Nothing herein shall prohibit a Party from disclosing to an Affiliate any information relating to this Agreement and its terms.

18.     <u>Consent to Jurisdiction.</u> Future Foam and each member of the Indirect Purchaser Settlement Class, and the other Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of this Agreement, including but not limited to, any suit, action, or proceeding in which the provisions of this Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Agreement. In the event that the provisions of this Agreement are asserted by Future Foam or any other Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, Class

Members, the other Releasing Parties, and Future Foam irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

19.     Resolution of Disputes; Retention of Jurisdiction. Any disputes between or among Future Foam or any other Released Party, on the one hand, and any member of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, Class Members or any other Releasing Party, on the other hand, concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation, enforcement and administration of this Agreement.

20.     Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Indirect Purchaser Settlement Class, the Releasing Parties, and the Released Parties. Without limiting the generality of the foregoing, upon certification of the Indirect Purchaser Settlement Class and Final Approval of the Settlement, each and every covenant and agreement herein by the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class and their counsel shall be binding upon all Class Members and the Releasing Parties who have not timely and validly excluded themselves from the Indirect Purchaser Settlement Class.

21.     Sole Remedy. This Agreement shall provide the sole and exclusive remedy for any and all claims released against Future Foam or any Released Party, and upon entry of the Final Order and Judgment by the Court, the Releasing Parties shall be forever barred from

initiating, asserting, maintaining, or prosecuting any and all Released Claims against Future Foam or any Released Party.

22.     Authorization to Enter Agreement. The undersigned representative of Future Foam   covenants and represents that he or she is fully authorized to enter into and to execute this Agreement on behalf of Future Foam. Class Counsel represent that he is fully authorized to conduct settlement negotiations with Future Foam's counsel on behalf of the Indirect Purchaser Class Plaintiffs and the putative Indirect Purchaser Settlement Class and is fully authorized to enter into and execute the Agreement on behalf of the Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and the other Releasing Parties.

23.     Notices. All notices under this Agreement shall be in writing. Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, UPS, or similar overnight courier. If directed to the Indirect Purchaser Settlement Class, including any Indirect Purchaser Class Plaintiff, such notice shall be addressed to:

> Marvin A. Miller
> MILLER LAW LLC
> 115 South LaSalle Street, Suite 2910
> Chicago, IL 60603

and if directed to Future Foam, to:

> Edward G. Warin
> John P. Passarelli
> Edward M. Fox II
> 1650 Farnam Street
> The Omaha Building
> Omaha, NE 68102-2186
> (402) 346-6000

or such other address as Class Counsel or Future Foam may designate, from time to time, by giving notice to all Parties hereto in the manner described in this paragraph. Copies of all notices under this Agreement may, at the notifying Party's option, be transmitted by email to the appropriate parties. Providing a copy by email shall only be in addition to, and not a substitute for, the formal notice mechanisms provided for in (a), (b), or (c) of this paragraph.

24.     No Admission. Whether or not this Agreement becomes final or is terminated pursuant to its terms, the Parties expressly agree that this Agreement, including any exhibits, and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability, fault, or wrongdoing by Future Foam or the Released Parties, or of the truth of any of the claims or allegations made in the Class Action or the Complaint, or an admission that the Class Action may be certified as a class action for any purpose other than the settlement class contemplated by this Agreement. Future Foam and the Released Parties expressly deny any wrongdoing. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408.

25.     Intended Beneficiaries. No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a member of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs, a Released Party, or Class Counsel (on behalf of the Indirect Purchaser Settlement Class and with respect to fees and disbursements to be paid from the Settlement Amount pursuant to Court order).

26.     No Party is the Drafter. None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule

of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

27.     Choice of Law. All terms of this Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of Ohio, without regard to its choice of law or conflict of laws principles.

28.     Amendment and Waiver. The terms of this Agreement are contractual and not a mere recital. This Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party specifically indicating the intent to waive. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. The Parties agree that no Party will assert any claim against another based on any alleged subsequent agreement affecting or relating to the terms of this Agreement not in writing and signed by the Parties. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

29.     Execution in Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the Execution Date.

30.     No Conflict Intended. Any inconsistency between this Agreement and any exhibits attached hereto shall be resolved in favor of this Agreement. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

31.     Integrated Agreement. This Agreement, together with the Escrow Agreement, each incorporated by reference herein, comprise the entire agreement between the Parties, and supersede and replace all prior or contemporaneous agreements or understandings, written or oral, related to the subject matter hereof, and each Party acknowledges that he, she or it makes no other representation or warranty upon which the other Parties can rely other than as stated herein.

32.     Voluntary Settlement. The Parties agree that this Agreement and the Settlement were negotiated in good faith by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent counsel.

IN WITNESS WHEREOF, the Parties, through their duly authorized representatives, enter into this Agreement on the date first above written.

Marvin A. Miller
Matthew E. Van Tine
Lori A. Fanning
Andrew Szot
Kathleen Boychuck
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400

Lead Counsel for the
Indirect Purchaser Class

Edward G. Warin
John P. Passarelli
Edward M. Fox II
1650 Farnam Street
The Omaha Building
Omaha, NE 68102-2186
 (402) 346-6000

Counsel for Future Foam

INDS01 1521641v2

33