IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re Polyurethane Foam Antitrust Litigation | Case No. 1:10 MD 2196 |
| This document relates to: | MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS |
| DIRECT PURCHASER CLASS | JUDGE JACK ZOUHARY |

## INTRODUCTION

The Direct Purchaser Class moves for Rule 11 sanctions against Objector Michael Narkin (Doc. 1743), and Narkin moves for sanctions against Class Counsel (Doc. 1800).

Sanctions are appropriate because Narkin is not a class member, he could not reasonably believe that he is a class member, and he maintains his Objection for an improper purpose. To deter Narkin and those like him, Narkin shall pay Ten Thousand Dollars ($10,000) to the Class. This Court denies Narkin's Cross-Motion as frivolous.

## STANDARD OF REVIEW

Federal Civil Rule 11(b)(1)–(3) provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the filing (1) is not presented for an improper purpose, (2) the legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) the factual contentions presently have evidentiary support or will have such support upon further investigation. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on

any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.*(c)(1). The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and if a sanctions award is prompted by a party motion, may include "the prevailing party['s] . . . reasonable expenses, including attorney's fees, incurred for the motion." *Id.*(c)(2); *see also id.*(c)(4). A district court retains jurisdiction to impose Rule 11 sanctions after a notice of appeal has been filed. *See Val-Land Farms, Inc. v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110, 1117 (6th Cir. 1991).

"In this Circuit, the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was reasonable under the circumstances." *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006) (quotation marks omitted). This test is an objective standard. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). "The plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quotation marks and alterations omitted).

The Rule 11 standard "takes into account the special circumstances that often arise in pro se situations[. But] pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (quotation marks omitted). Narkin is a former attorney. *See Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *7 n.5 (N.D. Cal. 2014). A person with his formal legal training is held to a higher standard than the typical, lay pro se litigant. *See Matsumaru v. Sato*, 521 F. Supp. 2d 1013, 1016 (D. Ariz. 2007).

Direct Purchasers gave Narkin adequate notice of their primary grounds for sanctions -- that Narkin cannot reasonably believe he is a class member (Doc. 1743-1 at 13–14; Doc. 1819 at 2–3), and that he maintains his Objection for an improper purpose (Doc. 1743-1 at 18–19; Doc. 1819 at 3). Narkin had ample opportunity to respond to both arguments (Docs. 1800 & 1843). Further, Direct Purchasers complied with Rule 11's safe-harbor provision (*see* Doc. 1743-8).

## DISCUSSION

***Background.*** In November 2014, this Court preliminarily approved the Direct Purchaser Class settlements with Leggett & Platt and the Carpenter Defendants, totaling $147.8 million, as well as a notice plan to inform Class members of the settlement (Docs. 1391 & 1406). Narkin filed the Objection in February 2015 (Doc. 1475-6). He closed his Objection by declaring "under penalty of perjury, that [he] purchased carpet cushion and/or underlay and polyurethane pads from defendants during the class period" (*id*. at 4). In granting final settlement approval, this Court overruled the Objection as frivolous, in part because Narkin provided no proof he was a class member (Doc. 1534 at 11).

Narkin filed a notice of appeal from that decision without paying the appeal filing fee. The Sixth Circuit told Narkin to seek leave from this Court to proceed in forma pauperis ("IFP") (Case No. 15-3481, Doc. 1 at 1). Absent permission from a court of appeals, 28 U.S.C. § 1915(a)(3) bars a litigant from taking an appeal in forma pauperis "if the trial court certifies in writing that [the appeal] is not taken in good faith." Because only class members have standing to object to a class settlement or to appeal final approval, Narkin could do neither. Class Counsel argued this Court should condition any grant of pauper status on a showing by Narkin that he was a class member (Doc. 1678 at 4–5). Agreeing with Class Counsel, this Court ordered Narkin to support any subsequent IFP application with proof of his class membership (Doc. 1701) (May 19 Order). On June 29, twenty-four

3

days after the Sixth Circuit's deadline for doing so, Narkin filed his IFP Application (Doc. 1775), attaching a document allegedly proving his class membership (*id*. at 5).

Except the attachment proved the opposite. Narkin attached a June 2008 "Carpet Contract," issued by "Seller: Costco Wholesale," covering the cost of installing carpet and underlay in Narkin's Eugene, Oregon home (*id*.). None of the Defendants appear on the contract. Because the Direct Purchaser settlement classes include only those persons or entities who purchased slabstock or underlay directly from a Defendant or co-conspirator (*see* Doc. 1379-4 at 3), Narkin had inadvertently proven he was *not* a class member.

That same day, counsel for the Direct Purchaser Class received notice of Narkin's filing and "called the number listed as Mr. Narkin's daytime phone number in his in forma pauperis motion at approximately 4:20 PM EDT[. Counsel] spoke with a man who identified himself as Michael Narkin" (Doc. 1819-1 at ¶ 3). Counsel then explained to Narkin that Costco Wholesale was not a Defendant in this case, "so Mr. Narkin was an indirect purchaser," not a Class member, and therefore lacked standing to object to the settlements (*id*. at ¶ 4). Narkin replied that the Carpet Contract listed a second company as the "actual seller," but Counsel explained that the second company likewise was not a Defendant or co-conspirator (*id*.). Counsel asked Narkin to withdraw his Objection and his appeal (*id*. at ¶ 5).

> Mr. Narkin responded that he might consider withdrawing his objection and appeal, but only if Plaintiffs were willing to provide him 'something additional.' When I asked him what that meant, he said that he was 'just open to something additional.' Mr. Narkin then said that he 'could not get more specific' because he was 'nailed down in previous situations' when he asked for 'something specific' from class counsel.

Counsel thanked Narkin and ended the call.

4

About ten minutes later, Narkin phoned Counsel, who recounts the call in a sworn Declaration (*id*. at ¶¶ 7–8).

> Mr. Narkin proposed that the 'additional benefit' he offered on our previous call be a contribution to 'a charity I do work for.' I asked what type of contribution he was seeking and he said, 'something not totally de minimis.' He also said that, given the settlements at issue here, Plaintiffs could 'afford to be somewhat generous.' He also stated that he believed Plaintiffs' counsel made some filings in which they admitted they 'inflated' the case lodestar. He said that, if Plaintiffs' counsel made a payment to his charity, 'all of that would go away.'
>
> In response to these statements, I told him that Plaintiffs' counsel disagree with his assertions regarding [an] inflated lodestar. I asked Mr. Narkin for more information about the charity he mentioned. Mr. Narkin claimed that it was a '501(c)(3) charity' and confirmed in response to my question that he was on the managerial board of the charity. However, despite my further questions, he would not confirm whether or not he had authority over how the charity distributed its funds, including to its managers.

This Court denied Narkin's IFP Application on July 8 (Doc. 1807 at 2–3).

***Narkin Cannot Reasonably Believe He Has Standing to Object to the Settlements.*** When pressed by this Court to provide proof of his class membership, and after being told once by this Court and repeatedly by Direct Purchasers that he was not and plausibly could not be a class member, Narkin offered only the Carpet Contract, which does not even mention a Defendant or a co-conspirator. Only firms or persons who purchase flexible foam directly from Defendants or a co-conspirator are members of the Direct Purchaser settlement classes. Despite repeat opportunities to do so -- in support of the Objection, in response to the Motion for Sanctions, and in his IFP Application -- Narkin has never presented legitimate proof of his class membership.

And it is entirely implausible that any such proof exists (*see* Doc. 1701 at 2). The overwhelming majority of Defendants' products would have no use to someone such as Narkin. That is because Class members purchase large slabstock buns or underlay rolls from Defendants. Class members then further refine the buns or rolls and incorporate the foam into furniture, bedding, or

carpet products. The Class member sells an intermediate good to another manufacturing firm or a finished good to an end-use consumer. Narkin is either retired, unemployed and looking for work, or a "Non-Profit Director" who makes a modest income (*see* Doc. 1775 at 1–2 (sworn IFP application, claiming no income except retirement benefits and "public assistance"); Doc. 1743-10 at 9 (sworn Chapter 13 filing)). He would have no plausible reason to buy flexible foam from a Defendant.

Narkin had a continuing obligation to ensure his pleadings conformed with Rule 11. *See Merritt*, 613 F.3d at 626. Perhaps he reasonably did not understand what this case was about in February 2015 when he filed his sworn statement. Even so, Narkin unreasonably persisted in that false belief, maintaining his Objection after being told repeatedly by this Court and Direct Purchasers that he had not purchased flexible foam from a Defendant. It would not have been difficult for Narkin to confirm whether his sworn statement had an evidentiary basis. The class notices specifically identify each Defendant and co-conspirator (*see, e.g.*, Doc. 1400-4 at 4). Narkin could have simply compared the Carpet Contract to that listing of Defendants and co-conspirators. Because his sworn statement rests on a "factual allegation [that] had no evidentiary support," *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996), the Objection violates Rule 11. *See* Federal Civil Rule 11(b)(3).

On July 21, Narkin filed his response to the Motion for Sanctions, providing a second reason why he was a class member (Doc. 1843). Call this second reason Narkin's "standing theory." Because this second reason rests on an absurd argument with neither factual nor legal support, it too is sanctionable.

The standing theory goes like this: In response to Defendants' alleged conspiratorial, inflated pricing, Direct Purchasers increased the price of their own goods, later sold to indirect purchasers. Because Direct Purchasers passed on price increases, two legal consequences follow according to Narkin. First, Direct Purchasers suffered no injury, and therefore have no Article III standing to bring

6

Sherman Act claims. Second, Direct Purchasers -- approximately 46,000 of them -- entered into a price-fixing agreement with Defendants to set the price of foam sold to indirect purchasers (*id*. at 1–2).

The Supreme Court long ago rejected the basic premise of Narkin's theory. In *Hanover Shoe, Inc. v. United Shoe Machinery Corp*., 392 U.S. 481, 487–88 (1968), the Court confronted the claim that an antitrust plaintiff "suffer[s] no legally cognizable injury, [when] . . . the illegal overcharge during the damage period was reflected in the price charged for" the plaintiff's products, later sold to indirect purchasers. "We hold that the [plaintiff] is . . . entitled to damages if he raises the price for his own product. As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower." *Id.* at 489.

Because Narkin's standing theory cannot reasonably be reconciled with *Hanover Shoe*, it is not a good faith argument for a change in existing law. If a plaintiff may recover antitrust damages despite pass-on, the plaintiff may maintain a Sherman Act claim despite pass-on. The plaintiff suffers injury at the moment it pays defendant's overcharge. Moreover, Narkin's theory would dramatically limit the scope of the Sherman Act private right of action in light of the existing limitation on indirect-purchaser claims. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745 (1977). The theory is also unsupported by any citation, other than a single, general reference to standards of constitutional standing. "Burying one's head in the sand, in the hope that a judge will disregard an adverse decision by the Supreme Court, is a paradigm of frivolous litigation. . . . [C]ourts do not penalize litigants who try to distinguish adverse precedents, argue for the modification of existing law, or preserve positions for presentation to [appellate courts. Narkin], however, did none of these things." *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 809 (7th Cir. 2003); *see also Fishoff v. Coty Inc*., 634 F.3d 647, 655

7

(2d Cir. 2011) (a legal contention "foreclosed a priori by binding precedent" is sanctionable under Rule 11).

Narkin's assertion that the entire Direct Purchaser Class entered into a price-fixing agreement with Defendants is frivolous. *See* Federal Civil Rule 11(b)(3).

***Knowing he is not a Class Member, Narkin maintains the Objection to Extort Money from the Class.*** Narkin's Objection is frivolous because he lacked standing to file the Objection, and he lacked both a factual or legal basis for concluding that he did have standing. Equally egregious, Narkin demanded payment from Direct Purchasers to withdraw his baseless Objection and appeals.

Narkin does not dispute that he made such a demand. Rather, he claims that reference to that demand is barred by Federal Evidence Rule 408 (*see* Doc. 1843 at 2–3). That Rule excludes use of "compromise negotiations" to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Federal Evidence Rule 408(a). Because he has no standing to file an objection to the settlements, Narkin has no pending "claim" to discuss settling with the Direct Purchaser Class. Further, Direct Purchasers do not cite the pay-off demand to show the Objection is invalid but to prove that Narkin maintains his Objection for an improper purpose, in violation of Rule 11(b)(1) (*see* Doc. 1819 at 3) ("Narkin's demand for a 'contribution' in the face of evidence that he has no right to object demonstrates that he is simply trying to extort money from Plaintiffs.").

Because "Narkin has no more grounds for pressing his objection than any other person who did not purchase flexible foam directly from a Defendant or a co-conspirator during the Class Period, and who therefore is not entitled to any portion of the settlement funds" (Doc. 1807 at 2), he maintains his Objection only "to harass, cajole, intimidate and extort the [Direct Purchaser Class] into giving him undeserved sums of money." *Perry v. Barnard*, 745 F. Supp. 1394, 1407 (S.D. Ind. 1989) *aff'd*,

911 F.2d 736 (7th Cir. 1990); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 524 (6th Cir. 2002) ("First Bank had the improper purpose of using the legal system to threaten and harass Hartford in an attempt to force settlement of . . . a claim on which it knew it could not prevail on the merits in litigation.").

His shift in standing theory -- from his baseless sworn statement that he bought flexible foam from a Defendant, to his absurd theory of a 46,000-member price-fixing conspiracy -- is further proof of Narkin's improper purpose. Having had one theory exposed as meritless, Narkin simply fabricates a different theory so that he can further delay disbursement of the settlement funds.

***This Court will Exercise its Discretion to Sanction Narkin.*** Rule 11 sanctions are discretionary. *See* Federal Civil Rule 11(c)(1). But after careful consideration, Narkin's conduct in this litigation shows sanctions are warranted. He persists in claiming he is a member of the Class, when he indisputably is not, and unsuccessfully sought to extort money from the Class. He proceeds pro se, but he also holds a law degree. And he has done much more to warrant Rule 11 sanctions, including disparaging Class Counsel by knowingly misrepresenting their disciplinary history (*see* Doc. 1473-1 at 3; Doc. 1800 at 2; Case No. 15-1497, Doc. 10 at 3 (Fed. Cir. April 14, 2015); *see also* Doc. 1534 at 11 (explaining to Narkin that his claim regarding Class Counsel's alleged misconduct in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), was baseless).

Narkin's conduct has not only burdened Direct Purchasers and this Court with the task of responding to patently frivolous filings; settlement funds of $147 million, the product of four years of hard-fought litigation, have hung in limbo for more than eight months because a person who knows he has no right to object to the settlements nonetheless refuses to withdraw his meritless Objection. As a result, not a single class member has received a penny under either settlement; not a single attorney has been compensated under this Court's fee award; the Direct Purchaser litigation common

9

fund, a pool of money created by Plaintiffs' lawyers to fund litigation expenses, remains depleted by $6.6 million; and Leggett & Platt and the Carpenter Defendants have not received the finality sought when they paid millions under the settlement agreements. All this delay has no purpose for anyone, not even for Narkin -- Class Counsel affirmed on the record that they have no intention of paying off Narkin (*see* Doc. 1926 at 3), and this Court expects Class Counsel will stand firm.

Finally, Narkin shows a blatant disregard of the rulings of other district courts by filing the same boiler-plate, form objection in this case that he filed in other cases (*see* Docs. 1743-3 through -7) (collecting five nearly identical versions of the Objection, filed in other class action lawsuits between March 2014 and January 2015). That form objection has been rejected by every court in which it has been filed, but that did not stop Narkin from filing the same form objection a *second* time in this case, targeting the Indirect Purchaser Class settlements (*compare* Doc. 1475-6, *with* Doc. 1965). This is not even Narkin's first pay-off demand. After overruling the form objection, another court considered whether Narkin should be granted IFP status to appeal final settlement approval.

> In support of the argument that [Narkin's] appeal is not in good faith, Plaintiff contends that [Narkin] demanded $100,000 in exchange for dismissing his appeal. In reply, [Narkin] does not dispute that he made the demand, but explains that the demand was for a charity that he volunteers for, Luvin Animal Rescue. However, the charity appears to belong to [Narkin] and his family, who are identified as its officers.

*Arnold v. Fitflop USA, LLC*, No. 3:11-cv-00973-W-KSC, Doc. 130 at 5 n.2 (S.D. Cal. 2014) (citations omitted) (denying IFP status on appeal); *see also* Doc. 1743-10 at 6 (Narkin's Chapter 13 bankruptcy schedule, filed jointly with his wife, claiming a 100-percent interest in the same "charity").

Narkin has had more than enough opportunities to stop obstructing court proceedings. Therefore, this Court will sanction Narkin for his meritless filings in this Court.

***$10,000 is an Appropriate Sanction.*** Direct Purchasers ask for "all attorneys' fees and costs incurred by the Class's counsel in bringing this motion and responding to Narkin's objections," as

10

well as a monetary sanction (Doc. 1743 at 1). "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. . . . . [I]f imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" is proper. Federal Civil Rule 11(c)(4). "[A] district court is given wide discretion in deciding the amount of sanctions to impose," *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996) (quotation marks omitted), but "before a district court awards an attorney fee, Rule 11 requires a finding that the recoverable fee was induced by the filing of the sanctionable pleading," *Bodenhamer Bldg. Corp. v. Architectural Res. Corp.*, 873 F.2d 109, 114 (6th Cir. 1989).

In response to Narkin's meritless Objection or in support of the Motion for Sanctions, Direct Purchasers filed: a February 2 response to the Objection, devoting eight pages of legal argument in response (*see* Doc. 1475-1 at 4–11); a May 14 letter, requesting in five pages that conditions be placed on Narkin's IFP Application (Doc. 1678); on June 16, the twenty-page Motion for Sanctions (Doc. 1743-1); and on July 13, a seven-page reply in support of the Motion for Sanctions (Doc. 1819). These tallies do not include significant work reflected in the appendices for these Motions, including: having the Class Administrator search Defendants' transactional data for proof that Narkin was a class member (Doc. 1475-1 at ¶ 21); collecting Narkin's boiler-plate objections filed in other courts and tracing the appellate history of those filings (Docs. 1743-3 through -7; Doc. 1743-1 at 6); obtaining and analyzing Narkin's Chapter 13 filing (Doc. 1743-10); and preparing Counsel's Declaration (Doc. 1819-1). The attorneys who signed, filed, or worked on those pleadings charge standard hourly rates of between $850 and $1,175 (Doc. 1910-1 at 3, 7), rates commensurate with their skill and reputation.

11

In light of the work performed and the relevant standard rates, without a doubt Direct Purchasers spent more than $10,000 in attorney time and expense responding to Narkin's Motion. Direct Purchasers' total expenses, however, are beyond Narkin's means to pay (*see* Doc. 1743-10 at 5, 9–10; Doc. 1775). A partial attorney fee award may, hopefully, deter Narkin's repeat frivolous conduct in this case.

## CONCLUSION

For these reasons, this Court grants the Direct Purchaser Class's Motion for Sanctions (Doc. 1743), and denies as frivolous Narkin's Cross-Motion for Sanctions (Doc. 1800). Narkin shall pay Direct Purchasers Ten Thousand Dollars ($10,000) as sanctions for his Rule 11 violations. This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that Narkin could not appeal this Order in good faith.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                 JACK ZOUHARY
                                                 U. S. DISTRICT JUDGE

November 19, 2015