IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re Polyurethane Foam Antitrust Litigation | Case No. 1:10 MD 2196 |
| This document relates to: INDIRECT PURCHASER CLASS | MEMORANDUM OPINION AND ORDER RE: CCAF MOTION FOR FEES |
| | JUDGE JACK ZOUHARY |

### INTRODUCTION

This Court previously granted final approval to the nine class action settlement agreements reached between the class of Indirect Purchaser Plaintiffs ("IPPs") and various Defendants (Doc. 2020). At that time, this Court addressed numerous objections, including those of Melissa Holyoak and John Tabin on behalf of the Center for Class Action Fairness ("CCAF"). CCAF now moves for an award of attorney fees (Doc. 2028), and IPP Class Counsel oppose (Doc. 2032). For the reasons stated below, the Motion is denied.

### STANDARD OF REVIEW

"Fees and costs may be awarded to the counsel for objectors to a class action settlement if the work of the counsel produced a beneficial result for the class." *Olden v. Gardner*, 294 F. App'x 210, 221 (6th Cir. 2008) (citing Federal Civil Rule 23, Committee Notes to Subdivision (h), and various cases); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they [are] not entitled to fees . . . ."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 803–04 (N.D. Ohio 2010) ("Sixth Circuit case law recognizes that awards of attorneys' fees

to objectors may be appropriate where the objector provided a benefit to the class by virtue of their objection.").

The Sixth Circuit's stance on objector awards is less permissive than others. For example, "some courts have also rewarded objectors' counsel for advancing non-frivolous arguments and transforming the settlement hearing into a truly adversarial proceeding," even when their objections did not "influence[] the court's prior decision." *In re AOL Time Warner ERISA Litig.*, 2007 WL 4225486, at *2 (S.D.N.Y. 2007) (citations and internal quotation marks omitted). This standard is more lenient than one where the objection must actually make a meaningful difference in the court's decision. *Cf. In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3328249, at *1–2 (W.D. Ky. 2010) (denying an objector's motion for fees because "[t]he Court does not believe that the [objector] raised any issues that the Court would not have considered otherwise when addressing the fairness, reasonableness, and adequacy of the settlement," and ultimately "[t]here was no cause and effect between the decisions of this case and the action of the [objector]").

But even the more lenient courts recognize "the trial judge has broad discretion in deciding whether, and in what amount, attorneys' fees should be awarded, since [the judge] is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *see also Olden*, 294 F. App'x at 221 (reviewing objector award decision for abuse of discretion).

## DISCUSSION

CCAF asserts that "[t]he total pecuniary benefit to the class achieved by [CCAF's] objection is at least $9,075,000 and up to $11,295,000," and CCAF is therefore "entitled to at least $435,600" (Doc. 2028-1 at 3). Given CCAF's Declaration that it spent a total of 158.1 hours pursuing its

2

objection, this amounts to a breathtaking average hourly rate of $2,755. This figure is particularly ironic given the amount of ink CCAF spilled attacking the hourly rates of Class Counsel in its Objection, where it suggested a reasonable hourly rate "for an attorney in Ohio with more than 36 years of experience is $261/hour" (Doc. 1960 at 30).

CCAF does offer to "waive[] any fee award over $90,000" -- which would still yield an average hourly rate of $569 -- for the purported reason of "avoid[ing] any appearance of an unseemly windfall" (Doc. 2028 at 2). But the real reason behind this seemingly magnanimous offer is that tax law limits the amount CCAF can earn from court-awarded fees "to no more than 50% of [its] year-to-year expenses" (Doc. 2028-2 at 4).

CCAF is not entitled to fees. The fundamental premise for CCAF's Motion is that it "*is responsible for* a pecuniary improvement to the class of at least $9,075,000" (Doc. 2028-2 at 3) (emphasis added). The simple fact, however, is that CCAF was not meaningfully *responsible for* any monetary benefit obtained by the class. Further, CCAF is not entitled to a fee for any clarifications to the settlement agreement made by this Court in its Final Approval Order. This Court explains its conclusion by examining below each of the four benefits to the class for which CCAF claims responsibility (Doc. 2028-1). The common thread running through this explanation is that this Court decided these issues on its own.

### Reduction of Class Counsel's Percentage-of-the-Fund Award

Class Counsel submitted a fee application seeking an award of thirty percent of the overall settlement total of $151,250,000, or $45,375,000. This Court undertook a lengthy and detailed assessment of whether counsel's request was reasonable (Doc. 2020 at 33–42).

Ultimately, this Court concluded: (1) it would employ the percentage-of-the-fund approach, with a lodestar cross-check; (2) counsel's submitted lodestar of $33.74 million was twenty percent higher than it should be; (3) counsel's requested multiplier of 1.34 was reasonable; and (4) accordingly, the requested fee award would be reduced from thirty percent of the gross settlement fund to twenty-four percent, amounting to a $9 million reduction.

CCAF asserts this fee reduction is entirely "attributable to [its] objection" (Doc. 2028-1 at 4). CCAF is wrong.

The timeline of this Court's fee-award decisions illustrates the point. This Court entered its fee award to IPP Class Counsel in January 2016. *Nearly one year earlier*, this Court first awarded fees to class counsel for the Direct Purchaser Plaintiffs ("DPPs") (Doc. 1534) (approving two DPP class action settlements and entering a thirty-percent fee award). Thereafter, this Court entered a second fee award to DPP class counsel (Doc. 1971) (approving six additional DPP settlements and entering an additional twenty-percent fee award). Thus, before reviewing IPP Class Counsel's Motion for Fee Award or CCAF's Objection, this Court *twice* addressed the question of fee awards *in this case*.

In the second DPP fee award Order, this Court undertook a lengthy analysis of all factors relevant to a fee award (*id.* at 14–24), and also reviewed empirical studies that surveyed awards entered in other cases. Two months later, undertaking a very similar analysis of the same factors, this Court concluded IPP's Class Counsel's fee request of thirty percent should be reduced to twenty-four percent, roughly the same overall percentage awarded to DPP class counsel. This was no coincidence.

Yet CCAF did not take the time to familiarize itself with this Court's DPP fee analysis (Doc. 2018 at 38–39), choosing instead to file boilerplate objections from its own briefing in other cases (Doc. 2032 at 17 n.6) (identifying arguments previously submitted to other courts).

No more proof is needed, but it exists: (1) CCAF's Objection actually urged this Court to award IPP's counsel only ten to sixteen percent of the *net* settlement fund (Doc. 1960 at 19, 22), not twenty-four of the *gross* settlement fund -- an argument this Court rejected; and (2) before CCAF even submitted its Objection, this Court had already asked DPP class counsel to justify its thirty-percent request when the "mean fee award[] in [other class action] cases hover[s] around 20 percent of the gross settlement fund" (Doc. 1909 at 4).

This Court would not hesitate to give credit to objectors where credit is due, but none of the objections -- including CCAF's -- actually led to, or meaningfully influenced, the final award.

**Addressing Hourly Rates for Contract Attorneys**

The second benefit to the class that CCAF says is attributable to its Objection is really a sub-part of the first. As all objectors were aware, even when a court uses the percentage-of-the-fund approach, it is still common to undertake a lodestar cross-check. *See, e.g.*, *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). By definition, this cross-check includes examination of counsel's hours and hourly rates. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1987) ("[T]he 'lodestar' [is] determined by multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved.").

Therefore, just as the objectors insisted Class Counsel's requested percentage was too high, they also argued counsel's lodestar was too high. Specifically, the objectors asserted that: "(i) many of the rates charged by Counsel are too high and above-market, (ii) many of the hours charged are

5

unnecessary or duplicative, (iii) there is insufficient documentation of hours spent, (iv) expensive partner-level attorneys did work that other individuals with lower rates could have done, and (v) counsel paid contract attorneys low rates and then billed them at many times what they were paid" (Doc. 2020 at 39). This Court concluded that "[s]ome of these concerns [were] valid," with the billing of contract attorneys giving this Court "the greatest concern" (*id.* at 39–40).

Seizing on this Court's conclusion that contract attorneys charged excessive hourly rates, CCAF claims credit for the ultimate fee reduction. True, CCAF raised the issue of contract attorney rates (Doc. 1960 at 26–28), but so did other objectors (*see* Doc. 1928 at 44) ("Class Counsel attorneys and especially the contract lawyers hired by some class counsel overbilled . . . ."); (*see* Doc. 1964 at 6) (accusing counsel of "rampant use of contract attorneys to inflate the collective lodestar").

More to the point, this Court's lodestar cross-check *necessarily* included examination of Class Counsel's rates, including those listed for contract attorneys; it was not CCAF's Objection (or anyone else's) that led this Court to undertake this review. Indeed, before CCAF filed its Objection, this Court had already signaled it would scrutinize DPP class counsel's hourly rates, asking for each attorney's title, years of legal experience, and so on (Doc. 1909 at 1) -- as it later did of IPP Class Counsel (Doc. 1973 at 1–2).

As stated in the Final Approval Order, this Court used the lodestar cross-check to "ensure that the fee award [was] . . . *roughly* aligned with the amount of work the attorneys contributed" (Doc. 2020 at 36 (quoting *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007)). Just as CCAF's primary objection (that the thirty-percent request should be reduced to less than sixteen percent) did not meaningfully influence this Court's final decision on what the percentage should be, neither did CCAF's related secondary objection (that the lodestar was inflated by excessive contract attorney hourly rates) influence this Court's cross-check.

**Payment of the Fee Award Only as Settlement Funds are Received**

The nine IPP settlements obligate Defendants to pay a total of $151.25 million, but "$9.25 million (6.1%) is contingent upon whether Defendants Hickory Springs and Future Foam succeed in separate litigation against Dow Chemical," and another "$10 million (6.6%) will not be paid into the settlement escrow account(s) for some period of time" (Doc. 2020 at 21–22). Accordingly, this Court ordered that "[p]ayment of common benefit attorney fees to IPP Class Counsel will be made on a percentage basis only as settlement funds are deposited into the settlement escrow account(s)" (*id.* at 33).

Before this Court entered the Final Approval Order, CCAF argued that, "[t]o the extent that class counsel seeks to recover the full amount of requested fees immediately while class members' payments remain contingent or are delayed for up to two years, such a payment structure is an impermissible breach of the attorneys' fiduciary duty" (Doc. 1960 at 38). Objector Cannata made a similar argument (*see* Doc. 1950 at 2) ("Class Counsel's fees should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.").

As this Court noted, however, Class Counsel never sought to recover the full amount of requested fees immediately. Rather, Class Counsel were "always . . . willing to wait to obtain the portion of [their] . . . fee until the contingency is satisfied and Defendants deposit such funds in escrow" (Doc. 2020 at 32) (quoting Doc. 1991 at 40).

Moreover, governing precedent -- which this Court cited *before* CCAF filed its Objection (*see* Doc. 1534) -- advises exactly this approach. *See Bowling*, 102 F.3d at 780 (affirming payment to counsel of a common benefit fee award of ten percent of the amount "paid into the common fund to

7

date," plus "up to 10% of the [ten future] $6.25 million annual [settlement] payments"). This Court was always of the mind that Class Counsel would receive their fees only as, when, and to the extent Defendants actually paid settlement funds.

### Notice of *Cy Pres* Beneficiaries

Finally, CCAF argued Class Notice was inadequate because it did not identify the entities that might receive a *cy pres* distribution. This Court found CCAF's Objection "not well-taken," but added that "CCAF has nonetheless identified a best practice" (Doc. 2020 at 26). Accordingly, this Court ordered Class Counsel to propose charities to which *cy pres* distributions will be made.

CCAF asserts its identification of this best practice, and this Court's adoption, entitles it to a fee award. Not so. CCAF's suggestion tidied up a small corner of the settlement agreement. *Cy pres* will be limited to a residual fund of less than $50,000 in uncashed checks which cannot be redistributed because mailing costs would make it "economically infeasible" (Doc. 2010-1). This minor improvement is not substantial enough to justify an award of attorney fees. *See Vizcaino*, 290 F.3d at 1052 ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they [are] not entitled to fees . . . .").

### CONCLUSION

A law review article cited by CCAF states that objectors can sometimes "shed[] new light on issues and provid[e] an adversarial contest," thereby improving a class action settlement. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 472 (2003). This Court certainly agrees. With regard to whether objectors should receive attorney fees, however, the article goes on to say that "[c]ourts should adopt an approach that strictly evaluates the input of objectors to determine if it is of significant value in relation to the

8

information already in the case. District judges need the discretion to deny any attorneys' fee request of any objector that does not genuinely help the case." *Id.* at 473.

This Court's analysis was not substantially enhanced *because of* CCAF's Objection, nor was the fee reduction ordered by this Court *attributable to* CCAF's arguments. CCAF may well provide a benefit warranting fees in other cases, but it did not do so here.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 14, 2016