IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re Polyurethane Foam Antitrust Litigation | Case No. 1:10 MD 2196 |
| This document relates to: INDIRECT PURCHASER CLASS | MEMORANDUM OPINION AND ORDER RE: APPEAL BOND |
| | JUDGE JACK ZOUHARY |

## INTRODUCTION

This Court previously granted preliminary approval to nine separate settlement agreements between the Class of Indirect Purchaser Plaintiffs ("IPPs") and various Defendants (Doc. 1861). This Court received objections to the settlements, or to the related attorney fee application, from the following class members: (1) Chris Andrews (Docs. 1920 & 1928); (2) Jill Cannata (Doc. 1950); (3) Melissa Holyoak and John Tabin, of the Center for Class Action Fairness ("CCAF") (Doc. 1960); (4) Sean Cochran (Doc. 1964); (5) Michael Narkin (Doc. 1965); (6) Jennifer Hinojosa (Doc. 1967); and (7) Patrick Sweeney (Doc. 1968).

This Court concluded none of the objections were well-taken and the settlement agreements were fair, reasonable, and adequate. Accordingly, this Court approved all nine agreements (Doc. 2020). Five appeals have been filed by: (1) Andrews (Doc. 2035); (2) Cochran (Doc. 2037); (3) Cannata (Doc. 2038); (4) Sweeney (Doc. 2039); and (5) Hinojosa (Doc. 2048) (together, the "Objectors"). Hinojosa filed her notice of appeal 42 days after entry of the Final Approval Order, so it appears her appeal is untimely. *See* Federal Appellate Rule 4(a)(1)(A) ("[T]he notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."). IPP Class Counsel now moves for an Order requiring Objectors to file an

appeal bond (Doc. 2042). Specifically, Class Counsel request the "bond be set in the amount of $305,463, to be posted jointly and severally by the Appealing Objectors" (*id.* at 1). Only Andrews, Cochran, and Cannata filed briefs in opposition (Docs 2046, 2051 & 2054). (It is not clear that Andrews and Hinojosa are actually class members (Doc. 2020 at 2). This Court chooses to address the appeal-bond issue without passing on the question of whether they have standing to file an appeal.)

## STANDARD OF REVIEW

Federal Appellate Rule 7 states that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Under this Rule, "the decision[s] as to the need for a bond and the amount thereof are left to the discretion of the district court." *In re Munn*, 891 F.2d 291, at *1 (6th Cir. 1989); *see also In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). The purpose of an appeal bond is "to protect the rights of appellees brought into appeals courts by [the] appellants." *Adsani v. Miller*, 139 F.3d 67, 75 (2nd Cir. 1998); *see also Ryan v. Endo Pharm., Inc.*, 2014 WL 4209219, at *2 (E.D. Pa. 2014) ("The purpose of appellate bonds is to protect the appellee against the risk of non-payment by an unsuccessful appellant."). Appeal bonds also serve to discourage frivolous appeals. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("[A]n appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . . .").

When faced with a motion requesting an appeal bond, a district court must determine (a) whether a bond is appropriate, and (b) if so, how much the bond should be. *Gemelas v. Dannon Co.*, 2010 WL 3703811, at *1 (N.D. Ohio 2010). Regarding the first question, "courts typically consider (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay

appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Id.* at *1 (citing *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 147–150 (S.D.N.Y. 1999)).

Regarding the bond amount, Rule 7 directs this Court to set an "amount necessary to ensure payment of costs on appeal." Appellate courts have reached different conclusions regarding what qualifies as "costs on appeal." The D.C. and Third Circuits, for example, take a limited view, restricting an appeal bond "to only costs listed in [Federal Appellate Rule] 39." *Tennille v. Western Union Co.*, 774 F.3d 1249, 1255 (10th Cir. 2014) (citing *In re Am. Presidential Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985)). "The Sixth Circuit goes further, permitting an appeal bond to cover appellate attorneys' fees recoverable under the substantive statute underlying the litigation, even if that statute does not expressly state that those fees can be recovered 'as costs.'" *Id.* (citing *In re Cardizem*, 391 F.3d at 815–18, 817 n.4). Some circuits also hold that, if the district court believes there is "a real possibility" the appellate court will deem the appeal frivolous, the bond can also include attorney fees recoverable under Federal Appellate Rule 38. *See, e.g.*, *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987).

## DISCUSSION

### Whether to Impose an Appeal Bond

To determine whether imposition of an appeal bond is appropriate in this case, this Court examines (in reverse order) the four factors outlined in *Gemelas*.

***Bad Faith & Vexatious Conduct***. To at least some degree, each Objector has acted vexatiously, pursued his or her objections in bad faith, or both.

To begin, each Objector (or Objector's counsel) has a known history of acting as a "professional, or serial objector." *Roberts v. Electrolux Home Prods., Inc.*, 2014 WL 4568632, at *10 (C.D. Cal. 2014). A serial objector's "sole purpose is to obtain a fee by objecting to whatever aspects of the [s]ettlement they can latch onto." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.30 (S.D. Fla. 2011); *see also In re Wal-Mart Wage & Hour Employment Practices Litig.*, 2010 WL 786513, at *1 (D. Nev. 2010) (serial objectors' attorneys (including Cochran) have "a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class" in exchange for dismissing the appeal); *Gemelas*, 2010 WL 3703811, at *2 (finding a serial objector is "making a business of objecting to, and appealing, class action settlements in order to obtain some financial reward"). The serial objector's ultimate goal is extortion. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("[P]rofessional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.").

Class Counsel set out at length the history of each Objector, or his counsel, as a serial objector (*see* Doc. 2042 at 4–11). One court characterized Sweeney as a "professional objector" who "has a long history of representing objectors in class action proceedings." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *10 n.4 (N.D. Cal. 2014). Another court, having received an objection filed by Cochran, exclaimed "[t]he remoras are loose again" and stated Cochran's goal was "to hijack as many dollars for [himself] as [he] can wrest from a negotiated settlement." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108–09 (D. Minn. 2009). Moreover, the appeal docket reveals Cochran is now co-counsel with attorney John Pentz, another well-known "professional objector" who

4

seeks to "make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements." *Barnes v. Fleetboston Fin. Corp.*, 2006 WL 6916834, at *1–2 (D. Mass. 2006).

Cannata, who has a history of working with Cochran, was characterized as a "serial objector" by another court in this District. *Gemelas*, 2010 WL 3703811, at *1. And only a year ago, another court in this Circuit found Andrews' "submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 2015 WL 1498888, at *20 (E.D. Mich. 2015); *see id.* (observing that "other courts have noted that Andrews is known to be a professional objector who has extorted additional fees from counsel in other cases" (internal quotation marks omitted)).

These are but a few examples of their "serial objections"; many, many more exist. This history of misconduct strongly suggests each Objector is not appealing in good faith. Moreover, some have acted vexatiously before this Court. Andrews is the worst. As this Court noted in the Final Approval Order, Andrews' Objection included "scurrilous, unfounded accusations (*e.g.*, perjury and fraud by IPP counsel)," and he "repeatedly ma[de] baseless accusations using inappropriate language" (Doc. 2020 at 14–15). More recently, in his appeal papers, Andrews insists he is a victim of a conspiracy of "unbelievable favoritism shown [to] class counsel at the district court level and at this appeals court level"; Andrews concludes, "[t]his looks like a quid pro quo all around" (Doc. 2057-1 at 3), accusing Class Counsel, this Court, and the Court of Appeals of unethical behavior -- without a shred of evidence (*see also* Doc. 2062-1). This certainly qualifies as vexatious conduct.

Sweeney and Cannata have not acted as badly, but their objections amount to pure boilerplate language, wholly untethered from the actual terms of the settlement. They neither sought to argue nor appeared at the fairness hearing. Their behavior needlessly increased the burdens on Class Counsel and this Court. Conduct of this sort falls squarely within the definition of vexatious conduct.

5

In sum, to varying degrees, each Objector has shown bad faith and vexatious conduct, both in prior cases and in this action, in the pursuit of a payoff. Their conduct here resembles scavenger ants on a jelly roll, scrambling to extort money from the approved settlements. Accordingly, this factor weighs strongly in favor of imposing a bond.

***Merits of the Appeal***. "[A] district court's prejudging of a case's chances on appeal is a necessary byproduct of the imposition of a bond pursuant to Rule 7." *Tri-Star Pictures*, 32 F. Supp. 2d at 149 (citing *Adsani*, 139 F.3d at 79), *aff'd*, 198 F.3d 235 (2nd Cir. 1999). That said, the question of whether an appeal is actually frivolous is best left to the appellate court itself, which has "the benefit of a fully developed appellate record." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 960 (9th Cir. 2007).

Here, even if some of Objectors' arguments on appeal are not frivolous, it is fair to say success is unlikely. The standard of review for approval of a class action settlement is abuse of discretion, with factual findings reviewed for clear error. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).

Before this Court granted final approval to the nine settlement agreements, it reviewed extensive briefs, posed written questions to Class Counsel, and held a lengthy final fairness hearing. This Court addressed in detail each Objector's arguments, and made numerous findings of fact. Given the standard of review, Objectors face a serious uphill battle. *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming final approval of a class action settlement because, even though "some of the relevant factors certainly weigh against approving the settlement, it cannot be said that the settlement agreement is unfair, unreasonable, or inadequate, given the deference owed to the district court"); *Alvarado v. Memphis-Shelby Cty. Airport Auth.*, 229 F.3d 1150, at *5 (6th Cir. 2000) ("[T]he district court has wide discretion in determining whether a settlement of a class action is fair and reasonable."); *Webster v. Sowders*, 928 F.2d 1134, at *2 (6th Cir. 1991) ("Once the district court

6

establishes that a proposed settlement is not tainted with collusion, the objector bears a heavy burden of demonstrating that the decree is unreasonable.").

Objectors face a similar challenge on this Court's fee award. A "district court's award of attorney's fees in common fund cases need only be 'reasonable under the circumstances.'" *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Here, this Court's 24% attorney fee award is certainly reasonable, centered in the heartland of class-action fee awards. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532–33 (E.D. Mich. 2003) ("[W]hen using a percentage-of-the-fund approach to calculate attorneys' fees, twenty-five percent has traditionally been the benchmark standard [in the Sixth Circuit], with the ordinary range for attorney's fees between 20–30%.") (internal quotation marks omitted), *aff'd*, 391 F.3d 812.

Objectors necessarily make the same contentions on appeal as they did in their objections.[1] This Court believes these arguments lack merit and will not succeed on appeal. Indeed, nearly all the arguments on appeal merely rehash how this Court exercised its discretion. None of the opposition briefs cite controlling authority that would reverse any of this Court's conclusions. Even under the most charitable view of the merits of Objectors' arguments, this Court believes this factor also weighs in favor of imposing bond.

---

[1] Andrews appears to raise arguments on appeal he did not make in the district court. These arguments are waived. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996) ("Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal.").

***Risk of Nonpayment***. At least three Objectors reside outside this Court's jurisdiction. Cochran lives in California; Sweeney lives in Wisconsin; and Hinojosa lives in Florida. (The other two appear to live within 100 miles of this Court: Andrews lives in Livonia, Michigan; and Cannata lives in Cleveland, Ohio.) This weighs in favor of requiring a bond. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 ("In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result there is a significant risk of non-payment."); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 2014 WL 2931465, at *2 (S.D. Ohio 2014) ("The fact that [the objector] resides in Idaho -- outside the jurisdiction of the Sixth Circuit and this Court -- is further support for the conclusion that [she] may not pay the appeal costs if her appeal is unsuccessful."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 5147222, at *3 (W.D. Ky. 2010) ("[A] significant risk exists because the objectors reside throughout the country, have not guaranteed payment of any costs, and Representative Plaintiffs would be required to institute several collection actions in numerous jurisdictions if costs are awarded on appeal.").

Moreover, the two Objectors (or their counsel) who reside within this Court's jurisdiction have a history of showing disrespect for legal ethics and the rules of court. Cannata has been subjected to disciplinary proceedings by the Ohio Supreme Court, where he admitted conflict-of-interest violations and breach of fiduciary duty. *See* Relator's Answer to Respondent's Objections, *Disciplinary Counsel v. Cannata*, 144 Ohio St. 3d 1404 (2015), 2015 WL 6558950, at *3 (discussing "admitted conflict of interest violations by [Cannata and co-respondent Phillips]); *id.* at *16 (Phillips "effectively assist[ed] respondent Cannata in violating his fiduciary duties"). Andrews has filed several over-length and unauthorized filings without leave of court in this case (Docs. 1920, 1928, & 2013), and has a history of doing so in other cases. A "pattern of noncooperation and noncompliance with court orders"

8

supports a conclusion that an appellant "may not pay the appeal costs if [the] appeal is unsuccessful." *In re Porsche*, 2014 WL 2931465, at *2.

This factor therefore also weighs in favor of a bond.

***Financial Ability to Post a Bond***. "It is [the appellant's] burden to demonstrate that the bond would constitute a barrier to her appeal." *Id.* (citing *In re Cardizem*, 391 F.3d at 818). If Objectors "have not presented any evidence demonstrating that they lack the financial ability to post a bond . . . , [then] the Objectors' ability to do so is presumed." *In re Initial Pub. Offering Secs. Litig.*, 728 F. Supp. 2d at 293.

As noted earlier, Sweeney and Hinojosa did not respond to the Motion; thus, it is presumed they have the financial ability to post a bond. Cochran's response does not hint at any financial inability; indeed, Cochran states he "does not oppose an appeal bond for amounts authorized under [Federal Appellate Rule] 39(e)" (Doc. 2046 at 1). Cannata's "me too" response adopts Cochran's position.

Only Andrews raises the issue of financial ability, stating he "cannot afford any part of [the requested] $305,000.00 fee" (Doc. 2054 at 14). In support of this assertion, however, Andrews offers only a year-old request to proceed *in forma pauperis* in an unrelated lawsuit (*see* Doc. 2053 at 3). The first problem with Andrews' proof is that his request in the earlier case was denied (*see* Doc. 2057-12 at 2–4). The second is that Andrews has not requested to proceed *in forma pauperis* in *this* case, despite having first appeared in October 2015. In short, Andrews has not carried his burden of showing that having to post a bond would create an impermissible barrier to pursuing his appeal. *See In re Netflix Privacy Litig.*, 2013 WL 6173772, at *3 (N.D. Cal. 2013) ("Here, while Objectors contend that the appeal bond would be burdensome, they do not provide any evidence indicating a financial inability to pay.").

9

This factor too weighs in favor of an appeal bond. Because all four *Gemelas* factors point the same way, this Court will require Objectors to post such a bond. The next question for this Court to address is how large the bond should be.

**Amount of the Appeal Bond**

Class Counsel request the bond amount be set at $305,463, according to the following math: "(a) an estimated $10,000 in appeal-related expenses taxable under 28 U.S.C. § 1920 and [Federal Appellate Rule] 39(e); (b) an estimated $30,463 in lost interest income that will be diverted to Defendant Carpenter rather than be reserved for the exclusive benefit of the Class; (c) estimated additional claims administration costs up to $15,000; and (d) estimated attorneys' fees of approximately $250,000" (Doc. 2042 at 3). This Court agrees that some of these sums should be included, but not all.

*Taxable Costs*. As noted earlier, Circuits disagree on the allowed scope of "costs on appeal" under Federal Appellate Rule 7. But all Circuits agree that, at a minimum, Rule 7 costs include those listed in 28 U.S.C. § 1920 and Federal Appellate Rule 39. *See Tennille*, 774 F.3d at 1255 (comparing the rules in different circuits); *Azizian*, 499 F.3d at 955 (same); *In re Cardizem*, 391 F.3d at 816 (6th Cir. 2004) (discussing whether to limit "the scope of the 'costs' to be included in the appeal bond amount to those listed in Fed. R. App. P. 39 and 28 U.S.C. § 1920").

Rule 39(e) provides that the following costs are taxable: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." In addition, "[t]he costs taxable under [Section] 1920 include the marshal and clerk fees, court reporter fees, printing and witness fees, copying fees, docket fees, and compensation of

10

court appointed experts and interpreters." *In re Countrywide Financial Corp*, 2010 WL 5147222, at *2 (internal quotations marks omitted). Class Counsel estimate these costs at $10,000.

Only Andrews takes issue with paying this amount. Andrews disputes Class Counsel's estimate and insists costs should only be $34. This Court finds Andrews' estimate unrealistic and Class Counsel's estimate reasonable. Indeed, district courts regularly estimate taxable costs at more than twice the amount requested here. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (imposing a $25,000 appeal bond jointly and severally on objectors to cover Rule 39(e) costs); *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *2–3 (D.N.J. 2007) (same, and noting appellees are not "required to make [a] . . . delineated showing of costs for a bond motion" that "anticipate[s] all of the potential costs of a multi-party appeal"); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *10 (N.D. Cal. 2011) ($20,000 bond imposed on single objector to cover Rule 39(e) costs). Accordingly, this Court will include $10,000 to cover costs recoverable under 28 U.S.C. § 1920 and Rule 39.

*Additional Amounts*. In *Cardizem*, the Sixth Circuit examined the question of whether amounts may be included in an appeal bond in addition "to those listed in [Federal Appellate Rule] 39 and 28 U.S.C. § 1920," 391 F.3d at 816, and concluded it depends on the case. Specifically, "'costs' within the meaning of [Federal Civil Rule] 68 [are] to be defined by reference to the statute that underl[ies] the lawsuit." *Id.* (citing *Marek v. Chesny*, 473 U.S. 1 (1985)). Thus, if the plaintiff sues under "[a] statute [that] includes attorney's fees 'as part of the costs' which may be taxed upon appeal, the district court may factor these fees into its imposition of the bond for costs." *Id.* (quoting *Adsani*, 139 F.3d at 79, and citing *Pedraza v. United Guar. Corp.*, 313 F.3d 1323 (11th Cir. 2002)).

11

The *Cardizem* objector-appellant was a class plaintiff who had also brought her own individual suit "under Tennessee antitrust law," so the court examined the provisions of TENN. CODE ANN. § 47-18-109. *Id.* at 813. That statute includes a fee-shifting provision that allows a court to award damages and attorney fees to a prevailing defendant. *Id.* at 817. Thus, "not only was the district court entitled to include in the bond amount attorney's fees, but it was entitled to include any other damages incurred, presumably including [increased] administrative costs." *Id.* The court observed the objector-appellant's "pursuit of her objections has the practical effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds." *Id.* at 818. Accordingly, the court affirmed the inclusion of $123,429 "in incremental administration costs, and $50,000 in projected attorneys' fees," when calculating the total bond amount. *Id.* at 815.

Both this case and *Cardizem* involve indirect-purchaser plaintiffs filing objections to, and appeals from, a nationwide class action antitrust settlement. Nonetheless, *Cardizem*'s applicability here is questionable, because the plaintiff in that case filed "her own suit [which] was never certified as a class action." *Id.* at 817. Thus, when *Cardizem* examined the "underlying statute" to determine what costs could be included in the appeal bond, it concluded it should not examine "*all* of the various state and federal statutes asserted by the plaintiffs during the class actions." *Id.* (emphasis added). Rather, it examined only the state law applicable to the appellant's own lawsuit. *See id.* (appellant's individual "suit is not so broad as to include actions under federal law or under the laws of states other than Tennessee").

In this case, however, no Objector filed an individual lawsuit -- they are simply members of the class, and each of their appeals work to the detriment of the rights of every other IPP class member. Thus, the only relevant lawsuit is the IPP class action, with its array of underlying state and

12

federal law claims. This means the statutes underlying the claims of *every class member* are relevant to the question of the amount of an appeal bond. At least two of those statutes allow for awards of attorney fees and damages to a prevailing defendant, *see* TENN. CODE ANN. § 47-18-109; FLA. STAT. § 501.2105, and there may be more.

More importantly, while *Cardizem* outlined a method of including fees that fit the facts of *that* case, it is not the exclusive method and does not fit *this* case. This Court has the "inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1335 (11th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47–48 (1991), and *HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 916 (1st Cir. 1988)). "Notably, courts possess these powers 'even if procedural rules exist which [govern] the same conduct.'" *Id.* (quoting *Chambers*, 501 U.S. at 49). In light of this Court's conclusions that all Objectors have shown some degree of bad faith or vexatious conduct, it is within this Court's discretion to "include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs." *Id.* at 1336.

In this case, each Objector is prejudicing every other injured IPP class member -- many of whom are entitled to much larger settlement payments than Objectors themselves. Each appeal delays payment of benefits to all class members, since settlement funds cannot be disbursed until all appeals are resolved. Further, this delay imposes upon the class three types of concrete additional costs.

First, although most Defendants have already paid their settlement funds into escrow -- where interest on those funds will inure solely to the benefit of the IPP class -- Defendant Carpenter is not obligated to make its final $43.5 million settlement payment until all appellate rights are exhausted. Thus, each appeal deprives the class of interest that would otherwise accrue. The Carpenter fund

escrow agent reasonably estimates that, if the appeals are not finally resolved for one year, it will cost the class $30,463 in lost interest income (Doc. 2042-5 at 4).

Second, the delay will force the Claims Administrator to keep the claims process going longer, thereby incurring additional, unavoidable recurring costs. The Administrator reasonably estimates these additional costs will be about $15,000 (Doc. 2042-4 at 4) (assuming three additional months of administration, at $5,000 per month).

And third, Class Counsel estimate it will cost $250,000 in attorney fees to defend the appeals (Doc. 2042-3 at 3) (basing this estimate on the cost of appeals taken by Defendants earlier in this case). These additional costs total $295,463.

In addition to the *Cardizem* court, other courts have also included administrative costs in the bond amount. *See, e.g.*, *Miletak v. Allstate Ins. Co.*, 2012 WL 3686785, at *2 (N.D. Cal. 2012) (including $50,000 in "administrative costs" incurred in order "to continue to service and respond to class members' needs pending the appeal"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (imposing a bond of "$61,000 [for] administrative costs attributable to delay in distribution"); *Heekin v. Anthem, Inc.*, 2013 WL 752637, at *4 (S.D. Ind. 2013) (imposing appeal bond of "$250,000.00, which is comprised of: (1) $15,000.00 for the direct taxable costs of the appeal and (2) $235,000.00 for the administrative costs of the delay caused by the appeal").

Accordingly, this Court finds it appropriate to add $15,000 to the bond for increased administrative costs. The $30,463 in lost interest is clearly a type of "damages" caused by the appeals; thus, it too should be included in the bond. *See In re Cardizem*, 391 F.3d at 817 ("[T]he district court [was] entitled to include in the bond amount . . . any other damages incurred . . . .").

14

Other courts agree that, in appropriate circumstances, damages flowing from the delay caused by an appeal may be included. *See Brandewie v. Wal-Mart Stores, Inc.*, 2016 WL 698110, at *3 (N.D. Ohio 2016) (requiring a sole objector to post an appeal bond of $38,000, including $13,000 to cover "the additional costs incurred through the delay of administering the class action" because "the appeal will deprive class members of the use of" the settlement funds).

Finally, *Cardizem* also concluded it was appropriate to include "$50,000 in projected attorneys' fees" in the appeal bond, 391 F.3d at 815, while other courts have approved much larger amounts, *see In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 2013 WL 4735641, at *4 (E.D.N.Y. 2013) (imposing an appeal bond of $55,000, including $50,000 in attorney fees); *Gemelas*, 2010 WL 3703811, at *2 (requiring a single objector to post a $275,000 appeal bond, which included $250,000 for attorney fees); *Young v. New Process Steel, L.P.*, 427 F. Supp. 2d 1126, 1129 (N.D. Ala. 2006) (imposing an appeal bond of $61,000, including $60,000 in attorney fees); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (imposing an appeal bond of $101,500 on a single objector, including $50,000 in attorney fees).

This Court agrees it is appropriate to include an amount for attorney fees, but concludes the requested amount of $250,000 is too high. At some point, if the size of a bond becomes too large, it "constitutes an impermissible barrier to appeal." *Adsani*, 139 F.3d at 76. Ultimately, Rule 7 allows district courts to require an appeal bond in an "amount necessary to ensure payment of costs on appeal" -- which means the bond should not be more than necessary. In this case, this Court concludes $90,000 for attorney fees is necessary and appropriate. This brings the total to $145,463, an amount that will sufficiently protect the IPP class without unduly burdening Objectors' right to appeal. Notably, this amount is still less than the $174,429 bond imposed on a single objector approved by the Sixth Circuit in *Cardizem*.

**Joint and Several**

Class Counsel asks this Court to hold Objectors jointly and severally responsible for posting the bond. No Objector challenges this request.

Courts routinely require multiple objectors who are appealing the same order to post a bond jointly and severally. This arrangement allows the objectors to pool their resources, making the bond less onerous for any given appellant. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 2016 WL 259676, at *2 (D. Minn. 2016) (ordering joint and several bond be posted by four objectors); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, 2014 WL 3667213, at *3 (D.N.J. 2014) (two objectors); *Heekin v. Anthem, Inc.*, 2013 WL 752637, at *4 (S.D. Ind. 2013) (two objectors); *In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *3 (S.D.N.Y. 2010) (nine objectors); *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063 at *2–3 (D.N.J. 2007) (13 objectors). Accordingly, the appeal bond of $130,463 shall be joint and several.

## CONCLUSION

This Court has supervised this litigation for five years, working with the parties to meet the goals of Federal Civil Rule 1 in a way that allowed for a just resolution. To now have Objectors file frivolous appeals in pursuit of a payoff is not simply a detriment to the settling parties -- it is an insult to the judicial system.

Objectors shall post an appeal bond of $145,463. Moreover, to ensure this case concludes appropriately, the parties are required to seek approval from this Court if an Objector agrees to dismiss his or her appeal in exchange for payment (or anything else of value) from any source.

IT IS SO ORDERED.

                s/ *Jack Zouhary*
                JACK ZOUHARY
                U. S. DISTRICT JUDGE

                April 13, 2016