IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re Polyurethane Foam Antitrust Litigation | Case No. 1:10 MD 2196 |
| This document relates to: INDIRECT PURCHASER CLASS | MEMORANDUM OPINION AND ORDER RE: CY PRES RECIPIENT |
| | JUDGE JACK ZOUHARY |

**INTRODUCTION**

Plaintiffs in this multidistrict antitrust litigation alleged that firms in the flexible polyurethane foam market engaged in a decade-long conspiracy to fix, raise, and maintain the price of foam products. Plaintiffs bringing these claims included: (1) direct purchasers -- that is, businesses that purchased foam directly from Defendants and incorporated that foam into consumer products, such as furniture, mattresses, or carpet underlay; and (2) indirect purchasers -- that is, individuals and businesses that purchased these foam-containing consumer products. This Court certified a class of Direct Purchaser Plaintiffs ("DPPs") and a class of Indirect Purchaser Plaintiffs ("IPPs") (Doc. 1102 (redacted version at Doc. 1408); Docs. 1115 & 1117), and approved settlement agreements for both groups (Docs. 1971 & 2020).

The IPP settlements provide for a residual *cy pres* distribution once the Net Settlement Fund is depleted to such a level that additional distributions to class members would not be economically feasible. According to the Claims Administrator, the *cy pres* distribution will only trigger once he determines the costs for any additional distribution exceed the amount remaining in the Net Settlement Fund (*see* Doc. 2010-1 at 3). Those costs include "a one-time setup charge (approximately $1000–$2000), printing, stuffing of envelopes, and postage which on average combine to

approximately $0.60–$0.80 per check" (*id.*). The Administrator anticipates that "fewer than $50,000 will remain as residual" for *cy pres* distribution (*id.*).

As part of this Court's Final Approval Order, this Court required IPP Class Counsel to propose "charities or other beneficiaries that have objectives related as closely as possible to the purposes and remedies sought by the class action" (Doc. 2020 at 27) (internal quotation marks omitted). Counsel proposed the American Antitrust Institute ("AAI") and the Institute for Law and Economic Policy ("ILEP") (Doc. 2030 at 2). Objectors Melissa Holyoak and John Tabin filed an Opposition to the proposal on behalf of the Center for Class Action Fairness ("CCAF") (Doc. 2045), to which Class Counsel replied (Doc. 2047).

## STANDARD OF REVIEW

*Cy pres*, deriving from the Norman French "*cy pres comme possible*" ("as near as possible"), "is an equitable doctrine with roots in trusts and estates law." 4 *Newberg on Class Actions* § 12.32 (5th ed.) [*Newberg*]. Beginning in the 1970s, courts plucked the doctrine from the realm of trusts and estates, where it "saves testamentary gifts that would otherwise fail because their intended use is no longer possible," *In re Pharm. Indus. Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009) (internal quotation marks omitted), and grafted it onto the decidedly different world of class actions, *see* Martin H. Redish, Cy Pres *Relief and the Pathologies of the Modern Class Action*, 62 FLA. L. REV. 617, 634–38 (2010). Courts typically employ *cy pres* where distribution to the class is not feasible. Rather than see money escheat to the state or revert to the defendant, *cy pres* distributes unclaimed funds to a third-party charity. *See* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 cmt. b [*ALI Principles*] ("A cy pres award to a recipient whose interests closely approximate those of the class is preferable to either [escheat to the state or reversion to the defendant]."); *see also*

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("[T]he reason for appealing to *cy pres* is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement . . . to the class members.").

Despite its interloper origin, *cy pres* has been approved -- or at least tolerated -- by most circuits in the class-action context. *See, e.g.*, *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 675–76 (7th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011); *In re Pharm. Indus.*, 588 F.3d at 33–35; *In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146–47 (2d Cir. 2005); *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682–83 (8th Cir. 2002). *But see Marek v. Lane*, 134 S. Ct. 8, 8–9 (2013) (Statement of Roberts, C.J.) (noting the Supreme Court may need to clarify the limits on the use of *cy pres* given the "fundamental concerns surrounding the use of such remedies in class action litigation"). The Sixth Circuit is a notable holdout, having never meaningfully addressed class-action *cy pres*. This Court must then cast outside this Circuit for guiding principles.

Many courts and commentators endorse a "reasonable approximation" test, which evaluates a potential *cy pres* beneficiary against a handful of non-exhaustive factors, including: "the purposes of the underlying statutes claimed to have been violated, the nature of the injury to the class members, the characteristics and interests of the class members, the geographical scope of the class, the reasons why the settlement funds have gone unclaimed, and the closeness of the fit between the class and the cy pres recipient." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 33 (1st Cir. 2012); *see also Newberg* § 12.33 ("[M]ost circuits require that there be a connection -- or nexus -- between the harm that the plaintiffs have suffered and the benefit the *cy pres* distribution will provide . . . ."); *ALI Principles* § 3.07 ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class.").

3

Moreover, a *cy pres* beneficiary should not have a prior relationship with the parties or the court, as "the specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety." *Nachshin*, 663 F.3d at 1039; *see also ALI Principles* § 3.07 cmt. b ("A cy pres remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection of the recipient was made on the merits.").

As a matter of best practices, courts should solicit suggestions for appropriate *cy pres* beneficiaries from the parties. *ALI Principles* § 3.07 cmt. b ("If the settlement agreement does not designate a recipient, the court shall designate an appropriate recipient after soliciting input from the parties."). The final choice of a recipient, however, remains within this Court's discretion. *See In re Lupron*, 677 F.3d at 30–31; *Newberg* § 12.34 ("[T]he ultimate decision will always be a judicial one.").

## DISCUSSION

Class counsel propose AAI and ILEP as recipients closely related to the purposes and remedies sought by the class action, while also displaying a "geographic scope consistent with the broad number of states" in the class (Doc. 2030 at 2). Both organizations are non-profit think tanks. AAI focuses on "develop[ing] positions that reflect clear-headed, informed, and progressive thinking about antitrust and competition policy," while "ILEP's stated goal is to formulate policy positions on issues involving the administration of civil justice within the American legal system" -- an admirable pursuit, if somewhat vague (*id.*).

CCAF attacks both choices. CCAF accuses AAI of "working against class members' interests" and threatening to "undo legal victories" won on behalf of class members (Doc. 2045 at 1–2). In a similar vein, CCAF criticizes ILEP for "working to advance the interests of plaintiffs'

4

attorneys at the expense of consumers" and "engaging in activities that create at least the appearance of impropriety with members of the judiciary" (*id.* at 2). These shortcomings, CCAF argues, not only make AAI and ILEP unsatisfactory *cy pres* recipients, but would in fact make a *cy pres* distribution to either organization *unconstitutional* because class members would be forced to subsidize the groups' political speech. CCAF's briefing on this novel issue is long on reasoning but noticeably short on supporting case law. *Cf. Perkins v. Linkedin Corp.*, 2016 WL 613255, at *11 n.9 (N.D. Cal. 2016) (noting the dearth of any case law suggesting a *cy pres* distribution constitutes a compelled political donation under the First Amendment). Despite denouncing Class Counsel's proposal, CCAF offers no suggestion of its own, instead simply asking this Court to "require recipients that benefit the class" (Doc. 2045 at 9).

Not to be outdone, Class Counsel point the finger back at CCAF, contending that "[t]he offered 'support' for [CCAF's] position are circular citations to articles either with ties to CCAF or from clearly ideological and anti-consumer publications and authors" (Doc. 2047 at 1–3). Counsel reiterate their view that AAI and ILEP are appropriate *cy pres* recipients and accuse CCAF of trying to circumvent this Court's Final Approval Order (*id.* at 4–6).

This Court will not wade into the thicket by deciding who is truly on the side of class-action consumers. Setting aside the squabble between Class Counsel and CCAF, this Court nonetheless concludes Class Counsel's recommendation missed the target. Counsel assert "[t]his is a class action involving competition" (*id.* at 1), and that level of abstraction led them to propose organizations focusing on competition generally. But defining the case at such a high level of generality ignores the fundamental factual allegation pursued by both classes: they paid too much for foam.

With that more focused purpose in mind, this Court is of the opinion, as it suggested at the fairness hearing (*see* Doc. 2018 at 34), that an appropriate recipient would be an organization that

5

provides carpets, beds and chairs -- prime vehicles for the foam at the heart of this litigation -- for those in need. Accordingly, this Court designates as the *cy pres* recipient Family House Toledo, a charitable organization that offers emergency family housing.

This Court recognizes this selection arguably departs from some circuit decisions -- including cases this Court commended to Class Counsel -- that suggest the geographic scope of the recipient should approximate the geographic scope of the class. This Court agrees that geographic scope can be a factor in the selection of a *cy pres* recipient, particularly where the *cy pres* distribution is substantial and offered *in lieu of* any recovery by class members. *See, e.g.*, *Nachshin*, 663 F.3d at 1037, 1040–41 (demanding *cy pres* recipients match geographic scope of nationwide class where class members received no money and *cy pres* amount totaled $110,000). But this is not such a case, as the *cy pres* distribution -- assuming there is one at all -- involves only residual, unclaimed funds amounting to less than $50,000 (Doc. 2010-1 at 3). In other words, the amount matters here, as does the fact that the *cy pres* funds are "leftovers." The scant *cy pres* amount contemplated in this case overrides any concern for matching the geographic scope of the class, and compels a recipient with a narrower focus where the impact of the donation will be greater.

Having so concluded, the question arises: why a Toledo organization? This Court recognizes few class members likely reside in Northwest Ohio. But Toledo has served as the forum for this multidistrict litigation for five years and counting. And, more importantly, while neither this Court nor its staff have ever had any relationship with Family House, this Court's proximity to and familiarity with it give this Court confidence any *cy pres* funds will be put to good use. *See, e.g.*, Taylor Dungjen, *For Family, Children in Limbo, Shelter is Home for Holidays*, TOLEDO BLADE, Dec. 25, 2015; Nolan Rosenkrans, *Shelters Offer Hope, Home to Those in Need During the Holidays and Beyond*, TOLEDO BLADE, Dec. 24, 2012.

6

## CONCLUSION

This Court designates Family House Toledo as the recipient of any *cy pres* distribution.

IT IS SO ORDERED.

                                          s/ *Jack Zouhary*
                                          JACK ZOUHARY
                                          U. S. DISTRICT JUDGE

                                          April 13, 2016