# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: POLYURETHANE FOAM ANTITRUST LITIGATION | ) | MDL Docket No. 2196 |
| | ) | Index No. 10-MD-2196 (JZ) |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: INDIRECT PURCHASER CLASS | ) | Hon. Jack Zouhary |
| | ) | |
| | ) | |
| | ) | |

### INDIRECT PURCHASER PLAINTIFF CLASS
### MOTION FOR AN ORDER APPROVING CLAIMS, AUTHORIZING DISTRIBUTION OF NET SETTLEMENT FUNDS, INITIAL PAYMENT OF CLAIMS ADMINISTRATOR FEES AND EXPENSES, AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES INCURRED AFTER JANUARY 27, 2016

Indirect Purchaser Plaintiff Class (**"IPPC"**) moves this Court For An Order Approving Claims, Authorizing Distribution Of Net Settlement Funds, Initial Payment Of Claims Administrator Fees And Expenses, And For Attorneys' Fees And Reimbursement Of Expenses Incurred After January 27, 2016, and in support states:

### OVERVIEW

1.      On January 27, 2016, this Court entered its Memorandum Opinion and Order re: Settlement Motions [Doc. #2020] and the Final Order and Judgment [Doc. # 2021].

2.      Subsequent to entry of the Final Order and Judgment, the Claims Administrator, working closely with Class Counsel, has methodically received and processed 96,246 Claim Forms valued at $52,298,774,060.72, audited claims which resulted in the rejection of numerous claims and recommended allocation for this Court's consideration and approval for distribution.

3.      Class Counsel also engaged in extensive appellate practice in the Sixth Circuit Court of Appeals and motion practice in this Court to protect and preserve the $151,250,000 all cash settlement achieved for the benefit of the Class.

4.      In support of this motion, IPPs rely on the Declarations of Eric J. Miller, Marvin A. Miller, Richard M. Kerger, Jay B. Shapiro, and Martin D. Holmes.

## CLAIMS ADMINISTRATION

5.      In support of the request to approve distribution of the Settlement Funds to eligible members of the Class, Plaintiffs rely on the Declaration of Eric J. Miller, attached as Exhibit A.

6.      As shown in Eric Miller's Declaration, A. B. Data provided an extensive notice program which included an initial direct mail of 81,607 notice packets, a dedicated website (www.polyfoamclassaction.com) which contained all relevant documents, including the Notice, the Claim Form, the Summary Notice, and downloadable copies of other court documents.

7.      A. B. Data established a case-specific toll-free number, 866-302-7323, with an interactive voice response (IVR) system and live operators to accommodate Class Members.

8.      A.B. Data has received and processed a total of 96,246 Claim Forms with total purchases of $52,298,774,060.72.  A.B. Data has processed all Claim Forms in accordance with the Settlement Agreements, the Notice, and the Court-approved Plan of Allocation.  See Eric Miller Declaration ¶¶ 10-14.

9.      A. B. Data also engaged in an extensive audit procedure. See Eric Miller Declaration¶¶ 15-24.

10. As a result of the lengthy and extensive audits, A.B. Data has rejected 53,594 claims with total claimed purchases of $9,455,983,605.71. The 53,594 rejected claims include 42,466 claims from one particular third-party filer with an aggregate claim purchase total of $1,962,393,458.89. In conjunction with Class Counsel, A.B. Data also adjusted 210 large corporate claims submitted by a law firm third-party filer. As a result of that process, there was a downward adjustment and a reduction of the claims of approximately $10 billion. Together with the rejected claims and reduction of the corporate claims, Class Counsel benefitted the eligible claimants.

11. Those rejected claims reduced from $52,298,774,060.72 to $22,142,198,343.96, and thereby increased by $30,156,575,716.76 the allocable payments to Eligible Claimants. Following the Plan of Allocation, all Qualifying Claims total $17,179,917,790.27.

12. A.B. Data received Claim Forms postmarked after the February 29, 2016 deadline established by this Court. As reflected in Eric Miller's Declaration, those Late Claims did not cause any delay in the claims administration proceedings and have a minimal impact on the distribution of the Settlement Funds to eligible members of the Class. A.B. Data recommends that the Late Claims received not later than June 22, 2017, and the corrected claims not later than June 27, 2017, be approved for participation and for distribution.

### CLAIMS ADMINISTRATOR'S FEES AND EXPENSES

13. During the course of the claims administration procedure, the Claims Administrator incurred fees and expenses in the sum of $2,421,320.22. Those fees and expenses are itemized in the Declaration of Eric Miller, ¶¶ 31 -33.

**CLASS COUNSELS' REQUEST FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF REASONABLE AND NECESSARY EXPENSES INCURRED TO DEFEND THE SETTLEMENTS FOR THE CLASS SUBSEQUENT TO THIS COURT'S ENTRY OF THE FINAL ORDER AND JUDGMENT AND DURING THE ADMINISTRATION**

14. In support of Class Counsel's request for attorneys' fees for the services provided and reimbursement of expenses incurred to preserve the substantial benefits to the Class, Class Counsel submit the Declarations of Marvin A. Miller (attached as Exhibit B), Richard M. Kerger (attached as Exhibit C), Jay Shapiro (attached as Exhibit D), and Martin D. Holmes (attached as Exhibit E).

15. Since this Court entered the Final Order and Judgment on January 27, 2016, Class Counsel has provided substantial professional services for the benefit of the Class. Those services can be separated into two parts: 1-those directly related to the claims administration process and procedures and 2-those services related to zealously and vigorously protecting the $151,250,000 all cash settlement amount achieved for the Class through numerous motions in this Court and at the Sixth Circuit Court of Appeals and the United States Supreme Court.

16. Consistent with this Court's earlier application of a 20% reduction to Class Counsel's request for attorneys' fees, and at the direction of Lead Counsel, the four law firms which seek an award of attorneys' fees at this time have voluntarily reduced their lodestars by 20%.

**CLASS COUNSEL FEES AND EXPENSES IN CONNECTION WITH CLAIMS ADMINISTRATION**

17. As stated in ¶14 Class Counsel has provided substantial services relating to the claims administration process. In that regard, Class Counsel supervised the process and

worked closely with the Claims Administrator to insure that claims were properly processed, reviewed and audited.

18.    In consultation with the Claims Administrator, it was detected that numerous claims were not accurate because they did not contain the requisite information or appeared dubious.

19.    As to the claims that lacked proper information, letters were sent to the claimants and they were given an opportunity to cure the deficiency.  Many of those which were individual claimants promptly returned the missing information.

20.    There were several claims filed by large corporate claimants.  A review and audit of those claims required extensive investigation and consultation with the representatives in order to understand the basis of their claims.  That process took several months because a methodology needed to be developed to satisfy Class Counsel and the Claims Administrator.  Even then, once the data was received and reviewed, downward adjustments were made to those claims and accepted by the claimants.

21.    Forty Two Thousand Four Hundred Sixty Six (42,466)  claims with an aggregate purchase total of $1,962,393,458.89 from one particular third-party filer fell into a distinct pattern appeared suspicious and necessitated  extensive discussions between Class Counsel and the Claims Administrator.  Almost all of the claims showed purchases in the $35,000-$65,000 range, whereas the average purchase total submitted by other individuals was approximately $28 to $107,307.  It appeared to be an attempt to stay under the radar and avoid the $100,000 threshold which would then require the claimant to provide documentation to support the claim.  Therefore, we implemented a procedure to challenge those claims and requested complete information to support each of those claims.

Ultimately, each of the claims was rejected. We also consulted with the Claims Administrator and implemented further audit procedures for which letters were sent requesting additional substantiation for the basis of the claim. When the information was not provided, Class Counsel and the Claims Administrator conferred and agreed that those claims should be rejected.

22. There were approximately 400 large corporate claims filed by a third-party filer. A review and audit of those claims required extensive investigation and consultation with the representatives in order to understand the basis of their claims. That process took several months because a methodology needed to be developed to satisfy me and the Claims Administrator. Even then, once the data was received and reviewed, downward adjustments were made to those claims and accepted by the claimants. Such process resulted in a reduction of almost $10 billion in claimed purchases from the original filing, thereby increasing the overall distributed amount to eligible claimants.

23. As a result of the audit procedures, and as set forth in ¶¶ 10-11 above, Eligible Claimants have benefitted substantially from our efforts.

24. In addition to the claims procedures, Class Counsel oversaw and directed the investment of the Settlement Funds. In that regard, Class Counsel remained in constant contact with the Escrow Agents and monitored the financial markets to be assured that the Settlement Funds earned the appropriate income while remaining invested at minimal risk, all in accordance with the Settlement Agreements and Escrow Agreements entered into with the Settling Defendants and approved by this Court.

25.     Attorneys' fees and expenses incurred solely in connection with the Claims Administration process and for which Class Counsel seek an award is $42,482.00. *See* Declaration of Marvin A. Miller, ¶12.

### CLASS COUNSELS' EFFORTS PROTECTED AND PRESERVED THE SETTLEMENTS FOR THE BENEFIT OF THE CLASS

26.     The events and proceedings since the entry of the Final Order and Judgment have been extraordinary in class action jurisprudence.  At the Court's request, we researched and identified potential *cy pres* recipients whose purposes are closely aligned with the interests of the Class in deterring price-fixing antitrust violations.  We also opposed the Center for Class Action Fairness proposal.  Ultimately, the Court identified a *cy pres* recipient. Based on the total purchases claimed, the amount of the settlement and the Plan of Allocation, it appears unlikely that any of the settlement funds will be distributed to a *cy pres* beneficiary.

27.     Steadfast that the settlements achieved were in the best interest of the Class, Class Counsel remained resolute in our early announced position that we would not pay any objectors.  In that regard, we also opposed and prevailed on the fee application of the Center for Class Action Fairness. Our vigorous and zealous advocacy to protect the Class settlements required substantial commitment of resources and dedication but Class Counsel took seriously their obligation and endured the onslaught of motions and appeals filed by Andrews. We prevailed at every stage and the substantial $151,250,000 cash settlements remain intact. They can only be characterized as an exhaustive marathon of appeals and a barrage of motions by Christopher Andrews which required Class Counsel to devote substantial efforts, time, and resources to respond.  Indeed, this Court acknowledged the extensive nature of the numerous proceedings which required the Court's efforts when it

denied Andrews' motion for reconsideration of the sanctions award, and said, "Andrews has exhausted his remedies with this Court, and in the process has exhausted this Court." [Doc. # 2123].

28.    So that the record is clear and as this Court is aware, we chronicle in detail here and in the accompanying Declarations of Class Counsel (Exhibits B, C, D, and E) those proceedings and our efforts to protect the Class' interest.

29.    Andrews was an objector (one of several objectors) to a $151,250,000 all cash settlement achieved for the benefit of a Class of Indirect Purchasers of Polyurethane Foam products.

30.    As a condition of appealing, this Court required Appellants to post jointly an appeal bond in the sum of $145,000.  Objectors Cochrane, Cannata and Sweeney voluntarily dismissed their appeals. After briefing, the Sixth Circuit dismissed the Hinojosa appeal. That left Andrews as the sole objector who persisted with his appeal but did not post the requisite appeal bond.

31.    IPPs moved in the Sixth Circuit to dismiss the appeal on the basis that Andrews did not comply with the requirement to post the appeal bond.  In addition, because Andrews' response to that motion included arguments on the merits of approving the settlement, IPPs addressed those issues in reply.

32.    On June 20, 2016, the Sixth Circuit dismissed Andrews' appeal and, in so doing, commented on the merits of his appeal. *See* Exhibit A, App. No. 16-3168, Doc. # 2100 at 2-3. Specifically, the Court reviewed the allegations and found that, "Andrews' objections to the settlements lack merit…" *Id.* at 3.

33.     Andrews then sought *en banc* review which was denied without a single judge of this Court voting in favor of Andrews' request.

34.     Andrews' course of conduct delayed finality of the settlement agreement with Defendant, Carpenter Co., causing that Defendant to avoid depositing $43,500,000 of its settlement obligation.  That delay caused the Class to lose interest for which the Class sought recovery.

35.     In Fall 2016, as a result of Andrews repeated vexatious filings which caused delay, and because the delay injured the Class since Carpenter Co. did not need to deposit into escrow $43.5 million as part of their settlement obligation, Class Counsel moved to require Andrews to pay to the Class the amount of interest lost on the delayed Carpenter Co. funding obligation.

36.     This Court granted the request and ordered Andrews to pay $15,303, being the amount of interest lost to the Class from April through October, 2016. [Doc. # 2113].

37.     When Andrews did not pay the interest, IPPs moved, pursuant to 28 U.S.C. §1927, for sanctions against Andrews.

38.     Andrews did not pay any of the sanction amount and Class Counsel moved to have Andrews held in contempt and for additional relief. [Doc. # 2125].

39.     By this Court's Order [Doc. # 2127], Andrews was found in contempt and the U.S. Marshal was directed to bring him before the Court.

40.     On January 6, 2017, the U.S. Marshals located Andrews at the Red Roof Inn in Plymouth, Michigan and delivered him to this Court at approximately 4:00 p.m.

41.     Undeterred by the Court's orders, Andrews persisted with his course of delaying finality of the settlement and filed with the United States Supreme Court a petition for a writ of certiorari.

42.     IPPs waived briefing and the Supreme Court quickly denied his petition without commentary on January 23, 2017. *See Andrews v. Indirect Purchaser Class*, 137 S.Ct. 842 (2017).

43.     Andrews asserted the exact same arguments in his petition for Rehearing, which was also denied without commentary less than a month later.

44.     This Court, pursuant to its earlier Order [Doc. # 2127] and with clear notice to Andrews, ordered further monetary and nonmonetary sanction. The additional relief requested by Class Counsel and granted in part further protects the Class.   That relief provides:

> • This Court confirms the previously imposed sanction award of $15,303 (Doc. 2113), with the addition of interest for the months of November 2016, December 2016, and January 2017 in the amount of $6,579 (*see* Doc. 2042-5), for a total penalty of $21,882
>    .
> • This Court imposes an additional sanction of $500 to compensate IPC counsel for their fees and expenses related to the deposition scheduled for December 21, 2016, which Andrews failed to attend.
>
> • Andrews shall report to IPC counsel whenever he receives income not previously disclosed to IPC counsel -- including but not limited to any amounts received in connection with other class action settlements -- until the sanctions award in this case is paid in full.
>
> • Any distribution to which Andrews may be entitled from the settlement in this case must first be applied to the balance of the sanction award.
>
> • This Court declines to "refer" this matter to the U.S. Attorney's Office, to the extent that might suggest this Court requests an investigation or otherwise takes a position on the merits of IPC counsel's allegations. However, at the request of counsel, this Court will forward copies of the relevant filings in this

case to the Criminal Division of the U.S. Attorney's Office for the Northern District of Ohio. [Doc. # 2150].

42.     Andrews continued to barrage this Court with vexatious filings, including his repeated but denied motion to stay.  This Court denied that most recent request, finding, as it did earlier, that Andrews' position was without merit and had not satisfied the requirements for issuance of a stay. [Doc. # 2166, citing Doc. #s Docs. 2113, 2123, 2127, 2150,2164].

43.     Class Counsel has begun enforcement proceedings to collect the amount of sanctions for the benefit of the Class.

44.     Andrews moved in the 16th Judicial District Court for The City of Livonia to limit collection of the sanctions.  That motion was denied.  A copy of the Order is attached as Exhibit F.

45.     Class Counsel has served garnishments on Andrews' disclosed bank account, stockbroker, and the entity for which he provides sales services.

46.     Other counsel in cases in which Andrews has filed objections have monitored the proceedings in this case and have contacted Class Counsel.  Those Counsel have copies of this Court's sanctions orders.

47.     Andrews appealed this Court's sanctions orders and moved for an emergency stay of the enforcement to collect on the sanctions.

48.     Class Counsel has responded to that motion. See Exhibit B to Marvin A Miller Declaration.

49.     He also requested an extension of time by which to file his opening brief. The Sixth Circuit granted the request and set the following schedule: Andrews' brief due

July 17, 2017; IPP Response due August 16, 2017; Andrews Reply due 17 days after the IPP Response is filed.

50.     Andrews filed a second appeal from this Court's denial of his request for a stay. (Sixth Circuit Docket # 17-3548). The separate briefing schedule in that appeal requires Andrews to file his opening brief on August 10, 2017.

51.     Based on the respective firm's declarations (Exhibits B-E), the respective firms report the following adjusted lodestar and unreimbursed expenses:

|  | Lodestar | Expenses |
|---|---|---|
| Miller Law LLC | $379,888.40 | $36,633.54 |
| The Kerger Law Firm LLC | $ 44,820.00 | $ 698.87 |
| Stearns Weaver *et al*. | $752,316.80 | $17,842.62 |
| Dickinson Wright PLLC | $ 69,298.00 | $ 2,100.68 |

The detailed records from which the above summary of tasks and expenses reported by each firm was derived contain information protected from disclosure under the attorney-client privilege and the attorney work product doctrine. Because there are ongoing sanctions collection efforts relating to Andrews, as well as pending appeals by him, those records will be submitted for *in camera* inspection by the Court, if necessary.

52.     Class Counsel request an attorneys' fee award in the amount of $1,246,323.20 and reimbursement of expenses in the amount of $57,275.71.

Wherefore, Class Plaintiffs request that the Court approve the claims as recommended by the Claims Administrator, award A.B. Data Ltd. its fees and expenses in the sum of $421,320.22 as set forth in the Declaration of Eric J. Miller, ¶ 33, award Class Counsel attorneys' fees in the sum of $1,246,323.20, award Class Counsel reimbursement of expenses in the amount of

$57,275.71, and approve distribution of the net Settlement Fund as recommended by the Claims

Administrator, A.B. Data, Ltd..

Dated: July 10, 2017

Respectfully submitted,

/s/ *Marvin A. Miller*
Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Phone: 312-332-3400
Fax:    312-676-2676
Email: mmiller@millerlawllc.com

*Lead Counsel for Indirect Purchaser Plaintiff Class*

/s/ *Richard M. Kerger*
Richard M. Kerger (0015864)
**THE KERGER LAW FIRM LLC**
33 S. Michigan Street, Suite 100
Toledo, OH  43604
Telephone: (419) 255-5990
Fax: (419) 255-5997
Email:  rkerger@kergerlaw.com

*Executive Committee for Indirect Purchaser Plaintiff Class*

Jay B. Shapiro
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 789-3200
Fax: (305) 789-3395
Email:  jshapiro@stearnsweaver.com

*Counsel for Indirect Purchaser Plaintiff Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, pursuant to Local Rule 5.1(b)-(c) and Initial Case Management Conference Order dated January 20, 2011 (Dkt. No. 17). Parties may access this filing through the Court's system.

*/s/ Marvin A. Miller*
Marvin A. Miller
